Pages 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )   **NO. CR 18-00577 CRB**
                               )   **PAGES 31-34 SEALED BY COURT**
                               )   **ORDER & BOUND SEPARATELY**
MICHAEL RICHARD LYNCH and      )
STEPHEN KEITH CHAMBERLAIN,     )
                               )
            Defendants.        )
_____)

                        San Francisco, California
                        Tuesday, April 2, 2019

                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    DAVID L. ANDERSON
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
            BY:  **WILLIAM FRENTZEN**
                 **ASSISTANT UNITED STATES ATTORNEY**

For Defendant Michael Richard Lynch:
                    STEPTOE & JOHNSON LLP
                    1330 Connecticut Avenue, NW
                    Washington, D.C.  20036-1795
            BY:  **REID H. WEINGARTEN, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Marla F. Knox, RPR, CRR
              Official Reporter

**APPEARANCES:** (CONTINUED)


For Defendant Stephen Keith Chamberlain:
                      BIRD MARELLA BOXER WOLPER NESSIM DROOKS
                      LINCENBERG RHOW
                      1875 Century Park East, 23rd Floor
                      Los Angeles, CA  90067-2561
                 **BY:  GARY S. LINCENBERG, ESQ.**

**Tuesday - April 2, 2019**                                    **1:30 p.m.**
                      **P R O C E E D I N G S**

                           **---000---**

    **THE CLERK:**  Calling criminal action CR18-0577, USA
versus Michael Richard Lynch and Stephen Keith Chamberlain.
Counsel, please step forward and state your appearances for the
record.

    **MR. FRENTZEN:**  Good afternoon, Your Honor, William
Frentzen for the Government.

    **MR. WEINGARTEN:**  Good afternoon, Your Honor, Reid
Weingarten for Mr. Lynch.

    **MR. LINCENBERG:**  Good afternoon, Your Honor, Gary
Lincenberg for Mr. Chamberlain who is present.

    **THE COURT:**  Not so fast.

    **MR. WEINGARTEN:**  What's that?

    **THE COURT:**  Okay.  I said not so fast.  You are sort
of heading back to counsel table.

    **MR. WEINGARTEN:**  I was just going to get a piece of
paper.

    **THE COURT:**  Oh, go right ahead.  Thought you were
looking for an escape route.

    **MR. WEINGARTEN:**  No.  I'm very pleased to be here.

    **THE COURT:**  Well, your son is here.

    **MR. WEINGARTEN:**  He is.

    **THE COURT:**  I mean, it is great.

4

1          **MR. WEINGARTEN:**  I love visiting him and I like to be

2     here.

3          **THE COURT:**  Well, we like to have you.

4          **MR. WEINGARTEN:**  I'm always happy to give a full

5     report in any particular order.

6          **THE COURT:**  Just go right ahead.

7          **MR. WEINGARTEN:**  Okay.  So because the health issue

8     has been relevant, I'm happy to report that the infection is

9     under control.  The sepsis has not shown up, but there are some

10    concerns.  So the next step is an MRI, and hopefully the

11    results will be positive.  So I think the information is more

12    positive now than it has been before.  So we are relieved,

13    number one.

14         Number two, the English trial is under way.  I was

15    actually there last week.  I saw the openings -- just 30-second

16    diversion -- the Judge gave each side two days for their

17    openings.  It was pretty astonishing.  A lot of the Lords go

18    flying around, and it is different than the way we do it.  And

19    I was -- I enjoyed watching it.  Testimony is under way, and

20    that's what is going on as we speak.

21         The last time I was here the Government advised me that

22    whatever superseder was coming would be returned before I came

23    back which, of course, has happened.  So we have seen the

24    superseder.

25         We have prepared ourselves for the arrest warrant and the

1  extradition proceedings.  I think you and I were in agreement

2  when I was last here the way the process would proceed.  Lynch

3  would begin the extradition proceeding.  He would go to court.

4  He would see the papers filed by the United States.  Then a

5  decision would be made whether or not he would contest.  If he

6  chose not to contest and came here, he would have the full

7  protection of the treaty.  We have prepared Scotland Yard.  We

8  have told them Give us a moment's notice.  Try please not to

9  interfere with the civil trial.  My understanding is the Judge

10  is holding a four-day trial week.  So perhaps if the

11  proceedings start -- it could be on Friday -- and however that

12  may interfere with the civil trial, that's life.

13       It is a media circus there to be sure.  So that's not -- I

14  mean, when he showed up -- so the superseder I think was

15  returned on a Friday; and the trial started on a Monday.  It

16  was, like, a rock star was under -- was appearing in court.  It

17  was a real circus.  But that's life.

18       So what -- I mean, that process hasn't happened yet.  We

19  don't know if the superseder will be followed by a superseder;

20  And, you know, again -- and I believe that we were in agreement

21  that --

22            **THE COURT:**  Unlikely.

