1  Gary S. Lincenberg - State Bar No. 123058
       glincenberg@birdmarella.com
2  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
3  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
4  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
5
   Attorneys for Defendant Stephen Keith
6  Chamberlain

7

8              **UNITED STATES DISTRICT COURT**

9     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  UNITED STATES OF AMERICA,          CASE NO. 3:18-cr-00577-CRB

12              Plaintiff,              **DEFENDANT STEPHEN
                                        CHAMBERLAIN'S NOTICE OF MOTION
13       vs.                           AND MOTION FOR ISSUANCE OF
                                        SUBPOENAS TO REENA PRASAD,
14  MICHAEL RICHARD LYNCH AND          PERCY TEJEDA, AND GANESH
    STEPHEN KEITH CHAMBERLAIN          VAIDYANATHAN PURSUANT TO
15                                      FEDERAL RULE OF CRIMINAL
              Defendants.              PROCEDURE 17(c); MEMORANDUM OF
16                                      POINTS AND AUTHORITIES;
                                        DECLARATION OF GARY S.
17                                      LINCENBERG**

18                                      Filed Concurrently with [PROPOSED]
                                        ORDER
19
                                        **REDACTED VERSION OF DOCUMENT
20                                      SOUGHT TO BE SEALED**

21                                      Date:      November 24, 2021
                                        Time:      1:30 p.m.
22                                      Crtrm.:    6

23                                      Assigned to Hon. Charles R. Brever

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that on November 24, 2021, or as soon thereafter as the matter may be heard, defendant Stephen Chamberlain, by and through counsel, will and hereby does move this Honorable Court for an order authorizing the Issuance of Subpoenas *Duces Tecum* to Reena Prasad, Percy Tejeda, and Ganesh Vaidyanathan pursuant to Federal Rule of Criminal Procedure 17(c)(1) and Local Rule 17-2(a). The proposed subpoenas are attached as Exhibits 1 through 3 of the concurrently filed Declaration of Gary S. Lincenberg.

DATED:  November 1, 2021

Gary S. Lincenberg
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____
Gary S. Lincenberg
Attorneys for Defendant Stephen Keith
Chamberlain

**MEMORANDUM OF POINTS AND AUTHORITES**

## I.    INTRODUCTION AND BACKGROUND

Defendant Stephen Chamberlain respectfully requests that the Court issue document subpoenas to produce documents to Reena Prasad, Percy Tejeda, and Ganesh Vaidyanathan pursuant to Federal Rule of Criminal Procedure 17(c). Copies of the proposed subpoenas are attached as Exhibits 1 through 3 of the concurrently filed Declaration of Gary S. Lincenberg ("Lincenberg Decl.").

After several years of an investigation targeting Sushovan Hussain, Michael Lynch, and Stephen Chamberlain, in 2016 the government indicted only Mr. Hussain. Following the Hussain trial, the government called into the grand jury three former Autonomy accounting employees whose testimony specifically focused on Mr. Chamberlain: Reena Prasad, Percy Tejeda, and Ganesh Vaidyanathan. These three former employees had provided information to their supervisor Brent Hogenson in connection with Hogenson's 2010 internal complaint challenging Autonomy's accounting practices. Their testimony relates primarily to accounting decisions made in late 2009 and early 2010 for sales to Value Added Resellers (such as the Capax/Eli Lilly transactions). And it relates to the allegation in the Superseding Indictment that Autonomy fired Hogenson because he questioned whether Autonomy's financial statements were accurately stated. SI ¶ 23(n). It is clear that these three witnesses will play a central role in Chamberlain's trial.

The emails produced in discovery make clear that these three communicated with Hogenson about the subject accounting practices. The emails, and common sense, also make clear that Hogenson's subordinates used personal emails, text messages, and/or social media accounts to keep some of their communications off of the Autonomy server. *First*, the government's productions contain few communications that explain how Hogenson gathered the information contained in his 2010 letter. Some emails suggest that this information was gathered from Prasad, Tejeda, and Vaidyanathan. ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



CHAMBERLAIN'S MOTION FOR RULE 17(c) SUBPOENAS (PRASAD, TEJEDA, VAIDYANATHAN)



The government produced at least some of Hogenson's communications of these purported concerns to Lynch and Autonomy's auditors. *See* Lincenberg Decl. Exs. 7 & 8. But, despite extensive searches through the discovery materials produced by the government, Chamberlain has been unable to locate many communications from Hogenson's team *preceding* his June 22, 2010 email to Lynch. Nevertheless, the discovery received in the UK civil proceedings, as well as the later-in-time emails make clear that Hogenson's team members had already been communicating with each other about their concerns prior to June 22, 2010.

*Second*, it does not appear that the government served subpoenas personally on Prasad, Tejeda, or Vaidyanathan for documents.

*Third*, some of the Autonomy emails reveal that personal email accounts were used to communicate with Hogenson. They demonstrate, for example, that Tejeda used his personal Hotmail account with Hogenson for work-related emails. And the discovery shows that Tejeda also downloaded Autonomy documents to his personal computer. A forensic analysis of Hogenson's "main laptop" indicates that Hogenson's work email account "contains 40 emails

to/from potejeda@hotmail.com." Lincenberg Decl. Ex. 9. Likewise, in another post-termination communication between Tejeda and Joel Scott, Autonomy's in-house counsel, Tejeda admitted that he "made copies of" certain emails that he then copied onto a jump drive and also saved work materials to his personal computer. Lincenberg Decl. Ex. 10. Tejeda, Prasad and Vaidyanathan should be compelled to produce any relevant documents in their personal possession to Chamberlain.

## II.    ARGUMENT

Federal Rule of Criminal Procedure 17(c)(1) authorizes the Court to issue a subpoena to "order [a] witness to produce any books, papers, documents, data, or other objects the subpoena designates." *See also* Local Rule 17-2. To compel production of documents before trial, the moving party must establish the four requirements set forth in *United States v. Nixon*, 418 U.S. 683, 699 (1974):

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

The proposed subpoenas meet all four *Nixon* requirements.

*First*, documents from Hogenson's subordinates are likely to be both admissible and relevant. Their grand jury testimony suggests that the government will attempt to use them to suggest that Chamberlain engaged in improper accounting practices. Presenting to the jury only those statements which the Hogenson subordinates chose to put on the Autonomy server, while concealing the off-server communications, would present an unfair picture to the jury. Common sense suggests that the off-server communications are where colluders are more likely to reveal their true thoughts. They are plainly relevant to Mr. Chamberlain's defense.

*Second*, the bulk of the information sought by the subpoenas is not otherwise procurable in advance of trial or otherwise. The documents sought are exclusively within the possession, custody, and control of Prasad, Tejeda, and Vaidyanathan. Therefore they cannot be otherwise

1  obtained in advance of trial through other means.

2  *Third*, Chamberlain cannot reasonably prepare for trial without reviewing the

3  communications of the three former Autonomy employees whom the government called to the

4  grand jury to secure an indictment against him. The *Hussain* trial transcript confirms that

5  Chamberlain was uninvolved in the supposed side agreement discussions with the Value Added

6  Resellers, had little involvement in hardware sale discussions with end users, and was forthright

7  with the outside auditors. While the government will elicit testimony from a few others who

8  provide 20/20 hindsight criticism of accounting decisions, Hogenson's subordinates provided real

9  time criticism of Mr. Chamberlain's work. As such, it is critical for Chamberlain to obtain a

10  complete set of their communications with each other.

11  *Fourth*, this application is made in good faith and cannot be dismissed as a mere fishing

12  expedition. Chamberlain seeks a narrow category of documents from three individuals from whom

13  the government elicited grand jury testimony that likely resulted in his indictment. He has tailored

14  the subpoenas towards the subject matter of their grand jury testimony, and has requested

15  materials that pertain to him. For the reasons set forth above, he has good reason to believe that

16  there are more communications among Hogenson's subordinates that were not captured by the

17  government's previous subpoenas or otherwise provided by Chamberlain.

18  **III.   CONCLUSION**

19  For these reasons, the Court should issue the subpoenas to Prasad, Tejeda, and

20  Vaidyanathan attached as Exhibits 1 through 3 to the accompanying Declaration of Gary S.

21  Lincenberg.

22  DATED:  November 1, 2021              Gary S. Lincenberg
                                        Bird, Marella, Boxer, Wolpert, Nessim,
23                                      Drooks, Lincenberg & Rhow, P.C.

24

25                               By:  _____
26                                         Gary S. Lincenberg
27                               Attorneys for Defendant Stephen Keith
                                 Chamberlain
28

**DECLARATION OF GARY S. LINCENBERG**

I, Gary S. Lincenberg, declare as follows:

1. I am an active member of the Bar of the State of California and a Principal with Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, PC, attorneys of record for Defendant Stephen Keith Chamberlain in this action. I make this declaration in support of Defendant Stephen Chamberlain's Notice of Motion and Motion for Issuance of Subpoenas to Reena Prasad, Percy Tejeda, and Ganesh Vaidyanathan Pursuant to Federal Rule of Criminal Procedure 17(c). Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2. Attached as **Exhibits 1 through 3** are proposed subpoenas to Reena Prasad, Percy Tejeda, and Ganesh Vaidyanathan, the issuance of which this application asks the Court to authorize.

3. Attached as **Exhibit 4** is a true and correct copy of an excerpt of the transcript of Reena Prasad's grand jury testimony in this case from November 1, 2018.

4. Attached as **Exhibit 5** is a true and correct copy of an excerpt of the transcript of Percy Tejeda's grand jury testimony in this case from November 1, 2018.

5. Attached as **Exhibit 6** is a true and correct copy of an excerpt of the transcript of Ganesh Vaidyanathan's grand jury testimony in this case from November 1, 2018.

6. Attached as **Exhibit 7** is a true and correct copy of a document received in discovery from the government in this case under the Bates number SEC-FBI-00413093.

7. Attached as **Exhibit 8** is a true and correct copy of a document received in discovery from the government in this case under the Bates number HP-SEC-00384672.

8. Attached as **Exhibit 9** is a true and correct copy of a document received in discovery from the government in this case using the identifying number D002106727.

9. Attached as **Exhibit 10** is a true and correct copy of a document produced by the discovery form the government in this case using the identifying number POS00118492.

1     I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct, and that I executed this declaration on November 1, 2021, at Los

3  Angeles, California.

4

5  _____

6  Gary S. Lincenberg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                     Plaintiff,

    v.

Michael Richard Lynch and Stephen Keith Chamberlain,

                     Defendant(s).

SUBPOENA TO PRODUCE
DOCUMENTS OR OBJECTS
IN A CRIMINAL CASE

Case No.: 3:18-cr-00577-CRB

TO: Reena Prasad

YOU ARE COMMANDED to produce at the place, date, and time specified the document(s) or object(s) indicated below.  If compliance would be unreasonable or oppressive, you may file a motion requesting the court to quash or modify the subpoena, to review the documents in camera, or to permit production only pursuant to a protective order.

| PLACE | | | | COURTROOM/JUDGE |
|---|---|---|---|---|
| ☒ U.S. Courthouse | ☐ U.S. Courthouse | ☐ U.S. Courthouse | ☐ U.S. Courthouse | 6/Breyer |
|    450 Golden Gate Ave. |    280 South First St. |    3140 Boeing Ave. |    1301 Clay Street | **DATE AND TIME** |
|    San Francisco, CA 94102 |    San Jose, CA 95113 |    McKinleyville, CA 95519 |    Oakland, CA 94612 | 12/30/2021 9:00 AM |

*If the document(s) or object(s) are produced in advance of the date specified, either to the court in an envelope delivered to the clerk's office or to the issuing attorney whose name and address appears below, no appearance is necessary.*

The following document(s) or object(s) shall be produced:

   **See Attachment 1**

NOTE: Subpoena forms requiring the appearance of a witness to testify at a criminal proceeding or to testify and bring documents to a criminal proceeding, must use Form CAND 89A, *Subpoena to Testify in a Criminal Case*) or for the production of state law enforcement personnel or complaint records (CAND 89C, *Subpoena to Produce State Law Enforcement Personnel Or Complaint Records in a Criminal Case*) are available at the Court's website: cand.uscourts.gov.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Gary S. Lincenberg; Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow PC; 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561; (310) 201-2100; glincenberg@birdmarella.com

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE | PLACE |
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ YES ☐ NO   AMOUNT |
| SERVED BY (PRINT NAME) | | TITLE |

| DECLARATION OF SERVER |
|---|
| I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.<br><br>Executed on _____    _____<br>　　　　　　　　　　　DATE　　　　　　　　　　　　　　　SIGNATURE OF SERVER<br><br>　　　　　　　　　　　　　　　　　　　　　　　　　　ADDRESS: |

| ADDITIONAL INFORMATION |
|---|
| |

## ATTACHMENT 1

1.      Written communications from March 1, 2009 through December 31, 2010, including but not limited to emails, text messages, and messages on chat applications and/or social media platforms, relating to Autonomy Corporation PLC ("Autonomy") and/or Stephen Chamberlain, between you and (a) Matthew Stephan, (b) Percy Tejeda, (c) Ganesh Vaidyanathan, and/or (d) Brent Hogenson.

2.      Written communications relating to your testimony before the Grand Jury on November 1, 2018.

3.      Personal records of phone calls between you and Matthew Stephan, Percy Tejeda, Ganesh Vaidyanathan and/or Brent Hogenson from July 1, 2010 through August 31, 2010.

4.      Any personal notes, memoranda, journal entries, or other documents in your possession, custody or control concerning Stephen Chamberlain.

# EXHIBIT 2

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SUBPOENA TO PRODUCE |
| Plaintiff, | DOCUMENTS OR OBJECTS IN A CRIMINAL CASE |
| v. | Case No.: 3:18-cr-00577-CRB |
| Michael Richard Lynch and Stephen Keith Chamberlain, | |
| Defendant(s). | |

TO: Percy Tejeda

YOU ARE COMMANDED to produce at the place, date, and time specified the document(s) or object(s) indicated below.  If compliance would be unreasonable or oppressive, you may file a motion requesting the court to quash or modify the subpoena, to review the documents in camera, or to permit production only pursuant to a protective order.

| PLACE | | | | COURTROOM/JUDGE |
|---|---|---|---|---|
| ☒ U.S. Courthouse<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 | ☐ U.S. Courthouse<br>280 South First St.<br>San Jose, CA 95113 | ☐ U.S. Courthouse<br>3140 Boeing Ave.<br>McKinleyville, CA 95519 | ☐ U.S. Courthouse<br>1301 Clay Street<br>Oakland, CA 94612 | 6/Breyer |
| | | | | DATE AND TIME<br>12/30/2021 9:00 AM |

*If the document(s) or object(s) are produced in advance of the date specified, either to the court in an envelope delivered to the clerk's office or to the issuing attorney whose name and address appears below, no appearance is necessary.*

The following document(s) or object(s) shall be produced:
   **See Attachment 1**

NOTE: Subpoena forms requiring the appearance of a witness to testify at a criminal proceeding or to testify and bring documents to a criminal proceeding, must use Form CAND 89A, *Subpoena to Testify in a Criminal Case*) or for the production of state law enforcement personnel or complaint records (CAND 89C, *Subpoena to Produce State Law Enforcement Personnel Or Complaint Records in a Criminal Case*) are available at the Court's website: cand.uscourts.gov.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Gary S. Lincenberg; Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow PC; 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561; (310) 201-2100; glincenberg@birdmarella.com

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE | PLACE |
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ YES  ☐ NO   AMOUNT |
| SERVED BY (PRINT NAME) | | TITLE |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

                     DATE                                  SIGNATURE OF SERVER

                                                                   ADDRESS:

ADDITIONAL INFORMATION

**ATTACHMENT 1**

1.      Written communications from March 1, 2009 through December 31, 2010, including but not limited to emails, text messages, and messages on chat applications and/or social media platforms, relating to Autonomy Corporation PLC ("Autonomy") and/or Stephen Chamberlain, between you and (a) Reena Prasad, (b) Matthew Stephan, (c) Ganesh Vaidyanathan, and/or (d) Brent Hogenson.

2.      Written communications relating to your testimony before the Grand Jury on November 1, 2018.

3.      Personal records of phone calls between you and Reena Prasad, Matthew Stephan, Ganesh Vaidyanathan and/or Brent Hogenson from July 1, 2010 through August 31, 2010.

4.      Any personal notes, memoranda, journal entries, or other documents in your possession, custody or control concerning Stephen Chamberlain.

# EXHIBIT 3

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | SUBPOENA TO PRODUCE |
|---|---|
| Plaintiff, | DOCUMENTS OR OBJECTS IN A CRIMINAL CASE |
| v. | Case No.: 3:18-cr-00577-CRB |
| Michael Richard Lynch and Stephen Keith Chamberlain, | |
| Defendant(s). | |

TO: Ganesh Vaidyanathan

YOU ARE COMMANDED to produce at the place, date, and time specified the document(s) or object(s) indicated below.  If compliance would be unreasonable or oppressive, you may file a motion requesting the court to quash or modify the subpoena, to review the documents in camera, or to permit production only pursuant to a protective order.

| PLACE | COURTROOM/JUDGE |
|---|---|
| ☒ U.S. Courthouse  450 Golden Gate Ave.  San Francisco, CA 94102 ☐ U.S. Courthouse  280 South First St.  San Jose, CA 95113 ☐ U.S. Courthouse  3140 Boeing Ave.  McKinleyville, CA 95519 ☐ U.S. Courthouse  1301 Clay Street  Oakland, CA 94612 | 6/Breyer |
| | DATE AND TIME  12/30/2021 9:00 AM |

*If the document(s) or object(s) are produced in advance of the date specified, either to the court in an envelope delivered to the clerk's office or to the issuing attorney whose name and address appears below, no appearance is necessary.*

The following document(s) or object(s) shall be produced:
   **See Attachment 1**

NOTE: Subpoena forms requiring the appearance of a witness to testify at a criminal proceeding or to testify and bring documents to a criminal proceeding, must use Form CAND 89A, *Subpoena to Testify in a Criminal Case*) or for the production of state law enforcement personnel or complaint records (CAND 89C, *Subpoena to Produce State Law Enforcement Personnel Or Complaint Records in a Criminal Case*) are available at the Court's website: cand.uscourts.gov.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
 Gary S. Lincenberg; Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow PC; 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561; (310) 201-2100; glincenberg@birdmarella.com

CAND 89B  (Rev. 6/17) Subpoena to Produce Documents or Objects in a Criminal Case

| PROOF OF SERVICE | | |
|---|---|---|
| RECEIVED BY SERVER | DATE | PLACE |
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | FEES AND MILEAGE TENDERED TO WITNESS<br><br>☐ YES  ☐ NO   AMOUNT $ |
| SERVED BY (PRINT NAME) | | TITLE |

| DECLARATION OF SERVER |
|---|
| I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.<br><br>Executed on _____     _____<br>                     DATE                      SIGNATURE OF SERVER<br><br>                                              ADDRESS |

ADDITIONAL INFORMATION

## ATTACHMENT 1

1.      Written communications from March 1, 2009 through December 31, 2010, including but not limited to emails, text messages, and messages on chat applications and/or social media platforms, relating to Autonomy Corporation PLC ("Autonomy") and/or Stephen Chamberlain, between you and (a) Reena Prasad, (b) Matthew Stephan, (c) Percy Tejeda, and/or (d) Brent Hogenson.

2.      Written communications relating to your testimony before the Grand Jury on November 1, 2018.

3.      Personal records of phone calls between you and Reena Prasad, Matthew Stephan, Percy Tejeda, and/or Brent Hogenson from July 1, 2010 through August 31, 2010.

4.      Any personal notes, memoranda, journal entries, or other documents in your possession, custody or control concerning Stephen Chamberlain.

Document Filed Under Seal

# EXHIBIT 4

Document Filed Under Seal

**EXHIBIT 5**

Document Filed Under Seal

**EXHIBIT 6**

# EXHIBIT 7

# REDACTED
# REDACTED
# REDACTED
# REDACTED
# REDACTED
# REDACTED
# REDACTED

---------- Forwarded message ----------
From: **Brent Hogenson** <Brent.Hogenson@autonomy.com>
Date: Tue, Jun 22, 2010 at 4:36 PM
Subject: FW: CONFIDENTIAL

1

BHOGE004902

To: bphogenson@gmail.com

---

**From:** Brent Hogenson
**Sent:** Tuesday, June 22, 2010 4:36 PM
**To:** 'Mike Lynch'
**Subject:** CONFIDENTIAL

Dear Mike,

We consolidated the finance team in the Americas during the second quarter of 2010.  As part of this effort, I asked the team to review all financial accounts and account reconciliations across all business units in the Americas as I wanted to ensure that any issues were identified.

During this review I became concerned that Autonomy may have engaged in multiple material transactions with resellers of our software where the available information suggests that we may have materially misstated revenue and income within our reported financial statements in 2008, 2009 and Q1 2010.  The evidence that I have gathered suggests that members of your senior management team and other employees may have been engaging in seven and eight figure transactions with resellers where 1) there was no end user and the reseller does not have the ability make the payments under the agreement; 2) there appear to be resellers with related party relationships on revenue transactions; and 3) there appear to be barter transactions where the economic benefit on both sides of the transaction  appears to be materially overstated.  I consider this a qualifying disclosure made in good faith based upon the evidence currently available to me.

I request a meeting with the audit committee prior to the release of Autonomy's Q2 2010 financial statements to review these matters and ensure that material misstatements, if any, are corrected prior to releasing future financial statements.

I would appreciate your prompt response to my request

**Brent Hogenson**

2

FOIA Confidential Treatment Requested                                                                 BHOGE004903

**President Autonomy Interwoven**

**CFO Autonomy Americas**
**Tel: 408.953.7058**
**Mobile: 408.718.1376**
**E-mail: brent.hogenson@autonomy.com**

3

          BHOGE004904

# EXHIBIT 8

**To:** 'robknight@deloitte.co.uk'[robknight@deloitte.co.uk];
'rknights@deloitte.co.uk'[rknights@deloitte.co.uk]
**From:** Brent Hogenson
**Sent:** Sat 6/26/2010 2:36:10 PM
**Importance:** High
**Subject:** IMPORTANT AUDIT RELATED QUESTIONS
Q1 2010 Closed Deals 31.03.10 v6 07.04.10.xls
2009-10-01 - First Amend to Autonomy VAR Agrmt_Capax executed.pdf
FW: Lilly
Capax December 2009 Agreement.pdf
Eli Lilly June 2010 Agreement.pdf
Eli Lilly SMS Meetings.doc
Problem Accounts 6_17.xls

June 26, 2010

Dear Richard, Rob,

You may remember me from the work done by Deloitte during the acquisition of Interwoven by Autonomy in March 2009.  I was the VP of Finance at Interwoven and have been promoted to the Chief Financial Officer in the Americas for Autonomy Group.

We consolidated the finance team in the Americas from all subsidiaries and business units during the second quarter of 2010.  As part of this effort, I asked the Americas finance team to review all financial accounts, account reconciliations and significant transactions across all subsidiaries and business units in the Americas as I wanted to ensure that were no material issues within the Americas.

During this review, I identified a few questions and have reported these to Mike Lynch the CEO of Autonomy and have had further discussions with Mike Lynch and Andy Kanter the COO of Autonomy over the last week beginning June 22, 2010.  Despite my requests, I have yet not been able to have any direct contact with the Audit Committee but have had a few conversations and exchange of letters with both Mike Lynch and Andy Kanter since June 22, 2010.  Mike Lynch has requested that I not involve the Cambridge finance team, and as such, have not discussed these questions with the Group Chief Financial Officer or the Group VP of Finance.  I am sending this letter to provide you with the opportunity to review these questions and ensure that they are properly recorded in our financial statements.  To that end, set forth below is the related information to my questions.  You may need to request additional information, that is not available to me, related to these questions from Autonomy to ensure that they are properly

recorded in our financial statements.

**Question #1) Is revenue properly recognized on reseller transactions where there may be no End User and the Autonomy sales team subsequently completes an agreement directly with the End User with substantially modified license terms from the standard reseller terms?**

Below is an example of a Capax transaction.

In Q4 2009, reseller Capax gave Autonomy an order for $6,286K for Eli Lilly (attached to this email), of which license revenue recognized in Q4 2009 was $5,987K. The $6,286K was due for payment from Capax on March 31, 2010. As part of our normal collection calls, the collection team contacted the customer to confirm the payment date. The collection team had a difficult time getting a response from the customer and, as this was a large amount, asked me to call the reseller. I called John Baicco, the Managing Partner at Capax, to follow up on the payment date. John asked me if I had discussed the agreement with two members of the Autonomy senior management team. I told him that I would but continued to request payment information. He then told me that the Eli Lilly deal had not closed in Q4 2009 and that he would not be able to make payment until the Eli Lilly closed and he had received payment from Eli Lilly.

In June 2010, Eli Lilly executed a License Agreement directly with Autonomy (attached to this email) for a total value of $5,567K and license value of $5,303K.

In reviewing the SMS customer notes (SMS tracks all Autonomy sales activity) related to Eli Lilly during the period of Q4 2009 through Q2 2010, there were many steps in the sales process required by the Autonomy sales team to complete the transaction with Eli Lilly subsequent to when we recognized revenue in Q4 2009. There was no mention of any steps or sales process to be performed by Capax. I have attached screen shots on meeting notes from SMS during this period.

The Autonomy Revenue policy requires that the license fees be fixed and determinable prior to recognizing revenue. IFRS IAS – 18 section 14 (c) states "the amount of revenue can be measured reliably." It is also potential that IFRS would view the agreement with

the reseller as a consignment.  The Autonomy Revenue policy is written very similar to the requirements under SOP 97-2 and in previous quarter earnings release presentations during 2009 where we report the quarterly results there has been a footnote on a slide that approximately states – where IFRS is silent as to revenue recognition Autonomy follows the requirements of SOP 97-2 (I am not sure of the exact wording but believe that this is close and should be able to be confirmed by reviewing the four quarterly earnings presentations provided during the 2009 earnings calls).

Do the items listed below call into question if the Capax agreement that was recognized as revenue in Q4 2009 was fixed and determinable under the Autonomy Revenue Policy, under IFRS could be measured reliably or a consignment transaction:

1)   The payment from Capax is almost 90 days past the due date on their agreement and the Managing Partner stated that they would not pay Autonomy without payment from Eli Lilly

2)   The Autonomy contract with Eli Lilly in June 2010 provides our right to designate the payee and we agree that payment to designated payee releases Eli Lilly of the payment obligation.  Autonomy may designate payment under our Eli Lilly agreement to Capax and then Capax will pay Autonomy.  I have attached an email from Cambridge finance which instructs the Americas finance team to create pro forma invoices and send them to Capax for them to send to Eli Lilly

3)   Autonomy completed the agreement in June 2010 directly with Eli Lilly rather than a contract between Capax and Eli Lilly

4)   The Autonomy sales channel was significantly involved in the ongoing sales effort without any mention of Capax in the SMS notes

5)   The contractual terms between Autonomy and Eli Lilly have a contingency not included in the Capax agreement where acceptance testing is required against some of the licensed software

6)   The contractual terms between Autonomy and Eli Lilly have added significant warranty provisions that were not included in the Capax agreement

7)   The contractual terms between Autonomy and Eli Lilly have added a change in the maintenance service period for products subject to acceptance testing that was not included in the Capax agreement

8)   Autonomy may deliver the most recent version of our products which will include any updates or upgrades from the shipment made to Capax in Q4 2009.

If not, Eli Lilly will not have the rights to the releases from R&D during Q4 2009 and Q2 2010

9)   Autonomy does not have the right to invoice for products subject to acceptance testing until acceptance testing is complete

Please review the information above, the attached Capax Agreement, the attached Eli Lilly Agreement, the attached email from Cambridge finance on invoicing instructions and attached meeting notes from the SMS system and confirm that the revenue recognized from the Capax agreement in Q4 2009 was properly recorded in our financial statements in Q4 2009.  If it is not properly recorded in Q4 2009, Deloitte and the Audit Committee should consider the multiple similar reseller transaction recognized as revenue from 2008 through Q1 2010, many of which range between $1M and $11M per transaction and the impact on revenue reported within the financial statements during these periods.

Note that many significant payments due from resellers in the Americas on our accounts receivable aging reports remain unpaid significantly beyond the invoice due date and may be considered uncollectable or bad debt but not yet reserved for as of June 2010.  I am unsure if the invoices that remain unpaid on the aging have an end user related to each reseller agreement.  I have attached a spreadsheet named Problem Accounts 6_17 where the notes under the Updates column were made by the Americas collection team.   Also, note the amount past due from Microlink in Question #2 below.

**Question #2) Does the First Amendment to the VAR Agreement with Capax executed in October 2009 (attached to this email) have economic substance and is it properly recorded in the financial statements when considered with the Capax purchase agreements that potentially do not have end users but have payment terms spread into future periods that may somewhat relate in timing to the payments received under this First Amendment to the VAR Agreement with Capax?**

In considering the answer to this question, note that margins achieved by Autonomy on maintenance revenue is substantially greater than 15% and Autonomy is providing 85% of the revenue from EAS maintenance customers and the related cash payments from these EAS customers on their maintenance renewals.  Also, filter the Bill To column in the attached Problem Accounts 6_17 spreadsheet to Capax Global and review the outstanding invoices with significantly extended payment terms and the associated comments from the collection team in the Updates column.  As Chief Financial Officer in the Americas, I ask

you to confirm that the above information has been reviewed by Deloitte and does not have an impact on our reported financial statements.

**Question #3) Is there a financial statement impact with the potential related party relationships identified below on recorded revenue transactions?**

The following information is from a spreadsheet labeled Q4 2009 Closed Deals Final prepared by Cynthia Watkins, Corporate Controller of Autonomy, Inc.

| Inv Date | Reseller – End User | Sales Rep | Lic Revenue |
|---|---|---|---|
| 31-Dec | Microlink – Discovery LLC | MGMT | 2,000,000 |
| 30-Dec | MicroTech LLC –  (Blank) | MGMT | 9,523,810 |
| 31-Dec | MicroTech LLC –  Amazon | MGMT | 131,418 |
| 31-Dec | MicroTech LLC - Avaya | MGMT | 360,000 |
| 31-Dec | MicroTech LLC - Honeywell | MGMT | 1,800,000 |
| 31-Dec | MicroTech LLC - KPMG | MGMT | 153,000 |
| 31-Dec | MicroTech LLC – Manu Life | MGMT | 1,080,000 |
| 31-Dec | MicroTech LLC – MS | MGMT | 4,656,000 |

In Q1 2010 we invoiced the following (detail from the Problem Accounts 6_17 spreadsheet attached to this email):

| Inv Date | Revenue Summary | Sales Rep | Inv Amount |
|---|---|---|---|
| 31-Mar | Microtech LLC – Vatican | Blank | 11,550,000 |
| 31-Mar | Discover Technologies – Citi | Blank | 4,394,250 |

**HP-SEC-00384676**

I have been told by the finance team in San Francisco that transactions without a sales rep identified are transactions where the end user has not completed the agreement by the end of the quarter in which Autonomy recognizes revenue.  The end user identified above may be a placeholder for an agreement to be negotiated subsequent to the invoice date.  Per the attached spreadsheet Q1 2010 Closed Deals 3.31.10, Manulife and Morgan Stanley may have closed with the end user in Q1 2010 as they are removed from the spreadsheet with negative numbers at the bottom of tab IDOL-K2-UltraSeek. There are many other transactions on the quarterly closed deals spreadsheets to these resellers that have been closed in on the last day of a quarter where the Sales Rep is MGMT throughout 2008 and 2009.

**Related Party Data:**

In February 2010, Autonomy acquired Microlink for $55M.  As part of the acquisition, Autonomy wrote off in approximately $16M of outstanding accounts receivable with due dates as follows:

| Due Date | Amount | |
| --- | --- | --- |
| March 31, 2009 | 6,875,000 | 10 months past due |
| June 30, 2009 | 4,576,200 | 7 months past due |
| Sept 18, 2009 | 203,250 | 4 months past due |
| Sept 30, 2009 | 2,008,238 | 4 months past due |
| Feb 14, 2010 | 2,300,000 | (1) |
| Total | 15,962,688 | |

(1) The February 14th invoice above is writing off the Dec 31, 2009 invoice to Discovery Technologies, which had license revenue of $2,000,000 and maintenance of $300,000 for a total of $2,300,000.

Microlink's Address is as follows:

8330 Boone Blvd

Suite 300

Vienna, VA 22182

Phone: 703-556-4440


MicroTech's Address is as follows:

8330 Boone Blvd

Suite 600

Vienna, VA 22182

Phone: 703-691-1073


Discover Technologies has a very limited website.  There is a whitepaper titled Automation Speeds the Ability to Collaborate and Turbo-Charges the Enterprise Search User Experience.  The bottom of the pages of this whitepaper has the following information:

www.DiscoverTechnologies.com | 703-556-4400 | info@microlinkllc.com


I question if the Microlink transaction was partially done to provide a vehicle to 1) write off the $16M in outstanding invoices where a large percent were significantly past due and where there may be potential that there was no End User to pay Microlink; and 2) potentially provide a cash balance to pay invoices on reseller agreements where there may not be an End User due from potentially related party resellers.  As Chief Financial Officer in the Americas, I ask you to confirm that the above information has been reviewed by Deloitte and does not have an impact on our reported financial statements.


**Question #4) Have the barter transactions below been reviewed for the economic**

**benefit and fair value on both sides of the transactions to ensure that they are properly recorded in our financial statements?**

Autonomy made the following purchases of software from FileTek, Inc.:

December 31, 2009          10,367,280

May 11, 2010               11,518,214

Autonomy sold the following license and maintenance revenue to FileTek as follows:

December 31, 2009          8,480,000 IDOL Product

March 31, 2010             9,010,000 500 users Liquid Office plus some OEM product

In a barter transaction, my understanding is that IFRS is not substantially different from GAAP and requires validation of the fair value and economic benefit on both sides of the transaction.  My information is limited; however, I have asked Sean Sullivan, Liquid Office Sales VP, for a low and high range of a liquid office transaction with 500 to 1000 users.  The range that he gave me was $300,000 to $1,000,000, which is only a part of the March 31, 2010 transaction and does not include the OEM product, which is difficult for me to find fair value.  As Chief Financial Officer in the Americas, I ask you to confirm that the above information has been reviewed by Deloitte and does not have an impact on our reported financial statements.

**Question #5) Is the revenue accrued and included in the Q1 2010 financial statements related to maintenance renewals expected to renew from customers who have not yet agreed to renew?**

In Q1 2010 a combined Autonomy, Inc, Etalk, Zantaz and Verity business units recorded a revenue accrual of $6,591K related to customers expected to renew their maintenance contracts where the service period had lapsed prior to March 31, 2010.  The amount related to the maintenance renewals where the service period had not yet lapsed was recorded as deferred revenue.  In our Q2 review as part of consolidating the Americas finance team, it was noted that this revenue accrual calculation expected a significant

percentage of the maintenance renewals that were up to 12 months beyond the end of their last service period, to renew and these business units recorded the revenue for the lapsed service period in the Q1 financial statements.  As Chief Financial Officer in the Americas, I ask you to confirm that the above information has been reviewed by Deloitte and does not have an impact on our reported financial statements.

**Question #6) Are the recorded liabilities and accruals within the financial statements applying IFRS properly and consistently calculated?**

In our Q2 review as part of consolidating the Americas finance team, it was noted that accruals and recorded liabilities across the business units of Autonomy, Inc, Etalk, Zantaz and Verity were either 1) not recorded at all; or, 2) not consistently calculated.  The accruals in question primarily relate to:

1) Commissions and related payroll tax

2) Vacation/PTO

3) Sales Tax

As Chief Financial Officer in the Americas, I ask you to confirm that the above information has been reviewed by Deloitte and does not have an impact on our reported financial statements.

I will inform Mike Lynch and Andy Kanter that I have sent this email to you and provide them with a copy.

I look forward to your response.

Brent Hogenson

**President Autonomy Interwoven**

**CFO Autonomy Americas**
**Tel: 408.953.7058**
**Mobile: 408.718.1376**
**E-mail: brent.hogenson@autonomy.com**

**HP-SEC-00384681**

# EXHIBIT 9

| | |
|---|---|
| **From** | Joel Scott <joels@autonomy.com> |
| **To** | Lars Schou <Lars@SFLData.com> |
| **Cc** | <DCroley@fddcm.com> <DCroley@fddcm.com>; Richard Cheng <Richard@SFLData.com>; Andy Crain <Andy@SFLData.com> |
| **Date** | 13 Aug 2010 at 01:07 |
| **Subject** | Re: Autonomy matter reports |

Can you please resend and relabel the file extension from .zip to something else (eg, .zipp or .piz)


On Aug 12, 2010, at 6:01 PM, "Lars Schou" < Lars@SFLData.com> wrote:

**ATTORNEY WORK PRODUCT**

**PRIVILEGED AND CONFIDENTIAL**

Joel and Dan:

For discussion during the upcoming call, please find attached a zip archive of reports from our review of the assets used by the subject.


(Dan: if you have problems with this attachment, please let me know and we can drop the files off on a disk Friday morning).



**IBM_T43_SN-L3BX014_BRENT**

· AKA 'the sales laptop'

· IBM_T43_Brent_OS_info.rtf provides details of the operating system installation

· IBM_T43_Brent_Account_Info.rtf provides details of user accounts found on the laptop

· IBM_T43_Brent_Internet_history.xls is a listing of readily available internet history from this laptop


**Lenovo_T400_SN-L3ARZ4N_BRENT**

· Subject's main laptop

· Lenovo_T400_Brent_deleted_files.xls is a listing of deleted files (as indicated by the directory) from the laptop's hard drive

· Lenovo_T400_Brent_LNK_file.rtf is a listing of .lnk (shortcut) files

· Lenovo_T400_Brent_Internet_history.xls is a listing of readily available internet history from this laptop

· Between 8/3/2009 and 7/28/2010, 108 emails were sent to the subject's Gmail address

    o 10 of these contain credentials for WebEx sessions

· Subject's work email contains 48 emails to/from potejeda@hotmail.com

· Internet Explorer history shows file accessed from a flash drive (e:/contacts.xls) at 1:15 PM on 7/28/2010; no file by this name is found on the hard drive

· SlingPlayer software (for video 'placeshifting') uninstalled at 1:18 PM on 7/28/2010

· In the user profile bhogenson, the most recent file "Last Accessed" time/date stamp is 1:22 PM on 7/28/2010


**Interwoven_USB_BRENT (1 GB flash drive)**

· Serial # matches one of two USB devices that had been connected to the T400 laptop

    o The other device is a Kingston DataTraveler flash drive, which was not provided to SFL Data

· Interwoven_USB_Brent_deleted_files.xls is a listing of deleted files (as indicated by the directory) from the flash drive

If you have any questions, please feel free to contact me.

Regards,
Lars


--

# EXHIBIT 10

July 30, 2010

Joel,

As discussed in the meeting on July 29, 2010, where I was terminated, please find enclosed 2 jump drives that included certain e-mails that I made copies of. I do not have any copies of these jump drives. In addition, I have enclosed certain hard copies made of such e-mails, as well as printouts of items I had at my home office, as part of my work from home arrangement.


In addition, as part of a routine to ensure that I did not lose any work information that may have been saved to my laptop, I had backed up my laptop on 2 external hard drives. Such hard drives also include - personal files and pictures.   Please contact my attorney, Chris Cooke, at his office number – 650-638-2370, on Monday as he is on vacation today, in order coordinate the best manner to provide you with the applicable information that is on such hard drives. In addition, if you have additional questions regarding this matter, please contact my attorney.



Percy Tejeda