Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )      No. 18-cr-00577-CRB
                               )
STEPHEN KEITH CHAMBERLAIN ,    )
                               )
          Defendant.           )      San Francisco, California
_____)

                          Wednesday, December 1, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**   (By Zoom Webinar)

For Plaintiff:          STEPHANIE M. HINDS
                        Acting United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                   BY:  **ADAM  A. REEVES**
                        **ASSISTANT UNITED STATES ATTORNEY**


For Defendant:          BIRD MARELLA BOXER WOLPERT NESSIM
                          DROOKS LINCENBERG RHOW
                        1875 Century Park East
                        23rd Floor
                        Los Angeles, California  90067-2561
                   BY:  **GARY S. LINCENBERG, ESQ.**
                        **RAY SEILIE, ESQ**.



Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
              Official Reporter, U.S. District Court

1    **Wednesday - December 1, 2021**                          **1:35 p.m.**

2                          **P R O C E E D I N G S**

3              **THE COURTROOM DEPUTY:**  Calling Criminal Action

4    CR-18-0577, USA versus Stephen Keith Chamberlain.  Counsel,

5    please state your appearances.

6              **MR. REEVES:**  Adam Reeves for the United States.  Good

7    afternoon, Your Honor.

8              **THE COURT:**  Good afternoon.

9              **MR. LINCENBERG:**  Good afternoon, Your Honor.  Gary

10   Lincenberg and Ray Seilie.  We don't have Twin Peaks in the

11   background of us, just a blank white wall.  And our client,

12   Mr. Chamberlain, we are waiving his appearance.

13             **THE COURT:**  Thank you.  That's fine.

14        Let me raise an issue before we get into the substance of

15   your motions, and where we are exactly on it, and so forth.

16   Because, I learned through the filings that Dr. Lynch has been

17   ordered to be extradited?  Is that correct?

18        I have not received any formal notification, not that I --

19   not that I would.  But obviously, that's an issue in terms of

20   how I deal with the entire case, going forward.

21        So, I don't know.  Mr. Reeves, what can you tell me, and

22   where are we on that?

23             **MR. REEVES:**  I can tell you, Your Honor, that the --

24   as I understand it, that the U.K. court has authorized the

25   extradition.  That that happened sometime this summer.  And

1     that the process then follows to the equivalent of the foreign

2     secretary or the secretary of state for the U.K., where the

3     extradition then needs to be approved.  And that's where the

4     extradition now sits.

5          And I think there's been -- I've had further information

6     indicating that there have been requests for extensions of time

7     around the resolution of the U.K. civil action that I know the

8     Court is familiar with.  And I think, as far as I understand

9     it, there is the expectation that there will be a resolution or

10    a judgment announced in the U.K. civil action in January, 2022.

11         And I think the foreign secretary's office is weighing

12    whether or not to wait until that happens before, you know,

13    deciding and finalizing the extradition.

14         That's my best understanding.

15              **MR. LINCENBERG:**  Yes.  I think Mr. Reeves has

16     accurately described it, Your Honor.

17         Our understanding is that after the Court signed off on

18    extradition, that Mr. Lynch appeal the matter, the next step

19    would be to the home secretary.  The home secretary is

20    considering whether or not to approve the extradition, asked

21    for an extension of time for further consideration.  And that's

22    what's pending.

23         And my understanding is consistent with Mr. Reeves that in

24    the civil case there's an opinion due, I guess, somewhere

25    probably around January or February.

1          **THE COURT:**  Okay.  Next question.  In the event the

2     home secretary -- whatever the right term is, but -- grants

3     the extradition request, what then?

4          **MR. LINCENBERG:**  I -- I believe there will be further

5     appeals.

6          **THE COURT:**  What are the nature -- I mean, maybe

7     Mr. Reeves can tell me.  What happens --

8          **MR. REEVES:**  I don't -- you know, I don't know the

9     exact answer to that.  But my understanding is the process

10    that is been exhausted, and I would expect the extradition to

11     be effected.

12       And on this basis, the government continues to be planning

13    on the basis that Dr. Lynch will be extradited from the U.K. to

14    the United States next year.

15          **THE COURT:**  Well, next year is a big time.

16          **MR. REEVES:**  True.  I wish I could be more precise.

17          **THE COURT:**  I mean, I look at next year as 365

18     detains, unless it's Leap Year.

19          **MR. REEVES:**  That's true.

20          **THE COURT:**  So I don't know whether you're saying

21    we'll see Doctor -- is it Dr. Lynch?  I don't want to be

22    disrespectful to anybody, so -- I think it is Dr. Lynch.

23          **MR. REEVES:**  Dr. Lynch.

24          **THE COURT:**  Whether we'll see him here in February,

25    or we're going to see him in the next -- in December of 2022.

1         **MR. REEVES:**  I'm unsure about the timing, Your Honor.

2         **THE COURT:**  Well, okay.  But Mr. Reeves, I think it

3    would be very helpful to the Court if you find out the time.

4         **MR. REEVES:**  Okay.

5         **THE COURT:**  You have -- first of all, the Department

6    of Justice has a person in -- I don't know whether in Paris or

7    in London -- who's in charge of these sorts of things.

8         **MR. REEVES:**  True.  Yes.  London.

9         **THE COURT:**  So why don't you have a conversation, and

10   find out what you can tell me?

11        **MR. REEVES:**  I will.

12        **THE COURT:**  And by "me," I mean publicly -- in other

13   words, I don't want an *ex parte* communication.  But I want to

14   know.  Because -- because my decisions, at least in part --

15   and you'll see in a minute -- depend on whether we're going to

16   see -- whether we're going to see Dr. Lynch here in February,

17   or we're going to see him in December.  If at all.

18        **MR. REEVES:**  Understood.  I will find that out,

19   Your Honor.

20        **THE COURT:**  I would like as precise a timetable as

21   you can give, including whatever -- you know, there seems to

22   be some issue or disagreement -- and maybe not -- as to what

23   the appellate remedies are after -- after there has been an

24   order by the home secretary.

25     I'd like to know what they are.  How they play in this.

1    Because that may also have some impact on timing.

2              MR. REEVES:  (Nods head)

3              THE COURT:  Anyway, all right.  There, so I've said

4     that.

5         Now let's go back to Mr. Chamberlain's case.  I understand

6     that there are really two parts that we are talking about here.

7     One are all the subpoenas.  And the other is a bill of

8     particulars.

9              MR. LINCENBERG:  Right.  So, three parts.

10             THE COURT:  All right.  Go ahead.

11             MR. LINCENBERG:  Break them out to --

12             THE COURT:  Mr. Lincenberg, go ahead.

13             MR. LINCENBERG:  I break it out into Chamberlain's

14     requested Rule 17 subpoenas, the government's requests, and

15     then the third part would be the bill of particulars.

16        And we can update the Court.  Mr. Reeves and I have been

17    meeting and conferring.  Some of that was contained in my

18    brief, but I can bring the Court up to date further on where

19    we're at.

20             THE COURT:  Yeah.  Well, my understanding is, looking

21     at the reply brief and so forth, is that it appeared, as to

22     those issues, that you are negotiating some agreement.

23             MR. REEVES:  (Nods head)

24             THE COURT:  And is that -- so that I need not

25     intervene at this point on those issues.

1        **MR. LINCENBERG:**  Right.  That's fair.

2        I mean, I think, just to break it down, Your Honor, with

3    regard to Chamberlain's Rule 17 application, the Court -- we

4    asked that the Court enter an order granting those, and then

5    signing Exhibits 10, 11, and 12 to the reply brief, which is

6    Document 94, which will trigger the beginning of the letters

7    rogatory process.

8        **THE COURT:**  Okay.  My question, Mr. Reeves, is:  Do

9     you have any objection?

10        **MR. REEVES:**  No, Your Honor.

11        **THE COURT:**  Okay.  So I will sign 10, 11 and 12.

12    Hopefully I can find them.  And, and that takes care of that

13    issue.  I mean, that -- yes, you're quite right.  It does

14    require divine intervention, and you've gotten it.

15        Anything else on the subpoenas?

16        **MR. LINCENBERG:**  No; I think with regard to those,

17    the clerk then has to -- there are steps that are contained

18    there for the clerk to issue -- to issue the letters

19    rogatories.

20        **THE COURT:**  Okay.

21        **MR. LINCENBERG:**  With regard to the government's

22    Rule 17 application, Mr. Reeves and I have met and conferred

23    on that.  I've indicated a willingness to agree to some

24    language.  We have traded potential language.

25        As recently as an hour ago, Mr. Reeves suggested some new

1   potential language.  I just had a chance to look at it.  He

2   suggested that we table that, meet and confer.

3       My expectation is that we will be able to come to an

4   agreement on what that language should be for the government's

5   proposed subpoenas.

6           **THE COURT:**  Great.  Great.  That's fine.  And try to

7   -- and see -- if you do have an agreement and I need to sign

8   something, I'll do it.  Okay.

9           **MR. LINCENBERG:**  Okay.

10          **MR. REEVES:**  Thank you, Your Honor.

11          **MR. LINCENBERG:**  And then with regard to the bill of

12  particulars, Your Honor --

13          **THE COURT:**  Let me first address my tentative thought

14  about the bill of particulars.

15          **MR. LINCENBERG:**  Okay.

16          **THE COURT:**  My tentative thought is not to decide it

17  now.  I would far prefer, but not necessarily -- I'm not

18  necessarily wedded to this, but I would far prefer being able

19  to address it when I have both parties in front of me.

20  Because it does affect both parties.  If -- I put the big

21  "If."  If we're going to come to what I call a -- it's too

22  late to call it that -- an early resolution of those issues.

23  We may not be able to, and certainly not early.

24      But if Dr. Lynch is going to be here in a reasonable

25  period of time, then I will defer a decision on that.  If -- if

1    not, or if it's uncertain, then I think that Mr. Lincenberg is

2    entitled to some response to the motion.

3          So what I would do is put -- I could deny it without

4    prejudice.  Or I can simply continue it to, like, mid-February.

5    Because on that time, I think you'll have the civil judgment

6    from -- from the English court.  At least, that's the present

7    expectation.  And then maybe we'll also have a better idea on

8    timelines.

9          So that would be my -- that would be my tentative ruling.

10   So --

11              **MR. REEVES:**  Your Honor?

12              **THE COURT:**  -- is there some reason why I shouldn't

13    do that?

14              **MR. REEVES:**  No.  I think that makes good sense,

15    Your Honor.

16          I agree with Mr. Lincenberg that we have been conferring

17   about this, and I actually think that there's room for us to

18   come to agreement even about the bill of particulars, but I'd

19   like to talk to him further about that.

20          But I think your suggestion around the arrival of

21   Dr. Lynch and the timing weighs perhaps in favor of adjourning

22   any ruling on the motion until mid-February.  And at that time,

23   the government can report back to the Court about the schedule

24   for the extradition.

25              **THE COURT:**  Okay.

1              **MR. REEVES:**  Ideally --

2              **THE COURT:**  Yeah.  I would also point out that I

3    think Mr. Lincenberg has a good point.  I think that there is

4    -- you know, there is merit to his motion.  It's not -- it's

5    not interposed for delay.  To the contrary, it's actually

6    interposed in order to expedite the case.  And I think that is

7    perfectly legitimate.  I appreciate his making it.

8         And I think that you all ought to sit down and see if you

9    can come to terms with it, because it's -- you don't

10   necessarily want to get me involved in it.  I mean --

11             **MR. LINCENBERG:**  Your Honor --

12             **THE COURT:**  -- God knows --

13             **MR. REEVES:**  Well, we're happy to have you involved,

14   but I still agree with you, Your Honor.  And I think that's

15   particularly true as to Count 17.  And I have had discussions

16   with Mr. Lincenberg about that, and look forward to doing

17   more.

18             **THE COURT:**  Okay.

19             **MR. LINCENBERG:**  Your Honor, we're generally okay

20   with that.  But let me just give you my spiel on why bringing

21   this now, and where we're at.  And also, why I'm willing to

22   withdraw this to Counts 1 through 16.

23        So, you know, this case has been going on a long time.

24   I'm no dummy with the underlying facts, but I also didn't sit

25   through the U.K. trial; I didn't sit through the U.S. trial.

1    And, you know, Mr. Reeves and Your Honor are experts in this.

2         And as we -- you know, we are slowly making our way

3    through looking at some of the discovery.  And, you know, my

4    client's an accountant.  There's a zillion accounting decisions

5    that are made in the course of any year, whether you have an

6    alleged fraud or not.

7         And with regard to the transactions that were at issue and

8    discussed in the *Hussain* case, Mr. Reeves' response, and I

9    think is a fair one is:  Lincenberg, you have an idea, you know

10   what this case is about.  And I'll tell you, it's going to be

11   the same transactions as in the *Hussain* trial.

12        And in the government's opposition, Mr. Reeves wrote that,

13   you know, there was highly-detailed testimony, undercuts in the

14   argument about the need for further particulars to clarify what

15   was false and misleading about the financial statements that

16   Chamberlain helped prepare.

17        So if what we're talking about is that as I review

18   discovery and prepare, I should be looking at all these

19   different deals, the Kraft deal, the Lilly deal, the deals

20   through VARs, the software, I get it.  And that's what we'll

21   do.

22        And I think the government against Hussain said:  Look,

23   we've gone through all these deals; we've proven our case for

24   fraud.  And we can address that.

25        But a financial statement, itself, contains a lot of other

1   stuff in it.  And if I'm defending the case by responding to:

2   All right, the government has laid out these 15 different deals

3   that the government believes are fraudulent, that gives me a

4   fair opportunity to know what I'm up against.

5        I just don't want to be in some situation where, because a

6   financial statement is introduced which may contain a thousand

7   different transactions, then I have to sort of you know,

8   shadow-box.

9            **THE COURT:**  Exactly.  That's why I think -- I think

10   your motion has merit.  I've tried to signal that.

11            **MR. LINCENBERG:**  And I think that Mr. Reeves's

12   response is fair.

13        With regard to Count 17, I'd like to take a minute or two

14   more just to talk about --

15            **THE COURT:**  Go ahead.

16            **MR. LINCENBERG:**  -- the meet-and-confer.  And I think

17   that Mr. Reeves is right that with further discussion, we

18   should be able to get through.

19        So as I look at Count 17, there's three key paragraphs.

20   32, 33, and 34.  This is this obstruction conspiracy, is what

21   I'll call it, generally.

22        So 32 lays out five statutes.  And as I rolled through

23   them with Mr. Reeves in our conversation, I think that we came

24   to agreement -- I don't want to bind Mr. Reeves; he can change

25   his mind.

1        But I think we came to an agreement that the statute that

2    applies here to Mr. Chamberlain is the one that's in

3    Sub-Point A, securities fraud.  It's not tampering with

4    witnesses, for example.  I just want to know if that's --

5    that's the case, fine.  I can deal with it.

6        Paragraph 33 is dealing with objectives.  And this also

7    lays out five different objectives.  And Mr. Reeves explained

8    to me:  Sub-Point A applies to your client because falsifying

9    records of HP relates to the overt act that's alleged that in

10   2012 he and Hussain directed Antonia Anderson on this

11   $5.5 million accounting (Inaudible).

12       Fine.  I get that.  I now know that I need to prepare for

13   32.a. and 33.a

14       With regard to 34, 34 lays out a whole bunch of different

15   overt acts.  And the only overt act which appears to allege

16   something against Mr. Chamberlain or conduct by

17   Mr. Chamberlain, is 34.e., which relates to that same point.

18   Saying that Chamberlain caused an employee at HP to falsely

19   record $5.5 million in revenue.

20       Now, his name is mentioned in other overt acts.  Because

21   after he left HP, apparently somebody destroyed his laptop.  I

22   don't think that the government is alleging that Chamberlain

23   had anything to do with that.

24       It's also mentioned in Overt Act O, which says that in May

25   of 2016, Lynch caused an Invoke affiliate to hire Chamberlain.

1    Again, I read that as being an overt act against Lynch, not

2    against Chamberlain.

3        Mr. Reeves wanted to think about that further, whether

4    agreeing to be hired is a part of the conspiracy.  So we're

5    still walking through that.  And I think that further

6    meet-and-confer will get to us that point.

7        But I wanted to alert the Court, I wanted to sort of put

8    on the record why I brought this now, and what we're trying to

9    accomplish, so that I don't have to shadow-box, and I can focus

10   on what's alleged against my client.

11            **THE COURT:**  Well, I appreciate that.  I think that,

12    again -- well, first of all, Mr. Reeves and his team have an

13    intimate understanding of the facts in the case, I would

14    guess.  Whether correct or incorrect, they have seen a

15    complete venting of these facts.  The dress rehearsal was

16    actually a performance.  And it's -- they've seen it; it's

17    going up on appeal.  And so they understand it.

18        And I think that they are in a position to make any number

19   of judgments as to:  Well, that was good, that's not good, we

20   ought to -- we need an extra this, we don't need that.  And I

21   think they ought to do that sooner rather than later.

22        The reason is that I think, in terms of fairness, they are

23   so far ahead of the defense in the case in terms of their

24   knowledge of the -- how can I say it?  The knowledge of what

25   the -- what sticks.  That is, how good is it?  You know, you

1    can have an allegation.  How good is it?  How good is it?  They

2    actually know how good it is.  As least as to if not all,

3    substantially all.

4         Now, what they don't know -- I'm just guessing, because

5    I'm sitting here, in San Francisco, in my chambers -- is

6    whether the court in London, in its opinion, will make certain

7    findings.

8         And I don't even know how that works, by the way.  I mean,

9    I don't know whether a judge, in his opinion, his or her

10   opinion, or the whole court says, you know:  We reviewed all

11   this evidence and we found A, B, C, D and E but not F, G, or

12   whatever.  I don't know what they do.

13        But if they write an opinion and they say something like,

14   quote, "This piece of evidence we reject because da, da, da,"

15   or they say "That piece of evidence was particularly persuasive

16   in establishing, da, da, da."  Now, that is as to Dr. Lynch.

17   We have no idea whether it does directly or indirectly relate

18   to your client.

19        But, I think that they are entitled to consider what some

20   other court thought in terms of their -- in terms of the

21   presentation of evidence.  I don't want to deny them that, that

22   opportunity.

23             MR. LINCENBERG:  (Inaudible)

24             THE COURT:  I do suggest that we -- that's why I

25    don't particularly want to deal with it today, but would

1    prefer doing it in February when, at least, I'd have seen the

2    opinion.  I mean, everybody tells me it's going to be out in

3    January.  They see the opinion, they evaluate it, and it

4    either adds something or nothing at all, or it subtracts, by

5    the way.  It could subtract, if I'm right about what the

6    opinion is geared towards.

7        On the other hand, I could be wrong.  It could have

8    nothing to do with Mr. Chamberlain.  It could do with something

9    else.

10       And we've lost -- we haven't really lost any time, because

11   my guess, Mr. Lincenberg, is that there's plenty you already

12   have that will occupy your time in terms of preparing a defense

13   in the case.  I mean, I think -- you know, as you point out.

14       Maybe the government is -- is a mile ahead of you in terms

15   of how far they've gone.  But, you're catching up.  And part of

16   the catch-up process is to have enough time to catch up, and

17   not to be diverted to other issues.  But that's -- you know,

18   you can make judgments.  You can fill your time in a productive

19   way.  I'm not concerned about that.

20       And I'm not going to rush people to trial.  You know, so

21   far I haven't.  And I'm not about to.  You know.

22       So, anyway, I'd like to postpone it until then because I

23   want to give the government a further opportunity to evaluate

24   their case, and come to some real conclusions.

25       But I will say to Mr. Reeves, quote, "Judgment day,

1    determination day, it's -- it is approaching."  I can't leave

2    Mr. Chamberlain just hanging out there, you know, for some

3    indefinite period of time while we contemplate the scope of the

4    evidence that may or may not be presented against him.

5           MR. REEVES:  I agree, Your Honor.  You know, and

6     that's why I think --

7           THE COURT:  That's in nobody's interest.  No one's

8     interest.

9           MR. REEVES:  I agree.

10          THE COURT:  Okay.

11          MR. REEVES:  I agree, Your Honor.

12          THE COURT:  Yeah.

13          MR. REEVES:  And I am -- just to briefly comment, you

14    know, I definitely agree with regard to Count 17.  And I think

15    it's appropriate for the government to confer about that.  I'm

16    considering that differently from the motion for bill of

17    particulars as it relates to the Counts 1 through 16.  And we

18    will report back to the Court about whether we need a ruling

19    at the next hearing, in precisely the manner that the Court

20    suggests.

21       With regard to Counts 1 through 16, it sounds like the

22    defense has withdrawn its motion, or intends to withdraw its

23    motion.  But, I accept the point.  You know, I think the

24    restatement evidence that went in during the trial against

25    Mr. Hussain is going to be probably the beginning, possibly the

1   ending point, for the specification of which deals are

2   relevant.  And under the facts and circumstances of this case,

3   I don't know how you could analyze it differently.

4       But this whole discussion and the points made by counsel

5   really reinforce that that is a motion best heard when both

6   defendants are present before the Court.

7           **THE COURT:**  Yeah.

8           **MR. REEVES:**  And --

9           **THE COURT:**  But I can't -- if I find out that

10   Dr. Lynch is not going to be here until December of this year,

11   if ever, then what do I do about Mr. Chamberlain?  You know.

12           **MR. REEVES:**  That's fine, Your Honor.  I accept that

13   point, too.  And, why don't we do as the Court has asked.

14   Provide you better information about the schedule, and then we

15   can take it from there.

16           **MR. LINCENBERG:**  Your Honor, we are already on

17   calendar for February 16th.

18           **THE COURT:**  Good.  I'll see you then.

19           **MR. LINCENBERG:**  For a status conference.  So --

20           **THE COURT:**  I'll see you then.

21           **MR. LINCENBERG:**  -- why don't we then continue this

22   until then.

23           **THE COURT:**  I will.  And of course, I'll exclude time

24   because of the complexity of the case, the absence of a

25   co-defendant, and all the other considerations.

1              **MR. REEVES:**   Thank you, Your Honor.

2              **MR. LINCENBERG:**   Thank you, Your Honor.   Thank you,

3      Mr. Reeves.

4              **MR. REEVES:**   Thank you.

5              **THE COURT:**   Everybody have a nice holiday.

6              **MR. LINCENBERG:**   You too.

7              **MR. REEVES:**   You too.   Thank you, Your Honor.

8              **THE COURT:**   Thank you very much.

9         (Proceedings concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States

Court, Northern District of California, hereby certify that the

foregoing is a correct transcript from the record of

proceedings in the above-entitled matter.

*Belle Ball*

___/s/ Belle Ball___

Belle Ball, CSR 8785, CRR, RDR

Tuesday, December 7, 2021