Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
  VS.                          )        NO. CR 18-0577
                               )
MICHAEL RICHARD LYNCH and      )
STEPHEN KEITH CHAMBERLAIN,     )
                               )
            Defendants.        )
_____)

                          San Francisco, California
                          Friday, June 3, 2022

             **TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**  (via videoconference)

For Plaintiff:
                        STEPHANIE M. HINDS
                        United States Attorney
                        1301 Clay Street - Suite 340S
                        Oakland, California  94612
                   **BY:  ADAM A. REEVES**
                        **ASSISTANT UNITED STATES ATTORNEY**


For Defendant Stephen Keith Chamberlain:

                        BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                        DROOKS, LINCENBERG & RHOW PC
                        1875 Century Park East - 23rd Floor
                        Los Angeles, California  90067
                   **BY:  GARY S. LINCENBERG**
                        **MICHAEL C. LANDMAN**
                        **ATTORNEYS AT LAW**


REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

<u>**Friday - June 3, 2022**</u>                                    <u>**10:27 a.m.**</u>

P R O C E E D I N G S

---oOo---

**THE CLERK:**  Calling criminal action CR 18-0577, USA

versus Michael Richard Lynch and Stephen Keith Chamberlain.

Counsel, please state your appearances.

**MR. REEVES:**  Adam Reeves for the United States.  Good

morning, Your Honor.

**THE COURT:**  Good morning.

**MR. LINCENBERG:**  Good morning, Your Honor, Gary

Lincenberg and Michael Landman for Mr. Chamberlain whose

appearance is waived.

**THE COURT:**  Good morning.  Is anybody here for

Dr. Lynch?

**MR. LINCENBERG:**  No, Your Honor, I don't believe that

he is appearing.

**THE COURT:**  All right.  So by the way, while I'm on

the subject, what is the status of Dr. Lynch's extradition?

Mr. Reeves?

**MR. REEVES:**  Thank you, Your Honor.  The Government

submitted in February a detailed status report about the

extradition.

I don't think it has changed substantially since then.

Right now I believe that Dr. Lynch is seeking to appeal the

decision to extradite him from the UK to the UK High Court.

1   And that is the posture of the extradition at the moment.

2       I would add that according to news reporting that I read

3   yesterday, the decision of the parallel civil action in the UK

4   has finally been issued.

5       I haven't read it yet.  I don't have a copy of it.  It is

6   apparently 1,600 pages long, but it is now public record and

7   that has happened.

8           MR. LINCENBERG:  I believe it is -- I believe it is

9   over 4,000 pages long.  So I was hoping we could all read it

10  and then get back on -- in court this afternoon to discuss.

11          THE COURT:  Exactly.

12                      (Laughter)

13          THE COURT:  Only 4,000.  Let me ask you:  Did a judge

14  write a 4,000-page opinion?

15          MR. LINCENBERG:  There is probably a little bit of cut

16  and pasting from the transcripts, but Judge Hildyard took over

17  two years and wrote what, I believe, is like a 4,000-page

18  opinion.

19          THE COURT:  I don't know what to say other than wow.

20                      (Laughter)

21          MR. REEVES:  I think "wow" is right, Your Honor.

22          THE COURT:  Wow.  Well, I'm not going to get to that

23  opinion.

24          MR. LINCENBERG:  And, Your Honor, just to

25  supplement --

1          **THE COURT:**  What?

2          **MR. LINCENBERG:**  I was just going to supplement for

3    the Court's benefit --

4          **THE COURT:**  Go ahead.

5          **MR. LINCENBERG:**  -- what Mr. Reeves indicated.

6      So what is happening in the UK is Mr. Lynch's counsel has

7    filed a request for permission to appeal is procedurally how it

8    works.

9          And so they are waiting for a decision as to whether he

10   will have permission to appeal.  And if they are allowed to

11   appeal, I think that the proceedings will probably drag out

12   another year.

13         If that permission is denied, then I think the extradition

14   will probably take place later this year.

15         **THE COURT:**  So the permission is not -- the permission

16   is a non-appealable order?

17         **MR. LINCENBERG:**  I believe that's right.

18         **THE COURT:**  All right.  Well, okay.  Well, it's out of

19   my -- out of my jurisdiction -- out of my realm of expertise

20   and out of my jurisdiction.

21         Okay.  So let's -- let's get back to what is in front of

22   me.  I understand there is sort of -- there are two matters --

23   maybe more -- but two at least of which I'm aware of, one of

24   which is the question of a further bill of particulars.

25         And I have read the -- I have read the papers on that, and

1    I'm going to deny the further bill of particulars.

2        The second is the question of subpoenas and what has to be

3    attached to subpoenas.  And I'm quite sure I don't understand

4    that.

5        So, what is the difference in the parties' position?  By

6    the way, is it something you really feel I should rule on or

7    that you can't agree to or what?

8        I mean, you guys get along and you are both very

9    sophisticated trial lawyers, so -- but that doesn't mean that

10   you can resolve everything.

11       **MR. REEVES:**  We have resolved a lot of things, and the

12   opportunity to confer has been quite productive; but I would be

13   grateful for the assistance of the Court on the one issue

14   relating to the subpoenas.

15       We have language to which the Defendant does not oppose in

16   the proposed subpoena, but it is specifically, if you read

17   through the allegations in Count 17, those allegation -- which

18   is the focus of the subpoenas -- you know, all the documents

19   relating to the potential coverup and concealment of what

20   happened at Autonomy, et cetera -- is the purpose of the

21   subpoenas.

22       But the language of Count 17, specifically paragraph 31,

23   goes further to refer to the allegations in the underlying

24   indictment and the scheme to defraud and in paragraphs 19

25   through 24.

1    So all -- I accept that it is a small matter, but I think

2    for subpoena to be well understood by the subpoena recipients,

3    they need to understand what the underlying documents that were

4    allegedly concealed were; and those are expressed in the

5    underlying allegations in the indictment, and we think the

6    correct remedy for that is to attach the indictment.

7        **THE COURT:**  Well, or -- the indictment or the -- that

8    paragraph of the indictment?

9        **MR. REEVES:**  If the Court wanted, maybe a middle

10   ground would be to have, we attach Count 17 and the specific

11   underlying counts -- allegations in paragraphs 19 through 24

12   that are referred to in Count 17.  That would be fine too.

13       **THE COURT:**  So that's what I would ask Mr. Lincenberg.

14   I mean, is there really a problem with that?

15       I can understand why a person wouldn't want the entire

16   indictment attached to the subpoena and I think there is good

17   reason not to.  I don't think it is necessary, and it's just

18   sort of like bad publicity, you know.

19       I mean, there are a lot of -- if I were the lawyer, I

20   would -- or person, I wouldn't particularly want the indictment

21   attached.

22       On the other hand, a paragraph 17 and the charge of

23   paragraph 17 does give some delineation and explanation to what

24   the -- what the documents -- the requested documents puts it --

25   gives it a context.  So I think it is helpful in that regard.

1    So let me ask again, Mr. Lincenberg, I haven't heard from

2    you; but is that a problem?

3         **MR. LINCENBERG:**  Your Honor, we really did narrow our

4    area of disagreement; and we have a problem with going beyond

5    paragraph 34 for the following reason -- and just to set the

6    context -- you know, Mr. Reeves and I really have been,

7    frankly, accommodating to each other.  He was accommodating to

8    me in not pursuing the full breadth of *Nixon* challenges.  He

9    could have on our subpoenas and we've tried to do the same with

10   Mr. Reeves.

11        The difference is this:  We have what is now a fairly

12   broad subpoena under whatever the Court permits.

13        And if the subpoena is one which is telling these seven

14   different parties go back 12 years later, search for documents

15   relating to anything relating to the indictment, it is

16   immeasurably far broader.

17        **THE COURT:**  I'm just talking -- I'm assuming --

18   assuming that paragraph 17 is, not the document.

19        **MR. LINCENBERG:**  Right.

20        **THE COURT:**  I agree with --

21        **MR. LINCENBERG:**  -- Count 17.

22        **THE COURT:**  Yeah.

23        **MR. LINCENBERG:**  So the difference in our positions is

24   as follows:  Mr. Reeves wants to say that in addition to

25   attaching Count 17, if we go back and we attach Counts -- I

1  think he said -- 19 through 24, really what that is, it is all

2  of the fraud allegations in the indictment that the Court is

3  quite familiar with, for the period of 2009 to 2011 and the

4  entire alleged scheme.

5          Count 17 is dealing with essentially post-sale conduct in

6  which in Count 17 the Government alleges a mishmash of various

7  overt acts claiming that Mr. Lynch transferred money he got

8  later in time and hired people and pressured people and the

9  like.

10          And Mr. Reeves, to the extent that there is a subpoena

11  that the Government wants to issue to gather evidence in

12  support of the idea that different people may have accepted

13  employment or been influenced or the like, we are willing to

14  not object to that subpoena.

15          The parties receiving it may have their objections.

16  Whether they want to spend the money to fight it in court, we

17  will leave it to them.

18          But if we go beyond Count -- paragraph 34, which lays out

19  A through P all of the different overt acts that they are

20  looking for evidence of, it at least provides some definition

21  to the scope of searching and the breadth of this subpoena.

22          If we get into -- agree to include Counts 17 through 24,

23  it's the equivalent of including the entire indictment.

24          And my concern, frankly, is not so much the publicity of

25  sending the indictment to these seven different parties.  These

1   people are probably familiar with the indictment.  They can get

2   it on the internet.  I'm not really worried about the publicity

3   of it from my vantage point at this stage.

4        It is really just the -- it vastly increases the nature of

5   the a fishing expedition to everything relating to ancient

6   history, if you will, as opposed to a focus on Count 17, which

7   is the new charge, which was added in the indictment against

8   Lynch and Chamberlain.

9        And, Your Honor, I don't want to interrupt the flow, but I

10  do want to get back to the bill of particulars in a moment

11  because the Court's denial leaves some lack of clarification

12  but we will put a place mark -- put place holder on that.

13           **THE COURT:**  Yeah.  Mr. Reeves.

14        **MR. REEVES:**  Yes, Your Honor.  I -- I don't think it

15  is correct to call Count 17 a mishmash, Your Honor.  It is a

16  conspiracy to conceal and cover up what happened in -- at

17  Autonomy in a variety of different ways, including the

18  falsification of documents, the destruction of documents, the

19  stealing and theft of documents, the influencing of witnesses

20  it is around concealment and coverup.

21        The subpoenas are designed properly to compel documents

22  relevant to that coverup.

23        And the underlying allegations do nothing more than

24  explain the substance of what was being covered up.

25        You know, Mr. Lincenberg suggests that this is going to be

burdensome, et cetera for people.  I don't really think that's
properly before the Court right now.

    But what will be interesting is whether that is really
true or not.  There is a really good possibility that there
will be an absence of information produced by these subpoena
recipients which would be probative itself of the coverup, but
I think omitting the underlying allegations of what is being
covered up promotes confusion and, you know, potentially
undermines the purpose of the subpoena which is to establish
and compel evidence that is relevant to the coverup and
concealment of the underlying fraud.

    **THE COURT:**  And you are satisfied that if it is
just -- rather than the entire indictment it is just -- it is
Count 17?

    **MR. REEVES:**  I'm satisfied that if we add in
paragraphs 19 through 24 of the underlying indictment plus all
of Count 17, that that would be sufficient, Your Honor.

    **THE COURT:**  Okay.

    **MR. LINCENBERG:**  Well, Your Honor --

    **THE COURT:**  Yep, go ahead.

    **MR. LINCENBERG:**  I mean, I'm using the legal term
"mishmash."  I think it is appropriate.  Whether we use
"mishmash" or get into the particulars of A through P, we see
what it is.

    So A through D deals with transfers of money from Lynch.

1    E deals with an act that occurred at HP in January of 2012

2    involving recognition of a particular item of revenue.

3         F -- F, G, H, I deal with -- F, G and H deal with actions

4    that took place at HP in May of 2012 particularly --

5              **THE COURT:**  I think you are right.  I mean, I think

6    your characterization of a mishmash is correct.  That's not the

7    issue in my mind because you can ask for a lot of different

8    things, and they may be closely related, unrelated,

9    tangentially related or totally germane.

10        I think what happens, as I foresee this moving forward

11   or -- and I may be wrong -- but it is issued and the parties

12   come in -- a party comes in and says "Look, we have this

13   subpoena and it is a mishmash.  It is -- it would require us to

14   do A, B, C, all these different things."  And it becomes by

15   virtue of that -- by virtue of what is required of us, it

16   becomes unduly burdensome.

17        Well, that may be true.  And it may be a justification not

18   to -- not to enforce the subpoena or to quash that part of it,

19   but we are not there yet.  That's what I'm saying.

20             **MR. LINCENBERG:**  I agree with that.  I noted that it

21   would be a burden for them and they can deal with that.  That's

22   not the issue that I'm raising.  I'm raising --

23             **THE COURT:**  What is the -- then I don't quite get the

24   issue that you are raising, and maybe it is because I don't

25   really understand what you are saying to me.

1        **MR. LINCENBERG:**  Your Honor, look, if I did a full

2   court press challenge under *Nixon*, the entire subpoena might be

3   thrown out.

4        I'm willing and accommodating to say all right, you know

5   what, we are not going to object to a subpoena dealing with the

6   Count 17 items.

7        If you look -- if you take any one of these and you say,

8   you know, P, February of 2018 "Lynch purchased shares of an

9   Invoke affiliate from Hussain for 25" --

10        **THE COURT:**  I see a way to handle it in my mind.  So

11   limiting the subpoena to the Count 17, giving the Count 17,

12   fine, go ahead.

13        If they come back or the Government comes back and says

14   "We need this additional information and here is our

15   justification for it," so be it.

16        I mean, it may be -- it may be doing it twice, you know,

17   but listen, one thing we have in this case is time, it seems to

18   me the case.

19        So, with that limitation, I would allow the Government to

20   go ahead with the paragraph with 17 but not the additional

21   things without a further showing that it is necessary or, you

22   know, legally appropriate.  Okay?

23        **MR. REEVES:**  Yes, Your Honor.

24        **MR. LINCENBERG:**  Sure.

25        **THE COURT:**  Okay, great.  Now, I cut you off because I

1   didn't -- I didn't hear any argument -- I guess that's called

2   cutting you off -- any argument on the bill of particulars to

3   which I actually think the Government has given you far more

4   information with respect to the bill of particulars than

5   probably I would have ordered.

6       You know, it is difficult, Mr. Lincenberg, when the

7   Government is more charitable to you than the Court.

8                    (Laughter)

9           **THE COURT:**  You may be in trouble but --

10          **MR. LINCENBERG:**  Your Honor, please don't tell

11  Mr. Reeves that.

12          **THE COURT:**  Yeah, well, I'm not saying -- I mean, the

13  Government submitted its brief and takes that position, and I'm

14  not commenting on that position.  You know, I haven't analyzed

15  it.

16      But I do think that they do have a point that they have --

17  they have -- I don't know whether the right word "extended

18  themselves," they have provided you with additional information

19  at your request and maybe at your insistence, but that is the

20  fact.

21      And then now you come back and you say:  "Well, yeah, but

22  I want this and that and that, further particularity."  And I

23  don't think it is justified -- that's my point -- in light of

24  what has already been produced.

25      So, you know, what I was going to do was deny it subject

1  to it being -- deny it without prejudice.

2      I think that if Dr. Lynch joins us, then we will have a

3  whole other round of what he feels is necessary in order to

4  defend the case.

5      And in that context there would be nothing wrong with you

6  renewing your request for further bill of particulars, but I

7  think at this point feel that that further bill of particulars

8  is really justified.

9          **MR. LINCENBERG:**  Well, if the Court --

10         **THE COURT:**  I'm sorry -- sure.

11         **MR. LINCENBERG:**  If the Court --

12         **THE COURT:**  Go right ahead.

13         **MR. LINCENBERG:**  So, first of all, I think that

14  Mr. Reeves has been professional and accommodating and we tried

15  to work through these issues.

16      And I think it would still be helpful for the Court to --

17  to work through them a little further and hear me out.

18      So if the function of a bill of particulars is to make

19  sure that we are fairly informed of the nature of the charges

20  with sufficient precision to enable us to prepare for trial and

21  minimize the danger of unfair surprise, we are looking at the

22  difference between our positions is that Mr. Reeves believes

23  that the Government should be able to argue essentially that

24  under 34E, H, K, and O are all things which arguably relate

25  to -- those are the Government's words -- relate or could

1   relate to Mr. Chamberlain.

2        And our argument -- and this is based on conversations

3   with Mr. Reeves -- is that the only one is sub-point E.  So let

4   me take the Court briefly through those four.

5        So E we agree is a charge against Mr. Chamberlain which is

6   that in February of 2012 Chamberlain and Hussain directed an HP

7   finance employee to falsely record five-and-a-half million

8   dollars in revenue to be included in HP's financial statement.

9        And we agree that that relates to, under paragraph 32, the

10  offenses that are claimed to be part of the conspiracy be in A,

11  circumventing a system of accounting controls; and under

12  paragraph 33, would relate to objective A which is falsifying

13  business records of HP.

14       Look, no disagreement.  We understand that charge.  We can

15  defend against that.

16       H, was that in May of 2012 a co-conspirator instructed an

17  HP employee to erase my client's laptop computer.

18       Now, Your Honor, my client was gone from the company at

19  this time.  My client, frankly, and we feel were a victim of

20  this because now we have to defend ourselves without having

21  access to all of his e-mails.

22       And my question for the Government was -- is there -- what

23  do I defend against?  What is the charge that Mr. Chamberlain

24  had anything to do with that, had any knowledge of it taking

25  place at the time?

1    And the Government's response is no evidence of that, and

2    then later the Government said but we can infer since we allege

3    that he did wrongdoing, that maybe he would have known about

4    it.

5    At this time my client is working for a different company,

6    and the Government has zero evidence of anything.

7    So I don't even know what in this charge to defend

8    against.  It's clear from Mr. Reeve's statement to me that the

9    grand jury certainly wasn't presented with any evidence of

10   Mr. Chamberlain having anything to do with others erasing his

11   computer after he left the company.

12   And so we are left where there is either going to be some

13   unfair surprise or we really don't understand the nature of how

14   this could be a charge against my client.

15   Sub-point K says that July 6th of 2012, Mr. Lynch caused

16   the incorporation of this company Invoke and used Invoke and

17   entities affiliated with it as a means to pay former Autonomy

18   employees including Shusovan Hussain.

19   Now, Your Honor, my client at this time is working for

20   this other company Sipora.  He worked there until 2015, 2016;

21   has, you know, no involvement, no knowledge of this.

22   Mr. Reeves isn't suggesting the contrary.

23   And while a bill of particulars doesn't directly get at

24   the question "is there any evidence you have," the Court from

25   being on the bench long enough and being a defense lawyer knows

1  that the Government often responds to bill of particulars

2  motions by saying, you know, we have given you discovery

3  that -- it is in the discovery.  You have the particulars.  You

4  can defend yourself.

5      Mr. Reeves, who in complete candor and good faith, has

6  indicated "We don't have any evidence of Mr. Chamberlain being

7  involved in Lynch's incorporating some other company or using

8  them as a means to pay former Autonomy employees including

9  Hussain at that time."

10      There is nothing about this act on July 6th of 2012 that

11  presents anything that I can defend against, and the Government

12  is fair and acknowledges they have no evidence of such -- of

13  the same.

14      Mr. Reeve's argument to the Court is:  Well, given that

15  four years later Mr. Chamberlain is hired by Darktrace and

16  Invoke has ownership interest in Darktrace, we can infer that

17  this somehow relates to him.

18      But there is --

19          **THE COURT:**  Well --

20          **MR. LINCENBERG:**  There is no particular --

21          **THE COURT:**  Well, yeah, but he says that that's the

22  evidence.  He is saying that's the evidence.

23          **MR. LINCENBERG:**  The evidence --

24          **THE COURT:**  That's what I hear you saying.

25          **MR. LINCENBERG:**  That's not --

1          **THE COURT:**  Or are you saying that?

2          **MR. LINCENBERG:**  No, he is not saying that's evidence

3    that on or about July 6th Lynch incorporated this company for

4    some purpose.

5          That is an alleged overt act against Lynch, and nobody has

6    any evidence that there was any relationship to Mr. Chamberlain

7    at the time that that took place.

8          **THE COURT:**  You say you can't make that inference --

9    the inference.

10         **MR. LINCENBERG:**  It is not only that you can't make

11   that inference.  I don't even know what I would defend against.

12         Sub-point O is -- is what the Court's relating to when the

13   Court says "that's the evidence," which is a completely

14   separate act.

15         It says "In May 2016 Lynch caused this company Darktrace

16   to hire Chamberlain."

17         Now, again, that's O.  It is certainly separate from K.

18   And with regard to even O, my client's name is mentioned that

19   he was hired, but the idea that this was -- you know, if the

20   Government wants to allege that Mr. Lynch was causing the

21   hiring of people so that he could control them or intimidate

22   them, knock yourself out, allege that, let Mr. Lynch defend

23   against it.

24         But what is the evidence that Mr. Chamberlain is -- who is

25   he intimidating himself or the like?

1      Now, Mr. Reeves would come back and say:  Well, but one

2   could infer that he knowingly allowed himself to be hired so

3   that he could help obstruct justice, remain in the camp.

4      No, there is no evidence of that.  If they want to -- if

5   the Government wants to raise an inference of that that is

6   something that Mr. Lynch had in his mind when he did it, knock

7   yourself out, go to trial and allege that against Mr. Lynch.

8      My point is simply that in Count 17 there is only one act

9   which is an allegation of anything against Mr. Chamberlain.  It

10  relates to 32(a) and 33(a), not the other subpoints of 32 or

11  33.

12     And even with respect to a bill of particulars, I don't

13  understand the nature of a charge with sufficient precision of

14  any action that my client with regard to H, K, or O, which

15  avoids unfair surprise or allows me to defend against it.

16     **THE COURT:**  Isn't it fair to say if you are right,

17  that is, there is no evidence, if there is no evidence, then

18  there is nothing to prepare against.  I mean, that sort of

19  backs him out.  And what you are trying to do is confirm that

20  there is no evidence from a --

21     **MR. LINCENBERG:**  Mr. Reeves --

22     **THE COURT:**  That's what I --

23     **MR. LINCENBERG:**  No.  Mr. Reeves has confirmed that

24  there is no evidence and in his papers to the Court he says

25  that there is an inference that we might be able to draw --

1    **THE COURT:**  And to that, I would say, I don't know.  I

2    don't know.  I will rule on that prior to trial.  You know, I

3    will rule on it prior to trial.

4        And if he comes in and he says:  Well, Judge -- well,

5    Judge, you know, even though we had this conversation, this

6    hearing in -- you know, whatever month we are in, in June --

7    come March of next year between that time we have gathered some

8    evidence that would support that allegation or that inference.

9        I would say:  Oh, really?  Have you turned it over to

10   Mr. Lincenberg?  Well, not yet.  I will say:  Okay, let's

11   figure out whether that is going to be in or out.

12       I mean, I'm just saying I don't -- I'm not quarreling with

13   your -- the entirety of your logic and your request, but I'm

14   saying that we are not going to trial next month.  I mean, I

15   don't think so.  I got my opioid trial.  I mean, we are not

16   going to trial next month.  We are not going to trial in all

17   likelihood this year and everybody sees that.

18       So I just don't know -- other than you would like it

19   firmly settled, I don't see that it is hanging out there as

20   a -- as the sort of Damocles that has to be resolved now by

21   this vehicle.

22       I see other ways to resolve it in a more timely fashion

23   from the Court's point of view, when I can concentrate on all

24   the evidence and see it in the larger picture and come to some

25   conclusion as to whether or not the Government has any basis

```
 1   for proceeding on that particular theory or that particular
 2   inference.
 3       It is premature.  I'm saying it is premature.  And I
 4   have -- although I do appreciate your -- your concern and I
 5   also believe that Mr. Reeves would honor the request if the
 6   situation changes; that is, if he comes into -- comes into some
 7   possession of some other information that he would use to
 8   bolster his argument about the inference, that would be turned
 9   over to you.  Let me turn to Mr. Reeves.  Is that correct?
10           MR. REEVES:  Yes, that's absolutely correct.
11           THE COURT:  Did we lose --
12           MR. REEVES:  I think the Court is proceeding in the --
13   given the posture of the case in the safest way possible.
14       I do not agree that there is no evidence that Stephen
15   Chamberlain didn't participate in the conspiracy to falsify and
16   cover up documents.
17       I accept when I conferred with counsel about this in an
18   effort to negotiate this that I was unable to identify specific
19   evidence that Mr. Chamberlain wanted -- acted to destroy his
20   laptop.
21           THE COURT:  Okay.  But here is my question.
22   Mr. Reeves, let me ask you a question, is it your position -- I
23   don't want to get into an argument, there is evidence or there
24   isn't evidence.
25           MR. REEVES:  Okay.
```

1          **THE COURT:**  Is there any issue in your mind as to

2     whether what you consider to be evidence of, that supports that

3     inference, has been given to Mr. Lincenberg?

4          **MR. REEVES:**  No.  I think he sees it now.  I'm not

5     withholding something that is probative of this right now.

6          **THE COURT:**  Okay, I'm going to do it later.  Then I'm

7     going to do it later.  I'm not going to get into an argument of

8     there is evidence, there isn't evidence.  I'm just going to do

9     it later.

10         And I -- I think, perhaps, since I was too restrictive,

11    Mr. Lincenberg, I'm going to deny it at this point without

12    prejudice; and you can renew it if any of these circumstances

13    change or -- a changed circumstance would be an impending

14    trial; okay?  So there is -- nothing new has to happen.  Okay.

15         **MR. LINCENBERG:**  Thank you, Your Honor.

16         **THE COURT:**  I hope that was helpful.  Probably not.

17         **MR. LINCENBERG:**  Thank you, Your Honor.

18         **THE COURT:**  Thank you very much, everybody.

19         **MR. LINCENBERG:**  Your Honor, one last --

20         **THE COURT:**  Good luck on those 4,000 pages.

21         **MR. LINCENBERG:**  Your Honor, one last point I just

22    want to note for the record with regard to the Rule 17

23    subpoenas that the Court signed off on, on December 1st,

24    I believe, three of them which required letters regulatory; and

25    we have had -- we have had great trouble in getting those

1   served through the UK central authorities.

2        And we have gone back and forth with the clerk's office.

3   The people in the UK central authorities say they never

4   received it.  We -- you know, months later now Mr. Noble's

5   from -- Mr. Noble, the director of case administration in the

6   San Francisco clerk's office, sent them again to the UK central

7   authority.  And we are hoping something will come of this.

8        **THE COURT:**  I would just say if you need the

9   assistance of the Court, let me know.

10        **MR. LINCENBERG:**  Okay.  Thank you, Your Honor.

11        **MR. REEVES:**  Thank you, Your Honor.

12        **THE COURT:**  Thank you.

13        **MR. LINCENBERG:**  Have a good day.

14            (Proceedings adjourned at 11:00 a.m.)

15                    ---oOo---

16

17

18

19

20

21

22

23

24

25

1
2
3               **CERTIFICATE OF REPORTER**

4           I certify that the foregoing is a correct transcript

5      from the record of proceedings in the above-entitled matter.

6
7      DATE:    Friday, June 10, 2022

8
9
10
11     _____

12           Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
             United States District Court - Official Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25