UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| **United States of America,** | ) |
| | ) No. 3:18-cr-00577-CRB |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) San Francisco, California |
| **Michael Richard Lynch and** | ) December 8, 2022 |
| **Stephen Keith Chamberlain,** | ) 1:44 p.m. |
| | ) |
| Defendants. | ) |
| _____ | ) |

**BEFORE:   THE HONORABLE CHARLES R. BREYER, JUDGE**

<u>REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS</u>

<u>STATUS CONFERENCE</u>

Official Court Reporter:
Cathy J. Taylor, RPR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:
    UNITED STATE ATTORNEY'S OFFICE
    By:  **Mr. Adam A. Reeves, Esq.**
          **Mr. Robert S. Leach, Esq.**
    1301 Clay Street, Suite 340S
    Oakland, California   94612

For the Defendant Chamberlain:
    BIRD, MARRELA, BOXER, WOLPERT, NESSIM, DROOKS,
    LINCENBERG & RHOW
    By:  **Mr. Gary S. Lincenberg, Esq.**
          **Mr. Michael Charles Landman, Esq.**
    1875 Century Park East, 23rd Floor
    Los Angeles, California   90067
    - and -
    BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS
    LINCENBERG & RHOW
    By:  **Mr. Ray Seilie, Esq.**
    355 South Grand Avenue, 35th Floor
    Los Angeles, California   90071

**P R O C E E D I N G S**

1
2       THE COURTROOM DEPUTY: Calling Criminal Action
3  CR-18-0577, USA vs. Michael Richard Lynch and Stephen Keith
4  Chamberlain.
5     Counsel, please state your appearances.
6       MR. REEVES: Adam Reeves and Robert Leach for the
7  United States. Good afternoon, Your Honor.
8       THE COURT: Good afternoon.
9       MR. LINCENBERG: Good afternoon, Your Honor. Gary
10 Lincenberg, Ray Seilie, and Michael Landman for
11 Mr. Chamberlain.
12      THE COURT: No. Is Mr. -- is Dr. Lynch part of this,
13 or not?
14      MR. REEVES: I don't think so today, Your Honor.
15      THE COURT: All right. Okay. Go ahead,
16 Mr. Lincenberg.
17      MR. REEVES: Well, the case is on for status.
18      THE COURT: Why?
19      MR. REEVES: And I think there was one issue that
20 Mr. Lincenberg wanted to raise for the Court with regard to the
21 defendant's Rule 17 subpoenas.
22      MR. LINCENBERG: Thank you, Mr. Reeves.
23      Mr. Seilie's going to raise the point.
24      MR. SEILIE: Your Honor, this is just a -- as you may
25 recall, we -- we stipulated to the issuance of some Rule 17

1  subpoenas.  I think it was almost a year ago now.  And under
2  the terms of the proposed order, we asked that the Court
3  transmit three letters rogatory to the U.K. office who handles
4  foreign requests for discovery.  And we -- we want to
5  provide -- we were having a little bit of trouble with that
6  process and wanted to seek Your Honor's guidance.
7       Essentially -- essentially, you know, I believe our
8  paralegal, Rachel Capata, was in touch with your clerk to
9  handle the logistics of transmitting the letters to the U.K.
10 Our understanding is that they have been sent.  Those letters
11 were sent both by snail mail and email, but every time we've
12 tried to talk to the U.K. authorities, they've told us that
13 they haven't received anything, and also, oh, by the way, we
14 usually only receive these requests from prosecutors.
15      So, you know, we're -- we're at a little bit of a
16 standstill here, and, you know, trying to figure out what we
17 could -- see if Your Honor could -- if Your Honor might be
18 willing to communicate with the office directly and note that
19 Your Honor issued an order asking for these letters rogatory to
20 be delivered.
21      And, you know, we're open to other suggestions that --
22 that the Court might prefer, but essentially we -- we've -- we
23 wanted to report back to indicate that we are having trouble
24 with -- I think it's three of seven requests that we submitted
25 last year.  And so --

1       THE COURT: So are the -- tell me a little bit more
2  about it. Are the -- the -- what we'll call the noncompliant
3  collection, are they -- is it a governmental entity? Is it a
4  private concern? Is it a quasi or --
5       MR. SEILIE: So --
6       THE COURT: -- middle levity private concern?
7       So what -- what -- what's the story?
8       MR. SEILIE: So they're essentially the equivalent of
9  subpoenas here. That two of the targets -- or two of the
10 subjects are individuals who reside in the United Kingdom, and
11 one of them is an entity that's based in the United Kingdom.
12 But the reason the U.K. organization is -- government
13 organization is involved is because, you know, it's our
14 understanding, and we are advised by U.K. counsel regarding
15 this issue, that the process for getting this -- these
16 discovery requests transmitted to a foreign entity is to
17 basically have the Court communicate directly with the U.K.
18 Central Authority, which, you know, I believe Your Honor's
19 chambers has done already, and then have that authority
20 transmit those requests to the law enforcement entities in the
21 U.K. that would then handle the -- the production or the
22 service of those essentially subpoenas on the individuals.
23      And -- and the issue we're having is with the stage --
24 you know, we are under -- we have signed orders from -- from --
25 from the Court. It is our understanding that those signed

1  orders have been sent to the U.K. Central Authority by the
2  Court.  The only issue here that we're having now is either
3  they literally just haven't -- like they claimed to not have
4  received them, but I've -- I've seen an email from your
5  chambers to the U.K. Central Authority suggesting that they
6  have received them.
7          And, you know, we're -- we're a little bit concerned
8  here that, you know, since this isn't a request from the
9  government, they don't really know how to deal with it and --
10 and they're just disregarding it.
11         So --
12         THE COURT:  So what --
13         MR. SEILIE:  -- that's the situation.
14         THE COURT:  Part of the problem, of course, is that
15 the United States Government, the Department of Justice, has
16 people assigned to embassies to expedite legal requests, I
17 think maybe exclusively, but emanating from law enforcement in
18 the United States.  Maybe; maybe not.  I don't know, because
19 I've never confronted this particular situation.  So the
20 question is -- and -- and you don't, as you wouldn't.  You're
21 private.  You know, there's no reason why you would.
22         So I see the United States Government being very
23 silent during all of this.  And what is it?  You don't want to
24 own it or you don't want to help, or what?  What's going on?
25         I mean, I think --

1          MR. REEVES:  Well, Your Honor --
2          THE COURT:  -- a call might unstick a lot of this.
3   They're not asking for anything other than, you know, I guess
4   the service of the documents on the -- on the ultimate
5   recipient or the person who is -- who's being asked to produce
6   something.  So normally you pick up a phone.
7          If it were -- if the shoe were on the other fit --
8   foot, you would simply phone your liaison and say, what's
9   happening here?  Why can't -- can you get it done?
10         That's how that works.  Matter of fact, you'd phone
11  your old friend, Pete Axelrod, and -- and say, Pete, can you do
12  something about this?
13         Now, he's no longer --
14         MR. REEVES:  That's only if we had the good fortune
15  of --
16         THE COURT:  That's the idea.
17         MR. REEVES:  If it was a --
18         THE COURT:  That would be --
19         MR. REEVES:  -- French rogatory, yes, we could solve
20  it that way, Your Honor.
21         THE COURT:  Well, what -- what do you want to do?  I
22  don't want to -- you know, I don't want -- know one wants to
23  sit around and delay it further if it -- if it doesn't have to
24  be.  And I'm quite sure you're as cooperative as you can be,
25  but can you be a little bit more cooperative?  I guess, make a

14:50:17
14:50:34
14:50:48
14:50:53
14:51:08

| | | |
|---|---|---|
| 1 | telephone call or something.  I think that's what they're | |
| 2 | asking you to do. | |
| 3 |        I don't know that the Court can do anything.  I mean, | |
| 4 | I think the Court's -- you know, the Court is pretty | |
| 5 | circumscribed by what we can do.  Like I don't think we can, | 14:51:23 |
| 6 | like, phone King Charles and ask him, could he please do | |
| 7 | something about this.  That's just not going to work, and it's | |
| 8 | not appropriate.  But I don't think it's inappropriate for the | |
| 9 | government to do something -- | |
| 10 |       MR. LANDMAN:  Your Honor -- | 14:51:41 |
| 11 |       THE COURT:  -- for this -- | |
| 12 |       MR. LANDMAN:  Mr. Reeves, let me just jump in. | |
| 13 |       The government has tried to assist us. | |
| 14 |       MR. REEVES:  Yeah. | |
| 15 |       MR. LANDMAN:  And so there is no complaint being | 14:51:50 |
| 16 | registered -- | |
| 17 |       THE COURT:  No, I understand, at all. | |
| 18 |       MR. LANDMAN:  -- with Mr. Reeves. | |
| 19 |       And I understood you did have the cell phone number | |
| 20 | for King Charles, and we're just asking you to use it. | 14:51:57 |
| 21 |       THE COURT:  I'm afraid -- I would, except for one | |
| 22 | problem.  My understanding is that there is a history of having | |
| 23 | that telephone number hacked.  And that -- is that an intrusive | |
| 24 | act? | |
| 25 |       MR. REEVES:  I don't know. | 14:52:18 |

1           THE COURT:  I don't want to be on the front -- front
2   page of the -- of The London Times.
3           MR. LINCENBERG:  At this stage our request is no more
4   than to ask the Court to reach out one more time.  Your -- your
5   clerk has done so, has provided us evidence that the clerk has                 14:52:32
6   done so.
7           THE COURT:  Okay.
8           MR. LINCENBERG:  If you could simply --
9           THE COURT:  I will.
10          MR. LINCENBERG:  Appreciate it.                                         14:52:41
11          THE COURT:  I'll be glad to do that.  There's no
12  objection, I would assume, from --
13          MR. REEVES:  No objection.
14          THE COURT:  No.
15          MR. REEVES:  We want to see the Court's order                           14:52:47
16  enforced --
17          THE COURT:  Yes.
18          MR. REEVES:  -- Your Honor.
19          THE COURT:  That's fine.  So I will -- give me the
20  information.  Or if I don't have it already, you might send me                  14:52:51
21  another copy of the document, and I will do so.
22          MR. LINCENBERG:  Thank you, Your Honor.
23          THE COURT:  I'll do it personally.  That's fine.
24          MR. LINCENBERG:  Thank you.
25          THE COURT:  I think I still speak the language; right?                  14:53:03

| | | |
|---|---|---|
| 1 | I haven't forgotten it.  Yeah.  It's the King's English. | |
| 2 | MR. REEVES:  Exactly. | |
| 3 | THE COURT:  Exactly. | |
| 4 | MR. LINCENBERG:  Before the France/England game on | |
| 5 | Saturday, because they're all going to be mad there after that | 14:53:19 |
| 6 | game. | |
| 7 | THE COURT:  Yeah, right.  Well, if they win, then I | |
| 8 | can congratulate them or commensurate them.  They lasted longer | |
| 9 | than we did, so there. | |
| 10 | MR. LINCENBERG:  Right. | 14:53:31 |
| 11 | MR. REEVES:  Right. | |
| 12 | THE COURT:  All right.  Okay.  Anything else? | |
| 13 | MR. REEVES:  Only to adjourn the matter, Your Honor. | |
| 14 | The parties had talked about an adjournment until | |
| 15 | September 2023.  I do -- while that's a long adjournment, I do | 14:53:43 |
| 16 | think that we're making some progress in the U.K. around the | |
| 17 | extradition.  We were recently informed by the government in | |
| 18 | the U.K. that they anticipate a decision on Dr. Lynch's request | |
| 19 | to appeal the extradition order sometime after January 11th. | |
| 20 | And so I'm hopeful that at the next appearance we'll have more | 14:54:06 |
| 21 | concrete -- | |
| 22 | THE COURT:  Well, let's just -- I -- I get so nervous | |
| 23 | about sending things over.  Why don't we just do it for June | |
| 24 | sometime, have a status.  Okay? | |
| 25 | MR. REEVES:  I'm scheduled to be in trial in June, but | 14:54:19 |

```
 1  May would be fine, Your Honor.
 2          THE COURT:  All right.  Let's do May.
 3          MR. LINCENBERG:  That's fine.
 4          THE COURTROOM DEPUTY:  Okay.
 5          THE COURT:  It'll be Zoom.  It'll be Zoom.                14:54:28
 6  Defendant's appearance is waived obviously.
 7          THE COURTROOM DEPUTY:  May 31st at 1:30?
 8          MR. REEVES:  May 31st at 1:30.  That sounds fine for
 9  the government.
10          Thank you, Your Honor.                                    14:54:40
11          MR. LINCENBERG:  Thank you, Your Honor.
12          MR. REEVES:  We would ask that time be excluded.
13          THE COURT:  Yes, I will exclude time for the
14  complexity of the case.
15          MR. REEVES:  Thank you, Your Honor.                       14:54:49
16          MR. LINCENBERG:  Thank you.  Have a good afternoon.
17          THE COURT:  All right.  Thank you.  Have a good
18  holiday.  Okay.  Bye-bye.
19          (Proceedings conclude at 2:54 p.m.)
20                            ---oOo---
21
22
23
24
25
```

# **C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 16th day of December, 2022.

s/Cathy J. Taylor
Cathy J. Taylor, RPR, CRR, CRC