1   Gary S. Lincenberg - State Bar No. 123058
      glincenberg@birdmarella.com
2   Ray S. Seilie - State Bar No. 277747
      rseilie@birdmarella.com
3   Michael C. Landman – State Bar No. 343327
      mlandman@birdmarella.com
4   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
5   1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
6   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
7
8   Attorneys for Defendant
    Stephen Keith Chamberlain

9

10                  **UNITED STATES DISTRICT COURT**

11      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

13   UNITED STATES OF AMERICA,           CASE NO. 3:18-cr-00577-CRB

14               Plaintiff,              **Defendant Stephen Chamberlain's Motions
                                          to Dismiss Counts One through Fifteen and
15           vs.                          Count Seventeen as Time-Barred and for
                                          Preindictment Delay**
16   MICHAEL RICHARD LYNCH AND
     STEPHEN KEITH CHAMBERLAIN           Date:      November 1, 2023
17                                       Time:      1:30 p.m.
                 Defendants.             Place:     Courtroom 6
18
19                                       Assigned to Hon. Charles R. Brever

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on November 1, 2023, at 1:30 p.m. or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Stephen Chamberlain will and hereby does move the Court to dismiss Counts One through Fifteen and Count Seventeen of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3). This motion is based upon the following Memorandum of Points and Authorities, oral argument, and the pleadings and exhibits on file with the Court.

DATED:  September 29, 2023

Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:        */s/ Gary S. Lincenberg*
Gary S. Lincenberg
Attorneys for Defendant Stephen Keith
Chamberlain

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ........................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

I.      SUMMARY OF ARGUMENT ........................................................................................1

II.     RELEVANT BACKGROUND........................................................................................3

     A.     The Beginning of the Government's Investigation ...................................................3

     B.     The Government's Foreign Requests to Vatican City and Italy and Tolling Order 1 ...................................................................................................................3

     C.     UK Request 1 and Tolling Order 2 .........................................................................5

     D.     The Tolling Agreement ............................................................................................6

     E.     The *Hussain* Indictment ..........................................................................................6

     F.     UK Request 2 and Tolling Order 3 .........................................................................7

     G.     The Indictment and Superseding Indictment ..........................................................7

III.    LEGAL STANDARD .......................................................................................................8

IV.    ARGUMENT ....................................................................................................................8

     A.     Counts One Through Fifteen of the Superseding Indictment are Time-Barred as to Mr. Chamberlain ...............................................................................9

          1.     Count Two is time-barred. ........................................................................10

          2.     Counts Three through Seven are time-barred. ............................................10

          3.     Counts Eight through Fifteen are time-barred.............................................12

          4.     If UK Requests 1 and 2 were improper, Count One is time-barred. ...........16

     B.     Alternatively, Counts One through Fifteen Should Still Be Dismissed for Prejudicial Preindictment Delay.............................................................................17

     C.     The Court Should Grant Dr. Lynch's Motion to Dismiss Three of the Four Objects Alleged in Count Seventeen and Should Dismiss that Count as to Mr. Chamberlain Entirely ....................................................................................20

V.     CONCLUSION .............................................................................................................21

i            Case No. 3:18-cr-00577-CRB

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Bogucki,*
316 F. Supp. 3d 1177 (N.D. Cal. 2018) .............................................................. 14, 16

*Caplan v. Yokes,*
649 F.2d 1336 (9th Cir. 1981) .......................................................................... 8

*United States v. Charnay,*
537 F.2d 341 (9th Cir. 1976) ............................................................................ 8

*United States v. DeGeorge,*
380 F.3d 1203 (9th Cir. 2004) ....................................................................... 8, 9

*United States v. Doe,*
149 F.3d 945 (9th Cir. 1998) ...................................................................... 17, 20

*United States v. Gonsalves,*
675 F.2d 1050 (9th Cir. 1982) .......................................................................... 8

*Grunewald v. United States,*
353 U.S. 391 (1957) ........................................................................................ 8

*United States v. Hussain,*
No. 3:16-cr-00462-CRB (N.D. Cal. Nov. 10, 2016) ...................................... *passim*

*United States v. Lovasco,*
431 U.S. 783 (1977) ....................................................................................... 20

*United States v. Marion,*
404 U.S. 307 (1971) ....................................................................................... 17

*United States v. Meador,*
138 F.3d 986 (5th Cir. 1998) ............................................................................ 9

*United States v. Neill,*
952 F. Supp. 831 (D.D.C. 1996) ...................................................................... 8

*Toussie v. United States,*
397 U.S. 112 (1970) ......................................................................................... 8

*United States v. Yida,*
498 F.3d 945 (9th Cir. 2007) ..................................................................... 19, 20

**Statutes**

15 U.S.C. § 78m .......................................................................................................... 21

18 U.S.C. § 1343 ........................................................................................................... 7

18 U.S.C. § 1349 ........................................................................................................... 7

18 U.S.C. § 3282 ........................................................................................................... 8

18 U.S.C. § 3292 ................................................................................................... *passim*

18 U.S.C. § 3292(a)(1) ............................................................................................. 1, 8

18 U.S.C. § 3292(c)(1) ............................................................................................. 5, 7

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

It took the Government over seven years to indict Stephen Chamberlain based on offenses that it alleges he committed no later than October 2011, and that it began investigating in 2012. And it delayed its decision even after it decided to indict Mr. Chamberlain's immediate supervisor, Sushovan Hussain, over two years earlier, based on allegations that it then copy-and-pasted into its indictment of Mr. Chamberlain. During this time, Mr. Chamberlain has been whipsawed by the Government's actions: first fearing he might be indicted with Mr. Hussain, then believing that threat had passed, then once again facing the prospect of criminal penalties for accounting decisions that he made over a decade ago. While there are concrete examples of harm to Mr. Chamberlain arising from the Government's delay, it is impossible to detail the intangible ways that the passage of time has degraded memories and evidence, undermining Mr. Chamberlain's ability to mount an effective defense.

As the Supreme Court has observed, the harms of a delayed indictment are normally prevented through the strict enforcement of statutes of limitation. Here, however, the Government will claim that the offenses charged in the indictment were not time-barred by the five-year limitations period because under 18 U.S.C. § 3292(a)(1), the applicable statutes of limitation were tolled when it sent foreign evidence requests pursuant to Mutual Legal Assistance Treaties ("MLATs") to other countries.

That argument should fail. The Government's foreign evidence requests did not in fact extend the statutes of limitation for the counts alleged against Mr. Chamberlain in the Superseding Indictment:

As to **Counts Two through Seven**, none of the Government's MLAT requests sought evidence relating to the specific offenses they allege. Since tolling under section 3292 is only available for offenses that relate to the evidence sought, the limitations periods for these counts expired before Chamberlain was indicted.

As to **Counts One and Eight through Fifteen**, the circumstances surrounding the Government's MLAT requests indicate that they were sent for the improper purpose of extending

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay

the statute of limitations, not as a bona fide effort to obtain additional evidence. The Court should not consider these requests appropriate, and without those requests, these counts are untimely. At a minimum, the Court should grant Dr. Lynch's motion for additional discovery into the Government's motives for making these requests—and to the extent the evidence demonstrates that the requests were made to strategically extend the statute of limitations, rather than as a bona fide effort to obtain more evidence, the Court should not consider the tolling periods they created.

As to **Count Seventeen**, as detailed in the Motion to Dismiss Counts Two, Count Sixteen, and Certain Objects of Count Seventeen as Time-Barred concurrently filed by Mr. Chamberlain's co-defendant Michael Lynch,[1] three of the four objects—including the sole object that Mr. Chamberlain is alleged to have furthered through the single overt act that names him—is time-barred. Since Mr. Chamberlain's alleged participation in this conspiracy is confined to a time-barred object, Count Seventeen should be dismissed in its entirety as to Mr. Chamberlain.

In the alternative, Counts One through Fifteen should be dismissed because the Government's unwarranted pre-indictment delay unfairly prejudiced Mr. Chamberlain and will prevent him from receiving a fair trial. As a direct result of the Government's delay, Mr. Chamberlain has fewer resources with which to defend himself at trial, not to mention the degradation of memory and available evidence attendant to any case brought outside a limitations period. At least one witness who previously appeared to be willing to testify on Mr. Chamberlain's behalf has now declined to travel to the United States voluntarily, further weakening his ability to present a defense. And even the Government is no longer able to present its case in a way that is fair to Mr. Chamberlain: as of the filing of the motion, Mr. Chamberlain understands that the Government intends to ask the Court to authorize the taking of foreign depositions in lieu of live testimony for *eight* of its witnesses—most of whom testified in person for the *Hussain* trial, and would have been subject to more effective cross-examination back then. And the Government has not offered any benefit to this delay: it filed an indictment that simply duplicates, word for word, the allegations from Hussain's indictment. There is no justification for the Government's delay,

[1] Mr. Chamberlain joins Dr. Lynch's motion and incorporates its arguments in their entirety.

2

1   and in that context, the Due Process Clause requires the Court to dismiss the counts that the

2   Government repeated from the *Hussain* indictment.

3       For these reasons, the Court should dismiss all counts in the Superseding Indictment as

4   against Mr. Chamberlain and put an end to the needless pall that the Government's investigation

5   has cast over his life for over a decade now.

6   **II.    RELEVANT BACKGROUND**

7       **A.    The Beginning of the Government's Investigation**

8       The relevant transactions and communications in this case took place in or before 2011,

9   when Autonomy was acquired by HP. And the only act Mr. Chamberlain is alleged to have

10  committed in furtherance of the conspiracy alleged in Count Seventeen took place in 2012. Just

11  over a year later, starting in 2013, various agencies of the government (including the United States

12  Air Force, the Securities Exchange Commission, and the prosecutors in this case), regularly

13  communicated with Mr. Chamberlain and his counsel, making clear they viewed him—unjustly, in

14  his view—as a target of the investigation who would likely be indicted absent a pre-indictment

15  resolution. Chamberlain was not an unknown participant whose involvement was revealed late

16  into the Government's investigation: to the contrary, the Government was focused on him—and

17  made sure he knew that—since the beginning.

18      **B.    The Government's Foreign Requests to Vatican City and Italy and Tolling**

19          **Order 1**

20      Before obtaining the original indictment in this case, the Government submitted (as

21  relevant here) four requests to foreign governments pursuant to Mutual Legal Assistance Treaties

22  ("MLATs") for evidence located in their respective countries. It relied on four of those MLAT

23  requests to toll applicable statutes of limitation for the time period during which those requests

24  were pending.

25      Between August and December 2015, the Government submitted a number of requests and

26  follow-up communications to the governments of Vatican City and Italy.

27      **The Vatican Request.** On August 10, 2015, the Government transmitted a diplomatic note

28  to Vatican City, requesting an interview of Cesare Pasini, the Prefect of the Vatican Apostolic

3   Case No. 3:18-cr-00577-CRB

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay

Library, to obtain "information concerning a potential transaction in 2010 connected to the Vatican Apostolic Library." Declaration of Gary S. Lincenberg ("Lincenberg Decl."), Exhibit 1.[2] On December 18, 2015, the Government followed up with a second request to the Vatican related to that potential 2010 transaction, which continued to seek an interview with Pasini and also requested testimony from Luciano Ammenti, as well as additional business records. Ex. 2.

**The Italian Request.** On December 23, 2015, the Government submitted a request to the Italian government for certain business records. Exs. 3 & 4.[3] The Italian Request sought business records and communications documenting transactions between Autonomy on the one hand and five Italian entities on the other: (1) Sales Consulting S.R.L., (2) Auxilium Tech S.R.L., (3) Postecom, S.p.A., (4) Red Ventures S.R.L., and (5) Poste Italiane. *Id.*

**Tolling Order 1.** On January 29, 2016, the Government applied for and obtained an order suspending the statute of limitations for violations of six offenses, including conspiracy and wire fraud, based on the Vatican and Italian Requests. Ex. 5 ("Tolling Order 1"). As to the Vatican Request, the order suspended the statute of limitations beginning on August 10, 2015. *Id.* at 2. As to the Italian Request, the beginning date was December 23, 2015. *Id.* As to both requests, the period of suspension would end when the relevant country "takes final action on the request." *Id.*

The latest date on which that occurred is May 25, 2016. Specifically, on April 18, 2016, the Department of Justice's Office of International Affairs (OIA) sent the prosecutors in this case a letter accompanying "materials provided by Vatican authorities" and stating that "this rogatory letter request has been completed." Ex. 6. As to the Italian Request, the prosecutors received additional letters from OIA on April 28, 2016 and May 25, 2016, indicating that the Government had received materials requested in the Italian Request and confirming that "[f]rom our records, this MLAT request has now been completed." *See* Exs. 7 & 8.

---

[2]   For brevity, unless otherwise specified, the abbreviation "Ex." refers to exhibits from the concurrently-filed Declaration of Gary S. Lincenberg.

[3]   Although the request is dated December 17, 2015, the Government's declaration in support of its tolling application states that it was sent to the Italian government on December 23, 2015. Ex. 4 ¶ 28.

Thus, at most, Tolling Order 1 tolled the relevant statutes as to fraud allegations connected to the Vatican and the entities listed in the Italian MLAT request from August 10, 2015 through May 25, 2016, a period of 289 days.

**C.      UK Request 1 and Tolling Order 2**

On January 29, 2016, the Government sent an MLAT request to the United Kingdom. Ex. 9 ("UK Request 1"). UK Request 1 sought three categories of records apparently designed to trace proceeds from HP's purchase of Autonomy:

1.      Bank and brokerage records from Barclays PLC, Credit Suisse AG, JP Morgan International Bank Limited, Julius Baer International Limited, Julius Baer Portfolio Managers Limited, Merrill Lynch International, Royal Bank of Scotland, and UBS AG relating to accounts held variously by Lynch, Chamberlain, Hussain, Andrew Kanter, and Angela Bacares (Lynch's wife);

2.      Certain business records held by Capita Registrars Limited and Royal Bank of Scotland PLC concerning payments to Autonomy shareholders (including Lynch, Hussain, Chamberlain, and Kanter) following HP's acquisition of Autonomy; and

3.      Phone records from Vodaphone and Telefonica UK Limited relating to two numbers that purportedly belonged to Hussain.

The only portions of UK Request 1 related to Mr. Chamberlain were requests for (1) bank records from Barclays PLC and UBS AG accounts held by Mr. Chamberlain or for his benefit, *see* Ex. 9 at 9–10; and records concerning the payments to and communications with Mr. Chamberlain from Capita Registrars Limited and Royal Bank of Scotland PLC, *id.* at 11–12.

Based on UK Request 1, on June 7, 2016 the Government sought and obtained a second order suspending the statute of limitations. Ex. 10 ("Tolling Order 2"). Tolling Order 2 suspended the relevant statutes of limitation starting on January 29, 2016. Although a December 13, 2017 letter from the UK's Serious Fraud Office stated, "Please note that as your request has now been fully executed, we have closed our file in relation to this matter," the Government continued to receive responses to UK Request 1 until at least March 22, 2019—over three years later. Exs. 11 & 12. However, 18 U.S.C. § 3292(c)(1) provides that "[t]he total of all periods of suspension

1   under this section with respect to an offense … shall not exceed three years." Thus, to the extent

2   Tolling Orders 1 and 2 apply to an offense, the relevant limitations period would be extended by

3   three years.

4       **D.      The Tolling Agreement**

5       Further overlapping with Tolling Order 2, on September 20, 2016, Mr. Chamberlain and

6   the Government executed a tolling agreement indicating that the period between September 19,

7   2016 and November 10, 2016 should be excluded from the calculation of any statute of

8   limitations—a 54-day period including both the beginning and ending dates. Ex. 13 (the "Tolling

9   Agreement").

10      **E.      The *Hussain* Indictment**

11      On November 10, 2016—the day on which Mr. Chamberlain's tolling agreement with the

12  Government expired—the Government charged only Sushovan Hussain with crimes that are

13  essentially identical to the original indictment in this case. *See* Indictment, Dkt. 1, *United States v.*

14  *Hussain*, No. 3:16-cr-00462-CRB (N.D. Cal. Nov. 10, 2016) (the "*Hussain* Indictment").

15      •   The "means and methods" alleged in Paragraphs 25(a) through 25(cc) for Count

16          One of the *Hussain* Indictment are word-for-word identical to the "means and

17          methods" allegations in Paragraphs 23(cc) through 23(ee) of the Superseding

18          Indictment here, with the only changes being that Messrs. Chamberlain and Lynch

19          were referred to as unnamed co-conspirators in the *Hussain* indictment while

20          Hussain is referred as an unnamed co-conspirator in this case; and

21      •   Counts Two through Fourteen of the *Hussain* Indictment were copied and pasted

22          word-for-word into the original indictment in this case; and

23      •   Count Fifteen in the *Hussain* Indictment was eventually added into the Superseding

24          Indictment in this case, Dkt. 21.

25      There can be no dispute that Mr. Chamberlain was an unindicted co-conspirator in the

26  *Hussain* indictment. On May 4, 2017, the Government filed a superseding indictment in the

27  *Hussain* matter, which likewise did not name Mr. Chamberlain as a defendant.

28

### F.      UK Request 2 and Tolling Order 3

In the midst of the *Hussain* prosecution, on May 1, 2017, the Government submitted a supplemental MLAT request to the UK ("UK Request 2"), seeking two additional categories of documents:

1.      Records from Slaughter and May from between July 1, 2011 and October 31, 2011 concerning the "Project Daniel 1Room," which was the codename for the data room Autonomy maintained during the due diligence process preceding HP's acquisition of Autonomy; and

2.      Records from Ernst & Young from between 2013 and 2014 relating to its post-acquisition audit of Autonomy's financial statements.

Ex. 14 at 6–7.

On July 27, 2018, the Government applied for further tolling of the statutes of limitation based on UK Request 2. Ex. 15 ("Tolling Order 3"). The court granted the Government's request on August 8, 2018. Because Tolling Orders 1 and 2 would, on their own, already have resulted in the maximum three-year tolling period under section 3292(c)(1), the main effect of Tolling Order 3 was that it suspended the limitations periods for offenses for which they had not yet run by May 1, 2017, but which were not covered by Tolling Order 2.

### G.      The Indictment and Superseding Indictment

Mr. Hussain was convicted on April 30, 2018, following a jury trial. Messrs. Chamberlain and Lynch were indicted on November 19, 2018. Dkt. 1. Count 1 charged both defendants with conspiracy to commit wire fraud (18 U.S.C. § 1349) beginning in January 2009 and ending "in or about October 2011." Dkt. 1 ¶ 26. Counts Two through Fourteen of the original indictment charged them with wire fraud (18 U.S.C. § 1343) occurring between January and August 2011. *Id.* ¶ 28.

The Superseding Indictment, Dkt. 21, added Count Fifteen, another wire fraud count, based on a wire dated October 4, 2011. *Id.* ¶ 28. It also added Count Seventeen, which charges the defendants with a multi-object conspiracy to falsify records, influence testimony, and launder the proceeds of the Autonomy sale to HP from October 2011 to November 2018. *Id.* at 32–33.

III.    **LEGAL STANDARD**

The Government bears the burden of proving that the charges alleged in an indictment are timely, *Grunewald v. United States*, 353 U.S. 391, 396 (1957), including that the applicable statutes of limitations have been adequately tolled where necessary, *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982). The Supreme Court has admonished that statutes of limitation be "liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 114–15 (1970) (quoting *United States v. Scharton*, 285 U.S. 518, 522 (1932)). This is because "the purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time," which "is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.*; *see also Caplan v. Yokes*, 649 F.2d 1336, 1341 n.7 (9th Cir. 1981).

IV.    **ARGUMENT**

The crimes charged against Chamberlain in Counts One through Fifteen—wire fraud and conspiracy—are based on statutes that have five-year statutes of limitations. 18 U.S.C. § 3282. In the case of a conspiracy, the statute of limitations runs from the date of the last overt act alleged to have been committed in furtherance of the conspiracy. *See United States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976).

18 U.S.C. § 3292(a)(1) permits tolling for up to three years based on the pendency of requests by the prosecutors to foreign governments for "evidence of an offense" located in their countries. However, such tolling only applies to the *specific* offenses to which the requested evidence relates. *See United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004) ("[T]he government will be required to prove to the court that the evidence actually is or was in the foreign country, has been officially requested, and *is related to an offense*." (emphasis added)); *United States v. Neill*, 952 F. Supp. 831, 833 n.2 (D.D.C. 1996) (stating that the government cannot "request foreign evidence related to tax violations to toll the statute of limitations regarding conspiracy to import a controlled substance").

Moreover, an MLAT does not justify such tolling if it was sought for the improper purpose

of extending the statute of limitations instead of as a bona fide effort to obtain additional evidence supporting potential charges. As the Fifth Circuit has explained,

> The purpose of § 3292, apparent from its structure and legislative history, is to compensate for 'delays attendant in obtaining records from other countries.' This provision should not be an affirmative benefit to prosecutors, suspending the limitations period, pending completion of an investigation, whenever evidence is located in a foreign land. It is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option.

*United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998). To that end, "district courts retain sufficient oversight powers to prevent any abuse of § 3292 by the government." *DeGeorge*, 380 F.3d at 1214–15 (citing *Meador*).

### A.   Counts One Through Fifteen of the Superseding Indictment are Time-Barred as to Mr. Chamberlain

Counts One through Fifteen are time-barred if no tolling occurred given the delay in charging until November 29, 2018:

| Count | Beginning of Limitations Period | Expiration Without Tolling |
|-------|----------------------------------|-----------------------------|
| 1 | Oct. 31, 2011[4] | Oct. 31, 2016 |
| 2 | Jan. 26, 2011 | Jan. 26, 2016 |
| 3 | Feb. 1, 2011 | Feb. 1, 2016 |
| 4 | Feb. 3, 2011 | Feb. 3, 2016 |
| 5 | Mar. 4, 2011 | Mar. 4, 2016 |
| 6 | Apr. 4, 2011 | Apr. 4, 2016 |
| 7 | Apr. 21, 2011 | Apr. 21, 2016 |
| 8 | July 27, 2011 | July 27, 2016 |
| 9 | Aug. 1, 2011 | Aug. 1, 2016 |
| 10 | Aug. 2, 2011 | Aug. 2, 2016 |
| 11 | Aug. 3, 2011 | Aug. 3, 2016 |

---

[4]   The indictment alleges that the Count 1 conspiracy ended "in or about October 2011." Dkt. 21 ¶ 26. Because the specific date in October makes no difference to this calculation (or the other calculations made in this motion), this motion conservatively assumes that the alleged conspiracy ended on the last day of October.

| 12 | Aug. 4, 2011 | Aug. 4, 2016 |
| 13 | Aug. 4, 2011 | Aug. 4, 2016 |
| 14 | Aug. 5, 2011 | Aug. 5, 2016 |
| 15 | Oct. 4, 2011 | Oct. 4, 2016 |

The 54-day Tolling Agreement alone would not save any of these counts because (1) it was executed on September 20, 2016, after thirteen of the fifteen counts became time-barred, and (2) as to Counts 1 and 15, the 54-day tolling period would not have extend the limitations period past the beginning of November 27 and December 26, 2016, respectively.

### 1.   Count Two is time-barred.

Mr. Chamberlain joins in and incorporates by reference Dr. Lynch's Motion. As explained therein, *see* Lynch Mot. at Section III.B.1, Tolling Order 1 did not extend the limitations period for the offense charged in Count 2 because it did not seek "evidence of [that] offense" within the meaning of section 3292. The predicate wire transmission for Count 2 is a January 26, 2011 email concerning a transaction with DiscoverTech, an American company. Ex. 16 (*Hussain* Trial Exhibit 1512). On the other hand, the Vatican and Italian Requests that were the subject of the Tolling Order 1 sought evidence about transactions with companies in those respective countries. Without the suspension of the limitations period provided by the Tolling Order 1, Count Two became untimely on January 26, 2016, before further tolling began pursuant to Tolling Orders 2 or 3. Accordingly, Count Two should be dismissed.

### 2.   Counts Three through Seven are time-barred.

Counts Three through Seven should be dismissed as untimely because:

(1)   Tolling Order 1 expired before the November 29, 2018 indictment in this case;

(2)   Tolling Order 2 did not further extend the tolling period as to these counts because it did not seek evidence relating to the specific offenses charged therein;

(3)   Tolling Order 3 is not relevant if Tolling Order 2 did not toll the statutes because each of Counts 3 through 7 would have been time-barred before Tolling Order 3 came into effect.

Assuming *arguendo* that the Vatican and Italian Requests covered by Tolling Order 1

sought evidence relating to the offenses alleged in each of these counts,[5] and including the period tolled under Chamberlain's agreement with the Government, the applicable statutes of limitation for Counts Three through Seven expired on the dates listed in the right column of the chart below:

| Count | Date | Base SOL (5 Years) | With Tolling Order 1 (289 Days) | With Tolling Order 1 *and* Tolling Agreement (289+54 Days) |
|-------|------|--------------------|---------------------------------|-----------------------------------------------------------|
| 3 | 2/1/2011 | 2/1/2016 | 11/16/2016 | 1/9/2017 |
| 4 | 2/3/2011 | 2/3/2016 | 11/18/2016 | 1/11/2017 |
| 5 | 3/4/2011 | 3/4/2016 | 12/18/2016 | 2/10/2017 |
| 6 | 4/4/2011 | 4/4/2016 | 1/18/2017 | 3/13/2017 |
| 7 | 4/21/2011 | 4/21/2016 | 2/4/2017 | 3/30/2017 |

Tolling Order 3, based on UK Request 2, did not start tolling the statute of limitations under May 1, 2017. Ex. 16 at 3. This is after the expiration dates noted above. This means that if UK Request 1—sent on January 29, 2016—did not extend the statute for each of these counts, they are time-barred.

In fact, UK Request 1 did *not* toll the limitations period for these counts because it did not seek evidence relating to the specific offenses charged in any of them. Counts Three through Seven allege that Chamberlain committed wire fraud through the following communications:

- Count 3 relates to a February 1, 2011 press release announcing Autonomy's year-end results for 2010.

- Counts 4 and 5 relate to videoconferences "involving participants in Palo Alto, California, and the United Kingdom" on February 3, 2011 and March 4, 2011, respectively.

---

[5]   Mr. Chamberlain does not concede that the Italian and Vatican Requests sought evidence related to Counts Three through Seven. However, as discussed herein, that question need not necessarily be resolved for purposes of this analysis.

- Count 6 relates to an email from David Truitt to Malcolm Hyson, both of DiscoverTech, forwarding a "Prisa VAR letter agreement."

- Count 7 relates to an April 21, 2011 Autonomy press release providing a "Trading Update" for the first quarter of 2011.

On their face, none of the offenses alleged in these counts relate to information about Chamberlain's bank accounts or the amount of money he received after he redeemed his shares in Autonomy following the HP acquisition. That is, none of these counts are based on the type of evidence sought in UK Request 1 as to Mr. Chamberlain, i.e., records from banks that managed accounts personally held by Mr. Chamberlain and records from Capita Registrars, the company that managed the process of implementing the redemption of Autonomy securities by Autonomy shareholders—including Mr. Chamberlain—after HP completed its acquisition in October 2011. Ex. 9.

For these reasons, Counts Three through Seven of the Superseding Indictment are time-barred.[6]

### 3. Counts Eight through Fifteen are time-barred.

Counts Eight through Fifteen are also untimely. Assuming again *arguendo* that the Vatican and Italian Requests covered by Tolling Order 1 sought evidence relating to the offenses alleged in each of these counts,[7] and including the period tolled under Chamberlain's agreement with the Government, the applicable statutes of limitation for Counts Eight through Fifteen expired on the dates listed in the right column of the chart below:

---

[6]   Moreover, well before UK Request 1 was sent, the Government was fully aware of Mr. Chamberlain's compensation (including what he received from the acquisition): on October 15, 2015, the prosecutors received a letter and document production from HP's counsel confirming the compensation received by Messrs. Lynch, Hussain, Kanter, and Chamberlain, including in connection with the exercise of share options following HP's acquisition. *See* Ex. 17. Thus, at least as to Mr. Chamberlain, the Government already had in its possession the very type of evidence sought by UK Request 1. This fact, together with those discussed *infra*, creates doubt about the Government's true motives for making UK Request 1. That improper motivation is another basis for the Court to find that Counts 3 through 7 are time-barred.

[7]   Mr. Chamberlain does not concede that the Italian and Vatican Requests sought evidence related to Counts Eight through Fifteen. However, as discussed herein, that question need not necessarily be resolved for purposes of this analysis.

| Count | Date | Base SOL (5 Years) | With Tolling Order 1 (289 Days) | With Tolling Order 1 *and* Tolling Agreement (289 + 54 Days) |
|---|---|---|---|---|
| 8 | 7/27/2011 | 7/27/2016 | 5/12/2017 | 7/5/2017 |
| 9 | 8/1/2011 | 8/1/2016 | 5/17/2017 | 7/10/2017 |
| 10 | 8/2/2011 | 8/2/2016 | 5/18/2017 | 7/11/2017 |
| 11 | 8/3/2011 | 8/3/2016 | 5/19/2017 | 7/12/2017 |
| 12 | 8/4/2011 | 8/4/2016 | 5/20/2017 | 7/13/2017 |
| 13 | 8/4/2011 | 8/4/2016 | 5/20/2017 | 7/13/2017 |
| 14 | 8/5/2011 | 8/5/2016 | 5/21/2017 | 7/14/2017 |
| 15 | 10/4/2011 | 10/4/2016 | 7/20/2017 | 9/12/2017 |

Thus, in order to avoid the statute of limitations for these counts, the Government must rely on Tolling Orders 2 and/or 3.

First, just as with Counts Three through Seven, UK Request 1 (the basis for Tolling Order 2) did not seek "evidence of" the offenses alleged in Counts Eight through Fourteen.[8] As discussed above, that request was focused on the compensation that Mr. Chamberlain and others received during their employment with Autonomy and after the HP acquisition (information that the Government had since 2015). Counts Eight through Fourteen each charged Chamberlain with wire fraud based on communications that had nothing to do with the evidence sought in that request:

- Count Eight relates to an Autonomy press release for the first half of 2011.

- Counts Nine through Twelve relate to conference calls involving participants from both the UK and California.

- Counts Thirteen and Fourteen relate to emails regarding the due diligence HP conducted before acquiring Autonomy but not related to the compensation Autonomy paid its officers.

---

[8]   Count Fifteen is based on a letter from Capita Registrars relating to payments made to Autonomy shareholders (including Mr. Chamberlain) after HP completed its acquisition. Since UK Request 1 sought information from Capita Registrars, Mr. Chamberlain is not disputing, for purposes of this motion, that that request may have sought evidence pertaining to Count Fifteen.

Again, none of the records sought by the first UK MLAT request could constitute "evidence of" the offenses alleged in these counts—i.e., that false statements were made during these communications, resulting in a financial loss to a victim. Thus, for these counts, the Government must rely on UK Request 2, and Tolling Order 3, in order for Counts Eight through Fifteen to survive.

Second, as to all of Counts Eight through Fifteen, the circumstances surrounding UK Request 2 (and to the extent the Court believes it applies, UK Request 1) raise serious questions about whether they were bona fide attempts to obtain foreign evidence rather than prohibited bad-faith procedural maneuvers meant only to prolong the statute of limitations.

As detailed in Mr. Lynch's motion which Mr. Chamberlain joins and incorporates by reference as though fully set forth herein, the misuse of MLATs is no mere conjecture, particularly in this case. In *United States v. Bogucki*—a case involving the same United States Attorney's Office as here, involving foreign evidence requests made around the same time as the ones in this case—this Court concluded that there was a sufficient basis to suspect government misuse of MLAT requests to order further discovery into the government's "true motivations" for making them. *United States v. Bogucki*, 316 F. Supp. 3d 1177, 1183 (N.D. Cal. 2018). Rather than face this inquiry, the government opted to file a superseding indictment that did not rely on any MLAT-based tolling. *Id.* As detailed in Mr. Lynch's motion, following *Bogucki*, it became clear that prosecutorial misuse of section 3292 was a widespread problem throughout the Department of Justice.[9]

Here, for the reasons discussed herein and in Dr. Lynch's motion, there are a number of reasons to conclude that UK Requests 1 and 2 were not sought in good faith. As Dr. Lynch explains in his motion, the Government made UK Request 1 mere days before the statutes of

---

[9]    *See* Lynch Mot. at Section III.C (citing Aruna Viswanatha & Dave Michaels, *Justice Department Accused of Abusing Process to Extend Statute of Limitations*, Wall St. J. (Feb. 2, 2020), https://www.wsj.com/amp/articles/justice-department-accused-of-abusing-process-to-extend-statute-of-limitations-11580657654; Jack Crowe, *Former Justice Department Attorney Warns That Prosecutorial Abuses Go Beyond FISA Process*, Nat'l Review (Feb. 13, 2020), https://www.nationalreview.com/news/ former-justice-department-attorney-warns-that-prosecutorial-abuses-go-beyond-fisa-process/).

limitation for Counts Three and Four were set to expire. And if that request did not toll the applicable limitations periods for these counts, then UK Request 2 would have done so only mere weeks before the limitations periods expired for Counts Eight through Fourteen as to Dr. Lynch.

Substantively, it is also not clear what additional information related to the specific offenses alleged in these counts the Government hoped to obtain from these MLAT requests.

- The bank records requests in UK Request 1 bear no relationship to the wire fraud allegations in Counts Eight through Fifteen.

- The requests for information about equity redemptions by Messrs. Lynch, Hussain, Chamberlain, and Kanter in UK Request 1 sought information about that the Government already had in its possession from prior communications with HP's counsel, Ex. 17.

- While the request for due diligence documents in UK Request 2 do relate to the general allegation that Autonomy defrauded HP immediately prior to its acquisition, it is not clear what additional substantive evidence that request would yield. In the request itself, the Government conceded that it was already in possession of materials pertaining to its allegation that HP was misled by the so-called "top 40 lists" that Autonomy had provided it. Additionally, at that point, HP was cooperating fully with the Government and had presumably made available all materials in its possession pertaining to the acquisition. At a minimum, the Government already had sufficient information regarding this allegation that it had indicted Hussain for his participation in that alleged misrepresentation.

- The request for Ernst & Young's records in UK Request 2 related to an audit that took place in 2013 and 2014, years after the events alleged in Counts Eight through Fourteen.

The possibility that the Government was not actually seeking additional substantive information in UK Request 2 is further reinforced by the fact that there are no meaningful textual changes between the allegations in the *Hussain* indictment and those in the original indictment against Mr. Chamberlain. Coupled with the timing of the request, there appears to be a strong

1   possibility that the requests were not made for genuine investigative reasons, but instead because

2   the Government was worried that some of the statutes of limitation for offenses it intended to re-

3   allege against Chamberlain were about to expire.

4         Taken together, these circumstances raise the concerning possibility that the prosecutors in

5   this case may have chosen not to pursue all foreign investigative avenues at the outset, in order to

6   be able to "daisy-chain" foreign requests together and prolong the statute of limitations as much as

7   possible. At a minimum, as this Court recognized in *Bogucki* in connection with a case brought by

8   the same United States Attorney's Office, there is enough "smoke" here to necessitate further

9   discovery into the Government's motives for pursuing the foreign evidence requests when it did. If

10  that discovery reveals that the requests were made for an improper purpose, the Government

11  should not get the benefit of the tolling periods that resulted from them.

12        Because the underlying request was made for an improper purpose, Tolling Order 3 should

13  be invalidated and Counts Eight through Fourteen should be dismissed. At a minimum, the Court

14  should order additional discovery into the Government's motives for UK Request 2 along the

15  same lines as what Dr. Lynch has proposed with respect to UK Request 1—a request in which Mr.

16  Chamberlain joins—including all interagency communications regarding the purposes of the

17  request.

18          **4.**      **If UK Requests 1 and 2 were improper, Count One is time-barred.**

19        If UK Requests 1 and 2 were improper attempts to extend the limitations period—rather

20  than bona fide requests to obtain additional evidence—then Count One must be dismissed as well.

21  Specifically, the last day of the conspiracy alleged in Count One was October 31, 2011. Dkt. 21 at

22  26. The five-year limitations period would have expired on October 31, 2016 absent tolling.

23  Adding 289 days for the Vatican and Italian Requests plus 54 days for the Tolling Agreement

24  extends the limitations period to October 10, 2017. Unless that period was extended further by UK

25  Requests 1 and/or 2, the limitations period for Count One expired over a year before Chamberlain

26  was indicted. Accordingly, if tolling for UK Requests 1 and 2 was improper, Count One is

27  untimely.

28

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay

1
2

**B.      Alternatively, Counts One through Fifteen Should Still Be Dismissed for Prejudicial Preindictment Delay**

3       Counts One through Fifteen should also be dismissed as to Mr. Chamberlain because the

4   Government's lengthy delay prejudiced him without a valid reason. "Generally, the statute of

5   limitations for a particular crime limits the Government's delay in bringing an information and

6   protects the defendant from the effects of excessive delay. However, delay violating a defendant's

7   Fifth Amendment due process rights requires dismissal of the charges even if the statute of

8   limitations has not expired." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998). To establish

9   prejudicial delay, a defendant must first "prove that he suffered actual, non-speculative prejudice

10   from the delay." *Id.* (quotation marks omitted). If he does, the defendant must then "show the

11   delay, when balanced against the prosecution's reasons for it, offends those fundamental

12   conceptions of justice which lie at the base of our civil and political institutions." *Id.* (citation

13   omitted).

14       This is the rare situation in which both requirements are met, and the Court should dismiss

15   the charges in this case which reiterate charges in the *Hussain* case (the "reiterated *Hussain*

16   counts") on due process grounds.

17       ***First***, the late timing of the indictment, as well as the Government's repeated statements

18   that it would make indictment decisions in the Autonomy investigation in 2016 (when Hussain

19   was indicted) deprived Mr. Chamberlain of his right to repose based on his reliance on a plain

20   reading of the relevant statutes of limitation. As the Supreme Court has explained, statutes of

21   limitation

22       represent legislative assessments of relative interests of the State and
         the defendant in administering and receiving justice; they are made
23       for the repose of society and the protection of those who may
         (during the limitation) . . . have lost their means of defence. These
24       statutes provide predictability by specifying a limit beyond which
         *there is an irrebuttable presumption that a defendant's right to a*
25       *fair trial would be prejudiced.*

26   *United States v. Marion*, 404 U.S. 307, 322 (1971) (emphasis added; cleaned up). Here, by

27   enacting a five-year statute of limitations for non-capital offenses, Congress made a legislative

28   determination that after five years have passed, such prosecutions would prejudice a defendant's

1  right to a fair trial. 18 U.S.C. § 3292 reflects a judgment by Congress that the benefit of allowing

2  law enforcement additional time to receive foreign evidence outweighed the defendant's interest in

3  the repose provided by clearer statutes of limitation. However, this does not alter the Court's

4  observation that indictments filed after the expiration of the baseline limitations period would

5  result in prejudice to the defendant. The Court should therefore presume that Mr. Chamberlain's

6  right to a fair trial has been prejudiced because he was indicted more than five years after his

7  alleged offense.

8       **Second**, in this case, the Government's actions—and delayed indictment—violated Mr.

9  Chamberlain's right to repose. Here, at an early stage, the Government made it known that Mr.

10  Chamberlain was a target. *See* Lincenberg Decl. ¶ 2. In the fall of 2016, the Government told Mr.

11  Chamberlain's counsel that Mr. Chamberlain was likely to be indicted. *Id*. The Government

12  agreed to a pre-indictment meeting. Through counsel, Chamberlain denied wrongdoing, made a

13  pre-indictment presentation as to why he should not be charged, and prepared to defend himself

14  against an indictment. *Id.* He was not indicted with Mr. Hussain.

15       The Court advised the Government of a deadline for superseding. While the Government

16  did file one superseding indictment, it still did not charge Mr. Chamberlain. A review of discovery

17  and of the *Hussain* proceedings shows no evidence of any continuing investigation of Mr.

18  Chamberlain by the Government. By the conclusion of the *Hussain* trial, the five-year statute of

19  limitations had expired for over a year. Mr. Chamberlain was not aware that the Government had

20  been applying for tolling based on foreign evidence requests. Based on the Government's

21  statements to his counsel from before the *Hussain* indictment, the detailed allegations within that

22  indictment, and the evidence at the *Hussain* trial, it was clear that the Government's investigation

23  had turned up all of the information it needed about Mr. Chamberlain's work at Autonomy. Based

24  on that evidence, the Government had (rightfully) declined to indict him. With the danger and

25  anxiety of a potential indictment lifted, Chamberlain moved on with his life. Two years later,

26  Chamberlain was indicted on the *exact same allegations* it leveled against Mr. Hussain.

27       The state of limbo in which the Government's actions have placed Mr. Chamberlain has

28  prevented him from moving on with his life for over a decade. Under the shadow cast by the

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-
Barred and for Preindictment Delay

1  pending indictment, Mr. Chamberlain has faced difficulties finding a job. He has fewer resources

2  available to him with which to mount a defense in this trial (and with which to live his life more

3  generally). He has had to spend 20 percent of his life devoting a significant portion of his time to

4  preparing a defense against claims he denies. He has not been able to move on with his life.

5        ***Third***, the prosecutors' delay has prevented Chamberlain from being able to present live

6  testimony from Lisa Harris and Poppy Gustafsson—two critical witnesses who worked with him

7  in the Autonomy accounting department and were involved in some of the subject transactions.

8  Both testified in the UK civil trial and provided exculpatory testimony. When Mr. Chamberlain

9  originally anticipated an indictment in 2016, his counsel identified Ms. Harris and Ms. Gustafsson

10  as potentially important defense witnesses. Lincenberg Decl. ¶ 3. Both were quite cooperative and

11  expressed a willingness to provide testimony. Of course, at that time Chamberlain did not have

12  discovery to use to question these witnesses and, since there was no indictment, could not serve

13  them with subpoenas. No formal agreement was reached, and no subpoenas were ever issued to

14  either witness because Chamberlain had not been indicted. At no point did either witness indicate

15  that she would be unwilling to travel to the United States in Chamberlain's defense. *Id.* Once Mr.

16  Hussain was indicted without Mr. Chamberlain, no further efforts were made to secure their

17  testimony. Now, both witnesses, who reside outside this Court's jurisdiction, have indicated that

18  they will not voluntarily travel to the United States to testify.

19        At this point, Mr. Chamberlain has no choice but to seek the limited relief available to

20  address both witnesses' refusals to appear by asking the Court to order a Rule 15 deposition.

21  Deposition testimony is, of course, no substitute for live testimony, where both witnesses could

22  have presented their testimony directly to the jury and responded to the testimony presented in the

23  Government's case-in-chief. *See United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007)

24  ("Underlying both … constitutional principles and the rules of evidence is a preference for live

25  testimony."). Moreover, by being forced to rely on pretrial depositions, the defense is forced to ask

26  questions without knowing what needs to be asked in response to the case the Government has

27  presented. The prosecutor's unnecessary years-long delay therefore deprived Chamberlain of his

28  ability to present live exculpatory testimony material responsive to the Government's case-in-

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-
Barred and for Preindictment Delay

1    chief.

2        **Fourth,** the delay has also potentially prejudiced Mr. Chamberlain's ability to effectively

3    cross-examine the Government's witnesses at trial. At the time of the filing of this motion, Mr.

4    Chamberlain understands that the Government is asking the Court, through Rule 15 applications,

5    to permit eight witnesses to testify via deposition instead of at trial. Most of these witnesses

6    voluntarily appeared to testify live at *Hussain* trial, but have apparently declined to do the same

7    for a second trial involving nearly identical allegations. Even if Mr. Chamberlain's rights under

8    the Confrontation Clause are not violated by the absence of live testimony, the Government's

9    delayed indictment has harmed Mr. Chamberlain's ability to effectively cross-examine these

10   witnesses. *See Yida*, 498 F.3d at 951 ("The ability to cross-examine a witness *at trial* using *the*

11   *most current investigative information available* cuts to the heart of the Sixth Amendment's

12   confrontation clause." (emphasis added)). Simply put, if the Government had tried Mr.

13   Chamberlain with Mr. Hussain, he could have confronted them in person, based on the

14   information developed earlier in the trial. Now, he cannot.

15       Given the identical nature of the allegations against Hussain and now Mr. Chamberlain,

16   there is no justification for the Government's delay, and certainly not one that obviates the

17   prejudice to Mr. Chamberlain. There is no indication that the Government used the additional time

18   to investigate the case further. And while it may have had tactical reasons for the delay—i.e., that

19   it wanted to test its theories against a single defendant before proceeding against others—such

20   "tactical" reasons do not justify the prejudice to Mr. Chamberlain. *See United States v. Lovasco*,

21   431 U.S. 783, 795 (1977). The Court should conclude that the delay "offends those fundamental

22   conceptions of justice which lie at the base of our civil and political institutions," and dismiss

23   Counts One through Fifteen as to Mr. Chamberlain. *Doe*, 149 F.3d at 948.

24       **C.    The Court Should Grant Dr. Lynch's Motion to Dismiss Three of the Four**

25       **Objects Alleged in Count Seventeen and Should Dismiss that Count as to Mr.**

26       **Chamberlain Entirely**

27       Mr. Chamberlain joins in full the arguments set forth in Dr. Lynch's motion to dismiss

28   Counts 17 on timeliness grounds. Lynch Mot. at Section III.B.3. For the reasons stated in that

1   motion, the Court should dismiss three of the four objects alleged in Count 17. *Id.* Doing so

2   requires dismissal of the entirety of that count as to Mr. Chamberlain, because the only act he is

3   alleged to have committed in furtherance of the conspiracy relates only to one of the time-barred

4   objects, i.e., a books-and-records violation under 15 U.S.C. § 78m.

5        That is, Mr. Chamberlain is only alleged to have committed a single overt act in

6   furtherance of the charged conspiracy: the act alleged in Paragraph 34(e) of the Superseding

7   Indictment, that "[o]n or about February 3, 2012, CHAMBERLAIN and Hussain directed an HP

8   finance employee to falsely record approximately $5.5 million in revenue to be included in HP's

9   financial statements for the period ending January 31, 2012." This act pertains only to one of the

10  four alleged objects of the alleged conspiracy: "circumventing a system of internal accounting

11  controls of an issuer of securities registered under Section 12 of the Securities Exchange Act, in

12  violation of Title 15, United States Code, Section 78m." Dkt. 21 ¶ 32. And as explained in Dr.

13  Lynch's motion, Count Seventeen is time-barred to the extent it alleges a conspiracy to achieve

14  that particular object, and none of the Government's tolling applications (or resulting tolling

15  orders) purported to toll the statute of limitations as to 15 U.S.C. § 78m.

16       Since that object is time-barred, Mr. Chamberlain's sole overt act, which could only

17  further that object, can no longer form the basis of a conspiracy charge, and the entire count

18  should be dismissed against Mr. Chamberlain.

19  **V.     CONCLUSION**

20       For these reasons, the Court should dismiss Counts One through Fifteen and Count

21  Seventeen as to Mr. Chamberlain. If the Court does not dismiss Counts Eight through Fifteen, it

22  should nonetheless order discovery into the Government's actual motives for making UK

23  Requests 1 and 2, consistent with the request for UK Request 1 in Dr. Lynch's motion.

24

25

26

27

28

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-
Barred and for Preindictment Delay

1  DATED:  September 29, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:      */s/ Gary L. Lincenberg*
         Gary S. Lincenberg
         Attorneys for Defendant Stephen Keith
         Chamberlain

Defendant Stephen Chamberlain's Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-
Barred and for Preindictment Delay