# EXHIBIT 2

COPIA



**U.S. Department of Justice**

Criminal Division
*Office of International Affairs*

JEC:CMP
182-

*Washington, D.C.  20530*

December 18, 2015

TO:            Secretariat of State for the Holy See and Vatican City State

SUBJECT:   Request for International Judicial Assistance in the Criminal Investigation of
               Autonomy Corporation

In accordance with the Note Verbale from the Secretariat of State of the Holy See and
Vatican City State, dated October 8, 2015, the United States Department of Justice submits this
Request for International Judicial Assistance.  The United States Attorney for the Northern
District of California (the prosecutor) is conducting an investigation into the activities of
Autonomy Corporation plc ("Autonomy"), a software developer located in San Francisco,
California, and the United Kingdom, which is suspected of defrauding Hewlett-Packard
Company ("HP") into acquiring the outstanding shares of Autonomy in October 2011.
Autonomy induced HP into acquiring Autonomy in part based on Autonomy's publicly reported
financial results.

The prosecutor is investigating whether Autonomy misstated its publicly reported
financial results by improperly recording revenue on software transactions when there was no
final sale, when the purported purchaser lacked the ability or intent to pay, and when Autonomy
retained effective control over the software sold.  The prosecutor is investigating, among other
things, whether Autonomy properly recorded revenue on the following transactions:

- A purported license agreement, dated March 31, 2010, whereby Autonomy purported to license software to Microtechnologies, LLC ("MicroTech"), an entity based in Virginia in the United States, for $11 million for resale to the *Biblioteca Apostolica Vaticana* ("BAV").

- A purported license agreement, dated March 31, 2010, whereby Autonomy purported to license software to Auxilium Tech S.R.L. ("Auxilium"), an Italian entity, for €2,500,000 for resale to BAV.

The prosecutor's investigation to date reveals that Autonomy was in discussions with BAV and an Italian entity, Postecom S.p.A., both before and after March 31, 2010, regarding a possible sale of Autonomy software to BAV to create a digital archive of materials in the Vatican Library. Those discussions included Monsignor Cesare Pasini and Mr. Luciano Ammenti. The prosecutor's investigation to date reveals that no agreement was reached to acquire Autonomy software.

The prosecutor therefore respectfully seeks business records, including agreements, correspondence, and emails, from BAV relating to its dealings with Autonomy, MicroTech (if any), Auxilium (if any), and Postecom, and testimony from Monsignor Cesare Pasini and Mr. Luciano Ammenti, which will enable the prosecutor to determine whether Autonomy appropriately recorded revenue on the transactions with MicroTech and Auxilium.

## **CONFIDENTIALITY**

The details of this U.S. criminal investigation are considered sensitive. Therefore, please treat this document, its contents, the fact that this request has been made and the results of its execution as confidential and do not disclose it publicly or share it with the subjects of the investigation. Also, please instruct all those who must be made aware of this request for

2

purposes of its execution that the request, its contents and subject matter are to be kept

confidential and should not be shared with the subjects of the investigation nor disclosed

publicly.  Any transfer of information to others may seriously jeopardize the ongoing

investigation.

## URGENCY

Please inform the executing authority that the U.S. authorities respectfully request that

the records be produced no later than **April 30, 2016**.

## THE FACTS

Autonomy was a company incorporated in England and Wales with a registered office in

Cambridge, United Kingdom.  Its principal activities were software development and

distribution.  Autonomy maintained dual headquarters in San Francisco, California, and

Cambridge, England, UK.  Autonomy was a publicly traded company whose shares were listed

on the London Stock Exchange and were bought, held, and sold by individuals and entities

throughout the United States.

During the period 2009 through July 2011, Autonomy published financial results on a

quarterly basis.  It stated that its financial statements were prepared in accordance with

International Financial Reporting Standards ("IFRS").  IFRS accounting requirements for

revenue recognition are defined largely by International Accounting Standard 18 – Revenue

("IAS 18"), which provides in relevant part as follows:

14.  Revenue from the sale of goods shall be recognised when all the
following conditions have been satisfied:

(a) the entity has transferred to the buyer the significant risks and rewards
of ownership of the goods;

3

MLAT_AU 00000013

(b) the entity retains neither continuing managerial involvement to the degree usually associated with ownership nor effective control over the goods sold;

(c) the amount of revenue can be measured reliably;

(d) it is probable that the economic benefits associated with the transaction will flow to the entity; and

(e) the costs incurred or to be incurred in respect of the transaction can be measured reliably.

Autonomy also stated or suggested that it followed Generally Accepted Accounting Principles in the United States for software revenue recognition.

Between 2009 and March 2010, Autonomy personnel, including its Chief Financial Officer Sushovan Hussain, Peter Menell, Julie Dolan, and Corrado Broli, were pursuing a transaction with BAV, whereby Autonomy software would be used to digitize and archive materials in the Vatican Library. In December 2009, Autonomy provided Monsignor Pasini and Mr. Ammenti draft proposals, but none were accepted.

In or around February 2010, Autonomy contemplated partnering with Postecom, a subsidiary of Poste Italiane, to deliver an archiving system to BAV. Documents reflect that Autonomy had discussions and/or meetings with Giovanni Cuturi of Postecom regarding a potential partnership. In late March, Autonomy was provided a letter of intent between Postecom and BAV, which generally stated that Postecom had had preliminary discussions about possible involvement in the archiving project and intended complete verification activities necessary to complete a collaboration proposal; suggested that BAV was seeking financing for the project; and provided for a 50-day period during which BAV would not sign a competing proposal. The letter stated that it did not bind Postecom or BAV to sign a collaboration agreement.

Autonomy had no binding agreement with BAV or Postecom on or before March 31, 2010. Nonetheless, on or about April 1, 2010, Autonomy approached a representative of

4

MLAT_AU 00000014

MicroTech, seeking MicroTech's agreement to pay Autonomy $11 million for software, purportedly for resale to BAV. On or about April 1, 2010, MicroTech signed and returned an $11 million purchase order. The purchase order was backdated to March 31, 2010. Autonomy recorded $11 million in revenue on the MicroTech transaction for the quarter ended March 31, 2010, which revenue was included in Autonomy's publicly reported results and enabled Autonomy to meet expectations of analysts following Autonomy stock.

In addition, on or after April 11, 2010, Autonomy entered into a purported license agreement with Auxilium, whereby Auxilium agreed to pay €2,500,000 for the right to sublicense Autonomy software to BAV and to pay €125,000 in support and maintenance. The agreement was backdated to March 31, 2010. Autonomy recorded license revenue in respect of the Auxilium transaction, which revenue was included in Autonomy's publicly reported results.

MicroTech appears to have no relevant contact with BAV and took no efforts to sell Autonomy software to BAV. Auxilium made no payments to Autonomy. Auxilium does not appear to have made any sale of the listed software to BAV.

From April 2010 through 2011, Autonomy continued to attempt to consummate a sale of software to BAV or an intermediary, but no deal was reached. Documents reflect that Monsignor Pasini may have met personally with Hussain and the CEO of Autonomy, Mike Lynch.

The United States Department of Justice reiterates its prior assurance that Monsignor Pasini, Luciano Ammenti and the Holy See and Vatican City State are not the targets of this investigation.

## THE OFFENSES

| 18 U.S.C. § 371. | Conspiracy to commit offense |
| 18 U.S.C. § 1341. | Fraud by wire, radio, or television. |
| 18 U.S.C. § 1348. | Securities and commodities fraud. |

5

MLAT_AU 0000001

18 U.S.C. § 1349.        Attempt and conspiracy.

## NEED FOR ASSISTANCE

The prosecutor is seeking documents from BAV to determine whether it was appropriate for Autonomy to record revenue; whether Autonomy's financial statements were misstated; and whether Autonomy's senior officers intended to misstate Autonomy's financial statements. The prosecutor needs documents from BAV to determine whether, with respect to the purported sales, Autonomy genuinely transferred the significant risks and rewards of ownership of the goods; whether Autonomy retained continuing managerial involvement to the degree usually associated with ownership or effective control over the goods sold; and whether it was probable that the economic benefits associated with the transaction would flow to Autonomy.

### Documents Needed

Business Records

1.      For the period December 2009 to October 2011, please provide complete, certified copies of the following records of BAV:

a.  All agreements, memoranda of understanding, and/or letters of intent with Autonomy, Postecom, Poste Italiane, Auxilium, and/or any purported reseller of Autonomy software regarding the sale/acquisition of Autonomy Software.

b.  All communications (including emails and correspondence) with Autonomy relating to any sale/acquisition of Autonomy software.

c.  All communications (including emails and correspondence) with the following entities relating to Autonomy:  Postecom, Poste Italiane, Auxilium, and/or any purported reseller of Autonomy software.

d.  All communications relating to Lynch, including communications relating any

6

possible or actual financial donations, contributions, or funding to any foundation to benefit

BAV or the Vatican City State.

<u>Testimony Needed</u>

We respectfully request that the Vatican Tribunal interview Monsignor Pasini and Mr.

Armentti and ask the following questions:

1. What is your full name?

2. What is your date of birth?

3. Where do you reside?

4. What is your title?

5. How long have you held that role?

6. In 2009, were you working on a project to digitize and archive material in the Vatican Library?

7. Please describe the project.

8. Were you considering Autonomy as a software provider in connection with the project?

9. Why?

10. Were you considering other hardware or software providers?

11. Please describe your interactions with Autonomy in 2009. With respect to meetings, conference calls, or other interactions, please describe: the location, the participants, and the terms discussed.

12. In 2009, did Autonomy provide BAV any written proposals? What did they consist of?

13. How were those received?

14. Did BAV reach an agreement with Autonomy by end of year 2009?

15. Why not?

7

16.     How did you perceive the negotiations with Autonomy at that time – for example, were you optimistic a deal would be done?

17.     Did you continue discussions with Autonomy between January 2010 and March 2010? Please describe those discussions.  With respect to meetings, conference calls, or other interactions, please describe: the location, the participants, and the terms discussed.

18.     How did Postecom become involved in the project?

19.     With whom at Postecom did you have significant interactions?

20.     Did BAV reach a binding agreement with Autonomy or Postecom by the end of March 2010?

21.     If not, why not?

22.     How did you perceive the negotiations with Autonomy and Postecom at that time – for example, were you optimistic a deal would be done?

23.     Are you familiar with a firm called MicroTech?  Auxilium?  What are they?

24.     Please describe your communications, if any, with Autonomy and/or Postecom regarding MicroTech and/or Auxilium.

25.     Was there any discussion with Autonomy or Postecom about the use of resellers, such as MicroTech or Auxilium?

26.     Were you aware that Autonomy had sold software to MicroTech or Auxilium for resale to BAV?  If so, when did you learn that?

27.     Did you ever have any intention of purchasing software from MicroTech? Auxilium?

28.     What role, if any, did MicroTech and Auxilium have in the project?

29.     After March 31, 2010, please describe your interactions with Autonomy regarding the project?  Who did you meet with when?  Was any firm agreement reached?  Why not?

30.     To the extent not already stated, please describe your communications with the following: (a) Mike Lynch, (b) Sushovan Hussain, (c) Andy Kanter, (d) Corrado Broli, (e) Pete Menell, (f) Julie Dolan, and (g) Giovanni Cuturi.

8

31.    During negotiations with Autonomy, was there any discussion of Autonomy, or any officer or director including Mike Lynch, making a contribution to the Vatican or affiliated entity?  Was there discussion of creation of a foundation?  What did that involve?

32.    Describe all communications relating to MicroTech.

33.    Did BAV end up using another vendor for the project?  Why?

## PROCEDURES TO BE FOLLOWED

### Authentication of Official Records

Under United States law, foreign official records are usually admitted into evidence at trial only after the party offering them proves, through a qualified witness (who either gives testimony at trial or provides a certification), that:

1.    the records are true and accurate copies of records maintained by a foreign government office or agency;

2.    the foreign government office or agency is authorized by foreign law to maintain them; and

3.    the foreign official providing the records is doing so in his or her official capacity.

The testimony of a qualified witness may be unnecessary to establish authenticity where a qualified witness provides a certification containing essentially the same information noted above.  Therefore, please:

1.    Have the custodian (or other person authorized by law) providing the records attach an attestation that the records are true and correct, maintained by a governmental office or agency as authorized by law, and provided in his or her official capacity.  In the event that the custodian (or other authorized person) does not have a formal certificate, stamp, or seal of attestation bearing this information, have him or her complete and attach an Attestation of Authenticity of Official Records (Form A, attached);

2.    Have an official whose signature and official position are known to the U.S. Embassy certify as to the genuineness of the signature and official position of the custodian (or other authorized person) attesting that the records are official

9

records provided in an official capacity. Please then permit an appropriate official of the U.S. Embassy to attach a Final Certification as to the genuineness of the signature and official position of the official certifying as to the genuineness of the signature and official position of the custodian (or other authorized person) attesting that the records are official records provided in an official capacity (Form B, attached); and

3.    Transmit the records with attachments to the Office of International Affairs or as otherwise arranged by the appropriate authorities of the Vatican with the Office of International Affairs.

If the custodian (or other person authorized by law) ordered to provide official records fails, after a diligent search, to discover such records, the we request that the custodian, acting in his official capacity, complete and attach an Attestation of Absence of Official Records (Form C, attached). We further request that this attestation be authenticated as prescribed above.

Authentication of Business Records

Under United States law, foreign business records are usually admitted into evidence in a proceeding in the United States after the party offering them proves, through the testimony at trial of a qualified witness, that:

1.    the records produced are true and accurate copies of original records in the custody of the business;

2.    the business made or kept the originals in the ordinary course of business and as a regular business practice; and

3.    the originals were made, at or near the time of the occurrence of the transactions they record, by a person who either had knowledge of those transactions or received the information from a person with such knowledge.

The testimony of a qualified witness may be unnecessary at trial in the United States where that witness makes or provides a written declaration in a foreign jurisdiction that (1) contains essentially the same information noted in items 1 through 3 above, and (2) subjects the

MLAT_AU 0000002C

witness to criminal penalties under the laws of the foreign jurisdiction if the declaration is false.

Accordingly, please have the appropriate authorities in the Vatican City State do the following:

1. Require each bank/business official producing records to appear, complete, and sign a Certificate of Authenticity of Business Records (Form D, attached); and

2. Attach the completed certificate to the corresponding records produced by the business official; and



3. Transmit the records with attachments to the Office of International Affairs or as otherwise arranged by the appropriate authorities of the Vatican with the Office of International Affairs.

In addition, please invite each official producing records to appear, if it should become

necessary, at a date to be determined, in the United States, at the expense of the United States

government, to testify at trial.  If the witness chooses not to appear in the United States, a formal

deposition of the witness at some future date may be requested.

### NEED FOR PROCEDURE REQUESTED

The execution of the attached Certificate of Authenticity of Official Records is needed to

receive the requested official records into evidence in accordance with the requirements of

United States law.  Ordinarily, foreign public records may be received into evidence if they

purport to be executed or attested in an official capacity by a person authorized by the laws of the

foreign country to make the execution or attestation and are accompanied by an apostille,

pursuant to the Hague Convention, certifying the official position and the genuineness of the

signature of the official who produced the records.

Ordinarily, business records may be received into evidence only if a competent

representative of the business appears at trial as a witness and testifies as to the authenticity of

the records and the manner in which they are prepared and maintained at the business.  However,

with respect to foreign business records, the appearance and testimony at trial of a representative

11

of a foreign business may not be required if the records (or true copies thereof) are accompanied

by a written declaration such as the attached certificate.  The statute permitting this procedure

(Title 18, United States Code, Section 3505) requires an executed certificate.

Please accept the assurances of our highest esteem.



Jason E. Carter
Acting Deputy Director
Office of International Affairs
Criminal Division

12

FORM A

<u>ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, _____, attest that my position with the Vatican City State is

       (Name)

_____ and that in that position I am authorized by the laws of the Vatican City State

to attest that the documents attached hereto and described below:

(1)     are true copies of official records which are authorized by the laws of the Vatican City State

         to be recorded or filed in _____, which is a

                              (Name of Public Office or Agency)

         government office or agency.

(2)     set forth matters that are required by the laws of the Vatican City State to be reported and

         recorded or filed.

Description of Documents:

                                    _____

                                    (Signature)

(SEAL)

                                    _____

                                    (Date)

13

MLAT_AU 00000023

FORM B

<u>Final Certification</u>

|  |  |
|---|---|
| _____ | ) |
| (Country) | ) |
|  | ) |
| _____ | ) |
| (State, province, etc.) | ) |
|  | ) |
| _____ | ) ss: |
| (City) | ) |
|  | ) |
| _____ | ) |
| (Name of consular post) | ) |
| of the United States of America | ) |

I certify that the annexed document is executed by the genuine signature and seal of the following named official who, in an official capacity, is empowered by the laws of the Vatican City State to execute that document: (typed name of official who executed the annexed document)

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.



_____

(Signature of Consular Officer)
(Typed name of Consular Officer)
(Title of Consular Officer)
Consul of the United States of America

DATE:

14

MLAT_AU 00000024

FORM C

## ATTESTATION OF ABSENCE OF OFFICIAL RECORDS

I, _____ [NAME], attest that my position with the Holy See and Vatican City State  is [OFFICIAL TITLE]  and that in that position I am official custodian of records  for the [RELEVANT AGENCY], which is required to record or report matters, or file with respect to matters, that are required by the laws of the Vatican City State to be regularly recorded, reported or filed by this agency/organization.

I further attest that I have made, or caused to be made, a diligent search for the following records:

*(set forth description of record(s) for which the search was conducted)*

and that no such record(s) is/are found to exist therein.

I certify that the records for which a search was conducted set forth matters which are required by the laws of the Vatican City State to be recorded or filed and reported, and such matters regularly are recorded or filed and reported by _____ [RELEVANT AGENCY]_____.

(SEAL)

_____
(Signature)

_____
(Date)



15

MLAT_AU 00000025

FORM D

## CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____ (Name), attest on penalty of criminal punishment for false

statement or false attestation that I am employed by _____

(Name of Business from which documents are produced) and that my official title is

_____ (Official Title).  I further state that each of the records attached

hereto is the original or a duplicate of the original of records in the custody of

_____ (Name of Business from which documents are

produced).  I further state that:

A)   such records were made at or near the time of the occurrence of the matters set

forth, by (or from information transmitted by) a person with knowledge of those

matters;

B)   such records were kept in the course of a regularly conducted business activity;

C)   the business activity made the records as a regular practice; and

D)   if any of such records is not the original, such record is a duplicate of the original.


_____          _____

(Signature)                                                          (Date)

Sworn to or affirmed before me, _____ (Name), a _____ (notary

public, judicial officer, etc.), this _____ day of _____, 20___.

16



**Ministero della Giustizia degli Stati Uniti**
Divisione penale
*Ufficio Affari Internazionali*

JEC:CMP
182-

_____

*Washington, D.C. 20530*

11 febbraio 2016

A:            Segreteria di Stato per la Santa Sede e la Città del Vaticano

OGGETTO:     Richiesta di assistenza nelle indagini penali a carico di Autonomy Corporation

In conformità alla nota verbale della Segreteria di Stato della Santa Sede e della Città del Vaticano, datata 9 ottobre 2015, il Dipartimento di Giustizia degli Stati Uniti invia la presente Richiesta di Assistenza Giudiziaria Internazionale. Il Procuratore degli Stati Uniti per il distretto della California del Nord ("Pubblico ministero") sta svolgendo un'indagine su una società di sviluppo di software con sede a San Francisco, California, e nel Regno Unito, sospettata di avere indotto in modo fraudolento Hewlett Packard Company (HP) ad acquistare le azioni in circolazione di Autonomy nell'ottobre 2011. Autonomy ha indotto HP ad acquisirla in parte sulla base dei risultati finanziari pubblicati da Autonomy stessa.



Il Pubblico Ministero sta indagando sulla presunta falsificazione, da parte di Autonomy, dei propri risultati finanziari pubblicati; questa sarebbe avvenuta registrando illecitamente ricavi su transazioni in materia di software, quando non esisteva alcuna vendita definitiva, quando il presunto acquirente non aveva capacità o intenzione di pagare, e quando Autonomy aveva mantenuto il controllo effettivo del software venduto. Il Pubblico ministero sta indagando, fra le altre cose, sulla correttezza, da parte di Autonomy, della registrazione del fatturato generato dalle seguenti transazioni.

• Un presunto accordo di licenza, del 31 marzo 2010, con cui Autonomy afferma di avere concesso in licenza software a Microtechnologies, LLC("MicroTech"), una società con sede in Virginia negli Stati Uniti, per un valore di $11 milioni, per rivenderlo successivamente alla Biblioteca Apostolica Vaticana ("BAV").

MLAT_AU 0000002

• Un presunto accordo di licenza, del 31 marzo 2010, con cui Autonomy afferma di avere concesso in licenza software ad Auxilium Tech S.R.L. ("Auxilium"), una società italiana, per un valore di €2.500.000, per rivenderlo successivamente a BAV.

Pertanto, ad oggi, le indagini del Pubblico Ministero rivelano che Autonomy fosse in trattativa con la BAV e una società italiana, Postecom S.p.A, sia prima che dopo il 31 marzo 2010, per quanto riguarda la vendita di un software di Autonomy alla BAV con il fine di creare un archivio digitale dei materiali della biblioteca vaticana. Tali trattative coinvolgevano Monsingor Cesare Pasini e il Sig. Luciano Ammenti. Le indagini del Pubblico Ministero ad oggi rivelano che non è stato raggiunto nessuno accordo per l'acquisto del software di Autonomy.

Pertanto, il Pubblico Ministero ha necessità di acquisire la documentazione aziendale, compresi i contratti, la corrispondenza ed e-mail dalla BAV relativamente ai suoi affari con Autonomy, MicroTech (qualora esistenti), Auxilium (se esistenti), Postecom, e la testimonianza di Monsignor Pasini e del Sig. Luciano Ammenti, e ciò consentirà il Pubblico Ministero di essere in grado di determinare se Autonomy abbia lecitamente registrato i suoi profitti sulle transazioni con MicroTech e Auxilium.

### RISERVATEZZA

I dettagli dell'indagine penale statunitense sono considerati riservati. Si prega, pertanto, di trattare il presente documento, il suo contenuto, il fatto che la richiesta sia stata presentata e i risultati della sua esecuzione come riservati e di non divulgarli pubblicamente o condividerli con i soggetti dell'indagine. Si prega, inoltre, di comunicare a tutti coloro che devono essere informati di questa richiesta di assistenza di eseguirla, che il contenuto e l'oggetto di quest'ultima devono essere mantenuti riservati e non devono essere condivisi con i soggetti dell'indagine. Eventuali scambi d'informazioni ad altri potrebbero gravemente pregiudicare le indagini in corso.



### URGENZA

Si prega di informare l'autorità incaricata dell'esecuzione che le autorità statunitensi richiedono la presentazione dei documenti prima del **30 aprile 2016.**

2

MLAT_AU 00000028

# FATTI

Autonomy era una società costituita in Inghilterra e Galles, con sede sociale a Cambridge, Regno Unito. Le sue attività principali erano lo sviluppo e la distribuzione di software. Autonomy ha mantenuto una doppia sede sociale a San Francisco, in California e a Cambridge, in Inghilterra. Autonomy era una società quotata in borsa, le cui azioni erano in listino alla Borsa Valori di Londra (London Stock Exchange) ed erano acquistate, conservate e vendute da persone e enti in tutti gli Stati Uniti.

Nel periodo tra il 2009 e il luglio del 2011, Autonomy pubblicava i propri risultati finanziari su base trimestrale. La società aveva dichiarato che i propri bilanci erano preparati ai sensi dei principi contabili internazionali ("IFRS"). I principi contabili IFRS per il riconoscimenti dei ricavi sono in gran parte definiti dal principio contabile internazionale numero 18 - Ricavi ("IAS 18"), che definisce, nelle parti corrispondenti, quanto segue.

14. I ricavi dalla vendita di merci devono essere rilevati quando sono soddisfatte tutte le seguenti condizioni:

(a) l'impresa ha trasferito all'acquirente i rischi significativi e i benefici connessi alla proprietà dei beni;

(b) l'impresa cessa di esercitare il livello continuativo di attività associate con la proprietà, nonché l'effettivo controllo sulla merce venduta;

(c) il valore dei ricavi può essere determinato attendibilmente;

(d) è probabile che i benefici economici derivanti dall'operazione fluiranno nell'impresa; e

(e) i costi sostenuti, o da sostenere, riguardo all'operazione possono essere attendibilmente determinati.



Autonomy ha, inoltre, sostenuto o suggerito di avere seguito i Principi di Contabilità Generalmente Accettati negli Stati Uniti (*Generally Accepted Accounting Principles*, o GAAP) per il riconoscimento dei ricavi generati dal software.

3

Tra il 2009 e il marzo 2010, i dipendenti di Autonomy, inclusi il "Chief Financial Officer" Sushovan Hussain, Peter Menell, Julie Dolan and Corrado Broli, stavano eseguendo un'operazione con BAV, in cui il software di Autonomy sarebbe stato usato per digitalizzare e archiviare materiali della Biblioteca Vaticana. Nel dicembre 2009, Autonomy forniva a Monsignor Pasini e al Sig. Luciano Ammenti una bozza di proposte, ma nessuna di queste era stata accettata.

Circa a febbraio 2010, Autonomy aveva considerato un'associazione con Postecom, una consociata delle Poste Italiane, per fornire un sistema di archiviazione a BAV. La documentazione rileva che Autonomy intratteneva trattative e/o meetings con Giovanni Cuturi di Postecom relativamente a una potenziale partnership. A fine marzo, Autonomy aveva ricevuto una lettera di intenti tra Postecom e BAV, in cui si dichiarava, in generale, che Postecom aveva svolto trattative preliminari riguardo un possibile coinvolgimento nel progetto di archiviazione e che intendeva completare le attività di verifica necessarie per redigere una proposta di collaborazione; aveva, inoltre, suggerito che la BAV stava cercando di ottenere un finanziamento per il progetto; e aveva fissato un periodo di 50 giorni, nel corso dei quali la BAV non avrebbe firmato una proposta della concorrenza. La lettera indicava di non vincolare Postecom o la BAV a firmare un accordo di collaborazione.

Autonomy non aveva alcun accordo vincolante con la BAV o Postecom precedente il 31 marzo 2010. Ciononostante, più o meno in data 11 aprile 2010, Autonomy incontrava un rappresentante di MicroTech, col fine di stringere un accordo per pagare ad Autonomy gli 11milioni di dollari per il software, presumibilmente per rivenderlo a la BAV. Sempre in data 1 aprile 2010 circa, MicroTech firmava e resitutiva un ordine di acquisto di $11 milioni. L' ordine di acquisto era retrodatato al 31 marzo 2010. Autonomy registrava così $ 11 milioni in redditi sulla transazione di MicroTech, per il trimestre terminato in data 31 marzo 2010, il cui reddito era incluso nei risultati finanziari pubblicati e permetteva così ad Autonomy di soddisfare le aspettative degli analisti finanziari che seguivano le azioni di Autonomy.



Inoltre, circa l'11 aprile 2010, Autonomy sostenne di aver concluso un accordo di licenza con Auxilium; in quest'accordo, Auxilium accettava di pagare € 2.500.000 per il diritto di concedere in sublicenza software Autonomy alla BAV e una somma aggiuntiva di € 125.000 per supporto e manutenzione. L'accordo era retrodatato al 31 marzo 2010. Autonomy ha registrato il ricavo della licenza relativamente alla operazione Auxilium, il cui reddito era incluso nei risultati pubblicati di Autonomy.

MLAT_AU 00000030

MicroTech non sembra avere avuto contatti rilevanti con la BAV e non sembra ci sia voluto molto tempo per inviare il software di Autonomy alla BAV. Auxilium non ha eseguito pagamenti a favore di Autonomy. Auxilium non sembra aver venduto il software elencato a BAV.

Dal mese di aprile 2010 al 2011, Autonomy ha continuato a tentare di concludere una vendita di software con la BAV o con un intermediario, ma non è stato raggiunto nessun accordo. Dalla documentazione si evince che Monsignor Pasini potrebbe aver incontrato personalemnte Hussain e il CEO di Autonomy, Mike Lynch.

Il Dipartimento di Giustizia degli Stati Uniti rinnova la sua precedente garanzia che Monsignor Pasini, Luciano Ammenti, la Santa Sede e la Città del Vaticano non sono gli soggetti di questa indagine.

## REATI

18 U.S.C. § 371  Complotto finalizzato per commettere reato

18 U.S.C. § 1341 Frode via cavo, radio o televisione

18 U.S.C. § 1348 Frode su titoli e merci

18 U.S.C. § 1349 Tentativo di reato e complotto

## RICHIESTA DI ASSISTENZA

Il Pubblico Ministero ha necessità di acquisire la documentazione in possesso della BAV, per determinare se Autonomy era l'ente consona per registrare i ricavati; se i bilanci di Autonomy erano stati falsificati; e se i dirigenti di Autonomy intendevano falsificare i bilanci di quest'ultima. Il Pubblico ministero necessita di acquisire la documentazione per stabilire, in merito alle presunte vendite, se Autonomy ha realmente trasferito i rischi significativi e i benefici connessi alla proprietà dei beni; se l'ente Autonomy ha continuato a esercitare il livello continuativo di attività associate alla proprietà nonché l'effettivo controllo sulla merce venduta; e se era probabile che i benefici economici derivanti dall'operazione sarebbero stati fluiti da Autonomy.

MLAT_AU 0000003

Documenti aziendali richiesti

A.   <u>Documenti aziendali</u>

1. Per il periodo dal dicembre 2009 all'ottobre 2011, si prega di fornire copie complete e autenticate dei seguenti documenti di <u>BAV</u>:

a. tutti i contratti, le lettere d'intenti e/o memoranda of understanding con Autonomy, Postecom, Poste Italiane, Auxilium e/o qualsisasi presunto rivenditore del software di Autonomy relativo alla vendita/ acquisto del software *de quo*.

b. tutte le comunicazioni (comprese e-mail e corrispondenza cartacea) con Autonomy relative a eventuali vendita/ acquiosto del software di Autonomy.

c. tutte le comunicazioni (comprese e-mail e corrispondenza cartacea) con le sguentoi società relative ad Autonomy: Postecome, Poste Italiane, Auxilium, e/o qualsiasi presunto rivenditore del software in questione.

d. tutte le comunicazioni che coinvolgano Lynch, incluse le comuncazioni relative a donazioni possibili o reali, offerte o finanziamento a qualsisasi fondazione che benefici BAV o la Città del Vaticano.



B.   <u>Testimonianza</u>

Si chiede cortesemente di ottenere la deposizione di Monsignor Pasini e dell Sig. Ammenti da parte del Tribunale Vaticano e gli rivolga le seguenti domande:

1.   Qual è il suo nome completo?

2.   Qual è la sua data di nascita?

3.   Dove risiede?

4.   Qual è il suo titolo professionale?

5.   Per quanto tempo ha ricoperto quel ruolo?

6.   Nel 2009, stava lavorando su un progetto sulla digitalizzazione e archiviazione dei materiali della biblioteca vaticana?

6

MLAT_AU 00000032

7. Gentilmente, descriva il progetto.

8. Al tempo considerava Autonomy come fornitore di software relativamente al progetto *de quo*?

9. Perchè?

10. Al tempo considerava altri fornitori di hardware e software?

11. Gentilmente, descriva i suoi rapporti con Autonomy nel 2009. Con riferimento agli incontri, le chiamate ed altri tipi di contatti, per favore descriva la location, i partecipanti i termini della trattativa.

12. Nel 2009, Autonomy fornì a BAV delle proposte scritte? In cosa consistevano?

13. Come sono state ricevute?

14. BAV raggiunse un accordo con Autonomy alla fine dell'anno 2009?

15. Perchè no?

16. Come percepiva i negozati con Autonomy a qual tempo? Per esempio, era favorole circa il raggiungimento di un accordo?

17. Continuò le trattative con Autonomy tra il gennaio 2010 e il marzo 2010? Gentilmente, descriva tali trattative. Con riferimento ad incontri, chiamate o altri tipi di interazioni, per favore indichi i partecipanti, la location e i termini trattati.

18. Come Postecom venne coinvolta nel progetto?

19. Con chi alla Postecom ha avuto significativi contatti?

20. BAV raggiunse un accordo vincolate con Autonomy o Postecom alla fine di Marzo 2010?

21. Se no, perchè no?

22. Come si è reso conto delle trattative con Autonomy o Postecom a quel tempo? Per esempio era fiducioso che l'accordo si sarebbe fatto?

23. Che familiarità ha con l'azienda MicroTech? Auxilium? Cosa sono?



7

24. Per favore, descriva, se ve ne sono state, le sue conversazioni con Autonomy e/o Postecom riguardo MicroTech e/o Auxilium. C'era qualche discussione con Autonomy?

25. Ci sono mai state delle discussioni con Autonomy o Postecom in merito all'uso dei rivenditori, tali come Micro Tech o Auxilium?

26. Era a conoscenza che Autonomy aveva venduto il software MicroTech o Auxilium per rivendita a BAV? Se sì, quando ne è venuto a conoscenza?

27. Ha mai avuto l'intenzione di comprare il software da Microtech?Auxilium?

28. Quale ruolo, se c'è stato, hanno avuto MicroTech e Auxilium nel progetto?

29. Dopo il 31 Marzo 2010, descriva gentilmente i suoi rapporti con Autonomy in merito al progetto. Chi ha incontrato e quando? Era stato raggiunto un accordo definitivo? Perchè no?

30. Per quanto non sia ancora dichiarato, per favore descriva le sue comunicazioni con i seguenti: (a) Mike Lynch, (b) Sushovan Hussain, (c) Andy Kanter, (d) Corrado Broli, (e) Pete Menell, (f) Julie Dolan, e (g) Giovanni Cuturi.

31. Durante le trattative con Autonomy, c'è stata qualche discussione su Autonomy, oppure qualche funzionario o direttore, incluso Mike Lynch, ha dato un contributo al Vaticano o a un soggetto collegato? C'è stata una discussione sulla creazione di una fondazione?  Cosa avrebbe comportato?



32. Descriva tutte le comunicazioni riguardo a MicroTech.

33. BAV finì con l'usare un altro fornitore per il progetto? Perchè?


<u>PROCEDURE DA SEGUIRE</u>

Si chiede rispettosamente al funzionario del Tribunale del Vaticano, responsabile per l'esecuzione di questa richiesta, quanto indicato di seguito:

1.  Sicure e autentiche copie degli atti ufficiali;

2.  i funzionari che acquisiscono i documenti dovranno all'allegare un'attestazione ai documenti dichiarando che gli stessi sono atti ufficiali,

MLAT_AU 0000003

oppure nel caso in cui il funzionario non possa fornire una formale attestazione, timbro o sigillo, che questi completi un Attestato di Autenticità degli atti ufficiali (vedi allegato); e

3. Inserire una postilla (vedi allegato) certificante la posizione e l'autenticità della firma del funzionario che ha fornito i documenti.

Se il funzionario (o altra persona autorizzata dalla legge) non fornire gli atti ufficiali, dopo una ricerca accurata:

a. la persona, che agisce nelle vesti di ufficiale, dovrà completare e allegare un Attestazione di Mancanza di Atti Ufficiali (vedi allegato); e

b. allegare una postilla all'attestazione.

Si chiede inoltre al funzionario responsabile dell'esecuzione della richiesta quanto indicato di seguito:

1. Ottenere la deposizione dei dirigenti BAV competenti su qualsiasi conoscenza personale riguardo l'oggetto della richiesta, separata dalla preparazione e/o produzione di documenti specifici e dalla predisposizione di un verbale della testimonianza;

2. richiedere la produzione di originali o copie autenticate dei documenti specificati da BAV;

3a. ottenere la deposizione giurata di ciascuna persona che presenta i documenti riguardo le seguenti domande.



    i.    Lei è un dipendente o un associato di BAV? Se sì, con che incarico?

    ii.    È prassi di BAV creare e conservare registrazioni documentali?

    iii.    È a conoscenza delle prassi di BAV riguardanti la creazione e conservazione delle registrazioni dei documenti?

    iv.    I documenti che ha prodotto sono documenti di BAV?

    v.    I documenti sono stati redatti quale parte delle attività regolarmente svolta da BAV?

MLAT_AU 00000035

vi.     I documenti sono stati redatti al momento o circa nel momento in cui si verificavano le questioni riportatevi, a seguito di procedure di routine per lo svolgimento dell'attività di BAV?

vii.    Le voci presenti nei documenti redatti sono state create da persone a conoscenza delle questioni ivi indicate, o da informazioni trasmesse da persone che le conoscono?

viii.   I documenti sono stati conservati nel corso delle normali attività di BAV?

ix.     Se i documenti non sono documenti originali, sono copie dei documenti originali?

x.      Gli originali o le copie di questi documenti sono conservati nello Stato di Città del Vaticano?

3b.     preparare una relazione - diversa dalla relazione degli interrogatori di cui al precedente paragrafo 1, che contiene le risposte di ciascuna persona alle precedenti domande;

3c.     far sì che quanti rispondano alle domande sopraelencate, rivedano e firmino la relazione, se le risposte riportate sono corrette;

3d.     se, soddisfatti del fatto che, in base alla procedura seguita, una risposta falsa a una delle domande renderebbe chi risponde penalmente perseguibile, porre il proprio sigillo (o timbro) sulla relazione e dichiarare nel testo di quest'ultima che una risposta falsa a una delle domande renderà la persona penalmente perseguibile;

3e.     allegare la relazione con le risposte di ogni persona che ha presentato documenti alla documentazione prodotta da quella persona; infine

4. invitare i dirigenti di BAV che hanno reso  testimonianza e prodotto documenti a presentarsi in futuro a San Francisco, California, a spese del governo degli Stati Uniti, per rendere testimonianza innanzi al gran giurì e/o nel relativo processo. Se un testimone decide di non comparire negli Stati Uniti, verrà richiesta una sua deposizione formale, sempre in una data futura.

MLAT_AU 00000036

## NECESSITÀ DELLA PROCEDURA RICHIESTA

La compilazione dell'allegato Certificato di autenticità di documenti ufficiali è necessaria per ottenere la richiesta di documenti ufficiali come prova, secondo quanto previsto dai requisiti della legge statunitense. Generalmente, i documenti pubblici stranieri possono essere ricevuti come prova se si propongono di essere eseguiti o attestati da una persona autorizzata dalla legge dello stato straniero e sono acompagnati da una postilla, in forza della Convenzione Hague, certificante il ruolo e la genuinità della firma dell'ufficiale che ha prodotto i documenti.

La deposizione giurata di ciascuno dei dirigenti della società che presenta documentazione è necessaria per usare e ammettere le registrazioni richieste come prove ai sensi delle disposizioni della leggi degli Stati Uniti. In genere, le registrazioni aziendali possono essere ammesse come prove solo se un funzionario competente dell'impresa compare in giudizio come testimone e conferma l'autenticità delle registrazioni e il modo in cui sono preparate e mantenute presso l'impresa. Tuttavia, in merito alle registrazioni aziendali estere, la comparizione e la testimonianza in giudizio di un rappresentante di un'impresa possono non essere necessarie se le registrazioni (o copie autentiche delle stesse) sono accompagnate da una dichiarazione scritta come il certificato allegato. La norma che ammette questa procedura (Titolo 18, Codice degli Stati Uniti, Sezione 3505) richiede un certificato conforme all'originale.

La prego di accettare l'espressione della mia profonda stima.



[Firma]

_____

Jason E. Carter

Vicedirettore incaricato

Ufficio Affari Internazionali

Divisione penale

MLAT_AU 00000037

### ATTESTAZIONE DI AUTENTICITA' DI DOCUMENTI UFFICIALI

Io_____ attesto che la mia posizione nello Stato della Città del Vaticano è_____ e che, nella mia posizione, sono autorizzato dalla legge dello Stato del Vaticano ad attestare che i documenti descritti e allegati di seguito:

1. sono copie autentiche dei documenti originali autorizzati dalla legge dello Stato del Vaticano e registrati o presentati presso_____, che è un_____ (Nome del Pubblico Ufficiale o Agente).
2. si tratta di questioni richieste dalla legge dello Stato vaticano di essere presentate o registrate.

Descrizione dei documenti:

Firma

_____

Data_____

12

POSTILLA

(Convenzione di La Haye del 5 ottobre 1961)

1. Paese

Questo documento pubblico

2. È stato firmato da

3. Che ha agito nel ruolo di

4. Reca il timbro/ sigillo di

CERTIFICA CHE

5. A (luogo)

6. In data

7. Da

8. Numero

9. Timbro/Sigillo

10. Firma



13

## ATTESTATO DI ASSENZA DI DOCUMENTI UFFICIALI

Io_____(nome) attesto che il mio ruolo presso la Santa Sede e la Città del Vaticano è _____( ruolo ricoperto) e che ricopro la mia posizione di pubblico ufficiale detentore dei documenti per _____(indicare ufficio), che sono richiesti nel rispetto di determinate materie, sono regolarmente registrati, custoditi presso questo ufficio.

Attesto inoltre che ho realizzato una ricerca diligente per i seguenti documenti:

E che nessun documento/i è/sono stati trovati.

Certifico che i documenti per i quali è stata condotta la ricerca vertono su materie che richiedono, dalla legge dello Stato Vaticano, di essere regolarmente registrati e custoditi presso_____ (indicare ufficio).



Firma

_____

Data_____

14

E' copia conforme all'originale
Città del Vaticano ........................

IL CANCELLIERE