# EXHIBIT 4

1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney

2  DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  ROBERT S. LEACH (CABN 196191)
   ADAM A. REEVES (NYBN 2363877)
5  Assistant United States Attorneys

6  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
7  Telephone: (415) 436-7534
   Fax: (415) 436-7234
8  Robert.Leach@usdoj.gov
   Adam.Reeves@usdoj.gov

9  Attorneys for United States of America

10

ORIGINAL

RECEIVED FILED

JAN 29 2016

JAN 29 2016 SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14  IN RE GRAND JURY INVESTIGATION         ) Case No. CR 14-90491 MISC EMC
    NO. 2012R02242,                        )
15                                         ) **UNDER SEAL**
                                           )
16                                         ) DECLARATION OF AUSA ROBERT S.
                                           ) LEACH IN SUPPORT OF THE
17                                         ) UNITED STATES' *EX PARTE*
                                           ) APPLICATION FOR AN ORDER
18                                         ) SUSPENDING THE STATUTE OF
                                           ) LIMITATIONS PURSUANT TO 18
19                                         ) U.S.C. § 3292
                                           )
20                                         )

21       I, Robert S. Leach, state the following:

22       1.     I am an Assistant United States Attorney for the Northern District of California. I am one

23  of the prosecutors assigned to this case. I submit this declaration in support of the United States' *Ex*

24  *Parte* Application for an Order Suspending the Statute of Limitations Pursuant to 18 U.S.C. § 3292,

25  filed concurrently.

26       2.     A grand jury in this district is conducting an investigation of former senior officers of

27  Autonomy Corporation plc ("Autonomy"), including former Chief Executive Officer Michael Lynch,

28  former Chief Financial Officer Sushovan Hussain, former Vice President of Finance Stephen

LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
CASE NO. CR-14-90491MISC EMC

1    Chamberlain, and former Chief Operating Officer and General Counsel Andrew Kanter, for the

2    following possible criminal offenses: 15 U.S.C. §§ 78j(b) & 78ff (securities fraud), 18 U.S.C. § 371

3    (conspiracy), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1348 (securities

4    fraud), and 18 U.S.C. § 1349 (attempt and conspiracy).

5                                                        The Investigation

6           3.       The following information is to the best of my knowledge and belief and is based on

7    information provided to me by federal law enforcement officers, information obtained in connection

8    with the investigation, and my review of documents and testimony relevant to this investigation,

9    including the documents attached hereto.

10          4.       Autonomy was a software developer with dual headquarters in the United Kingdom and

11   San Francisco, California. Prior to October 2011, Autonomy was a publicly traded company whose

12   shares were listed on the London Stock Exchange. As a public company, Autonomy issued quarterly

13   and annual financial statements that were disseminated to the public by means of interstate and foreign

14   wires. In or about October 2011, Hewlett-Packard Company ("HP"), headquartered in Palo Alto,

15   California, bought Autonomy for approximately $11 billion. Among other things, the grand jury is

16   investigating whether executives at Autonomy fraudulently inflated Autonomy's revenues in its

17   financial statements and whether HP was defrauded by executives at Autonomy because HP relied on

18   the alleged accuracy of Autonomy's financial statements in deciding to buy Autonomy.

19          5.       In its statements to the public (two of which are attached below), Autonomy claimed that

20   its financial statements were prepared in accordance with International Financial Reporting Standards

21   ("IFRS"). Attached to this declaration as Exhibit A is a true and correct copy of International

22   Accounting Standard 18 *Revenue*. Under this standard, revenue from the sale of goods shall be

23   recognized when all of the following conditions have been satisfied:

24                 (a)      the entity has transferred to the buyer the significant risks and
                            rewards of ownership of the goods;

25
                   (b)      the entity retains neither continuing managerial involvement to the
26                          degree usually associated with ownership nor effective control
                            over the goods sold;

27
                   (c)      the amount of revenue can be measured reliably;

28
     LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
     CASE NO. CR-14-90491MISC EMC                          2

1          (d)    it is probable that the economic benefits associated with the
                  transaction will flow to the entity; and

2          (e)    the costs incurred or to be incurred in respect of the transaction can
3                 be measured reliably.

4    6.    Among other things, the grand jury is investigating whether executives at Autonomy

5    fraudulently inflated Autonomy's alleged revenue by improperly recording revenue on software sales in

6    violation of certain of the above-quoted criteria in IFRS. More specifically, the grand jury is

7    investigating, among other possible schemes, whether executives at Autonomy used certain so-called

8    "value added resellers" ("VARs") to carry out a scheme to falsify Autonomy's financial statements by

9    pretending Autonomy had complied with IFRS when it really had not. Evidence gathered by the grand

10   jury indicates that, from 2009 to 2011, Autonomy often recorded revenue on alleged sales to certain

11   VARs who purportedly bought the software for resale to a specific customer or "end user." Evidence

12   gathered by the grand jury also indicates that Autonomy recognized revenues from sales to certain

13   VARs even though (1) Autonomy did not transfer the significant risks and rewards of ownership of the

14   goods; (2) Autonomy did retain continuing managerial involvement to the degree usually associated

15   with ownership or effective control over the goods sold; and (3) it was not probable that the economic

16   benefits associated with the transaction would flow to Autonomy.

17   7.    The grand jury investigation extends to multiple VAR transactions which Autonomy may

18   have used to improperly recognize revenue in this manner. At least four of those VAR transactions

19   involve evidence located in foreign countries. Those four transactions involved the following entities:

20   (1) Sales Consulting S.R.L. ("Sales Consulting"); (2) Microtechnologies, LLC ("MicroTech"); (3)

21   Auxilium Tech S.R.L. ("Auxilium"); and (4) Red Ventures S.R.L. ("Red Ventures").

22   8.    Attached to this declaration as Exhibit B is a true and correct copy of HP-SEC-01406405

23   to HP-SEC-01406415, which I understand was produced to the Securities and Exchange Commission

24   ("SEC") by HP in a parallel civil investigation, and which purports to be e-mail among Autonomy

25   personnel titled "Poste One off for Your records." The document includes an agreement dated

26   December 31, 2009, in which Autonomy allegedly licensed software to Sales Consulting, a VAR in

27   Rome, Italy, for €1,500,000 for resale to Poste Italiane ("Poste"). My research indicates Poste is in

28

LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
CASE NO. CR-14-90491MISC EMC                           3

1  Italy.  The document also includes a separate letter dated December 31, 2009, purportedly signed by
2  Kanter.

3       9.     Attached to this declaration as Exhibit C is a true and correct copy of HP-SEC-01429938-
4  951, which I understand was produced to the SEC by HP, and which purports to be a press release titled
5  "Autonomy Corporation PLC Announces Results for the Twelve Months and Fourth Quarter Ended
6  December 31, 2009."

7       10.    Attached to this declaration as Exhibit D is a true and correct copy of HP-SEC-01550349,
8  which I understand was produced to the government by HP. I understand this is an excerpt from an
9  exhibit to a claim made by HP subsidiaries in a UK court.  According to the document, Autonomy
10 recognized €1,500,000 of the revenue for the sale to Sales Consulting in its Q4 2009 (Year End)
11 financial statements.  Although the government seeks further evidence in Italy to verify this, it appears
12 that, in the end, neither Autonomy nor Sales Consulting ever re-sold the software to Poste or any other
13 end-user; and Sales Consulting never made any payments to Autonomy under the agreement.

14      11.    Attached to this declaration as Exhibit E is a true and correct copy of HP-SEC-01309275-
15 277, which I understand was produced to the SEC by HP, and which purports to be a fax from Sales
16 Consulting advising Autonomy that Sales Consulting had been placed into liquidation.

17      12.    Attached to this declaration as Exhibit F is a true and correct copy of HP-SEC-
18 00129022-23, which I understand was produced to the SEC by HP, and which purports to be a memo
19 from Hussain to Autonomy's board regarding a possible transaction with Bibliotheca Apostolica
20 Vaticana ("BAV"), the Vatican Library, which is located in Vatican City State.

21      13.    Attached to this declaration as Exhibit G is a true and correct copy of HP-SEC-01596101,
22 which I understand was produced to the government by HP, and which purports to be an e-mail from an
23 Autonomy salesman to Hussain and others.  The document suggests that in or around February 2010,
24 Autonomy contemplated partnering with Postecom, S.p.A. ("Postecom"), a subsidiary of Poste located
25 in Rome, Italy, to act as a value added reseller which would resell Autonomy's archiving system to
26 BAV.

27

28

LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
CASE NO. CR-14-90491MISC EMC                    4

1      14.    Attached to this declaration as Exhibit H is a true and correct copy of HP-SEC-
2 01596272-276, which I understand was produced to the government by HP, and which purports to be an
3 e-mail from an Autonomy salesman to Hussain and others. The document suggests that, in late March
4 2010, Autonomy received a letter of intent between Postecom and BAV, which generally stated that
5 Postecom had had preliminary discussions about possible involvement in the archiving project and
6 intended to complete verification activities necessary to complete a collaboration proposal. The letter of
7 intent further suggested that BAV was seeking financing for the project. According to its terms, the
8 letter of intent was not binding on Postecom or BAV. The government's investigation to date
9 demonstrates that, by March 31, 2010, when the Q1 2010 closed, Autonomy had no binding agreement
10 with BAV or Postecom.

11      15.    Attached to this declaration as Exhibit I is a true and correct copy of MICROTECH
12 082784-787, which was marked as Exhibit 265 during grand jury testimony. The government's
13 investigation to date, based on this document and other information, reveals that, on April 1, 2010, one
14 day after Q1 2010 had closed, Autonomy approached a representative of MicroTech, another VAR
15 based in Virginia, seeking MicroTech's agreement to pay Autonomy $11 million for software,
16 purportedly for resale to BAV.

17      16.    Attached to this declaration as Exhibit J is a true and correct copy of Cronin0003277-280,
18 which was marked as Exhibit 266 during grand jury testimony. The document reflects that on April 1,
19 2010, Steve Truitt (MicroTech's COO) returned an $11 million purchase order dated March 31, 2010, to
20 John Cronin, who is believed to be a consultant to MicroTech and Autonomy.

21      17.    Attached to this declaration as Exhibit K is a true and correct copy of HP-SEC-01550355,
22 which I understand was produced to the government by HP. I understand this is an excerpt from an
23 exhibit to a claim made by HP subsidiaries in a UK court. According to the document, Autonomy
24 recognized $11 million in revenue on the MicroTech deal. Based on the government's investigation to
25 date, MicroTech appears to have had no relevant contact with BAV and undertook no efforts to sell
26 Autonomy software to BAV. While it did make some payments to Autonomy on the $11 million order,
27 MicroTech did so with money from a roundtrip transaction with Autonomy, whereby Autonomy made

28

USAO 00003314

1  purchases from MicroTech (and a related party) and then MicroTech made payments to Autonomy for
2  the license to BAV. From April 2010 through 2011, Autonomy continued to attempt to consummate a
3  sale of software to BAV or an intermediary, but no deal was reached.

4      18.    Attached to this declaration as Exhibit L is a true and correct copy of a printout from the
5  Vatican Library's website, reflecting that Monsignor Cesare Pasini is the Prefect of the Vatican Library.

6      19.    Attached to this declaration as Exhibits M, N, and O are true and correct copies of HP-
7  SEC-00094071-74, 0094086-88, and 00130127-28, which I understand were produced to the SEC by
8  HP, and which reflect that in and after December 2010, Lynch and Hussain personally met and
9  corresponded with Monsignor Pasini about the possible digitization project.

10     20.    Attached to this declaration as Exhibit P is a true and correct copy of HP-SEC-
11 00520732, which I understand was produced to the SEC by HP, and which appears to be an e-mail dated
12 April 11, 2010, in which Kanter was asked to prepare a draft license agreement between Autonomy and
13 Auxilium.

14     21.    Attached to this declaration as Exhibit Q is a true and correct copy of HP-SEC-1596378-
15 392, which I understand was produced to the government by HP, and which appears to be Kanter's
16 response.

17     22.    Attached to this declaration as Exhibit R is a true and correct copy of HP-SEC-01656672-
18 73, which was produced to the government by HP, and which reflects that Auxilium signed a product
19 schedule, dated March 31, 2010, to pay €1,300,000 for the right to sublicense Autonomy software to
20 BAV for a specified number of users and to pay €125,000 in support and maintenance, and that
21 Autonomy recognized €1,300,000 in revenue on the Auxilium transaction in Q1 2010. The
22 government's investigation to date reveals that Auxilium made no payments to Autonomy and Auxilium
23 does not appear to have made any sale of Autonomy software to BAV.

24     23.    Attached to this declaration as Exhibit S is a true and correct copy of HP-SEC-01639621-
25 633, which I understand was produced to the government by HP, and which appears to be Autonomy's
26 press release for Q1 2010 stating that Autonomy exceeded earnings expectations of analysts following
27 Autonomy stock.

28
LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
CASE NO. CR-14-90491MISC EMC                    6

1    24.    Attached to this declaration as Exhibit T is a true and correct copy of HP-SEC-01550364,
2  which I understand was produced to the government by HP. I understand this is an excerpt from an
3  exhibit to a claim made by HP subsidiaries in a UK court. According to the document, Autonomy
4  recognized revenue on a license agreement, dated September 30, 2010, whereby Autonomy purported to
5  license software to Red Ventures for €2,000,000 for resale to Poste. Payment under the agreement was
6  due beginning December 2010. Red Ventures made no payments by that date, or at any point. Red
7  Ventures does not appear to have made any sale of the listed software to Poste, nor did Autonomy ever
8  consummate a sale of such software to Poste. The government's investigation to date reveals that
9  Autonomy appears to have been attempting to sell software directly to Poste prior to September 30,
10  2010, and after the purported sale to Red Ventures. Documents produced in the investigation reflect
11  that Red Ventures was located in Italy.

12                                  The Official Requests

13    25.    Attached to this declaration as Exhibit U is a true and correct copy of a Diplomatic Note,
14  which was sent at my office's request on August 10, 2015, by the Embassy of the United States of
15  America to the Holy See to the Secretariat of State for the Holy See and the Vatican City State. The
16  Diplomatic Note attached a list of questions and documents the USAO and FBI wished to discuss.

17    26.    Attached to this declaration as Exhibit V is a true and correct copy of a Note Verbale
18  dated October 8 2015, which was received from the Secretariat of State for the Holy See and the Vatican
19  City State.

20    27.    Attached to this declaration as Exhibit W is a true and correct copy of Diplomatic Note,
21  No. 3-2016. On January 14, 2016, at my office's request, the Embassy of the United States of America
22  to the Holy See delivered the Diplomatic Note to the Secretariat of State, enclosing a Request for
23  International Judicial Assistance from the Office of International Affairs of the Department of Justice
24  ("OIA"). The Secretariat of State has requested a translated version of the request, which is being
25  prepared, and has yet to provide a substantive response.

26    28.    On December 23, 2015, OIA made an official request to the Central Authority of Italy for
27  legal assistance in obtaining evidence, pursuant to the 2006 U.S.-Italy Mutual Legal Assistance

28
LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
CASE NO. CR-14-90491MISC EMC                              7

1   Instrument. A true and correct copy of the letter transmitting the request, which at the time had not been

2   translated into Italian, is attached as Exhibit X.

3        29.    On January 4, 2016, OIA delivered a translated version of the request to the Central

4   Authority of Italy. A true and correct copy of the letter transmitting the translated version of the request

5   is attached as Exhibit Y. The request seeks business records, including agreements, correspondence, and

6   e-mails, from Sales Consulting, Auxilium, Red Ventures, Postecom, and Poste, which will evidence

7   whether Autonomy appropriately recorded revenue on the transactions. Specifically, the request seeks:

8          • From Sales Consulting, for the period December 2009 to October
9            2011, all agreements with Poste and/or Autonomy; all communications
         with Autonomy relating to any sale to Sales Consulting and/or any
10           resale of Autonomy software by Sales Consulting; all communications
         with Poste relating to any sale of Autonomy software; all documents
11           reflecting efforts by Sales Consulting to resell Autonomy software;
         and financial statements for the periods ended December 31, 2009,
12           2010, and 2011.

13         • From Auxilium, for the period December 2009 to October 2011, all
14           agreements with BAV (or any other unit/agency of the Vatican City
         State and/or Holy See) and/or Autonomy; all communications with
15           Autonomy relating to any sale to Auxilium and/or any resale of
         Autonomy software by Auxilium; all communications with BAV or
16           Postecom relating to any sale of Autonomy software; all documents
         reflecting efforts by Auxilium to resell Autonomy software; and
17           financial statements for the periods ended December 31, 2009, 2010,
18           and 2011.

19         • From Postecom, for the period December 2009 to October 2011, all
         agreements with BAV relating to Autonomy; all agreements with
20           Autonomy; all communications with Autonomy relating to any sale of
         software to BAV; all communications with BAV relating to any sale
21           of Autonomy software; and all documents reflecting efforts by
22           Auxilium and/or Postecom to resell Autonomy software.

23         • From Red Ventures, for the period December 2009 to October 2011,
         all agreements with Poste and/or Autonomy; all communications with
24           Autonomy relating to any sale of software to Poste and/or any resale of
         Autonomy software by Red Ventures; all communications with Poste
25           relating to any sale of Autonomy software; all documents reflecting
26           efforts by Red Ventures to resell Autonomy software; and financial
         statements for the periods ended December 31, 2009, 2010, and 2011.
27

28

USAO 00003317

1   • From Poste, for the period December 2009 to October 2011, all
2     agreements with Sales Consulting, Red Ventures, and/or Autonomy;
      all communications with Autonomy relating to any sale of certain
3     software to Poste; and all communications with Sales Consulting
4     and/or Red Ventures relating to any sale and/or resale of Autonomy
      software.

5   Italy has not yet responded to the MLAT.

6   I declare under penalty of perjury that the foregoing is true and correct.

7   Dated: January 29, 2016

8                                       ROBERT S. LEACH
9                                       Assistant United States Attorney

28  LEACH DECL. RE EX PARTE APPLIC. RE STATUTE OF LIMITATIONS
    CASE NO. CR-14-90491MISC EMC          9

USAO 00003318