# EXHIBIT 16

**To:**    'Steve Chamberlain'[stephenc@autonomy.com]
**From:**  Joel Scott
**Sent:**   Wed 1/26/2011 1:44:43 PM
**Importance:**        Normal
**Subject:**  FW: autn_boa
autn_boa.pdf
ATT00001..htm


**From:** David M. Truitt [mailto:dtruitt@discovertechnologies.com]
**Sent:** Wednesday, January 26, 2011 10:42 AM
**To:** joels@autonomy.com
**Subject:** Fwd: autn_boa



Begin forwarded message:

> **From:** "Malcolm Hyson" <mhyson@discovertechnologies.com>
> **To:** "David M. Truitt" <dtruitt@discovertechnologies.com>
> **Subject: autn_boa**

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

HP-SEC-SCOTT-00019635
Exh 1512-0001



One Market
Spear Tower, 19th Floor
San Francisco, CA 94105
Tel: (415) 243-9955
Fax: (415) 243-9984

December 31, 2010

Discover Technologies, LLC
1855 St. Francis St.
Reston, VA  20190

Dear Sir or Madame,

This letter ("Agreement") sets forth the terms of the agreement between Autonomy, Inc. ("Autonomy") and Discover Technologies, LLC ("Value Added Reseller" or "VAR") under which Autonomy will grant VAR the right to sublicense the Autonomy products specified in Attachment A to this Agreement ("Autonomy Software Products") to Bank of America, N.A. ("End User"), and under which Autonomy will provide related support services, as hereinafter defined, to End User.

1. **Products Licensed and Services Provided.**  Upon VAR's execution of this Agreement, Autonomy shall license to VAR for sublicense to End User the Autonomy Software Products. Once executed, this Agreement, including all Product Schedules attached hereto, constitutes a non-cancelable purchase commitment, all fees and expenses specified herein are non-refundable. VAR shall sublicense the Autonomy Software Products to End User subject to the terms set forth in that certain Application Service Provider and Software License Agreement between End User and Autonomy dated March 31, 2009, as appended and amended (the "End User Agreement").  In addition, Upon Autonomy's receipt of a valid purchase order and the support fees set forth in Section 2, Autonomy shall provide one year of support for the Autonomy Software Products solely to End User, in accordance with the terms of the End User Agreement.  VAR may purchase consulting services from Autonomy on behalf of End User, if agreed to in writing by Autonomy.

2. **Fees and Payment Terms.**  VAR shall pay to Autonomy a fee in the amount of Three Million Six Hundred Seventy-Five Thousand Dollars (US $ 3,675,000.00) in consideration of the Autonomy Software Products licensed for distribution to End User, and first year Maintenance Services related thereto.  All such fees are exclusive of applicable taxes, customs, duties and VAT.  VAR agrees to pay Autonomy the fees set forth in the applicable invoice in accordance with the payment terms on Exhibit A.  Provided VAR is current in its payment of all Support Fees, the renewal rate shall be the previous year's rate plus an increase not to exceed the greater of (a) five percent (5%), or (b) the rate in increase of the Consumer Price Index for Urban Wage Earners and Clerical Workers ("CPI-W"), US City Average, All Items, for the 12 month period immediately preceding renewal of Support for which such data is available.  VAR shall be responsible for all federal, state and local taxes, however designated, arising from or based upon this Agreement, except for those taxes based on Autonomy's income.  VAR acknowledges and agrees that Autonomy does not have a return policy or credit privileges on any software products.

3. **Delivery.**  Shipped FOB point of manufacture, via electronic delivery (such as via FTP transfer) to:

     mhyson@discovertechnologies.com

4. **No Representations/Ownership.**  VAR shall not make any representations or warranties about the Autonomy Software Products to End User, and VAR represents and warrants that it has not made any such representations or warranties.  No license or other rights in or to the Autonomy Software Products, or the intellectual property rights therein, are granted to VAR.  All intellectual property rights in and to the Autonomy Software Products are and shall remain the exclusive property of Autonomy.

5. **DISCLAIMERS AND LIMITS ON LIABILITIES.**  AUTONOMY SHALL NOT BE LIABLE UNDER OR IN CONNECTION WITH THIS AGREEMENT FOR ANY LOST REVENUE, LOST PROFITS OR OTHER CONSEQUENTIAL, INCIDENTAL, SPECIAL, OR PUNITIVE DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  IN NO EVENT SHALL AUTONOMY'S AGGREGATE LIABILITY UNDER OR

Autonomy Confidential-Letter Agreement                                                                                                                                  1

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-SCOTT-00019637
Exh 1512-0002

IN CONNECTION WITH THIS AGREEMENT EXCEED THE AMOUNTS PAID BY VALUE ADDED RESELLER TO AUTONOMY HEREUNDER.  AUTONOMY MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE AUTONOMY SOFTWARE PRODUCTS INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT.

6. **Miscellaneous.** VAR shall not disclose the terms of this Agreement, including the pricing set forth in Section 2, to any third party.  Failure by either party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision.  Any waiver, amendment, supplementation or other modification or supplementation of any provision of this Agreement shall be effective only if in writing and signed by both parties. If for any reason a court of competent jurisdiction finds any provision or portion of this Agreement to be unenforceable, that provision of this Agreement shall be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this Agreement shall continue unmodified except as necessary to avoid unfairness.  This Agreement, including the pricing set forth in Section 2, represents the entire Agreement between the parties hereto concerning the subject matter hereof and supersedes any and all prior correspondence, quotations and negotiations.  VAR expressly agrees that this Agreement shall have priority over any contrary terms or additional terms contained in any purchase order or other form hereafter delivered by VAR to Autonomy and any such inconsistent or additional terms shall have no effect.

**Autonomy, Inc.:**

By: _____

Name: _____

Title: _____

Date: _____

**Discover Technologies, LLC:**

By: _*[signature]*_____

Name: _Malcolm Hyson_____

Title: _CTO_____

Date: 31 Dec 2010_____

Autonomy Confidential-Letter Agreement                                                                                              2

## Attachment A

## Autonomy Software Products

| PRODUCT DESCRIPTION: | QUANTITY: |
|---|---|
| The Software consists of the following: | |
| The Software products described on Schedule A-2 of the End User Agreement, but specifically excluding the following:<br>1. Any Software products that became added to Schedule A-2 of the End User Agreement by reason of the Parties execution of Schedule A-2.2 of the Agreement;<br>2. Any Software products that became added to Schedule A-2 of the Agreement by reason of as the Parties execution of Schedule A-2.3 of the Agreement; | For use in connection with an unlimited number of internal Bank of America users, subject to the Product Notes below. |

Product Notes:
- In addition to any restrictions set forth in Schedule A-2 of the Agreement, as amended, and subject to the user limitation set forth above, the Software listed as A above and licensed to Bank of America hereunder, and pursuant to the Agreement prior to the Schedule Effective Date, may be used solely for the purposes of archiving, supervision, storage, retention, retrieval and disposition of live-stream email data regulated by the financial regulatory authorities in each of the countries in which Bank of America does business ("Regulated Data"), and only from those internal users directly regulated by such financial regulatory authorities in each of the countries in which Bank of America does business ("Regulated Users"), and, without limiting the foregoing, in no event with files or other data from non-Regulated Users and/or non-email repositories.

- For avoidance of doubt, the following email accounts shall not be counted when calculating Bank of America's conformance to the User Limit: (i) group mailboxes associated with multiple individual email accounts, where each such individual email account is being counted when calculating Bank of America's conformance to the User Limit; (ii) application service accounts associated with a single application and either not associated with any individual email account(s) or associated with individual email account(s) otherwise being counted when calculating Bank of America's conformance to the User Limit,; and (iii) system service accounts either not associated with any individual email account(s), or associated with individual email account(s) otherwise being counted when calculating Bank of America's conformance to the User Limit, and which are required by Bank of America's email infrastructure for technical support, maintenance and housekeeping functions.

- For avoidance of doubt, where the Software is being used to archive data generated by a single individual but from multiple data sources, including instant messaging systems, market data services (e.g. Bloomberg, Reuters, etc.), collaborative tools, deal rooms, text messaging and mobility devices, then for purposes of calculating Bank of America's conformance to any limit on number of users with which use of the Software is authorized under the Agreement, each such individual shall be counted as a single user, irrespective of the number of data sources from which data related to such individual is generated.

PAYMENT TERMS:

The fee described in Section 2 of the Agreement shall be due and payable within thirty (30) days from the date of invoice.

FOIA CONFIDENTIAL TREATMENT REQUESTED                           HP-SEC-SCOTT-00019639
Exh 1512-0004