Gary S. Lincenberg - State Bar No. 123058
  glincenberg@birdmarella.com
Ray S. Seilie - State Bar No. 277747
  rseilie@birdmarella.com
Michael C. Landman – State Bar No. 343327
  mlandman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Stephen Keith Chamberlain

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN<br><br>  Defendants. | CASE NO. 3:18-cr-00577-CRB<br><br>**Defendant Stephan Chamberlain's Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a Rule 15 Order for Deposition**<br><br>Date:   November 1, 2023<br>Time:   1:30 p.m.<br>Place:  Courtroom 6<br><br>Assigned to Hon. Charles R. Breyer |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:

PLEASE TAKE NOTICE that on November 1, 2023, at 1:30 p.m. or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Stephen Chamberlain will and hereby does move this Honorable Court to compel the Government to secure the trial attendance of Rob Knight or, in the alternative, to issue a Rule 15 Order for the deposition of such witness. This motion is based upon the following Memorandum of Points and Authorities, oral argument, and the pleadings and exhibits on file with the Court. The Proposed Order is attached. Should the Court to grant the alternative requested relief, we will submit a proposed order consistent with the Court's ruling.

DATED: September 29, 2023

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:      */s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Attorneys for Defendant Stephen Keith Chamberlain

3892663.4    Case No. 3:18-cr-00577-CRB

Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a Rule 15 Order as to Such Witness

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | BACKGROUND | 2 |
| III. | THE COURT SHOULD COMPEL THE GOVERNMENT TO SECURE THE TRIAL ATTENDANCE OF MR. KNIGHT | 4 |
| | A. Applicable Legal Standards | 4 |
| | B. The Government Must Secure Mr. Knight's Appearance | 4 |
| |    1. Mr. Knight is a Critical Witness | 4 |
| |       a. Hardware Accounting | 6 |
| |       b. Capitalization of R&D Costs of SPE | 8 |
| |       c. Microlink Acquisition | 9 |
| |    2. The Government Refuses to Act to Secure Mr. Knight's Appearance | 9 |
| IV. | ALTERNATIVELY, THE COURT SHOULD ORDER ROB KNIGHT's RULE 15 DEPOSITION | 10 |
| | A. Applicable Legal Standards | 10 |
| | B. Extraordinary Circumstances Exist to Justify a Rule 15 Order | 11 |
| |    1. Mr. Knight is Unavailable | 11 |
| |    2. Mr. Knight's Testimony is Material | 12 |
| |    3. Additional Exceptional Circumstances | 12 |
| V. | CONCLUSION | 13 |

3892663.4     i     Case No. 3:18-cr-00577-CRB

Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a Rule 15 Order as to Such Witness

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*People of Territory of Guam v. Ngirangas*,
    806 F.2d 895 (9th Cir. 1986) .................................................................................... 10

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ....................................................................................... 4

*Taylor v. Illinois*,
    484 U.S. 400 (1988) ................................................................................................ 1, 4

*United States v. Danhong Chen*,
    No. 19-CR-00111-LHK-2, 2020 WL 1322963 (N.D. Cal. Mar. 20, 2020) ............ 12

*United States v. Hussain*,
    Case No. 3:16-cr-00462-CRB, ECF No. 212 .................................................. 3, 8, 10

*United States v. Omene*,
    143 F.3d 1167 (9th Cir. 1998) ............................................................................ 11, 12

*United States v. Rodriguez-Sifuentes*,
    637 F. App'x 1016 (9th Cir. 2016) ..................................................................... 10, 11

*United States v. Sanchez–Lima*,
    161 F.3d 545 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc*
    (Dec. 11, 1998) ......................................................................................................... 12

*United States v. Theresius Filippi*,
    918 F.2d 244 (1st Cir. 1990) ....................................................................................... 4

*United States v. Torre-Sanchez*,
    No. 12-CR-00833-LHK, 2014 WL 4370538 (N.D. Cal. Sept. 3, 2014) ............ 11, 12

*United States v. Trumpower*,
    546 F. Supp. 2d 849 (E.D. Cal. 2008) ................................................................ 11, 12

**Other Authorities**

Sixth Amendment ................................................................................................... 4, 10

Federal Rule of Criminal Procedure 15(a) .............................................................. 1, 10

Rule 15 ............................................................................................................... *passim*

Rule 17 ........................................................................................................................ 2

U.S. Const. amend. VI ................................................................................................ 4

3892663.4                                    ii                         Case No. 3:18-cr-00577-CRB
Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a
Rule 15 Order as to Such Witness

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Stephen Chamberlain respectfully requests that the Court order the Government to secure Rob Knight's attendance at trial pursuant to its cooperation agreement with Deloitte LLP ("Deloitte"). In the alternative, Mr. Chamberlain respectfully requests that the Court order Mr. Knight's deposition pursuant to Federal Rule of Criminal Procedure 15(a).

## I. SUMMARY OF ARGUMENT

Mr. Knight is a U.K. citizen and resident and is currently employed as a partner at Deloitte LLP. He was a member of Deloitte's audit team responsible for auditing Autonomy through at least the end of 2009. His testimony is material to the Defense as it will help refute the Government's arguments that Mr. Chamberlain acted with criminal intent in making accounting decisions for Autonomy and communicating with Deloitte regarding those decisions. Despite repeated attempts to secure Mr. Knight's attendance at trial, he remains unavailable.

Deloitte signed a cooperation agreement with the Government wherein it agreed to "cooperate fully and in good faith with the Office . . . regarding all of the facts and circumstances of this case." Declaration of Gary S. Lincenberg ("Lincenberg Decl."), Exhibit 1.[1] Deloitte did so in exchange for Hewlett-Packard's agreement to drop its threatened $5 billion civil claim against Deloitte for Deloitte's involvement in the alleged accounting fraud at Autonomy. Mr. Chamberlain has requested that the Government enforce this agreement by requiring Deloitte to make Mr. Knight available to testify in the defense case. Despite agreeing to do so for other Deloitte witnesses, Richard Knights and Nigel Mercer, the Government refuses to assist in securing the appearance of Mr. Knight. The Government's refusal to act violates Mr. Chamberlain's rights under the Sixth Amendment's Compulsory Process Clause. *See Taylor v. Illinois*, 484 U.S. 400, 408 (1988) ("[A]t a minimum . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."). Accordingly, Mr.

---

[1] For brevity, unless otherwise specified, the abbreviation "Ex." refers to exhibits from the concurrently-filed Declaration of Gary S. Lincenberg.

Chamberlain requests that the Court order the Government to enforce its agreement with Deloitte to secure Mr. Knight's appearance at trial.

In the alternative, the Court should order Mr. Knight's Rule 15 deposition. His testimony is material to Mr. Chamberlain's defense and, as a resident of the U.K., he is unavailable to be served with a Rule 17 subpoena. The lengthy period of the Government's delay in charging this case, the fact that Mr. Knight previously testified in a manner favorable to Mr. Chamberlain's defense, and the Government's unwillingness to take sufficient steps to make Mr. Knight's available, constitute additional exceptional circumstances justifying his deposition.

## II.     BACKGROUND

Deloitte was Autonomy's auditor during the entire period of the charged conspiracy in Count One. ECF No. 21 ¶ 13. The Government alleges that, in furtherance of the alleged scheme to defraud, Mr. Chamberlain and others made false and misleading statements to Deloitte about the facts and circumstances of transactions related to revenue recognition and costs, including falsely representing to Deloitte that it had been provided all relevant information and making false and misleading statements about Autonomy's marketing costs. *Id.* ¶ 22(b)-(c).

Mr. Knight was a senior audit manager at Deloitte and was involved in the Autonomy audit through at least the end of 2009. Ex. 2 at 14. On October 21, 2013, Mr. Knight provided sworn testimony to the UK Serious Fraud Office ("SFO") in connection with the SFO's investigation into Deloitte's audit of Autonomy during the relevant period. Ex. 3. As described below, such testimony and his expected testimony on other issues, is highly relevant to Mr. Chamberlain's defense.

On April 28, 2016, Deloitte entered into a cooperation agreement with the Government stating in relevant part as follows:

> Deloitte LLP, and Messrs. Knights, Mercer, Welham, and Murray, agree to cooperate fully and in good faith with the Office . . . regarding all of the facts and circumstances of this case, including, without limitation, the facts and circumstances surrounding the financial reporting of Autonomy; Deloitte LLP's provision of auditing, review, and other services to Autonomy; and Autonomy's acquisition by Hewlett-Packard Company. In particular, Deloitte LLP, and Messrs. Knights, Mercer, Welham, and Murray, each agree that cooperation shall include, but is not limited to, the

3892663.4                                           2                                  Case No. 3:18-cr-00577-CRB

Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a Rule 15 Order as to Such Witness

following:

a. Meeting with the Office, in London, when requested to do so, and responding truthfully and completely to any and all questions with respect to the facts and circumstances of the case;

. . .

Ex. 1.

On January 23, 2018, in the criminal proceeding against Mr. Hussain, Mr. Hussain filed a motion to compel the Government to secure the trial attendance of two Deloitte witnesses, Richard Knights and Nigel Mercer. *United States v. Hussain*, Case No. 3:16-cr-00462-CRB, ECF No. 212. The Government opposed that request and, on February 6, 2018, the Court heard oral argument on the motion. *Id.*, ECF No. 249. **The Court ultimately did not rule on the motion.** However, when asked by the Court whether the Government had the ability to compel their attendance under the cooperation agreement, the Government stated, "If we ask them, they will come, Your Honor." *Id.* at 69:21-25.[2]

On September 6, 2023, in London, U.K., counsel for Mr. Chamberlain and Dr. Lynch met with Deloitte's counsel who also represents Mr. Knight. Lincenberg Decl. ¶ 2. Counsel for Mr. Chamberlain and Dr. Lynch requested that Mr. Knight agree to voluntarily testify in the upcoming trial. *Id.* Counsel for Mr. Chamberlain and Dr. Lynch informed counsel for Deloitte and Mr. Knight of the upcoming trial deadlines and of the need for an affirmative response for the purposes of filing Rule 15 applications. *Id.* On September 11, 2023, counsel for Dr. Lynch, on behalf of Dr. Lynch and Mr. Chamberlain, followed up with counsel for Deloitte and Mr. Knight, requesting a response by September 15, 2023. *Id.* ¶ 3. Counsel for Dr. Lynch and Mr. Chamberlain sent additional follow up requests on September 18, 21, 22, and 26. *Id.* ¶ 4. To date, counsel for Deloitte and Mr. Knight has not responded to the defendants' request to answer whether Mr. Knight will voluntarily agree to testify in the United States. *Id.* ¶ 5.

On September 19, 2023, counsel for Dr. Lynch, on behalf of both defendants, requested

---

[2] The Court also noted its view that the cooperation agreement is not limited to the Government's request for the Deloitte witnesses to appear in its case-in-chief. *Id.* at 60:13-14 ("Yeah, but it's not limited. Is it? I mean, I don't see a limitation.").

that the Government make Mr. Knight available to testify at trial pursuant to its cooperation agreement with Deloitte. *Id.* ¶ 6. That same day, the Government stated its unwillingness to use its cooperation agreement with Deloitte to secure Mr. Knight's appearance at trial. *Id.*

## III. THE COURT SHOULD COMPEL THE GOVERNMENT TO SECURE THE TRIAL ATTENDANCE OF MR. KNIGHT

### A. Applicable Legal Standards

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. "The right to compulsory process encompasses the right to offer the testimony of witnesses, and to compel their attendance, if necessary." *Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) (internal quotation marks and citations omitted). Where the Government has control over the ability to ensure the attendance of a witness at trial, the Government has a Sixth Amendment obligation to use the full extent of its power to do so. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) ("[A]t a minimum . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial[.]"; *see also United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) (Government denied defendant Sixth Amendment right to compulsory process by failing to assist in procuring a visa for foreign witness). In order to establish a Sixth Amendment violation, the defendant must "make some plausible showing" that such a witness's "testimony would have been both material and favorable to his defense." *Id.*

### B. The Government Must Secure Mr. Knight's Appearance

Mr. Knight is a critical witness and it is within the control of the Government to make him appear. The failure of the Government to enforce its cooperation agreement with Deloitte in order to ensure Mr. Knight's attendance at trial amounts to a Sixth Amendment violation.

#### 1. Mr. Knight is a Critical Witness

For all of 2009, Mr. Knight was the senior audit manager on the Autonomy audit. Ex. 2 at 14. His important role, including the fact that he was senior to Lee Welham, the Government's key Deloitte witness, is set forth in the organizational chart found in Deloitte's 2009 Report to the Audit Committee Planning Report, dated December 18, 2009.



12  Report to the Audit Committee Planning Report

*Id.* Even after transitioning off of the Autonomy audit team, he continued to be involved in Deloitte's review of Autonomy's financial statements, playing the role of "skeptical auditor" to provide a fresh perspective and to help ensure Deloitte's independence from management. Ex. 3 at 6.

Mr. Knight has important testimony regarding a number of critical pieces of the Government's case, including but not limited to: accounting for Autonomy's hardware transactions, the capitalization of Research and Design ("R&D") costs associated with Autonomy's development of Structured Probabilistic Engine ("SPE"), and Autonomy's acquisition of Microlink. These are areas in which the Government is likely to present evidence in an attempt to convict Mr. Chamberlain for the charged offenses. Thus, such testimony is highly relevant and critical to Mr. Chamberlain's defense.

### a. Hardware Accounting

The Government is expected to argue that Mr. Chamberlain acted with criminal intent in attributing a portion of the costs associated with Autonomy's hardware resales as Sales and Marketing expenses. Mr. Chamberlain's primary defense to these allegations is that his actions with respect to this accounting issue were performed in good faith and that he drew comfort from the fact that Deloitte reviewed and approved of these decisions.

The Government is expected to use Mr. Welham's testimony to infer that Mr. Chamberlain withheld material information from Autonomy in connection with this accounting practice, which began with Autonomy's purchase of hardware from EMC in Q3 2009. Unlike Mr. Welham, Mr. Knight was actively involved in the review of Autonomy's accounting of EMC hardware that Autonomy resold to strategic customers. Mr. Knight reviewed the audit evidence that Autonomy received from EMC and formed opinions about whether such audit evidence was sufficient to support Autonomy's decision to allocate a portion of its costs to Sales and Marketing. Ex. 4 (Mr. Chamberlain emailing Mr. Knight audit evidence he received from EMC); Ex. 5 (Mr. Hussain's description of the Autonomy-EMC partnership). Mr. Knight is in the best position to opine regarding whether Autonomy fraudulently applied the accounting rules to this transaction and, by extension, future hardware transactions. In this respect, Mr. Knight previously testified that there

was no guidance on the manner in which the costs of hardware sales should be allocated and that he was ultimately happy with the manner in which Autonomy allocated such costs. Ex. 3 at 32.

The Government will likely try to use emails between Chamberlain and Autonomy salesman Mike Sullivan to suggest that Mr. Chamberlain attempted to procure fraudulent audit evidence to support a desired accounting position. Mr. Knight will rebut such an inference by testifying that there was nothing wrong with the manner in which Mr. Chamberlain attempted to procure audit evidence. Mr. Knight previously testified that, as the auditor:

> you always hope to get something extra . . . you hope for the best quality of evidence that you can get to support a set of transactions. But in reality you have to go in accepting you're not going to get something from perhaps EMC to say you know, you might want this piece of paper that says yes, you know we've got this allocation amongst cost of goods sold and sales and marketing that describes exactly what you want to describe, but you're never going to get it.

Ex. 3 at 16-17. Mr. Knight added that a company like EMC was "extremely paranoid" about everything they release to the market and that, in the context of hardware sales to Autonomy, it would not have been willing to go through all of the necessary protocols to release a specific statement regarding a strategic partnership with Autonomy. *Id.* Such testimony will provide context to Mr. Chamberlain's request that Mr. Sullivan obtain specific audit evidence from EMC and will also explain why Mr. Chamberlain settled for the less-than-perfect audit evidence that EMC ultimately provided. *Id.* at 19 (Mr. Knight testified that the email EMC email was about what he would expect from EMC).

Given his close role in Deloitte's review of the accounting of EMC hardware sales, Mr. Knight is in a much better position to opine on whether Mr. Chamberlain or others hid material information from Deloitte on this issue. For example, it is expected that the Government will suggest that it was improper for Mr. Hussain to have offered a bonus to Mr. Sullivan in exchange for helping to obtain audit evidence from EMC. Mr. Knight is expected to testify to the contrary, as he previously did, namely that offering a bonus to Mr. Sullivan was unusual but not inappropriate. Ex. 3 at 52. Mr. Knight contextualized the commission payment by pointing out that obtaining audit evidence from companies like EMC was often difficult and as such it made sense to pay someone to put in the time to get the best audit evidence available for the auditors.

Mr. Knight is also well-positioned to rebut any argument that the short-lived nature of Autonomy's relationship with EMC supports the Government's theory that the Q3 2009 accounting of its EMC hardware purchases were improper. Mr. Knight previously testified that the fact that the EMC partnership did not work out would not have changed the accounting. *Id.* at 57. Mr. Knight noted that, even though it did not work out, Autonomy was "still paying for something," and thus it was proper to expense the cost. *Id.*

Finally, Mr. Knight has important testimony regarding Autonomy's decision not to highlight its hardware sales in its financial statements or the narrative portion of its press release. Mr. Knight testified that the hardware sales did not need to be disclosed as a separate operating segment. He testified that, while he always preferred that his clients make additional disclosures, he understood that his clients had valid reasons for not wanting to do so. Mr. Knight testified, "if all prepared the press release that I want them to prepare, they'd go out of business very, very quickly, because they'd just be disclosing everything." *Id.* at 66. Mr. Knight's testimony is an important rebuttal to the Government's suggestion that Mr. Chamberlain and Autonomy acted improperly in failing to disclose its strategic hardware sales.

### b. Capitalization of R&D Costs of SPE

Though he has not previously testified on the matter, Mr. Knight is also in a position to provide important testimony regarding Autonomy's decision to capitalize R&D costs associated with the development of SPE. As the Government did in the *Hussain* trial, the Government may introduce evidence that Mr. Chamberlain acted with criminal intent in attempting to capitalize costs of Autonomy System Engineer salaries by falsely attributing such costs to the development of SPE. An important aspect of Mr. Chamberlain's defense is that Mr. Chamberlain discussed these issues openly and honestly with Deloitte and Deloitte agreed that the accounting was proper. Internal Deloitte emails indicate that Mr. Knight was an integral member of the Deloitte team that reviewed Mr. Chamberlain's accounting decisions. Exs. 6, 7.

For example, on October 15, 2009, at 2:04 AM, Mr. Knight emailed Mr. Knights and Mr. Welham regarding development costs of SPE, stating that he was "exploring with NAA the point on prior period qtr capitalisation." Ex. 7. The "NAA" stands for Deloitte's National Accounting &

Audit Technical Team, which is where Deloitte's audit team went internally when it wanted guidance on how to handle a particularly difficult accounting issue. A few hours later, on the same day, Mr. Knight reports to Mr. Welham that "Discussions were held between the audit team and Elizabeth Crispin of NAA." Ex. 6. Mr. Knight goes on to detail those discussions for the purposes of inclusion in Deloitte's audit file on this issue. *Id.* The fact that Mr. Knight was going to NAA on the capitalization issue underscores the many layers of Deloitte's review of Mr. Chamberlain's accounting judgments. The fact that Mr. Knight was updating Mr. Welham on conversations Mr. Knight had with NAA underscores that fact that Mr. Welham was not involved in certain discussions between upper-management of the audit team and its internal advisors. Only Mr. Knight can testify to those discussions and the fact that Mr. Welham was on the outside looking in will help Mr. Chamberlain attack any suggestion by Mr. Welham or the Government that Mr. Welham speaks for the entire Deloitte audit team.

### c.   Microlink Acquisition

Mr. Knight also led Deloitte's efforts in reviewing Autonomy's acquisition of Microlink. Ex. 8. The Government is likely to argue that Mr. Chamberlain misled auditors by failing to disclose a connection between Microlink (a company that Autonomy purchased) and two related entities, DiscoverTech and MicroTech. Mr. Knight is the individual who specifically requested information from Mr. Chamberlain regarding the connection between the entities. Ex. 8. Mr. Knight also was involved in Deloitte's own investigation into the connection between the entities. Exs. 9, 10. Thus, he is in the best position to testify to what Deloitte knew at the time, what information Deloitte believed Mr. Chamberlain to have, and the extent to which Mr. Chamberlain misled Deloitte. We anticipate that Mr. Knight will testify that he was not misled by Mr. Chamberlain.

### 2.   The Government Refuses to Act to Secure Mr. Knight's Appearance

Despite Mr. Chamberlain's request, the Government refuses to take steps to secure Mr. Knight's appearance at trial. The Government takes the position that the cooperation agreement covers Deloitte, Mercer, Knights, Welham and Murray and therefore does not cover Knight (even though Knight was and still is a partner at Deloitte). But even under the Government's

interpretation of the cooperation agreement, the Government has the ability to require Deloitte to make Mr. Knight available. And the Court should order it to do so.

Under the agreement, Deloitte agreed "to cooperate fully and in good faith with the Office . . . regarding all of the facts and circumstances of this case." Ex. 1. Surely, if the Government wanted Mr. Knight to testify in its case-in-chief, it would use the cooperation agreement, to the extent possible, to press Deloitte to make Mr. Knight available. Mr. Knight is currently a partner at Deloitte and there is no indication that Mr. Knight would refuse to appear at trial if directed by his employer to do so. Mr. Chamberlain requests that the Court order the Government to use its best efforts to require Deloitte to cooperate "fully and in good faith" by securing Mr. Knight's attendance.

## IV.   ALTERNATIVELY, THE COURT SHOULD ORDER ROB KNIGHT's RULE 15 DEPOSITION

In the event that the Court does not compel the Government to secure the appearance of Mr. Knight at trial, or in the event that the Government fails to secure his appearance, the Court should order his deposition under Rule 15(a). The Government has recognized that a Rule 15 order is one of the tools available to ensure that a defendant's right to compulsory process is not denied under circumstances where the witness is unavailable to testify at trial. *United States v. Hussain*, Case No. 3:16-cr-00462-CRB, ECF No. 221 at 3:4-7.

### A.   Applicable Legal Standards

Under Rule 15 of the Federal Rules of Criminal Procedure, a defendant "may move that a prospective witness be deposed in order to preserve testimony for trial. The Court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a). Rule 15 is a critical means of ensuring the defendant's right to a fair trial and there is a thumb on the scale for allowing defendants "to benefit from all available testimony." *People of Territory of Guam v. Ngirangas*, 806 F.2d 895, 897 (9th Cir. 1986). The Ninth Circuit has cautioned that depriving a defendant of the ability to depose an unavailable witness "may impinge on a defendant's Sixth Amendment right to a fair trial." *Id.* (district court committed reversible error in refusing to grant Rule 15 request to depose fugitive witness); *United States v. Rodriguez-Sifuentes*,

637 F. App'x 1016, 1018–19 (9th Cir. 2016) (district court committed reversible error in refusing to grant Rule 15 request to depose witness who had testimony material to defense).

Courts often equate "exceptional circumstances" and "in the interest of justice" to a showing that the witness is unavailable for trial and has material testimony to offer. *Rodriguez-Sifuentes*, 637 F. App'x at 1017. However, the movant need not make a "conclusive showing of 'unavailability' or 'material testimony' before a deposition can be taken in a criminal case." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998); *United States v. Torre-Sanchez*, No. 12-CR-00833-LHK, 2014 WL 4370538, at *3 (N.D. Cal. Sept. 3, 2014). The Rule "only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." *Omene*, 143 F.3d at 1170. Percipient witnesses who reside outside the subpoena power of the Court are "classic examples" of exceptional circumstances under the Rule. *United States v. Trumpower*, 546 F. Supp. 2d 849, 854 (E.D. Cal. 2008).

### B. Extraordinary Circumstances Exist to Justify a Rule 15 Order

Mr. Knight is unavailable and has testimony that is material to Mr. Chamberlain's defense. This alone constitutes exceptional circumstances justifying a Rule 15 order. *Rodriguez-Sifuentes*, 637 F. App'x at 1017 (citing *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) and *United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Dec. 11, 1998)). Additional exceptional circumstances and Mr. Knight's apparent unwillingness to cooperate also weighs in favor of a Rule 15 order.

#### 1. Mr. Knight is Unavailable

Merely showing that a witness is beyond the subpoena power of the Court and unwilling to voluntarily appear at trial is sufficient to establish unavailability under Rule 15. *Rodriguez-Sifuentes*, 637 F. App'x at 1017 (citing *Medjuck*, 156 F.3d at 920). Despite Mr. Knight's presence outside the Court's jurisdiction, counsel for Mr. Chamberlain has appealed to his counsel to see if Mr. Knight would be willing to come to the United States to testify in Mr. Chamberlain's defense. Despite numerous follow-up requests, counsel for Mr. Knight has failed to respond directly to Mr. Chamberlain's request regarding Mr. Knight's availability. Knight's counsel simply argued that he

did not see justification for Knight's testimony.[3] Knight's counsel's refusal to directly answer the question of whether Mr. Knight would appear voluntarily at trial amounts to nothing less than a showing that he is unavailable for the purposes of Rule 15.

### 2. Mr. Knight's Testimony is Material

Rule 15 does not require a conclusive showing of materiality. *Omene*, 143 F.3d at 1170. Provided that other exceptional circumstances exist, including the inability to secure a witness's appearance at trial, the materiality threshold is not high. *Id.*; *Trumpower*, 546 F. Supp. 854 (materiality threshold met by showing that Rule 15 witnesses were percipient witnesses to the events at issue). In fact, as one court has recognized, "[t]here is simply no threshold requirement of materiality in the Rule 15 analysis." *Zavieh*, 2013 WL 1283319, at *3.

Courts denying Rule 15 applications on materiality grounds do so when the applicant's proffered testimony is vague or irrelevant. *See*, *e.g.*, *United States v. Danhong Chen*, No. 19-CR-00111-LHK-2, 2020 WL 1322963, at *2 (N.D. Cal. Mar. 20, 2020) (proffered testimony was "vague and conclusory"); *United States v. Torre-Sanchez*, No. 12-CR-00833-LHK, 2014 WL 4370538 at *3 (N.D. Cal. Sept. 3, 2014) (applicant "failed sufficiently to articulate how and why [the witness's] testimony was material). Though not required, a showing that the testimony is exculpatory in nature is sufficient to meet the materiality threshold under Rule 15. *Sanchez-Lima*, 161 F.3d at 548.

For the reasons previously stated in Section III.B.1 of this Memorandum, Mr. Knight's testimony is highly relevant to the charges against Mr. Chamberlain and he is a critical witness to the defense.

### 3. Additional Exceptional Circumstances

By the time trial begins, it will have been more than twelve years from the last acts in furtherance of the alleged conspiracy charged in Count One. Some witnesses' memories have faded while others have shifted over time. Most if not all have moved on in their lives such that, if given the opportunity, they would prefer not to rehash what was likely a difficult time for them. It

---

[3] It not clear whether counsel for Mr. Knight is speaking on behalf of Mr. Knight or on behalf of its primary client, Deloitte.

is fortunate that substantial portions of Mr. Knight's recollection of the events at issue were preserved by his testimony in a related U.K. proceeding. It would be fundamentally unfair to allow the Government to selectively benefit from Deloitte's cooperation while preventing Mr. Chamberlain from obtaining access to a witness whose testimony in a related proceeding was so favorable to Mr. Chamberlain's defense.

## V.   CONCLUSION

For the foregoing reasons, Mr. Chamberlain respectfully requests that the Court compel the Government to Secure the Trial Attendance of Mr. Knight or, in the alternative, to issue a Rule 15 Order to permit his deposition to be taken in the U.K.

DATED:  September 29, 2023

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:      */s/ Gary S. Lincenberg*
GARY S. LINCENBERG
RAY S. SEILIE
MICHAEL C. LANDMAN
Attorneys for Defendant Stephen Keith Chamberlain

3892663.4

13

Case No. 3:18-cr-00577-CRB

Motion to Compel the Government to Secure the Trial Attendance of Rob Knight or, in the Alternative, to Issue a Rule 15 Order as to Such Witness