# EXHIBIT C

| | | |
|---|---|---|
| 1. | On behalf of | Claimants |
| 2. | Initials/Surname of witness | F Lucini |
| 3. | Statement No | 2 |
| 4. | Date | 16 November 2018 |

Claim No. HC-2015-001324

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**OF ENGLAND AND WALES**
**BUSINESS LIST (ChD)**

B E T W E E N:

(1)  ACL NETHERLANDS B.V. (AS SUCCESSOR TO AUTONOMY CORPORATION LIMITED)
(2) HEWLETT-PACKARD VISION BV
(3) AUTONOMY SYSTEMS LIMITED
(4) HEWLETT-PACKARD ENTERPRISE NEW JERSEY, INC.

**Claimants**

-and-

(1) MICHAEL RICHARD LYNCH
(2) SUSHOVAN TAREQUE HUSSAIN

**Defendants**

---

**SUPPLEMENTAL WITNESS STATEMENT OF FERNANDO LUCINI GONZALEZ-PARDO**

---

I, FERNANDO LUCINI GONZALEZ-PARDO of 22 High St., West Wickham, Cambridge, CB21 4RY, STATE AS FOLLOWS:

1. I make this Supplemental Witness Statement on behalf of the Claimants in connection with the above-named proceedings. The Claimants' solicitors have drawn to my attention certain statements made by the First Defendant, Dr Lynch, in his Witness Statement dated 14 September 2018 and asked me to respond. This is my second witness statement in these proceedings. I refer below to my first Witness Statement (dated 14 September 2018) as "**Lucini 1**" and adopt the definitions used therein.

2. Except where it otherwise appears, the facts and matters to which I refer in this Supplemental Witness Statement are within my own knowledge and are true. Where facts are from another source, I identify the source and I believe them to be true. Where the source of my understanding or information is from the Claimants' solicitors, I have identified this in this Supplemental Witness Statement but without any waiver of legal professional privilege.

3. I have not attached the document to which I refer in this Supplemental Witness Statement. Instead I have provided the document reference for that document. I

1

understand that the document reference is the Document Production ID allocated to the document by the parties as part of the disclosure in the current proceedings.

**SPE**

4. At paragraphs 189 and 236 of his Witness Statement, Dr Lynch says: "*SPE was also used by many customers, including the centre of the UK's anti-terrorism system*" and that "*SPE was a real product used by thousands of people around the world with serious real-life applications*". I disagree. Given my involvement in the development of SPE and my roles as Chief Architect and Head of Pre-sales, if SPE was used by "*many customers*" and "*thousands of people*", I would expect to have known about it. Autonomy demonstrated SPE to customers and carried out proof of concepts of SPE for customers. However, to the best of my recollection, SPE was not used by a customer. As I explained at paragraph 23 of Lucini 1, as far as I am aware, there never were any genuine sales of SPE (as opposed to it being added in to contracts along with a suite of other IDOL features or functionalities).

5. I do not know what "*real-life applications*" Dr Lynch is referring to in paragraph 236 of his Witness Statement. I am not aware of SPE being used by customers with "*real-life applications*". As I explained at paragraph 22 of Lucini 1, if we had identified genuine use cases for SPE, the Cambridge development team would have set to work to further develop and tailor SPE for those use cases, and if successful, sales would have followed. As far as I am aware, no such further development work was undertaken in respect of SPE.

6. At paragraph 208 of his Witness Statement, Dr Lynch states: "*systems engineers ("**SEs**") and developers in the Web Content Management group…made significant contributions to the development of the structured product*" and that "*[t]hese teams may not have known how their individual contributions would fit into the overall SPE project, because…SPE was developed to be part of the IDOL platform and was not a completely separate product*". The WCM (Web Content Management) development team were based in the US and were responsible for developing their own products. Given that the WCM development team did not have access to IDOL source code, they could not have written any code for SPE. As I explained at paragraph 29 of Lucini 1, the Cambridge development team were the only development team who had access to IDOL source code therefore only they could make the necessary configuration changes to IDOL, to create SPE. I find it surprising that Dr Lynch states that *"[t]hese teams may not have known how their individual contributions would fit into the overall SPE project*". In my experience, if developers do not know for what purpose they are developing software, then they cannot develop the software.

HP-SEC-02930177

7. Given my role as Head of Pre-sales (with good visibility over what SEs were doing) and my involvement in the development of SPE, I would expect to have known if SEs had "*made significant contributions to the development of the structured product*"[1], which, as far as I am aware, they did not.

8. At paragraphs 190 and 191 of his Witness Statement, Dr Lynch states: "*I foreshadowed the development of this [SPE] technology again on the Q4 2008 quarterly earnings call, on 21 January 2009*" and "*[b]efore Autonomy trademarked the name SPE, it was known within Autonomy by other names, including "Project X" or "structured" or "structured search" or "structured probabilistic search"*". I know nothing about "*Project X*". There may have been the odd email referring to Autonomy's interest in moving into the structured data market or similar. By way of example, in my cross-examination in the US Trial, I was shown an email dated October 2008 from Dr Lynch to me and others in which Dr Lynch expressed an interest in moving Autonomy into database-archiving solutions {**D004960956**}. Nothing came from this. For the avoidance of doubt, the development of SPE started, from scratch, in the summer of 2009.

9. At paragraph 212 of his Witness Statement, Dr Lynch states that SPE "*could be run over RDBMSs or in their place*". Dr Lynch is referring here to relational database management systems i.e. databases, which are systems of storage designed to store structured data. RDBMSs recall the data using a language called SQL (structured query language). For a database to be considered relational, data must be represented in terms of tuples, grouped into relations between tables as well as being ACID (Atomicity, Consistency, Isolation, Durability) compliant. ACID is an acronym for a database's transaction properties, which are intended to guarantee validity even in the event of errors and power failures. IDOL (of which SPE is a function) is not and cannot be used as a database. IDOL is not ACID compliant nor does it have tables or relationships defined between tables (as it does not have tables). As I described at paragraph 14 of Lucini 1, IDOL was predominantly a search engine that indexed data and used probabilistic algorithms to automatically recognise patterns, concepts and ideas expressed in many different data types. IDOL searches data - it does not store raw data, unlike databases.

**DiscoverEngine software**

10. At paragraph 292 of his Witness Statement, Dr Lynch states: "*When Autonomy customers used DiscoverEngine in conjunction with Autonomy software, they could crawl and index servers more efficiently than without DiscoverEngine*". I disagree. Autonomy's

---

[1] See paragraph 208 of Dr Lynch's Witness Statement.

HP-SEC-02930178

customers could crawl and index servers just as efficiently with Autonomy SharePoint connectors.

11. Dr Lynch states at paragraph 293 (b) of his Witness Statement that "*As of 2008, when Microsoft acquired FAST (a company with competing search-tools to Autonomy), Microsoft and Autonomy became competitors. It was thus very unlikely that Autonomy would be able to achieve Microsoft certification for any of its products. As a result, if a customer wanted to index its cloud-based SharePoint system, Autonomy could only offer this functionality if it purchased a Microsoft-certified add-on like DiscoverEngine*". Microsoft did acquire FAST. However, this did not affect Autonomy's relationship with Microsoft. Microsoft was an enormous corporation compared to Autonomy. Microsoft never had a problem sharing its software to my knowledge. Much of Microsoft's software is available via open source (open source software is available for anyone to licence, for free). Microsoft's certification programme is also open to everyone. To obtain certification, a company simply follows the steps set out in the online certification programme. Given the above, I disagree with Dr Lynch's assertion that following Microsoft's acquisition of FAST it was "*very unlikely that Autonomy would be able to achieve Microsoft certification for any of its products*".

12. I also disagree with Dr Lynch's statement that "*As a result, if a customer wanted to index its cloud-based SharePoint system, Autonomy could only offer this functionality if it purchased a Microsoft-certified add-on like DiscoverEngine*"[2]. Autonomy did not need a "*Microsoft-certified add-on like DiscoverEngine*" to enable customers to index its cloud-based SharePoint system. Autonomy SharePoint connectors had this functionality.

13. At paragraph 296 of his Witness Statement, Dr Lynch states:"*[i]t made commercial sense to purchase the additional instances [of DiscoverEngine] because Autonomy had used up most of its prepaid instances, but still had customers interested in the functionality offered by the product*". I am highly sceptical that Autonomy used nearly 800 prepaid instances of DiscoverEngine within three months of purchasing those instances. I believe it would have taken many months, even years, for Autonomy to have used 800 instances of DiscoverEngine. In my opinion, the commercially reasonable thing to have done, had Autonomy had a need for DiscoverEngine (which it did not), would be for Autonomy to have entered into an agreement with DiscoverTech to purchase instances of DiscoverEngine on a pay as you go basis.

14. As I explained at paragraph 54 of Lucini 1, following my review of the DiscoverEngine software, I concluded that DiscoverEngine was comparable to Autonomy's in-house SharePoint connectors and Autonomy therefore had no use for DiscoverEngine. To the

---

[2] See paragraph 293 (b) of his Witness Statement.

HP-SEC-02930179

extent that DiscoverEngine offered any additional functionality, Autonomy could easily have added those functionalities to its SharePoint connectors.

I believe that the facts stated in this Supplemental Witness Statement are true.

*[signature]*

SIGNED

FERNANDO LUCINI GONZALEZ-PARDO

16th November 2018

DATED

HP-SEC-02930180

| | | |
|---|---|---|
| 1. | On behalf of | Claimants |
| 2. | Initials/Surname of witness | F Lucini |
| 3. | Statement No | 2 |
| 4. | Date | 16 November 2018 |

**Claim No. HC-2015-001324**

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**OF ENGLAND AND WALES**
**BUSINESS LIST (CHD)**

B E T W E E N:

(1) ACL NETHERLANDS B.V. (AS SUCCESSOR TO AUTONOMY CORPORATION LIMITED)
(2) HEWLETT-PACKARD VISION BV
(3) AUTONOMY SYSTEMS LIMITED
(4) HEWLETT-PACKARD ENTERPRISE NEW JERSEY, INC.

**Claimants**

-and-

(1) MICHAEL RICHARD LYNCH
(2) SUSHOVAN TAREQUE HUSSAIN

**Defendants**

---

**SUPPLEMENTAL WITNESS STATEMENT OF FERNANDO LUCINI GONZALEZ-PARDO**

---

Travers Smith LLP
10 Snow Hill
London  EC1A 2AL
Tel: 020-7295 3000
Fax: 020-7295 3500
Ref: TPR/AAK/JJB/SEL

HP-SEC-02930181

|   | |   |
|---|---|---|
| 1. | On behalf of | Claimants |
| 2. | Initials/Surname of witness | F Lucini |
| 3. | Statement No | 2 |
| 4. | Date | 16 November 2018 |

Claim No. HC-2015-001324

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS**
**OF ENGLAND AND WALES**
**BUSINESS LIST (ChD)**

B E T W E E N:

(1) ACL NETHERLANDS B.V. (AS SUCCESSOR TO AUTONOMY CORPORATION LIMITED)
(2) HEWLETT-PACKARD VISION BV
(3) AUTONOMY SYSTEMS LIMITED
(4) HEWLETT-PACKARD ENTERPRISE NEW JERSEY, INC.

**Claimants**

-and-

(1) MICHAEL RICHARD LYNCH
(2) SUSHOVAN TAREQUE HUSSAIN

**Defendants**

### INDEX OF EXHIBITS TO THE
### SUPPLEMENTAL WITNESS STATEMENT OF FERNANDO LUCINI GONZALEZ-PARDO

|   | Paragraph | Production ID |
|---|---|---|
| 1 | 8 | D004960956 |