Gary S. Lincenberg - State Bar No. 123058
    glincenberg@birdmarella.com
Ray S. Seilie - State Bar No. 277747
    rseilie@birdmarella.com
Michael C. Landman – State Bar No. 343327
    mlandman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Stephen Keith Chamberlain

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN<br><br>  Defendants. | CASE NO. 3:18-cr-00577-CRB<br><br>**Opposition to United States' Motion for Foreign Depositions under Rule 15 of the Federal Rules of Criminal Procedure**<br><br>Date:   November 1, 2023<br>Time:   1:30 p.m.<br>Place:  Courtroom 6<br><br>Assigned to Hon. Charles R. Breyer |

Defendant Stephen Chamberlain opposes the Government's motion to take foreign depositions of Marc Geall, David Toms, Fernando Lucini, Sean Blanchflower, Christopher Goodfellow, and Ian Black. The Government fails to set forth exceptional circumstances justifying the request and the Government fails to establish that it is in the interests of justice to order the requested depositions.

I.   DISCUSSION

   A.   Applicable Law

Under Rule 15 of the Federal Rules of Criminal Procedure, a party "may move that a prospective witness be deposed in order to preserve testimony for trial. The Court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a).[1] Whether to grant a Rule 15(a) motion is within the Court's "broad discretion," considering "the particular circumstances of [the] case to determine whether the exceptional circumstances requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (internal citation and quotation marks omitted).

Factors courts consider in deciding whether to grant a Rule 15 deposition include: (1) the unavailability of the witness at trial; (2) the good faith effort by the movant to obtain the witness's presence at trial; and (3) a demonstration by the movant that the expected testimony would be favorable and material. *United States v. Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir. 1995) (outlining factors); *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000) (outlining as additional factors the potential futility of a Rule 15 order in circumstances where the witness would not testify and the possibility that a Rule 15 order would unduly compromise the safety of the parties).

---

[1] Originally, Rule 15 allowed only defendants to depose witnesses to preserve their testimony for trial. The 1974 Amendment to Rule 15 amended the Rule to allow the Government to avail itself of the same procedures, to the extent exceptional circumstances exist and it is in the interests of justice to do so. *See* Fed. R. Crim. P. 15, Note of Advisory Committee on Rules—1974 Amendment. The Advisory Committee also notes that an important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice. *Id.*

### B.  Exceptional Circumstances Do Not Exist

#### 1.  The Government has not made a sufficient effort to obtain the witnesses' presence at trial

The Government does not outline the efforts by which it has attempted to secure the witnesses' presence at trial. Instead, the Government merely represents that the witnesses are presently unwilling to accept service of a trial subpoena. All of these witnesses have been known to the Government for nearly a decade. All but Ian Black testified in the Government's case-in-chief in *Hussain*. Mr. Black has voluntarily met with the Government. Yet the Government does not appear to have taken appropriate efforts to secure these witnesses' in-person appearance at trial. This weighs against a finding of exceptional circumstances.

#### 2.  The Government has not established that the testimony is material

As discussed in Dr. Lynch's concurrently-filed opposition, the Government's witnesses lack material testimony. Such testimony is either irrelevant or cumulative and the Government has not explained why it is not able to secure such testimony via a witness that it can compel to appear in-person at trial. As to Mr. Chamberlain, the lack of materiality of their testimony is even more pronounced. The only potential witness that appears to have any testimony bearing directly on the case against Mr. Chamberlain is Marc Geall. For the reasons set forth below, such testimony is immaterial as to Mr. Chamberlain.

##### a.  Marc Geall

The Government's proffer of testimony for Marc Geall states that he shared an office with Sushovan Hussain, which was located in London, U.K. Mot. at 2:10. Mr. Chamberlain did not sit in the London office and did not have much interaction with Mr. Geall. Declaration of Gary S. Lincenberg ¶ 2. The Government's only reference to interactions with Mr. Chamberlain relates to Mr. Geall's testimony that he "*would have* discussed [Autonomy's statement on a public investor bulletin board] with Sushovan [Hussain] and Steve Chamberlain." Mot. at 2:18-19 (emphasis added). As an initial matter, the proffered testimony is inadmissible as vague and lacks sufficient foundation. Mr. Geall's use of the phrase "would have" indicates that, even in 2018 when he testified in *United States v. Hussain*, he had no specific recollection of discussing the matter with

Mr. Chamberlain. More importantly, for reasons described below, the alleged false statement that he "would have" discussed with Mr. Chamberlain was not actually false.

Mr. Geall previously testified that he was responsible for publishing answers to questions on Autonomy's public investor bulletin board. Decl. of Lincenberg, Ex. 1 at 841:15-24. Mr. Geall testified that it "was **common practice** that, you know, all questions were reviewed **normally** by Steve Chamberlain and Sushovan [Hussain] . . . ." *Id.* 842:2-3 (emphasis added). One of those question was, "Do you do barter deals. If so, could you quantify them." *Id.* 842:6-8. The response was, "No, we do not do barter deals." *Id.* 842:11. Mr. Geall testified that he "would have discussed [this information] with Sushovan [Hussain] and Steve Chamberlain." *Id.* 842:13-14.

The Government fails to proffer any evidence that the statement, "No, we do not do barter deals," is false. Moreover, the Government fails to include the testimony of Mr. Geall regarding the definition of a barter deal, which undercuts any attempt by the Government to argue that the statement is false. Mr. Geall explained a barter deal to the jury:

> A barter deal tends to be a deal between two counterparties in the software industry. It could be, you know, effectively the swapping of products. So both would recognize revenues or potentially recognize revenues, but there wouldn't necessarily be any cash flow between them. Like a swap deal. Like a swap deal.

*Id.* 837:12-17. The Government has failed to proffer any evidence that Autonomy *did* any barter deals, *i.e.*, entered into any transaction where it recognized revenue on a sale when in reality it had only exchanged products with its customer and there was no cash flow between the parties. To the contrary, the evidence shows that there *was* cash flow between the parties in circumstances where Autonomy was purchasing something from its customer at or around the same time it was selling its product to that customer. *See, e.g.*, Decl. of Lincenberg, Ex. 2 at 2 (showing $9 million payment from Video Monitoring Service on July 30, 2009, which related to a deal concluded in Q2 2009, the same quarter in which Autonomy accurately reported to the market that it did not do barter deals). The statement that Autonomy did not do barter deals is factually accurate and Mr. Geall's testimony does not suggest otherwise. Mr. Geall's testimony offers no material evidence of Mr. Chamberlain's guilt.

### b. Remaining Witnesses

The Government's proffer of testimony for the remaining five witnesses makes no reference to Mr. Chamberlain and is not suggestive of his guilt. Accordingly, the Government has failed to establish any justification for Rule 15 depositions of its witnesses in the case as to Mr. Chamberlain.

### C. It Is Not In the Interests of Justice to Grant the Government's Request

Mr. Chamberlain takes a similar position to that of Dr. Lynch in arguing that it is not in the interests of justice to allow the Government to put on a substantial portion of its case-in-chief via foreign video deposition testimony. While Mr. Chamberlain is able to travel to any depositions that are ordered, and thus does not face Dr. Lynch's legitimate and important confrontation clause concerns, Mr. Chamberlain joins Dr. Lynch's argument that logistical and procedural hurdles associated with seven Government Rule 15 depositions in advance of trial would undermine the fairness of the proceedings.

Mr. Chamberlain also shares Dr. Lynch's concerns that the cumulative effect of the Government's request, including the sheer volume of testimony that it seeks to admit via foreign video deposition, undermines Mr. Chamberlain's Fifth Amendment due process right to a trial in which the Government calls live witnesses to testify before a live jury. Provided the Court grants his requests, Mr. Chamberlain is already in the unfortunate position of having to telegraph his defense during the Rule 15 depositions of Ms. Gustafsson, Ms. Harris, and Mr. Knight, all of whom are critical defense witnesses. No doubt, having to put on a defense case before a jury is even picked will pose tremendous challenges to Mr. Chamberlain's ability to defend himself. But Mr. Chamberlain is willing to take that risk in order to secure the critical testimony of those witnesses who, in part due to the lengthy delay in this case and some of their fear of traveling to the United States, are unwilling to attend in-person. Mr. Chamberlain's ability to tailor his defense to the Government's case-in-chief, in court and after a jury has been picked, should not be further hampered. Allowing the Government to depose these six witnesses, merely because the Government failed to properly secure their attendance and delayed in indicting Mr. Chamberlain to a time in which these witnesses were no longer available for trial, would do just that. The

Government has failed to show that it is in the interests of justice to take its six requested depositions.

## II. CONCLUSION

For the foregoing reasons, Mr. Chamberlain respectfully requests that the Court deny the Government's motion for foreign depositions under Rule 15.

DATED: October 13, 2023

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:    */s/ Gary S. Lincenberg*
     Gary S. Lincenberg
     Ray S. Seilie
     Michael C. Landman
     Attorneys for Defendant Stephen Keith Chamberlain