PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov
           Adam.Reeves@usdoj.gov
           Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-577 CRB |
| Plaintiff, | THE UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT SEVENTEEN |
| v. | |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | Date: November 1, 2023<br>Time: 1:30 p.m.<br>Court: Hon. Charles R. Breyer<br>Courtroom 6, 17th Floor |
| Defendants. | |

**INTRODUCTION**

The United States hereby responds to the Defendant Lynch's Motion to Dismiss Count Seventeen dated September 29, 2023 (Document 219) which defendant Chamberlain joined (Document 222). Count Seventeen of the Superseding Indictment charges a conspiracy to cover-up and conceal the underlying fraud at Autonomy after the 2011 acquisition by Hewlett-Packard Company ("HP") for approximately $11 billion. Document 21 at ¶ 33.

Like many other cases, the defendants first conspired to defraud (Count One) and then separately conspired to cover-up and conceal their fraud (Count Seventeen).  Like many other conspiracies, the defendants resorted to multiple federal offenses to carry out their cover-up.  Initially, the defendants allegedly agreed to falsify the records and circumvent the internal controls of a publicly traded company (HP) in violation of 15 U.S.C. § 78m.  Then, after they left or were terminated for Autonomy's underperformance as a unit of HP, the conspiracy expanded to lies about the truth of Autonomy's financial performance with an intent to obstruct the federal investigations that began in the United States as soon as the fraud was revealed in or about November 2012 in violation 18 U.S.C. § 1505.

Count Seventeen is well pled.  It contains seventeen (17) detailed overt acts.  Document 21 at ¶ 34(a)-(q).  A common-sense reading of Count Seventeen reveals a plain, concise, and definite written statement of the essential facts sufficient for the defendants to prepare a defense at trial and, if necessary, invoke the Double Jeopardy Clause to prevent a separate prosecution brought based on the same misconduct.  Fed. R. Crim P. 7(c)(1).  It need do no more.

The sufficiency of Count Seventeen is augmented by the government's Voluntary Bill of Particulars which adds: "Count Seventeen charges a conspiracy to conceal from HP and eventually the government, and otherwise make false and misleading statements about, the truth of Autonomy's financial performance before and after the 2011 acquisition by HP." Document 230 at 5-6.

For these reasons, the defendants' motion to dismiss Count Seventeen should be denied.

## I. RELEVANT FACTS

### A. The Fraud at Autonomy (Counts One through Sixteen)

From 2009-2011, for more than two and a half years, the defendants are charged with systematically falsifying Autonomy's publicly filed financial statements.  Quarter after quarter, the defendants, Chief Executive Officer Michael Lynch and Vice President of Finance Stephen Chamberlain, fraudulently inflated Autonomy's revenue and income by approximately 20-30% to make Autonomy shares more attractive.  *See* ECF 413-1 (government summary chart titled "Balance Sheet of Fraud"); ECF 413-2 (government summary chart titled "Q1 2009 to Q2 2011 Reported Revenues"); Ex. 2749.  The defendants employed virtually every accounting trick in the book – backdating, channel stuffing, roundtrip transactions, undisclosed side agreements, feigned delivery, and massive hidden

1  hardware sales – to create the false appearance that Autonomy was growing when, in fact, it was really
2  flat-lining, like so many other technology companies in the wake of the 2008 Financial Crisis.
3        Greed and hubris motivated the defendants to pretend Autonomy thrived when, in fact, it
4  stagnated like other companies in the tech sector in 2009-2011.  Testimony by market analysts
5  demonstrates that Autonomy's (false) claims of growth inflated its stock price while taking advantage of
6  other competitors in the marketplace.  By their fraud, the defendants deceived Autonomy's shareholders,
7  its regulator, analysts that covered the company, and ultimately, HP, which bought Autonomy for $11.7
8  billion in October 2011.

      **B.**    **The Cover-Up of the Fraud at Autonomy (Count Seventeen)**

10        For their fraud to succeed, however, the defendants had to cover it up after-the-fact.  Indeed,
11  their cover-up began almost immediately in October 2011 in Autonomy's Q3 2011 – as HP's acquisition
12  of Autonomy was being consummated – when, in its last quarter as an independent company, Autonomy
13  sold approximately $30 million in so-called "low margin" hardware to pad its revenues.  These sales – at
14  a loss – were necessary to perpetuate the false narrative that Autonomy could compete effectively on its
15  own and cover-up its reliance on accounting fraud in the past and meet its projected revenue targets at
16  HP.  Document 230 (Voluntary Bill of Particulars) at 6.
17        From about October 2011 through May 2012, for two quarters, defendant Lynch ran Autonomy
18  as a unit of HP.  Once in a major public company with appropriate internal controls and accounting
19  standards, the defendants and Autonomy struggled.  They continued to have trouble meeting revenue
20  targets and were unable to resort to the accounting gimmicks they had (fraudulently) used in the past.
21  Not surprisingly, Autonomy underperformed by a wide margin.  Still, in an effort cover-up their past
22  fraud by measuring up as a unit of HP, the defendants conspired to falsely book approximately $5.5
23  million in revenue for the period ending January 31, 2012.  *See* Count Seventeen at ¶ 34(e).
24        In May 2012, by the end of its second quarter at HP, Autonomy's substantial underperformance
25  became dire.  *See, e.g.,* Count Seventeen at ¶ 34(f) ("Hussain instructed an HP executive to falsify a
26  revenue forecast").  Defendant Lynch was terminated.  Defendant Chamberlain left HP in this period as
27  did other senior members of Autonomy including co-defendant Sushovan Hussain.
28        In this time, co-conspirators began to destroy documents.  For example, one HP IT professional

U.S. RESPONSE TO MOTION TO DISMISS      3
18-CR-577 CRB

was asked by a co-conspirator to "wipe" defendant Chamberlain's laptop, a request the IT professional considered "suspicious." US_FBI_E-00028115. Count Seventeen at ¶ 34(h). Before Lynch was terminated, another HP employee saw "two lorries [*i.e.,* trucks] in the back of the Autonomy building in Cambridge that were there shredding hard drives." US_FBI_E-00028134. Count Seventeen at ¶ 34(g). As charged, the destruction of records was part of a "cover up" to "conceal" the defendants' fraud. Count Seventeen at ¶ 33.

In or about June 2012, HP began the arduous process of reviewing Autonomy's books and records (now belonging to HP) to reassess and eventually restate Autonomy's true financial performance in 2009-2011. *See, e.g.,* Exhibit 2749 (summary charts) (Document 230 at Attachment A). Aspects of the defendants' fraud were soon revealed. HP quickly initiated an internal investigation by outside counsel sometime in the summer of 2012. Importantly, on or about June 29, 2012, defendant Lynch met with a senior executive from HP and made false and misleading statements about Autonomy's historical financial performance. US_FBI_E-00027510. In that same meeting, defendant Lynch threatened to "destroy" HP in the British press if HP continued its investigation of Autonomy's accounting irregularities. USAO 00003242. By this time, defendant Lynch was alerted to the likelihood of litigation with HP and the possibility of a criminal investigation, which is exactly what happened five (5) months later.

On or about November 20, 2012, HP announced an $8.8 billion write-down relating to its acquisition of Autonomy and publicly accused Autonomy of fraud. *See* Document 51 (Declaration of AUSA Adam A. Reeves dated May 3, 2017) at Ex. E. By early November 2012, HP's outside counsel had already interviewed nine (9) relevant persons as part of its internal investigation relating to Autonomy. Document 51 at ¶ 7. On November 16, 2012, approximately four (4) days before HP's announcement, the United States Securities and Exchange (SEC) opened an investigation into Autonomy. Document 51 at ¶ 8. On November 21, 2012, the day after the announcement, the United States Attorney's Office opened an investigation into Autonomy. Document 51 at ¶ 10.

On December 27, 2012, in its SEC Form 10K for FY 2012, HP publicly announced that "HP has provided information to the U.K. Serious Fraud Office, the U.S. Department of Justice and the SEC related to the accounting improprieties, disclosure failures and misrepresentations at Autonomy that

occurred prior to and in connection with HP's acquisition of Autonomy."

From late 2012 through 2018, as charged in Count Seventeen, defendant Lynch carried out his threat to try to "destroy" HP in the British press and engaged in a running media battle with HP. To do that, defendant Lynch "refused to return books and records and other property belonging to HP." Count Seventeen at ¶ 34(m). When those stolen documents were not enough, defendant Lynch enlisted the help of co-conspirators, one of whom still worked at HP, to steal thousands more documents from HP relating to Autonomy in violation of HP's policies and internal controls. Count Seventeen at ¶ 34(n). The theft of these HP records continued through at least March 2014. VC00441-592. Thereafter, defendant Lynch and others stored the stolen documents and used them over time to perpetrate a false and misleading story in media accounts about Autonomy's financial performance. A vehicle for the dissemination of this false and misleading information was a website controlled by defendant Lynch and others known as AutonomyAccounts.org. In or about December 2014, AutonomyAccounts.org made claims about an "internal HP document" allegedly leaked to the *Financial Times* of London. On information and belief, AutonomyAccounts.org is live today. Defendant Lynch used this media campaign to cover-up the truth about Autonomy's financial performance of Autonomy, influence witnesses, and otherwise impede and obstruct the federal investigations he knew were underway. Count Seventeen at ¶ 33.[1]

## II.    LEGAL STANDARD

"The indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim P. 7(c)(1). *See generally*, 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at 334-343. "An indictment need only contain a charge so that the defendant may prepare a defense and invoke the Double Jeopardy Clause if a separate prosecution is brought based on the same conduct." *Id*. at 334-335, citing *United States v. Bonds*, 730 F.3d 890, 898 (9th Cir. 2013) (indictment for obstruction of justice sufficient where the indictment did not list specific statements by defendant,

---

[1] In the Voluntary Bill of Particulars, the government narrowed the allegations in Count Seventeen and gave notice to the defendants that "[it] does not intend to adduce evidence relating to the allegations in the Superseding Indictment at Paragraph 33(c) (alleging the payment of "hush money" etc.) and Paragraph 33(e) (alleging money "laundering" etc.)" in its case-in-chief. Document 230 at 6.

but jury instructions did list specific, allegedly, false statements). "An indictment is not sufficient if it fails to state a material element of the offense." 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at 335-336. An indictment is sufficient when, "read as a whole," it delineates the elements of the crime. *United States v. Morlan*, 756 f.2d 1442, 1445-46 (9th Cir. 1985). "In determining whether an indictment sufficiently informs the defendant of the offense charged, courts give the indictment a common-sense construction." 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at 336, citing *United States v. Awad*, 551 F.3d 930, 936 (9th Cir. 2009) (indictment alleging extortion sufficient despite failure to allege willfulness because common-sense reading implied defendant acted with a bad purpose). Generally, an indictment will be upheld "even if it contains a technical error or omission." 44 Geo. L.J. Ann. Rev. Crim. Proc. (2015) at 337; *see also United States v. Forrester*, 616 F.3d 929, 940-41 (9th Cir. 2010) (indictment for conspiracy sufficient under 7(c)(1) despite failure to allege beginning date for conspiracy).

### III.     ARGUMENT

#### A.     Count Seventeen Is Well Pled

Count Seventeen is well pled. It properly charges a single conspiracy to cover-up the underlying fraud carried out in multiple ways. Read together with the overt acts using a common-sense construction, it charges that, in 2011-2012, the defendants worked together to impede HP's detection of Autonomy's inability to compete as a unit of HP without using the fraudulent accounting schemes Autonomy used before the acquisition. And then, around the time the fraud was detected in mid-2012, the conspiracy expanded to the destruction of evidence and the campaign of lies to further conceal the truth of Autonomy's financial performance, impede HP's investigation of the multiple-billion-dollar fraud, and obstruct the federal criminal and regulatory investigations that followed.

#### B.     Count Seventeen Is Not Duplicitous

The defendants contend that "[the] Court should dismiss Count Seventeen because it alleges multiple conspiracies, not a single conspiracy." Document 219 at 10. Indeed, they purport to break Count Seventeen into four alleged schemes. *Id*. at 4. This elaborately wrought argument defies a plain reading of the language of Count Seventeen which alleges a conspiracy "to cover up, conceal, influence witnesses [], and otherwise obstruct investigations of the scheme to defraud" alleged in Counts One through Sixteen. Count Seventeen at ¶ 33. In this way, Count Seventeen alleges a straightforward

conspiracy to cover-up the underlying fraud, not "the books and records scheme," "the data scheme," or any of the other artificial labels the defendants claim. Document 219 at 4.[2]

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however, diverse its objects." *Braverman v. United States*, 63 S. Ct. 99, 102 (1942) (reversing a conviction for multiple conspiracies where the evidence supported one conspiracy and remanding for resentencing). "An indictment is not duplicitous merely because it charges a conspiracy to commit more than one offense." *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996) (affirming the jury could properly convict on one conspiracy with multiple object crimes "as charged"), citing *United States v. Begay,* 42 F.3d 486, 501 (9th Cir.1994). "A single conspiracy can include subgroups or subagreements and the evidence does not have to exclude every hypothesis other than that of a single conspiracy." *Id.*, citing *United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir.1987).

To support their claim of duplicity, the defendants rely repeatedly on a 1991 district court case from Hawaii, *United States v. Hardy*, 762 F. Supp. 1403 (D. Haw. 1991). In *Hardy*, the court found the conspiracy count duplicitous because the defendant agreed to structure a transaction with one set of co-conspirators in 1989 and agreed with his brother to commit money laundering a year and a half later. *Hardy*, 762 F. Supp. At 1408. Those are not our facts.

In this case, defendant Lynch agreed with co-defendants Chamberlain and Hussain and a select group of closely associated co-conspirators to cover-up what really happened at Autonomy. Whether it was falsifying documents, destroying documents, or carrying out a campaign of lies, it was all in furtherance of the same agreement to cover-up and conceal the underlying fraud.

**C.  Count Seventeen Is Not Otherwise Defective**

The defendants also claim that Count Seventeen is defective because it did not allege the words "pending proceeding." Document 219 at 20. In fact, Count Seventeen tracks the language of 18 U.S.C.

---

[2] The Voluntary Bill of Particulars narrowed the allegations in Count Seventeen to exclude, for example, money laundering evidence in the government's case-in-chief. Document 230 at 6. Some aspects of the defendants' duplicity analysis are therefore now moot. *See, e.g.,* Document 219 at 18-19 ("Count Seventeen attempts to unify Dr. Lynch's personal banking transactions … with Mr. Chamberlain's post-acquisition financial reporting").

§ 1505 and alleges a conspiracy to "obstruct[] proceedings before departments, agencies, and committees" of the United States. Count Seventeen at ¶ 32. Read as a whole and given its common-sense meaning, this is more than enough. Even if it were not, the language of the count plainly implies an obstruction against a pending proceeding in the United States, which is enough. *United States v. Fleming*, 215 F.3d 930, 935 (9th Cir. 2000) (indictment for attempt to influence, intimidate, and impede federal judge sufficient despite omission of "pending proceeding" language because element implicit in the charge).

Finally, the defendants claim that the count does not allege a pending proceeding "because there was none." This is simply incorrect. On November 16, 2012, the SEC opened an investigation into Autonomy. Document 51 at ¶ 8. On November 21, 2012, the United States Attorney's Office opened a criminal investigation into Autonomy. Document 51 at ¶ 10. And on December 27, 2012, when HP filed its 2012 SEC form 10K, the public – and by reasonable inference the defendants – knew about the criminal and regulatory investigations in the United States. Indeed, it is reasonable to infer that defendant Lynch's campaign of lies starting in late 2012 was fueled by an intent to impede and obstruct the threat of civil litigation with HP and the criminal and regulatory investigations in the United States. As alleged in the count, defendant Lynch and his co-conspirators used the stolen HP documents to carry out their long-running conspiracy to cover-up the truth of what really happened at Autonomy.

Count Seventeen properly charges one agreement among the co-conspirators to cover-up and conceal the accounting fraud at Autonomy that was carried out initially in violation of 15 U.S.C. § 78m(b) (false books and records) and later 18 U.S.C. § 1505 (obstruction) as fully alleged in the count. It is not defective in any way.

//
//
//
//
//
//
//
//

# CONCLUSION

In compliance with Rule 7, Count Seventeen sets forth a plain, concise, and definite written statement alleging a conspiracy "to cover up, conceal, influence witnesses [], and otherwise obstruct investigations of the scheme to defraud" alleged in Counts One through Sixteen. Count Seventeen at ¶ 33. It is not ornate or multi-faceted as the defendants contend. This case is like other cases in which defendants first conspire to defraud and then separately conspire to cover-up and conceal their fraud. The indictment sets a plain target for the government to prove and the defendants to defend. It need do no more. For these reasons, the Court should deny the defendants' motion to dismiss Count Seventeen.

DATED: October 13, 2023                              Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

/s/ Adam A. Reeves
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
Assistant United States Attorneys