Gary S. Lincenberg - State Bar No. 123058
  glincenberg@birdmarella.com
Ray S. Seilie - State Bar No. 277747
  rseilie@birdmarella.com
Michael C. Landman – State Bar No. 343327
  mlandman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Stephen Keith Chamberlain

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN<br><br>  Defendants. | CASE NO. 3:18-cr-00577-CRB<br><br>**Defendant Stephen Chamberlain's Reply in Further Support of His Motions to Dismiss Counts One through Fifteen and Count Seventeen as Time-Barred and for Preindictment Delay**<br><br>Date:   November 29, 2023<br>Time:   1:30 p.m.<br>Place:  Courtroom 6<br><br>Assigned to Hon. Charles R. Breyer |

3895704.4

Case No. 3:18-cr-00577-CRB

CHAMBERLAIN'S REPLY ISO MOTIONS TO DISMISS COUNTS 1 THROUGH 15 AND 17

**TABLE OF CONTENTS**

Page

I.  COUNTS ONE THROUGH FIFTEEN OF THE SUPERSEDING INDICTMENT ARE TIME-BARRED ................................................................................................ 3

    A.  Count Two Is Time-Barred ............................................................................ 3

    B.  Counts Three through Seven Are Time-Barred ............................................. 3

    C.  Counts One through Fifteen Are Time-Barred .............................................. 5

II.  COUNT SEVENTEEN SHOULD BE DISMISSED ................................................. 7

III.  COUNTS ONE THROUGH FIFTEEN SHOULD BE DISMISSED FOR PREINDICTMENT DELAY ....................................................................................... 8

IV.  CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Beardslee*,
    197 F.3d 378 (9th Cir. 1999) .................................................................................................. 4

*United States v. Bogucki*,
    316 F. Supp. 3d 1177 (N.D. Cal. 2018) ............................................................................. 5, 7

*United States v. DeGeorge*,
    380 F.3d 1203 (9th Cir. 2004) ........................................................................................ 1, 4, 5

*United States v. Doe*,
    149 F.3d 945 (9th Cir. 1998) .................................................................................................. 8

*United States v. Garlick*,
    240 F.3d 789 (9th Cir. 2001) .................................................................................................. 4

*United States v. Greenstein*,
    No. CR08-0296 RSM, 2010 WL 2217805 (W.D. Wash. June 1, 2010) ................................. 4

*United States v. Lovasco*,
    431 U.S. 783 (1977) ............................................................................................................... 9

*United States v. Meador*,
    138 F.3d 986 (5th Cir. 1998) .................................................................................................. 5

*United States v. Neill*,
    952 F. Supp. 831 (D.D.C. 1996) ............................................................................................ 4

**Statutes**

15 U.S.C. § 78m ............................................................................................................................ 7

18 U.S.C. ....................................................................................................................................... 1

18 U.S.C. § 3292 .............................................................................................................. 1, 2, 4, 5

**Other Authorities**

Sixth Amendment .......................................................................................................................... 8

Rule 15 .......................................................................................................................................... 8

The Government's opposition fails to articulate a legitimate investigative reason it chose to wait over six years to indict Stephen Chamberlain, two years more than the time it took to indict his immediate superior Sushovan Hussain. Nor does it attempt to explain why it waited years to propound foreign investigative requests ("MLAT requests") for evidence that it would have been aware of at the beginning of the investigation, namely: (i) documents confirming moneys received from HP's acquisition of Autonomy (which at most only corroborated information the Government already had and which no prospective defendant was likely to dispute); and (ii) materials provided to HP during the due diligence process in 2011 (to which it already had access from HP). Ignoring all of this, the Government instead argues that the superficial relevance of the requested materials to Mr. Chamberlain automatically entitles them to a three-year extension of all statutes of limitations.

The Government's argument is at odds with the Ninth Circuit's admonition that district courts "retain sufficient oversight powers to prevent any abuse of [18 U.S.C.] § 3292 by the government," and that the statute "is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option." *United States v. DeGeorge*, 380 F.3d 1203, 1214 (9th Cir. 2004) (quoting *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998)). Here, the unexplained silence as to the delay from not indicting Chamberlain two years earlier (with Hussain) justifies dismissal of Counts One through Fifteen or, at a minimum, an order for discovery into the Government's reasons for propounding MLAT requests when it did.

*First*, Counts Two through Seven should be dismissed because, as a straightforward matter of statutory interpretation, 18 U.S.C. § 3292 did not extend the limitations periods for the offenses alleged in those counts. Counts One through Fifteen should also be dismissed because the Government's reasons for and timing of the MLAT requests were pretextual and improper, and the resulting Tolling Orders should therefore be overturned. If the Government's position on the Tolling Orders is accepted by the Court, Section 3292 would, for all practical purposes, be a *de facto* three-year extension for statutes of limitations in any case involving foreign evidence. The Government would simply need to hold back some foreign evidence requests until it needed to extend a limitations period and then issue new ones whenever the earlier ones were closed out by

the responding entity. Additionally, there would be no way to review the Government's request for a Tolling Order for pretext, and courts would have no meaningful way to exercise oversight over abuse of the statute. At a minimum, the Court should order discovery into the Government's reasons for waiting years into its investigation, shortly before the statute of limitations was going to expire, in order to seek evidence that it already had or could reasonably obtain by other means.

*Second*, for the reasons set forth in Dr. Lynch's motion, Count Seventeen should be dismissed as to both defendants. The only timely object of the conspiracy (witness tampering) has been abandoned by the Government in its Bill of Particulars. In any event, it bears no relation to the allegations against Mr. Chamberlain and should be dismissed as to him.

*Third*, even if the Court concludes that the Government is technically compliant with the requirements of Section 3292, it should still dismiss Counts One through Fifteen on due process grounds due to the lengthy and prejudicial preindictment delay caused by the Government's waiting for the outcome of *United States v. Hussain*. Counts One through Fifteen are nearly identical to the ones it brought against Mr. Hussain. The Government's opposition sets forth no legitimate investigative reason for the delay. Instead, the opposition focuses on prejudice. In so doing, the Government overlooks the non-speculative prejudice identified by Mr. Chamberlain in his motion, including the fact that the passage of time has limited his access to a favorable defense witness (Poppy Gustafsson) and has caused him to have to cross-examine Mr. Stephan and potentially other Government witnesses *before* opening statements and final disclosure of the Government's exhibit list and witness list. Moreover, that important testimony will be taken in a conference room or foreign court and played via spliced and disjointed recording to a jury. In the face of the clear prejudice to Mr. Chamberlain and no legitimate reason for the lengthy delay, dismissal on due process grounds is warranted.

The Court should grant Mr. Chamberlain's motion and dismiss Counts One through Fifteen and Seventeen. At a minimum, the Court should permit discovery regarding the Government's reasons for propounding the two foreign evidence requests to the UK in 2016 and 2017 and set an evidentiary hearing to determine whether any of the professed bases for tolling was pretextual.

## I. COUNTS ONE THROUGH FIFTEEN OF THE SUPERSEDING INDICTMENT ARE TIME-BARRED

### A. Count Two Is Time-Barred

Mr. Chamberlain joins in and incorporates by reference Dr. Lynch's reply in support of its motion to dismiss Count Two as time-barred.

### B. Counts Three through Seven Are Time-Barred

Counts Three through Seven are time-barred for substantially the same reasons as Count Two, namely that the Tolling Orders on which the Government must rely do not relate to those counts. Without MLAT tolling, Counts Three through Seven would expire as follows:

| Count | Beginning of Limitations Period | Expiration Without Tolling |
| --- | --- | --- |
| 3 | Feb. 1, 2011 | Feb. 1, 2016 |
| 4 | Feb. 3, 2011 | Feb. 3, 2016 |
| 5 | Mar. 4, 2011 | Mar. 4, 2016 |
| 6 | Apr. 4, 2011 | Apr. 4, 2016 |
| 7 | Apr. 21, 2011 | Apr. 21, 2016 |

Even if the Court were to assume that the first Tolling Order ("TO #1") operated to suspend the statute of limitations as to such counts, Counts Three through Seven should be dismissed because the second Tolling Order ("TO #2") bears no relation to them. The Government argues that TO #2 applies to these counts because it relates to an MLAT request (referred to as "UK Request 1") that "sought records evidencing receipt by Lynch, Chamberlain, and Hussain of money and property through the scheme to defraud." Gov. Opp'n at 15:14-15.[1]

---

[1] The Government argues that the records produced by Capita showed that Mr. Chamberlain "received an additional £2,515,728 through Autonomy on October 18, 2011." Gov. Opp'n at 6:15-16. That is not accurate. Those records merely reflect the amount of cash that HP had to pay to Autonomy in exchange for Mr. Chamberlain's stock options. *Id.*, Ex. 13 at 4 ("Amount of cash consideration issued"). To obtain the benefit of those stock options, Mr. Chamberlain also had to pay the exercise price. The actual proceeds of the exercise of those stock options are reflected in Mr. Chamberlain's bank records, also attached to the Government's opposition. *Id.*, Ex. 22 at 4 (£466,822.35). A review of Mr. Chamberlain's paystubs, provided by the Government, provides a clean summary of the gross amount that Mr. Chamberlain received as a result of HP's acquisition.

The Government's opposition fails to cite any authority that it can toll the statute of limitations to a substantive wire fraud offense based on an MLAT request related to events that occurred *after* that offense was complete. Each use of the wires under the wire fraud statute constitutes a separate offense and the statute of limitations for each offense runs from the date of the wire. *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001); *United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999); *United States v. Greenstein*, No. CR08-0296 RSM, 2010 WL 2217805, at *2 (W.D. Wash. June 1, 2010). Counts Three through Seven relate to wires sent in February and April 2011, which are alleged to be in furtherance of a scheme to defraud that began in 2009. The alleged wire fraud for each count is complete upon the transmission of the relevant wire. *Garlick*, 240 F.3d at 792. The latest of the counts, Count Seven, was complete as of April 21, 2011. UK Request 1 sought records related to HP's acquisition in October 2011, over five months *after* the crimes alleged in Counts Three through Seven were complete. Tolling the statute of limitations for theses counts is not consistent with Section 3292, which requires that the evidence be related to the particular offense at issue. *See United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004); *United States v. Neill*, 952 F. Supp. 831, 833 n.2 (D.D.C. 1996).

Because TO #2 does not operate to suspend the statute of limitations for Counts Three through Seven, they expired, at the latest, on the following dates:

---

Declaration of Gary S. Lincenberg ¶ 4, Ex. 1. Such records, which were in the Government's possession long-before it requested records from Capita Partners, show that the total gross amount Mr. Chamberlain received was approximately £1 million. This amount is consistent with the information the Government received via letter from HP on October 15, 2015. *Id.* ¶ 5, Ex. 2 at 12. This is less than half the amount stated in the Government's opposition. Gov. Opp'n at 6:15-16. The Government's error also appears in the superseding indictment. ECF No. 21 ¶ 12 ("CHAMBERLAIN received approximately $4 million").

CHAMBERLAIN'S REPLY ISO MOTIONS TO DISMISS COUNTS 1 THROUGH 15 AND 17

| Count | Date | Base SOL (5 Years) | With Tolling Order 1 (289 Days) | With Tolling Order 1 *and* Tolling Agreement (289+54 Days) |
|---|---|---|---|---|
| 3 | 2/1/2011 | 2/1/2016 | 11/16/2016 | 1/9/2017 |
| 4 | 2/3/2011 | 2/3/2016 | 11/18/2016 | 1/11/2017 |
| 5 | 3/4/2011 | 3/4/2016 | 12/18/2016 | 2/10/2017 |
| 6 | 4/4/2011 | 4/4/2016 | 1/18/2017 | 3/13/2017 |
| 7 | 4/21/2011 | 4/21/2016 | 2/4/2017 | 3/30/2017 |

The third Tolling Order ("TO #3") is irrelevant to Counts Three through Seven because the statute of limitations expired on these counts before May 1, 2017, the effective date of TO #3. Accordingly, Counts Three through Seven should be dismissed.

### C. Counts One through Fifteen Are Time-Barred

Even if the Tolling Orders operated to toll the applicable statute of limitations for Counts One through Fifteen, the Court should dismiss these counts because the MLAT requests underlying the Tolling Orders were made for improper purposes. The Government argues that the "only relevant inquiry is whether the statutory elements of Section 3292 are met." Gov. Opp'n at 16:20-21. Not true. *See United States v. Bogucki*, 316 F. Supp. 3d 1177, 1183 (N.D. Cal. 2018) (acknowledging the need in some circumstances to probe the government's "true reasons" for obtaining a Tolling Order). Section 3292 "is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option." *Meador*, 138 F.3d at 994. The Court must exercise its oversight powers to prevent any abuse of Section 3292. *United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004).

For the reasons stated in Dr. Lynch's concurrently-filed reply, and for additional reasons stated below, the timing of the Government's MLAT requests warrants judicial oversight. As Dr. Lynch's motion notes, UK Request 1, which forms the basis for TO #2, came less than a week prior to the expiration of the statute of limitations for Counts Three and Four. It also came shortly

before the expiration of the statute of limitations for Counts Five through Seven. *In the MLAT supporting TO #2, the Government sought evidence that they either already had or could have reasonably obtained from domestic sources.* Decl. of Lincenberg ¶ 5, Ex. 2 (showing HP had the information the Government requested from Capita Partners and was willing to assist in procuring any additional information that the Government requested). The Government correctly notes that it is not limited in its ability to request corroborating evidence from entities located abroad. However, the Government's response does not explain why it waited nearly four years into its investigation, days before multiple statutes of limitations were set to expire, to seek what it now refers to as "highly relevant" evidence. Gov. Opp'n at 16:25-26. The circumstances of the request, without the Government's reasons for the timing of such request, provide a strong inference that it was pretextual.

Given the history of the Government's interactions with Mr. Chamberlain, there is a strong inference that the Government's decision to indict Mr. Chamberlain was based on its successful prosecution of Mr. Hussain. The use of MLAT requests to toll the applicable statute of limitations offered the Government the strategic benefit of waiting to charge Mr. Chamberlain after it saw the outcome of its prosecution of Mr. Hussain. In 2016, the Government and Mr. Chamberlain, through counsel, were engaged in preindictment discussions. Declaration of Gary S. Lincenberg ¶ 2. During those discussions, which included a presentation by Mr. Chamberlain's counsel to the Government and a tolling agreement that gave the Government time to consider Mr. Chamberlain's arguments made therein, the Government did not suggest that Mr. Chamberlain would be charged separately from Mr. Hussain. *Id.* Shortly after Mr. Hussain's indictment, which occurred in November 2016, the Government ceased engaging in pre-indictment discussions with Mr. Chamberlain. *Id.* ¶ 3. The Government did not re-initiate pre-indictment discussions with Mr. Chamberlain until June 2018, two months after Mr. Hussain was found guilty. *Id.* The Government's decision not to indict Mr. Chamberlain with Mr. Hussain and their resumption of pre-indictment discussions with Mr. Chamberlain two months after Mr. Hussain was found guilty suggests that the Tolling Orders were used as a strategic tool to evaluate the likelihood of success of a prosecution against Mr. Chamberlain; not, as the Government argues, to obtain valuable

evidence.

The fact that the ultimate indictment against Mr. Chamberlain was nearly identical to that of Mr. Hussain adds further support to the pretextual nature of MLAT requests. It shows that the Government's requests did not yield new evidence that made a difference in its indictment decision. That there is no allegation in the indictment based on evidence the Government received from the MLAT supports the inference that the MLAT was not for the purpose of gathering evidence to indict Mr. Chamberlain.[2]

To avoid an inquiry into its underlying motivations, the Government cites out-of-circuit case law suggesting that a prosecutor may submit pretextual MLAT requests to obtain Tolling Orders designed to forestall the expiration of the statute of limitations. Gov. Opp'n at 21:5-12. As the Court recognized in *Bogucki*, that is not the law. The Court should dismiss Counts One through Fifteen on the basis that TOs ## 2 and 3 were granted based on pretextual reasons. At a minimum, the Court should order discovery into the motivations of the Government in belatedly seeking evidence abroad via the MLAT process.

## II. COUNT SEVENTEEN SHOULD BE DISMISSED

Mr. Chamberlain joins in and incorporates by reference Dr. Lynch's reply in support of its motion to dismiss Count Seventeen as untimely. In any event, Count Seventeen should be dismissed in its entirety as to him because the statute of limitations for the only object of the conspiracy in which he is charged with participating, a circumvention of internal accounting controls in violation of 15 U.S.C. § 78m, expired in May 2017, five years from the last overt act the Government alleges that relates to this object. ECF No. 21 ¶ 34(f).

The last act in which Mr. Chamberlain allegedly participated occurred on February 3, 2012. By mid-2012, Mr. Chamberlain, Mr. Lynch, and Mr. Hussain had all left HP. It is not alleged, nor is it even plausible, that a conspiracy to violate the *internal* accounting controls at HP

---

[2]  In many ways, the argument Mr. Chamberlain makes is akin to the arguments that Government made in *Hussain* and is likely to make in this case, namely that the fact that Autonomy never used a product was suggestive that its purported reasons for purchasing the product were pretextual.

continued beyond the dates that any alleged co-conspirator had access to such controls. As no such conspiracy could have existed beyond mid-2012 *at the latest*, the statute of limitations as to Mr. Chamberlain expired no later than mid-2017. Count 17 should be dismissed in its entirety as to him.

## III. COUNTS ONE THROUGH FIFTEEN SHOULD BE DISMISSED FOR PREINDICTMENT DELAY

If not dismissed for failure to comply with the applicable statute of limitations, Counts One through Fifteen should be dismissed for prejudicial preindictment delay that, when balanced against the Government's reasons for the delay, offends the fundamental conceptions of justice. The Government's opposition overstates Mr. Chamberlain's burden of showing non-speculative prejudice in a preindictment delay motion. Gov. Opp'n at 24:3 ("Defendants fail to meet this heavy burden."). Mr. Chamberlain has met his burden of showing that he has "suffered actual, non-speculative prejudice from the delay." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998). As discussed in his motion, Mr. Chamberlain has established non-speculative prejudice in multiple respects. The non-speculative prejudice associated with the Government's need to depose six of its witnesses via Rule 15 depositions warrants further highlighting. In its Rule 15 motion, the Government identifies six witnesses that it would like to depose in lieu of testifying at trial. Of those witnesses, five of them were willing—and did—testify at trial in the case against Mr. Hussain. Had the Government made a decision to indict Mr. Chamberlain along with Mr. Hussain, Mr. Chamberlain would have had the opportunity to cross-examine these witnesses live, in front of a jury of his peers, as it is his Sixth Amendment right to do so. Now, as a result of the Government's delay, he can no longer do so. There is nothing non-speculative about the prejudice associated with not being able to cross-examine witnesses live, in front of the jury, during the Government's case-in-chief and not in a conference room months before a jury is picked.

Having established non-speculative prejudice, that prejudice is then balanced against the prosecution's reasons for it to determine whether the delay "offends those fundamental conceptions of justice." *Doe*, 149 F.3d at 948. The Government has not offered any reason for the delay. As discussed above, in the absence of any evidence related to the reasons for the delay,

circumstances suggest the Government delayed indicting Mr. Chamberlain to obtain the strategic benefit of waiting to see how the prosecution of Mr. Hussain played out. The Court must then weigh the reason for the delay against the prejudice caused by such delay.

As discussed in Mr. Chamberlain's motion, he has suffered significant prejudice. By the time he goes to trial, it will be more than 12 years from the last alleged act that he committed relevant to Counts One through Fifteen. A substantial portion of this time was due to prejudicial delay caused by the Government's decision to wait over six years to indict him—a decision that they were only able to make due to their use of MLAT requests to strategically toll the statute of limitations. The Government strategically delayed making a decision on whether to indict Mr. Chamberlain until *after* the prosecution of Mr. Hussain was complete. The Government witnesses' unwillingness to testify at trial in this case, while itself an example of the non-speculative prejudice associated with the delay, underscores a broader prejudice that Mr. Chamberlain faces. Like many of the Government's witnesses, the delay has caused witnesses previously willing to assist in Mr. Chamberlain's defense, including Ms. Gustafsson, to no longer wish to participate. People have moved on with their lives and do not wish to be dragged back into something that they had to re-live during Mr. Hussain's criminal trial and during a related U.K. civil trial. The delay, in light of the apparent reasons for it and in light of the significant prejudice caused by it, offends the fundamental conceptions of justice.

The offense to the fundamental conceptions of justice is further highlighted by the history of the Government's interactions with Mr. Chamberlain, which, as discussed in his motion, provided him with a basis to believe that the statute of limitations had expired and he no longer needed to live under the threat of a looming indictment. The Government's *sub silentio* use of MLAT tolling to delay its decision on whether to indict Mr. Chamberlain until after it saw the result in the prosecution of Mr. Hussain offends the fundamental conceptions of justice. *See United States v. Lovasco*, 431 U.S. 783, 795 (1977). Accordingly, Counts One through Fifteen should be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Chamberlain respectfully requests that the Court grant his motions to dismiss Counts One through Fifteen and Count Seventeen.

DATED: October 24, 2023

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:    */s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Attorneys for Defendant Stephen Keith Chamberlain