1  Gary S. Lincenberg - State Bar No. 123058
       glincenberg@birdmarella.com
2  Ray S. Seilie - State Bar No. 277747
       rseilie@birdmarella.com
3  Michael C. Landman - State Bar No. 343327
       mlandman@birdmarella.com
4  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
   DROOKS, LINCENBERG & RHOW, P.C.
5  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
6  Telephone: (310) 201-2100
   Facsimile: (310) 201-2110
7
8  Attorneys for Defendant
   Stephen Keith Chamberlain
9

10              **UNITED STATES DISTRICT COURT**

11     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

13  UNITED STATES OF AMERICA,              CASE NO. 3:18-cr-00577-CRB

14              Plaintiff,                 **Defendant Stephen Chamberlain's**
                                           **Response to Court Order [ECF 246] and**
15         vs.                             **Reply in Further Support of His Motion to**
                                           **Compel the Government to Secure the Trial**
16  MICHAEL RICHARD LYNCH AND              **Attendance of Rob Knight or, in the**
    STEPHEN KEITH CHAMBERLAIN              **Alternative, to Issue a Rule 15 Order for**
17                                         **Deposition [ECF 234]**
              Defendants.
18                                         Date:      November 3, 2023
                                           Time:      10:00 a.m.
19                                         Place:     Courtroom 6 (via Zoom)

20                                         Assigned to Hon. Charles R. Breyer

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  THE GOVERNMENT MUST SECURE THE ATTENDANCE OF ROB KNIGHT ..........1

    A.  The Agreement is Enforceable as to Deloitte............................................................2

    B.  The Court Should Require the Government to Enforce the Agreement ...................3

II.  THE COURT SHOULD ORDER ROB KNIGHT'S DEPOSITION ....................................**3**

    A.  The Government Fails to Dispute that Rob Knight is an Important Witness ............4

    B.  The Government's Arguments Undermine the Purpose of Rule 15 ........................4

        1.  Tactics of Mr. Chamberlain's Alleged Co-Conspirators Is Irrelevant ..........4

        2.  Existence of Other Witnesses Is Irrelevant ....................................................5

        3.  Rule 15 Does Not Require a Showing of "Particularly Exculpatory" Statements ..........................................................................................................9

III.  LETTER OF REQUEST ....................................................................................................**10**

IV.  CONCLUSION .................................................................................................................**11**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Soo Park v. Thompson,*
    851 F.3d 910 (9th Cir. 2017) ................................................................................................. 1

*Taylor v. Illinois,*
    484 U.S. 400 (1988) ....................................................................................................... 1, 3

*United States v. Al Fawwaz,*
    No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) ................ 10

*United States v. Jefferson,*
    594 F. Supp. 2d 655 (E.D. Va. 2009) ................................................................................ 10

*United States v. Omene,*
    143 F.3d 1167 (9th Cir. 1998) ....................................................................................... 4, 9

*United States v. Saipov,*
    412 F. Supp. 3d 295 (S.D.N.Y. 2019) ................................................................................. 3

*United States v. Salim,*
    855 F.2d 944 (2d Cir. 1988) ............................................................................................. 10

*United States v. Staples,*
    256 F.2d 290 (9th Cir. 1958) ............................................................................................ 10

*United States v. Theresius Filippi,*
    918 F.2d 244 (1st Cir. 1990) ............................................................................................... 3

*United States v. Trumpower,*
    546 F. Supp. 2d 849 (E.D. Cal. 2008) ............................................................................ 4, 9

*United States v. Zavieh,*
    No. 12-CR-00195 EMC NC, 2013 WL 1283319 (N.D. Cal. Mar. 27, 2013) ...................... 10

*Villella v. Chem. & Mining Co. of Chile Inc.,*
    No. 15 CIV. 2106 (ER), 2019 WL 171987 (S.D.N.Y. Jan. 11, 2019) .................................. 10

**Statutes**

28 U.S.C. § 1781 ..................................................................................................................... 10

**Other Authorities**

Sixth Amendment ............................................................................................................. 1, 3, 9

Federal Rules of Criminal Procedure Rule 15(a) ............................................................................ 3

Rule 15 ..................................................................................................... *passim*

CHAMBERLAIN'S RESPONSE TO COURT ORDER AND REPLY ISO MOTION TO COMPEL OR, IN THE
ALTERNATIVE, ISSUE RULE 15 ORDER

1   The Government's opposition makes clear that the essential facts are not in dispute. Rob

2   Knight is currently a partner at Deloitte. Deloitte is a party to a cooperation agreement with the

3   Government. The Government is not willing to enforce the terms of that agreement to require

4   Deloitte to produce one of its partners/part-owners as a witness. Moreover, Mr. Knight was a

5   senior member of Deloitte's audit team for Autonomy. He was directly involved in reviewing and

6   approving of transactions in this case where the Government alleges accounting misconduct by

7   Mr. Chamberlain. That the Government would prefer testimony from a lower-level Deloitte

8   accountant, Mr. Welham, should not alleviate their obligations under the cooperation agreement.

9   Nor should it dictate whom the jury gets to hear from.

10      In addition to replying to the Government's opposition to Mr. Chamberlain's motion, this

11   reply responds to the Court's Order for Supplemental Briefing (ECF No. 246). *See infra* Sections

12   II.B.2 and III.

13   ## I.      THE GOVERNMENT MUST SECURE THE ATTENDANCE OF ROB KNIGHT

14      The Sixth Amendment provides the right to compel witnesses to testify at trial. *Soo Park v.*

15   *Thompson*, 851 F.3d 910, 919 (9th Cir. 2017). "Few rights are more fundamental than that of an

16   accused to present witnesses in his own defense[.]" *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).

17   "[A]t a *minimum* . . . criminal defendants have the right to the government's assistance in

18   compelling the attendance of favorable witnesses at trial . . . ." *Id.* (emphasis added).

19      The Government's opposition makes clear that it has failed to do what the Supreme Court

20   has described as the "minimum" required to protect Mr. Chamberlain's Sixth Amendment right to

21   compulsory process. Despite the fact that the Government has entered into an agreement with

22   Deloitte requiring it to make Deloitte witnesses available, the Government has chosen to read the

23   agreement in a manner that avoids requiring Deloitte to make a percipient witness available. The

24   Government's lack of assistance falls far short of what is required under the Sixth Amendment.[1]

25

26

27   ---

[1]   The Government does not appear to contest Mr. Chamberlain's argument that Mr. Knight's

28   testimony is material. *See* Gov. Opp'n at 2:18-3:28.

1                       Case No. 3:18-cr-00577-CRB
CHAMBERLAIN'S RESPONSE TO COURT ORDER AND REPLY ISO MOTION TO COMPEL OR, IN THE
ALTERNATIVE, ISSUE RULE 15 ORDER

**A.      The Agreement is Enforceable as to Deloitte**

The Government concedes that it has the ability under the agreement to compel Messrs. Knights, Mercer, Welham, and Murray to testify at trial should the defendants wish to call them. Gov. Opp'n. at 3:1-3. The Government attempts to distinguish between Mr. Knight and the four named Deloitte witnesses because the cooperation agreement does not mention Mr. Knight by name.[2]

The question is simply whether a cooperation agreement with Deloitte covers a Deloitte partner. The apparent purpose of making Messrs. Knights, Mercer, Welham, and Murray additional parties was so the Government was assured access to them even if they were to leave Deloitte. ECF No. 220-2 (Exhibit 1) ("cooperation shall include, but is not limited to . . . [c]ontinuing to cooperate in good faith, in the manner described herein, even if Messrs. Knights, Mercer, Welham, or Murray decide to leave Deloitte LLP"). By making Deloitte itself a party, the Government wanted to ensure continued access to anyone still at Deloitte.

The Government's decision not to require Mr. Knight to be a party to the agreement would be relevant to this discussion only if Deloitte no longer had effective control over Mr. Knight. But Mr. Knight currently is a partner at Deloitte. Whether Deloitte attempted to negotiate a limit to its obligation to produce its own employees under the agreement, it certainly did not do so.

The Government also misinterprets Mr. Chamberlain's position with respect to the scope of the agreement. Mr. Chamberlain asks the Government to secure Mr. Knight's attendance by enforcing the provision that Deloitte "agree to cooperate fully and in good faith with the Office . . . regarding all of the facts and circumstances of this case . . . ." *Id.* Mr. Chamberlain does not "seize" on the provision requiring Deloitte to agree to meet with the Government in London, *see* Gov. Opp'n at 2:24-25. Rather, Mr. Chamberlain cited that provision as an example of one of the specific manners in which Deloitte agreed to cooperate.

The agreement makes clear that the enumerated examples of Deloitte's obligations to

---

[2]   We doubt that the Government would be taking the same position if it was the Government, not the defense, that wanted testimony from Knight.

CHAMBERLAIN'S RESPONSE TO COURT ORDER AND REPLY ISO MOTION TO COMPEL OR, IN THE ALTERNATIVE, ISSUE RULE 15 ORDER

cooperate were intended to be exemplary and not exhaustive. ECF No. 220-2 (Exhibit 1) ("each agree that cooperation shall include, but is not limited to . . . [enumerated examples.]"). Deloitte and the Government are sophisticated parties. Both are aware that an entity's agreement to "cooperate fully" includes making its employees available to testify.[3]

### B.     The Court Should Require the Government to Enforce the Agreement

Defense counsel is aware of no steps taken by the Government to secure Mr. Knight's attendance. The underlying principles of the cases on which Mr. Chamberlain relies remain unchallenged. *Taylor*, 484 U.S. at 408 ("[A]t a *minimum* . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial . . . .") (emphasis added); *United States v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990) (government's failure to assist in procuring parole visas for defense witnesses violated defendant's Sixth Amendment right to compulsory process); *see also United States v. Saipov*, 412 F. Supp. 3d 295, 303 (S.D.N.Y. 2019) (ordering prosecutors to apply for visas for defense witnesses and noting the Government's offer to facilitate Rule 15 depositions should that avenue fail). Like in *Theresius Filippi* and *Saipov*, the Government in this case has the ability to compel an entity whom it controls to act to secure the attendance of a defense witness. By their refusal to enforce the cooperation agreement, the Government and Deloitte are taking steps to block Mr. Chamberlain's access to a key witness. This amounts to a violation of Mr. Chamberlain's Sixth Amendment right. *Id.*

## II.     THE COURT SHOULD ORDER ROB KNIGHT'S DEPOSITION

If the Court refuses to compel the Government to honor the cooperation agreement, Mr. Chamberlain requests that the Court order Mr. Knight's deposition under Rule 15(a) of the Federal Rules of Criminal Procedure. In response, the Government attempts to further restrict Mr.

---

[3]   Deloitte's agreement with HP to produce relevant witnesses in the related U.K. civil case demonstrates Deloitte's acknowledgment that Mr. Knight was one of the key individuals involved in the Autonomy audit. Decl. of Lincenberg ¶ 3, Ex. 1 at 18 (Schedule listing Mr. Knight as the third-most-senior Deloitte witness, above Messrs. Welham and Murray). This agreement was executed on the day before Deloitte's agreement with the Government. ECF No. 220-2 (Exhibit 1).

Chamberlain's access to a critical defense witness. The Government does not dispute that, if Mr. Knight is not compelled to testify in the United States pursuant to the cooperation agreement, he is unavailable. The only issue in apparent dispute is whether Mr. Knight's testimony is sufficiently important to Mr. Chamberlain.

### A.      The Government Fails to Dispute that Rob Knight is an Important Witness

In opposing Mr. Chamberlain's alternative request for a Rule 15 order, the Government fails to contest certain key facts that establish Mr. Knight's materiality and justify the issuance of a Rule 15 order: (1) Mr. Knight was the Senior Audit Manager on the Autonomy audit in 2009; (2) he was senior to Mr. Welham (and senior to Mr. Murray and Antonia Anderson) during the relevant period; (3) even after his transition off the Autonomy audit team, he continued to be involved in Deloitte's review of Autonomy's financial statements and played the role of "skeptical auditor" to provide a fresh perspective and to help ensure Deloitte's independence from Autonomy management; (4) he is a percipient witness to many of the accounting judgments Mr. Chamberlain now stands accused of making with the intent to defraud; and (5) he has testimony that is favorable to Mr. Chamberlain's defense. This justifies a Rule 15 order.

### B.      The Government's Arguments Undermine the Purpose of Rule 15

Rule 15 does not require a conclusive showing of materiality. *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998); *see also United States v. Trumpower*, 546 F. Supp. 2d 849, 854 (E.D. Cal. 2008) (percipient witnesses are material under Rule 15). Nevertheless, the Government argues that Mr. Chamberlain has not met the Rule 15 standard because: (1) his alleged co-co-conspirators decided not to call Mr. Knight in prior proceedings; (2) there are other witnesses to the events at issue; and (3) Mr. Knight's statements are not "particularly exculpatory." For the following reasons, each of these arguments is irrelevant and unpersuasive.

#### 1.      Tactics of Mr. Chamberlain's Alleged Co-Conspirators Is Irrelevant

The Government argues that Mr. Chamberlain fails to demonstrate the importance of Mr. Knight's testimony because "[n]either Lynch nor Hussain saw fit to call Mr. Knight in prior proceedings." Gov. Opp'n at 4:5-7. This is irrelevant. Indeed, for his own strategic reasons, Mr. Hussain did not call any Deloitte witnesses in his trial. Dr. Lynch had little interaction with the

Deloitte accountants. In his defense, Mr. Chamberlain wants the jury to hear from one of Deloitte's most senior auditors on the Autonomy audit who dealt closely with certain issues that the Government will use to suggest Mr. Chamberlain was complicit in a conspiracy.

### 2.    Existence of Other Witnesses Is Irrelevant

The Government notes that there are already "at least five Deloitte witnesses." Gov. Opp'n at 4:6-7. It is a curious argument to make in a prosecution of an accountant in a complex case involving dozens of transactions over several years. Indeed, the Government has included no less than ten accounting witnesses on its witness list.[4] Mr. Chamberlain had no control over how many different accountants at Deloitte were involved in the various transactions. Some auditors were involved in some transactions and some were involved in others. Moreover, with respect to a particular transaction, each Deloitte auditor played a different role and has different testimony to offer. There is nothing cumulative about calling a witness in defense to testify from a perspective that other witnesses do not have about transactions that are part of the Government's case. Mr. Chamberlain had no say in which Deloitte witnesses the Government decided to interview as part of its investigation of Autonomy. The Government should not be able to dictate the contours of Mr. Chamberlain's right to present a defense.

The Government fails to identify any *specific* testimony of Mr. Knight cited by Mr. Chamberlain in his motion as cumulative to that of another Deloitte witness. Instead, the Government argues *generally* that the testimony of Mr. Knight is cumulative to that of the other Deloitte witnesses merely because such witnesses were recipients of some of the emails that Mr. Knight wrote. Gov. Opp'n at 4:10-20. To impose a standard that a Rule 15 deposition of the *writer* of an email is not important because the recipient of the email is available to testify would limit Rule 15's availability only to witnesses that were the *sole* witnesses to the events at issue. That is not the standard, particularly where a defendant's right to present a defense is at issue.

---

[4]   Antonia Anderson (Deloitte and Autonomy), Steven Brice (expert), Brent Hogenson (Autonomy), Tom Murray (Deloitte), Reena Prasad (Autonomy), Matt Stephan (Deloitte and Autonomy), Percy Tejeda (Autonomy), Ganesh Vaidyanathan (Autonomy), Lee Welham (Deloitte), and Chris Yelland (Autonomy-HP).

1       The fact that other Deloitte witnesses were recipients of Mr. Knight's emails does not

2   undermine Mr. Chamberlain's showing of Mr. Knight's importance to his defense. Mr.

3   Chamberlain seeks *Mr. Knight*'s testimony about the review that *he* conducted; not the testimony

4   of others who cannot describe the work that Mr. Knight performed and the conclusions that Mr.

5   Knight reached. The evidence will show that Mr. Knight, an independent auditor, validated Mr.

6   Chamberlain's accounting judgments. This supports Mr. Chamberlain's defense that he was acting

7   in good faith.

8       For example, Mr. Knight wrote to members of Autonomy and Deloitte regarding his

9   review of Autonomy's decision to allocate a portion of the costs of its hardware resales to Sales &

10  Marketing expense. *See*, *e.g.*, ECF Nos. 220-5, 220-6 (Exhibits 4 and 5). In those emails, Mr.

11  Knight expressed *his* opinion on whether the audit evidence was sufficient to support Autonomy's

12  desired accounting position. Crucially, the other Deloitte witnesses cannot testify to Mr. Knight's

13  interactions *with Mr. Chamberlain*. As indicated by his prior testimony, Mr. Knight will provide

14  important context to Deloitte's request for additional audit evidence to support the marketing

15  aspect of the hardware resales:

16          you always hope to get something extra . . . you hope for the best
            quality of evidence that you can get to support a set of transactions.
17          But in reality you have to go in accepting you're not going to get
            something from perhaps EMC to say you know, you might want this
18          piece of paper that says yes, you know we've got this allocation
            amongst cost of goods sold and sales and marketing that describes
19          exactly what you want to describe, but you're never going to get it.

20  ECF No. 220-4 at 17 (Exhibit 3). This testimony is important to Mr. Chamberlain for at least three

21  reasons. *First*, it informs the jury that just because Deloitte asked for a specific piece of audit

22  evidence does not mean that the accounting treatment of a transaction depends on receipt of that

23  piece of evidence. The failure of Autonomy to satisfy Deloitte's requests does not mean that

24  Autonomy acted improperly. *Second*, it provides context to Mr. Chamberlain's push for Mr.

25  Sullivan to obtain audit evidence from EMC. Just like Deloitte, Mr. Chamberlain also hoped to get

26  what Mr. Knight describes as "something extra . . . the best quality of evidence that you can get to

27  support a set of transactions." *Id.* There is nothing wrong with Mr. Chamberlain pushing Mr.

28  Sullivan to obtain the best audit evidence he could from EMC. *Third*, it points out that Deloitte's

CHAMBERLAIN'S RESPONSE TO COURT ORDER AND REPLY ISO MOTION TO COMPEL OR, IN THE
ALTERNATIVE, ISSUE RULE 15 ORDER

1   and Mr. Chamberlain's request for perfect audit evidence was unlikely to be successful—as Mr.

2   Knight puts it, "you might want this piece of paper that . . . describes exactly what you want to

3   describe, but you're never going to get it." *Id.* Like Mr. Knight, Mr. Chamberlain was practical

4   and understood that one could not always obtain perfect audit evidence. And like Mr. Knight, Mr.

5   Chamberlain understood that the failure to obtain perfect audit evidence did not undermine the

6   accounting treatment of that transaction. Despite having the opportunity to do so in its opposition,

7   the Government has failed to establish that Mr. Knight's above-described testimony is cumulative

8   to that of other Deloitte witnesses.

9       Mr. Knight also testified regarding Autonomy's decision not to highlight its hardware sales

10   in its financial statements or the narrative portion of its press releases. Once again, Mr. Knight is

11   likely to provide critical context to the jury, explaining that, while he always pushed for additional

12   disclosures, he understood that companies like Autonomy had valid reasons for wanting to limit its

13   public disclosure to only what was required under IFRS. As Mr. Knight testified, "if clients all

14   prepared the press release that I want them to prepare, they'd go out of business very, very

15   quickly, because they'd just be disclosing everything." *Id.* at 66. Mr. Knight's testimony is an

16   important rebuttal to the Government's suggestion that Mr. Chamberlain acted improperly in

17   supporting management's decision not to provide additional disclosures related to hardware. And

18   the Government does not identify how this testimony is cumulative.

19       With respect to the Microlink acquisition, Mr. Knight was the individual at Deloitte

20   primarily responsible for reviewing the connection between the owners of Microlink, MicroTech,

21   and DiscoverTech. ECF Nos. 220-9, 220-10 (Exhibits 8 and 9). The Government is likely to argue

22   that Mr. Chamberlain misled Deloitte regarding common ownership among these entities. Mr.

23   Knight was the individual at Deloitte primarily responsible for reviewing this issue and thus is

24   uniquely qualified to testify to whether Mr. Chamberlain misled Deloitte. Once again, despite

25   having the opportunity to do so in its opposition, the Government has failed to establish that Mr.

26   Knight's testimony is cumulative on this issue.

27       With respect to Autonomy's decision to capitalize a portion of Systems Engineers' salaries

28   as Research and Development ("R&D") costs associated with Structured Probabilistic Engine

("SPE"), Mr. Knight once again was the individual at Deloitte responsible for conducting important aspects of the review. ECF Nos. 220-7, 220-8 (Exhibits 6 and 7). On October 15, 2009, Mr. Knight wrote to Mr. Welham to describe the conversation that Mr. Knight had with members of Deloitte's National Accounting & Audit Technical Team ("NAA"), Deloitte's internal experts to whom the audit team went when they needed assistance on technical issues. Only Mr. Knight can testify to those conversations, which led to Deloitte's approval of Autonomy's decision to capitalize costs associated with prior quarters in the third quarter of 2009. Given Mr. Knight's involvement with this issue in high-level discussions with the NAA, it is also likely that Mr. Knight was integrally involved in other aspects of Deloitte's review of the R&D capitalization issue and will have additional helpful testimony to offer in this respect. The Government has failed to establish that Mr. Knight's testimony is cumulative to this issue.

Finally, Mr. Knight played a key role in the review of the allegations of accounting improprieties lodged by Brent Hogenson, an Autonomy US-based finance employee. Mr. Knight is the Deloitte witness who had discussions with Autonomy Chief Operating Officer and General Counsel Andy Kanter regarding how to address Mr. Hogenson's allegations with Autonomy's Audit Committee. Decl. of Lincenberg ¶ 4, Ex. 2. Only Mr. Knight can testify to the conversations he had with Mr. Kanter and only he can testify to Mr. Chamberlain's lack of involvement in formulating Autonomy's response to the Audit Committee. Mr. Knight's close involvement in these matters is further highlighted by the fact that Mr. Hogenson copied only two Deloitte auditors on his email to the Audit Committee: Messrs. Knights and Knight (not Welham or Murray). Decl. of Lincenberg ¶ 5, Ex. 3 at 2.

Notwithstanding the examples cited above and in his original motion (Mot. at 6:13-9:23), Mr. Chamberlain remains at a disadvantage to address the Court's request for supplemental briefing (ECF No. 246). Unlike the Government, Mr. Chamberlain does not have access to any Deloitte witnesses. Mr. Chamberlain is limited to pointing the Court to (1) examples where Mr. Knight was the primary auditor responsible for reviewing a particular issue; and (2) examples of favorable testimony that Mr. Knight gave during a lengthy interview with the U.K. Serious Fraud Office. *See* Mot. at 6:13-9:23. Based on such information, Mr. Chamberlain has demonstrated that

1   Mr. Knight would testify in his favor.

2        To the extent that the Court has concerns that aspects of Mr. Knight's testimony are

3   cumulative to that of the other Deloitte witnesses, Mr. Chamberlain notes two additional

4   distinctions: *First*, as discussed above, Mr. Knight was senior to Messrs. Welham and Murray, the

5   Government's chosen Deloitte witnesses. He is better qualified to testify to upper-level

6   discussions internally at Deloitte and with Autonomy management. It was often during these

7   discussions that Deloitte and Autonomy agreed on the final accounting treatment of a particular

8   transaction. Messrs. Welham and Murray would not have been party to those discussions. *Second*,

9   Mr. Knight was not implicated in the proceedings brought by the Financial Reporting Council

10  ("FRC"), U.K.'s accounting review board, against Deloitte and Messrs. Knights and Mercer. Decl.

11  of Lincenberg ¶ 6, Ex. 4. As a result, he is the most senior auditor at Deloitte who is not alleged to

12  have committed misconduct in connection with the audit of Autonomy. To demonstrate that Mr.

13  Chamberlain never knowingly held back material information, Mr. Knight is an essential witness.

14        It is the Government's obligation, in opposing Mr. Chamberlain's motion, to offer

15  examples of why the proffered testimony is cumulative. And the Government has not done so with

16  citations to specific examples.

17        Moreover, it is fundamental to Mr. Chamberlain's Sixth Amendment right to call witnesses

18  he has good reason to believe would provide testimony *favorable to him*. Mr. Chamberlain should

19  not be forced to rely on witnesses who have aligned themselves with the other team.

20              **3.    Rule 15 Does Not Require a Showing of "Particularly Exculpatory"**

21                     **Statements**

22        The Government argues that Mr. Knight's statements are not "particularly exculpatory."

23  Gov. Opp'n at 4:20-22. That is not the standard. *See Omene*, 143 F.3d at 1170 (conclusive

24  showing of materiality not required); *Trumpower*, 546 F. Supp. 2d at 854 (showing that individual

25  was a witness to the events at issue sufficient under the Rule). Moreover, the Government's view

26  of what is important to Mr. Chamberlain's defense does not govern.

27        As outlined above and in his motion, Mr. Chamberlain has demonstrated the importance of

28  Mr. Knight's testimony as to him. The Government fails to undermine that position.

III.    **LETTER OF REQUEST**

Through counsel, Mr. Chamberlain contacted Mr. Knight to see whether, if the Court grants Mr. Chamberlain's request for a Rule 15 order, the Court would also need to issue a letter of request through the Hague Convention to compel such deposition. Counsel for Mr. Knight stated that Mr. Knight does not consent to providing testimony on a voluntary basis in these proceedings and that Mr. Chamberlain would need to comply with the "normal procedures" to procure Mr. Knight's testimony. Decl. of Lincenberg ¶ 2.

Based on this response, the Court would likely need to issue a letter of request to compel Mr. Knight's deposition. As the Court has previously recognized in connection with the issuance of letters of request in this case (ECF No. 96), the Court has the statutory and inherent authority to use that process to obtain foreign evidence. 28 U.S.C. § 1781; *United States* v. *Staples*, 256 F.2d 290, 292 (9th Cir. 1958). Such authority includes compelling an individual outside the jurisdiction of the Court to sit for a Rule 15 deposition. *United States v. Salim*, 855 F.2d 944, 953 (2d Cir. 1988) (affirming district court's admission of deposition testimony secured via Rule 15 and letters rogatory process); *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2019 WL 171987, at *2 (S.D.N.Y. Jan. 11, 2019) (recognizing letters rogatory process as mechanism to compel foreign depositions); *United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (ordering Rule 15 depositions and using letters rogatory process to compel witnesses to sit for deposition in the U.K. when it was apparent that such witnesses refused to voluntarily appear); *United States v. Zavieh*, No. 12-CR-00195 EMC NC, 2013 WL 1283319, at *3 (N.D. Cal. Mar. 27, 2013) (granting request for Rule 15 order and letters rogatory); *United States v. Jefferson*, 594 F. Supp. 2d 655, 675–76 (E.D. Va. 2009) (recognizing that letters rogatory process could be used to compel foreign deposition under Rule 15).

If the Court denies Mr. Chamberlain's request that the Court compel the Government to secure Mr. Knight's attendance at trial, and if the Court grants Mr. Chamberlain's alternative request to take Mr. Knight's deposition, Mr. Chamberlain will promptly submit letters of request that will allow this Court to obtain judicial assistance from the U.K. to enforce that order.

Mr. Chamberlain is not in a position to predict the impact that this process will have on the

1  trial schedule. While it is true that defendants often are challenged in getting governments to

2  execute orders, we are still five months from trial. Respectfully, in any event, this is not a factor

3  that should influence the Court's decision whether to give Mr. Chamberlain access to an important

4  witness.

5  **IV.    CONCLUSION**

6      For the foregoing reasons, Mr. Chamberlain respectfully requests that the Court compel the

7  Government to enforce its cooperation agreement with Deloitte to secure the trial attendance of

8  Mr. Knight. Should the Court decline to do so, Mr. Chamberlain requests the Court to issue a Rule

9  15 Order to permit Mr. Knights' deposition to be taken in the U.K.

10

11  DATED: October 26, 2023         BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                                    DROOKS, LINCENBERG & RHOW, P.C.
12

13

14
                                By:  _____*/s/ Gary S. Lincenberg*_____
15                                   Gary S. Lincenberg
                                     Ray S. Seilie
16                                   Michael C. Landman
                                     Attorneys for Defendant Stephen Keith
17                                   Chamberlain

18

19

20

21

22

23

24

25

26

27

28

CHAMBERLAIN'S RESPONSE TO COURT ORDER AND REPLY ISO MOTION TO COMPEL OR, IN THE
ALTERNATIVE, ISSUE RULE 15 ORDER