# EXHIBIT 1

DATED as of 27 April 2016

(1) HP, Inc
(2) HEWLETT PACKARD ENTERPRISE COMPANY
(3) AUTONOMY CORPORATION LIMITED

– and –

(4) DELOITTE LLP

## SETTLEMENT AGREEMENT

5 New Street Square | London EC4A 3TW
Tel +44 (0)20 7300 7000
Fax +44 (0)20 7300 7100
DX  41 London
www.taylorwessing.com

TaylorWessing

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

**THIS AGREEMENT IS MADE AS OF 27 APRIL 2016**

**BETWEEN:**

(1) **HP, Inc**, a company registered in the state of California in the United States of America, the registered office of which is at 1501 Page Mill Road, Palo Alto, CA 94304;

(2) **HEWLETT PACKARD ENTERPRISE COMPANY**, a company registered in the state of California in the United States of America, the registered office of which is at 3000 Hanover Street, Palo Alto, CA 94304;

(3) **AUTONOMY CORPORATION LIMITED**, a company registered in England and Wales the registered office of which is at Amen Corner, Cain Road, Bracknell, Berkshire, RG12 1HN;

and

(4) **DELOITTE LLP**, of Stonecutter Court, 1 Stonecutter Street, London, EC4A 4TR

together the "Parties" and each a "Party".

**WHEREAS**

(A) The financial statements of Autonomy were, until Autonomy was purchased by Hewlett Packard in 2011, audited by Deloitte. Hewlett Packard contends that the financial statements for the years to 31 December 2009 and 2010 were misstated and that Hewlett Packard relied upon those misstatements and other published financial information when agreeing the price for the shares in Autonomy. Hewlett Packard and Autonomy have brought proceedings against former directors of Autonomy in the High Court of Justice, Chancery Division under action number HC-2015-001324 (the "**Lynch Proceedings**") alleging, inter alia, fraudulent misrepresentations by those directors in relation to such information.

(B) Hewlett Packard and Autonomy have, by a letter of claim dated 30 September 2014, alleged that Deloitte breached duties owed to Autonomy in the conduct of its audits and reviews of quarterly reports in 2009, 2010 and 2011 and that Autonomy has suffered loss as a result ("the **Dispute**"). All such allegations are vigorously denied by Deloitte.

(C) The Parties have now reached an agreement in relation to settlement of the Dispute and it is the intention of this Agreement to effect a full and final settlement of all claims between the Parties relating to the Dispute and relating to the acquisition of Autonomy

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000004
Exh 2990-0002

in 2011.

## AGREED TERMS

1.  **Definitions**

    In this Agreement, unless the context otherwise requires, the following expressions have the following meanings:

    **"Agreement"** means these terms of settlement.

    **"Autonomy"** means Autonomy Corporation plc, now known as Autonomy Corporation Ltd.

    **"Autonomy-Related Proceedings"** means the Lynch Proceedings and any other civil proceedings commenced in any jurisdiction before any court or tribunal relating to or arising out of or in connection with the subject matter of the Lynch Proceedings.

    **"Claim"** means any claim or counterclaim, complaint, grievance, charge, dispute, action, suit or proceeding (whether intimated, actual, prospective or contingent, whether known or unknown and whether or not existing in law at the date of this Agreement) including any liability for costs which Hewlett Packard or Autonomy or Deloitte has, may have, has had or, but for execution of this Agreement, could or might have had, in respect of any monies, damages, losses, liabilities, interest, costs, declaratory or injunctive relief, or any other relief of whatever nature and however arising, directly or indirectly, out of or in connection with acts, omissions, statements and/or other conduct of any Deloitte Release Party or HP Release Party occurring prior to the date of this Agreement in relation to:

    (a) The Dispute.

    (b) Any claims arising out of or in connection with the provision of services by Deloitte to Autonomy including services provided as auditor.

    (c) Any claims arising out of or in connection with the acquisition of Autonomy in 2011.

    (d) Any claims arising out of or in connection with the management and integration of Autonomy and any statements made about Autonomy or Deloitte since the acquisition of Autonomy in 2011.

    **"Confidential Information"** means the terms of this Agreement and the substance of

all negotiations in connection with it.

**"Defendant"** means each and every one of, and **"Defendants"** means all of, the defendants in the Autonomy-Related Proceedings.

**"Defendant Liability"** means the aggregate of any liability to pay money incurred by all Defendants, whether by a final, non-appealable order or award of the court or other competent tribunal or by compromise or settlement or otherwise, in respect of the subject matter of the Autonomy-Related Proceedings.

**"Deloitte"** means Deloitte LLP in the UK, all of its subsidiaries and all predecessor firms.

**"Deloitte Interviewees"** means members of the Deloitte audit team and any other Deloitte personnel involved in either (a) Deloitte's quarterly reviews and audits of Autonomy's financial statements for the period from January 2009 onwards or (b) any of the transactions or matters referred to in the Particulars of Claim in the Lynch Proceedings or the Schedules thereto (both as may be amended from time to time), including but not limited to the Deloitte personnel listed in Part A of the Schedule and such of the Deloitte personnel listed in Part B of the Schedule as Hewlett Packard may specify.

"**Deloitte Release Party**" means each and every one of, and "Deloitte Release Parties" mean all of, (i) Deloitte, (ii) Deloitte Touche Tohmatsu Limited ("**DTTL**"), (iii) any other DTTL member firm, (iv) Deloitte's (or any other DTTL member's) affiliates, agents, principals, representatives, attorneys, advisers, administrators, accountants, consultants and assigns, and (v) each of Deloitte's (or any other DTTL member's) past and present officers, directors, employees, officials, members, partners, principals, agents, representatives and attorneys (including any and all in-house counsel and outside counsel).

**"Hewlett Packard"** means all and any of HP, Inc, Hewlett Packard Enterprise Company and Autonomy, and each and all of (i) their predecessors, and successors, (ii) their current and former affiliates, divisions, business units, subsidiaries, and assigns and (iii) all other entities in which Hewlett Packard has or had a controlling interest.

"**HP Recovery**" means the aggregate amount actually recovered by Hewlett Packard (whether by way of damages, pursuant to a negotiated settlement or by way of an award for costs) in respect of the claims in the Autonomy-Related Proceedings.

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000006
Exh 2990-0004

"**HP Release Party**" means each and every one of, and "**HP Release Parties**" means all of, (i) Hewlett Packard, (ii) Hewlett Packard's agents, principals, representatives, attorneys, advisers, administrators, accountants, consultants and assigns, and (iii) each of Hewlett Packard's past and present officers, directors, employees, officials, members, partners, principals, agents, representatives and attorneys (including any and all in-house counsel and outside counsel).

"**Indemnified Liability**" means any liability to pay money incurred by Deloitte or any Deloitte Release Party, whether by a final, non-appealable order or award of the court or other competent tribunal or by compromise or settlement or otherwise, in respect of any Indemnity Claim (but excluding, for the avoidance of doubt, any liability in fraud).

"**Indemnity Claim**" means any action against Deloitte or any Deloitte Release Party as referred to in clauses 4.1 and 4.2 of this Agreement.

2. **Payment**

    2.1 Deloitte agrees to pay, within 28 days of the date of this Agreement, the sum of US$45,000,000 (forty-five million US dollars) to Hewlett Packard Enterprise Company in full and final settlement of all Claims against Deloitte inclusive of costs and interest.

3. **Releases and covenants not to sue**

    3.1 Hewlett Packard releases absolutely any Claims against Deloitte and all other Deloitte Release Parties.

    3.2 Deloitte releases absolutely any Claims against Hewlett Packard and all other HP Release Parties.

    3.3 Hewlett Packard covenants in favour of Deloitte that:

    (a) it will not take any step to assert any Claim against Deloitte or any Deloitte Release Party;

    (b) it will withdraw the allegation as and where it appears in the Reply to Dr Lynch's Defence in the Lynch proceedings and the Reply to Mr Hussain's Defence in the Lynch Proceedings that Deloitte failed to uncover the position when a reasonably competent auditor in its position would have done so; and

    (c) it will not pursue or support any complaint or repeat any allegations

against Deloitte or any Deloitte Release Party to the Institute of Chartered Accountants of England and Wales, the Financial Reporting Council or any equivalent regulatory body in England or elsewhere in relation to the matters in issue in the Dispute, the provision of services to Autonomy, or the acquisition of Autonomy in 2011.

3.4 Deloitte covenants in favour of Hewlett Packard that it will not take any step to assert or volunteer to support any Claim against Hewlett Packard or any HP Release Party.

3.5 For the avoidance of doubt:

(a) the releases given in this clause 3 shall not operate or take effect as a release of any claim that any of the HP Release Parties or the Deloitte Release Parties may have against any third party who is not a Deloitte Release Party or an HP Release Party; and

(b) nothing in this clause 3 shall preclude Hewlett Packard from complying with any request to produce documents or for other assistance or cooperation made by the Financial Reporting Council in the context of its existing investigation.

## 4. Indemnity

4.1 In the event that any party to the Lynch Proceedings or any party joined to those proceedings in the future were to bring an action against Deloitte or any of the Deloitte Release Parties, arising directly or indirectly from the subject matter of the Lynch Proceedings, the provision of services by Deloitte to Autonomy, including services provided as auditor, or in connection with the acquisition of Autonomy in 2011, including, without limitation, by way of contribution, indemnity or third party action, and such action results in a final award of damages against or settlement payment by Deloitte or any Deloitte Release Party, HP, Inc and Hewlett Packard Enterprise Company agree that they will indemnify Deloitte and any Deloitte Release Party in respect of any such award of damages or settlement payment, and for the costs reasonably incurred (on an indemnity basis) by Deloitte in contesting and defending such proceedings.

4.2 In the event that Hewlett Packard, or any of the entities covered by that definition in this Agreement, commences an action in any jurisdiction against any person in respect of any matters relating to the sale of Autonomy to Hewlett Packard and that person brings an action, including, without limitation by way of contribution,

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000008
Exh 2990-0006

indemnity or third party action against Deloitte or any Deloitte Release Party, and such action results in a final award of damages against or settlement payment by Deloitte or any Deloitte Release Party, HP, Inc and Hewlett Packard Enterprise Company agree that they will indemnify Deloitte or any Deloitte Release Party in respect of any award of damages or any settlement in respect of such proceedings, and for the costs reasonably incurred (on an indemnity basis) by Deloitte in contesting and defending such proceedings.

4.3 In the event that Deloitte or any Deloitte Release Party incurs an Indemnified Liability, Deloitte will use reasonable endeavours (including seeking such directions from the court or provision in any settlement agreement as HP, Inc or Hewlett Packard Enterprise Company may reasonably direct) to procure that HP, Inc or Hewlett Packard Enterprise Company is the ultimate recipient and beneficiary of such payment, including without limitation by way of:

   (a) a reduction in the amount of any award of damages in favour of Hewlett Packard in the Lynch Proceedings or, as the case may be, such action as is referred to in clause 4.2 of this Agreement, alternatively a reduction in the amount in respect of which Hewlett Packard may enforce such award, by an amount equivalent to the Indemnified Liability; or

   (b) the payment of an amount equivalent to the Indemnified Liability by Deloitte directly to Hewlett Packard; or

   (c) the payment of an amount equivalent to the Indemnified Liability to the Defendants on terms which create a trust over the amount so paid in favour of Hewlett Packard.

4.4 The net amount payable to Deloitte under this clause 4 shall in aggregate be limited to and shall not in any event exceed the higher of:

   (a) US$45,000,000, or

   (b) The HP Recovery.

4.5 Payments to Deloitte under this clause 4 in respect of costs shall be conditional on compliance by Deloitte with the following requirements in the event of an Indemnity Claim:

   (a) Deloitte will submit to Hewlett Packard, through Hewlett Packard's

eBilling tool, the following:

(i) two business days before the first day of each month, a forecast in respect of the costs which Deloitte expects to incur in the following six months;

(ii) two business days before the 25th day of each month, an estimate of the costs incurred in the relevant month to date, together with an estimate of the costs which Deloitte expects to incur for the remainder of that month;

(iii) two business days before the 10th day of each month, an invoice in respect of the costs incurred by Deloitte in the previous month.

(b) Deloitte will obtain the prior approval of Hewlett Packard (such approval not to be unreasonably withheld), by means of email to robert.a.particelli@hpe.com, copied to andrew.king@traverssmith.com, for:

(i) any significant disbursements, including Counsel's fees, expert fees, and e-disclosure providers; and

(ii) any travel expenses.

(c) Deloitte will provide to Hewlett Packard, on request, detailed billing summaries, receipts, invoices and bills relating to any costs incurred by Deloitte.

4.6 Hewlett Packard will make payment of invoices submitted by Deloitte in accordance with clause 4.5(a)(iii) above within four calendar months of their submission. Payment will not constitute acceptance that costs have been reasonably incurred. In the event that a dispute arises as to the reasonableness of costs incurred by Deloitte, Hewlett Packard may apply to the English court for an assessment of those costs.

5. **Conduct of Claims**

5.1 In the event of an Indemnity Claim, Deloitte shall:

(a) as soon as reasonably practical after becoming aware of the same give

8

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000010
Exh 2990-0008

written notice of the Indemnity Claim to Hewlett Packard specifying in reasonable detail the nature of the Indemnity Claim;

(b) keep Hewlett Packard reasonably informed of the progress of the Indemnity Claim and of any material developments in relation to the Indemnity Claim;

(c) provide to Hewlett Packard copies of any material correspondence or other documents relating to the Indemnity Claim;

(d) use reasonable endeavours to consult with Hewlett Packard regarding the conduct of the Indemnity Claim;

(e) take such steps to defend or resist the Indemnity Claim as Hewlett Packard reasonably directs; and

(f) permit and make arrangements for Hewlett Packard to attend any settlement discussions or mediation or other alternative dispute resolution meetings in relation to the Indemnity Claim.

5.2 Deloitte shall not agree any compromise or settlement of, or make any payment in relation to, an Indemnity Claim without the prior written consent of Hewlett Packard, such consent not to be unreasonably withheld or delayed.

5.3 Any notice under clause 5.1(a) of this Agreement shall be validly given if delivered by hand or sent by post to the following address:

> John F Schultz
> Executive Vice President, General Counsel and Corporate Secretary
> Hewlett Packard Enterprise Company
> 3000 Hanover Street
> Building 20B, MS 1056
> Palo Alto, CA 94304

With copies by email to:

> jschultz@hpe.com
> robert.a.particelli@hpe.com
> andrew.king@traverssmith.com
> toby.robinson@traverssmith.com

### 6. Good Faith Co-operation

6.1 Deloitte undertakes and agrees to co-operate in good faith in relation to the Autonomy-Related Proceedings, including but not limited to:

(a) within two weeks of the execution of this Agreement to provide complete access to all work papers held by Deloitte in relation to either (a) audits or reviews of Autonomy's financial statements and interim reports for the period from January 2009 onwards or (b) any of the transactions or matters referred to in the Particulars of Claim in the Lynch Proceedings or the Schedules thereto (both as may be amended from time to time);

(b) within six weeks of the execution of this Agreement to provide complete access to all Deloitte emails and other communications to and from Autonomy personnel and all non-privileged internal Deloitte emails and other communications relating to either (a) Deloitte's quarterly reviews and audits of Autonomy's financial statements and interim reviews for the period from January 2009 onwards or (b) any of the transactions or matters referred to in the Particulars of Claim in the Lynch Proceedings or the Schedules thereto (both as may be amended from time to time);

(c) so far as it is in Deloitte's power to do so on or before 31 October 2016, to make those of the Deloitte Interviewees who are still members, partners or employees of Deloitte, and to make reasonable endeavours to make those of the Deloitte Interviewees who are not still members, partners or employees of Deloitte, available for initial interview in London by Hewlett Packard.

(d) so far as it is in Deloitte's power to do so to make those of the Deloitte Interviewees who are still members, partners or employees of Deloitte, and to make reasonable endeavours to make those of the Deloitte Interviewees who are not still members, partners or employees of Deloitte, available for further interview, telephone conversations or responses to written questions at such dates and times as Hewlett Packard may reasonably request provided that sufficient notice is given to the Deloitte Interviewees.

(e) so far as it is in Deloitte's power to do so to procure that each Deloitte Interviewee who is still a member, partner or employee of Deloitte, and

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000012
Exh 2990-0010

to make reasonable endeavours to procure that each Deloitte Interviewee who is not a member, partner or employee of Deloitte:

(i) prepares diligently for each interview by reviewing such reading materials as Hewlett Packard may reasonably specify, provided that those reading materials are provided or notified to the Deloitte Interviewees sufficiently in advance of the interview (relative, amongst other things, to the volume of material to be reviewed);

(ii) provides such assistance and co-operation in those interviews as if they were being interviewed by Deloitte, including providing testimony as to their recollection of events and comments upon (a) whether particular facts were or were not known to them; (b) whether particular documents were or were not shown to them during the course of their audit work, and (c) where such facts or documents were not known or shown to them (whilst not expressing an expert opinion, consistent with their status as witnesses of fact) whether such facts or documents were in their opinion relevant to their work and the potential impact of such facts or documents on their work;

(iii) signs statements (including, if requested by Hewlett Packard, formal witness statements in the Lynch Proceedings) which faithfully reflect their honest recollection of events;

(iv) if requested by Hewlett Packard, voluntarily attends as a witness in the Lynch Proceedings.

6.2 Any document recording the contents of any interviews with Deloitte Interviewees and any notes, apart from witness statements formally filed in the relevant proceedings, will be privileged from production as documents coming into existence for the purposes of litigation. Hewlett Packard agrees and undertakes that such notes shall remain confidential, that Hewlett Packard will not waive privilege over such documents and Hewlett Packard will not disclose any such information or documents to any third party without the written permission of Deloitte.

6.3 Hewlett Packard undertakes and agrees to provide access upon request to Deloitte to all documentary evidence identified by Hewlett Packard which is

11

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000013
Exh 2990-0011

relevant to the proposition that information was withheld from the auditors or that the auditors were misled by Autonomy personnel or by third parties.

6.4 The Parties acknowledge that damages are not an appropriate remedy for any breach by them of this clause 6 and the party seeking performance of the obligations set out in this clause shall be entitled accordingly to the remedies of injunction, specific performance and/or other equitable relief for any threatened or actual breach of this clause 6.

6.5 The Parties agree that, whether or not equitable relief is granted by the court, no damages shall be payable for breach of any of the obligations set out in clause 6 of this Agreement.

## 7. Non-admission of Liability

7.1 It is acknowledged by the Parties that the execution and performance of this Agreement is not, and is not to be construed as, any admission whatsoever of any wrongdoing or liability on the part of any Party.

7.2 In no event shall this Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any admission of wrongdoing or negligence on the part of any Party in any action or any judicial, administrative, regulatory or other proceeding, save that the Agreement may be referred to in any proceedings to enforce this Agreement.

## 8. Confidentiality

8.1 The Confidential Information is confidential to the Parties and their advisers, who shall not disclose or otherwise communicate the Confidential Information to any third party without the written consent of all other Parties other than:

(a) to the Parties' respective auditors, insurers and professional advisers;

(b) as required by compulsion of law or regulation, or pursuant to an order of a court of competent jurisdiction or pursuant to any proper order or demand made by any competent authority or body where they are under a legal or regulatory obligation to make such a disclosure;

(c) as far as necessary to implement and enforce any of the terms of this Agreement,

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000014
Exh 2990-0012

 (d) as far as necessary to comply with Hewlett Packard's disclosure obligations in the Lynch Proceedings; and

 (e) as far as necessary to secure the amendment to the pleadings in the Lynch Proceedings referred to at clause 3.3(b) of this Agreement

in each case taking appropriate safeguards to ensure the continuing confidentiality of the Confidential Information, including, but not limited to, redacting any Confidential Information that is not required to be disclosed in the event that any of the above-mentioned circumstances apply.

8.2 For the avoidance of doubt, nothing in this clause shall prevent any Party from stating simply that "the dispute between the Parties has been satisfactorily resolved and the terms of that resolution are confidential."

## 9. Assignment

9.1 Hewlett Packard and Deloitte warrant that they have not sold, assigned, transferred or otherwise disposed of any Claims, or any rights which may give rise to Claims.

9.2 No Party shall assign or transfer any of its rights and or obligations under this Agreement without the prior consent of the other Parties (not to be unreasonably withheld).

## 10. Successors in Title

10.1 This Agreement shall be binding upon and inure to the benefit of the successors in title and assigns of each Party.

## 11. Warranty of Authority

11.1 Each Party warrants that this Agreement constitutes its legal, valid and binding obligation, that it has full power and authority to enter into and perform, and that it has taken all necessary action to authorise its entry into and performance of, this Agreement.

## 12. Third Party Rights

12.1 Save in respect of the settlement, releases and covenants not to sue in clause 3 and the indemnity provisions in clause 4, a person who is not a Party to this Agreement has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement but this does not affect any rights or remedy of a third party which

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000015
Exh 2990-0013

exists or is available other than under the Act.

## 13. Costs

13.1 The Parties shall each pay their own costs in relation to the Dispute and the negotiation, agreement, completion and performance of this Agreement, including for the avoidance of doubt costs incurred in complying with clause 6 of this Agreement.

## 14. Governing law and jurisdiction

14.1 This Agreement shall be governed by and construed in accordance with English law.

14.2 The Parties shall submit to the exclusive jurisdiction of the English courts for the purpose of any action to interpret, enforce or otherwise adjudicate the terms or any other aspect of this Agreement.

## 15. Enforceability

15.1 The Parties represent that they have taken legal advice and, to the best of their knowledge, information and belief, the Agreement as drafted is legal and enforceable without modification and is not subject to any claim of invalidity.

## 16. Severability

16.1 The invalidity or unenforceability or breach of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

## 17. Entire Agreement

17.1 This Agreement shall constitute the entire agreement between the Parties in relation to the subject matter hereof and all other terms are expressly excluded. The Parties acknowledge that in entering into this Agreement they are not relying upon any statement or representation made by or on behalf of the other Party, whether or not in writing, at any time prior to the execution of this Agreement, which is not expressly set out in this Agreement.

17.2 The Parties expressly agree that they will not have any right of action in relation to any statement or representations made by or on behalf of the other Party in the course of any negotiations which preceded the execution of this Agreement, unless such statements or representations were made fraudulently.

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000016
Exh 2990-0014

Signed as of 27 April 2016

By: *[signature: Paul H. Roed]*

For and on behalf of **HP, Inc**

By: ..................................

For and on behalf of **HEWLETT PACKARD ENTERPRISE COMPANY**

By: ..................................

For and on behalf of **AUTONOMY CORPORATION LIMITED**

By: *[signature]*

For and on behalf of **DELOITTE LLP**

16

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000017
Exh 2990-0015

Signed as of 27 April 2016


By.................................

For and on behalf of HP, Inc


By *[signature]*

For and on behalf of **HEWLETT PACKARD ENTERPRISE COMPANY**


By *[signature]*

For and on behalf of **AUTONOMY CORPORATION LIMITED**


By.................................

For and on behalf of **DELOITTE LLP**


15

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000018

Exh 2990-0016

Signed as of 27 April 2016

By..............................

For and on behalf of HP, Inc

By..............................

For and on behalf of HEWLETT PACKARD ENTERPRISE COMPANY

By..............................

For and on behalf of AUTONOMY CORPORATION LIMITED

By..............................

For and on behalf of DELOITTE LLP

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000019
Exh 2990-0017

## SCHEDULE

### PART A

Nigel Mercer
Richard Knights
Rob Knight
Lee Welham
Tom Murray
Ben Johnstone
Philip Barden

### PART B

Adam Milburn Smith
Stuart Henderson
Chris Brough
Chris Robertson
Lisa Bennett
Garrie Lumb

CONFIDENTIAL - Protected Material subject to Court Protective Order (Dkt 40)

USAO-DTLLP-000020
Exh 2990-0018