# EXHIBIT 3

| | |
|---|---|
| To: | 'sandra.daley'[sandra.daley@me.com]; 'John McMonigall'[John.McMonigall@apax.com] |
| From: | Andrew Kanter |
| Sent: | Wed 7/21/2010 6:03:36 PM |
| Importance: | Normal |
| Subject: | FW: Confidential |

Message below sent after discussions with John, Rob and Mike.

---

**From:** auditcommittee@autonomy.com [mailto:auditcommittee@autonomy.com]
**Sent:** 21 July 2010 23:02
**To:** 'Brent Hogenson'
**Subject:** RE: Confidential

Brent

As previously confirmed, the matters you raised have been passed to Deloitte and are the responsibility of the Audit Committee.

The independent review team of Deloitte (ie independent of our normal audit partner) have gathered additional information, and produced an interim report to the Audit Committee which the committee has discussed. Based on Deloitte's interim findings and discussion by the Audit Committee subject to certain constraints the company's Q2 results are being readied for release.

Andy Kanter did not say that I am unable to respond due to travel, rather that he was to schedule next steps. There are multiple schedules to coordinate which takes time.

I would like to schedule a meeting by video conference on Monday 26th July at 4pm UK time/8am US time. I understand that you will make yourself available. Please can you join from Autonomy's San Francisco office. We would like to take this opportunity to discuss further some of the matters you have raised.

In terms of process, my last email also said these are matters for the Audit Committee and ultimately the Directors, and that communication would be if, as and when deemed

appropriate. The instructions regarding handling and communication were clear. This latest email is a breach of those instructions.

I remind you of your basic obligation of confidentiality and that making accusations or allegations to third parties where you have not gone through correct process, reviewed all the relevant information and obtained all the relevant understandings, I'm sure you would agree, is negligent and can have serious consequences.

I look forward to discussing on Monday.

--John

---

**From:** Brent Hogenson [mailto:Brent.Hogenson@autonomy.com]
**Sent:** 21 July 2010 17:36
**To:** auditcommittee@autonomy.com
**Cc:** Knights, Richard (UK - Cambridge); Knight, Rob (UK - St Albans)
**Subject:** Confidential
**Importance:** High

Dear John,

I understand, from Andy Kanter, that you have been traveling and not able to respond to my email from July 10th. While I understand that we all have busy schedules, the company has issued a press release informing investors that interim results for the first half 2010 will be released on July 22, 2010. Andy Kanter has asked me for times available to meet and discuss the matters raised in my correspondence but the meeting now appears to be after July 22nd. I am concerned as to how these matters may impact our financial statements for the first half 2010. Does the release of first half results mean that the Audit Committee and Deloitte have resolved the questions asked in my previous correspondence? I would respectfully request to understand the progress or resolution to the matters raised and the impact, if any, to the first half 2010 financial statements determined by the Audit Committee and Deloitte.

Since I remain concerned about the nature of the company's response, uncomfortable with our process and not confident with our procedures to address these matters, which potentially have a

material impact on our financial statements, I have thought it best to include Deloitte on this email.

Regards,

Brent

---

**From:** Brent Hogenson
**Sent:** Saturday, July 10, 2010 2:10 PM
**To:** 'auditcommittee@autonomy.com'
**Subject:** Confidential
**Importance:** High

Dear John,

Thank you for your response to my email on July 8th. I was very concerned with the tone and nature of your response, on July 8th, to my numerous requests for either a meeting or discussion with the Audit Committee. I was specifically concerned that my motives were challenged, in your first response to me, without even a discussion with the Audit Committee and that you identified basic factual errors in my previous correspondence without providing any specific examples. Thus, your email on July 8th left me uncomfortable with the process and not confident with our procedures to address these matters. I would respectfully request to understand the resolution to my questions determined by the Audit Committee and Deloitte.

In your email from July 10th you reference a materiality threshold of $20 million for Audit Committee focus. Is this $20 million threshold an annual materiality level? Is there a lower threshold for Audit Committee focus on a quarterly basis? If individual issues are below materiality but cumulatively they exceed materiality, would the Audit Committee focus only on the individual transactions or the cumulative effect of the transactions on the financial statements. My questions to Deloitte and the Audit Committee have been addressing the cumulative affect of the transactions in question rather than the value of an individual transaction.

For example, the Capax Kraft $4M license fee recognized as revenue in Q3 2009 probably would not be material to the financial statements on an individual transaction basis. However, if you

consider the companies position on Capax Eli Lilly from Q4 2009 where Mike Lynch stated to me that the Capax Eli Lilly agreement was a legal obligation and would not be adjusted based upon the Eli Lilly agreement with Autonomy in Q2 2010.  Is this consistent with the Capax Kraft agreement in Q3 2009 where we removed the payment obligation from Capax, in a letter from the COO of Americas to Capax, after completing an agreement directly between Kraft and Autonomy in Q4 2009?  If it is not consistent and the Audit Committee or Deloitte determine that the agreements with resellers are either not fixed and determinable or within the company policies, then should the Audit Committee and Deloitte consider the cumulative effect of these transactions in addressing materiality to the financial statements on a quarterly or annual basis?

In your email from July 10th you ask me to first address questions with my manager or my manager's superior.  Since my manager is the Chief Financial Officer and I have reported these questions to his Superiors the Chief Executive Officer and the Audit Committee, I believe that I am in compliance with your email request.  In addition, the attached policy received from Andy Kanter on June 28th under section Procedures for Submitting Complaints, does not have an initial step requirement of communicating these matters with a manager prior to following the steps in the policy.  Nor does the policy have a $20 million or materiality threshold that must be achieved prior to submitting a complaint under the policy.  Therefore, I believe that I am following the attached policy and the direction from your email.

I will be available at your request for either a meeting or call with the Audit Committee.

Regards,

Brent

---

**From:** auditcommittee@autonomy.com [mailto:auditcommittee@autonomy.com]
**Sent:** Saturday, July 10, 2010 5:02 AM
**To:** Brent Hogenson
**Subject:** RE: Confidential

Dear Brent

Thank you very much for your quick reply.

In terms of moving forward, whilst Deloitte is considering these matters I request that you return to your day-to-day operational finance role. We will remit with any requests for additional information or other matters which we're able to share at an appropriate time.

As you note below, it is often the case that you would not have the full set of information in relation to any particular matter. In this regards, I would ask that if you do have any questions on a particular matter that you first discuss the item with your manager or his superior. It is not reasonable to assume that just because you don't have a piece of information that it doesn't exist, and therefore is a matter for the immediate concern of the company's governance bodies.

Importantly in addition levels of materiality need to be considered in terms of what the Audit Committee is there to focus on, which Deloitte has set at $20 million. After you have discussed with your managers, have the full set of information and considered materiality, it is at that point that a matter may be ripe to raise with the Audit Committee. On matters that fall below the materiality threshold, these may be areas in which policy can be improved. However again it is something that I would expect to be extensively discussed with the finance staff who are responsible for setting and carrying out policy. Only later, after a full discussion with your managers, should it be a significant matter should it be raised as a potential issue with the Audit Committee.

As you know, we are in the busiest time of the quarter so I'm confident any questions will be answered in good order based on the time available. I can assure you that the work is in hand and we await the results, in the meantime please concentrate on applying existing policy and judgement levels to the information currently being processed.

I look forward to meeting or speaking with you in due course.

Sincerely,

John McMonigall

---

**From:** Brent Hogenson [mailto:Brent.Hogenson@autonomy.com]
**Sent:** 08 July 2010 23:05

**To:** auditcommittee@autonomy.com
**Subject:** Confidential
**Importance:** High

Dear John,

Thank you for your email confirming that my messages have been received by the Audit Committee and Deloitte. It is good to hear that Deloitte is considering my questions on these matters and will report to the Audit Committee the results of their consideration. I would welcome the opportunity to either meet with the Audit Committee or have a call with the Audit Committee, at your request.

In your email you have raised questions as to whether I am acting in good faith or have a different motive. Let me assure you that my motives are only to ensure that we are properly recording company transactions within the financial statements and that there are no material errors. My previous emails and letters were sent unfiltered to ensure that the information presented to the Audit Committee and Deloitte was complete.

As to my motives, Autonomy has treated me very well since the acquisition of Interwoven in March 2009, noted by the following:

1)  I have been promoted twice in the past 5 quarters, first to the CFO of Americas and second to the President of Interwoven.

2)  My base salary has been significantly increased during an economic period where few employees received an increase to base salary

3)  I have received almost 100% of my quarterly bonus for the past 5 quarters in a period where few employees received that high of a percentage of their potential quarterly bonus

4)  I have received multiple new stock option grants over the past 5 quarters

5)  At the annual sales meeting in January 2010, I was one of a very few (approximately 15 out of all operations/sales employees) that received an award for performance in 2009

6)  I have been a significant part of the Interwoven/iManage operations/sales management which performed well in the last 5 quarters and I believe that we also performed well in Q2 2010. Therefore, my job satisfaction has been quite high.

7)  I have restricted stock units that vest in June and July 2010, where the approximate value exceeds $150k—a significant value to me.

If my motives were anything other than ensuring that we are properly recording company transactions within the financial statements and that there are no material errors, why would I place myself in this position by reporting my questions to the Audit Committee and Deloitte?

Also in your email, you stated that there were a number of basic factual errors in the information provided. I thought that the Audit Committee would want the information that was available to me at the time and that in some areas my information was not complete due to what was available to me. Therefore all data could not be checked without further investigation or interviews by either the Audit Committee or Deloitte. It would be helpful if you could be specific where I have made basic factual errors.

Finally, pursuant to the directions in your email today I will ask an additional question directly to the Audit Committee and have attached the following three documents to this email:

1) Capax Kraft agreement from Q3 2009

2) License agreement between Autonomy and Kraft from Q4 2009

3) Letter to Capax in Q4 2009 for a Revised Payment Arrangement

My question on this group of documents is similar to my previous question on the Capax Eli Lilly documents. We recognized $4M in license revenue from Capax Kraft on the Capax agreement in Q3 2009. We closed the end user agreement with Kraft in Q4 2009 and sent a letter to Capax relieving them of any payment obligation under their Q3 2009 agreement as Kraft required to pay Autonomy directly. Should we have recognized license revenue of $4M in Q3 2009 or after we completed the Q4 end user agreement with Kraft? I will be available at your request for either a meeting or call with the Audit Committee.

Regards,

Brent

---

**From:** auditcommittee@autonomy.com [mailto:auditcommittee@autonomy.com]
**Sent:** Thursday, July 08, 2010 10:07 AM
**To:** Brent Hogenson
**Subject:** Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01670897
Exh 0990-0007

Dear Brent

We have not yet met, so let me introduce myself as the senior longest serving member of the Audit Committee.

Andrew Kanter, Autonomy's General Counsel, has timely passed all of your messages to the committee and Deloitte to me.

I can confirm that the matters you raised for our attention are being considered by Deloitte who will report to the committee.  You must understand that these are ultimately matters for the Directors to consider, not for a dialog between an operational staff member and the auditors, and the manner in which you have sought to subvert process is inappropriate.  Assuming that the General Counsel is not following procedure without even calling him raises questions of good faith.

Under the company's policies you are to bring any relevant matters to the Audit Committee, rather than to the auditors.  The Directors will remit if we require any further information or have a further need to communicate.

As noted over the past few weeks I have seen all of your correspondence on this matter, going back to the first email to Dr Lynch, Autonomy's CEO.  Whilst the matter remains under review, I can see from the correspondence that there have been a number of basic factual errors that could have been resolved with a simple phone call to your superiors.

Thus I can say that I am surprised by the series of recent emails.  The earlier of the two from the beginning of this week (the correspondence between you and Sushovan Hussain) seeks to raise concern over day-to-day operational correspondence between a regional manager and the group's Finance Director.  Indeed in one email you say you think it "appropriate to include" the Audit Committee on this type of correspondence.  To be clear:  it is not.

You have broken process in the past: I asked Dr Lynch to continue to gather information but instead you decided to seek out the company's auditors for your own ends (and have done so again), which raises questions of motive.

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01670898
Exh 0990-0008

I must also raise the question as to whether you have been negligent in your actions by sending correspondence to the Board without even checking the basic facts with your boss, as noted above.

At this time I suggest that you return to your role as part of the regional operational management of gathering the financial reports required by your role in order to close the quarter. It is these reports which the group's management, auditors and Directors use to make judgements, which are not within your area of responsibility.

As part of regional operations, you are expected to act in accordance with the directions of your department's senior management, to ask relevant questions of them and inform them of any matters of concern. You will be notified should there be any policy or structural change.

I am happy to arrange a call or meeting between ourselves and with my colleagues to discuss any of these matters.

Sincerely,


John McMonigall

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01670899
Exh 0990-0009