# EXHIBIT 23

≡ll ERNST & YOUNG

Ernst & Young LLP
303 Almaden Boulevard
San Jose, California 95110
Tel: 408 947 5500

Date:   December 2012

To:     Hewlett Packard FY 2012 Audit Files

## Autonomy Historical Forecast Memo

*Background*
On October 3, 2011, the Company (Hewlett Packard ("HP") or "the Company") completed its acquisition of Autonomy, plc ("Autonomy") for a total purchase price of $11.1 billion. On November 20, 2012 HP management issued its fourth quarter earnings. Included within the earnings report and Form 8-K were certain allegations of accounting improprieties, misrepresentations and disclosure failures by the Autonomy prior to their acquisition. They also reported a $8.8 billion impairment of Autonomy's Goodwill and Intangible assets and stated that the majority of the $8.8 billion (also characterized as $5.5 billion in a separate press release) related to the allegations.

Because certain alleged accounting improprieties, disclosure failures and misrepresentations by former Autonomy management have been preliminarily identified by HP as part of its ongoing investigation and publicly disclosed and communicated to regulatory authorities in the U.S. and U.K., HP considered whether any of the Impairment Charge should be reflected in the original FY11 purchase accounting. The Company's considerations and conclusions are addressed in our Autonomy impairment memo included in the corporate Gamx.

HP believes the impairment charges are the result of a change in the estimated fair value of Autonomy resulting from changes in forecasts that arose subsequent to the measurement period. There were several elements involved in developing the forecasts used to estimate the fair value of Autonomy both at the acquisition date and as of August 1, 2012, including but not limited to estimates of baseline revenue and operating profit, revenue mix, cost structure, pricing strategies, synergies, overall growth, market trends and competitive landscape. As part of updating the estimate of the fair value of Autonomy as of August 1, 2012, HP updated the forecast based on the most recent (current) information available related to all  elements of the business, and by the fact of using current information the analysis would be inclusive of  the impact of the accounting improprieties, disclosure failures and misrepresentations noted above.

HP believes it has identified certain errors in Autonomy's historical results. The financial statements of Autonomy were audited in 2010 but no audit has been completed for 2011. The majority of the accounting irregularities relate to:

1. Gross versus net accounting for hardware transaction that have no software elements
2. Channel sales, relicensing, and upfront hosting fees recognized upfront
3. Reciprocal Arrangements

This memo addresses our considerations of the allegations on the original valuation of Autonomy at Q4'11, specifically around the determination of fair value at the time of the acquisition and the evaluation of the effect of known errors.

*Documents Reviewed:*
   ➢ J702 – Presentation to the SEC
   ➢ J703 – Presentation to the SFO
   ➢ J704 – Autonomy rebaselining

*Determining Fair Value*

1

Confidential Treatment Requested by Ernst & Young LLP

The Company engaged D&P to assist with the valuation in Q4'11 and they assisted in the Step 1 and Step 2 impairment test for FY12. D&P are experts in valuation services and perform impairment analysis for a number of Silicon Valley technology companies. HP has used D&P's services for a number of years. Refer to the separate TAS Memo for further discussion of D&P's qualifications.

The Company arrived at its concluded enterprise value in 2011 based on an income valuation approach. D&P estimated the fair value of the Autonomy business using the Discounted Cash Flow (DCF) model. The DCF approach is considered a reasonable methodology to apply for the purposes of valuing a business enterprise.

*Evaluating the Effect of the Known Errors*

Some of the accounting irregularities mentioned above are purely timing differences. Such timing adjustments relate to revenue recognition and generally "turn" in the subsequent period. Furthermore, the cash for these arrangements was generally received at the time of the purported sale or shortly thereafter. As such, the timing related irregularities would not have a material impact to the discounted cash flow model. Further discussion to this effect is documented below:

*Gross treatment of hardware pass-through*
The Autonomy standalone hardware sold in FY10 and FY11 (prior to acquisition (January - September)) was roughly $105 million and $85 million respectively. Having evaluated ASC 605-45-15 - Principal Agent Considerations Management concluded that the majority of indicators support net accounting treatment.
While this does impact the presentation of the income statement we do not believe these items have an impact on the "run-rate" cash flows of the business. Since Autonomy sold the hardware at a loss, these transaction reduced cash flows. Alternatively, HP may have considered different growth rate assumptions Therefore, it is unclear as the impact on HP's used DCF valuation model that was used to estimate a fair value of the Autonomy business.

*Channel Sales/Relicensing/Upfront Hosting Fees*

Transactions were identified in FY'10 and FY'11 which show sales made to channel partners close to a quarter-end which were then, in future quarters, credited and/ or sold directly to end customers. Other revenue recognition concerns include incidents where within the Autonomy business future support revenues have been cancelled in exchange for new license sales of the same product followed by lower ongoing support revenue streams or where the customer pays for Hosting or Software as a Service that is recognized upfront.

We do not believe these items have a significant impact on the "run-rate" cash flows of the business. We recognize that this practice is not in compliance with US GAAP, but is not materially impact the timing of the cash flows (as it was only moving revenue between quarters). Because the company used a DCF valuation model to fair value the Autonomy business; we do not believe that these timing differences would materially impact the valuation of Autonomy.

*Reciprocal Arrangements*

During managements review they identified that reciprocal arrangements were entered into during FY'10 and FY'11. Reciprocal arrangements can be valid business transactions; the key accounting question is whether to recognize the sale as revenue and the purchase separately as a cost of sale, or whether the transactions should be recognized net i.e. within the same line in the Income Statement. There is also uncertainty as to whether there was value Autonomy received in exchange for the software.

EY-HP-GMX-12-015244
Confidential Treatment Requested by Ernst & Young LLP

For the most part, if value received is legitimate, reciprocal arrangements do not impact cash flows. HP management identified approximately $12 million and $15 million in 2010 and 2011, respectively, of software revenue that should have never been recognized as revenue as neither cash or services were never received.

The Company engaged D&P to run a sensitivity report to estimate the impact of these revenue adjustments in the historic financial information (as these were used as the basis for the projected financial information). Based on D&P sensitivity analysis these adjustments do not have a material impact on the original valuation model (less than $300 million). See Appendix A for evidence of this sensitivity analysis. We consider this calculation to be a hypothetic analysis. We do not believe it is appropriate to consider hypothetical analysis to quantify an impact on purchase accounting. It is not possible to understand how all the various assumptions developed in estimating fair value would change in light of varying one or several other assumptions.

*Conclusion*
We believe the impairment charges stem from HP's change in forecast of its future operations and therefore the Company should follow the guidance of ASC 850, and recognize the impairment charges in 2012. The impact of the valuation at Q4'11 of the known accounting errors does not materially impact the valuation as contemplated at Q4 2011, and further, it would not be appropriate to consider them in isolation.

Because the Impairment Charge is a result of a change in the estimated fair value of Autonomy resulting from changes in forecasts, based on specific guidance in ASC 850, HP does not believe that any portion of the Impairment Charge should be reflected in the FY11 financial statements, and we concur with this conclusion.

*Appendix A:*

APPENDIX A - BEV -
HP-Autonomy.pdf

EY-HP-GMX-12-015245
Confidential Treatment Requested by Ernst & Young LLP