Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
   vs.                          )   NO. CR 18-00577-CRB
                                )
MICHAEL RICHARD LYNCH and       )
STEPHEN KEITH CHAMBERLAIN,      )
                                )
          Defendants.           )
_____ )

                          San Francisco, California
                          Wednesday, November 29, 2023

                 TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
                     ISMAIL J. RAMSEY
                     United States Attorney
                     450 Golden Gate Avenue
                     San Francisco, California 94102
                BY:  ADAM A. REEVES
                     ROBERT S. LEACH
                     ZACHARY ABRAHAMSON
                     KRISTINA GREEN
                     ASSISTANT UNITED STATES ATTORNEYS

For Defendant Lynch:
                     CLIFFORD CHANCE US LLP
                     31 West 52nd Street
                     New York, New York 10019
                BY:  CHRISTOPHER MORVILLO, ATTORNEY AT LAW

          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1    **APPEARANCES**:   **(CONTINUED)**

2    For Defendant Lynch:
                         STEPTOE & JOHNSON LLP
3                        1330 Connecticut Avenue, NW
                         Washington, D.C. 20036
4                  BY:  **REID H. WEINGARTEN, ATTORNEY AT LAW**

5    For Defendant Chamberlain:
                         BIRD MARELLA BOXER WOLPERT NESSIM
6                        DROOKS LINCENBERG & RHOW PC
                         1875 Century Park East, 23 Floor
7                        Los Angeles, California 90067
                   BY:  **GARY S. LINCENBERG, ATTORNEY AT LAW**
8                        **MICHAEL C. LANDMAN, ATTORNEY AT LAW**
                         **RAY SEILIE, ATTORNEY AT LAW**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Wednesday - November 29, 2023                        1:55 p.m.

 2                        P R O C E E D I N G S

 3                           ---o0o---

 4        THE CLERK:  Calling Criminal Action CR-18-0577, USA

 5   versus Michael Richard Lynch and Stephen Keith Chamberlain.

 6        Counsel, please step forward and state your appearances

 7   for the record.

 8        MR. LEACH:  Good afternoon, Your Honor.  Robert Leach

 9   on behalf of the United States.  I'm here with Adam Reeves,

10   Kristina Green, and Zach Abrahamson.

11        THE COURT:  All right.  Good afternoon.

12        MR. MORVILLO:  Good afternoon, Your Honor.  Chris

13   Morvillo and Reid Weingarten for Mr. Lynch, who's present in

14   the courtroom.

15        MR. LINCENBERG:  Good afternoon, Your Honor.  Gary

16   Lincenberg.  And two of my colleagues, Michael Landman and Ray

17   Seilie, are with me, along with our client, Mr. Chamberlain,

18   who is present in court.

19        THE COURT:  All right.  Good afternoon.  Now, if

20   everybody is sitting, I am going to -- I left my papers in

21   chambers, so I'll be back in two minutes.

22                    (Pause in proceedings.)

23        THE COURT:  So I assume, in my absence, you were all

24   discussing who wants to come forward and represent Mr. Brandon

25   Sims; because if you do, you'll get a lot of credit, because
```

1  that's not a representation that's going to go easy that I can

2  predict, unless anybody has a different prediction.  I see

3  there are some issues there.

4       All right.  Well, thank you very much for coming.

5       This matter is on for a motion to dismiss as to the counts

6  and, in particular, a motion to dismiss Count 17, as a

7  basically improper joinder.  Not an improper joinder, that it's

8  duplicitous and it ought not to survive in this indictment.

9       It's also on for discovery.  I've received

10  Mr. Chamberlain's -- where are you Mr. -- there you are --

11  filing, requesting the issuance of subpoenas.  And, of course,

12  I've received Mr. Lynch's request as well.

13       So let me -- and I've read everything.

14       So let me get to what I think is the heart of it, in terms

15  of the motions that are in front of me.

16       As to the first two motions, I'm denying those motions for

17  the reasons stated by the Government.  I think that they

18  survive for the reasons that the Government has opposed the

19  dismissal.

20       Count 17 presents a different problem.  Count 17 is

21  complicated.  It's complicated because, I think, in part, the

22  cure for its, quote, duplicitous nature may very well rest with

23  the motion of -- pardon me -- with the bill of particulars.

24       The bill of particulars has been drafted, I think, with

25  sort of an escape clause, as the Defense points out.  It's not

1    just unequivocal.  It seems to, maybe, equivocate a bit.  And,

2    of course, that's -- in the nature of a bill of particulars,

3    that's what a bill of particulars is designed to avoid.

4         It's a notice type of thing that says "This is what the

5    case is.  And you're on notice it's this and it's not that."

6         And the Government -- I could order the Government to

7    refine its bill of particulars, and then see whether or not it

8    does survive it all.

9         That is a process that I could engage in, and which I

10   choose, at this point, not to engage in.  Instead, the Court,

11   sua sponte, is severing Count 17 from the indictment, and the

12   defendant will -- the defendants will go to trial on the other

13   counts.  I will at some point decide Count 17, and render a

14   judgment, but it will not be part of the initial trial.

15        The Court finds that, actually, both sides in this case

16   would be prejudiced by the -- for different reasons, by the

17   inclusion of Count 17 if it were part of this trial.  And, in

18   particular, the length of the trial would be unduly lengthened

19   given the issues that would be introduced by Count 17.  So I'm

20   severing it.

21        And, accordingly, the motions with respect to discovery

22   are hereby denied as moot.  The subpoenas are hereby denied as

23   moot because the Court feels that it's not presently before it.

24        So with that surprise to everybody, do you want to

25   comment?

1          **MR. LEACH:**  Could I first confer with -- for one

2    second with my counsel?

3          **THE COURT:**  Confer.  And if you want to say something,

4    you can say something.  We're here.  Everybody made the big

5    trip.  So come on.

6          **MR. LEACH:**  Thank you, Your Honor.

7       That didn't take long.

8       That's fine with the Government.  Thank you.

9          **THE COURT:**  Okay.

10         **MR. REEVES:**  Good afternoon.  Adam Reeves for the

11   United States.

12         **THE COURT:**  Who's going to bell the cat?

13         **MR. WEINGARTEN:**  I am quite surprised by the ruling.

14      Reid Weingarten for --

15         **THE COURT:**  It's nice to have you back here,

16   Mr. Weingarten.

17         **MR. WEINGARTEN:**  It's wonderful to be back.  Thank

18   you.

19      You did catch me by surprise.  I didn't expect that

20   ruling.  But I would observe the following:

21      That, even without Count 17, my expectation at this trial

22   is that there will be a significant amount of post-acquisition

23   evidence clearly relevant and clearly admissible.  And let me

24   just give a couple of examples.

25      The Government not only returned the superseding

1    indictment with Count 17, which changed the world.  And, of

2    course, their bill of particulars talked about how they wanted

3    to introduce evidence of the first two quarters of 2012, and

4    that's obviously post-acquisition stuff.

5         They also indicated in their 404(b) motion, that whatever

6    happens with Count 17, the allegations that they've made

7    against Mike Lynch in Count 17 are coming in, or they're going

8    to endeavor to have them to come in as 404(b).

9         The combination of, obviously, of Count 17, the bill of

10   particulars representations made by the Government, and the

11   404(b) notice, caused us to request the additional evidence in

12   the form of our subpoenas.  I still believe that, because of

13   the 404(b) motion, and because there's every expectation in our

14   defense that Mike Lynch will testify, and that his intent will

15   be critically important at this trial, and it will be

16   critically important to show how he behaved after the

17   acquisition, utterly consistent with innocence, that

18   post-acquisition stuff is going to be part of the trial, even

19   without 17.

20        I just -- that's my first reaction to the Court's ruling,

21   and I wanted to make that point to the Court today.

22        **THE COURT:**  Okay.  Well, I would say in response to

23   that, first of all:  The question of what post-acquisition

24   activity would be permitted is a question which, obviously,

25   I'll decide upon being presented with, quote, offers of proof

1  as to its relevance and materiality and its probative value and

2  that it outweighs the undue consumption of time.

3      However -- now I say what is obvious -- this is not the

4  first time this case has gone to trial.

5          **MR. WEINGARTEN:**  I know.

6          **THE COURT:**  This case went to trial and, in some

7  respects -- some limited respects, and maybe different from

8  what you intend to do -- there was an offer by defense counsel

9  to go into post-acquisition conduct.  That was -- and which I

10 denied.

11     Now, whether I correctly denied it or not -- that is to

12 say, in some larger sense, correctly denied or not isn't really

13 an issue because the circuit affirmed this -- the Court's

14 decision.  So I would just say I'm not bound or -- nor are you,

15 to the rulings of this court in that case, or the appeal in

16 that case, as to certain aspects.

17     You are bound by the -- at least I am; I don't know if

18 you're bound by anything.  I don't mean you to act in a

19 boundless way, I'm saying this Court has to follow what the

20 circuit says is law.  And all I'm saying is that you should be

21 mindful of that when you make your presentation as to why, in

22 this particular case, it justifies proceeding in a particular

23 way.

24     And so I say that maybe this is more of an opening the

25 door-type of ruling.  That is to say, maybe, if the Government

```
1   presents its case in a way consistent with pre-acquisition
2   conduct -- which they have to prove in any event; there's no
3   such thing as a hindsight fraud, it either occurred or didn't
4   occur as of the dates that it's alleged to have occurred.  If
5   it didn't occur, whatever he did afterward makes no difference.
6        Which is, of course, somewhat instructive with Count 17,
7   because if he's acquitted of all the other counts, I think that
8   it becomes somewhat academic as to what would happen to
9   Count 17.  I've not heard the Government ever prosecuting a
10  case solely of a coverup when the individual case has been
11  found not worthy of liability.  And I'm sure that's not what's
12  in focus here.
13       Nevertheless, I would just encourage the Defense to lay
14  their -- to the extent they want to, consistent with their
15  defense, lay their cards on the table and get me to rule if I
16  can.
17       Now, I will say this -- now, you've come to up obstacle
18  number 2 with me.  Obstacle number 2 is, I'm generally
19  reluctant to issue -- to rule on motions in limine in which I
20  think the context of the relevance of the motion is not
21  heightened for the Court's consideration, that it's not
22  presented.
23       Now, you're saying a different thing and I hear you.
24  You're saying:  Look, Judge, our defense is in large part or in
25  some part dependent on post-acquisition conduct.
```

1        Maybe it is and maybe it isn't.  I don't know.  I don't

2   know.  But I don't want anybody to be blindsided.  I don't want

3   you to think that you're going to come here and try Case A, if

4   it's pretty clear that I'm not going to allow Case A in.

5        I mean, you can present it and you can argue it.  But I

6   want you -- and I'm really preaching to the choir; the idea

7   that you wouldn't be prepared to try this case is beyond my

8   view.

9        I just want to make sure that we all see what the ground

10  rules are, whether we like them or not, as early on as we can

11  with the understanding that I -- I'm somewhat -- I'm reluctant

12  to deal with motions in limine about certain conduct that would

13  only become relevant if certain things happen.

14       Now, you say, well, your client will testify.  And that

15  decision is entirely your client's.  It may be that, after you

16  hear the case and your case-in-chief, you believe or your

17  client believes that he should not testify, or he wants to

18  testify.  That's entirely his right.

19       And at that point, you make certain decisions.  Or you may

20  make them in advance.  But, indeed, the decisions that you're

21  going to be called on to make are essentially decisions that

22  are made in realtime.  And the Court likes to be able to decide

23  things in realtime, because then I have an entire context.

24       So I say:  Look, if the Government introduces certain

25  things, opens the door to certain issues, maybe something that

1  otherwise would be irrelevant, or otherwise would be

2  excludable, comes in.

3       Similarly, if the Defense says X, and they have something

4  in post-acquisition conduct that demonstrates not-X, then it

5  becomes relevant, where normally X or not-X wouldn't come in.

6       So everybody has got to lay it out.  You lay it out to

7  yourself.  I don't care what you decide.  No problem one way or

8  the other.  But lay it out to yourself and see how it goes, and

9  then figure out how you're going to deal with it.  But I'm more

10  than willing to meet and discuss motions in limine in --

11  sufficiently in advance of the trial to allow the parties to

12  prepare, to the extent that I can be helpful in that regard.

13           **MR. WEINGARTEN:**  May I say one more thing?

14           **THE COURT:**  You may say whatever -- Mr. Weingarten, we

15  have the afternoon.

16           **MR. WEINGARTEN:**  Thank you.

17           **THE COURT:**  Go ahead.

18           **MR. WEINGARTEN:**  So when I was last here, I talked

19  about the rule of the case and you said:  No rule of the case.

20  You're completely different.  Different defendant.  You weren't

21  here the last time.

22       And I said, Great.  And I thought you were prescient with

23  all that came afterwards because I did anticipate, you know, we

24  were going to have to take on Count 17 and all that, and that's

25  why we wanted more evidence with our subpoenas.

1        Having said that, I think you were prescient in that, this

2   trial, the trial in March, will be completely different than

3   the last trial.

4        **THE COURT:**  Well, it would be different -- I can't

5   imagine that it will be completely different.  I mean, they

6   arise out of the same indictment.

7        **MR. WEINGARTEN:**  Well, that's fair.  That's fair.

8        But I would say that there will be an active defense, and

9   there is an expectation that my client will testify.

10       When that happens, we are going to center on his intent.

11  We believe there's a tremendous amount of evidence utterly

12  inconsistent with culpability.  And we expect an effective and

13  aggressive cross-examination, obviously, from my friends over

14  here.

15       I guess what I'm saying -- and I'm thinking aloud here --

16  is it seems --

17       **THE COURT:**  We all do that.

18       **MR. WEINGARTEN:**  Thank you.

19       There seems to me to be an inevitability that

20  post-acquisition stuff is going to be important, and it's going

21  to be relevant, and it's going to be admissible.  And I'm just

22  trying to figure out how best -- and you're saying, perhaps a

23  motion in limine or a trial brief or something along those

24  lines, so that you're apprised of what we're intending to do.

25       **THE COURT:**  Well, it's not that I'm concerned about

```
 1   being surprised.  I mean, that's the job.

 2              MR. WEINGARTEN:  Sure.

 3              THE COURT:  That's okay.

 4       But I think what you can expect -- what you ought to

 5   expect from the Court is the Court's candor, but you also want

 6   to expect some indication of how the Court is going, and what

 7   the Court thinks is in and what the Court thinks is out.

 8       It just -- now, you don't have to agree with it and you

 9   can contest it, but -- well, I don't know that I'm adding

10   anything to what you said.

11       So people would say "You've said enough.  Don't say

12   anything more.  You'll just get in trouble somewhere down the

13   line."  Like somebody will come back and say "Well, didn't you

14   say this, Judge?  Like, didn't you say this is a separate

15   case?"

16              MR. WEINGARTEN:  I was --

17              THE COURT:  Well, of course, it's a separate case; but

18   it's a separate case in which I don't think successfully can be

19   argued the territoriality of it.  I mean, that was in the last

20   case, you know, you couldn't prosecute a person for this when

21   they're in England doing these things and so forth.

22       I mean, certain things have been decided.  Certain

23   things -- your client's conduct with respect to this has not

24   been decided at all.  Has not been heard.

25              MR. WEINGARTEN:  Right.
```

1          **THE COURT:**  As far as I'm concerned -- and I can

2     answer truthfully:  I don't remember any of it.  You know?  I

3     mean, maybe -- it was -- what? -- five-years ago?  I don't know

4     how long ago it was.  Maybe that's the shelf-life of what

5     occupies my brain.

6          But, I mean, I don't know what, if any, his involvement

7     was.  So you are -- in that regard, it's a -- it's a clean

8     slate.  I hope -- I mean, I hope you understand that.  I mean,

9     it's the truth.  And we'll just see how it goes.

10          **MR. WEINGARTEN:**  Okay.

11     I would request permission to consult with --

12          **THE COURT:**  You can consult with him any time.

13          **MR. WEINGARTEN:**  We didn't anticipate this ruling.

14          **THE COURT:**  Go ahead.  Mr. Morvillo is no stranger.

15          **MR. WEINGARTEN:**  Okay.  Thank you.

16          (Defense counsel conferring.)

17          **MR. LINCENBERG:**  This is Gary Lincenberg.  Hi, Judge.

18          **THE COURT:**  Hello.

19          **MR. LINCENBERG:**  Judge -- Mr. Weingarten -- they're

20     consulting on an issue with regard to the Court's ruling.

21     If -- I think it makes sense, there's a couple of points we

22     wanted to argue.  They indicated it's okay, if it's okay with

23     the Court --

24          **THE COURT:**  Sure.

25          **MR. LINCENBERG:**  I'm going to have my colleague

```
 1   Mr. Seilie, first, address the Court's ruling or tentative
 2   ruling on one of the motions --
 3          THE COURT:  Tentative ruling?  What was tentative
 4   about it?  If it was tentative, I apologize for that confusion.
 5          MR. LICENBERG:  When it's against me --
 6          THE COURT:  It's final.
 7          MR. LINCENBERG:  -- I like to think of it as
 8   tentative.
 9          THE COURT:  All right.  Okay.
10       Well, I'm not quite sure it's so against you.
11          MR. LINCENBERG:  This has to do with -- I wasn't -- it
12   sounded like the Court ruled on our motion with regard to
13   statute of limitations or did --
14          THE COURT:  Yes, I did.
15          MR. LINCENBERG:  Okay.  So that's what --
16          THE COURT:  Oh, no.  I'm sorry.  The first two
17   motions, one was on the statute of limitations and the other
18   was your argument.
19          MR. LINCENBERG:  There was an extraterritoriality by
20   Mr. Weingarten as well as.
21          THE COURT:  The first two motions.  Did I miss that?
22          MR. LEACH:  One was on statute of limitations, Your
23   Honor.
24          THE COURT:  What?
25          MR. LEACH:  Sorry.  One was on the statute of
```

1    limitations, Your Honor.  The second was one on failure to

2    state a claim because of duplicity and failure to state a claim

3    for securities fraud.

4         I understand the Court is denying both of those --

5              THE COURT:  Yes, I did.

6              MR. LINCENBERG:  We had a separate statute of

7    limitations --

8              THE COURT:  It's denied.

9              MR. LINCENBERG:  Okay.  Can we briefly are heard on a

10   part of that?

11             THE COURT:  Sure.

12             MR. LINCENBERG:  Thank you, Your Honor.

13             THE COURT:  So -- oh, that's very nice.  He got you to

14   make the argument.

15             MR. SEILIE:  Exactly, Your Honor.

16             THE COURT:  I just want to get this, really, down.

17   He -- after learning that I denied the motion, he now has

18   suggested that you make the argument.

19             MR. SEILIE:  That's correct, Your Honor --

20             THE COURT:  That's great.

21             MR. SEILIE:  -- I think, he's trying to preserve his

22   record.

23             THE COURT:  Pardon?  Well, maybe I'll change my mind.

24   Go ahead.

25             MR. SEILIE:  Ray Seilie on behalf of Steve

1    Chamberlain.

2         Your Honor, I just wanted to address one small part of the

3    statute of limitations motion.

4              **THE COURT:**  Sure.

5         **MR. SEILIE:**  There was a request -- in addition to the

6    request for dismissal on timeliness grounds, there was also a

7    request for additional discovery into the Government's purposes

8    for seeking these foreign materials.

9              **THE COURT:**  Right.

10        **MR. SEILIE:**  In our briefing, we identified the

11   circumstances which, in our view, lead to at least some

12   possibility that the reason these requests were sought in the

13   first place was in order to extend the statute of limitations

14   and not for a legitimate investigative reason.

15        In similar circumstances, I believe this court has

16   indicated that discovery would be appropriate in order to see

17   whether the purpose -- whether the Government's requests were

18   made as part of a good faith investigative purpose or made for

19   the improper purpose of simply buying themselves a three-year

20   extension of a statute of limitations.

21             **THE COURT:**  And I was the one -- I think I was the one

22   who granted the extensions; right?

23        **MR. SEILIE:**  You granted one of them, I believe.

24             **THE COURT:**  I granted one.  So you're saying I was

25   deceived by the Government?

1      **MR. SEILIE:**  Well, I think -- and I can address -- at

2   least with respect to Count 2, which I could get into as well,

3   you were not the judge who signed off on that order.  I believe

4   you only --

5      **THE COURT:**  Who was it?  Who was the judge?

6      **MR. SEILIE:**  I believe it was Judge Chen, but I'm

7   not --

8      **THE COURT:**  Oh, you could make a very good argument on

9   this.  Go right ahead.

10     **MR. SEILIE:**  It wasn't that you were -- none of

11   arguments that we raised in our motion indicate that you --

12   that anyone was deceived, Your Honor.  I think the issue is --

13   you know, on their -- on the surface, these requests were not

14   really disputing that they sought evidence that's relevant to

15   some of the charges in this case.

16     The issue is more about the timing.  When you look at the

17   timing, the Government is making these foreign requests right

18   before various statutes of limitation expire.  And they're

19   seeking evidence that they either have in some form in their

20   possession already, or are seeking evidence that they would

21   have sought at the very beginning of their investigation.

22     These aren't sort of forms of evidence that you would only

23   know to seek after pieces of the investigation have been

24   completed.

25     **THE COURT:**  How do you know they would have only

1    sought -- I mean, do you know the way the Government works?

2        I mean, the idea that the Government works according to

3    some well-defined pattern of practice is true in some cases.

4    But it's also not true in many other cases.  Things occur to

5    them.  They take a look at their evidence.  Somebody says

6    something to them, and they say "Oh, well, maybe we can find

7    out from this and that," and so forth.  I mean, they are --

8    that's just not the way they work.

9        If you were to give me some, you know, "This is the

10   protocol, you must do it this way," and they don't do in that

11   way, then I would have some concern.  But I don't think there's

12   a real protocol that's laid out by DOJ.

13       And I think, practical experience tells me that

14   investigations are, for lack of a better word, haphazard.

15   They -- they come about as a result of somebody saying

16   something to them, somebody -- new eyes looking at it,

17   interpreting it differently.  That's just the way it works.

18           **MR. SEILIE:**  Well, Your Honor, I guess -- I'm sorry.

19           **THE COURT:**  And I'm not quite sure what discovery

20   would really -- other than, of course, it would prolong it and,

21   of course, it looks at processes that are generally not looked

22   at in terms of disclosure.  And it certainly complicates the

23   case.  Though, in some cases it may be warranted.

24       I'm not saying it's never warranted.  There is -- what you

25   sought is warranted.  I think, in this case, though, it

1    doesn't -- it's not warranted, and that's why I've denied it.

2        So I want to thank you.  And your dear associate there

3    owes you a big one.

4            **MR. SEILIE:**  Thank you, Your Honor.

5            **THE COURT:**  Okay.  Thank you very much.

6        Yes.  Who else are you throwing up here?

7            **MR. LINCENBERG:**  I'll throw --

8            **THE COURT:**  Take the sword -- listen --

9            **MR. LINCENBERG:**  Two small points.

10           **THE COURT:**  Yes.

11           **MR. LINCENBERG:**  First, the Court issued an order for

12   us to file and proceed with letters rogatory as to a witness

13   named Rob Knight; he was one of Deloitte accountants.

14       I wanted to advise the Court, we didn't do that because

15   it's unnecessary.  The Government has, in good faith, assisted

16   us, and Mr. Knight has now accepted subpoena --

17           **THE COURT:**  That's great.

18           **MR. LINCENBERG:**  -- to testify here in San Francisco.

19       The second point I wanted to mention -- so the parties

20   have done a lot of meeting and conferring.  We have a tentative

21   schedule for depositions in the UK in January.

22       There is one witness in Australia that the Government

23   wants to depose.  His name is Matt Stefan.  And we had

24   discussed trying to do this in January because of the crunch of

25   time and what needs to be done in February and so forth.

1     Government counsel, as I understand it, has been trying in

2   good faith to secure testimony from Mr. Stefan.  They were

3   unable to come up with a date in January.  Government counsel

4   indicated that they're hoping to do so in February.

5     And I would ask the Court to set a deadline for the taking

6   of Mr. Stefan's deposition, if it's going to occur, as

7   February 2nd.  And the reason I make the request is because

8   there's a -- a big crunch of tasks that we're all doing in --

9   every day now, but February and into March, it's going to be

10  overwhelming.  There's motions --

11     **THE COURT:**  Let me cut this short.  I don't disagree

12  with you that it's a good idea to get this done early rather

13  than late.  But the way I would proceed is I'm not going to set

14  a deadline; however, if the deposition then interferes with

15  other work, other things that you can't do both at the same

16  time, then I'll consider quashing it at that point.

17     But, in fairness, this is not a witness they control, as

18  far as I know.  And you start giving deadlines and the witness

19  says, "All, I have to do is hold out until February 2nd, and

20  they'll never bother me again" -- not that they would think

21  that.  Right.  That's why I don't put a deadline.

22     Nevertheless, I'm sensitive to your request, and if it

23  turns out to be difficult, then you can come back to court and

24  explain to me why.

25     **MR. LINCENBERG:**  Thank you, Your Honor.

1          **THE COURT:**  Thank you.  Okay.

2          **MR. REEVES:**  Thank you, Your Honor.  I had one quick

3     question, and I think that's it for the Government.

4          **THE COURT:**  Good.

5          **MR. REEVES:**  The trial will have a premium around

6     scheduling, and witnesses are already asking about what week

7     they would appear in the second of March and early April.  My

8     question is:  What is the schedule, the trial schedule,

9     roughly, that the Court intends to follow with regard to the

10    trial?  How many -- what days, if you're in a position to tell

11    us?

12         **THE COURT:**  Okay.  So that's a function, in part, of

13    how long is this trying trial going to take?

14         **MR. REEVES:**  Well, you just made it shorter, Your

15    Honor.

16         **THE COURT:**  Well, arguably, but who knows.

17       Well, I think it's a good idea that you meet and confer,

18    if necessary.  Come up with some proposals.  I want to try -- I

19    think, as a general rule, we won't meet on Friday; I just think

20    that that's fine.

21         **MR. REEVES:**  Okay.

22         **THE COURT:**  The problem is that I know that counsel is

23    out of state or, worse, Los Angeles.  And the question is, I

24    think, you do have to come in on Sunday, I just don't know how

25    to avoid -- I don't want to start late Monday morning, because

1    number one that depends on any number of things, and I've got a

2    jury, you know, which I assume I'll have 16 people sitting

3    here; that is four alternates.

4              **MR. REEVES:**  We would recommend that, yes.

5              **THE COURT:**  So I think I would go Monday through

6    Thursday; take my criminal calendar, move it to Friday; take my

7    civil calendar, move it to Friday.

8         I like to start, probably, 9:15 in the morning, run

9    until -- I don't know -- 10:00 at night, something like that,

10   10:00 or 11:00, whenever we're finished with the day's

11   witnesses, and then move on.

12        Has anybody got a problem with that?

13             **MR. REEVES:**  That sounds great.  Thank you very much,

14   Your Honor.

15             **THE COURT:**  That's my trial law.

16        The last case I tried was in front of Judge Ingram, and he

17   asked how I liked it.  It was 27 years ago.  And I said then,

18   "Trial practice is for younger people."

19        I meant younger than myself.  So that's all of you.

20   Because, now, I walk into a room and everybody in the room is

21   younger than myself, so I don't worry about that anymore.

22        But, no, we'll go to about 4:00 on any particular day.

23        In terms of order of witnesses, you should all feel free

24   to adjust that in any way that is consistent with witness'

25   schedules and so forth.  So if you have to take somebody out of

1    order, fine.

2         And, also, I encourage -- and I know I'll have no problem

3    at all -- the trading of schedules; that is, that the

4    Government will tell you who's going to come in the next two

5    days, or something like that.  Work all that out so that

6    everybody is prepared to proceed.

7         **MR. REEVES:**  Your Honor, there has been productive

8    conferring with -- amongst the parties at a level that I've not

9    seen before.  There's a high level of cooperation and

10   consideration around scheduling, around Mr. Lincenberg's point

11   about "the schedule is looming," and how important it is to get

12   things scheduled, and I think there's been a lot of progress.

13   So in that spirit, we've already begun to talk about notice and

14   disclosures to ensure that the trial proceeds in an efficient

15   way.

16        **THE COURT:**  Let's work on document stipulation.  I do

17   not want an argument about authenticity of documents if you

18   actually don't have a good faith belief that somehow the

19   document is a fake.

20        Now, I know, you know, saying it at today's date can be

21   quite different from saying it five years ago and so forth.

22   But, these are documents that were created at least five years

23   ago, and they've all been somewhat vetted.

24        So let's try to avoid all that.  Work out stipulations.

25   You can read stipulations to the jury.

1      You know, what will matter in the case will be, you know,

2  ten witnesses -- and I don't know, can I say ten witnesses and

3  ten documents?  I don't know whether that's fair in this case

4  or not; but it will be a limited number of documents and a

5  limited number of witnesses.  And that's what it will turn on.

6      Okay.  Anything else from anyone?

7      Yes, Mr. Weingarten?

8          MR. WEINGARTEN:  If I may, Judge.

9          THE COURT:  Oh, you're going to come and give me the

10  results of poll that was conducted.

11          MR. WEINGARTEN:  No poll.

12      You did catch us by surprise with the ruling.  And I heard

13  every word that you said.  And I understand your rulings

14  completely.  But I do want to just talk a little bit more about

15  the subpoenas that we requested.

16          THE COURT:  Sure.  Go ahead.

17          MR. WEINGARTEN:  And I think there's some worthwhile

18  undertaking here in that I do think -- let me back up a half of

19  step.

20      Obviously, in our papers, we made certain representations

21  about the conduct of HP.  We anticipate it because they're on

22  their witness list, all the upper-echelon HP witnesses

23  testifying.  At the core of what we said is that we believe HP

24  made up, out of whole cloth, the allegation that there was a

25  $5 billion fraud.  That's a big statement by us, and we backed

1    it up with the documents that were our exhibits.

2         What we -- what we sought to do with the subpoenas is

3    supplement that presentation because we thought it would be

4    germane to the trial.

5         So now, you know, you've severed Count 17.  We may still

6    have to deal with Count 17 one day in the world.  And if we do,

7    for all the reasons that we put in our papers, we would like to

8    have those documents.

9              **THE COURT:**  Well, wait.  Let me stop you there.

10   Because you may have to deal with Count 17 -- though, actually,

11   I can't concede that you will.  Because of one of two things

12   will happen -- maybe a third.

13        One is:  He'll be convicted of a charge.  And if he is,

14   nothing that I know in the sentencing statute that would

15   suggest that he get a sentence longer than that which is

16   prescribed in the sentencing statute.

17        The second alternative -- and perhaps the even more likely

18   one; I have no merits decision -- is he will be acquitted.

19   And, as I said before, if he's acquitted, I can't conceive that

20   the Government would go against him.

21        So I'm saying, I think, practically speaking, in either

22   event, you may never have to face Count 17.  So I don't think

23   that -- and the reason I raise it is that's not the argument

24   that would convince me that "at some time you have to prepare

25   for it, so let's do it now."

1          **MR. WEINGARTEN:**  I'm not done.  So -- I live in the

2     world, so I understand everything you just said.

3       The 404(b) issue is important to us.

4          **THE COURT:**  Well, we'll see how the -- now I've ruled.

5     Now I've ruled.  And I've also told them what I think -- ways

6     that they can open the door and ways that they don't open the

7     door.  So they're a bright group of young people --

8          **MR. WEINGARTEN:**  I agree with that.

9          **THE COURT:**  -- and they'll think of what I said, and

10    they'll realize that, you know, the rodeo in this court may not

11    be the rodeo in some other court.  And this is what they're

12    facing, and so how do they want to deal with 404(b); what are

13    they really going to say now?

14       That's up to them.  They come back and say, "Oh, no, it's

15    all coming in," and da-da-da, "and it's all 404(b)."  You come

16    back with your subpoena requests.  Okay?

17       And I know we have a time issue --

18          **MR. WEINGARTEN:**  We do.

19          **THE COURT:**  -- but let's not get all tied up about

20    that.

21          **MR. WEINGARTEN:**  Here's my suggestion:  I don't think

22    we need much from anybody, other than from us, in terms of the

23    subpoenas, in that the Government didn't object to the issuance

24    of the subpoenas.  Let's say they're cut.  And then we

25    negotiate or we fight with the lawyers from the entities, and

1  if there's a motion to quash then, of course, it's here.

2           THE COURT:  That's one way to approach it, but it's

3  not mine.

4       But nice try.  I don't blame you for saying it.

5           MR. WEINGARTEN:  Can I try one --

6           THE COURT:  I'm just saying, I'm not going to do it

7  that way; I'm going to do it another way.  And we'll see what

8  the Government does.

9       Really, the ball is in the Government's court I mean -- or

10  the Court's court.

11       It's up to you guys to figure out how you're going to try

12  your case.  Now you see what, at least, the Court thinks are

13  the parameters.  They can change.  And they can change in a

14  variety of ways.  They can change by the Government's

15  presentation.  They can change by your presentation.  They can

16  change by the defendant testifying or not testifying.  All of

17  those things.  They can change by questions asked and answers

18  being permitted, of lines of questioning to witnesses.

19  Parameters can change.

20       It's a living thing, as much as anything can be a living

21  thing in court.  And so the question is -- I don't -- that's

22  why I don't like to do these things, other than, basically,

23  trying to say, "This is what I think the case is going to be."

24  And then if it turns out to be different, it turns out to be

25  different.

1          **MR. WEINGARTEN:**  Okay.  Just one more point.

2          **THE COURT:**  Go ahead.

3          **MR. WEINGARTEN:**  Okay.  My Spidey sense tells me that

4    post-ac is going to be relevant in this trial.  And all I'm

5    saying right now is I would like to be armed with the relevant

6    evidence to meet it.  And that's, simply stated, the subpoenas.

7          I don't think anybody is put out as a result of that,

8    other than, perhaps, the recipients of the subpoenas.  And if

9    they're overbroad or whatever, we litigate or negotiate.  As

10   simple as that.

11         I made that point --

12         **THE COURT:**  Well, I would say this as to that -- first

13   of all, I'm not agreeing with you.

14         But, secondly, you can talk - I don't know.  Can you not

15   talk to these people?  Can you not send out your investigator

16   to talk to them?  Do you know what they're going to say?

17         And maybe you don't want to do it that way.

18         **MR. WEINGARTEN:**  There's not a love relationship right

19   now between HP and Mike Lynch.

20         **THE COURT:**  That's probably true.  I'll accept that.

21   Okay.

22         I don't know when -- look, that gets me into the

23   preparation of the case.  I'm not --

24         **MR. WEINGARTEN:**  You're not there.  Okay.

25         One more, if I may.

1    Obviously, I understand from your rulings and such, and

2    many other judge's rulings, that the materiality standard is

3    objective; I understand that completely.

4            **THE COURT:**  Right.

5            **MR. WEINGARTEN:**  I also read your opinion in

6    *Bogucki* -- I don't know if I am pronouncing it correctly.  It's

7    a very important case --

8            **THE COURT:**  It is?  I wrote it.

9            **MR. WEINGARTEN:**  I know you did.  That's why I'm

10   raising it.

11   And what you said there, simply stated --

12           **THE COURT:**  Oh, I remember that case.  Is that the one

13   that I gave a Rule 29?

14           **MR. WEINGARTEN:**  You did.

15           **THE COURT:**  Well, I remember it; they remember it even

16   more.

17           **MR. WEINGARTEN:**  I understand that too.  I understand

18   my friend over here probably remembers it most of all.

19   But the point I'm making now is:  The relationship between

20   HP and Mike Lynch is relevant, from start to finish, based upon

21   that decision and --

22           **THE COURT:**  I'm going to reread it.

23           **MR. WEINGARTEN:**  Okay.  But I --

24           **THE COURT:**  I'm going to reread it, and if I change my

25   mind, I'll let you know.

1      **MR. WEINGARTEN:**  I guess it just reinforces my point

2   that we should -- there's nothing inappropriate or nothing

3   crazy about us being armed for what I'm saying is likely to be

4   the inevitable.

5      And there's a sort of a practical issue.  I mean, we're

6   going to London and do some depositions.  There's every

7   expectation based upon the state of the case that post-ac would

8   be --

9      **THE COURT:**  Let's see what they say.  Let's see

10   what -- let's see what they say.

11      **MR. WEINGARTEN:**  But, Judge, they're going to say it

12   in opening statement.  That's --

13      **THE COURT:**  No, no, no.  They're going to say -- I

14   don't know, where are we on the 404(b) stuff?

15      I mean, maybe it's fair -- maybe it is fair for me to say

16   to the Government "Why don't you revisit the 404(b) and tell me

17   what it is that you're going to want to introduce on 404(b) in

18   light of the Court's decision?"

19      That's not unfair.  I could ask that.  I can ask that.

20      I mean, if it's their intention to go ahead and introduce

21   these topics, I think you're right.  All I'm saying is I need

22   to know what their intention is.

23      Can you submit something on that issue?

24      **MR. REEVES:**  I was going to try to answer the Court's

25   question.  Would you like a submission?

1          **THE COURT:**  Yes.

2      I don't know.  Whatever -- I don't have it in front of me.

3      Whatever you've said about the 404(b) -- have you said

4  something about it?  I assume you have.

5          **MR. REEVES:**  Yes.  I think --

6          **THE COURT:**  Go take a look at it and just see, now,

7  what it is that you intend to do in terms of 404(b) material.

8          **MR. REEVES:**  I can offer some direction.

9          **THE COURT:**  I don't want direction.  I want a writing.

10  I want something in written form.

11          **MR. REEVES:**  That would be fine.  We'll do that.

12          **THE COURT:**  Okay.

13          **MR. WEINGARTEN:**  One more thing, Your Honor.

14          **THE COURT:**  One more thing?  How many one-more-things

15  do you have, Mr. Weingarten?

16          **MR. WEINGARTEN:**  I love being here, so I don't want to

17  sit down.

18          **THE COURT:**  Stay as long as you want.

19          **MR. WEINGARTEN:**  All kidding aside, we got the most

20  recent witness list from the Government; this was supposed to

21  be the final one.  The one before that had 65 witnesses.  This

22  one had, I think, 80.

23          **THE COURT:**  Oh, it's going to the wrong direction.

24          **MR. WEINGARTEN:**  It grew.  And we request --

25          **THE COURT:**  Oh, that's not good news.

```
1            MR. WEINGARTEN:  I take them very seriously --
2            THE COURT:  What's the next one?  A hundred?
3       Where are you?
4            MR. REEVES:  We're tightening up now, Your Honor.
5            THE COURT:  That sounds -- that's not my definition of
6       tightening, 65 to 80.
7            MR. REEVES:  Your ruling has helped.
8            THE COURT:  Okay.  Let's get a new witness list out.
9            MR. WEINGARTEN:  All right.  Thank you, Your Honor.
10           THE COURT:  Anything else?
11           MR. REEVES:  Not for the United States.  Thank you,
12      Your Honor.
13           THE COURT:  How about from the Defense, anything?
14           MR. LINCENBERG:  No.  Thank you, Your Honor.
15           THE CLERK:  Judge, should I set aside March 18 through
16      April 2nd for this trial?
17           THE COURT:  Yes.  At least.
18           MR. REEVES:  I think a little longer would be in --
19           THE COURT:  I think so too.
20           THE CLERK:  Okay.
21           THE COURT:  What did we talk about?
22           MR. REEVES:  You know, very roughly, I think it would
23      be appropriate -- I think, the Government's case is
24      approximately three to four weeks.
25           And I've heard that there will be a Defense case.  I
```

1    think --

2          **THE COURT:**  Let's take it to the end of April.  That's

3    number one.

4          **THE CLERK:**  Okay.

5          **THE COURT:**  Let's do jury selection the week before.

6          **MR. REEVES:**  Okay.

7          **THE COURT:**  And on that issue, what I want are jury

8    questionnaires from both sides.  I'm a great believer in jury

9    questionnaires.  They are -- I've always wondered:  Why is it

10   that 12 people that you know the least amount about sit as the

11   jury in a case?

12         And it seemed to me wrong.  It seemed to me they are

13   people that you should know something about.

14         So also -- so a questionnaire, within limits -- and I,

15   you know, I don't want "Are you a member of the NRA," or "Do

16   you subscribe to 'Field & Stream'," or "What is your favorite

17   political party," or any of that.  That's not going to be

18   asked.

19         But there are issues.  Hewlett Packard, there may be

20   issues of publicity.  There may be issues of corporations.

21   There may be issues about shareholders.  I don't know.  All of

22   this sort of thing, I think, can be fit in a questionnaire,

23   carefully designed.

24         Try to limit the questions -- I don't want to see some 85

25   questions -- but enough information that will tell you, "This

```
 1    is a person I don't want," or "This is a" -- I mean, I

 2    actually -- I know it's geared to cause challenges, but we all

 3    know that it's used for more than that, if it's a successful

 4    questionnaire.  And so I don't mind it being -- cover the

 5    field.

 6          I also would remind the parties of the way I do voir dire

 7    is I do the initial voir dire.  The parties will get the

 8    questionnaire in advance -- well in advance of the jury

 9    selection.  And then it's a question, if you have some

10    follow-up questions, you can ask some follow-up questions.

11          Obviously, I'll let the lawyers do it.  Just don't

12    instruct on the law.  Don't ask them how they judge the

13    evidence.  But, other than that, you can introduce yourselves

14    to the jury so they know who you are.

15          And we'll deal with that.

16          THE CLERK:  Should we set the jury selection for

17    March 12th?

18          MR. MORVILLO:  There's already a scheduling order --

19    I'm sorry.  Christopher Morvillo for --

20          THE COURT:  What's the scheduling order say?

21          MR. MORVILLO:  The scheduling order says March 13th

22    for jury selection.

23          THE COURT:  Then that's when it is.

24          MR. MORVILLO:  At least that's my recollection.

25          THE COURT:  Okay.  Whatever we said.
```

1          **MR. MORVILLO:**  And, I believe, jury questionnaires are

2    proposed to the Court on January 10th.

3          **THE COURT:**  That's great.  Oh, good.  So you've done

4    it all.

5          **MR. LINCENBERG:**  With respect to the questionnaire, if

6    one of the questions is also going to serve the purpose of

7    time-qualifying jurors, we would suggest that the Court advise

8    them that the trial may go until the end of May.

9       And the reason I say the end of May is because if the

10   Government's estimating four weeks -- and let's just say that's

11   five weeks, possibly, and there's going to probably be a

12   lengthy Defense case -- and, frankly --

13          **THE COURT:**  I think we'll say it will go into May.

14          **MR. LINCENBERG:**  We'll go into May?

15          **THE COURT:**  Yeah.

16          **MR. LINCENBERG:**  That's fine.  I'm just thinking, you

17   know, the Defense doesn't want to be pressed because people

18   have been told that they're --

19          **THE COURT:**  Well, I press the lawyers all the time.

20   That's my -- I'm the presser.

21          **MR. LINCENBERG:**  Right.  But my --

22          **THE COURT:**  No one does this better than I do.

23          **MR. LINCENBERG:**  My experience --

24          **THE COURT:**  Your experience --

25          **MR. LINCENBERG:**  My experience is that what happens is

1    if a jury has been time-qualified for a certain time, and then

2    the judge starts getting nervous because we're approaching

3    that, that the pressure then hits the Defense because it's the

4    Defense case that goes later, and the pressure hits the jury

5    that they then, maybe, deliberate more quickly.

6          So my suggestion is just time-qualifying them through the

7    end of May.  It doesn't mean the trial will go that long --

8          **THE COURT:**  Okay.  I think what I'll probably say is

9    estimated -- I'll try to take a look at it, and try to use some

10   words that are weaselly enough that they can't say "I didn't

11   know about it."  But it will be something like "in the

12   neighborhood of two months."

13         If we start March 18th --

14         **MR. LINCENBERG:**  Between trial, deliberation --

15         **THE COURT:**  Well, I don't factor all that in.  I mean,

16   the deliberations, that's --

17         **MR. LINCENBERG:**  Well, just in terms of the jury

18   understanding how long they may be --

19         **THE COURT:**  If you ask for a lifetime commitment from

20   these people, you're not going to get it.

21         **MR. LINCENBERG:**  I'm not.  But I just went through

22   this in Phoenix, where the jury was time-qualified.  We lost a

23   week because of COVID in the middle of it anyways.  Then the

24   judge had to just tell them at the end:  You're coming back for

25   two weeks longer than what I said.

1          **THE COURT:**  Well, I agree that it's better to deal

2     with this up front, rather than just -- okay.  I'll figure out

3     what to say.  I'll try to just think about it.

4          But if you actually are telling me that you think that the

5     presentation of your case will last a month -- that's what

6     you're telling me.

7          **MR. LINCENBERG:**  I'm suggesting that the Court

8     anticipate that the Defense case may last as long as the

9     Prosecution case, even if we have fewer witnesses.  If both of

10    our clients testify, it's going to be, probably, fairly

11    lengthy, and there's other witnesses and so forth.  So better

12    safe than sorry.

13         **THE COURT:**  Okay.  I couldn't agree with you more.

14    You're absolutely right.  I don't want to try this twice.

15         I don't think anybody wants to try it twice.  Some people

16    may not want to try it once.  So there we are.

17         Yes, Mr. Morvillo?

18         **MR. MORVILLO:**  Your Honor, I'm just agreeing.  I think

19    there will be clarity as we move forward --

20         **THE COURT:**  I always hope for clarity.  Rarely do I

21    get it, but I hope for it.

22         **MR. MORVILLO:**  I mean, I'm optimistic that 80 will

23    become 20.

24         **THE COURT:**  There you go.

25         **MR. MORVILLO:**  Maybe that's over-optimism.

1          THE COURT:  No, it's not.  I like that optimism.

2    Yeah.  Perfect.

3          MR. MORVILLO:  That will fit in with the schedule that

4    we're talking about.

5          THE COURT:  Yeah.  Okay.

6       Anything else that anybody wants to say?

7       I will -- when am I seeing everybody again?

8          MR. MORVILLO:  I think the next pretrial conference is

9    February 21st.

10         THE COURT:  So everybody have a pleasant holiday.

11      Good luck on all those depositions.

12         MR. REEVES:  Thank you, Your Honor.  Thank you very

13   much.

14         THE COURT:  Thank you.

15              (Proceedings adjourned at 2:47 p.m.)

16                      ---o0o---

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Saturday, December 2, 2023

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court