Gary S. Lincenberg - State Bar No. 123058
   glincenberg@birdmarella.com
Ray S. Seilie - State Bar No. 277747
   rseilie@birdmarella.com
Michael C. Landman - State Bar No. 343327
   mlandman@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Stephen Keith Chamberlain

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     vs.<br><br>MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN<br><br>           Defendants. | CASE NO. 3:18-cr-00577-CRB<br><br>**Defendant Stephen Chamberlain's Motion in Limine to Exclude Irrelevant and Prejudicial Documents Pursuant to Federal Rule of Evidence 403**<br><br>Pretrial Conference:  February 21, 2024<br>Trial Date:          March 18, 2024<br><br>Assigned to Hon. Charles R. Breyer |

## I. INTRODUCTION AND BACKGROUND

Defendant Stephen Chamberlain moves *in limine* for an order prohibiting the government from introducing certain email communications that reflect Autonomy employees' deliberative process in connection with accounting decisions that were either never ultimately made, or which have not been challenged as improper. The Government's theory of fraud in this case is that Mr. Chamberlain participated in a conspiracy to defraud Autonomy's investors and its ultimate purchaser, HP. The Government alleges that this conspiracy was effectuated using false statements contained in Autonomy's public financial disclosures and material misstatements or omissions to HP during the due diligence process preceding the purchase.

Based on its presentation in the *Hussain* proceeding, as well as its most recent exhibit list, the Government intends to present to the jury certain categories of email communications in which Autonomy's employees were deliberating about Autonomy's internal accounting decisions, but which do not ultimately relate to allegedly false or misleading statements (to the public or HP). In other words, the Government is seeking to introduce evidence that shows "how a sausage is made," even in situations where that sausage was not made. These categories of communications should be excluded under Federal Rules of Evidence 401, 402 and 403.

## II. ARGUMENT

### A. Applicable Law

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of ***one or more of the following***: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). The determination of whether to exclude certain evidence under Rule 403 "must be made . . . in the view of the availability of other means of proof and other facts appropriate for making decision of this kind under [Rule] 403." *Old Chief v. United States*, 519 U.S. 172, 184–85, 117 S. Ct. 644, 652, 136 L. Ed. 2d 574 (1997) (citing Advisory Committee's Notes on Fed. Rule Evid. 404, 28

U.S.C. App., p. 861).

**B.     Irrelevant and Unduly Prejudicial Documents**

Mr. Chamberlain requests that the Court enter an order precluding the Government from introducing evidence that falls into three specific categories:

- Email communications in which Mr. Chamberlain and Mr. Hussain deliberate accounting "options," none of which reflect the ultimate accounting treatment presented to and approved by Autonomy's auditors. Mr. Chamberlain specifically requests the exclusion of Trial Exhibit 1763. Declaration of Gary S. Lincenberg ("Lincenberg Decl.") Ex. 1.

- Email communications in which Mr. Chamberlain asks Autonomy employees to engage in a "credit hunt"—i.e., search for unused credits that Autonomy could use to offset its costs—even though there is no allegation that any such "hunt" resulted in an improper credit being recognized on Autonomy's financial statements. Mr. Chamberlain has identified Trial Exhibits 735, 3305, 3308, 14221, 15296, 15298, 15299, 15300, 15303, and 16196 as examples of documents that fall into this category. Lincenberg Decl. Exs. 2–11.

- Email communications in which Autonomy employees use the term "dummy cash" to refer to accounting entries placed in the company's ledger before a merger to ensure that assets were offset by appropriate liabilities where necessary—again, with no allegation by the government that any of these entries were inaccurate or misleading. Mr. Chamberlain specifically requests the exclusion of Trial Exhibit 816. Lincenberg Decl. Ex. 12.

**1.     Exhibit 1763: April 12, 2011 Email**

Trial Exhibit 1763, Lincenberg Decl. Ex. 1, is an email from Mr. Chamberlain to Mr. Hussain, which is set forth below:

```
To:         'Sushovan Hussain'[sushovanh@autonomy.com]
From:       Stephen Chamberlain
Sent:       Tue 4/12/2011 10:47:21 AM
Importance: Normal
Subject:    Numbers

Three options:

1)   recognize Prisa, defer $3.6m Hardware - $218.1m, 88%, 24.8c

2)   Defer Prisa, recognize $3.6m HW - $218.1m, 86%, 23.7c

3)   recognise BBC $1.6m, defer Prisa, recognize $2.0m HW - $218.1m, 87%, 24.2c


Need to speak asap to lock this down. We announce in 9 days and if we don't stop
moving I cannot deliver timetable.
```

During the *Hussain* trial, the Government asked Lee Welham, a Deloitte auditor who had no firsthand knowledge of the email, to speculate whether he would have been "troubled" by this email had he seen it. *See Hussain* Tr. 3986:9-3987:25. Mr. Welham testified that the email would have "troubled" him because, as he sat in court ruminating about it while testifying six years later, *he* "couldn't think of a reason why 12 days after the quarter ends you would still be debating how to recognize that revenue and when to recognize it." *Id.* at 3988:11-13.

None of the three options discussed in the email were used in Autonomy's public financial statements. The Government did not claim otherwise during the *Hussain* trial. Nor did the Government present any evidence that any of the options would have been inconsistent with applicable accounting standards based on the information known to the Autonomy Finance team at the time. Autonomy's ultimate accounting treatment of each of the transactions referenced in the email was based on the final evidence that the Finance team reviewed and presented to Deloitte.

The email, discussing options that were never pursued, is irrelevant to the question of whether Mr. Chamberlain had an intent to defraud. Further, it creates an unfair risk that the jury will judge Mr. Chamberlain not on the actual accounting decisions that were made but on Mr. Welham's speculation about what Mr. Chamberlain might have meant when discussing

accounting considerations that never came to be. To undo the Government's improper suggestion, Mr. Chamberlain would be forced to explain options that were discussed in a brief email twelve years ago that were never even pursued. On top of the massive number of accounting decisions that are under attack, trial time will be diverted to potential accounting decisions that were never actually made. In addition to creating unfair prejudice and confusion, such an exercise will cause undue delay.

### 2. Credit Hunt Emails

Trial Exhibits 735, 3305, 3308, 14221, 15296, 15298, 15299, 15300, 15303, and 16196, Lincenberg Exs. 2–11, are all emails with words "Credit Hunt" in the subject line.[1] For example, Exhibit 735 is presented below:

> **From:** Stephen Chamberlain [mailto:stephenc@autonomy.com]
> **Sent:** Friday, April 09, 2010 9:44 AM
> **To:** 'Ganesh Vaidyanathan'; 'Linxwiler, Courtney'; 'Eads, Richard'; 'Matt Stephan'; 'Poppy Prentis'; 'Lisa Harris'; 'Cynthia Watkins - Autonomy'; 'Ying Liu'
> **Subject:** Credit hunt
>
> Nice meal for two approved by SH for the winner.
>
> The winner does not necessarily mean the biggest number. The best qualitative entry wins the prize.

The term "credit hunt" was informally used to refer to searches by Autonomy employees for potentially overlooked "credits." For example, employees would find that some revenue

---

[1] Mr. Chamberlain reserves the right to identify additional exhibits that raise similar issues because of ongoing issues related to the Government's exhibit list. For example, the Government's descriptions of Trial Exhibits 3324 and 3325 suggest that these two documents are also "credit hunt" emails, but the Bates numbers provided for those exhibits reference unrelated documents. For avoidance of doubt, Mr. Chamberlain's motion requests the exclusion of *all* email communications that reference so-called "credit hunts."

deferred in prior quarters by Autonomy subsidiaries should now be recognized. There is no suggestion anywhere in these emails that Mr. Chamberlain was encouraging inaccurate or misleading accounting. Nor has the Government ever presented evidence that any of the accounting decisions made in connection with these so-called "credit hunts" resulted in false or misleading statements about the specific transactions that the Government has identified as part of its case. As far as counsel can glean, no such credits appear among the transactions set forth in the bill of particulars.

Based on the testimony it elicited in the grand jury proceeding, the Government appears to be using these emails to elicit testimony that some accounting department personnel found it to be an "unusual" exercise. In other words, the Government is likely to use these materials to ask a particular witness about their subjective sense of what is "usual" versus "unusual" and misleadingly suggest that any substantive accounting decisions resulting from the "credit hunt" were incorrect. In doing so, the Government would be encouraging the jury to improperly treat the Finance team's efforts to include all revenue as somehow inappropriate because some accounting personnel had not gone through this exercise prior to their subsidiary becoming part of Autonomy.

The Government should not be permitted to pursue this strategy. These "credit hunt" emails are not relevant to the specific allegations involving sales to resellers, sales of hardware, OEM, or hosting transactions. In order to address this confusion, Mr. Chamberlain would need to spend significant time and energy discussing and defending every "credit" found as part of this "hunt," even though the Government has not alleged that they are fraudulent. This will cause juror confusion, will be potentially misleading, and will undoubtedly waste the Court's and the jury's time.

   3.  **"Dummy Cash"**

Trial Exhibit 816, Lincenberg Decl. Ex. 12, is an email from Lisa Harris, a member of Autonomy's finance department, to other members of the finance department, regarding Autonomy's acquisition of Microlink:

> **From:** Lisa Harris [mailto:lisah@autonomy.com]
> **Sent:** Tuesday, May 18, 2010 10:45 AM
> **To:** 'Ken Wong'; Ganesh Vaidyanathan
> **Cc:** Percy Tejeda; 'Alan Rizek'; poppy.prentis@autonomy.com
> **Subject:** AR posting in Autonomy Inc books
>
> Hi gentlemen,
>
> I need you to post dummy cash as per the attached in Autonomy Inc's AR -- the other side of the entry needs to go to Inc's interco with NA Holdings.

The Government is likely to present this email through the testimony of Ganesh Vaidyanathan, who did not testify in the *Hussain* trial but is on the Government's witness list. Mr. Vaidyanathan testified that the concept of "dummy cash" troubled him because "you don't post dummy things into any sort of books anyway." USAO_GJTX00007762 at 29:16-21. Mr. Vaidyanathan did not testify that he reviewed the accounting for the transaction or that the accounting was itself improper or fraudulent. Additionally, he also testified that Ms. Harris' use of the term "dummy cash" "is not necessarily true." *Id.* at 28:3. Mr. Vaidyanathan added, "there's no dummy cash that was recorded in the books." *Id.* at 28:4-5. In other words, according to Mr. Vaidyanathan, Ms. Harris' use of the term "dummy cash" in her email was not reflective of the actual transaction that occurred; moreover, there was nothing wrong with the transaction itself.

The Government should not be permitted to elicit similar testimony from Mr. Vaidyanathan at trial. It is not expected to present any evidence that the action of posting "dummy cash" was itself improper. As Alan Rizek, the former CFO of Microlink, testified in *Hussain*: the reason Autonomy had to make that accounting entry was because, following the acquisition, Microlink could no longer hold Autonomy inventory. *Hussain* Tr. 1577:23-25. Accordingly, both the inventory (the asset) and the accounts payable balance (the liability) needed to be written off. *Id.* The Government did not present any evidence that, following Autonomy's acquisition of Microlink, it was improper for Autonomy to make an accounting entry that had the effect of

transferring Microlink's outstanding accounts payable balance to an intercompany balance.[2] The Government also did not present any evidence that the term "dummy cash" reflected an improper or illegal accounting transaction. Nevertheless, during closing argument, the Government used this term three times to pejoratively suggest that the accounting entry was fraudulent. *Hussain* Tr. 5750:11-21.

The admission of this email is confusing and unfairly prejudicial because there is no proof that the "dummy cash" accounting entry was fraudulent. Use of a term that may sound pejorative to a lay juror will mislead and confuse the jury and any attempt to cure the resulting prejudice will likely cause unnecessary delay in the trial.

### III.    CONCLUSION

The Government's bill of particulars has been ever-expanding. But it does not include email communications discussing possible accounting decisions that were never made. It does not include searches for deferred revenue to properly record them in the right quarter. And it does not include informal terms used by accountants, such as "dummy cash" that were proper entries. Allowing the Government to introduce the documents discussed in this motion creates a serious risk the jury determines Mr. Chamberlain's fate based on communications that do not relate in any way to the transactions that the Government alleges in the bill of particulars. If the Court permits the introduction of these exhibits, it will also require Mr. Chamberlain to delve into time-consuming, substantial detail about tangential accounting tasks. The Court should grant Mr. Chamberlain's motion.

---

[2]    The Government's principal argument, which it is entitled to make, is that Autonomy purchased Microlink for the sole purpose of writing off its outstanding balances. The Government can make this argument without misusing the pejorative term "dummy cash" to suggest that the *accounting* for the purchase was improper.

DATED: January 17, 2024

BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:     */s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Attorneys for Defendant Stephen Keith Chamberlain