PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | DECLARATION OF ZACHARY G.F. ABRAHAMSON IN SUPPORT OF THE UNITED STATES' OPPOSITION TO DEFENDANT LYNCH'S MOTION *IN LIMINE* RE: POST-ACQUISITION EVIDENCE |
| v. | |
| MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN, | |
| Defendant. | Pretrial Conference: February 21, 2024 Trial Date: March 18, 2024 |

I, Zachary G.F. Abrahamson, declare as follows:

1.  I am a Special Assistant United States Attorney with the United States Attorney's Office for the Northern District of California ("USAO"). I am assigned to the prosecution of the above-referenced case. I make this declaration in support of the United States' Opposition to Defendant Lynch's Motion *in Limine* to Admit Post-Acquisition Evidence. The statements herein are based in part on personal knowledge and in part on information and belief from my review of documents in this matter and my discussions with counsel for the government,

law enforcement agents, and others.

2. Attached hereto as Exhibit A is a true and correct copy of Trial Exhibit 2451, a November 15, 2011 e-mail from Manish Sarin to Kathryn Harvey and others at Hewlett-Packard.

3. Attached hereto as Exhibit B is a true and correct copy of a document produced in this case and Bates-numbered US_FBI_E-00002629 through US_FBI_E00002635, which comprises a November 11, 2011 e-mail (with original attachment and higher-quality reproduction) from Brian Outland at Ernst & Young to James Murrin and others at Hewlett-Packard.

4. Attached hereto as Exhibit C is a true, correct, and redacted copy of a report of a January 17, 2014 interview of Catherine Lesjak.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 31st day of January 2024.

_____/s/_____

ZACHARY G.F. ABRAHAMSON
Special Assistant U.S. Attorney

# EXHIBIT A

**Subject:**   RE: Autonomy deal model questions
**From:**      "Sarin, Manish" <manish.sarin@hp.com>
**Received(Date):**   Tue, 15 Nov 2011 19:53:32 -0500
**To:**        "Harvey, Kathryn" <kathryn.harvey@hp.com>
**Cc:**        "Bhagat, Varoon" <varoon.bhagat@hp.com>,"Hsiao, Emily (Corp Dev)"
<emily.hsiao@hp.com>


Kathy –


The Dell-based revenue you reference is from which Autonomy products?  They are a predominantly software company with little to no services or hardware.  I am guessing they are trying to grow their "appliance" business i.e. Autonomy software bundled on industry-standard Dell hardware.  I suspect this is sell-through revenue where they are getting a margin as they sell Dell appliances.  Again, I am just conjecturing and don't know for sure.


I don't believe Autonomy breaks out this Dell-based revenue in their financials and we haven't either.


ArcSight had a similar Dell based appliance business which we switched to HP hardware in due course.  In that case, there was no revenue that ArcSight "lost", in fact we saved on cost that ArcSight was giving to Dell.  Once we learn more what kind of Dell revenue Autonomy is getting, we can have a better view.


**From:** Harvey, Kathryn
**Sent:** Tuesday, November 15, 2011 2:51 PM
**To:** Sarin, Manish
**Cc:** Bhagat, Varoon; Hsiao, Emily (Corp Dev)
**Subject:** RE: Autonomy deal model questions


Thanks Manish –


This was helpful, its been a crazy week (so sorry I didn't respond sooner) but did want to let you know that I think we are good with the answer below – no additional color needed.


**FOIA CONFIDENTIAL TREATMENT REQUESTED**

HP-SEC-00591817
Exh 2451-0001

There was one other item that we just learned which I wanted to ask about/bring to your attention. During discussions with Autonomy folks in conjunction with our valuations, we learned that they have had approx $100M/ year in revenue coming from the sale of Dell HW products. Was just curious if you were aware of this when you put the model together? It doesn't have any impact on our valuations, but it likely won't be part of Autonomy's future revenue stream and didn't know whether it was included in their revenue forecasts/targets.

Thanks,

Kathy

**From:** Sarin, Manish
**Sent:** 10 November 2011 20:16
**To:** Harvey, Kathryn
**Cc:** Bhagat, Varoon; Hsiao, Emily (Corp Dev)
**Subject:** RE: Autonomy deal model questions

Kathryn –

The gross margin split was not officially provided by Autonomy. We had made assumptions based on our understanding, public comparables etc. During one of the diligence sessions we vetted the assumptions, at a high level, with their CFO.

The Opex categories as % of revenues for the projections are derived using their publicly filed financials, our understanding of their business drivers etc. They did not provide us opex category numbers or % for the projections.

Varoon / Emily, can add additional color if needed.

Thanks

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**From:** Harvey, Kathryn
**Sent:** Thursday, November 10, 2011 10:42 AM
**To:** Sarin, Manish
**Subject:** Autonomy deal model questions

Hi Manish,

I have a couple of questions on the Autonomy deal model that I am hoping you can help me with (questions are coming from reviews of various Autonomy valuations)

On the Revenue Buildup tab, there is a table that shows Gross Margin by Revenue stream (Idol License = 90%; IDOL Cloud = 85%; OEM Revenues= 98%; Maintenance = 90%; Services = 15%).  Did that split come from Autonomy?  Or how was that determined?

On the Standalone IS HPFY tab, Lines 31 – 33 give the Opex categories as a percentage of revenue.  How did we come up with those percentages – were those coming from Autonomy's public financials?

Thanks for your help!

Best regards,

Kathy

HP-SEC-00591819
Exh 2451-0003

# EXHIBIT B

**To:**      Murrin, James T[jim.murrin@hp.com]; Branch, Betsy[betsy.branch@hp.com]
**Cc:**      Rebecca.Villalobos@ey.com[Rebecca.Villalobos@ey.com]
**From:**    brian.outland@ey.com
**Sent:**    Fri 11/11/2011 2:30:00 PM
**Importance:**   **Normal**
**Subject:**  Agenda
Q4 EY CFO Session - November 11 2011.pptx

Here is the agenda for this afternoon.  Let me know if you have any questions or comments.

Thanks,

Brian

 **≡ERNST&YOUNG**      Brian T. Outland | Partner | Assurance and Advisory Business Services

Ernst & Young LLP
303 Almaden Boulevard, San Jose, California 95110, United States of America
Office: +1 408 947 5500 | Direct: +1 408 918 5905 | 303 Almaden Blvd
Fax: +1 866 399 2558
Website: www.ey.com
Assistant: Rebecca Villalobos | Phone: +1 408 947 5574 / +1 650 857 3398 | rebecca.villalobos@ey.com
Thank you for considering the environmental impact of printing emails.

**Any U.S. tax advice contained in the body of this e-mail was not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax law provisions.**

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for Ernst & Young Online and the ey.com website, which track e-mail preferences through a separate process) at this e-mail address by forwarding this message to no-more-mail@ey.com. If you do so, the sender of this message will be notified promptly. Our principal postal address is 5 Times Square, New York, NY 10036. Thank you. Ernst & Young LLP

**EXHIBIT**

504

SF 3853

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

HP-SEC-00676801

US_FBI_E-00002629



1

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-00676802

US_FBI_E-00002630

# Executive summary

## 2011 observations

- ▶ Q4 areas of focus
  - – vsbGO/Palm impairments and contact costs
  - – Compaq tradename impairment risk
  - – Autonomy acquisition
  - – Income tax provision
- ▶ No significant changes to planned audit approach for ongoing operations
  - – Testing thresholds aligned to revised forecasts
- ▶ Reasonable judgments by management on accounts requiring estimation
  - – Continued level of conservatism

- ▶ Unrecorded audit differences are immaterial
- ▶ Unremediated internal control deficiencies are not significant
- ▶ Income tax process and control environment are improving
  - – Continued effort in 2012

Testing thresholds were generally consistent with the prior years and aligned with revised forecasts

**ERNST & YOUNG**
Quality In Everything We Do

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-00676803

US_FBI_E-00002631

2



FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-00676804

US_FBI_E-00002632



# Hewlett-Packard Company

Q4 FY'11 CFO update
November 11, 2011



US_FBI_E-00002633

# Executive summary

## 2011 observations

- ► Q4 areas of focus
  - webOS/Palm impairments and contact costs
  - Compaq tradename impairment risk
  - Autonomy acquisition
  - Income tax provision
- ► No significant changes to planned audit approach for ongoing operations
  - Testing thresholds aligned to revised forecasts
- ► Reasonable judgments by management on accounts requiring estimation
  - Consistent level of conservatism

- ► Unrecorded audit differences are immaterial
- ► Unremediated internal control deficiencies are not significant
- ► Income tax process and control environment are improving
  - Continued effort in 2012

**Audit is substantially complete, pending review of the year-end tax provision**

Ernst & Young Executive Session – Private and confidential

**ERNST & YOUNG**
*Quality In Everything We Do*

US_FBI_E-00002634

# Q4 FY'11 Update

- ► webOS/Palm
  - Goodwill
  - Intangibles
  - Supplier accruals
  - Non GAAP adjustment considerations
- ► Compaq tradename
  - Book value ≈ fair value
  - Impairment considerations
  - Utilization of the tradename
- ► Autonomy acquisition
  - Valuation of intangibles – preliminary
  - FY'12 revenue recognition/maintenance pricing
  - Cash confirmation procedures
  - Revenue includes $115M of hardware

- ► ES contracts
  - IDA Singapore
  - Alcatel Lucent
- ► Bonus
- ► Software accounting
  - Internally developed vs. developed for resale

Ernst & Young Executive Session – Private and confidential

**ΞII ERNST & YOUNG**
*Quality In Everything We Do*

US_FBI_E-00002635

# EXHIBIT C

FD-302 (Rev. 5-8-10)

OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___03/24/2014___



Investigation on ___01/17/2014___ at ___San Francisco, California, United States (In Person)___

File # ___318A-SF-2582907-302___        Date drafted ___01/21/2014___

by ___Keigan M. Park___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US_FBI_E-00002596

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  2 of 20



US_FBI_E-00002597

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  3 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett
Packard)                                         , On  01/17/2014 , Page  4 of 20



According to HP's discount cash flow analysis, Autonomy was worth 17
billion dollars.  HP had negotiated to pay 11 billion dollars for
Autonomy.

US_FBI_E-00002599

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard) , On 01/17/2014 , Page 5 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  6 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard) , On 01/17/2014 , Page 7 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)                                              , On



US_FBI_E-00002603

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  9 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)                                      , On  01/17/2014 , Page  10 of 20



**Exhibit 504 – E-mail from Brian Outland to James Murrin**

Lesjak was directed to page three of the attached PowerPoint, where the slide stated "revenue includes $115M of hardware" under the Autonomy acquisition bullet. Lesjak recalled having a sense that Autonomy sold appliances; therefore, she assumed the comment referred to appliances. Lesjak did not recall a discussion around either the amount or type of hardware sales. Lesjak would have been concerned if the hardware sales were straight pass-through transactions, since it was not the normal Autonomy business model. Lesjak would have expected Autonomy to share information on any hardware sales with HP. Lesjak would have also expected information regarding hardware sales to come out during due diligence.

US_FBI_E-00002605

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard) , On 01/17/2014 , Page 11 of 20



US_FBI_E-00002606

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard) , On 01/17/2014 , Page 12 of 20



US_FBI_E-00002607

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  13 of 20



US_FBI_E-00002608

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett
Packard)                                    , On  01/17/2014 , Page  14 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of Interview of Catherine Lesjak (Hewlett Packard) , On 01/17/2014 , Page 15 of 20



US_FBI_E-00002610

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  16 of 20



FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett
Packard)                                      , On  01/17/2014 , Page  17 of 20



US_FBI_E-00002612

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  18 of 20



US_FBI_E-00002613

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett
Packard)                                                    , On  01/17/2014 , Page  19 of 20



US_FBI_E-00002614

FD-302a (Rev. 05-08-10)

318A-SF-2582907-302

Continuation of FD-302 of  Interview of Catherine Lesjak (Hewlett Packard)  , On  01/17/2014  , Page  20 of 20



US_FBI_E-00002615