PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, <br><br> Defendants. | CASE NO. 3:18-cr-00577-CRB <br><br> UNITED STATES' OPPOSITION TO DEFENDANT CHAMBERLAIN'S MOTION *IN LIMINE* RE: CERTAIN CHAMBERLAIN E-MAILS <br><br> Pretrial Conference: February 21, 2024, 2 p.m. <br> Trial Date: March 18, 2024 |

**INTRODUCTION**

In the April 2011 e-mail that Defendant Chamberlain seeks to exclude, he sends three revenue recognition proposals to a co-conspirator with an eye toward financial objectives such as earnings and margin. Chamberlain sends the e-mail two weeks *after* the second quarter's close, by which time the facts determining revenue recognition should have been realized. His proposals depend on Autonomy's treatment of a backdated deal pursued through a reseller (a deal that, unsurprisingly, the government includes on its bill of particulars). And his proposals include their estimated effect on Autonomy's

earnings and margin, performance statistics that have zero relevance to a true revenue recognition exercise but would be highly material to a potential acquirer. The e-mail is therefore highly relevant to the crimes charged and should be admitted, regardless of whether Autonomy ultimately published a revenue number matching those laid out by Chamberlain.

Chamberlain's other requests for exclusion are similarly meritless. Chamberlain's "credit hunt" e-mails show in the defendant's own voice the acute pressures that Autonomy's accounting organization felt during the conspiracy period. They also prove that Chamberlain's goals at the time included maximizing revenues and minimizing costs, and provide context for his role in Autonomy's finance organization. Further, depending on how the evidence comes in at trial, the "credit hunt" e-mails may be relevant to rebutting defenses.

Finally, Lisa Harris's May 2010 e-mail about "dummy cash" captures the final moments in Autonomy's purchase of MicroLink, a deal through which—the government claims—Autonomy swept $16 million in bad debts under the rug. Chamberlain is free to cross-examine on the subject of "dummy cash" if he desires. The e-mail was admitted in *Hussain* and should be admitted here.

I.   **LEGAL STANDARD & FACTUAL BACKGROUND**

Rule 403 calls for a balancing of relevance and prejudice and favors the exclusion of evidence *only* when its probative value is "*substantially* outweighed" by the danger of "*unfair* prejudice" or other concerns. Fed. R. Evid. 403 (emphasis added), *see also United States v. Yazzie*, 59 F.3d 807, 811–12 (9th Cir. 1995) ("[O]nly when the evidence's unfair prejudice *substantially outweighs* its probative value is exclusion necessary.") (emphasis original). That standard does not reflexively restrict evidence that increases the odds of conviction. Rather, evidence is unfairly prejudicial if it "makes a conviction more likely *because it provokes an emotional response* in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged*." *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987) (emphasis added).

With the instant motion *in limine*, Chamberlain seeks to exclude under Rule 403 three categories of documents. The first category comprises an e-mail thread between Chamberlain and former Autonomy Chief Financial Officer Sushovan Hussain. Almost two weeks after the close of 2010's

1  second quarter, Chamberlain wrote Hussain an e-mail about recognizing the revenue from various
2  sources.  The e-mail laid out three different scenarios for recognizing software or hardware revenue and
3  the effect each would have on Autonomy's gross margins and earnings per share.  Chamberlain included
4  options for recognizing revenue from "Prisa," a backdated deal that Autonomy pushed through a
5  reseller.
6        Chamberlain's second category comprises several e-mails from Chamberlain to Autonomy
7  accounting employees that refer to "credit hunt[s]."  Chamberlain describes these "hunt[s]" as searches
8  by Autonomy employees for deferred revenue that "should now be recognized."  Mot. at 5:22-6:1.
9  Chamberlain claims that the "credit hunts" resulted in no misleading accounting, and fears that the
10 government will insinuate to the contrary.
11       Chamberlain's final ask relates to an e-mail from Autonomy finance controller Lisa Harris in the
12 wake of Autonomy's acquisition of MicroLink, a reseller.  *See* Mot. at 7-8.  Autonomy's purchase of the
13 company closed in January 2010 and the accounting integration of the companies continued into the
14 spring.  As part of that process, Harris on May 18, 2010 sent the e-mail that Chamberlain seeks to
15 exclude, asking two Autonomy accountants to "post dummy cash" to Autonomy Inc.'s accounts
16 receivable.  *See* Declaration of Gary Lincenberg in Support of Defendant Stephen Chamberlain's
17 Motion *in Limine* to Exclude Irrelevant Prejudicial Documents (hereinafter "Lincenberg Decl."), ECF
18 No. 290-1 at Exhibit 12.  The purpose of doing so, Harris explained in her e-mail, was to accomplish the
19 write-off of almost $16 million in debts that MicroLink owed Autonomy when acquired.
20   As set forth below, the e-mails above are relevant and admissible.  The government asks that the
21 Court admit the first and third categories of documents and reserve judgment as to the second.
22
23 **II.    ARGUMENT**
24       **a.  Chamberlain's April 12, 2011 E-mail to Hussain Should Be Admitted.**
25       The affirmative case for admitting Chamberlain's April 2011 e-mail to Hussain is clear: The e-
26 mail shows Chamberlain treating revenue recognition principles as subservient to the financial
27 objectives of Autonomy's management during the conspiracy period.  As a party admission, it's not
28

1  hearsay. FED. R. EVID. 801(d)(2)(A). The e-mail should be admitted.

2      The integrity of revenue recognition lies at the heart of the government's case. Defendants
3  Lynch and Chamberlain are charged with a wire fraud conspiracy whose means and methods include
4  "[a]rtificially inflating revenues by . . . (i) backdating written agreements to record revenue in prior
5  periods; (ii) recording revenue on contracts that were subject to side letters or other agreements . . . ;
6  [and] (iv) improperly recording revenue where all of the criteria in IFRS, IAS 18, and Autonomy's
7  revenue recognition policy had not been satisfied[.]" Dkt. 21 at ¶ 22(a). The Chamberlain e-mail
8  references at least one agreement that falls into those categories—Prisa—and shows the defendant
9  discussing the very means and methods that the government has alleged.

10      Indeed, one need only turn back to the record in *Hussain* to understand the deep relevance of
11  Chamberlain's statements. At the *Hussain* trial, as Chamberlain acknowledges, one of Autonomy's
12  former auditors at Deloitte testified that he was "troubled by this e-mail" because "it's dated sometime
13  after the period ends but there's still debates about what is going to be recognized." *Hussain* Trial Tr. at
14  3987:24-3988:6 (testimony of Lee Welham). The auditor testified that he "couldn't think of a reason
15  why 12 days after the quarter ends you would still be debating how to recognize that revenue[.]" *Id*. at
16  3988:7-13. Later in closing, the government argued that the Chamberlain e-mail showed "Mr. Hussain
17  and Mr. Chamberlain . . . tinkering with the revenue recognition in order to hit certain targets." *Hussain*
18  Trial Tr. at 5801:15-20 (government's closing argument). A year later, during Hewlett-Packard's civil
19  fraud trial in the United Kingdom, HP questioned Lynch about the exchange, arguing that it
20  "demonstrates a willingness to pick and choose what revenue to recognize[.]" *See* Decl. of Zachary G.F.
21  Abrahamson in Support of the United States' Opposition to Defendant Chamberlain's Motion *in Limine*
22  re: Certain Chamberlain E-mails (filed herewith), Exhibit A (*ACL Netherlands BV v. Lynch* Trial Tr.,
23  July 22, 2019 at 62:21-63:18). (Lynch disagreed with that reading. *Id*.) Chamberlain may dispute the
24  inferences—about his intent, about his participation in the conspiracy, and about his understanding of its
25  objects—properly drawn from this e-mail. But that's a question for the jury.

26      Chamberlain's motion provides no persuasive reason to exclude the April 2011 e-mail. He notes
27  that Autonomy chose not to use any of Chamberlain's "numbers" for its second quarter results. Mot. at
28  4:19-24. And Chamberlain somehow concludes from this fact that the e-mail "is irrelevant to the

U.S. OPP TO CHAMBERLAIN MIL
RE CERTAIN EMAILS                 4

question of whether Mr. Chamberlain had an intent to defraud." Mot. at 4:25-26.  But he provides no reasoning or authority for that proposition, which seems to assert that the only competent evidence of a fraudster's intent is that which he says to his victim.  That is not the law.

Even apart from intent, Chamberlain's e-mail matters because it goes to the existence of (1) a conspiracy and (2) a scheme to defraud, which is a distinct element of wire fraud.  Among other things, conspiracy requires proof that the defendant agreed with someone else to commit a crime and did so knowing one of the agreement's objects.  *See* Ninth Circuit Model Crim. Jury Instr. 11.1 (Conspiracy).  An e-mail from Chamberlain to a co-conspirator that calls for joint conduct toward the financial objectives identified in the superseding indictment is therefore highly relevant to conspiracy.  As for wire fraud trials, the Ninth Circuit has clearly held that evidence of uncharged transactions is admissible where it tends the prove a defendant's "overall scheme to defraud." *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016).  Here, Chamberlain's April 2011 e-mail plays an analogous role: proving that he and others at Autonomy maintained a scheme to defraud investors and HP, even if the company reported second quarter numbers that differed from Chamberlain's e-mail.  The e-mail therefore comfortably fits within the wide scope of evidence that courts have admitted as proof of fraud schemes.  *See*, *e.g.*, *United States v. Kail*, No. 18-CR-00172-BLF-1, 2021 WL 261135, at *11 (N.D. Cal. Jan. 26, 2021) (defendant's unreported receipt of benefits from companies seeking business with defendant's employer was admissible, even though not charged, as proof of defendant's scheme to defraud).  If Chamberlain fears that "the jury will judge Mr. Chamberlain not on the actual accounting decisions that were made but . . . speculation about what Mr. Chamberlain might have meant," then his lawyers are free to cross-examine the sponsoring witness about that speculation.  Chamberlain's April 2011 e-mail to Hussain should be admitted.[1]

### b. Chamberlain's "Credit Hunt" E-mails Should Be Admitted.

Next, Chamberlain asks the Court to exclude certain e-mails regarding "credit hunts" on the fear,

---

[1] Chamberlain also claims that the government in *Hussain* did not "present any evidence that any of the options would have been inconsistent with applicable accounting standards[.]" Mot. at 4:21-22. Not so: For example, the government proved in *Hussain* that Autonomy backdated the Prisa transaction, which should therefore have been recognized in 2011's second quarter, not the first.

essentially, that jurors will find them fishy. That fear is easily addressed on cross-examination, and the e-mails may be relevant depending on how the evidence comes in. The Court should deny Chamberlain's request and admit the e-mails.

The "credit hunt" e-mails are relevant for several reasons. First, the "credit hunt" e-mails tend to establish—through Chamberlain's own words—the acute pressures that Chamberlain and Autonomy felt during the conspiracy period to post strong financial metrics. Second, the e-mails demonstrate that Chamberlain's objectives at the time included maximizing revenue and reducing costs. Third, the "credit hunt" e-mails help to contextualize Chamberlain's role in Autonomy's finance organization and establish the level of authority that Chamberlain held. *See United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) ("A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.").

Finally, the "credit hunt" e-mails capture the level of detail with which Chamberlain operated on matters of accounting. That information could prove relevant to rebutting defense strategies claiming that Chamberlain overlooked, or had a practice of not engaging with, various accounting details. For example, the e-mails attached to Chamberlain's motion include an April 11, 2010 exchange with Hussain about a proposal that Autonomy modify its amortization of a contract with FileTek. *See* Lincenberg Decl., Ex. 8. Hussain reacts positively to the idea, but Chamberlain pushes back, noting that the company was "already amortising over 3 years" and that "[t]he question is whether we should defer the start point." *Id*. Even if the mechanisms of that proposal differ from those of the deals identified in the government's bills of particulars, the conclusion remains that Chamberlain knew the ins and outs of various reseller contracts, including the particulars of their accounting treatment by Autonomy. If an ignorance defense takes shape at trial, e-mails like these may play a role in rebuttal. The e-mails should be admitted.

      **c. Lisa Harris's May 2010 E-mail About "Dummy Cash" and the MicroLink Acquisition Should Be Admitted.**

Chamberlain's last request—that the Court exclude a May 2010 e-mail from Autonomy

1. controller Lisa Harris—pertains to an equally integral part of the government's fraud narrative. As the
2. Court recalls from the superseding indictment and from *Hussain*, an important chapter of the Autonomy
3. story relates to MicroLink, a reseller that took at-risk deals pursuant to which Autonomy recognized
4. revenue. Many of the deals never came to fruition after MicroLink took them, contributing to
5. MicroLink's mounting debts to Autonomy over the course of 2009: By October, the reseller owed
6. Autonomy some $22 million. *See Hussain* Trial Tr. at 1529 (testimony of Alan Rizek). Autonomy then
7. initiated acquisition discussions with MicroLink and would ultimately acquire the company for $55
8. million in early 2010.
9.     Through the MicroLink acquisition, the government argued in *Hussain* and maintains here,
10. Autonomy swept millions of dollars in fraudulent revenue under the rug. For after the acquisition
11. closed, Autonomy simply wrote off $16 million that the company had previously recognized through
12. MicroLink.[2] The end of that story—the mechanics of how Autonomy made MicroLink's debts go
13. 'poof'—are told through Lisa Harris's e-mail about "dummy cash." *See* Lincenberg Decl., Ex. 12 at 2
14. ("The $15m represents the costs that we have adjusted in Microlink books [*sic*] pre-acquisition such that
15. Alan is no longer showing these invoices on his [accounts payable] as due to Autonomy anymore.")
16. The government should be permitted to tell that story with the evidence available. *See United States v.*
17. *Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 944 (N.D. Cal. 2016) ("[A]s the party with the burden of
18. proof, the prosecution has a 'need for evidentiary richness and narrative integrity in presenting a
19. case.'").
20.     Admission of these facts and of Harris's e-mail will not unfairly prejudice Chamberlain under
21. Rule 403. Contrary to Chamberlain's motion, the government in its *Hussain* closing did *not*
22. "pejoratively suggest that the accounting entry was fraudulent" because Autonomy used "dummy cash."
23. Mot. at 8:3-5. The government simply asked jurors to "recall the testimony about the dummy cash" and
24. later framed former MicroLink CFO Alan Rizek's testimony as "[d]escribing this posting of dummy

---

[2] Autonomy later received an inquiry from the UK's Financial Reporting Review Panel on several topics, including the status of the MicroLink debts that Autonomy wrote off. The company told the regulator that, after the acquisition, MicroLink "continue[d] to receive payment from its customers and as a consequence the outstanding balance of the items at 31 December 2010 was less than $1.4 million." *See* Abrahamson Decl., Ex. B at 5 (Trial Exhibit 3060).

U.S. OPP TO CHAMBERLAIN MIL
RE CERTAIN EMAILS               7

cash[.]" *Hussain* Trial Tr. at 5750:8-14 (government's closing argument).  Finally, Chamberlain will have the opportunity to cross-examine on Harris's e-mail.  Indeed, during *Hussain*, the defense cross-examination of Rizek *began* with "dummy cash."  *See Hussain* Trial Tr. at 1590:16-20 ("[Mr. Keker]: Let's start with this [Exhibit] 816, the dummy cash that you were talking about.").  That opportunity will mitigate any improper prejudice stemming from Harris's May 2010 e-mail.  The document should be admitted.

### III. CONCLUSION

For the reasons above, the Court should deny Chamberlain's motion to exclude certain documents.

DATED: January 31, 2024

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

By:     /s/ Zack Abrahamson
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys