**Volume 1**

**Pages 1 - 20**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. 18-CR-577** |
| ) | |
| MICHAEL RICHARD LYNCH, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ————————————————————————) | |

San Francisco, California
Wednesday, January 10, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

                         Ismail Ramsey
                         United States Attorney
                         450 Golden Gate Avenue
                         San Francisco, California  94102
              BY:  **ROBERT S. LEACH**
                   **KRISTINA GREEN**
                   **ADAM A. REEVES**
                   **ZACHARY GEORGE FACER ABRAHAMSON**
                   **ASSISTANT UNITED STATES ATTORNEYS**

    **(Appearances continued next page.)**

Reported By:  Jennifer Coulthard, CSR No. 14457, RMR, CRR, FCRR
                Official U.S. District Court Stenographer

1   **<u>APPEARANCES (Cont'd)</u>**:

2   For Defendant
    Michael Richard          CLIFFORD CHANCE US, LLP
3   Lynch:                   31 West 52nd Street
                             New York, New York  10019-6131
4                     BY:   **CHRISTOPHER J. MORVILLO**
                            **ATTORNEY AT LAW**

5
                             STEPTOE & JOHNSON LLP
6                            1330 Connecticut Avenue, NW
                             Washington, DC  20036
7                     BY:   **REID HENRY WEINGARTEN**
                            **ATTORNEY AT LAW**

8
    For Defendant
9   Stephen Keith            BIRD MARELLA BOXER WOLPER NESSIM DROOKS
    Chamberlain:             LINCENBERG RHOW
10                           1875 Century Park East, 23rd Floor
                             Los Angeles, California  90067-2561
11                    BY:   **GARY S. LICENBERG, ATTORNEY AT LAW**

12

13

14
    Reported By:  Jennifer Coulthard, CSR No. 14457, RMR, CRR, FCRR
15                Official U.S. District Court Stenographer

16

17

18

19

20

21

22

23

24

25

```
 1    Wednesday - January 10, 2024                    11:16 a.m.

 2                      P R O C E E D I N G S

 3                           --oOo--

 4         THE CLERK:  Calling criminal action CR18-0577.  USA

 5    versus Michael Richard Lynch and Stephen Keith Chamberlain.

 6         THE COURT:  May we proceed?  I'm waiting for my memo,

 7    but everybody can introduce themself.

 8         MR. LEACH:  Good morning, Your Honor; Robert Leach on

 9    behalf of the United States.  I'm here with Adam Reeves,

10    Kristina Green and Zach Abrahamson.

11         THE COURT:  Okay.

12         MR. MORVILLO:  Good morning, Your Honor; Chris

13    Morvillo for Defendant Michael Lynch who is present in the

14    courtroom along with Reid Weingarten.

15         THE COURT:  Good morning.

16         MR. LICENBERG:  Good morning, Your Honor; Gary

17    Licenberg for Mr. Chamberlain, who is present by Zoom.

18         THE COURT:  Okay.

19         MR. LICENBERG:  And thank you for allowing him to

20    appear by Zoom.

21         THE COURT:  Sure.  Sure.  I'm waiting for my memo, so

22    I've read it.  I've read them all.  In order to eliminate some

23    of the suspense that must be -- it's palpable in the courtroom

24    right now, I'm denying all of your motions.

25              It appears to me that with the exception of the nine
```

1    items -- and I'll get to that in a minute -- these problems can

2    be satisfactorily addressed and have been satisfactorily

3    addressed by the pleadings and the discovery to date.

4              With respect to the nine, quote, "new items,"

5    they're -- you have to put that in quotes because they're not

6    entirely new.  What they are, as I understand them, is items

7    that hadn't been used in the *Hussain* case; and I don't know

8    whether they came up in the British case or not, but they're

9    not really unknown.

10             And the reason I'm going to allow them is because I

11   have enough experience knowing that when you try a case against

12   a new defendant substantially later than the earlier case, it's

13   not simply going to be a retread of what the preexisting trial

14   was.  You don't just phone it in and have the same evidence and

15   the same witnesses and the same this and the same that.  This

16   is not a retrial; it is a new trial.

17             And Dr. Lynch's position is certainly different, very

18   different from Mr. Hussain's position.  My guess is that's a

19   pillar of your defense.  And so to say to the government, well,

20   you're really hamstrung here, just do what you did the last

21   time and nothing new and we're just going to mete it on the --

22   you know, we're going to fight the old battle once again I

23   think is fundamentally unfair.

24             Now, you say:  Oh, well -- because it's your position

25   that this is unfair to you.  I don't think it is unfair.  I

**PROCEEDINGS**

1    think you do have adequate time to prepare.  I think you have

2    adequate resources to devote to it to prepare, so I'm not going

3    to foreclose the government from their -- from using that

4    information subject to whatever motions in limine you people

5    file, if you haven't filed them already.  I don't know whether

6    you have or not.

7              **MR. LEACH:**  They're due next week, Your Honor.

8              **THE COURT:**  Yeah.  I haven't read anything.

9              And subject to, you know, visiting them on some other

10   basis but not on the:  Oh, this isn't part of the deal.  This

11   isn't -- you know, we're not prepared to do it.

12             You know what?  I guarantee you you'll be prepared to

13   do it.  If I know one thing -- and maybe that's arguable

14   whether I do or not, but I don't think you'll disagree --

15   you'll be prepared for this trial.  You'll be plenty prepared

16   for this trial.

17             And maybe you don't think so, because no lawyer I know

18   just feels that they've got it all in hand before they walk in

19   to the trial, but I've got a sense that you'll be prepared, and

20   it's more than just a sense.  I've seen this now for years, and

21   I know you guys.  I know you.  You're not going to walk into a

22   trial not having prepared it.  There's no way.  And I just have

23   to say that I -- look, there's no reason for you to get into

24   motivations or whether I'm skeptical of arguments and so forth.

25   Makes no difference.  Makes no difference.  I don't -- I

**PROCEEDINGS**

1   understand why you made the motion.  Fine.  You lost the

2   motion.  Fine.  Let's move on because this case is going to

3   trial on the date that I said it's going to go to trial.  So

4   everybody get ready.  If you have to put some more people on,

5   put some more people on, but we're going to trial.  Going to

6   trial.

7         And Mr. Morvillo, you really don't want to have to say

8   anything, but I'll -- you know.  You sure can, but, I mean,

9   what's the point?  I mean, my mind is made up.  I tell you when

10  my mind is made up and I tell you when it's not made up, and

11  it's made up.  It's made up.  But go ahead, because I'd like to

12  hear what you have to say, if you want to say something.

13        **MR. MORVILLO:**  I appreciate the candor, and I do

14  understand that your mind is made up, Judge.  When we first

15  appeared here back in June, we were staring at a constellation

16  of 16 million documents that were being produced in discovery.

17  The whole purpose of the pretrial process was to provide fair

18  notice to be able to narrow the universe of those documents

19  that we were going to have to confront; the deals, the

20  transactions, the allegations, et cetera.

21        We got extended witness lists, we received and

22  negotiated a bill of particulars in October that had the effect

23  of focusing on the constellations that we were going to need to

24  address, and we prepared on that basis.

25        Then the government has, with their 12,000-exhibit

**PROCEEDINGS**

1    exhibit lists and their 124 new transactions or 103 new

2    transactions -- not 9, 103 new transactions -- reversed the

3    telescope on us and expanded the universe of allegations and

4    transactions that we're going to have to confront.  Many of

5    them are new to us.

6          Add to that the fact that we're still missing millions

7    of pages of discovery.  They've been produced to us, but we

8    don't have access to them because they have to be uploaded and

9    processed and reviewed.

10         Some of it may be familiar to us from the civil case

11   or from the Hussain trial, but we don't know.

12         I do know that there are documents that I've seen just

13   based on the names of the files that were -- that are things

14   that I don't think we've seen before; documents relating to a

15   whistleblower named Mr. Hogenson, Brent Hogenson, that seemed

16   to be in these documents -- I don't know what's there --

17   documents relating to deals that are now on this new bill of

18   particulars.

19         **THE COURT:**  But you have the documents now?

20         **MR. MORVILLO:**  We have them, but we don't have access

21   to them because they have to be uploaded and processed.  I

22   don't think we're going to be able to --

23         **THE COURT:**  The whistleblower's document, that file,

24   explain to me why -- tell me what the situation is as an

25   example.

**PROCEEDINGS**

1          **MR. LEACH:**  Your Honor, we've produced thousands of

2     documents.

3          **THE COURT:**  I know everybody's produced 12 billion

4     documents.  Now, just explain to me --

5          What Mr. Morvillo is saying is that there is a

6     whistleblower, an alleged whistleblower, and there's a file and

7     they haven't been able to upload it or download it or looked at

8     it or whatever the term is.  Is there some issue with that?

9          **MR. LEACH:**  As I understand the issue, Your Honor, the

10    government produced documents electronically to the

11    defendant -- to Defendant Chamberlain when he made his

12    appearance and then to Dr. Lynch when he made his appearance.

13         **THE COURT:**  Right.

14         **MR. LEACH:**  There was some technical issue with

15    approximately 3.3 million files.  I was alerted to that issue

16    in November of 2023.  I believe we have made substantial

17    efforts to try to resolve that issue.

18         I hear Mr. Morvillo saying he has the files now.  They

19    need to be uploaded and put on a computer and processed so they

20    can be viewed in a way.  And what I hear Mr. Morvillo saying is

21    that they've done some preliminary look at some of the files,

22    and they appear to relate to a whistleblower that they hadn't

23    seen before.  I don't know what he's talking about

24    specifically.  We've produced thousands of documents from

25    whatever source we get them for the whistleblower.

**PROCEEDINGS**

1    And I don't hear them asking for -- to move the trial,

2  Your Honor.  What they do is, they want to delay Mr. Geall's

3  deposition.

4    **THE COURT:**  I'm not delaying any depositions.  That's

5  not going to happen.

6    **MR. LEACH:**  We have been working to resolve whatever

7  technical issues they have.

8    **THE COURT:**  Well, why isn't the idea that your

9  technical person sit down with their technical person and see

10  whether they can -- with some requests -- I mean, if the

11  request is, well, please, we're having a problem with 12

12  million documents, that's not going to be useful; but if they

13  say:  Here is a particular file that you've identified, we

14  can't see it, or we're having a problem seeing it, then they

15  work on that where they help you -- they help the defense see

16  it, if they haven't seen it.  That's one approach.

17    A second approach is simply to get out a updated

18  witness list, a witness list and an exhibit list because, in my

19  experience, that there maybe X million documents, and believe

20  me, X million documents aren't going to be shown to the jury.

21  Whoever tries to show X million documents to the jury is going

22  to lose the case.  They're certainly going to lose the judge.

23  So that's not going to happen.

24    The government is going to have a very, very

25  manageable, finite number of documents that will either prove

**PROCEEDINGS**

1    or not prove Dr. Lynch's culpability.  That's what will happen.

2          And Mr. Chamberlain, that's what will happen.  I know

3    it.  That's the way it works.  It works in every case.

4          So get them -- if they don't have it, get them as

5    up-to-dated exhibit list as you can.

6          And maybe what you have to do is supplement your

7    witness list on a -- every other day.  I don't know.  You're

8    preparing your case.  It's now January.  It's roughly two

9    months away from the trial roughly, so maybe every three days

10   if you have a change in your -- either your witness list or

11   your exhibit list, you change it.

12         And I know that's, quote, "somewhat chaotic" for the

13   defense because it's a moving target, but, on the other hand,

14   it is fair to say that the government doesn't make its election

15   of witnesses until after they've been thoroughly interviewed

16   and prepared for trial and they see what they have.  And I

17   understand that, but I assume that process has been ongoing,

18   one; and two, you've already had one shot at a number of these

19   witnesses, so it's no surprise how they're going to testify.

20         **MR. LEACH:**  Just to respond, Your Honor, we're happy

21   to do that, and we have been doing that.  We've been responding

22   to every technical issue that the defense raises with us in

23   good faith.

24         We -- in Hussain we actually tiered the witnesses:

25   Who's most likely to be called, who's least likely to be

**PROCEEDINGS**

1  called.  We're happy to do that for the defense, and we're

2  happy to update as frequently as need be, and we've been

3  attempting to confer with the defense about that.

4        **MR. MORVILLO:**  Your Honor, the missing discovery, it's

5  been produced to us.  They have given us the documents.  We are

6  now in the process -- it's a lot of material -- of trying to

7  get it on to a database so that we can look at it.

8        My understanding is, it's going to be another week or

9  two before we're even in a position to do that, so now we're

10  walking into depositions with one hand tied behind our back.

11  We are -- we are, you know, six weeks away from trial by the

12  time we actually get these documents.

13        **THE COURT:**  Are the exhibits that you intend to use in

14  your deposition, are they -- have they been disclosed?  How is

15  that working?  Because it's an odd -- the depositions are --

16  maybe I said something about it.  Maybe I should know more

17  about this or something.

18        But to take a deposition, one, is unusual; two, it's a

19  substitute for trial testimony.  So, in other words, that which

20  is being shown to a witness or upon which the witness is

21  expected to provide testimony has to be known to both sides.

22  So is this -- is this a -- is this hanging out there?  Nobody

23  knows what the witness is going to be asked in terms of

24  documents.

25        **MR. LEACH:**  No, Your Honor.  The exhibits we intend to

**PROCEEDINGS**

1  use with Mr. Geall are on the exhibit list that the defendants

2  have.  There's no surprise about those.  And we've volunteered

3  to give them notice three business days before the deposition

4  of what's going to be used.

5        **MR. REEVES:**  One week.

6        **MR. LEACH:**  One week from today.

7        **THE COURT:**  Okay.

8        **MR. MORVILLO:**  Your Honor, there's 12,000 documents on

9  the exhibit list.

10        **THE COURT:**  I understand, but they're going to say

11  witness X --

12        **MR. REEVES:**  Yes.

13        **THE COURT:**  -- who is being deposed -- as I understand

14  the process, and tell me if I'm wrong -- jones is going to be

15  deposed next week, seven days from now.  Here are the exhibits

16  we are going to show Jones.

17        I don't care whether there are 50 billion documents on

18  the list.  They're not going to go through and have to identify

19  for your purposes every document that maybe you would want to

20  use in terms of a cross-examination of a witness.

21        And I'm -- you know, I appreciate the problem that you

22  don't have that there's so many documents out there that may be

23  of relevance that you find it difficult to conduct the

24  examination.  I don't know whether you will or not.  I mean, I

25  think the proof will be in the pudding.

**PROCEEDINGS**

1          And by the way, you come across something and -- later

2     on and it appears that you didn't have access to it or that

3     somehow it's unfair in terms of the witness's examination, then

4     I would consider limiting that witness's testimony on that

5     subject.

6          MR. MORVILLO:  Well, that's really the point, Judge.

7     It's not a question of not having received the exhibits from

8     the government.  They've given us their list.  I think it's

9     extraordinarily long.  They'll give us the exhibits that they

10    intend to use.  What I don't know is whether there's documents

11    that we're going to find after these documents get uploaded and

12    after this deposition that we would have wanted to inquire

13    about.  That's --

14         THE COURT:  I got it.  But I'm not going to wait until

15    the second coming for you to find out whether there are

16    documents out there that maybe you want to use or could have

17    used.  I got it.  It's sort of like life's not perfect, you

18    know, you --

19         MR. MORVILLO:  It's a question of fairness, Judge,

20    right?

21         THE COURT:  Well, I understand it's a question of

22    fairness.  It doesn't seem to be unfair at this point.  Okay?

23    Let me put it that way.  It's not unfair if something --

24         If something happens during the course of the

25    deposition or trial that you believe renders the testimony

1    unfair, I'll examine it at that time.  What more can I do?

2          I mean, yes, I can do a lot more -- I got that -- but

3    I'm not going to do that which I can do.  I'm doing that which

4    I think is consistent with the requirements of due process in

5    this case.  There we are.

6          Okay, everybody.

7          **MR. LICENBERG:**  Your Honor --

8          **THE COURT:**  Yes.

9          **MR. LICENBERG:**  -- can I briefly --

10         **THE COURT:**  Yes.  Mr. Lincenberg.

11         **MR. LICENBERG:**  -- briefly be heard on the same thing.

12   With all due respect, I do think that there's is an unfairness

13   that's difficult for the Court to fathom.

14         Number one, I don't have unlimited resources and, you

15   know, we filed a bill of particulars two years ago and the

16   basis for it was:  Judge, my client's an accountant.  He does

17   thousands of different decisions and judgments within a year.

18   We just want to know what we're going to go against, because

19   the only way I can deal with a lack of resources is by

20   preparing well ahead of time.  And at the time two years ago

21   the Court said:  Lincenberg, you know, your motion is well

22   taken.

23         The government said our case is going to be the

24   transactions in the Hussain trial.  You've kind of said there

25   you go, you know, we had highly detailed trial and testimony at

**PROCEEDINGS**

```
 1   that trial and it undercuts any arguments about the need to
 2   clarify.  We prepared accordingly.
 3           When we get these huge dumps of documents and then
 4   even the exhibits and then the Bates numbers don't match up and
 5   you get people trying to load them -- and I've tried to
 6   prepare, for example, for the depositions in the UK well ahead
 7   of time so that I'd be prepared.  I'd use the bill of
 8   particulars that they filed a couple of months ago, which I
 9   already thought was expanded.  We used that.  My guy, who's
10   helping me, goes out on paternity leave and you're scrambling
11   and all of a sudden the bill of particulars doubles in size.
12           And remember, with Rule 15 depositions I'm
13   shadowboxing.  I'm thinking what can I or what should I be
14   asking this witness who's going to -- testimony is going to be
15   presented eight weeks into a trial to rebut things I don't even
16   know that come up.
17           THE COURT:  That happens.  I'm not a big fan of Rule
18   15 depositions.  You've asked for one, if I recall correctly.
19           MR. LICENBERG:  I did.
20           THE COURT:  So they're shadowboxing.  So no.  It's not
21   great.  It's not a preferred system of adjudication of facts
22   and so forth, but it's the reality of where people aren't
23   amenable or -- amenable I think is absolutely the right word --
24   amenable to the jurisdiction of the Court, and that's the
25   alternative.  I don't like it particularly --
```

PROCEEDINGS

1          **MR. LICENBERG:** It's not --

2          **THE COURT:** -- but I'm just trying to figure out -- I

3    don't know. I mean, I appreciate your resources are far more

4    limited than your codefendant's resources -- I understand

5    that -- but I'm not quite sure, one, that you can't take some

6    advantage of his extensive resources. I assume you have some

7    sharing arrangement; at least it looks like you all get along

8    reasonably well, as I would expect, and --

9          **MR. LICENBERG:** It's not just focused on the

10   depositions. In the middle of all of this we have motions in

11   limine. There's all sorts of new things coming.

12         **THE COURT:** Well, take it up with the motions in

13   limine.

14         **MR. LICENBERG:** Well, there's -- I'll leave it at

15   that. I do think there's an unfairness, and I'm not casting

16   any aspersions on the government -- they're trying their

17   best -- but this is the most difficult trial to prepare for

18   that I've ever dealt with --

19         **THE COURT:** Really?

20         **MR. LICENBERG:** -- because of the mass complexity of

21   it and the fact that the number of transactions is just growing

22   by the day.

23         **THE COURT:** A bit of an exaggeration; growing by the

24   day?

25         **MR. LICENBERG:** Not when the transactions that were

PROCEEDINGS

1    identified have, what, tripled in the dollar volume that's now

2    involved?

3                THE COURT:  Okay.

4                MR. LICENBERG:  It's a pretty massive growth.

5                THE COURT:  Didn't I simplify the case immeasurably by

6    dropping Count 17?

7                MR. LICENBERG:  Not -- not with respect to my client.

8    It was -- we appreciated it, Your Honor, but I'm just saying

9    that --

10               THE COURT:  Right.

11               MR. LICENBERG:  -- we're trying to figure out what to

12   defend against.

13               THE COURT:  I got it.  It's not your client.  I

14   understand that.  I understand that.  I was just using you as a

15   springboard to voice that opinion.

16               Well, everybody, it's never satisfactory to any of the

17   lawyers to hear the judge say do your best.  Do your best. I'll

18   see you back here motions in limine.

19               MR. LICENBERG:  Don't kick us out yet.  Couple more

20   points to raise.

21               THE COURT:  Okay.

22               MR. MORVILLO:  Your Honor --

23               THE COURT:  We finished this issue.  I don't want to

24   go back to this issue.

25               MR. MORVILLO:  Just one small point.

PROCEEDINGS

1          **THE COURT:**  Small point.

2          **MR. MORVILLO:**  Small point.  We filed our expert

3    report before they gave us 103 additional transactions and a

4    new theory of fraud based on something called "organic growth."

5    I think it would be fair for our expert at least to have an

6    opportunity to respond, if necessary, to those new allegations.

7    They should have been disclosed --

8          **MR. LEACH:**  No objection.

9          **THE COURT:**  No objection.  So there.  Congratulations,

10   Mr. Morvillo.  That small point carried the day.

11         **MR. MORVILLO:**  I told you it was a small point.

12         **MR. LICENBERG:**  Okay.  Two small items, Your Honor.

13   Different points.

14         **THE COURT:**  Are they as small as the last?

15         **MR. LICENBERG:**  Medium.  Medium.

16         **THE COURT:**  Medium sized.  Okay.

17         **MR. LICENBERG:**  Medium small.  First, there's a jury

18   questionnaire that the Court asked us to provide.

19         **THE COURT:**  Yes.

20         **MR. LICENBERG:**  We provided a draft.  Counsel got back

21   to me in the last day or so.  We're not in agreement.  We may

22   try to talk later this afternoon.  I think the Court wanted it

23   by today or tomorrow.  It may be a couple of days until we

24   can --

25         **THE COURT:**  That's fine, but get it to me so I can

1    give some thought to it.

2              **MR. LICENBERG:**  Okay.  Because you may be getting two

3    different versions to decide.

4              **THE COURT:**  Well, I can get two different versions.  I

5    can get two different versions.  That's okay.

6              **MR. LICENBERG:**  Perhaps if we do, maybe we could even

7    get on a quick Zoom to discuss the reasoning or the arguments

8    between -- that -- for the --

9              **THE COURT:**  Oh, I think I -- I think I want to look at

10   it first --

11             **MR. LICENBERG:**  Sure.

12             **THE COURT:**  -- before I figure out whether --

13             **MR. LICENBERG:**  Sure.

14             And second -- this I'll put in a small point

15   category -- we have subpoenas to a few of the Deloitte

16   witnesses whom the government assisted in helping get them to

17   accept subpoenas.

18             I sent an on-call agreement to their counsel asking --

19   I said normally it's 24, 48 hours, I'll give you 72 hours and

20   I'll try to even give you as much time as possible since you're

21   coming from England.

22             Counsel responded to me by saying, you know, with all

23   due respect, we don't need an on call agreement; our people

24   will be available.

25             You know, I don't want -- if I don't have an on call

**PROCEEDINGS**

1  agreement, I don't want the Court to say to me at some point:

2  Lincenberg, you should have had the person show up on the first

3  day of trial.

4      **THE COURT:**  Subpoena them here whenever you want them

5  subpoenaed here and I'll order them to -- they'll be on my

6  on call agreement.

7      **MR. LICENBERG:**  Okay.

8      **THE COURT:**  They get their choice.  They either agree

9  to your on call agreement --

10      Tell them that, with all due respect to Deloitte's

11  counsel.  Tell them that there are two types of agreements we

12  have in the United States, one is yours and one is mine and

13  they get the choice.

14      **MR. LICENBERG:**  Thank you, Your Honor.

15      **MR. LEACH:**  Your Honor, shall we get you the jury

16  questionnaire on Friday, would that --

17      **THE COURT:**  Yeah, that's fine.

18      **MR. LEACH:**  Okay.

19      **THE COURT:**  Now, that's it?

20      **MR. LEACH:**  Nothing from the government.

21      **MR. LICENBERG:**  That's it.

22      **THE COURT:**  Thank you.  We're in recess.

23      **MR. REEVES:**  Thank you, Your Honor.

24      (Concluded at 11:42 a.m.)

25                      --oOo--

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7

8    _____          <u>January 13, 2024</u>
     JENNIFER L. COULTHARD, RMR, CRR              DATE
9    Official Court Reporter
     CA CSR#14457
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25