PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL RICHARD LYNCH and<br>STEPHEN KEITH CHAMBERLAIN,<br><br>    Defendant. | CASE NO. 18-577-CRB<br><br>UNITED STATES' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 4: TO EXCLUDE POST-ACQUISITION EVIDENCE AND ADMIT CERTAIN POST-ACQUISITION STATEMENTS<br><br>Pretrial Conference: February 21, 2024<br>Trial Date: March 18, 2024 |

## INTRODUCTION

In his opposition to the government's post-acquisition motion, Dr. Lynch takes every fact occurring after Hewlett-Packard bought Autonomy as license to introduce the company's entire history. The Court should reject that demand: The narrow post-acquisition episodes in this and other motions do not implicate the many topics that Dr. Lynch wants to put before the jury. Those topics would lengthen the trial and permit Dr. Lynch to nullify by asking the jury to blame HP for Autonomy's fraud. The government's post-acquisition evidence should be admitted.

# ARGUMENT

## I. POST-ACQUISITION EVIDENCE PROBATIVE OF RELEVANT FACTS DOES NOT OPEN THE DOOR TO ALL POST-ACQUISITION EVIDENCE.

First, Dr. Lynch broadly asserts that the government's discrete requests open the door to the kitchen sink of post-acquisition evidence that Dr. Lynch separately seeks to admit. *See* Opp. at 2:16-22. Not so. The government explained in its opposition to *Dr. Lynch*'s post-acquisition motion why that evidence has minimal relevance to the charges here.[1] In short, because wire fraud's materiality inquiry focuses on the intrinsic capabilities of a statement to influence, HP's subjective approach to Autonomy's statements is neither here nor there. *See* Dkt. 314 at 2-4 (United States' Opposition to Defendant Lynch's Motion *in Limine* to Admit Post-Acquisition Evidence) (discussing materiality).

Moreover, the specific evidence that, Dr. Lynch claims, produces inferences about materiality in fact produces no such inference. *See* Opp. at 5-6. Admitting the evidence would confuse jurors and require additional witnesses and testimony to contextualize the post-acquisition evidence that Dr. Lynch seeks to admit. The same goes for post-acquisition valuations. Dr. Lynch calls these valuations smoking guns, *see* Opp. at 5:4-10, but his arguments mischaracterize the evidence and ignore the confusion that would result from admitting the valuations and then explaining their subtle accounting and factual circumstances. The Court properly excluded the valuations in *Hussain*, *see* Order Denying Motions for New Trial and Judgment of Acquittal (hereinafter "*Hussain* New Trial Order"). at 67-68, *United States v. Hussain*, CR 16-462 CRB (N.D. Cal. Jul. 30, 2018), and should do so here.

Second, Dr. Lynch argues that the government has "cherry-pick[ed] certain post-acquisition events" and that their admission would entitle Dr. Lynch to adduce post-acquisition evidence that puts the government's events in context. Neither that premise nor that conclusion withstands scrutiny. Far from "cherry-pick[ing]" evidence, the government has sought to comply with this Court's guidance that post-acquisition evidence, to be admissible here, should shed light on relevant pre-acquisition facts. Necessarily, that filter excludes most documents and testimony pertaining to HP's integration of

---

[1] The government in *Hussain* stipulated to the one piece of post-acquisition evidence that this Court deemed relevant to Lynch's pre-acquisition intent: the post-acquisition transfer to Hewlett-Packard of Autonomy's books and records. *See* Dkt. 314 at 11. The government would enter a similar stipulation here.

U.S.' REPLY RE MOT. *IN LIMINE* NO. 4 RE
POST-ACQ. EVIDENCE, CASE NO. CR 18-577 CRB   2

Autonomy and events after October 3, 2011.  As for Dr. Lynch's kitchen sink of "context," the government explains below why Dr. Lynch's evidence amounts to improper rebuttal and should be excluded under Rule 403.  The government's motion should be granted and Dr. Lynch's post-acquisition evidence excluded.

### A. The Court Should Admit the Restatement and Limit Post-Acquisition Evidence Introduced During Yelland's Cross-Examination.

Dr. Lynch urges the Court to exclude the Restatement of Autonomy Systems Limited's accounts filed in January 2014 by Christopher Yelland.  The government has repeatedly briefed the relevance and admissibility of that document and stands on those arguments.  *See*, *e.g.*, Dkt. 295 (United States' Motion *in Limine* No. 1 to Admit Evidence of Autonomy Systems Ltd.'s Restatement and Related Summary Charts).  The Restatement was properly admitted in *Hussain* as it "went directly to the question of falsity."  *Hussain* New Trial Order at 60:13.  The Ninth Circuit affirmed that decision on appeal.  *See United States v. Hussain*, 818 Fed. Appx. 765, 766 (9th Cir. 2018) (memorandum disposition).  The Restatement should be admitted here.

Failing exclusion, Dr. Lynch wants HP's post-acquisition valuations of Autonomy admitted as rebuttal to the Restatement.  Opp. at 5:4-8.  The Court declined that invitation in *Hussain*, *see Hussain* New Trial Order at 67-68, and should do so again here for at least three reasons.  First, the valuations would be improper rebuttal: The 2014 Restatement did not comment on Autonomy's value—then or at the time of HP's acquisition.  *See* Trial Ex. 2445.  The document sought only to discharge Autonomy's ongoing duty accurately to report its accounts.  *See Hussain* Trial Tr. 5044 (testimony of Christopher Yelland).  Rebutting that narrow, retrospective accounting exercise with a highly contingent and forward-looking financial model would be improper.

Second, the valuations would confuse the jury.  As the United States explained in its opposition to Dr. Lynch's post-acquisition motion, the admission of certain valuations would require the parties to tutor jurors on the complex principles of purchase price accounting.  *See* Dkt. 314 at 9:12-16.  And *any* post-acquisition valuation would also introduce variables—such as macroeconomic trends and competitive dynamics—that would require explanation for the jury.  Third, the valuations do not prove what Dr. Lynch implies: that HP saw Autonomy as equally or *more* valuable after learning of

Autonomy's fraud. HP's valuation of Autonomy *declined* by billions of dollars after it learned of Autonomy's improper accounting. *See* Dkt. 314 at 6-7. The valuations should be excluded.

As for Dr. Lynch's request that he be permitted to question Yelland about the circumstances of the Restatement's preparation, the government acknowledges that such questioning occurred in *Hussain* and acknowledges that certain statements by Yelland may be relevant if they inform or constitute initial iterations of the Restatement. But as the government said in its opposition to Dr. Lynch's post-acquisition motion, *see* Dkt. 314 at 10-11, the Court should allow Yelland to explain the context of third-party involvement in the Restatement and preclude questioning far afield of the Restatement's inputs and mechanics. *See Hussain* Trial Tr. 5208:2-19 (sustaining objection to question about civil fraud litigation in UK).

### B. The Court Should Admit Joel Scott's Post-Acquisition Testimony and Exclude Dr. Lynch's Proffered "Sequence-of-Events" Rebuttal Evidence.

To shoehorn his kitchen sink rebuttal into the story of Joel Scott's whistleblower disclosures, Dr. Lynch argues that the Court "must permit[]" him to "present post-acquisition sequence-of-events evidence." Opp. at 7:18-8:8. That request is problematic for several reasons.

First, Scott's post-acquisition testimony[2] about his May 2012 disclosures won't provide some sweeping "sequence of events" necessitating a blunderbuss rebuttal. As outlined in its motion *in limine*, the government anticipates that Scott will testify narrowly as to John Schultz's post-acquisition ignorance of Autonomy's pre-acquisition hardware sales and Scott's own concerns with various Autonomy business practices. As his narrow testimony in *Hussain* reflects, the government will not use Scott to narrate the drama of Autonomy's integration with HP.

Relatedly, Dr. Lynch draws no boundary around the scope of the purported "sequence-of events evidence" that Dr. Lynch would place before the jury. Indeed, Dr. Lynch seems to view Scott's testimony as greenlighting a free-for-all that would allow evidence of (at least): (1) "the sequence of events leading up to Dr. Lynch's termination and the departure of other Autonomy employees," Opp. at 8:12-13; (2) "whether Autonomy in fact stopped selling hardware during [the first half of 2012] and

---

[2] For avoidance of doubt, the government anticipates that the vast majority of Scott's testimony will relate to *pre*-acquisition facts and events as to which Scott was a competent percipient witness. *See*, *e.g.*, *Hussain* Trial Tr. 2558-2900 (testimony of Joel Scott).

U.S.' REPLY RE MOT. *IN LIMINE* NO. 4 RE
POST-ACQ. EVIDENCE, CASE NO. CR 18-577 CRB   4

what actually caused the revenue misses," *id*. at 8:16-18; (3) "HP's mismanagement, its failed integration efforts, and its failure to achieve the synergies," *id*. at 8:19-20; (4) HP's "knowing[] and seamless[]" post-acquisition continuation of hardware sales, *id*. at 8:20-23; and (5) Autonomy's post-acquisition transfer of books and records to HP, *id*. 8:23-25). All this—and presumably more—Dr. Lynch claims as necessary to put Scott's "testimony into context and to challenge its veracity." *Id*. at 8:25-27.

But jurors will not need that "context" to understand Scott's testimony. Indeed, the government elicited from Scott in *Hussain* the fact of his post-acquisition disclosure and Schultz's response expressing ignorance as to Autonomy's hardware resales. *See Hussain* Trial Tr. at 2743:2744:16 ([Scott]: "Mr. Schultz surprised me when he said, no, he had no idea what I was talking about."). Even so, the Court rejected as "collateral and confusing" Hussain's attempts to introduce evidence of HP's post-acquisition reaction to hardware sales and Autonomy integration efforts. *See Hussain* New Trial Order at 64:4-16. The Court can accommodate the proffered Scott testimony while drawing similar lines in this trial.

### C. The Court Should Admit John Schultz's Post-Acquisition Testimony and Exclude Dr. Lynch's Proffered Rebuttal Evidence.

Finally, the Court should admit John Schultz's testimony about statements that Dr. Lynch made during a July 2012 meeting about several of the practices at the heart of this case. During that meeting, Schultz will testify, Dr. Lynch evaded answering questions about Autonomy's hardware resales before ultimately underestimating the loss at which Autonomy made those resales and claiming surprise at both the resales' magnitude and accounting treatment. The government will prove that Dr. Lynch's answers to Schultz were misleading and knowingly so.[3] Those answers therefore support an inference that Dr. Lynch had consciousness of guilt, which bears directly on the jury's assessment of Dr. Lynch's pre-acquisition state of mind. Dr. Lynch's statements to Schultz should be admitted.

Dr. Lynch's opposition provides no evidence rebutting the government's proffers above. He simply describes as "absurd" the notion that Dr. Lynch might have misrepresented Autonomy's

---

[3] Lynch's statement about his relationships with the media also supports the inference that Lynch sought an end to HP's investigation of the business practices about which Schulz inquired.

U.S.' REPLY RE MOT. *IN LIMINE* NO. 4 RE
POST-ACQ. EVIDENCE, CASE NO. CR 18-577 CRB   5

hardware resales and relationship with MicroLink. *See* Opp. at 9:10-14. Instead, Dr. Lynch demands the admission of reams of irrelevant testimony "to put his interview with Mr. Schultz in context." Opp. at 9:17. For example, Dr. Lynch asks for admission of his "experience as CEO of HP-Autonomy and what he witnessed as HP mismanaged the integration and failed to achieve the synergies it had projected," Opp. at 9:19-21, but fails to explain how that testimony would shed light on the statements about hardware and MicroLink that Dr. Lynch made to Schultz. Dr. Lynch's related request "to present evidence about how HP set out to blame Autonomy for HP's failings" threatens a wide-ranging inquiry, untethered to the July 2012 meeting between Dr. Lynch and Schultz, that would keep the jury impaneled for weeks on end. Opp. at 9:23-24. So, too, with Dr. Lynch's proffered evidence challenging Schultz's "credibility." Opp. at 10:4-14. In particular, evidence of the SEC's investigation of HP is irrelevant to Dr. Lynch's guilt and would force the government to present the entirety of the SEC's evidence and the rationale for its ultimate decision. The Court excluded similar evidence of other agencies' decisions in *Hussain* and should do so here. *See Hussain* Pretrial Conference Tr. at 5:17 (granting government's motion *in limine* to preclude evidence and argument related to agency charging decisions).

Dr. Lynch's July 2012 statements to John Schultz should be admitted and the defendant's improper rebuttal evidence should be excluded.

## CONCLUSION

For the reasons above, the Court should grant the government's motion *in limine*.

DATED: February 7, 2024

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferrred by
28 U.S.C. § 515

By:      /s/ Zack Abrahamson
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys