# Exhibit A

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

FOIA Confidential Treatment Requested


EXHIBIT 21

BHOGE001277

US_SEC_EX 00000118

EXH 13037-0001

**From:** Brent Hogenson
**Sent:** Tuesday, June 22, 2010 4:36 PM
**To:** 'Mike Lynch'
**Subject:** CONFIDENTIAL

Dear Mike,

We consolidated the finance team in the Americas during the second quarter of 2010. As part of this effort, I asked the team to review all financial accounts and account reconciliations across all business units in the Americas as I wanted to ensure that any issues were identified.

During this review I became concerned that Autonomy may have engaged in multiple material transactions with resellers of our software where the available information suggests that we may have materially misstated revenue and income within our reported financial statements in 2008, 2009 and Q1 2010. The evidence that I have gathered suggests that members of your senior management team and other employees may have been engaging in seven and eight figure transactions with resellers where 1) there was no end user and the reseller does not have the ability make the payments under the agreement; 2) there appear to be resellers with related party relationships on revenue transactions; and 3) there appear to be barter transactions where the economic benefit on both sides of the transaction appears to be materially overstated. I consider this a qualifying disclosure made in good faith based upon the evidence currently available to me.

I request a meeting with the audit committee prior to the release of Autonomy's Q2 2010 financial statements to review these matters and ensure that material misstatements, if any, are corrected prior to releasing future financial statements.

I would appreciate your prompt response to my request

Brent Hogenson

**President Autonomy Interwoven**

**CFO Autonomy Americas**
**Tel: 408.953.7058**
**Mobile: 408.718.1376**
**E-mail: brent.hogenson@autonomy.com**

FOIA Confidential Treatment Requested

BHOGE001278

US_SEC_EX 00000119
EXH 13037-0002

Brent,

Thank you for your email, which is obviously a surprise to me. As you include no examples in your email, as a first step I would like to understand the evidence you have for these concerns as this is of course an important matter which can only be properly understood with all the facts. I've cc'd Andrew Kanter, the group's General Counsel, on this email to help with the follow-up.

At this stage until I understand why your concerns have arisen, which requires more information underlying your comments, I would like to avoid involving Sushovan and the rest of the finance team to preserve the integrity of the review. Thus please do not discuss this matter with them.

I've reviewed your message below very closely. My understanding of accounting is of course not as experienced as yours, and so admittedly my accounting questions below may be incorrect or inaccurate. However it does seem to me that there may be some inherent false assumptions in your email mainly around the differences between US GAAP and IFRS. Thus in any reply it is very important that make sure you are applying the correct standards in order to end up with an accurate and clear determination of whether there indeed any material issues.

In order to provide an accurate statement of the questions as part of any review, it is important to quickly ascertain whether your concerns have arise due to:

a)   Misunderstandings of IFRS tests versus US GAAP tests;
b)   the fact that (as you correctly state) you have access to only half of the jigsaw puzzle and whether the other pieces have already been given to the auditors and Audit Committee (which, as you state, you have not been a part of) and they have taken them into account and already made suitable decisions;
c)   An accounting policy weakness;
d)   false information being provided to Autonomy or you have information Autonomy does not have which changes its current view; or
e)   the fact that matters you raise have already been identified and considered as a failing by the Audit Committee and have been addressed.

Below I've set out what I think the core questions are, and what I think Andy and I need to gain a full picture. As I read your email to me, the cases you state fall into four categories

1a) No evidence of sell-through by a reseller

I think I am right in saying although this is a test under US GAAP it is not one under IFRS, so I do not quite understand what you are raising here. As a matter of conservatism I expect Autonomy to embrace the old US GAAP idea so as to prevent 'channel stuffing'. However given the generally excellent cash collection from resellers this would appear not to be a problem. I believe that as part of the audit pack deals usually state the intended end user and I understand this is reviewed by the auditors for all deals over $100k.

You may not be aware but over the years we have had unfortunately had a small number of frauds

FOIA Confidential Treatment Requested

BHOGE001279

US_SEC_EX 00000120
EXH 13037-0003

FOIA Confidential Treatment Requested

in this area in your region. However the processes detected the abnormalities, the issues were brought to the Audit Committee, suitable actions taken and processes put in place (which remain to this day). No material effect occurred.

After you've given thought to the above, what would be helpful for Andy and I to understand is whether you are stating that misleading information under the necessary IFRS tests was provided and, if so, please give specific examples.

1b) Resellers with an inability to pay

As I'm sure you are aware, the auditors independently directly request evidence of ability to pay, at random in relation to all deals above $100k and also in relation to any specific deals of their choosing. This is a process that is run independent of the company.

I am unclear whether you are saying that some of this evidence is flawed, and if so please can you give specific examples. Also given that for all large deals this is usually discussed explicitly at the Audit Committee, does not the payment record on these deals provide comfort on the levels of materiality set by the auditors and the Audit Committee?

2) Related Party transactions.

I'm unclear what you mean by "related party relationships". Is the concern around relationships between the company's directors and its customers? As you should be aware from the annual report, all of these transactions are disclosed in various forms and in detail in the annual report (and there are none that I'm aware of). Or is the concern about relationships between third parties who may also be customers of Autonomy? In any event to the extent we are aware these are also explicitly discussed with the auditors and at the Audit Committee.

Thus, again in order for Andy and I to provide proper insight, can I ask whether you have any examples where these disclosures were not made to the auditors that should have been?

3) Overstated barter deals

Given the nature and size of our business occasionally transactions will arise between ourselves and a third party in both directions. IFRS is clear on how this is handled (which I understand is different to US GAAP), and as part of their review the auditors have to obtain third party evidence of the valuations of the parts. For the larger deals like this I understand that the valuations and process is discussed at the Audit Committee for each deal.

Do you have evidence that the third party valuations obtained by the auditors are in some way incorrect?

I hope I have fairly put the matters from your email into context above, and as you'll see I think the questions require specific information, some of which as you note may not have been available to you. Thus in order to quickly get a prima facie analysis of the situation I suggest we start with Q1

BHOGE001280

US_SEC_EX 00000121
EXH 13037-0004

2010 as the large transactions in that quarter are fresh in the minds of those involved. Please by return can you list the deals you have concerns with along with the reasons and Andy and I as a first step will investigate what information was known and considered already but the auditors and share this with you. We can then compare notes. In the interests of speed I would suggest at this time we limit ourselves to material deals, i.e. those over the $5m materiality threshold set by the auditors. If there are any particular cases you wish to bring to my attention below this limit in that period then of course that is fine. However I would appreciate your examples by return today.

Please be careful to state whether you believe information given to Autonomy is misleading, or you have not had sight of some other piece of the puzzle that would alleviate your concerns. Please also make sure you are referring to IFRS not USGAAP, as that is our accounting schema. Given that Andy and I are not accounting experts, reference to the IFRS rule would be helpful.

You may not be aware but Autonomy's accounts have just been through a thorough six month review by the UK accounting standards body as part of their routine process for FTSE100s and no rev rec points were found. As a coincidence just this last year the Deloitte auditor team also had their Autonomy Audit processes audited by their professional regulator and passed with flying colours.

Obviously if your Q1 evidence points to an issue of which the auditors and the Audit Committee are not aware then we will move to the next stage and consider the other periods. I think it is important to have all the pieces of the puzzle on the table before deciding what to do next, which I understand is normal for these types of things.

I have tried to make sure we take a conservative view and so any potentially more complex deals by virtue of size, relations or that the customer is a supplier are normally explicitly referred to the auditors and then the Audit Committee with a lot of extra information.

So at this point, it seems to me that either you know something I don't or I have the missing pieces of the puzzle which would address your questions. I appreciate you only have access to a subset of the information required, and may not be an expert on IFRS being US based. Taking into account the fact that you are not involved at all in the audit it is clear to me that in any case you are acting in good faith and I appreciate your efforts. If once we have compared the missing pieces if we still have issues we will rapidly take this to the next level.

I would ask that until we have performed the next step that the language you use is a little more moderate as until we confirm your concerns are valid and not just an artefact of partial information I would not want to inadvertently run the risk of accusing the innocent as emails have been known to escape. I would suggest you use the usual encryption.

I am maintaining an open mind and we await your specifics

Mike

United States District Court
Northern District of California

**Trial Exhibit 13037**

Case No:    CR 18-0577 CRB
Date Entered: _____
By: _____
            Deputy Clerk

FOIA Confidential Treatment Requested

BHOGE001281

US_SEC_EX 00000122
EXH 13037-0005