Exhibit C

**To:**       'Mike Lynch'[mrl@autonomy.com]; 'Andrew Kanter'[andrewk@autonomy.com]
**From:**     Sushovan Hussain
**Sent:**     Wed 7/28/2010 6:52:26 PM
**Importance:**          **Normal**
**Subject:**  fsa memo
fsa memo.doc

client attorney priviledge

more word smithing required

United States District Court
Northern District of California

**Trial Exhibit 10350**

Case No:      CR 18-0577 CRB
Date Entered:
_____
By: _____

**FOIA CONFIDENTIAL TREATMENT REQUESTED**                    HP-SEC-02339276
EXH 10350-0001
EXH 10350-0001

CONFIDENTIAL

BY RECORDED DELIVERY AND FAX ([XX])

[DATE]
[NAME]
Financial Services Authority
25 The North Colonnade,
Canary Wharf,
London E14 5HS

Dear [NAME],

Re:      Autonomy Corporation plc

[Further to our conversation,] I write on behalf of Autonomy Corporation plc ("Autonomy"), a UK public limited company which has a full listing on the London Stock Exchange under the symbol "AU.".

We write regarding correspondence you received from a regional US finance employee of Autonomy named Brent Hogenson. Mr Hogenson has told us twice that he has sent you a list of accounting questions. [This letter summarizes our call on the matter.] We appreciate you taking the time to understand the background to Mr Hogenson's actions.

[NOTE – A LITTLE NERVOUS ABOUT THIS PARAGRAPH AS WE'RE WRITING TO THE FSA SAYING WE HAVE CONTROL ISSUES] In summary, Mr Hogenson carried the title of CFO of the Americas for the Autonomy group of companies. In late June 2010 a series of ~~significant~~ financial irregularities were uncovered in Mr Hogenson's department. (None of these matters would have any impact on Autonomy's published accounts, and control procedures have been implemented to remedy any perceived weaknesses, as discussed more below.) As a result of our investigations into the irregularities of his department Mr Hogenson's employment was terminated yesterday.

At nearly precisely the time that these irregularities were unearthed, Mr Hogenson sought to put in front of the company's auditors Deloitte questions, but based on no new information or information that Deloitte did not already have. Deloitte was passed the correspondence and after considering the points, an independent team at Deloitte has written that there are no areas that require change or would have been material in relation to prior periods. Deloitte have reported to the Audit Committee that they concur with management's view that the accounts are properly stated, and Autonomy's Audit Committee which has considered the matters.

Since receiving the initial inquiries from Mr Hogenson Autonomy has taken the questions very seriously. The matter was passed to Autonomy's Audit Committee and independent auditors for their review. Mr Hogenson was provided with additional information which he would not have, being a regional finance employee and not at the group level. Mr Hogenson was given the opportunity to deliver any additional information but declined.

In fact, throughout the process Mr Hogenson sought to subvert the process set out in the company's procedures covering matters of this type. Mr Hogenson has admitted that he did not discuss these matters directly with his supervisor or Autonomy's Finance Director prior to raising issues directly with the Audit Committee. Then, when first engaged with the Audit Committee he decided he was not satisfied with the pace or manner of the review and began to send correspondence directly to Deloitte. When specifically instructed to continue to engage in dialog with the Directors, he nevertheless again sent what he thought appropriate to Deloitte. Now most recently he has raised matters with the FSA, despite being offered and declining an opportunity to review his original questions in detail.

Mr Hogenson has little training in IFRS, but is experienced in US GAAP. As a regional finance manager he is RESPONSIBLE FOR THE LOCAL GENERAL LEDGER ACCOUNTING BUT IS NOT INVOLVED IN THE GROUP CONSOLIDATION NOR IN THE AUDIT. THE AUDIT IS CARRIED OUT SOLELY IN CAMBRIDGE AND ALL SUBJECTIVE AUDIT MATTERS ARE AGREED AT THE GROUP LEVEL. ~~able to effectively gather a portion of the information to run consolidations at a group~~

~~level by the UK finance team.~~ It quickly became clear that - as a regional finance employee trained in US GAAP responsible for the operations rather than policy - Mr Hogenson did not have the full set of information available to him, and thus many of his basic facts (let alone conclusions) were incorrect (for example at one point he put forth concerns over bad debts for deals that had already been paid). He was provided with the relevant IFRS materials, sent supporting material (such as Audit Committee minutes, board memos and presentations from Deloitte covering the points) and explanations that he would not have been privy to.

Mr Hogenson ultimately raised six questions (three of which he discussed with no one before bringing to the Audit Committee).  Deloitte have confirmed that their understanding of IFRS is correct and that the matters raised are either incorrect or not material.  In addition there was no new material information in what Mr Hogenson provided, i.e. all had previously been available and/or discussed.

Mr Hogenson was informed of the Deloitte review by the senior member of Autonomy's Audit Committee and given the opportunity to supplement any of the matters he raised.  He said he had no new information.  Mr Hogenson was promised that he would be provided with the results of Deloittes review in some form.  However despite the foregoing he felt that these were matters for the FSA. This caught us by surprise.

Coincidentally, these issues have arisen at the same time as a the issues were uncovered in the US finance department under Mr Hogenson.  HR in the US uncovered the first issues.  The costs have already been recorded, so there is no P&L impact.  We engaged outside agencies to investigate the matters.  The series of events goes back approximately nine weeks, but the material elements were uncovered at virtually the same time that the first correspondence was sent by Mr Hogenson.

[CONCLUSION?]
The questions raised by Mr Hogenson have been taken extremely seriously by the directors and significant amount of time and cost has been expended to reach a satisfactory conclusion that the accounts are not misstated. An independent review has subsequently been carried out by Deloitte. The findings have been reported to the Audit Committee. The directors and the auditors have satisfied themselves that no new information has been provided by Mr Hogenson, that he was not privy to all information and that there were basic errors in the data provided. Despite numerous emails and calls Mr Hogenson continues to ask the same questions. Because of the financial irregularities uncovered over the apst few weeks, Autonomy has no option but to let him go together with the suspension of the payroll fraud team.

We are available at any time to discuss the matter further with you or your colleagues.

Please treat this letter in confidence.  Please contact me at any time should you require further information.

Yours faithfully,


Andrew M Kanter
Chief Operating Officer
On behalf of Autonomy Corporation plc