Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION *IN LIMINE* TO EXCLUDE THE FRC REPORT**<br><br>Court: Courtroom 6 – 17th Floor<br>Date Filed: April 27, 2024<br>Trial Date: March 18, 2024 |

1  The Government has stated that it may seek to introduce evidence regarding a 2021
2  report issued by the U.K. Financial Reporting Council ("the FRC Report").  Specifically, the
3  government's accounting expert, Steven Brice, cites the FRC Report as being consistent with
4  certain of his opinions, although he did not rely upon the report in forming those opinions.  The
5  FRC Report and the related 2020 hearing were tailored proceedings to evaluate whether
6  Deloitte's methodology for reviewing Autonomy's accounting complied with relevant
7  guidelines.  The only parties to the proceedings were Deloitte, Richard Knights and Nigel
8  Mercer.  Neither Autonomy nor Dr. Lynch was a party to the proceedings, and the 270-page
9  FRC Report states on page 1 that "No individual director, member of management or employee
10  at Autonomy was a party to the Tribunal hearing."  For this reason, the FRC emphasizes in bold
11  type on page 1:

> **The Tribunal has not made, and should not be taken to have made, any finding against any individual or entity other than Deloitte, Mr Knights and Mr Mercer (including Autonomy, or any individual who was a director, member of management or employee at Autonomy).**
>
> **It would not be fair to treat any part of the Tribunal's findings, including any part(s) of the Tribunal Report, as constituting or evidencing findings against anyone other than Deloitte, Mr Knights and/or Mr Mercer.**

Silverman Decl. Ex. A at 1 (Explanatory Memorandum to the Tribunal Report, Jan. 6, 2021)
(emphasis in the original).

The FRC Report is inadmissible against Dr. Lynch.  It should therefore be excluded, and
Brice should not be permitted to refer to it.  There are three independent grounds for exclusion.
*First*, the FRC Report is inadmissible under Fed. R. Evid. 403 because it is unfairly prejudicial,
would confuse the jury, and would require a time-wasting trial within a trial about whether
Deloitte complied with professional obligations unknown to Dr. Lynch.  *Second*, the FRC Report
is inadmissible hearsay that does not meet the requirements for use by an expert under Fed. R.
Evid. 703.  Indeed, Brice did not even rely on it.  *Third*, the FRC Report is precisely the sort of

ex parte inquisition that is prohibited by the Confrontation Clause.  The Court should therefore exclude any testimony regarding the FRC Report and the Report itself.[1]

**I.     The FRC Report Is Inadmissible Under Fed. R. Evid. 403 Because It Is Unfairly Prejudicial, Would Confuse the Jury, and Would Require a Time-Wasting Trial Within a Trial**

Deloitte's assurances that Autonomy's financial reporting was proper—whether those assurances were correct or incorrect—are probative of Dr. Lynch's lack of intent to defraud. Autonomy hired a reputable accounting firm, and that accounting firm rendered opinions and made statements that caused Dr. Lynch to believe that Autonomy's financial reporting was proper.  The FRC Report was issued a decade later after a review of evidence and standards unknown to Dr. Lynch at the time.  It has no meaningful probative value.

The FRC Report would cause Dr. Lynch irreparable unfair prejudice.  "[J]urors are likely to defer to findings and determinations . . . made by an authoritative, professional factfinder rather than determine those issues for themselves." *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007); *see Chein v. Shumsky*, 373 F.3d 978, 989 n.6 (9th Cir. 2004) (en banc) ("[T]he likely impact on the jury of a sitting state court judge pronouncing the existence of an essential element of a crime, while vigorously denouncing the defendant and his credentials, is difficult to ignore. . . . [T]his highly unusual testimony at least explains why the jury returned a guilty verdict on sparse, constitutionally insufficient evidence.").  In *Sine*, the Ninth Circuit held that introducing findings from a civil lawsuit—even one brought by the defendant during the underlying events—"created too great of a danger of unfair prejudice and thus violated Rule 403."  493 F.3d at 1033.  The court reasoned that "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'"  *Id.* at 1034 (quoting *Nipper v.*

---

[1] The U.K. civil trial findings would be inadmissible for the same reasons.  As with the FRC Report, Brice refers to the U.K. civil trial findings as being consistent with his opinion without relying on those findings. The government has not argued any theory under which the U.K. civil trial findings would be admissible or disclosed its intent to introduce them.  To the extent that the government has any undisclosed intent to do so, however, Dr. Lynch moves to exclude any testimony regarding the U.K. civil trial findings and the findings themselves.

*Snipes*, 7 F.3d 415, 416 (4th Cir. 1993)).  That same risk is present here.  A U.S. lay jury will inevitably defer to the FRC Report's conclusions when it comes to complex questions about U.K. accounting.

This inevitable deference to the FRC Report is improper.  Dr. Lynch was not a party to the FRC proceeding and the FRC Report authors emphasized that "it would not be fair" to use the Report against Dr. Lynch or other non-parties.

Moreover, the FRC Report addressed different issues and standards than the criminal charges at issue in this case—under different procedural rules and a far lower burden of proof.  The FRC Report examined only a fraction of the transactions and issues addressed in this case, yet the government seeks to use it to impugn all of Deloitte's work related to Autonomy.  Instead of examining whether Dr. Lynch and Autonomy relied upon Deloitte or drew comfort from Deloitte, the FRC Report examined whether Deloitte properly adhered to accounting guidelines on a subset of transactions.  Introducing the FRC Report risks confusing jurors into thinking that the question before them is whether Autonomy's accounting was correct, when in fact the question is whether Dr. Lynch and Mr. Chamberlain intentionally and knowingly engaged in a scheme to defraud through fraudulent accounting practices designed to mislead HP.

## II. The FRC Report Is Inadmissible Hearsay that Does Not Meet the Requirements for Use by an Expert Under Fed. R. Evid. 703

The FRC Report is hearsay.  "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'" *Sine*, 493 F.3d at 1036 (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).  "[D]iscrete judicial factfindings and analysis underlying the judgment . . . constitutes the use of hearsay." *Id.*  The government has not asserted otherwise.  Instead, it appears intent on relying on Fed. R. Evid. 703, which permits an expert to rely upon inadmissible hearsay only under specific circumstances.

Rule 703 has three elements.  In order to disclose inadmissible evidence to the jury under Rule 703, (1) Brice must have "base[d] an opinion" on the FRC Report; (2) "experts in the particular field" must "reasonably rely on" third-party judicial fact-finding like the FRC Report; and (3) the "probative value" of the FRC Report "in helping the jury evaluate [Brice's] opinion"

must "substantially outweigh[] the[] prejudicial effect" of the FRC Report. Fed. R. Evid. 703. The government has failed to establish each of the three elements of Rule 703.

*First*, Brice did not "base [his] opinion" on the FRC Report. Fed. R. Evid. 703. Rule 703 permits experts to use inadmissible evidence to *reach* opinions. But "Rule 703 does not permit an expert witness to circumvent the rules of hearsay by testifying that other experts, not present in the courtroom, corroborate his views." *United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir. 1989); *see, e.g.*, *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) (finding that district court had erred by allowing expert to "bolster his opinion evidence" by testifying that his conclusions were "essentially the same" as those of a non-testifying expert and finding that the corroborating opinion was "clearly hearsay and prejudicial to the defendant"); The New Wigmore § 4.7.1(b)(1) (2d ed. 2011) ("Using Rule 703 to introduce evidence of corroboration by other experts is generally inappropriate.").[2] As the government has conceded, "Mr. Brice did not *rely* upon the findings of any U.K. legal proceedings in forming his opinions. As indicated in his report, he at times references . . . those proceedings merely to point out that those findings were consistent with the conclusions that he had independently drawn as a result of his analyses." Dkt. 318 at 20-21 (emphasis in original).[3] Because Brice "references [the FRC Report] merely to point out that [its] findings were consistent with the conclusions that he had independently drawn," they are inadmissible corroboration, not an admissible basis of Brice's opinion under Rule 703.

*Second*, IFRS accounting experts do not rely on outside legal proceedings as a material source in reaching their accounting conclusions. Nor has the government made any contrary

---

[2] *See also In re Intuniv Antitrust Litig.*, No. 16-cv-12653, 2020 WL 5995326, at *10 (D. Mass. Oct. 9, 2020) ("Although experts may testify as to the things on which they rely, experts cannot bolster or corroborate their opinions with the opinions of other experts who do not testify because such testimony improperly permits one expert to become a conduit for the opinion of another expert, who is not subject to cross-examination." (quoting Handbook of Fed. Evid. § 703:1 (Nov. 2019))); *Merck Eprova AG v. Gnosis S.P.A.*, No. 07-cv-5898, 2011 WL 10818492, at *2 (S.D.N.Y. June 8, 2011) (excluding testimony regarding third-party opinions offered "as a confirmation of the opinions of [testifying expert]" because "courts have routinely refused to allow experts to testify as to the agreement of colleagues with their opinions under Rule 703").

[3] Indeed, Brice formed most of his opinions before Hussain's 2018 trial, when the FRC Report did not exist. The FRC Report is not cited as the cause of any change in Brice's opinions since *Hussain*. Instead, it is offered only to prove the truth of the matter asserted, a prohibited purpose under FRE 703.

showing in attempting to carry its burden of proof.  *See United States v. W.R. Grace*, 597 F. Supp. 2d 1143, 1149 (D. Mont. 2009) (prohibiting government's experts from offering opinions based on certain data where the government failed "to show that an expert in any field would rely upon the data in question"); *see also* Fed. R. Evid. 703 adv. comm. note (Rule 703 would not permit an opinion about "the point of impact in an automobile collision based on statements of bystanders" because bystander statements are not typical source material in the relevant field). Accountants rely on contemporaneously available information, not post-hoc judicial disputes about the accounting treatment.  Tr. at 3556:8-11 (testimony of Lee Welham agreeing that "hindsight should not be used when applying an accounting policy" and "[y]ou have to use the information available at that point in time"); *see Rash v. J.V. Intermediate, Ltd.*, No. 04-cv-681, 2006 WL 5230074, at *5 (N.D. Okla. Jan. 5, 2006) (ordering accounting expert not to rely on information that was not available at the time of the financial statement because that would be "improper accounting methodology").  It is inconsistent with IFRS accounting's focus on contemporaneity to rely on evidence from an after-the-fact inquiry.

   *Third*, even if the previous elements were satisfied, only the resulting opinion would be admissible—not references to the FRC Report itself.  "[W]hen an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is **not** admissible simply because the opinion or inference is admitted." Fed. R. Evid. 703 adv. comm. note (emphasis added).  Rule 703 creates a "presumption against disclosure" of such inadmissible bases, permitting disclosure "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1061-62 (9th Cir. 2003) (excluding lab report because the expert was using the report "as substantive evidence of his ultimate conclusions").

   Rule 703's standard "inverts the burden"[4] of persuasion from Rule 403 and eliminates the requirement that prejudice be unfair.  "Rule 703 presents a balancing test that puts a thumb on

---

[4] *Munoz v. PHH Mortg. Corp.*, No. 08-cv-759, 2022 WL 138670, at *4 (E.D. Cal. Jan. 14, 2022) (recognizing that "Rule 703 inverts the burden on the 'prejudice versus probativity'" compared to the traditional Rule 403 test, such that under Rule 703 test "the proponent of the opinion . . . may disclose those facts or data to the jury only if that party can demonstrate that their probative value 'substantially' outweighs their prejudicial effect").

the scale *against* the disclosure of inadmissible evidence[.]" *Christiansen v. Syverson*, 516 F. Supp. 3d 1151, 1157 (D. Idaho 2021) (emphasis in original); *accord United States v. Velasquez*, 745 F. App'x 283, 284 (9th Cir. 2018) (affirming exclusion of hearsay considered by an expert based on 703 balancing test). The court in *Christiansen* held that references to a non-testifying expert's opinion were inadmissible because they were "corroborative in nature," and "[t]hus, their probative value is limited." *Christiansen*, 516 F. Supp. 3d at 1157.[5] Here, Brice prepared a report and was prepared to testify about an identical indictment before the FRC Report was even written, and he cites the Report only as corroboration. Any minimal value is outweighed by the prejudice to Dr. Lynch of a foreign legal authority's imprimatur on the government's allegations. The government cannot come close to carrying its heavy burden under Rule 703, and the FRC Report is therefore inadmissible.

## III. The FRC Report Is Inadmissible Under the Confrontation Clause

An opinion based on testimonial hearsay would violate the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 49 (2004) ("It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.") (citation omitted); *see also United States v. Lawson*, 653 F.2d 299, 302 (7th Cir. 1981) ("An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses.").

Statements made under circumstances leading an objective witness to believe they may be available for litigation use fall within "core" of testimonial statements. *United States v. Torralba-Mendia*, 784 F.3d 652, 665 (9th Cir. 2015); *see also United States v. Williams*, No. 05-cr-920, 2010 WL 11474588, at *5 (C.D. Cal. Aug. 13, 2010) ("Testimonial statements have been described as those made 'in response to structured questioning in an investigative environment . . . where the declarant would reasonably expect the . . . responses might be used in future

---

[5] *See also NetAirus Techs., LLC v. Apple, Inc.*, No. 10-cv-3257, 2013 WL 12322092, at *6 (C.D. Cal. Oct. 23, 2013) (precluding government's expert from testifying about facts and data underlying two surveys under Rule 703 where the evidence was otherwise inadmissible).

judicial proceedings.'" (quoting *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004), *supplemented*, 108 F. App'x 667 (2d Cir. 2004)).  The FRC's statement that it would be inappropriate to use its findings in future proceedings like Dr. Lynch's implies that it believed such an attempt was possible or probable.  Both the FRC and witnesses who testified in that proceeding did so under circumstances that would have led an objective witness to believe that their words could be used in judicial proceedings generally and the prosecution of Dr. Lynch in particular.  The resulting FRC Report cannot be admitted without cross-examination of its authors.

## CONCLUSION

For the reasons stated herein, the Court should exclude the FRC Report.

Dated: April 27, 2024                               Respectfully submitted,

*/s/ Brian M. Heberlig*
Reid H. Weingarten (Admitted Pro Hac Vice)
Brian M. Heberlig (Admitted Pro Hac Vice)
Michelle L. Levin (Admitted Pro Hac Vice)
Nicholas P. Silverman (Admitted Pro Hac Vice)
Drew C. Harris (Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Christopher J. Morvillo (Admitted Pro Hac Vice)
Celeste L.M. Koeleveld (Admitted Pro Hac Vice)
Daniel S. Silver (Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*