PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7234
    zachary.abrahamson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, <br><br> Defendants. | CASE NO. CR-18-577 CRB <br><br> THE UNTED STATES' RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE FRC REPORT |

## INTRODUCTION

If the defendants do not question the government's expert, Stephen Brice, about how his accounting judgments are different from Deloitte's, then the United States will not seek to introduce the report of the Financial Reporting Council (FRC) report that Deloitte's audit of Autonomy was infected by "misconduct" and lacked skepticism, objectivity, and ultimately competence. *See* Exhibit A (attaching complete copy of the FRC Report dated January 6, 2021). But, if they do, then evidence relating to the FRC report is admissible for the non-hearsay purpose of proving Mr. Brice's state of

mind, the reasons for his independent opinion, and why he did not rely on Deloitte's audits. If that happens, the defendants will not be prejudiced because the FRC report found "misconduct" by Deloitte, not the defendants.

The defendants control the relevance of the FRC report by the scope of their cross-examinations. They invite rebuttal and the proper non-hearsay admission of the FRC report if they suggest any of the following: (1) that Deloitte and Mr. Brice had access to the same information when they did not; (2) that Deloitte and Mr. Brice applied the same accounting standards on the same evidence when they did not; (3) that Deloitte's allegedly "clean" audit opinions were independent and well-founded when they were not; and (4) that the jury should disregard Mr. Brice's opinion because Deloitte rendered "clean" audit opinions when, in fact, those opinions were marred by incompetence and misconduct.

Mr. Brice was right to reject the Deloitte audit opinion. Deloitte lacked the same information Mr. Brice considered precisely because Deloitte lacked competence in gathering relevant information as the FRC found. Deloitte failed to apply the same accounting standards as Mr. Brice because Deloitte was not objective in its reliance on Autonomy as the FRC found. And Deloitte's "clean" audit opinion was not independent because it lacked the skepticism required to render a valid audit opinion precisely as the FRC found.

Any suggestion by the defense of a qualitative equivalency between the accounting judgments by Deloitte and Mr. Brice invites the admission of the FRC report to show the accounting judgments were, in fact, not qualitatively equivalent. Rule 403 amply accommodates this balance. Indeed, it is hard to understand why findings about *Deloitte* prejudice *defendant Lynch* under Rule 403. Therefore, the defendant's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2019, the FRC held a seven-week disciplinary hearing on Deloitte's audits and reviews of Autonomy between January 2009 and June 2011. *See* Exhibit A (attached complete copy of the FRC Report dated January 6, 2021). The hearing addressed various failings by Deloitte as a firm and the two audit partners responsible for the Autonomy engagement (but made no findings regarding the other members of the Deloitte audit team). In particular, the FRC proceeding focused on whether Deloitte improperly approved Autonomy's treatment of hardware revenues and certain reseller transactions.

In January 2021, the FRC publicly issued its report. It concluded that Deloitte and the audit partners engaged in "misconduct" and lacked objectivity, professional skepticism, and professional competence when conducting the Autonomy audits. The FRC fined Deloitte a then-record £15 million, a sanction that made headlines across the British financial press. *See*, *e.g.*, https://www.ft.com/content/4fd60522-3a64-445f-8f3b-7544f635e015.

The FRC Report reached the following conclusions:

> 768. Deloitte and [the first audit partner] were culpable of:
>
> (i) Misconduct in relation to (i) the allocation of hardware costs in Q3 09 and Q4 09/FY 09; (ii) the non-disclosure of the hardware sales in FY 09; (iii) the recognition of revenue from sales to VARs in Q4 09/FY 09, Q1 10 and Q2 10;
>
> (ii) lack of professional scepticism as contended in Allegation 1.4(a);
>
> (iii) lack of integrity in breach of Fundamental Principle (a) and section 110 of the Code of Ethics in failing to correct [Autonomy]'s misleading statement to the FRRP at the meeting on 13 January 2010; and
>
> (iv) loss of objectivity in breach of Fundamental Principle (b) and section 120.1 of the Code of Ethics and para 6 of APB Ethical Standard 1 in the six respects described at paras [716] to [758] above.
>
> 769. Deloitte and [the second audit partner] were culpable of:
>
> (i) Misconduct in relation to (i) the non-disclosure of the hardware sales in FY 10; (ii) the recognition of revenue from sales to VARs in Q2 10 and Q3 10; and (iii) the failure to correct Autonomy's letter dated 3 March 2011 to the FRRP;
>
> (ii) lack of professional scepticism in relation to (i) the allocation of hardware costs in Q2 10, Q3 10 and Q4 10/FY 10; and (ii) the recognition of revenue from sales to VARs in Q4 10/FY 10, Q1 11 and Q2 11; and
>
> (iii) lack of professional competence in breach of Fundamental Principle (c) of the Code of Ethics in relation to the audit documentation for the TP3 transaction in FY 10.

*See* Exhibit A at 212-216.

The FRC Report explained that the evidence against Deloitte was "complex and extremely detailed" and acknowledged that the proceeding was "an enormous case." *Id*. at 214. Still, the FRC Report pointedly expanded on the seriousness of Deloitte's dereliction:

> 771. We are conscious of the fact that the allegations that have been made by the Executive Counsel and the conclusions that we have reached are extremely serious for Deloitte [and the two audit partners]. Deloitte is a very large internationally renowned firm. [The audit partners] are both accountants

> with long experience of auditing. Our findings will inevitably be damaging to their reputations as well as to that of Deloitte. We have not reached our conclusions lightly. But we are also acutely aware that Deloitte, [and the audit partners] were under a public interest duty to uphold the reliability of the reporting of Autonomy (which is a FTSE 100 company). Para 4 of the APB Ethical Standard 1 provides:
>
> *"Public confidence in the operation of the capital markets and in the conduct of public interest entities depends, in part, upon the credibility of the opinions and reports issued by the auditor in connection with the audit of the financial statements. Such credibility depends on beliefs concerning the integrity, objectivity and independence of the auditor and the quality of the audit work performed"*
>
> 772. This public interest duty is critical. Regrettably, for the reasons that we have set out in considerable detail above, we have found that Deloitte and, in particular [the first audit partner], but also to a lesser extent [the second audit partner], were culpable of **serious and serial failures** in the discharge of this duty.
>
> 773. We acknowledge that Deloitte did a great deal of careful appropriate work on the Autonomy accounts during the Relevant Period. Many workpapers and reports were written and other detailed documents produced. There was no shortage of effort or manpower. Neither [audit partner] was deprived of the resources that they needed to discharge their duties properly.
>
> 774. Some of the allegations that we have found proved are the result of mistakes or erroneous judgments which, with the benefit of hindsight, can be seen to have been wrong. It may be said that some of the allegations of failure to exercise professional scepticism fall into this category. **But it is the wholesale nature of the failure of professional scepticism in relation to the accounting for the hardware sales and the VAR transactions as well as our findings of Misconduct and of breaches of Fundamental Principles that make this case so serious.**

*Id*. at 214-215 (emphasis added).

Deloitte's "serious and serial failures" were "wholesale." The fundamental auditing failures pervaded many of the transactions at issue in the present trial. Any claim by the defendants that Mr. Brice's expert report may be properly compared to Deloitte's work is erroneous and invites proper rebuttal beginning with the admission of evidence relating to the FRC report.

Last November, as the parties in this matter prepared for trial, the United States served a summary of opinions by Mr. Brice. That summary, and a January 2024 revision, identified the FRC report as a document that Mr. Brice was provided for purposes of his work. *See* Jan. 2024 Brice Report at 1.5.2. But Mr. Brice's summaries otherwise made minimal reference to the FRC Report. Later, in a motion *in limine* seeking to exclude Mr. Brice's testimony, Defendant Lynch asked the Court

to preclude testimony about the outcomes and findings of foreign legal proceedings. The government opposed that request, offering then the same position that the government offers here: "If . . . Defendants try to suggest that Mr. Brice's analysis was flawed or his conclusions wrong because Deloitte reached different conclusions, the government may elicit testimony from Mr. Brice on redirect about how much weight he accorded Deloitte's accounting judgments . . . , and why Mr. Brice may have chosen not to defer to Deloitte's accounting judgments." Dkt. 318 at 21:5-12. Answers to those questions, the government explained, could implicate the FRC's findings about Deloitte. *Id*. The Court denied the defendant's motion without qualification. The present motion is effectively a second bite at the apple. It should be denied.

## ARGUMENT

### I. The Defendants Will Not Be Prejudiced by the Admission of the FRC Report.

Defendants Lynch and Chamberlain will not be prejudiced by the FRC report because the report found "misconduct" by Deloitte, not the defendants. Indeed, the principal case on which defendants rely for their prejudice argument makes this very argument. *United States v. Sine*, 493 F.3d 1021, 1034 (9th Cir. 2007). In *Sine*, the Ninth Circuit emphasized that prejudice arose from admission of authoritative findings of wrongdoing *by the parties,* not third parties like Deloitte. *Sine*, 493 F.3d at 1034 ("The portions of [the judge's] order that plaintiffs' counsel read to the jury repeatedly referred to factual findings of misrepresentations made by [*the defendant*], [*his*] failure to disclose material information, and [*his*] participation in a civil conspiracy, as well as findings that [*his* wife] had knowingly filed false affidavits in the case.") (emphasis added). These are not our facts. The FRC report says nothing about the defendants in this case. Indeed, as they point out, the defendants may still claim alleged reliance on Deloitte's audit "whether [Deloitte's] assurances were correct or not." Dkt. 454 at 2. In this way, any alleged reliance defense is undisturbed by the admission of evidence relating to the FRC report and the defendants' claim of prejudice is unavailing.

### II. Rule 703 Does Not Preclude Limited Reference to the FRC.

Defendant Lynch next seeks to preclude reference to the FRC because, he argues, "the FRC Report is hearsay." Dkt. 454 at 3. Not so: Hearsay determinations depend on the *use* of the statement offered. *See* Fed. R. Evid. 801(c). If—as here—a party offers an out-of-court statement to explain a

listener's state of mind, or to put his opinion in context, then that statement falls outside the scope of Rule 802's hearsay preclusion.

Rule 703 does not alter that hornbook analysis. That rule applies only to the admission of facts or data on which an expert's opinion is *based*. *See* Fed. R. Evid. 703. But the parties agree that Mr. Brice did not base his opinions on the FRC report. *See* Dkt. 454 at 4 ("Brice did not 'base his opinion' on the FRC Report."). Instead, Mr. Brice based his opinions largely on specific International Financial Reporting Standards ("IFRS") that he found relevant and on evidence obtained in the government's investigation. *See*, *e.g.*, January 2024 Brice Report at 2.4 (describing process of comparing IFRS requirements to evidence about software transactions, including contractual documentation, e-mail correspondence, and Autonomy financial records). All the same, Mr. Brice should be allowed to respond to suggestions he should have relied on or considered the Deloitte audits when there were legitimate reasons not to do so.

### III. The Confrontation Clause Does Not Preclude Limited Reference to the FRC.

Defendant Lynch's Confrontation Clause concern is easily dispatched: The Supreme Court has repeatedly endorsed the use of limiting instructions to resolve Confrontation Clause objections where a challenged statement does not "expressly implicat[e]" the defendant in a "powerfully incriminating" manner. *Richardson v. Marsh*, 481 U.S. 200, 206-8 (1987) (quoting *Bruton v. United States*, 391 U.S. 123, 126 n.1 (1968)); *see also Samia v. United States*, 599 U.S. 635, 647-8 (2023) (holding that, in view of "the Court's precedents distinguish[ing] between confessions that directly implicate a defendant and those that do so indirectly," and the historical presumption that jurors adhere to instructions, the introduction of an altered confession "coupled with a limiting instruction did not violate the Confrontation Clause").

The FRC Report does not "expressly implicat[e]" Dr. Lynch or Mr. Chamberlain and therefore may be limited through instruction. The government respectfully proposes the following language: "The testimony you just heard is admitted for the limited purpose of considering the state of mind of Mr. Brice at the time that he formed his opinions in this matter. It is not admitted for the truth of the matter asserted and, in particular, should not be considered as a finding against either defendant."

## CONCLUSION

If the defendants properly confine their examination of Mr. Brice only to the facts and circumstances of his opinion without comparing it to Deloitte's audits, they can ensure that the FRC report has no relevance and does not come into the trial record. But, if they suggest two accountants – Deloitte and Mr. Brice – looked at the same evidence, applied the same standards, and reached different accounting judgments, or that Deloitte's audits met professional standards, then Mr. Brice must be permitted to explain why he did not rely on Deloitte's work because of the FRC report. In that event, the government would invite an appropriate limiting instruction to the effect that the FRC report may be considered by the jury only to evaluate Mr. Brice's opinion and explain why he gave the Deloitte audit no weight and instead formed his own independent expert judgment about the proper accounting for Autonomy's financial statements in 2009-2011.

DATED: May 8, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States Attorney
Acting Under Authority Conferred by
28 U.S.C. § 515

/s/ Adam A. Reeves

_____
ADAM A. REEVES
ROBERT S. LEACH
KRISTINA N. GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorney