Gary S. Lincenberg - State Bar No. 123058
glincenberg@birdmarella.com
Ray S. Seilie - State Bar No. 277747
rseilie@birdmarella.com
Michael C. Landman – State Bar No. 343327
mlandman@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Stephen Keith Chamberlain

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN

Defendants.

CASE NO. 3:18-cr-00577-CRB

**Defendant Stephen Chamberlain's Motion to Preclude Admission of Mr. Chamberlain's Handwritten Notebooks Through Case Agent**

Assigned to Hon. Charles R. Breyer

The Government has informed counsel that it intends to introduce into evidence selected pages from spiral notebooks that Mr. Chamberlain wrote in while at Autonomy. These are marked as Exhibits 11673, 11674, 11675, 11676, 11677, and 11678.[1] The Government intends to do so during the testimony of FBI Special Agent Britta Huebsch.

The notebooks contain pages of notes relating to Mr. Chamberlain's work at Autonomy. The handwritten notes, however, do not reflect whether they are notes of statements by others, Mr. Chamberlain's thoughts, references to documents, and so forth. The content is vague as to time, place, context, whose words are being written down, and whether any were communicated. The meaning is speculative. And Agent Huebsch has no first hand knowledge to testify about the content. As such, Federal Rule of Evidence counsels against their admission.

Rule 403(2) gives the Court "considerable discretion" to exclude documents where the documents "might mislead the jury" and/or where there is a risk that the jury "might misinterpret the evidence." Clearly that is the case here where the Government proffers no witness with knowledge of the notes and the Government seeks to have the jury simply speculate as to their meaning.

Consider the following illustrations. The Government seeks to introduce Mr. Chamberlain's scribblings on page 29 of Exhibit 11677:

---

[1] Attached to this pleading are copies of the portions of the exhibits that the Government has advised counsel it intends to admit.

SUSHOVAN DISCUSSION.

O/S AMOUNT

1) RESELLER DEALS

- CAPAX – FSA $4.5m
  – AMGEN $9.5m
  – LILLY $2.7m
  – BAML / DISCO $4.1m
- MICROTECH – BAN $11.[illegible]m
  – DOI $4.2m
  – CASH ($6.3m)
- FILETEK – VA $10.0m
- DISCOVERTECH – BofA $7.3m
- ITALY – SALES CONSULTING $2.4m
  – AXILIUM $3.6m
  – RED VENTURES $2.7m.
- REALISE $2.0m

$57.7m.

2) BARTER / SWAP TRANSACTIONS

- FILETEK
- VMS
- MICROTECH.

There is nothing on this page that indicates when Mr. Chamberlain wrote these words down. "Sushovan discussion" is written at the top of the page. There is no indication when these notes were written, whether these notes were written in anticipation of a conversation, whether any discussion actually took place and whether the notes were taken during a discussion, whether there were others present (like auditors); or why Mr. Chamberlain chose to write these words down on paper. The only fact established by the introduction of the standalone notebook is that at some point while he worked at Autonomy, Mr. Chamberlain wrote these words on a piece of paper.

Other excerpts contain even less contextual detail. For example, below is page 177 from Exhibit 11677:

Q1 2010 REVENUE . DEBTORS

TOTAL DUE

DISCOVER TECH – CITI $5.5m – 20% upfront, 30% [redacted] N90, 50% N180

" – AMI $4.2m – 25% upfront, balance N90

CAPAX – FSA $4.3m – payment over several years 19.4 6.8

MICROTECH – VATICAN $11.0m – N90 13.5 –

– CREDITED DEALS

ENERGY SOLUTIONS – $1.2m – payment over several years

CARNIVAL – $1.3m – 33% upfront, 33% N180, 33% N540

SKANDEN – $2.7m – 25% N30, 75% N265

MERCEDES – $1.5m – 50% N30, 50% N285

FILETEK – $8.5m

HARDWARE

INTEGRATION – $150K 6.2 6.0

Although some of the words and numbers have been referenced in connection with some of the transactions at issue in this case, there is no indication anywhere on this page (or any surrounding pages) when these words were written or the source of any information reflected by these words. While the words "Q1 2010 Revenue" appear at the top of the page, it contains no information about when or why the notes were prepared, whether the notes were connected to a meeting, who attended any such meeting, or whether the notes were intended to prepare for such a meeting or to record what happened. Again, this page does nothing but show that at some point while he worked for Autonomy, Mr. Chamberlain chose to write these words down on a piece of paper.

The same is true for the other pages in the notebooks. Any minimal probative value of notes of Mr. Chamberlain relating to various transactions is far outweighed by the vagueness and "risk of misinterpretation." Their introduction simply encourages jurors to baselessly speculate about why Mr. Chamberlain chose to write down the words he did at some unspecified time. Agent Huebsch has no personal knowledge about the significance of the words that Mr. Chamberlain chose to write on the page. Like the jury, she too should not be permitted to baselessly speculate about why he did so and what meaning, if any, should be assigned. Any testimony that the case agent *does* provide would be unreliable and only amplify the prejudice arising from the introduction of the notebooks.

Here, rather than recorded or written "statements" in the ordinary sense, the Government offers no witnesses to these notes to provide context or clarity.

For these reasons, under Rule 403 the Court should preclude the Government from introducing Exhibits 11673, 11674, 11675, 11676, 11677, and 11678.

DATED: May 12, 2024

Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: /s/ Ray Seilie

Ray S. Seilie
Attorneys for Defendant Stephen Keith Chamberlain