# EXHIBIT 3

From:   Michael Lynch

To:     Hewlett-Packard Vision B.V.

18 August 2011

Dear Sirs

**Proposed Offer on behalf of Hewlett-Packard Vision B.V. (the "Offeror") for the whole of the issued share capital of Autonomy Corporation plc (the "Company")**

In consideration of your agreeing to make an offer to acquire the whole of the issued ordinary share capital of the Company substantially on the terms and subject to the conditions set out in the attached draft press announcement (the "**Press Announcement**") (subject to such modifications to it as may be agreed by the Company), I agree with you as follows:

1.  **Irrevocable undertakings**

1.1 Acceptance of Offer

   I undertake to accept, or procure the acceptance of, the offer referred to above (the "**Offer**") in respect of:

   1.1.1  the ordinary shares in the Company listed in Parts I, II and IV of the Schedule to this letter (if any);

   1.1.2  any other ordinary shares in the Company of which I may hereafter become the registered holder or the beneficial owner including, without limitation, in connection with the items listed in Part III of the Schedule to this letter; and

   1.1.3  any other ordinary shares in the Company deriving from shares falling within either of paragraphs 1.1.1 or 1.1.2 above.

   I agree to fulfil this undertaking, in respect of the shares referred to in paragraphs 1.1.1, 1.1.2 and 1.1.3 above by not later than 3.00 p.m. on the seventh business day after the date of despatch to members of the Company of the formal document containing the Offer (the "**Offer Document**"), (or, in relation to the shares falling within paragraphs 1.1.2 and 1.1.3 above, not later than three days after I become the registered holder or, to the extent no undertaking is given by the registered holder, the beneficial owner of such shares), by either:

   (a)   returning to you, or procuring the return to you, or as you may direct, duly completed and signed form(s) of acceptance relating to the Offer. I also agree to forward, or procure to be forwarded, with such form(s) of acceptance the share certificate(s) or other document(s) of title (or form of indemnity acceptable to the directors of the Company in respect of any lost certificates) in respect of the relevant shares; or

   (b)   for those shares held in dematerialised form, sending (or procuring that any CREST sponsor sends) to Euroclear UK & Ireland Limited the relevant

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662026
Exh 2308-0001

Transfer to Escrow instruction accepting the Offer (in accordance with the procedures described in the Offer Document) in respect of the relevant shares.

The shares referred to in paragraphs 1.1.1, 1.1.2 and 1.1.3 shall together be referred to in this undertaking as the "**Shares**".

I also undertake to accept, or procure the acceptance of, any proposal made by you to holders of options over ordinary shares in the Company in compliance with Rule 15 of The City Code on Takeovers and Mergers (the "**Code**") in respect of all such options held by me not later than seven days after you have posted such proposals to the holders of such options.

1.2   Dealings with Shares

I agree that I will:

1.2.1   notwithstanding the provisions of the Code or any terms of the Offer regarding withdrawal, not withdraw such acceptance(s);

1.2.2   except pursuant to the Offer, not sell, dispose of, charge, pledge or otherwise encumber or grant any option or other right over or otherwise deal with any of the Shares or any interest in them (whether conditionally or unconditionally) and, without limitation, not accept any other offer in respect of the Shares;

1.2.3   exercise all voting rights attaching to the Shares in such manner as to enable the Offer to be made and become unconditional and so as to oppose the taking of any action which might result in any condition of the Offer not being satisfied;

1.2.4   not acquire any interest (as defined in Part 22 of the Companies Act 2006) in any shares in the Company other than ordinary shares falling within either of paragraphs 1.1.2 and 1.1.3 above;

1.2.5   not enter into any agreement or arrangement with any person, whether conditionally or unconditionally, to do any of the acts prohibited by the above terms of this paragraph 1.2.

1.3   Action to facilitate the Offer

I agree, in each case, provided that it is consistent with my fiduciary duties to the Company, other legal duties (including duties arising under the Code, but excluding conflicting contractual duties) and with any other Applicable Requirements (as defined in paragraph 1.4 below):

1.3.1   in the announcement of the Offer and in the Offer Document, to recommend to all members of the Company that they accept the Offer;

1.3.2   to co-operate with you in the production of the Offer Document together with, among other things, the information required by Rules 24 and 25 of the Code and to take responsibility for the information in that document concerning the Company, its directors, their close families and any related companies and trusts in the terms required or permitted by Rule 19.2 of the Code;

91219.6

2

1.3.3 to use my best efforts (but not, for the avoidance of doubt, take any actions inconsistent with my fiduciary duties to the Company or other legal duties (including duties arising under the Code, but excluding conflicting contractual duties) and with any other Applicable Requirements) to procure the convening of such meetings of directors or members of the Company or any class thereof as are necessary to pass such resolutions as are necessary to enable the Offer to be made and become unconditional;

1.3.4 not to knowingly solicit, initiate or encourage the submission of proposals or offers from any person (other than the Offeror) in relation to a Competing Proposal, provided that nothing in this paragraph 1.3.4 shall prevent me, as a member of the board of directors of the Company, from responding to any approach, proposal or offer made by any person (other than the Offeror) after the date of this undertaking, provided that such approach, proposal or offer has not been made as a consequence of any breach of this paragraph 1.3.4; and

1.3.5 upon the Offer becoming wholly unconditional, to use my best efforts to procure the appointment as directors of the Company of such persons as you may nominate (subject to the provisions of the Articles of Association of the Company).

For the purposes of this undertaking, a "**Competing Proposal**" shall mean any approach, proposal or offer (whether or not subject to pre-conditions) put forward by a third party who is not acting in concert with the Offeror for: (i) an offer (as defined in the City Code) for 30% or more of the share carrying voting rights in the Company (whether proposed to be implemented by way of tender offer or scheme of arrangement); or (ii) any transaction which would comprise a Class 1 transaction for the Company under the Listing Rules.

1.4 Announcements

I agree not to make:

1.4.1 any public announcement or communication in connection with the Offer, or concerning the Company and its subsidiary undertakings which is or may be material in the context of the Offer, without your prior consent (such consent not to be unreasonably withheld or delayed); or

1.4.2 any public announcement or communication prior to the release of the Press Announcement which refers expressly or impliedly to you or any member of your group,

except that the obligations set out in this paragraph 1.4 shall not apply to any such public announcement or communication if and to the extent that it is required by the Code, the Panel on Takeovers and Mergers (the "**Panel**"), any other applicable law or regulation, the Financial Services Authority or the requirements of London Stock Exchange plc (the "**Exchange**") or any other relevant regulatory authority ("**Applicable Requirements**"). Prior to the making or despatch of any such announcement or communication I shall take all steps as are reasonably practicable to consult with you as to the content, timing and manner of its making or despatch and I shall take into account all reasonable requirements on your part in relation to it. For

3

91219.6

FOIA CONFIDENTIAL TREATMENT REQUESTED

this purpose, an announcement shall be deemed to be made by me if it is made on my behalf in my individual capacity.

1.5 Information

I agree promptly on demand to supply, or procure the supply to you of, all information relating to me, my close relatives and any related companies and trusts which is required to be contained in any document relating to the Offer by Applicable Requirements (and, in particular, Rule 24.3 of the Code).

Without prejudice to paragraph 1.2.4 above, I also agree to supply you with details of dealings by me, my close relatives and any related companies and trusts in any securities of the Company or any of your securities immediately following the relevant dealing.

2. **Warranties and undertakings**

2.1 Warranties etc.

I warrant and undertake to the Offeror that:

2.1.1 the Shares comprise all the shares in the Company registered in my name or beneficially owned by me or in respect of which I am interested (as defined in Part 22 of the Companies Act 2006);

2.1.2 the Shares will be transferred pursuant to the Offer free from all charges, liens and encumbrances and with all rights now or hereafter attaching to them, including the right to all dividends declared, made or paid hereafter;

2.1.3 other than as set out in Schedule 1 to this letter, I do not have any interest (as defined in the Code) in any securities of the Company or any rights to subscribe for, purchase or otherwise acquire any such securities and Schedule 1 contains complete and accurate details of such rights;

2.1.4 I have full power and authority to enter into this undertaking, perform the obligations under it and accept the Offer or to undertake (in relation to any Shares of which I am not both registered holder and beneficial owner) that the Offer will be accepted, in respect of all the Shares;

2.1.5 to the best of my knowledge, information and belief, having made all reasonable enquiries, any information provided by me for inclusion in the Press Announcement, the Offer Document, and any other announcement made or document issued in connection to the Offer, is and will be true and accurate in all respects and not misleading in any respect;

2.1.6 I know of no matter or circumstance which might cause or result in any of the positive conditions to which the Press Announcement indicates the Offer will be subject to be unfulfilled or incapable of fulfilment;

2.1.7 not to, until the earlier of:

(a) this undertaking lapsing in accordance with paragraph 4.3 below; or

91219.6

4

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662029
Exh 2308-0004

(b)   the Offer becoming unconditional as to acceptances,

acquire any interests (as defined in the Code) or otherwise deal or undertake any dealing (as defined in the Code) in any relevant securities (as defined in the Code) of you or the Company (including, for the avoidance of doubt, exercising any of the options referred to in Schedule 1) unless the Panel determines, and confirms to you, that, in respect of such acquisition or dealing, I am not acting in concert with you pursuant to Note 9 on the definition of "Acting in concert" set out in the Code.

Such warranties and undertakings shall not be extinguished or affected by the sale of the Shares pursuant to the Offer.

2.2   No other warranties etc.

This letter supersedes any previous written or oral agreement between us in relation to the matters dealt with in this letter and contains the whole agreement between us relating to the subject matter of this letter. I acknowledge that I have not been induced to sign this letter by any representation, warranty or undertaking not expressly incorporated into it.

**3.   Publicity**

I consent to this undertaking being disclosed to the Panel, to the announcement of the Offer containing references to me and to this letter substantially in the terms set out in the Press Announcement, to particulars of this letter being set out in the Offer Document and any other announcement made or document issued in connection to the Offer, and to this letter being available for inspection during all or part of the period for which the Offer remains open for acceptance.

**4.   Conditions and termination**

4.1   Making of Offer

Your agreement to make the Offer is conditional upon:

4.1.1   the receipt by you not later than the time of release of the Press Announcement of equivalent undertakings (in substantially the same form as this or in such other form as you may accept) from each other director of the Company holding shares in it;

4.1.2   the release of the Press Announcement (with such amendments as you may approve) being authorised by or pursuant to a resolution of the board of directors of the Company or a duly authorised committee thereof, such authorisation not being withdrawn prior to the release;

4.1.3   the Press Announcement being released by midnight (London time) on 18 August 2011; and

4.1.4   no event or circumstance occurring or becoming known to you in consequence of which the Panel requires or permits you not to make the Offer.

5

91219.6

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662030
Exh 2308-0005

    My Obligations shall not be affected by the non-fulfilment of any of the conditions set out in paragraphs 4.1.1, 4.1.2 or 4.1.4.

4.2    Announcement of Offer

    My Obligations are conditional upon the announcement of the Offer, with the Offer being publicly recommended by the board of directors of the Company in that announcement.

4.3    Lapse

    My Obligations shall lapse if:

    4.3.1    the Press Announcement is not released by midnight (London time) on 18 August 2011; or

    4.3.2    the Offer is not made (by the posting of an offer document) by 15 September 2011 (or such later date as the Panel may permit); or

    4.3.3    the Offer lapses or is withdrawn without having become wholly unconditional,

    provided that the lapsing of my Obligations shall not affect any rights or liabilities under this letter in respect of prior breaches of them.

**5.**    **Enforcement**

5.1    Governing law etc.

    This letter and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with English law and I agree that the courts of England are to have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this letter and that accordingly any proceedings arising out of or in connection with this letter shall be brought in such courts.

5.2    Specific performance

    Without prejudice to any other rights or remedies which you may have, I acknowledge and agree that damages may not be an adequate remedy for any breach by me of any of my Obligations. You shall be entitled to the remedies of injunction, specific performance and other equitable relief for any threatened or actual breach of any such Obligation and no proof of special damages shall be necessary for the enforcement by you of your rights under this letter.

5.3    Power of attorney

    In order to secure the performance of my Obligations (including the undertakings contained in paragraph 1.1 above), I appoint each of your directors and each director or partner (as the case may be) of Barclays Bank PLC and Perella Weinburg Partners LP (the "**Offeror's Financial Advisers**") severally to be my attorney in my name or otherwise and on my behalf to accept the Offer, to sign a form or forms of acceptance, and generally to comply with the terms of the formal document containing the Offer and fulfil my Obligations in relation to it. I agree that this power of attorney is given

by way of security and is irrevocable in accordance with section 4 of the Powers of Attorney Act 1971 unless and until my Obligations lapse in accordance with paragraph 4.3.

## 6. Interpretation

### 6.1 Offer or Scheme of Arrangement

I note that you reserve the right to implement the Offer by way of a court sanctioned scheme of arrangement under Part 26 of the Companies Act 2006 (a "**Scheme**"). In the event that it is so implemented, I confirm and agree that my Obligations shall continue to be binding *mutatis mutandis* in respect of the Shares and all references to the Offer shall, where the context permits, be read as references to the Scheme (or to both the Offer and the Scheme, as appropriate). Notwithstanding the generality of the foregoing, references in this letter:

6.1.1 to accepting the Offer shall be read and construed as references to voting in favour of the Scheme and voting in favour of the resolutions to be proposed at any Court meeting and/or any Extraordinary General Meeting of members of the Company in connection with the Scheme (including without limitation any related capital reduction of the Company) either in person or by executing and lodging the relevant forms of proxy within seven business days the despatch of the document to the Company's members in connection with the Scheme (the "**Scheme Document**") in accordance with the instructions set out in the Scheme Document (or, in respect of Shares referred to in paragraphs 1.1.1 or 1.1.2 above, within two business days of becoming the registered holder of such Shares) and references to withdrawal of acceptances shall be read and construed as references to revoking or amending any forms of proxy which have been lodged;

6.1.2 to a recommendation to all members of the Company to accept the Offer shall be read and construed as references to recommend all members to vote in favour of the Scheme;

6.1.3 to the Offer becoming unconditional in all respects shall be read and construed as references to the Scheme becoming effective and references to the Offer lapsing or being withdrawn shall be read and construed as references to the Scheme lapsing or being withdrawn; and

6.1.4 to the Offer Document shall be read and construed as references to the Scheme Document.

### 6.2 Revised Offers

In this letter, references to the Offer shall include any revised offer by the Offeror, the terms of which in the reasonable opinion of the Offeror's Financial Adviser is/are at least as favourable to members of the Company as the original Offer.

### 6.3 Additional Terms

91219.6

7

The Offer shall be subject to such additional terms and conditions as may be required to comply with the requirements of the Code, the Financial Services Authority or the rules and regulations of the Exchange or any other relevant regulatory authority and as may be agreed between you and the Company.

6.4 Unconditional and irrevocable obligations

Except to the extent otherwise specified, the Obligations set out in this letter are unconditional and irrevocable.

6.5 Time

Time shall be of the essence of the Obligations set out in this letter.

6.6 Meaning

References in this letter to the "**Obligations**" are to my undertakings, agreements, warranties, appointments, consents and waivers set out in it. References in this letter to "**subsidiaries**" include subsidiary undertakings and the expressions "**subsidiaries**", "**subsidiary undertakings**" and "**wholly-owned subsidiaries**" have the same meanings as in the Companies Act 2006 except that a company shall also be treated as a member of another company if any shares in that other company are held by a person:

(a) acting on behalf of the company or any of its subsidiaries; or

(b) by way of security provided by the company or any of its subsidiaries.

6.7 This letter shall bind my estate and personal representatives.

7. **Third Party Rights**

A person who is not party to this letter has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this letter but this does not affect any right or remedy of a third party which exists or is available apart from that Act.

8. **Customer relationship**

I confirm that the Offeror's Financial Adviser is not acting for me in relation to the Offer and will not be responsible to me for providing protections afforded to its clients or advising me on any matter relating to the Offer. I accept this.

9. **Confidentiality**

I agree to keep confidential any confidential information concerning the Offer except as otherwise required by any Applicable Regulation and not to deal or recommend others to deal in the shares of the Company before any such information becomes publicly available.

91219.6

8

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662033
Exh 2308-0008

**EXECUTED as a DEED** by )
Michael Lynch )
)

in the presence of:

Signature

Name    A. CANTOR

Address   NEW HALL, GREAT CHISHILL, HERTS SG8 8SN

Occupation   EXECUTIVE

9

91219.6

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662034
Exh 2308-0009

## SCHEDULE
### Shares to which this letter relates

### PART I:
### Shares of which I am the Registered and Beneficial Holder

**Number of Ordinary Shares**          **Registered and Beneficial Holder**

n/a

### PART II:
### Shares of which I am the Beneficial but not the Registered Holder

**Number of Ordinary Shares**          **Beneficial Holder**

19,198,046                             Michael Lynch
                                       26 St Leonards Terrace
                                       London
                                       SW 3 4QG

### PART III:
### Share Option Entitlements and Other Interests

**Options and Other Interests Held**   **Holder**

435,000 share options for ordinary shares   Michael Lynch
in the Company granted under the            26 St Leonards Terrace
Company's 1996 UK Discretionary Share       London
Option Scheme                               SW 3 4QG

44,774 bonus share awards in respect of     Michael Lynch
ordinary shares in the Company granted      26 St Leonards Terrace
in 2010 and 2011 (ordinary shares           London
awarded out of an employee benefit trust)   SW 3 4QG

### PART IV:
### Shares of which I am taken to be Interested in Pursuant to Part 22 of the Companies Act 2006

**Number of Ordinary Shares**          **Beneficial Holder**

610,500                                Angela Lynch
                                       26 St Leonards Terrace
                                       London
                                       SW 3 4QG

91219.6

10

FOIA CONFIDENTIAL TREATMENT REQUESTED

HP-SEC-01662035
Exh 2308-0010