PATRICK D. ROBBINS (CABN 152288))
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    Fax: (415) 436-7234
    Email: Robert.Leach@usdoj,gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-577 CRB |
| Plaintiff, | UNITED STATES' MOTION *IN LIMINE*: TO STRIKE POST-ACQUISITION TESTIMONY OF LISA HARRIS |
| v. | |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | Trial Date: March 18, 2024<br>Judge: Hon. Charles Breyer |
| Defendant. | |

## I. INTRODUCTION

The Court has consistently ordered that post-acquisition evidence is not admissible in this trial. Nevertheless, Defendants Lynch and Chamberlain are attempting to backdoor-in testimony about the post-acquisition period through the deposition of Lisa Harris. Specifically, Defendants seek to admit testimony where Ms. Harris describes a mapping exercise she performed with an individual from HP, David Duckworth, as part of an endeavor to integrate Autonomy's financial information onto the HP systems. Ms. Harris testifies that through this mapping exercise and a related meeting she had with Mr. Duckworth in Pleasanton, it was apparent to HP that Autonomy was engaged in hardware sales. Ms. Harris was inconsistent at best in her deposition as to the timing of when this mapping endeavor and meeting occurred, stating that she could not recollect the exact date but guessing it was in October or November. As the Court is well-aware the *timing of when* HP became aware of Autonomy's hardware sales is critical to this case. Numerous records and sworn statements, including those of Lisa Harris and David Duckworth, establish that this mapping project occurred after the close of the acquisition on October 3, 2011. The Court should not allow Defendants to breach the line it has set with respect to post-acquisition conduct on the basis of a momentary lapse in the memory of Ms. Harris during a 2024 deposition. The Court allowed Defendant Chamberlain to play one portion of this contested deposition testimony over the government's objection today. After trial, on the night of May 21, 2024, Defendant Lynch seized on this opening and informed the government for the first time that it intended to play *four more excerpts* pertaining to these post-acquisition events.

Ms. Harris' testimony about the mapping project is highly prejudicial to the government, irrelevant given that it occurred post-acquisition, and should be excluded under Fed. R. Evid. 403. If Ms. Harris' testimony is not excluded, the government will have to call David Duckworth as a rebuttal witness to clarify for the Jury that the events described by Ms. Harris occurred in the post-acquisition period and to impeach Ms. Harris. In sum, allowing Ms. Harris' deposition testimony will result in the presentation of false facts to the jury, as well as lead to needless jury confusion, and waste of time.

Finally, defense counsel owe a duty of candor to this Court. As the Court informed defense counsel today: "I engage in a certain number of fictions if I have to, but I don't want to engage in any more than are necessary. And you would never put in  - - never make an argument unless there's a

1

reasonable likelihood that it's the truth, right?" Tr. 9408:16-21.  What Defendants are seeking to present through Ms. Harris' misleading testimony is exactly that – a fiction.  If, despite this motion, the Court retains doubt as to the true timing of the events described by Ms. Harris, the Court should at the very least require defense counsel to lay a foundation establishing a good faith basis for their currently unsubstantiated claim that the mapping events occurred pre-acquisition—a foundation that does not rest solely on the inconsistent deposition testimony of Ms. Harris herself.

**II.    ARGUMENT**

    **A.    Ms. Harris' Deposition Testimony as to the Timing of the Mapping Exercise was Inconsistent**

Today, the Court permitted Defendant Chamberlain to play a portion of Ms. Harris' deposition in which she stated that, after the announcement of the acquisition, she met with David Duckworth (from HP) in Pleasanton ("Pleasanton Meeting") to discuss HP's mapping of Autonomy's ledger codes, including those related to Autonomy's hardware sales (the "mapping exercise").  She further testified that, during this meeting, she and Mr. Duckworth discussed Autonomy's hardware sales, that it was "obvious" from this mapping exercise that Autonomy was selling hardware, that Autonomy did not instruct her to conceal the hardware from HP, and that HP "had all the information."  Declaration of Kristina Green in Support of Motion in Limine to Strike, Ex. A (Harris Dep. Tr.) (66:1-67:19).  The introduction to this testimony was confusing with respect to timing, with references to both "after the announcement, before the deal closed" as well as "late 2011."  *Id.*  Thus, it is not clear from this testimony whether Ms. Harris was confirming that the mapping exercise and Pleasanton meeting occurred before the deal closing or in late 2011.

Ms. Harris's testimony later in the deposition, however, establishes that she did not have a clear recollection as to the timing of the mapping exercise and Pleasanton Meeting.  For example, at one point she confirmed it was "certainly October/November 2011".  Green Decl. Ex. A 98:24-105:8.  At another point she said "I'm sure it was after the end of September.  I'm sure it was October or November."  Green Decl. Ex. A 172:12-16.  Ms. Harris also confirmed that, logically, it would not make sense for HP to have been engaged in a mapping exercise with respect to Autonomy's books until after the acquisition closed (testimony that aligns with the actual facts of what happened).  Green Decl. Ex. A 173:13-174:11.

2

B. **Ms. Harris' and David Duckworth's Sworn Statements and Trial Testimony Confirm that the Mapping Exercise and Pleasanton Meeting Occurred Post-Acquisition**

The Court has the information necessary "to know what the truth is." Tr. 9408:11-12.

Ms. Harris submitted two sworn statements in the UK proceedings, dating from November 2018 and September 2019, in which she wrote that the mapping exercise and Pleasanton Meeting occurred after the acquisition closed. *See* Green Decl. Ex. B (1st Harris Stmt.) ¶ 48 ("**Post-acquisition: . . .** From a finance perspective, three pieces of work were undertaken after the acquisition: the IFRS/US GAAP fair value adjustment undertaken by KPMG, the **mapping and transfer of autonomy's financial information onto HP systems**, and the rebasing exercise.) (emphasis added), ¶ 66 ("Other people at HP were also aware Autonomy sold hardware. David Duckworth had already mapped the hardware codes in Autonomy's ledgers to 'Product' in HP's ledgers, these were the same codes that software was mapped to in advance of a big meeting in **Pleasanton, California about this in November 2011**.") (emphasis added); Ex. C (2nd Harris Stmt.) ¶ 12 ("When integrating with HP's accounting system, I discussed with HP, in particular David Duckworth . . . how hardware sales were reflected in the ledger. As part of the **mapping exercise shortly after the acquisition in October and November 2011,** we worked to move data across from Autonomy's finance systems to HP's finance system. This included entries for hardware sales and cost of hardware sales.") (emphasis added).

David Duckworth's sworn UK witness statement corroborates that of Ms. Harris'. Mr. Duckworth stated the following:

1. "In my role as HP's MADO Finance Integration Project Manager, I was a member of the team with responsibility for the **integration of Autonomy's financial systems** and processes into HP's financial accounting structure **following the Autonomy acquisition**." Green Decl. Ex. D (Duckworth Stmt.) ¶ 6 (emphasis added).

2. "I was told by my line manager at the time . . . that when she first explained to Autonomy the **need for this mapping exercise** as part of the financial integration workstream **after the close of the Autonomy transaction**, there was pushback from Dr. Lynch and Mr. Hussain." *Id.* ¶ 10 (emphasis added).

3. "Once it was made clear to Dr. Lynch and Mr. Hussain that this was non-negotiable, they agreed that the mapping exercise could take place and Stephen Chamberlain . . . put me in touch with Ms. Harris . . . ." *Id.* ¶ 11 (confirming Ms. Harris and Mr. Duckworth were not even introduced until after the acquisition closed).

4. "While Ms. Harris is correct to say . . . that the **mapping exercise was discussed during a meeting in Pleasanton, California, in November 2011**, I do not recall any particular discussion at that meeting (or otherwise) about either of these [hardware general ledger] accounts." *Id.* ¶ 20 (emphasis added).

Furthermore, Mr. Duckworth testified during the U.K. trial that he did not receive the trial balances (Autonomy's financial information that formed the basis for the mapping exercise) until *October 12, 2011*, and thus confirmed that he had not even *started* the mapping exercise by that date (almost 10 days after the acquisition close). Green Decl. Ex. E (Duckworth Tr.) 116:25-117:9.

### C. Additional Records Confirm the Pleasanton Meeting was Post-Acquisition

The government has obtained additional records that corroborate that the Pleasanton Meeting occurred in November 2011. These records consist of the following:

1. Flight records for Ms. Harris, which confirm she flew to San Francisco from London on November 13, 2011. The records confirm that Ms. Harris did not fly to San Francisco at any other time in 2011. Green Decl. Ex. F.

2. An email chain between Ms. Harris and Mr. Duckworth, dated November 2, 2011, that discusses the Pleasanton Meeting and confirms that the meeting was scheduled to take place after November 2, 2011. Green Decl. Ex. G at 2.

3. An email chain involving David Duckworth, Lisa Harris, Steve Chamberlain and others, dated October 19, 2011. This email chain confirms that Mr. Duckworth was not introduced to Ms. Harris until October 19, 2011, and suggests that Mr. Duckworth had barely, if at all, commenced the mapping exercise as of this date. Green Decl. Ex. H at 1, 3.

The Government notes that it made defense counsel aware of its position that the mapping exercise and Pleasanton Meeting occurred in the post-acquisition period four days ago, on May 18,

4

2024, when the government objected to Defendant's deposition designations.  Defendants have not to date presented any records that rebut the government's argument that these were post-acquisition events.  As officers of the court, lawyers on both sides owe the court a duty of candor.  *Hallinan v. United States*, 182 F.2d 880, 888 (9th Cir. 1950) ("An officer of a court has a higher duty to assist in maintaining the dignity and integrity of courts than does the ordinary citizen."); *United States v. Herrera-Figueroa*, 918 F.2d 1430, 1437 (9th Cir. 1990) (lawyer has "ethical duty of candor").

### III.  CONCLUSION

When the parties argued this issue in court today, the Court stated: "I think the argument, as I understand it, the argument is if the, quote, mapping, if that's what it is or whatever it is, occurred before October 3rd, then there's an indication that they were aware of the hardware or the significance of the hardware, perhaps. **If it occurred afterwards, it's out.**"  Tr. 9407:19-24 (emphasis added).  Given the records outlined above, the government respectfully requests that the Court preclude any testimony from Ms. Harris about the mapping exercise and the Pleasanton Meeting under Fed. R. Evid. 403 and strike the portion of the deposition testimony admitted today.  This ruling would be consistent with the Court's position that post-acquisition evidence should not come into this trial.  Now is not the time to waver on a rule that the Court has held steadfast throughout this trial—especially when the result would be the admission of misleading and factually inaccurate testimony to the Jury.  If the Court allows this testimony, the government will be forced to call Mr. Duckworth as a rebuttal witness to ensure accurate facts are presented to the Jury, as well as spend time impeaching Ms. Harris' deposition testimony with her own prior sworn statements.

DATED:  May 21, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515.

/s/ *Kristina Green*
ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorneys