1   Jonathan M. Baum (SBN: 303469)
    **Steptoe LLP**
2   One Market Street
3   Steuart Tower, Suite 1070
    San Francisco, CA  94105
4   Telephone:  (510) 735-4558
    jbaum@steptoe.com
5
6   Reid H. Weingarten
    Brian M. Heberlig
7   Michelle L. Levin
    Nicholas P. Silverman
8   Drew C. Harris
    (Admitted Pro Hac Vice)
9   **Steptoe LLP**
10  1114 Avenue of the Americas
    New York, NY 10036
11  Telephone:  (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

12

13

14          **UNITED STATES DISTRICT COURT**

15          **NORTHERN  DISTRICT OF CALIFORNIA**

16  UNITED STATES OF AMERICA,              Case No.: 3:18-cr-00577-CRB
17
                Plaintiff,                 Judge: Hon. Charles Breyer
18
19          vs.                            **DEFENDANT MICHAEL RICHARD
                                           LYNCH'S RESPONSE TO GOVERNMENT
20  MICHAEL RICHARD LYNCH and              MOTION *IN LIMINE* TO EXCLUDE
    STEPHEN KEITH CHAMBERLAIN,             SUMMARY CHARTS**
21
                Defendants.               Court:  Courtroom 6 – 17th Floor
22                                        Date Filed:  May 22, 2024
23                                        Trial Date:  March 18, 2024

24

25

26

27

28
─────────────────────────────────────────────
        DEFENDANT MICHAEL RICHARD LYNCH'S RESPONSE TO
    GOVERNMENT MOTION *IN LIMINE* TO EXCLUDE SUMMARY CHARTS

                    3:18-CR-00577-CRB

The government moves to exclude 10 of the 18 summary slides that Dr. Lynch intends to offer through Harriet Slack, a Clifford Chance solicitor in the firm's London office, on the ground that the slides are "pure argument" and on various other grounds, including relevance, cumulative nature, improper summary evidence and unnoticed expert testimony.  ECF No. 508.  As the Court observed in overruling Dr. Lynch's objections to the slides the government presented during the testimony of Britta Huebsch, "[e]very chart is argumentative.  Every chart is in furtherance of an argument."  Tr. 9040.  Ms. Slack's slides are not improperly argumentative; they present voluminous evidence in a summary manner that is helpful to the jury.  And to the extent the charts include calculations, those calculations do not involve accounting judgments or expert testimony.  Rather, they do simple addition, subtraction, and division, as Ms. Slack will explain during her testimony.  Accordingly, and for the reasons set forth below as to specific objections to specific slides, the slides should be admitted.

- **Slide 2, Ex. 9133-002, titled "Autonomy's Footprint."**  This slide is simply a map of the world showing where Autonomy's offices are located around the globe, along with data about the number of offices the company had as of Q1 2011, its revenues, and its net profits.  The data is pulled from several different sources, including Autonomy's annual report. All sources are already admitted, except for one (Exh. 9123.1), which is a list of Autonomy's offices around the world, contained on an internal slide deck that will be offered during Ms. Slack's testimony. The information is presented to the jury in a clear, straightforward and uncontroversial way.  The government's objection should be overruled.

- **Slides 5-6, Ex. 9133-005 & 9113-006, titled "Autonomy Share Price: Quarterly Revenue Missed Q2 2009-Q2 20011" and "Autonomy Share Price: Quarterly EPS Misses Q2 20-09-Q2 2011."**  These slides combine Bloomberg data showing Autonomy's historical

share price during the relevant time period, Ex. 7935, with data from an exhibit already admitted in evidence, Ex. 8863. Ex. 8863 is an email from an HP employee in early August 2011 listing the five times in the last nine quarters Autonomy missed its quarterly revenue targets, and the four times in the same period it missed its profitability targets. Ex. 8863.  The numbers on the charts are taken directly from the email that is already in evidence.  The point of the slides is to show that revenue and earnings misses have only temporary effects on Autonomy's share price. This is relevant because it rebuts the government's allegation that the goal of the alleged scheme to defraud was to hit quarterly revenue targets because dire consequences would ensue if Autonomy missed its quarterly targets.  The government's objection should be overruled.

- **Slide 7, Ex. 9113-007, titled "2010 Gross Margin of Large Technology Companies."**
This slide appropriately pulls together voluminous data from the public 10-K reports of the companies on the chart, filed with the SEC.  The chart demonstrates that Autonomy's gross margins were very high compared to similarly situated large technology companies during the relevant time period.  This is relevant to show that Autonomy already had very high gross margins and did not need to alter its financials. The government's objection should be overruled.

- **Slide 8, Ex. 9113-008, titled "Q1 2009-Q2 2011: Total Revenue v. Hardware Loss."**
The calculations on this slide are elementary addition and subtraction.  As the Court has observed in allowing calculations during the testimony of Ms. Huebsch, "a mathematical calculation [is] appropriate.  That's part of summary testimony."  Tr. 9038.  "[I]f it's math, it's math."  Tr.  9038.  Here, the total revenues are simply the sum of reported revenues during the relevant time period.  The hardware loss is simply a calculation of total revenues from hardware, on the one hand, and total costs of hardware, on the other.  There is no mystery about where the

numbers come from:  as the chart indicates, the relevant figures are pulled from the documents listed, which consist of Autonomy's general ledgers, which in turn identify hardware revenues and hardware costs (which are broken down into cost of goods sold, or COGS, and sales and marketing).  The numbers are clearly identified in the ledgers.  It is helpful to the jury to summarize the total losses using the numbers in the general ledgers, because the ledgers are voluminous documents.

The government objects that "[j]ust as the Court prohibited the government's summary witness (Special Agent Britta Huebsch) from performing mathematical calculations based on data, the Court should do so here." ECF No. 508, at 2. This statement is incorrect.  In fact, the Court did **not** prohibit Ms. Huebsch from performing mathematical calculations based on data.

During her direct and re-direct examinations last Thursday, Ms. Huebsch performed the following mathematical calculations:

- o   Adding forecasted revenue to determine totals in Sushovan Hussain's spreadsheets.  Tr. 9107.

- o   Comparing calculations of forecasted revenue to analyst "consensus" numbers.  Tr. 9107.

- o   Adding total value of deals identified in Hussain spreadsheets that either showed up as zero balance or not at all in subsequent spreadsheet. Tr. 9108.

- o   Adding total value of VAR deals in Hussain spreadsheets.  Tr. 9108-09.

- o   Analyzing growth of revenue in Hussain spreadsheets. Tr. 9129.

- o   Analyzing "adjustments" in hardware revenue between different versions of Hussain spreadsheets. Tr. 9131.

o   Adding total amount of "deals that did not show in up a subsequent spreadsheet." Tr. 9134.

o   Calculating gross margin based on formula in Deloitte work papers.  Tr. 9137-38.

o   Performing calculations to compare Capital IQ consensus data to consensus reported in the audit committee report. Tr. 9193.

Ms. Slack's math is no more complicated than the math the Court permitted Ms. Huebsch to perform. Math is not expert testimony.  Math is math.

The government also makes the conclusory assertion that the slide should be excluded under Rules 401 and 403, but the slide goes to the materiality of the loss-making hardware sales when considered in light of Autonomy's total revenues.  The government's objection should be overruled.

- **Slide 9[1], Ex. 9113-009, titled "Autonomy H1 2011 Financial Metrics with and without Hardware Sales."**  As in Slide 8, the calculations in this slide are basic math.  Using data pulled from the referenced exhibits, Ms. Slack used addition, subtraction and division to calculate Autonomy's profits and revenues after adjusting for hardware sales by removing the revenues and costs associated with those sales.  The calculations are straightforward and can be explained to the jury using elementary math.  The calculations do not require accounting expertise.  The government complains that its summary witness was not permitted to perform mathematical calculations, but the government is incorrect.  Ms. Huebsch performed mathematical calculations throughout her testimony in support of her summary slides, and Ms.

---

[1] The Government makes two objections to Slide 8, but the second one appears to relate to Slide 9, which is on a different topic.

Slack should be permitted to do the same.  As for the government's perfunctory reference to Rules 401 and 403, the impact of Autonomy's hardware sales on Autonomy's financial metrics is one of the central issues in the case.  Numerous government witnesses testified that they would have valued Autonomy differently had they known about the hardware sales.  This chart goes directly to that testimony.  The government's objection should be overruled.

- **Slide 15, Ex. 9113-015, titled "UK Software Company Acquisitions > $100M (2007-2011)."**  This slide is based on publicly available Bloomberg data listing UK software company acquisitions for greater than $100 million from 2007 to 2011.  The slide demonstrates that HP paid one of the highest premiums for Autonomy of any of these acquisitions, which is relevant because it shows the degree to which HP was willing to overpay to acquire Autonomy, which bears on the materiality of various accounting decisions Autonomy made.  The government's objection should be overruled.

- **Slide 16, Ex. 9113-016, titled "UK Acquisitions >$5B (2007-2011)."**  Like Slide 15, this slide is based on a query of Bloomberg data, this time for UK acquisitions greater than $5 billion from 2007 to 2011.  The slide demonstrates that HP paid the highest premium for Autonomy of any of these acquisitions, which is highly relevant and probative of the materiality of the alleged misrepresentations Autonomy made to HP.  The government's objection should be overruled.

- **Slides 17-18, Ex. 9113-017 & 9113-018, titled "Analyst Target Prices."**  These slides simply list published target prices provided by analysts at two points in time, April 2011 and July 2011, to show the distribution of analysts' target prices as compared with the price at which Autonomy was trading at the time.  The government has made much of the analyses of Daud

Khan, David Toms and Marc Geall of Autonomy's value.  This slide puts the views of those analysts in context.  The government's objection should be overruled.

For the foregoing reasons, the Court should overrule the government's objections to Dr. Lynch's summary slides.

1   Dated: May 22, 2024                    Respectfully submitted,

2

3                                          By:  _/s/ Celeste L.M. Koeleveld__
                                           Celeste L.M. Koeleveld
4
                                           Christopher J. Morvillo
5                                          Celeste L.M. Koeleveld
                                           Daniel S. Silver
6                                          (Admitted Pro Hac Vice)
7                                          **CLIFFORD CHANCE US LLP**
                                           31 West 52nd Street
8                                          New York, NY 10019
                                           Telephone:  (212) 878-3437
9
10                                         Jonathan M. Baum (SBN: 303469)
                                           **STEPTOE LLP**
11                                         One Market Street
                                           Steuart Tower, Suite 1070
12                                         San Francisco, CA  94105
                                           Telephone:  (510) 735-4558
13
14                                         Reid H. Weingarten
                                           Brian M. Heberlig
15                                         Michelle L. Levin
                                           Nicholas P. Silverman
16                                         Drew C. Harris
                                           (Admitted Pro Hac Vice)
17
                                           **STEPTOE LLP**
18                                         1114 Avenue of the Americas
                                           New York, NY 10036
19                                         Telephone:  (212) 506-3900
20
                                           *Attorneys for Defendant*
21                                         *Michael Richard Lynch*

22

23

24

25

26

27

28

---