Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANT MICHAEL RICHARD LYNCH'S MOTION FOR A MISTRIAL**<br><br>Court: Courtroom 6 – 17th Floor<br>Date Filed: May 23, 2024<br>Trial Date: March 18, 2024 |

## I. INTRODUCTION

On Wednesday afternoon, the prosecutor asked a series of questions lacking in probative value and intended to prejudice Dr. Lynch, the most egregious of which were two questions that directly raised the issue of Dr. Lynch's extradition in the presence of the jury. In the first question, the prosecutor singled out "extradition" as one of Ms. Slack's areas of expertise. Tr. at 9643. Alone, this might have reflected poor judgment or lack of preparation for the examination. But then the prosecutor deliberately plowed ahead, asking Ms. Slack to define what extradition proceedings are. *Id*. Those questions were followed immediately by questions about Ms. Slack's representation of Dr. Lynch since approximately 2015, the clear implication being that Ms. Slack's expertise in extradition proceedings stems from her representation of Dr. Lynch over the past decade. *Id*. at 9644. That these questions were designed to inflict prejudice is confirmed by the fact that they bore no relation to Ms. Slack's testimony. Her experience with extradition has nothing to do with her summary testimony, nor does it have any bearing on potential bias.

The prosecutor also asked highly improper questions intended to prejudice the jury against Dr. Lynch because he is wealthy and can afford a large legal team, and improperly implied without a shred of evidence that Ms. Slack, who as a U.K. solicitor is an officer of the court just as American attorneys are, would violate her duties to the court to advance Dr. Lynch's interests. *Id*. at 9646, 9649-50.

Accordingly, Dr. Lynch moves for mistrial. As Mr. Heberlig indicated earlier today, Dr. Lynch does not want a mistrial. He is innocent of the charges against him and believes this jury will agree that is the case based on the evidence that has been presented. However, given the prejudicial impact of the prosecutor's improper questions, Dr. Lynch has been left with no choice in the matter. Further, because the prosecution, apparently worried that the jury will indeed reach the only just result—a judgment of acquittal—consistent with the evidence presented, has goaded Dr. Lynch into moving for a mistrial, the charges should be dismissed with prejudice.

If the Court disagrees with Dr. Lynch and denies the motion for a mistrial, the Court should (1) strike all of the prosecutor's questions of Ms. Slack other than questions about the slides; and (2) instruct the jury that the questions are being stricken because the prosecutor's

1  questioning was improper.  Striking all questions other than those about the slides is the only
2  feasible remedy because anything less will only highlight for the jury the questions that were
3  improper.  The Court should also instruct the jury that U.K. solicitors, like American attorneys,
4  are officers of the court whose overriding duty is to the rule of law and the administration of
5  justice.  Finally, the Court should admonish the prosecution for engaging in improper
6  questioning of Ms. Slack with no purpose other than to prejudice Dr. Lynch.

7  **II.     FACTUAL BACKGROUND**

8  First, and most egregiously, the prosecutor asked Ms. Slack a series of questions scripted
9  and sequenced to signal to the jury that Dr. Lynch fought extradition.  This was the first the jury
10 heard the word "extradition" in this case; the parties agreed before the trial, for obvious reasons,
11 that any reference to those proceedings would be highly prejudicial and improper.

12 The prosecutor began by asking Ms. Slack about her areas of expertise, none of which
13 bore any relevance to the subject matter of her testimony:  the summary slides.  Nevertheless,
14 after plucking a few other items from her resume, such as her experience in M&A transactions,
15 the prosecutor asked Ms. Slack directly about her experience in "extradition proceedings."  *Id*. at
16 9643.  The first reference to extradition was problematic enough, but the prosecutor doubled
17 down by asking Ms. Slack a second time about extradition, asking her to define "extradition
18 proceedings"—as if a definition was required—before pointing out in the very next question that
19 he "saw on your bio that you list your representation of Dr. Lynch on your bio."  *Id*. at 9643-44.
20 The implication could not have been more clear and more deliberate:  that Ms. Slack represented
21 Dr. Lynch in extradition proceedings, a conclusion the prosecutor drove home by pointing out
22 that Ms. Slack has represented Dr. Lynch for ten years.  The point was not lost on at least one of
23 the highly educated jurors in this case, who defense counsel noticed nodding his head knowingly
24 when the prosecutor asked Ms. Slack about extradition.

25 As the sequence of questions—which carefully followed the outline the prosecutor had
26 prepared—makes clear, this was no accident or inadvertent mistake.  Indeed, the prosecutor did
27 not claim that the questioning was inadvertent.  When questioned about why he had asked the
28 questions he did about Ms. Slack's expertise, he made clear that the questions were deliberate,

stating, "I'm reading from her bio about her professional experience and competence to testify about this case." *Id*. at 9676.  In other words, this was planned in advance.  While the prosecutor insisted that he "did not suggest that she was participating in an extradition with Dr. Lynch," *id*., that claim rang hollow given the sequencing of the questions and the lack of any reason whatsoever to mention extradition when cross examining a summary witness whose sole testimony consisted entirely of offering slides containing Autonomy's financial data and related background information.  Neither Ms. Slack's M&A work nor her extradition expertise had anything to do with her "competence" to testify about the basic math and data compilation in the summary slides.  Careful enough not to only ask about extradition, the prosecutor also mentioned the M&A work to make it seem as though he was just delving into one or two of the practice areas.  Notably, the prosecutor did not mention all of Ms. Slack's areas of experience; he left out anti-bribery matters.  The questioning was highly improper, intentional misconduct.

Second, the prosecutor asked a series of questions about the number of attorneys working for Dr. Lynch that had no purpose other than to prejudice Dr. Lynch in the eyes of the jury because he has a large legal team and the financial means to pay for it.  There was no other reason to ask those questions.  The prosecutor's questions about whom Ms. Slack worked with to prepare for her testimony were similarly disingenuous.  Rather than asking Ms. Slack who in particular she had met with after she said she had met with "a couple of members of my team," the prosecutor proceeded to name individually nearly all the attorneys who have appeared in the case and ask Ms. Slack if she spoke with that attorney about her testimony.  *Id*. at 9648-53.  Tellingly, although he named fourteen attorneys during this charade, the prosecutor skipped two attorneys whom he knew Ms. Slack had worked with—Ms. Levin and Mr. Kast—before he asked her directly: "Okay. Who did prepare you for your testimony."  *Id*. at 9652:12-14.  Ms. Slack answered in one sentence, making clear the prosecutor's true intent during the prior four pages of the transcript.  Contrary to the Court's statement today, these questions were not just a decision by the prosecutor about how to approach a legitimate subject of questioning.  This was a deliberate strategy to make an improper point.

When Ms. Levin objected to the relevance of these questions, the Court allowed the questions to continue and then precluded any questions on redirect that would have explained why Dr. Lynch has a large legal team and why he hired lawyers over ten years ago, long before he was charged in this case.  In truth, the only way to explain that fully is to recount post-acquisition events, but as the prosecution well knows, the Court has precluded Dr. Lynch from presenting that evidence, making it impossible for Dr. Lynch to respond appropriately to the cross-examination of Ms. Slack.  A full and fair response would allow Dr. Lynch to bring out the truth that, while Dr. Lynch has a large legal team, the prosecution in this matter has benefitted immensely from the fact that HP has spent at least $150 million trying to bring Dr. Lynch down and supporting the government's effort to do the same during the past 12 years.

A third area of improper questioning concerned Ms. Slacks's professional responsibilities. As Ms. Slack noted, as a U.K. solicitor, she is subject to the rules of the Solicitors Regulatory Authority (SRA), and there are professional consequences for violating those rules.  Tr. at 9647. Like legal practitioners in the United States, solicitors "are officers of the court and their overriding duty is to the rule of law and the administration of justice."[1]  It was therefore improper, and a misstatement of the law, for the prosecutor to suggest through his questioning that Ms. Slack had a higher obligation to Dr. Lynch that would oblige her to engage in misconduct to advance his interests.

In sum, the prosecutor's questions leading up to the questions about the summary slides were infected with deliberate misconduct highly prejudicial to Dr. Lynch.

**III.   ARGUMENT**

The United States's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  The prosecutor lost sight of that higher purpose in his questioning of Ms. Slack.  While he was entitled to try and demonstrate Ms. Slack's bias by asking her about her representation of Dr. Lynch and the duties

---

[1] Solicitors Regulation Authority, Balancing Duties in Litigation 4 (November 2018), available at https://www.sra.org.uk/globalassets/documents/solicitors/freedom-in-practice/balancing-duties-in-litigation.pdf?version=49070d.

and obligations that representation entails, he was not entitled to use his cross-examination to ask questions designed solely to prejudice Dr. Lynch before the jury. Yet the prosecutor did just that by signaling that Dr. Lynch fought extradition and by highlighting the size and cost of his legal team, and he misled the jury by suggesting that Ms. Slack's sole duty was to Dr. Lynch when she, as a U.K. solicitor, is an officer of the court like American attorneys. In short, the prosecutor violated his ethical and professional responsibilities at every turn, causing severe and irreparable prejudice to Dr. Lynch.

Under the circumstances, Dr. Lynch is constrained to move for a mistrial. As counsel stated in court, Dr. Lynch does not want a mistrial. He wants this jury to decide his fate because he believes this jury, given the evidence it has heard and the complete absence of proof that he engaged in a scheme to defraud Autonomy's shareholders or HP, will return a verdict of not guilty. The irreparable damage done by the prosecutor's misconduct leaves Dr. Lynch with no choice.

Furthermore, given the egregiousness of the prosecutor's misconduct, no retrial should be permitted. Ordinarily, "[w]hen a court declares a mistrial, 'retrial will only be permitted if the defendant consented to the mistrial or if the mistrial was caused by 'manifest necessity.'" *United States v. McKoy*, 78 F.3d 446, 449 (9th Cir. 1996) (citing *Weston v. Kernan*, 50 F.3d 633, 636 (9th Cir. 1995)). Where the "'conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial,'" however, the Double Jeopardy Clause bars a retrial. *Id*. (citing *United States v. Lun,* 944 F.2d 642, 644 (9th Cir. 1991) (quoting *Oregon v. Kennedy,* 456 U.S. 667, 679 (1982))). In that circumstance, the defendant cannot be said to have waived his right "to have his trial completed before the first jury empaneled to try him," and jeopardy attaches. *Kennedy*, 456 U.S. at 673; *see also United States v. Lewis*, 368 F.3d 1102, 1108 (9th Cir. 2004). Indeed, this right "would be a 'hollow shell'" if the prosecution "were able to avoid double-jeopardy preclusion by intentionally provoking a defendant into moving for a mistrial." *United States v. Brown*, 994 F.3d 147, 153 (3d Cir. 2021) (citing *Kennedy*, 456 U.S. at 673); *see also Lewis*, 368 F.3d at 1108 ("This exception prevents

prosecutors from sinking a case they knew was doomed to end in an acquittal in the hope of having better luck before a second jury.").

In assessing whether the *Kennedy* standard is met, "[t]he prosecution's intent is key." *Brown*, 994 F.3d at 153.  Here, when he was questioned about his conduct, the prosecutor made clear that his conduct was intentional and offered no good explanation for it.  As the Court observed, "the fact that [extradition is] on her resume doesn't justify asking the question." Tr. at 9680-81.  The absence of a justification begs the question why it was done, and here it can only be said that it was done deliberately and for an improper purpose.

Additionally, it is clear that the government's case has not gone according to plan: Yelland and his Restatement, which were the centerpiece of the government's case against Mr. Hussain, were correctly precluded, the government's witnesses were subjected to damaging cross-examinations, and the defense witnesses have effectively countered the government's evidence including by undermining the vast majority of Brice's biased and unpersuasive opinions.  Most telling of all, there has been scant evidence against Dr. Lynch on the alleged means and methods of the alleged fraud.

"[I]n determining whether the protection of the double jeopardy bar applies, the district court must examine the intent of the prosecutor." *United States v. Hagege*, 437 F.3d 943, 951 (9th Cir. 2006) (citation omitted).  "Inference or the existence or nonexistence of intent should be based upon the 'objective facts and circumstances.'"  *Id*. (citing *Kennedy*, 456 U.S. at 675).  Courts consider a variety of factors to assess prosecutorial intent.  Such factors include whether the prosecution objects to a motion for a mistrial, *see United States v. Rodriguez*, 229 F. App'x 547, 548 (9th Cir. 2007); whether the prosecution's case was going well at the time of the improper conduct, *see United States v. Lopez-Avila*, 678 F.3d 955, 962 (9th Cir. 2012); or whether the prosecution intentionally violated an evidentiary ruling, *see United States v. Singleterry*, 683 F.2d 122, 125 (5th Cir. 1982); *United States v. Williams*, 472 F.3d 81, 84 (3d Cir. 2007).

Here, the record supports a finding that the prosecution intended to goad Dr. Lynch into moving for a mistrial, and double jeopardy should attach on the granting of a mistrial motion.[2]

In the event the Court declines to grant a mistrial or an evidentiary hearing, the Court should impose alternative remedies.  Those remedies include the following:

(1) <u>The Court should strike all of the prosecutor's questions of Ms. Slack other than questions about the slides</u>.  Given the pervasive misconduct throughout the non-slide related portion of the cross-examination, this entire portion of the cross-examination should be stricken.  This is also the only remedy that will avoid further damage to Dr. Lynch from identifying individual questions about extradition, for example, and unduly highlighting those questions for the jury.

(2) <u>The Court should instruct the jury that the questions are being stricken because the questioning was improper</u>.  The jury needs to understand that the questioning was improper and that the attacks on Ms. Slack were irrelevant, prejudicial and unwarranted.  Absent such an admonishment, the jurors may speculate about why the questioning is being struck and the questions may linger in their minds.

(3) <u>The Court should instruct the jury that U.K. solicitors, like American attorneys, are officers of the court whose overriding duty is to the rule of law and the administration of justice</u>.  This instruction is necessary to countermand the entirely unfair and incorrect suggestion in the prosecutor's questions that Ms. Slack's duties and obligation begin and end with her duty of loyalty to Dr. Lynch, when her overriding duty is to the court, the rule of law, and the administration of justice.

Finally, the Court should admonish the prosecutor that a prosecutor "may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to

---

[2] To the extent there is any doubt, an evidentiary hearing is required to determine the extent of prosecutorial intent.  *See Rodriguez*, 229 F. App'x at 549 (remanding for an evidentiary hearing to determine whether the prosecutor's motivations satisfied the *Kennedy* standard). Dr. Lynch requests such a hearing.

1 | produce a wrongful conviction as it is to use every legitimate means to bring about a just one."
2 | *Berger v. United States*, 295 U.S. at 88.
3 |
4 | Dated: May 23, 2024  Respectfully submitted,
5 |
6 | By: /s/ Celeste L.M. Koeleveld
    Celeste L.M. Koeleveld

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-3437

Jonathan M. Baum (SBN: 303469)
**STEPTOE LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510) 735-4558

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**STEPTOE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900

*Attorneys for Defendant
Michael Richard Lynch*