Jonathan M. Baum (SBN: 303469)
**Steptoe LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558
jbaum@steptoe.com

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**Steptoe LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**Clifford Chance US LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 878-3437
christopher.morvillo@cliffordchance.com

*Attorneys for Defendant*
*Michael Richard Lynch*

Gary S. Lincenberg (SBN: 123058)
Ray S. Seilie (SBN:  277747)
Michael C. Landman (SBN:  343327)
**Bird, Marella, Rhow, Lincenberg,**
**Drooks & Nessim LLP**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067
Telephone:  (310) 201-2100
glincenberg@birdmarella.com

*Attorneys for Defendant*
*Stephen Keith Chamberlain*

# UNITED STATES DISTRICT COURT

## NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL RICHARD LYNCH and STEPHEN KEITH CHAMBERLAIN,<br><br>Defendants. | Case No.: 3:18-cr-00577-CRB<br><br>Judge: Hon. Charles Breyer<br><br>**DEFENDANTS' JOINT RESPONSE TO THE COURT'S DRAFT JURY INSTRUCTIONS (ECF NO. 524)**<br><br>Court:  Courtroom 6 – 17th Floor<br>Date Filed:  May 28, 2024<br>Trial Date:  March 18, 2024 |

1    Defendants Michael Richard Lynch and Stephen Keith Chamberlain jointly

2    submit the following objections, comments, and suggested revisions to certain of the

3    Court's proposed jury instructions (ECF No. 524).

4    Dr. Lynch and Mr. Chamberlain intend to preserve all of their objections to the

5    Court's instructions.  In other words, where the Court has not adopted language proposed

6    by the defendants in the parties' Joint Submission re Jury Instructions, ECF No. 355, filed

7    on February 16, 2024, the defendants do not mean to suggest by not repeating an earlier

8    request that they are withdrawing that request or consenting to the Court's proposed

9    instruction.

10

11   **6.5  Reasonable Doubt—Defined**

12   The defendants reiterate their request that the Court use the defense version of the

13   reasonable doubt instruction.  ECF No. 355 at 32 (Request No. 25).  The key phrase

14   which the defense requests is: "A reasonable doubt is a doubt based upon reason and

15   common sense—the kind of doubt that would make a reasonable person hesitate to act in

16   important situations.  Proof beyond a reasonable doubt must, therefore, be proof of such a

17   convincing character that a reasonable person would not hesitate to rely and act upon it in

18   the most important of his or her own affairs." *See* 2022 Model Instr. § 1.2 (modified);

19   Jury Instructions at 4, *United States v. Ficeto*, 2:13-cr-183, Dkt. 246 (C.D. Cal. Jul. 12,

20   2019); Kevin F. O'Malley et al., 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.).

21   The defendants request this language because it provides the jury with a long-

22   approved way of understanding reasonable doubt.  As part of the O'Malley instructions

23   (and the former Devitt & Blackmar instructions), this jury instruction language has been

24   read to juries in this circuit for many years and in many cases.  It is within the Court's

25   discretion to provide the jury with this additional language; the defendants request that

26   the Court do so.

27

28

1    **3.14 Opinion Evidence—Expert Witness**

2        The defense suggests the addition of the following language to this instruction

3    regarding the evidence introduced during the testimony of Steven Brice and Greig

4    Taylor:

5        During the course of Mr. Brice's testimony, you heard reference to documents or

6        witness statements that Mr. Brice relied on.  You may only consider these

7        documents or witness statements to the extent they are relevant to your

8        consideration of the bases of Mr. Brice's opinion testimony.  However, you may

9        not consider these documents or witness statements as substantive evidence against

10       the defendants.  As I have instructed you, in rendering a verdict, you must only

11       consider the testimony and evidence admitted during this trial.

12   *See* 2022 Model Instr. § 3.14, Comment ("Even in the absence of a request, it may be

13   plain error for the trial court to fail to give an instruction sufficient to explain to the jury

14   that the otherwise inadmissible evidence should not be considered for its truth but only to

15   assess the strength of the expert's opinions.").

16

17   **15.35  Wire Fraud**

18       Instead of listing each count individually, the defense suggests stating, "The

19   defendants are charged in Counts Two through Fifteen, etc." as in other instructions on

20   the wire fraud counts.  As to the elements of wire fraud:

21       A.       The defendants reiterate their objection to the inclusion of references to

22   "omitted facts" and "facts omitted."  An omission "can only support a fraud charge when

23   the defendant has a duty to disclose the omitted information." *United States v. Spanier*,

24   744 F. App'x 351, 355 (9th Cir. 2018).  A securities purchase does not carry a duty to

25   disclose unless there is "a relationship of trust and confidence" between the parties.

26   *Chiarella v. United States*, 445 U.S. 222, 230 (1980); *see, e.g.*, *In re Eros Int'l Secs.*

27   *Litig.*, No. 15-CV-8956 (AJN), 2017 WL 6405846, at *6 (S.D.N.Y. Sept. 22, 2017)

28   (concluding that defendants did not violate duty to disclose by reporting number of

1  "users" instead of separating users who could access core content from those who could

2  not), *aff'd* 735 F. App'x 15 (2d Cir. 2018); *Altayar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 178-

3  81 (E.D.N.Y. 2017) (holding that revenue figures were not misleading because they

4  failed to separate revenue from legitimate users from revenue from counterfeiters), *aff'd*

5  731 F. App'x 35 (2d Cir. 2018).  No such relationship existed here, and it would be

6  confusing to the jury to be instructed on inapplicable theories of guilt.

7       B.     The defendants object to the definition of "material facts" as facts that

8  have "a natural tendency to influence, or were capable influencing, a person to part with

9  money or property."  The Ninth Circuit in *United States v. Milheiser*, 98 F.4th 935, 938

10  (9th Cir. 2024), recently held that this exact instruction advanced an overbroad theory of

11  fraud to the jury and could not support a conviction of fraud.  Moreover, under the

12  current instruction, the jury could convict under a fraud-in-the-inducement theory if it

13  finds that certain statements had the tendency or capability to influence a person to part

14  with money or property.  Such a conclusion would contravene established Ninth Circuit

15  precedent that not all deceptions that induce a transaction constitute fraud.

16       As it stands, the draft definition of "material facts" is untenable following the

17  Ninth Circuit's holding in *Milheiser*.  In *Milheiser*, a mail fraud and conspiracy case, the

18  district court adopted the government's proposed instructed and instructed the jury that if

19  the defendants "had made a misrepresentation that would be expected to and did cause a

20  business to part with money, that constituted fraud."  98 F.4th at 938.  In its instruction on

21  the elements of mail fraud, the district court gave the exact same instruction that this

22  Court proposes to give regarding the materiality element:  "Second, the statements made

23  as part of the scheme were material; that is, they had a natural tendency to influence, or

24  were capable of influencing, a person to part with money or property."  *Id*. at 940.

25       The Ninth Circuit vacated the defendants' convictions because "the

26  [g]overnment's theory of fraud was overbroad because it did not require the jury to find

27  that Defendants deceived customers about the nature of the bargain," such as, for

28  example, "a good's price or quality."  *Id*.  Citing prior precedent and case law from the

1   Second, Eleventh, and D.C. Circuits, the Ninth Circuit concluded that "not just any lie

2   that secures a sale constitutes fraud, and that the lie must instead go to the nature of the

3   bargain." *Id*. at 944.

4         The *Milheiser* Court observed that this conclusion was in accordance with its

5   prior precedents that "the right to accurate information or to make an informed business

6   decision does not constitute something of value under the federal criminal fraud statutes,"

7   *id*. at 944 (citing *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021)), and that "deception

8   does not amount to fraud simply because it results in money changing hands," *id*. (citing

9   *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992)).  Moreover, the court

10  rejected the government's contention that a misrepresentation that "had a natural tendency

11  to influence, or was capable of influencing, a person to part with money or property"

12  could sustain a fraud conviction.  *Id*. at 945.  It similarly rejected the government's

13  attempts to advance an "even broader" theory of inducement under which "any kind of

14  false promise, statement, or representation can be material if it is made to induce action

15  or reliance by another or has a natural tendency to influence or is capable of influencing

16  another's decision."  *Id*. n.6.  Thus, the Ninth Circuit made clear that a jury instruction

17  defining material facts as those with a "tendency to influence . . . a person to part with

18  money or property" is overly broad and insufficient to sustain a conviction for fraud

19  because a jury thus instructed could convict under an erroneous theory of fraud-in-the-

20  inducement.

21        Accordingly, in light of the Ninth Circuit's recent rejection of this definition of

22  "material facts," the defendants object to its inclusion.

23        C.      The defendants request a definition of what it means to act "with the intent

24  to defraud, that is, the intent to deceive and cheat."  The definition should make clear that

25  it is not enough to induce a purported victim to part with money or property; the victim

26  must also be cheated, meaning that he must suffer a loss.

27        Ninth Circuit law is clear that not all deceptions that induce a transaction

28  constitute fraud.  Rather, to constitute fraud, the scheme must contemplate that the

1   putative victim will suffer a loss of money or property, because "wire fraud requires the

2   intent to deceive *and* cheat—in other words, to deprive the victim of money or property

3   by means of deception." *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020)

4   (emphasis in original); *see United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989)

5   (holding that fraud requires intent to deceive and take money from the same victim, not

6   separate victims).  On April 9, 2024, the Ninth Circuit affirmed that making "a

7   misrepresentation that would be expected to and did cause a business to part with money"

8   does not constitute fraud; rather, the victim business must be "deceived . . . about the

9   nature of the bargain."  *Milheiser*, 98 F.4th at 938.  In *Milheiser*, the defendants' sales

10  companies induced businesses to buy toner for printers by pretending to be a business's

11  regular toner supplier and by suggesting that the price for toner was increasing.  *Id*. at

12  938–39.  Although some purchasers testified that they would not have placed the order

13  with the defendants' sales companies "if they had realized they were not dealing with

14  their regular supplier"—indeed, many had contracts entitling them to reduced-price or

15  free toner through that supplier—or if they had "known the price of toner was not

16  increasing," there was "no evidence presented at trial suggesting that any businesses did

17  not receive the toner or that any of the toner had defects."  *Id*. at 939.  The government

18  argued that defendants were guilty of fraud because they made misrepresentations that

19  caused businesses to "part with money," and the defendants were convicted of mail fraud.

20  *Id*. at 940–41.

21       The Ninth Circuit reversed, making clear that "depriving an individual of accurate

22  information alone [does not] constitute[] fraud."  *Id*. at 942 (citing *Yates*, 16 F.4th at 263).

23  Rather, the scheme to defraud must not only "deceive" the victim into spending money,

24  but also deprive the victim of "something of value."  *Id.* (quoting *Shaw v. United States*,

25  580 U.S. 63, 72 (2016)).  Accordingly, "not just any lie that secures a sale constitutes

26  fraud, and . . . the lie must instead go to the nature of the bargain."  *Id.* at 944.  "The

27  nature of the bargain requirement properly excludes from liability cases in which a

28  defendant's misrepresentations about collateral matters may have led to the transaction

1  but the buyer still got the product that she expected at the price she expected." *Id.*  It is

2  therefore not enough that a misrepresentation have "a natural tendency to influence, or

3  [be] capable of influencing, a person to part with money or property." *Id.* at 945.  "[T]o

4  support a conviction for fraud, a false statement must directly or indirectly deceive the

5  victim about the nature of the bargain." *Id.*  Because the companies purchasing toner

6  from the defendants got what they paid for, they were not deceived *and* cheated, and the

7  defendants' convictions were overturned.

8      In determining that fraud-in-the-inducement is not fraud, the Ninth Circuit joined

9  several other circuits that have come to the same conclusion.  *Id.* at 944 (discussing

10  *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970), *United States v.*

11  *Takhalov*, 827 F.3d 1307 (11th Cir. 2016), and *United States v. Guertin*, 67 F.4th 445

12  (D.C. Cir. 2023)).  The common thread running through these cases is that the

13  defendants' lies induced the alleged victim into parting with money or property in an

14  exchange, but such fraudulent inducement alone was insufficient to support a fraud

15  conviction because the alleged victim received the essential benefit of the bargain.  Fraud

16  requires more than deceptive inducement—it requires intent to cheat through deception

17  about the "essential aspects of the transaction." *Id.*

18      Consistent with this case law, the charge to the jury must make clear that if the

19  putative victims here—purchasers of Autonomy shares and HP—received the essential

20  benefit of their bargain, they were not cheated and no fraud occurred.  The government

21  alleges, for example, that selling hardware sales at a loss artificially inflated Autonomy's

22  revenues, making Autonomy seem like a more attractive company.  Even if HP had been

23  deceived about Autonomy's revenue mix, however, HP still got what it bargained for

24  because Autonomy was *more* valuable without hardware sales.  Removing hardware sales

25  at a loss increases Autonomy's cash generation, net profits, and gross margins, and makes

26  clear that Autonomy's software—the magical product that drove HP's acquisition of

27  Autonomy—was even more valuable than HP thought.

28

1    Accordingly, the defendants propose a supplemental or alternative jury instruction

2  that would make clear that the misrepresentation must go to the nature of the bargain:

3        A scheme or plan for obtaining money by means of false statements requires

4        an intentional misrepresentation for the purpose of obtaining money to

5        which one is not entitled.

6        A misrepresentation amounting only to deceit is insufficient even if it causes

7        another person to enter into a transaction that they would otherwise avoid.

8        Rather, the misrepresentation must be coupled with a contemplated harm to

9        the person that affects the nature of the bargain itself.  The misrepresentation

10        must be capable of affecting the person's understanding of the bargain and

11        influencing their assessment of the value of the bargain.  When the person

12        receives what they paid for, however, there is no fraud even if the person

13        made the purchase because of the misrepresentation.

14  *See Milheiser*, 98 F.4th at 940.

15        D.      The defendants reiterate their request for a definition of material

16  misrepresentation that makes clear that, in the context of reporting requirements under

17  accounting rules, a statement cannot be false unless the statement is false under every

18  objectively reasonable interpretation of the applicable rule.

19        An Autonomy revenue report is not "false" merely because it is contrary to Steven

20  Brice's interpretation of complex IFRS rules.  *See In re GlenFed, Inc. Secs. Litig.*, 42

21  F.3d 1541, 1549 (9th Cir. 1994) (en banc) ("The fact that an allegedly fraudulent

22  statement and a later statement are different does not necessarily amount to an

23  explanation as to why the earlier statement was false.").  The IFRS contains "flexible

24  accounting concepts, which, when applied, do not always (or perhaps ever) yield a single

25  correct figure."  *Id.*  In order to allege the circumstances constituting fraud, the

26  government must prove that the difference between Autonomy's reporting and Brice's

27  opinion "is not merely the difference between two permissible judgments, but rather the

28  result of a falsehood."  *Id.*; *see also In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp.

3d 987, 1007 (N.D. Cal. 2016) (holding that to demonstrate financial statements regarding assets were false, "Plaintiffs must show that the accounting was a result of a 'falsehood' rather than the 'difference between two permissible judgments'").  In doing so, Autonomy's statement is only "a falsehood" if Brice's "interpretation is the only objectively reasonable interpretation and that, under this interpretation, the defendant's statement was false, or that the defendant's statement was false under each alternative, objectively reasonable interpretation; put another way, if the government cannot prove beyond a reasonable doubt that a defendant's statement was false under each objectively reasonable interpretation of an ambiguous reporting requirement, it cannot prove the element of falsity."  *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021).

**4.8  Knowingly—Defined**

The defendants reiterate their request that language that is bracketed in the model instruction, namely "[t]he government is not required to prove that the defendant knew that his acts or omissions were unlawful," be removed.  For the reasons stated in the Joint Submission, ECF No. 355 at 51 n. 3, that language is not applicable in a wire fraud case such as this one.  In one recent case in the Ninth Circuit, including the disputed sentence led to the granting of a new trial, a result the government did not appeal.  *See United States v. Smith*, No. 17-cr-20, 2022 WL 17729383, at *6 (D. Guam Dec. 16, 2022) (citing *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994)).  In short, where, as here, a scheme to defraud requires willfulness,[1] "[t]he instruction that '[t]he government is not

---

[1] Wire fraud charges require "specific intent to defraud," an inherently unlawful intent. Because specific intent to defraud is inherently synonymous with intent to violate the law, the Ninth Circuit has—for decades—repeatedly equated "knowingly" with "willfully" in the wire fraud context. *See, e.g.*, *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) ("[i]n order to sustain a conviction under the federal mail fraud statutes, it is not necessary that the defendant be the mastermind of the operation, but it is necessary to show willful participation in a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved."); *accord United States v.*

1    required to prove that the defendant knew that his acts or omissions were unlawful' [i]s

2    erroneous under *Bryan [v. United States*, 523 U.S 184, 199 (1998)]." *United States v.*

3    *Awad*, 551 F.3d 930, 939–41 (9th Cir. 2009).  The language should be removed.

4

5    **Wire Fraud—Good Faith**

6         The defense suggests the following edits to this proposed instruction:

7    •  At 24:2, change "The good faith of defendant" to "The good faith of a defendant"

8    •  At 24:19, change "whether the defendant acted in good faith" to "whether the

9        defendant failed to act in good faith"

10

11   **Wire Fraud—Hewlett Packard's Conduct**

12        The defense position remains that no instruction about HP's conduct should be

13   given.  With regard to the Court's proposed language, however, the defense requests that

14   the last sentence—which is confusing and suggests that HP was somehow impacted by

15   misstatements and omissions—be replaced with, "However, negligence on the part of HP

16   is not a defense to wire fraud."

17

18   **15.33  Scheme to Defraud—Vicarious Liability**

19        The defendants suggest replacing the proposed two-paragraph instruction with "If

20   you decide that the defendant was a member of a scheme to defraud, and that the

21   defendant had intent to defraud, the defendant may be responsible for wires sent by other

22

23   *Chandler*, 658 F. App'x 841, 846 (9th Cir. 2016); *United States v. Mikhaylov*, 209 F.
24   App'x 700, 701-02 (9th Cir. 2006); *United States v. A.G.E. Enters.*, 15 F. App'x 439, 443-
     44 (9th Cir. 2001); *United States v. Ciccone*, 219 F.3d 1078, 1084 (9th Cir. 2000); *United*
25   *States v. Collins*, 202 F.3d 279, at *2 (9th Cir. 1999); *United States v. Homick*, 964 F.2d
     899, 907-08 (9th Cir. 1992) (jury instruction); *United States v. Lothian*, 976 F.2d 1257,
26   1267 (9th Cir. 1992); *United States v. McCollum*, 802 F.2d 344, 347 (9th Cir. 1986) (jury
     instruction); *United States v. Price*, 623 F.2d 587, 591 (9th Cir. 1980); *Ward v. Pickett*,
27   No. 13-cv-1735, 2013 WL 5496549, at *6 (N.D. Cal. Oct. 3, 2013).

28

1   co-schemers if the co-schemers intended to defraud, sent the wires in furtherance of the

2   scheme, and their wires were reasonably foreseeable to the defendant as a necessary and

3   natural consequence of the scheme."   This proposed language is more concise, clearer,

4   and less likely to cause juror confusion.  The defendants continue to object to any

5   instruction on vicarious liability—it is not provided in the statutory text, and it violates

6   the principle of personal guilt.[2]  If the Court gives any instruction on vicarious liability, it

7   should give this instruction, which directs the jurors to the form of liability that can be

8   vicarious: the use of mails/wires.  The model language is confusing and implies that a

9   defendant could somehow be vicariously liable for the scheme to defraud element even

10  though that element is a prerequisite to vicarious liability attaching.  The case law

11  underlying the model instruction makes clear that vicarious liability is meant to cover the

12  use of mails or wires.  *See United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992) ("Like

13  co-conspirators, 'knowing participants in the scheme are legally liable' for their co-

14  schemers' use of the mails or wires."); *United States v. Dadanian*, 818 F.2d 1443 (9th Cir.

15  1987) ("It is well settled . . . that so long as one participant in a fraudulent scheme causes

16  a use of the mails in execution of the fraud, all other knowing participants in the scheme

17  are legally liable for that use of the mails.").  The defendants' proposed instruction makes

18  this clear in a concise, straight-forward manner that jurors will be able to understand.

19

20  **Respondeat Superior (No Respondeat Superior Liability)**

21         The defense suggests that this instruction should be entitled "No Respondeat

22  Superior Liability."  In addition, the defense reiterates its request that the Court provide

23  the jury with additional explanation of (1) how it should not infer from Dr. Lynch's

24  position as CEO of Autonomy that he engaged in or had knowledge of any alleged

25

26  [2] *Bridges v. Wixon*, 326 U.S. 135, 163 (1945) ("The doctrine of personal guilt is one of
    the most fundamental principles of our jurisprudence. It partakes of the very essence of
27  the concept of freedom and due process of law."); *Kotteakos v. United States*, 328 U.S.
    750, 772 (1946) ("Guilt with us remains individual and personal, even as respects
28  conspiracies. It is not a matter of mass application.").

1  conduct, and (2) how it is not enough for the government to prove that Dr. Lynch should

2  have known about any alleged conduct at Autonomy.  This additional explanation is

3  especially important because of the emphasis the government has placed during the trial

4  on the confirmation provided by Dr. Lynch in each year's Annual Report, on behalf of

5  Autonomy's Board of Directors, that "he has taken all reasonable steps that he ought to

6  have taken as a director in order to make himself aware of any relevant audit information

7  and to establish that the company's auditors are aware of that information."  *See, e.g.*,

8  Exh. 428 (2009 Annual Report).  While Dr. Lynch indeed took "all reasonable steps" as

9  CEO, the danger is that jury will hold him responsible for not doing more as CEO and

10  use that purported failing as a substitute for criminal liability.  Dr. Lynch accordingly

11  believes additional explanation is needed to make sure a conviction is not based on his

12  role as CEO and confirmations in Annual Reports and the like that have no bearing on the

13  allegations in this case.

14

15  **11.1  Conspiracy to Commit Wire Fraud**

16    A.  The defendants reiterate their request that the charge include as an

17  element, and not just as a passing reference in a paragraph explaining the elements, that

18  the defendant "agreed to engage in criminal activity willfully and with the specific intent

19  to defraud, that is, to deceive and cheat purchasers of Autonomy shares by means of

20  material false and fraudulent representations."  Conspiracy is a specific intent crime and

21  the defendant must act willfully in joining the conspiracy.  As it stands now, however, the

22  only reference to mens rea in the elements of the instruction is to "knowingly" in the

23  second element.  This is legally insufficient.

24    B.  The proposed charge refers to the defendant joining the conspiracy

25  "knowing at least one of its objects"; "a plan to commit at least one of the crimes of wire

26  fraud alleged in the indictment as an object of the conspiracy"; "intent to advance or

27  further some object or purpose of the conspiracy, even though the person does not have

28  full knowledge of all the details of the conspiracy," and "one who has no knowledge of a

1 conspiracy, but happens to act in a way which furthers some object or purpose of the

2 conspiracy."  The charged conspiracy has only one object, however, which is to commit

3 wire fraud.  Although it remains the defense position that the conspiracy in fact consists

4 of multiple conspiracies, that is because there are multiple victims, not multiple objects.

5 The only potentially valid object of the charged conspiracy is to commit wire fraud, and

6 any other agreed-upon purpose would not be a conspiracy under 18 U.S.C. § 371's

7 offense clause.

8        C.     It remains the defense position that an overt act is required under 18

9 U.S.C. § 1349.  *See United States v. Ball*, 711 F. App'x 838, 841 (9th Cir. 2017) (quoting

10 *United States v. Green*, 592 F.3d 1057, 1067 (9th Cir. 2010)) (18 U.S.C. § 1349

11 conspiracy requires overt act in furtherance of conspiracy).

12

13 **11.4  Conspiracy—Knowledge of and Association with Other Conspirators**

14      The defense objects to this instruction because it invites the jury to convict based

15 on mere association and knowledge and because the alleged conspiracy has only one

16 object: wire fraud.  The risk that the defendants will be convicted based on their role in

17 the company and their mere association with other alleged members of the conspiracy—

18 particularly with instructions about vicarious liability and *Pinkerton* liability also being

19 given—is simply too great.  There is no need to provide yet another instruction that

20 invites the jury to convict based on position and status.

21

22 **15.47  Securities Fraud**

23        A.     The defendants request that the first element incorporate the model

24 instruction's mens rea requirement.  The defendants suggest the following model-based

25

26

27

28

1  language: "First, the defendant used a fraudulent device or scheme intentionally and for

2  the wrongful purpose of defrauding or deceiving someone.[3]";

3  B.      The defendants request that the second element state that (1) there must be a

4  misrepresentation of material fact by the defendant, (2) the misrepresentation must be

5  "knowing[]," which the model instruction defines in relevant part to be "a statement or

6  representation that is untrue and known to the defendant to be untrue"; and (3) the

7  securities fraud definition of materiality.[4]  For the reasons stated *supra*, the instruction

8  should not address omissions.

9

10

11  [3] The model instruction uses "willfully," but defines "willfully" to require only intentional
falsity and wrongful purpose, not knowledge of illegality.  Because "willfully," as used in
the other charged counts, requires knowledge of illegality, the defendants propose using
Model Instruction § 15.47's "intentionally" and "for the wrongful purpose of defrauding
or deceiving" components to avoid juror confusion.  *Cf.* Gov't's Prop. Instr. No. 39,
*United States v. Khan*, No. 4:17-cr-295, Dkt. 128 (N.D. Cal. Jan. 15, 2019) ("Second, the
defendant participated in the scheme knowingly, willfully, and with the intent to
defraud").

[4] In order to prove a material misrepresentation as an element of securities fraud, the
government must establish beyond a reasonable doubt that the false statement was one
would have "significantly altered the 'total mix' of information" available to the investor
and that the investor would have considered to be "important."  *Basic Inc. v. Levinson*,
485 U.S. 224, 231–32 (1988) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438
(1976) (rejecting a lower standard as "too suggestive of mere possibility [being
sufficient]")); *see, e.g.*, Jury Charge Tr. at 24, *United States v. Milton*, No. 21-cr-478,
Dkt. 248 (S.D.N.Y. Oct. 14, 2022) ("[I]f you find a particular statement or representation
false you must determine whether that statement or representation was one that a
reasonable person would have considered important in making his or her decision.");
*United States v. Hatfield*, 795 F. Supp. 2d 219, 244–45 (E.D.N.Y. 2011) (holding that the
government failed to prove securities fraud because it failed to prove that the alleged
misstatement "would have been viewed by the reasonable investor as having significantly
altered the 'total mix' of information made available"); Jury Charge Tr. at 3955, 3971,
*United States v. Blaszczak*, No. 17-cr-357 Dkt. 331 (S.D.N.Y. Apr. 27, 2018)
("Information is material if a reasonable investor would have considered it important in
deciding whether to buy, sell, or hold securities and at what price to buy or sell the
securities. . . . Put another way, there must be a substantial likelihood that the fact would
have been viewed by a reasonable investor as having significantly altered the total mix of
information then available.") *see also SEC v. Stein*, 906 F.3d 823, 830 (9th Cir. 2018)
(holding that with an inapplicable exception, SEC's civil securities fraud claims
"require[d] proof of the same elements" as 18 U.S.C. § 1348).

1    The defendants therefore suggest the following language: "Second, the defendant

2  knowingly misrepresented a fact that was material to the investor.  In determining

3  whether a fact was knowingly misrepresented, I instruct you that the government must

4  prove beyond a reasonable doubt that the defendant made a statement or representation

5  that was untrue and known to the defendant to be untrue.  A statement is not "untrue" or

6  "false" merely because it contravenes one potential interpretation of the accounting rules

7  because the difference between two permissible interpretations is not a falsehood.  Only

8  where a statement contradicts all objectively reasonable interpretations would it be false.

9  In determining whether the fact is material, I instruct you that in this count, "material"

10  requires that the government prove beyond a reasonable doubt that the fact would have

11  been viewed by a reasonable investor as having significantly altered the total mix of

12  information then available, and requires that the government prove that the reasonable

13  investor would have concluded that this fact was important";

14  C.    The defendants request that the third element refer back to the intent to defraud

15  definition from wire fraud and incorporate the revisions requested to that instruction.

16  D.    The defendants request that the fourth element emphasize the need for the

17  defendant's actions or statements to be undertaken in connection with the sale of

18  securities (not just that the scheme has a connection), *see* Model Instr. § 15.47 (paragraph

19  beginning "Second"), and add the alleged date in order to avoid confusion given the

20  frequent purchase and sale of HP securities: "Fourth, the defendant's alleged actions were

21  undertaken in connection with the sale of Hewlett-Packard Company securities in August

22  2011."

23

24  **4.2  Willfully Causing**

25    The defense reiterates its proposed instruction, which includes the necessary mens

26  rea—knowingly, intentionally, and willfully.  Like aiding and abetting under 18 U.S.C.

27  § 2(a), "willfully causing" under § 2(b) requires that the defendant "acted with the

28  knowledge and intention of helping [another] commit the crime charged," the only

1   difference being that the person being helped is acting unwittingly.  In addition, the

2   defense instruction concludes with "caused an act to be done which if directly performed

3   by him or another would be an offense against the United States," which tracks the

4   language of the statute instead of referring, somewhat confusingly and incompletely, to

5   an "indispensable element of the offense."

Dated: May 28, 2024        Respectfully submitted,

By:  _/s/ Celeste L.M. Koeleveld__
Celeste L.M. Koeleveld

Christopher J. Morvillo
Celeste L.M. Koeleveld
Daniel S. Silver
(Admitted Pro Hac Vice)
**CLIFFORD CHANCE US LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 878-3437

Jonathan M. Baum (SBN: 303469)
**STEPTOE LLP**
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA  94105
Telephone:  (510) 735-4558

Reid H. Weingarten
Brian M. Heberlig
Michelle L. Levin
Nicholas P. Silverman
Drew C. Harris
(Admitted Pro Hac Vice)
**STEPTOE LLP**
1114 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 506-3900

*Attorneys for Defendant*
*Michael Richard Lynch*

By:  _/s/  Gary S. Lincenberg_____
Gary S. Lincenberg
Ray S. Seilie
Michael C. Landman
**BIRD, MARELLA, RHOW,**
**LINCENBERG, DROOKS & NESSIM LLP**

*Attorneys for Defendant*
*Stephen Keith Chamberlain*