PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROBERT S. LEACH (CABN 196191)
ADAM A. REEVES (NYBN 2363877)
KRISTINA N. GREEN (NYBN 5226204)
ZACHARY G.F. ABRAHAMSON (CABN 310951)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    Email:  Robert.Leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-577 CRB |
| Plaintiff, | UNITED STATES' STATEMENT IN RESPONSE TO THE COURT'S MAY 29, 2024 ORDER |
| v. | Trial Date:  March 18, 2024 |
| MICHAEL RICHARD LYNCH AND STEPHEN KEITH CHAMBERLAIN, | |
| Defendants. | |

The United States respectfully submits the following statement in response to the Court's May 29, 2024 Order Requesting Government Statement.

The government's fraud theory is that the defendants devised and intended to devise a scheme or artifice to defraud and for obtaining money or property by means of false or fraudulent pretenses, representations, and promises, specifically:

- False or fraudulent statements by Autonomy in its quarterly releases and annual reports for 2009, 2010, and 2011, PowerPoints, oral and written statements during the diligence process

(including data placed in the so-called data room), and other materials provided to HP about its historical revenue, gross profit, sales and marketing expenses, and organic growth.

- False or fraudulent statements by Autonomy in its quarterly releases and annual reports for 2009, 2010, and 2011, PowerPoints, oral and written statements during the diligence process (including data placed in the so-called data room), and other materials provided to HP about the nature and extent of its hardware sales.

- False or fraudulent statements by Autonomy in its quarterly releases and annual reports for 2009, 2010, and 2011, PowerPoints, oral and written statements during the diligence process (including data placed in the so-called data room), and other materials provided to HP about its "OEM revenue," which defendants emphasized and HP found particularly attractive.

- False or fraudulent statements by Autonomy in its quarterly releases and annual reports for 2009, 2010, and 2011, PowerPoints, oral and written statements during the diligence process (including data placed in the so-called data room), and other materials provided to HP to the effect that Autonomy was a pure software company.

For example, the government's theory is that Autonomy's 2009 annual revenue of approximately $740 million and 2010 annual revenue of approximately $870 million, its Q1 2011 quarterly revenue of approximately $219.8 million, and its Q2 2011 quarterly revenue of approximately $256.3 million were materially overstated. Autonomy's revenue figures were materially overstated because they wrongly included revenue from certain reseller transactions, hosting transactions, "linked" transactions, advanced royalty transactions, and valuation errors. The government's theory is that Autonomy's misstatements of its historical revenue, gross profit, sales and marketing expenses, and organic growth – whether due to reseller transactions, hosting transactions, "linked" transactions, advanced royalty transactions, or valuation errors – were fraudulent because they impacted the valuation of Autonomy, changed the composition of Autonomy as a company, and, if known, would have caused HP (or any reasonable person) to offer a lower price or not do the deal at all.

Further, the government's theory is that Autonomy's misstatements, half-truths, and concealment relating to the nature and extent of its hardware sales were fraudulent because they

1  impacted the valuation of Autonomy, changed the composition of Autonomy as a company, and, if
2  known, would have caused HP (or any reasonable person) to offer a lower price or not do the deal at
3  all.
4        The government further alleges that Autonomy's misstatements, half-truths, and concealment
5  relating its claimed "OEM revenue" were fraudulent because they impacted the valuation of
6  Autonomy, changed the composition of Autonomy as a company, and, if known, would have caused
7  HP (or any reasonable person) to offer a lower price or not do the deal at all.
8        Finally, the government further alleges that Autonomy's claims to be a pure software company
9  were fraudulent because they impacted the valuation of Autonomy, changed the composition of
10 Autonomy as a company, and, if known, would have caused HP (or any reasonable person) to offer a
11 lower price or not do the deal at all.
12       The government's theory is that each of the above categories of false and fraudulent
13 misrepresentations, either individually or collectively, go to the nature of the bargain – i.e., the price or
14 quality of the acquired assets, or otherwise to essential aspects of the transaction.
15       The government emphasizes that defendants and their co-conspirators made additional false
16 and misleading statements – for example, statements to analysts and auditors – that reflect on their
17 intent to defraud and the existence of a scheme to defraud.
18       Under *United States v. Milheiser*, the jury must find a false statement deceived the victim
19 "about the nature of the bargain."  98 4th 935, 938 (9th Cir. 2024).  That is, "a fraudulent
20 misrepresentation must go to the 'nature of the bargain,' such as a good's price or quality." *Id.* at 943.
21 *Milheiser* reversed a verdict where the uninstructed jury had evidence not necessarily touching on the
22 nature of the bargain – such as false statements about the size and success of companies selling the
23 commodity at issue. *Id.* at 944-45.  The defendants' false statements about Autonomy's historical
24 financial metrics, the nature of its sales, the extent to which OEMs had adopted its technology, and
25 whether it sold software, hardware, or something else inflated the value of Autonomy's stock and all
26 bear on the nature of the bargain with HP.  *Milheiser* imposes no obligation that the government prove
27 loss.  Rather, it limits actionable misrepresentations to those going to the "nature of the bargain" and
28 not collateral matters.  *Id.* at 944-45.  Indeed, *Milheiser* acknowledges, "[a] deception about the market

1  value of a commodity that was intended to cause the victim to pay an inflated price would go to the
2  nature of the bargain and therefore could be a basis for a fraud conviction." *Id.* at 945 n.7.

DATED: May 30, 2024                    Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

*Robert S. Leach*

ROBERT S. LEACH
ADAM A. REEVES
KRISTINA GREEN
ZACHARY G.F. ABRAHAMSON
Assistant United States Attorney