23            **MR. WEINGARTEN:**  Well, I mean, the grand jury

24  investigation continues.  There is obviously litigation

25  relating to these issues, invoke and blah, blah, blah.  I don't

1  know that.  Obviously that is a relevant piece, but I don't

2  think -- my understanding was the extradition proceedings would

3  start.  Lynch would be called to court.  He would have to make

4  a decision whether or not to contest.  That has not yet

5  happened.

6       Now, moving to the next subject, the superseder, we have

7  very strong views about the superseder.  I'm prepared to share

8  them with the Court.  I think they profoundly affect things.

9  You may recall that at one point I talked about my relationship

10  with Keker, a long time friend.  I wanted him to get paid.  And

11  that I was appalled that the Prosecutors in conversations with

12  me directly suggested that getting Keker paid for his work for

13  Sushovan was hush money.

14       You may recall he said, Have you read the pleadings?  I

15  was somewhat embarrassed because I hadn't, and I have since.

16  Now the Government alluded to that prosecutor theory in the

17  proceedings; but putting all that aside, they charged that.

18  They have charged the decision that was approved by counsel to

19  compensate John Keker for representing Sushovan in the form of

20  purchasing stock for fair market value constitutes an

21  obstruction, and I can go on.

22       In addition, the hiring of Chamberlain, who is in court

23  today, is also part of the obstruction theory.  We have very

24  strong feelings about that.  That was on our watch.  And if, in

25  fact -- I'm not sure whether or not that puts us in any kind of

1   awkward situation, but very strong feelings about the

2   superseding indictment and how it proceeds.

3       I would -- if I had my druthers, waive a jury this minute;

4   take it to you this afternoon, and I'm virtually certain on all

5   these issues we would win, but more relevant to that is the

6   reaction from the extradition lawyers.  The extradition lawyers

7   in England for Mike Lynch were high-fiving when they saw the

8   superseding indictment.  They believe they have a very strong

9   case before the superseder; but the idea that the obstruction

10  count or the count that has four objects -- I guess it is

11  Count Seventeen -- is utterly not extraditable.  There is

12  nothing even remotely like that in English criminal law.  And

13  every overt act took place in the United Kingdom.  So the idea

14  that the forum bar was strong before the superseder, it is

15  stronger today; but that's not the final decision.

16      What we assume will happen is that the extradition

17  proceeding will start.  We will go to court in England.  Listen

18  to the Judge.  Listen to the extradition lawyers and make a

19  judgment.  I don't think the proceedings here are compromised

20  because obviously, as the Court recalls, you were okay with the

21  English trial going first.  It is under way and, frankly, it is

22  going extremely well for Lynch.  So we are encouraged by that.

23      But the final point I would like to make is there are

24  things that could happen in court today -- let me back up

25  one --

1      THE COURT:  Here today or some other --

2      MR. WEINGARTEN:  Here, before you.

3      THE COURT:  Oh, okay.  I want to make sure if I'm a

4  part of history, I want to make sure I recognize it.

5      MR. WEINGARTEN:  The long and short of it, Judge -- I

6  have alluded to this before -- where this is in terms of Mike

7  Lynch's decision -- is the English lawyers -- and you have said

8  you are not interested in what the English lawyers are

9  saying --

10      THE COURT:  Right.

11      MR. WEINGARTEN:  -- but for 30 seconds if I can just

12  lay it out -- there is not -- there is a difference of opinion

13  between the American lawyers and his English lawyers as to how

14  to proceed.  I mean, I am proud to be here.  I'm happy to be in

15  your court.  Want to argue before this jury.  The English

16  lawyers take a look at the world.  They take a look at the

17  extradition issue and take a look at the facts as they know

18  them and believe the deck is stacked and Mike should not come;

19  should fight extradition, blah, blah, blah.  We are on the

20  fence and there is a difference in the advocacy, and that's

21  where we are.  And I -- I'm wrestling with this, and no

22  decision has been made; and I am here before the Court to

23  report that.

24      THE COURT:  Okay.  A couple questions:  Is there an

25  anticipated conclusion date to the British trial?

1           **MR. WEINGARTEN:**  Yes.  He is scheduled to testify --

2    the fall.

3           **THE COURT:**  Pardon me?

4           **MR. WEINGARTEN:**  In the fall, the fall of this year.

5           **THE COURT:**  This trial you say will go -- it's already

6    commenced in March.

7           **MR. WEINGARTEN:**  Yes.

8           **THE COURT:**  You say the trial will in England go

9    through the autumn or into the autumn?  That's a projection.  I

10   understand nobody is --

11          **MR. WEINGARTEN:**  The only reason I'm hesitating is

12   what the Brits say it is nine months, nine months.  I think the

13   evidence -- I think it is broken down, and maybe you can help

14   me here.  There is a liability piece, and then there is a

15   damage piece; and then there is a period of time when the Judge

16   entertains briefs.  And I only saw that in terms of getting it

17   done with Mike Lynch is when the evidence is over, there may be

18   a period of time when there is briefing and the Judge decides.

19   I believe the evidence is anticipated to be over in the fall.

20   I could be wrong, and I will get that for you.

21          **THE COURT:**  The evidence will be over in the fall?

22   **MR. WEINGARTEN:**  Yes.

23   **THE COURT:**  Meeting every day?

24   **MR. WEINGARTEN:**  Four days a week.

25   **THE COURT:**  Four days a week, every week between now

1    and September 21st.

2             MR. WEINGARTEN:  The lawyers for HP have told the

3    Court that they will require Lynch to be on the stand for three

4    weeks.  They just do it differently there.

5             THE COURT:  Okay.  Well, as I said before, I'm not

6    going to comment on it.  I have no idea.  That's helpful to get

7    a sense of what is going on there.  Again, as I said, you know,

8    I am quite certain we can work out an accommodation.  And by

9    "accommodation," I mean an accommodation satisfactory to the

10   English proceedings -- to the British proceedings, I guess they

11   are because they are also English -- to the British proceedings

12   recognizing their priorities and recognizing their

13   scheduling --

14            MR. WEINGARTEN:  Yes.

15            THE COURT:  -- issues.  Is it a jury case?

16            MR. WEINGARTEN:  No.

17            THE COURT:  Before one judge or several judges?

18            MR. WEINGARTEN:  One.

19            THE COURT:  Okay.  Very good.  That is called waiving

20   the jury.

21            MR. WEINGARTEN:  Look --

22            THE COURT:  Anyway, moving ahead --

23            MR. WEINGARTEN:  I have thoughts about that too.

24            THE COURT:  Well, I don't know.  I mean, that's a

25   totally different issue, and it is one that you -- that -- it

1   is your client's call, and your client has to make that

2   decision.

3          MR. WEINGARTEN:   There has been extensive discussions

4   about that.

5          THE COURT:   It is your client's decision to make.   And

6   we are not going to have that discussion now because I haven't

7   seen the client, and it would not be appropriate.   Anyway, to

8   all of this I say thank you.

9      I'm not quite sure with respect to what you say is now in

10  the superseding indictment and what it all means -- number one,

11  I don't have an opinion, and number two, I don't know that it

12  is appropriate for me to even entertain discussions as to that

13  subject without your client being present.

14     So, you know, I just think that -- I understand your

15  observations.   I have read the superseding indictment, but I

16  don't think I should have a discussion about it until it

17  becomes -- until your client is here.

18     Now, if it turns out your client is not going to come

19  because of a non-extraditable offense, I don't know.   That's up

20  to the Government then to try to figure out what to do.   I

21  mean, they hold that -- they hold that power and that choice

22  and make those elections.   I don't know.   I don't think I have

23  to get involved in it, and I don't intend to do so now.

24     So I guess the question from me to you, Mr. Frentzen, is

25  what kind of timetable are we looking at because I think that

1  with Mr. Chamberlain sitting there, with the Court awaiting at

2  least some progress in this case and with the Court intending

3  to sentence the co-Defendant next month -- and have a hearing

4  on Monday on the guidelines -- I would like to get this thing

5  going.  So what can you tell us?

6      **MR. FRENTZEN:**  We agree with the Court.  We are going

7  to move with utmost haste to initiate things in the UK.  I do

8  understand what is being said about the proceedings over there;

9  and obviously it would be my preference not to, you know,

10  interfere with the court proceedings there.  But we are going

11  to move forward.

12      I think the Court is correct that -- I mean, we tried to

13  do our part in terms of bringing a superseding indictment that

14  represents our view of the case and so that -- that piece at

15  least was known to Counsel and to Mike Lynch before, you know,

16  we had this appearance.  We are still in the same place.  So we

17  plan to move forward.

18      The one thing I cannot estimate, I think, for the Court is

19  how long the extradition process -- let's assume because it

20  sure sounds to me like we are going to go through a full

21  extradition process at this point -- so how long that is going

22  to take.  It is obviously out of our hands.  I have heard

23  stories of it taking longer in the UK than it used to, but that

24  is, you know -- that's about as much as I can say.

25      **THE COURT:**  When I'm listening to Counsel, I'm not

1    sure that the process is going to take that long once

2    appropriately initiated.  I mean, the concern I have -- the

3    concern that has been expressed to me is to have the guarantees

4    of the treaty and the protections of the treaty.  Now, that, of

5    course, does include a hearing and findings and so forth and so

6    on.  But I don't think that's what they are aiming at though it

7    could be.  We will not know until we --

8          **MR. FRENTZEN:**  Sure.

9          **THE COURT:**  -- until it unfolds.  But, you know, I

10   don't -- I just would find it a bit odd to go through a very

11   lengthy proceeding when it is -- one, the probable outcome is

12   that he is extradited and two, whether or not that -- two, his

13   off-stated statements that he wants to clear his name and that

14   he wants to be vindicated; travel throughout the world and so

15   forth and so on.

16      So, look, I don't know how much is rhetoric, how much is

17   reality; and the only way you test it is simply just go ahead

18   and people make elections and elections have consequences.

19   So --

20         **MR. FRENTZEN:**  Sure.  So, yeah, we are going to press

21   ahead.

22         **THE COURT:**  Okay.

23         **MR. FRENTZEN:**  We will do that forthwith.

24         **THE COURT:**  Great.

25         **MR. WEINGARTEN:**  Just by way of clarification, I would

say that what he described just now is precisely what I felt where we were when I left the courtroom last.  The superseder has changed things.  I think it makes the world look very different both for purposes of Lynch in England and how I see the case.

I mean, the long and short of it -- you know, the accounting fraud allegations I get.  I understand that maybe the accounting was a little aggressive, a little back-dated.  I understand charges being brought under those circumstances.  Whether or not Lynch is involved in that, a different issue.  That's why we go to trial.  But this new stuff I think is qualitatively and quantitatively different.

MR. FRENTZEN:  My only response to that, Your Honor, is it is basically an allegation of a conspiracy to conceal and through a variety of different objectives -- I mean, objective statutes, and I actually disagree with the earlier comment about the legal fees because at least my understanding -- and I think I'm correct -- is that we took that part out.

In other words, there were multiple instances in which Hussain sold shares to Lynch, and the ones we understand went for legal fees I think were removed from the overt acts.  In any event, not that that's all that important for today's purposes, as the Court already pointed out; but I just wanted to -- I didn't want to leave that unsaid in light of what else has been said.  I don't think this is terribly hard to

1   comprehend.

2          **MR. WEINGARTEN:**  If I could make one point on that,

3   there is an overt act that part of the obstruction was Mike

4   Lynch hiring Mr. Chamberlain.  Mr. Chamberlain obviously is in

5   court here today.  I -- that was -- with the approval -- the

6   knowledge and approval the lawyers in court including

7   Mr. Lincenberg, Mr. Weingarten, me, and others.  I believe it

8   was an entirely wholesome act.  Mr. Lynch wanting to help

9   Mr. Chamberlain who had lost his job in a third company and

10  finding -- and knowing him to be entirely competent to the job

11  at hand.

12       In addition right now, Mr. Lynch would like to help

13  Mr. Chamberlain with legal fees.  There have been preliminary

14  conversations between Mr. Lincenberg and the Prosecutors.

15  Because of the nature of the new charges obviously before we do

16  anything along those lines, I think it has to be completely

17  aired.  I think it is appropriate -- Mr. Lincenberg can weigh

18  in on that because it is his client.

19         **MR. LINCENBERG:**  So, Your Honor, the Court may recall

20  that I have been appearing through a special appearance, and

21  that relates to the current issue.  So in this case I was

22  retained -- I think it was -- four and a half, five years ago.

23  There was a D&O policy that was paying legal fees, and that --

24  at one point we were prepared to go to trial if Mr. Chamberlain

25  were charged two and a half years ago.

1          The U.S. Attorney's Office chose not to charge him at that

2     time.   Since that time the D&O policy was exhausted.   So that

3     there is no more money in the D&O policy.

4          My client does not have the independent ability to retain

5     counsel for a case like this.   So I approached Mr. Reeves and

6     the U.S. Attorney team to discuss with them this question,

7     Your Honor.   I wanted to see if they would object to my

8     requesting that Dr. Lynch assist with legal fees for me to be

9     able to represent Mr. Chamberlain.   The U.S. Attorney's Office

10    indicated that they would take no position.   They would not

11    object, but they stated -- and I think rightly so -- that there

12    should be a hearing before the Court to ensure that

13    Mr. Chamberlain understands the potential conflicts of interest

14    that could arise and could make a knowing and intelligent

15    decision.

16         Following my discussions with Mr. Reeves, I proceeded to

17    engage in discussions with Counsel for Dr. Lynch; and there is

18    an agreement in principle that Dr. Lynch would provide legal

19    fees in part because the vast -- a large percentage of the D&O

20    policy was used to pay the expenses of Dr. Lynch's counsel both

21    in connection with the UK civil case and the grand jury case.

22         And so I had said, look, my client is now in a position

23    where the insurance money is exhausted.   Would Dr. Lynch be

24    agreeable to shifting over some of the benefit he received so

25    that my client can have the benefit of that and have counsel

1  under a policy that was intended to also protect him?  And to

2  the U.S. Attorney's Office credit, they indicated that they

3  would take no position on that.

4      But I do think it is appropriate -- I agree with the

5  Government that it is appropriate to have a hearing in which

6  the Court questions or I can question -- I can initiate the

7  questioning of my client, standard questions, to go through to

8  make sure that this would be conflict-free counsel.

9      And this issue is also important because part of the

10  concern that Mr. Weingarten has expressed is that Dr. Lynch

11  doesn't want to go forward and actually agree to shift over

12  some of the benefit of that insurance proceeds if it is

13  something that -- that is going to be viewed as criminal in

14  nature -- which it shouldn't be -- but in light of the

15  superseding indictment and that -- that was a concern --

16  Mr. Frentzen has clarified that they did not charge payments --

17  purchases of stock that related to legal fees which is also

18  harmful.

19      So if the Court is inclined -- however the Court wants to

20  proceed -- I believe that if the Court would like, I can

21  initiate the questioning and the Court can answer -- ask any

22  further questions.  If Mr. Frentzen had any further questions,

23  Mr. Frentzen can join in as well.

24          **THE COURT:**  How do you want to do it?  I mean --

25          **MR. FRENTZEN:**  I think that -- I think that would be

fine.  I also think that if the Court wanted to do it without

the Government and others present, that would be fine as well.

From the Government's perspective, we simply -- it was our

view that if A, we take no position on the Lynch -- Defendant

Lynch providing legal fees for Defendant Chamberlain.  With

that said, we do believe that it is important that Defendant

Chamberlain understand the -- you know, that his lawyer is his

lawyer and that it be a conflict-free understanding.

So that's kind of our take on that, and we can do it

however the Court wants, with us present, with us absent if

that's the way the Court wants to go about it.  If that's the

road they are going to go down, we think that's --

**THE COURT:**  I think there are two separate issues as I

see it.  Let me see if I understand it correctly.  One issue is

the -- one issue is the source of the funds, and the other

issue is who provides the money.  The source of -- and the

reason they are separate is that in this case they may be the

same -- but it is as I understand it, Mr. Lynch is going to

provide the funds so that Mr. Chamberlain can retain the

services of counsel of his choosing, right?

**MR. FRENTZEN:**  That's my understanding.

**THE COURT:**  And so that, of course, raises the host of

potential conflicts which I think are easy to resolve by a

conversation with counsel and with Mr. Chamberlain.  I don't

think you have to be present for that, but I think it is

important that the Defendant understand what is the source of the money; and it is important that he understands that his counsel is independent.  And it is important that the independent counsel say that he is taking directions solely from his client and not from anybody else and that if retained, he remains in the case whether or not the funding does take place, whether it continues on an ongoing basis.  No lawyer likes to hear that, but it is a criminal case.

In other words, I would say if approved that he can fund it -- and so forth and so on -- if suddenly he doesn't fund it or something happens along that line, his counsel doesn't get up and walk out.  His counsel remains.  There may be potential CEA funding or some other resources.  So we need to get all that on the record.  The Government doesn't have to be present for that.

The second question, though, is a different question which is the source of the funds that -- that Mr. Lynch is providing or authorized, I understand, may be the subject -- is it true it may be the subject of forfeiture or is it true that it is the Government's claim that those funds are, quote, ill-gotten gains?  And if either of those things are in consideration, I would say if the Government takes the position that they have no objection to these funds being used, I think it doesn't become an issue.

I think it -- you know, the Government can't come on the

1  one hand and say, Well, we are going to -- if you pay

2  Mr. Lincenberg out of X money and then at the end of the trial

3  say, By the way, the X money is ill-gotten gains and we are now

4  seeking its recovery because ill-gotten gains, I don't know

5  that the Government can take that position.  So I think that

6  sort of was answered by what Mr. Frentzen has said.  We are

7  taking no position with that, but that is a position.  It is

8  not that they are conceding that they are not ill-gotten gains.

9  It is that they are conceding that they will not state any

10  claim against it.  I think that's correct.  You want to think

11  about it?  Well, I think I have -- I think otherwise --

12          **MR. FRENTZEN:**  I think that's --

13          **THE COURT:**  If I were a lawyer, I wouldn't step into a

14  legal representation where the Government is saying, Well,

15  today we are not going to claim it; but tomorrow maybe we would

16  after all the work is done.

17          **MR. FRENTZEN:**  I think that's fair, Your Honor.  I

18  think that, you know, there is a part of this where --

19          **THE COURT:**  Do you want to think about it because what

20  I was going to suggest is that we then -- I mean, I can do it

21  now.  Do you think you can come back another day?  We don't

22  need Mr. --

23          **MR. FRENTZEN:**  I think we are -- can I have a moment

24  with Counsel?

25          **THE COURT:**  Yeah.

1          (Pause in proceedings)

2          **MR. FRENTZEN:**  Sorry, Your Honor.  I think that's all

3    correct.  I mean, it raises in my mind, I guess, the issue of I

4    don't know why -- in other words, if Lynch is going to fund

5    Chamberlain, I don't know why he would reach into -- and this

6    is -- I'm leaving aside any kind of restitution but by then it

7    will be gone, so that is not an issue -- but for forfeiture

8    issues, I don't know why he would use the proceeds of the sale

9    of HP to pay for this in any event, in which case there is no

10   issue.

11         **THE COURT:**  Well, maybe not.  Maybe that takes care of

12   the problem, but the one thing I don't want to do is become the

13   nanny of the disbursement of funds for a -- one Defendant or

14   another.

15         **MR. FRENTZEN:**  Nor do I, Your Honor.

16         **MR. LINCENBERG:**  You wouldn't be the first Article III

17   nanny.

18         **THE COURT:**  I just don't want to be involved in that.

19   It is not whether it is seemly or unseemly.  It is just

20   inappropriate.

21         **MR. LINCENBERG:**  Right.

22         **MR. FRENTZEN:**  I agree with that, Your Honor.

23         **THE COURT:**  With the understanding that the Government

24   will not make a claim to the funds that are given to or

25   loaned -- whatever that term is -- provided to --

```
 1    Mr. Chamberlain to -- for the purposes --

 2            MR. LINCENBERG:  Provided to Counsel.

 3            MR. FRENTZEN:  That's correct.

 4            THE COURT:  Provided to Counsel.

 5            MR. FRENTZEN:  Well --

 6            THE COURT:  Is the idea it doesn't go to

 7    Mr. Chamberlain; it goes to you?

 8            MR. LINCENBERG:  Well, that's the idea, yes.  It is

 9    for legal fees and is being provided to counsel.

10            MR. FRENTZEN:  It will go to Chamberlain and then to

11    counsel --

12            THE COURT:  It goes through Mr. Chamberlain.

13            MR. LINCENBERG:  Okay.  That is a detail, but --

14            THE COURT:  Well, it's a big detail.  It is a big

15    detail because he doesn't have to hire you.

16            MR. LINCENBERG:  Okay.  Your Honor --

17            THE COURT:  I mean, it's fine.  I couldn't think of a

18    better lawyer.  I'm not saying, Okay, you will be paid and your

19    successor won't be.

20            MR. LINCENBERG:  That's fine, Your Honor.  The

21    discussion with the Government and the discussion we have been

22    having is that this is money for the payment of legal fees.  It

23    doesn't have to be to me but for legal fees.

24            THE COURT:  Okay.  Payment for legal fees.  So that's

25    fine.  That takes care of that problem as far as I'm concerned.
```

1      I do think I have to have a conversation -- I'm thinking

2  do I have to have it ex parte or not -- or do I have to have it

3  under seal or not?

4      **MR. LINCENBERG:**  My suggestion is that it be in

5  camera; and that if there is anything that is raised -- for

6  example, if the Court hears a concern, that the Court believes

7  that the Prosecution should be alerted to it, then we may have

8  to come back out to the Court.

9      **THE COURT:**  Okay.  I think that's probably right.

10      **MR. FRENTZEN:**  That's fine.

11      **THE COURT:**  I would like to do that now because I

12  would like to get this situation --

13      **MR. FRENTZEN:**  One quick question for the Court;

14  however, as a technical matter, I think we have to arraign on

15  the superseding indictment.  So I don't know if the Court wants

16  to do that first or not.

17      **MR. LINCENBERG:**  My suggestion is we do this first and

18  then we can --

19      **THE COURT:**  Go right ahead.  Let's do it.

20      **MR. LINCENBERG:**  So with regard to that, I do have one

21  issue I wanted to raise with regard to the superseding.  So

22  there are two new counts affecting Mr. Chamberlain, Count

23  Fifteen and Count Seventeen.  Count Fifteen, no issue.  Ready

24  to go forward with the hearing.

25      I did want to comment on Count Seventeen.  So we are in an

interesting situation with Count Seventeen.  Mr. Chamberlain
made a knowing intelligent decision to voluntarily appear, and
he is going to continue to do so.  There are questions
Mr. Weingarten has outlined about parts of Count Seventeen --
if not all of Count Seventeen -- potentially not being
extraditable.  If we are in a situation where it is determined
that Count Seventeen would not be subject to extradition, I do
believe it would be unfair to go forward with a trial on
Count Seventeen against Mr. Chamberlain; in other words,
penalizing him in a sense for voluntarily appearing.

          Now, there are four different parts to Count Seventeen.
It seems to me that the part of Count Seventeen which applies
to Mr. Chamberlain is the first one, the securities fraud
aspect of it.  We have no problem.  We think it is -- we
disagree with the charge, but we think it is appropriate for
Mr. Chamberlain to have to face it as part of the superseding
indictment.

          The next three objects don't appear to apply to
Mr. Chamberlain in any event.  We are willing to waive time
with regard to arraignment.  We have a lot of time.  There is
no reason why we need to rush into the arraignment on
Count Seventeen.  We are willing to waive time and deal with
the arraignment on Count Seventeen perhaps after it is
determined whether or not that is something that would be
subject to extradition.

1    **MR. FRENTZEN:**  I'm confused because -- you know, I

2    mean, we could have had this conversation.  If Counsel called

3    one of my colleagues and it didn't get communicated to me, then

4    I apologize.

5         **MR. LINCENBERG:**  I didn't.

6         **MR. FRENTZEN:**  Yeah, okay.  So he came here

7    voluntarily.  I believe he should be arraigned on the full

8    indictment.  It is not a four-part charge.  It is a one count

9    conspiracy charge.  And he is alleged to be a member of the

10   conspiracy.  You know, he can say it is unfair; but I believe

11   he has, you know, traveled here after having had the benefit of

12   seeing the superseding indictment, and we believe it is

13   appropriate to arraign him on all of the charges against him at

14   the present.  And, you know, if it was his desire to stay

15   behind and fight coming here on some aspect or part of it, then

16   that's a conversation we could have had; but he is here.

17        **MR. LINCENBERG:**  Let me just respond to that if I may.

18        **THE COURT:**  Yes.

19        **MR. LINCENBERG:**  First of all, however the Court

20   decides this, Mr. Chamberlain plans to be here.  If the Court

21   says he is going to be arraigned on it, he will be arraigned on

22   it.  I do think there is an issue here.  I do think there is an

23   issue with regard to Count Seventeen as to whether it is one --

24        **THE COURT:**  I understand.  The way I'm going to handle

25   it is -- once again, because I'm the great postponer -- I'm not

```
 1    going to decide that issue -- that is the issue of -- I'm going
 2    to decide the issue of whether he should be arraigned.  I'm not
 3    going to decide the issue of the propriety of his arraignment
 4    on that count because he has raised it.
 5         And subject to that objection, we are going to go forward
 6    with the arraignment, and then we will try to figure out --
 7    things may evolve.  That is without prejudice to sever.  And
 8    for any of the other things, there are other tools you have
 9    available as the case progresses.  Okay.
10         MR. LINCENBERG:  Fair enough, Your Honor.  It would be
11    helpful with regard to Count Seventeen -- in connection with
12    the objection that is being raised -- to just understand
13    whether it is the Government's view that Mr. Chamberlain
14    committed any of the alleged overt acts that relate to anything
15    other than the first part of that conspiracy.
16         If you look at the overt acts, there is an overt act from
17    February 3rd, 2012, that says that Chamberlain and Hussain
18    directed some money -- recognition issue -- that the Government
19    contends is problematic.  That's E, paragraph 34(e).  That fits
20    within the conspiracy charge on -- for securities fraud.
21         As I read this, none of the other overt acts relate to
22    Mr. Chamberlain.  Now, there is an overt act about the hiring
23    of Mr. Chamberlain.  If the Government is suggesting that
24    Mr. Chamberlain conspired to take a job to obstruct justice or
25    something, then they can state as much.  It is hard for me to
```

1    see how that would be the case.  I don't believe that's what

2    they are getting at.

3         Then the other overt acts don't seem to relate to

4    Mr. Chamberlain, and so it would be helpful to have some

5    clarity at least as to what Count Seventeen is that he is being

6    arraigned on.

7              **THE COURT:**  This isn't the -- this isn't the procedure

8    for gaining clarity.  This is a procedure where they say, You

9    have been charged with X and here is the penalty.  For you to

10   come in and say, I really don't understand X in light of

11   everything else -- you could be right, but that doesn't mean

12   you are not arraigned on it.  It means I can move to dismiss

13   it.  I can ask for a bill of particulars.  I can do any number

14   of things but that's -- that's the vehicle.  This isn't the

15   vehicle.  So with that, I'm going to proceed with the

16   arraignment of Mr. Chamberlain on the superseding indictment.

17             **MR. FRENTZEN:**  Thank you, Your Honor.

18             **THE COURT:**  I will be aided by the Government because

19   I can't -- I have no idea what to do.  Go ahead.

20             **MR. FRENTZEN:**  Your Honor, in this superseding

21   indictment Mr. Chamberlain is charged in Counts One through

22   Fifteen and in Count Seventeen, as was previously described by

23   his counsel.

24        Count One charges a violation of Title 18, United States

25   Code, Section 1349 which is a conspiracy to commit fraud --

1   specifically wire fraud.

2        Counts Two through Fifteen charge a violation of Title 18,

3   United States Code, Section 1343, wire fraud.

4        The potential ramifications of Counts One through Fifteen

5   are the same as to each count.  Up to 20 years of imprisonment,

6   a $250,000 fine or twice the gross gain or loss, whichever is

7   greater; a three-year term of supervised release and a $100

8   special assessment.

9        Count Seventeen charges Mr. Chamberlain with a violation

10  of Title 18, United States Code, Section 371, conspiracy.  And

11  the potential ramification is not more than five years of

12  imprisonment; not more than a $250,000 fine; not more than

13  three years of supervised release and a $100 special

14  assessment.

15       Those are the new charges in the superseding indictment,

16  Your Honor, unless counsel or Mr. Chamberlain want a reading of

17  the full indictment, but hopefully they will waive that

18  opportunity.

19            **MR. LINCENBERG:**  Of course we waive that, yes.

20            **THE COURT:**  Okay.  You waive it?

21            **DEFENDANT CHAMBERLAIN:**  Yes, I do, Your Honor.

22            **THE COURT:**  And we have dealt with penalties.  I just

23  want to caution you, you don't have to make any statement.  You

24  are entitled to counsel.  You have counsel.  And --

25            **MR. FRENTZEN:**  Same warnings as the last time.

```
 1              THE COURT:  Pardon?

 2          MR. FRENTZEN:  Same warnings as the last time.

 3              THE COURT:  And the same warnings as the last time,

 4     whatever they were.

 5          So what I would like to do now --

 6              THE CLERK:  How does he plead?

 7              THE COURT:  Oh, how do you plead?  Thank you.

 8          DEFENDANT CHAMBERLAIN:  Not guilty, Your Honor.

 9          MR. FRENTZEN:  And we would be in agreement with, you

10     know, release under the same conditions that Mr. Chamberlain

11     was already on.

12              THE COURT:  Do you want to set another date?

13          MR. LINCENBERG:  We should have a date on the

14     calendar.  I think the next thing that is going to take place,

15     once we get past this hearing, is there will be discovery

16     and -- I think there should be at least a status conference.

17              THE COURT:  I agree.

18          MR. LINCENBERG:  Maybe in summer sometime.

19          MR. FRENTZEN:  That's good.

20              THE COURT:  When?

21          MR. LINCENBERG:  Early July.

22              THE COURT:  Sure.

23              THE CLERK:  July 10th at 1:30.

24          MR. FRENTZEN:  That's great.

25          MR. LINCENBERG:  July 10th is fine.
```

1          **THE COURT:**  I will set it due to effective preparation

2    as well as the fact that co-Defendant has not appeared as of

3    yet.

4          **MR. FRENTZEN:**  Thank you, Your Honor.

5          **THE COURT:**  Now, I would like to talk to Counsel and

6    to Mr. Chamberlain and everybody else leave.

7          **MR. FRENTZEN:**  Thank you, Your Honor.

8          **THE CLERK:**  We will need to clear the courtroom.

9          **MR. FRENTZEN:**  I will stay out in case there are any

10   questions.

11       (Pause in proceedings)

12       (The following pages 31 through 34 were placed under

13        seal by Order of the Court and bound separately.)

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were heard in open court:)

2          **THE COURT:**  Let the record reflect all parties are

3   present.  And the courtroom is open.  Mr. Weingarten.

4          **MR. WEINGARTEN:**  Only this, Judge, I mean, I assume

5   the next thing that is going to happen -- well, I don't assume

6   anything in this case.  It has been unpredictable in so many

7   different ways.  Perhaps the next thing that happens is the

8   extradition proceeding formally starts in the UK.  Lynch has to

9   make a decision.  Makes a decision.  But whichever way that

10  goes, I mean, just for purposes of scheduling, should we

11  schedule something for me to come back?  Putting aside --

12         **THE COURT:**  You can come back July 10th.

13         **MR. WEINGARTEN:**  Okay.

14         **THE COURT:**  Yeah.

15         **MR. FRENTZEN:**  That's great.

16         **THE COURT:**  Thank you.

17         **MR. FRENTZEN:**  Thank you, Your Honor.

18         **MR. LINCENBERG:**  I'm sorry, Your Honor, with regard to

19  July 10th if we move forward with a status conference, I assume

20  there won't be a need for Mr. Chamberlain to be there.  If

21  there is, Counsel will let me know; and we will make sure he

22  comes.  As a presumption going into it --

23         **THE COURT:**  He has to file -- any time you don't want

24  him to come, have him just file a waiver.

25         **MR. LINCENBERG:**  Can we do it -- an oral waiver right

1    now of the right to proceed without him?

2              **THE COURT:**  No.  I want a written waiver each time.

3              **MR. LINCENBERG:**  Each time?

4              **THE COURT:**  Yes.

5              **MR. FRENTZEN:**  Let's wait to see what happens.

6              **THE COURT:**  Because I may have to set a trial date so.

7              **MR. FRENTZEN:**  Thank you, Your Honor.

8                    (Proceedings adjourned at 2:22 p.m.)

9                          ---oOo---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, April 3, 2019

_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter