Volume 32

Pages 7895 - 8030

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
   vs.                           )   NO. 3:18-CR-00577-CRB
                                 )
MICHAEL RICHARD LYNCH and        )
STEPHEN KEITH CHAMBERLAIN,       )
                                 )
            Defendants.          )
_____  )


San Francisco, California
Thursday, May 9, 2024

<u>TRANSCRIPT OF PROCEEDINGS - ordered unsealed</u>


REPORTED BY:  Jennifer Coulthard, No. 14457, RMR, CRR, FCRR
              Official United States Court Reporter



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    (Recess taken at 12:57 p.m.)

21    (Proceedings resumed at 1:04 p.m.)

22    (Proceedings heard outside the presence of the jury:)

23        **THE COURT:**  Okay.  Let the record reflect the

24    courtroom -- in the courtroom now the jury has been excused.

25    These are sealed proceedings.  The public is not here.  The

1    only individuals in the courtroom are the parties, the

2    defendants, counsel on both sides.  The record should reflect

3    that after the -- at the conclusion of the recess, the Court

4    met with some of the counsel but without the defendants and

5    provided counsel with a copy of the transcript of the sealed

6    proceedings and advised the counsel at that time that they

7    should communicate the contents of the transcript to their

8    clients and that I would wait until 1:00 today to allow them to

9    formulate a position, if they were able to, as to what the next

10   steps should be.

11        So with that and the fact that the courtroom is sealed,

12   why don't I turn to the defense first --

13            MR. HEBERLIG:  Yes.

14            THE COURT:  -- because I think that --

15            MR. HEBERLIG:  Your Honor, thank you.

16            THE COURT:  -- you're implicated in this.  Yes.

17            MR. HEBERLIG:  Thank you for bringing the issue to our

18   attention.  This is what we would propose.  We obviously think

19   this is a very very serious issue.  We believe each of the

20   jurors needs to be individually voir died.  The defense lawyers

21   would like to be present, the three of us.  Our clients are

22   willing to waive their appearance for that voir dire process.

23   We take no position on the presence of the Government, don't

24   object to it, but we believe that it should take place -- well,

25   we can discuss logistics, but our concern is if the jurors are

```
 1   taken in one by one to have this inquiry and then come back to

 2   the jury room where they're all present, there will likely be

 3   some discussion about took place, so an alternative that we

 4   would suggest is they could be brought out to the box and one

 5   by one brought into chambers for this process and be told --

 6           THE COURT:  Well, we can certainly do that.

 7           MR. HEBERLIG:  -- something is happening.

 8       We also believe that juror --

 9           THE COURT:  Well, Lashanda points out which was my

10   intention anyway depending on the timing was to excuse them for

11   the day.

12       I guess what I'm concerned about is that --

13           MR. HEBERLIG:  Do you mean before or after the

14   inquiry?

15           THE COURT:  After the inquiry they're excused for the

16   day.

17           MR. HEBERLIG:  Oh.

18           THE COURT:  It's my intention, unless there's a strong

19   reason not --

20       I want to hear you out, so, I mean, do you have more to

21   say on how to do it?

22           MR. HEBERLIG:  The only --

23           THE COURT:  And I won't go into the questions yet.

24   

25   
```



 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17        **MR. REEVES:**  I think broadly we agree with -- I think

18   those are good suggestions that we would agree with, with some

19   refinements.  If the defendants choose not to be present, I

20   would like there to be a very clear record of that.

21        **THE COURT:**  Oh, yes.  There has to be.

22        **MR. HEBERLIG:**  That's fine.

23        **THE COURT:**  I think, I the defendants actually not

24   being present actually will promote candor.

25        **MR. HEBERLIG:**  That's our thinking.

1          **THE COURT:**  All right.  So Dr. Lynch and

2     Mr. Chamberlain, you understand, first of all, you have a right

3     to be present at every stage of the proceeding and the fact

4     that you would choose either to be present or not to be present

5     is not going to be considered by the Court at all for any

6     evidentiary purpose, but you understand that there will be

7     sealed proceedings.  There will be a transcript.  You will be

8     able to review the transcript but after the inquiry, should you

9     have had questions or wanted to discuss with counsel as to the

10    next -- maybe a further inquiry or so forth, you will have

11    given up that right because you won't be here contemporaneously

12    with the process as it goes forward.  You understand that?

13         And you also understand that in deciding what to do, you

14    obviously should talk to your lawyers and -- but the decision

15    is yours.  It's -- it's your own decision.  It can't be your

16    lawyer's decision as to whether or not you should appear.

17         So have you had -- I'll start with you, Dr. Lynch.  Have

18    you had an opportunity to discuss this with your lawyers?

19         **MR. LYNCH:**  Yes, I have.

20         **THE COURT:**  Are you satisfied that you've had enough

21    time to discuss the issue with your lawyers that you are

22    prepared to decide whether or not you want to be present during

23    the inquiry?

24         **MR. LYNCH:**  Yes, I have.

25         **THE COURT:**  Okay.  And what is your desire?

1          **MR. LYNCH:**  I will not be present during the inquiry.

2          **THE COURT:**  Sorry?

3          **MR. LYNCH:**  I will not be present during the inquiry.

4          **THE COURT:**  Not be present.

5      Okay.  Mr. Chamberlain, the same questions to you.

6      You understand you have a right to be present.  Have you

7  had an opportunity to discuss that issue with your lawyers?

8          **MR. CHAMBERLAIN:**  Yes, I have, Your Honor.

9          **THE COURT:**  And what is your decision in that regard?

10          **MR. CHAMBERLAIN:**  I will not be present also.

11          **THE COURT:**  Okay.  And you understand there will be a

12  copy of the proceedings, you will be able to review those

13  proceedings.  So the process I think we'll follow is --

14      Well, you know, we've got five minutes.  We've got as much

15  time as you need.  If you want to suggest some questions to

16  me -- I think it is not a good idea to have you individually

17  ask any questions.

18          **MR. REEVES:**  We agree with that.  That's the one

19  additional refinement I was going to ask.

20          **THE COURT:**  Yeah.  But as the questioning goes on, I

21  will ask a series of questions and if there's a specific

22  question that you want me to inquire into or a subject you want

23  me to inquire into, you should tell me in advance so I can fold

24  it in and it won't be apparent that --

25          **MR. LINCENBERG:**  Can we have five or ten minutes to

```
 1  consult on that?

 2          THE COURT:  Yeah.

 3          MR. REEVES:  I had two suggestions.

 4          THE COURT:  Well, what I might do -- what I might do

 5  is we might go -- 1:15, we have the witness coming back.  We

 6  might go -- I don't know how much longer you have with this

 7  particular --

 8          MR. LINCENBERG:  Your Honor, we're asking that this

 9  witness be excused and that we begin it immediately.

10          THE COURT:  Okay.  That's a request and --

11          MR. HEBERLIG:  If it's relevant I don't -- I don't --

12  if the Court's inclined to just go --

13          THE COURT:  Well, I still want to know -- I still want

14  an answer to my question.

15          MR. HEBERLIG:  If you're just planning to go another

16  hour and break I won't be done in another hour.  You know, if

17  we had had a full court day, I would like to be done by the end

18  of the day, but I don't think I'll be done by the breaking

19  point today.

20          THE COURT:  Okay.

21          MR. HEBERLIG:  And then there's redirect and --

22          THE COURT:  I don't think I should keep the jurors

23  longer --

24          MR. HEBERLIG:  No.

25          THE COURT:  -- than --
```

```
 1              MR. HEBERLIG:  That's why we propose doing it now.

 2              THE COURT:  -- than 4:00.

 3              MR. HEBERLIG:  Right.

 4              THE COURT:  I don't know that the inquiry will take

 5     very long.  I anticipate the inquiry will take about a half an

 6     hour.

 7              MR. MORVILLO:  To get through all 14 jurors?

 8              THE COURT:  Pardon me?

 9              MR. MORVILLO:  To get through all 15 jurors?

10              THE COURT:  Yes, I'm going to do all 15.

11              MR. MORVILLO:  Yeah.  That's 2 minutes a juror.  I

12     think it may take longer than that with all due respect to the

13     decision of your questions.

14              THE COURT:  You said how long?

15              MR. MORVILLO:  I mean more than 2 minutes per juror I

16     think is --

17              THE COURT:  Probably four minutes a juror.

18              MR. MORVILLO:  Well, that would be an hour.

19         I've stopped doing math in public so --

20              THE COURT:  I should stop altogether, public or

21     private.

22              MR. LINCENBERG:  I think --

23              THE COURT:  Well, okay.  Then what's the view of the

24     Government whether I ought to start this process sooner rather

25     than later?
```

1          **MR. REEVES:**  I think with reluctance we take no

2   position and we'll defer to the defense request on that.

3          **THE COURT:**  Okay.  So I think I will do it right away

4   then.

5          **MR. LINCENBERG:**  The only other thing I was going to

6   add to the suggested procedures is if we question the juror in

7   chambers and the jurors are sitting here, we need to think

8   about whether our clients remain in the courtroom.  Doesn't

9   seem to make sense to have our clients sitting with the jurors

10  as they're being marched out.

11         **THE COURT:**  No, no.  Let me just think about the

12  logistics for a minute.

13         **THE CLERK:**  They would be in here one juror at a time

14  and then when they're done I will escort them out, bring in the

15  next juror.

16         **THE COURT:**  Why can't I do it that way?

17         **THE CLERK:**  So that way there's no -- so I would bring

18  one juror in, the questions would happen.  When they're done,

19  I'll make sure that they are escorted out for the day.

20         **THE COURT:**  And they're excused for the day.

21         **MR. MORVILLO:**  We agree.

22         **THE CLERK:**  They're excused for the day and then bring

23  the next juror in.

24         **THE COURT:**  And I'll excuse them, but I'll also give

25  them some cautionary instructions.

 1          **MR. MORVILLO:**  So we'll do the inquiries in here?

 2          **THE COURT:**  Yes.  I think that's better.

 3          **MR. LINCENBERG:**  Okay.

 4          **MR. MORVILLO:**  That's fine with us.

 5          **THE COURT:**  I think it's better to put some distance.

 6  It makes their -- that room is so confining and sort of like a

 7  star chamber proceeding.  It's not perfect.

 8          **MR. REEVES:**  I did have two --

 9          **THE COURT:**  Yes.

10          **MR. REEVES:**  -- suggestions around questions, Your

11  Honor.

12          **THE COURT:**  Go right ahead.

13          **MR. REEVES:**  My very, very preliminary, early legal

14  read is that it's possible to rehabilitate, if that's the

15  appropriate word, jurors with regard to keeping an open mind so

16  long as they can still receive evidence, haven't come to a

17  conclusion, questions that are really about their ability to

18  continue to keep an open mind even if they've thought about it,

19  maybe expressed some view about the evidence.  It's the ability

20  to continue to receive and keep an open mind that I think is

21  especially relevant, as I understand it.

22      And the second suggestion is, I think the greater hazard

23  than some juror chatter or discussion, words used by the case

24  law as I understand it, the greater problem is extraneous

25  evidence, any phone searches and Internet.  That is an area I

1  think of important inquiry by the Court and that's --

2          THE COURT:  And how do you want me to pursue that?

3          MR. HEBERLIG:  My --

4          THE COURT:  I think that -- I think both of these

5  things are right, and so what is the -- what is the defense

6  view of how I should inquire into any extraneous evidence?

7          MR. HEBERLIG:  On that issue I think you could remind

8  the juror, as I tell you every day, you're not, you know,

9  permitted to consider evidence that -- whatever the Court's

10  normal instruction is.

11          THE COURT:  But that's not my question.

12          MR. HEBERLIG:  No, no, but --

13          THE COURT:  My question is what do you want me to --

14  how -- what questions, if any, you want me to ask them about

15  the receipt of extraneous information.

16          MR. HEBERLIG:  That's what I was about to get to.

17          THE COURT:  Sorry.

18          MR. HEBERLIG:  The way to tee up that issue -- you

19  decide however you want to tee it up -- I think the questions

20  are have you individually received any extraneous information

21  about this case from the Internet or other sources that do not

22  include evidence that's been presented in this courtroom,

23  that's number one.

24      And number two, are you aware of any other jurors, from

25  your observations in the jury room, who you believe have done

 1   the same, either through observation, discussion or the like,

 2   ███████████████████████████████████████████████████████

 3               THE COURT:  Yes.

 4               MR. HEBERLIG:  And the other thing I would say --

 5               THE COURT:  And then if they say yes --

 6               MR. HEBERLIG:  Yes.

 7               THE COURT:  -- do you want me to inquire further as to

 8   what they --

 9               MR. HEBERLIG:  Yes.

10               THE COURT:  -- what they have learned?

11               MR. HEBERLIG:  What they've learned because they're

12   going to be here alone, so I think it's appropriate to say what

13   is it -- what have you accessed, what have you learned, you

14   know.  You run a Google search of these names, you know what

15   comes up pretty quickly.

16               MR. LINCENBERG:  And I think it's broader than just

17   about the case.  Given what we heard -- given what we heard, I

18   think it should also even be about the attorneys, given that

19   that came up in the Court's inquiry this morning.  We might as

20   well know if they're searching about attorneys, not just

21   evidence in the case.

22        And I don't think that the Court should follow Mr. Reeves'

23   suggestion -- the effort here shouldn't be about rehabilitating

24   or not rehabilitating jurors to see whether they can still be

25   fair.  I think right now we should -- we should be encouraging

1    these jurors to be open and not be in a position where, you

2    know, I've told you not to do this, have you done it, because

3    that puts them on the defensive about wanting to be open.  I

4    think it should be an open inquiry without --

5             THE COURT:  Well, but first -- I think it should be an

6    open inquiry, I agree with that.  I think what Mr. Reeves is

7    saying, as I understand it, is what was said in the -- in *U.S.*

8    *v. Klee*, which is a Ninth Circuit case, *U.S. v. Chow*, which is

9    a Ninth Circuit case dealing with these issues.

10        And what their -- what their point is, as I understand

11   it -- and by the way, that's the subject of perhaps briefing

12   and argument, but my understanding of the law is that because

13   jurors have talked about such things as "I think X is guilty,"

14   is not, in and of itself, a justification for excuse -- that

15   that juror is excused.

16        The issue is whether or not, notwithstanding their view at

17   the present time or their view as they expressed, now can

18   they -- in fairness, can they listen to all the evidence --

19   when I say the remaining evidence, the instructions on the law

20   and the views of their fellow jurors in coming to a conclusion

21   which conclusion may be, in their opinion, different from the

22   view that they presently hold or view that they have expressed.

23   Can they promise the Court that they have that.  Now, that's

24   what I would say to them in the inquiry.

25        You may argue that's not sufficient, that X or Y should be

excused or any number of things.

I'm not bounding -- I'm not trying to get an agreement here.  I'm just simply saying that's my understanding of the law, which I believe is consistent with the Government's understanding, and I want to make sure before they all walk out of here that they have answered that question because if they haven't, then I think my inquiry is -- is inadequate.

MR. REEVES:  We completely agree, Your Honor, and I completely agree with counsel that we invite an open -- open-ended inquiry into these areas and precisely as the Court observed, my remarks really were about the ability of jurors to keep an open mind and continue to serve.

THE COURT:  And I think I have to be -- I mean, maybe you won't particularly like it, but I think I have to, after questioning the juror, I think I do have to turn to counsel and if you want to give me a written -- you want -- and ask should I ask any further questions.  Now --

MR. MORVILLO:  We agree with that.  We can just do that at sidebar.

THE COURT:  Yeah, okay.  Then you do it at sidebar. It doesn't have to be in writing.

What I'll typically do is say, "I'd like to see counsel at sidebar."  I won't indicate that there are further questions or anything and we'll turn on the white noise so that the juror can't hear.

```
 1              MR. MORVILLO:  I do think, Your Honor, with respect to

 2   Jurors No. 2 and No. 7, there may be need for a more searching

 3   set of questions based on what we understand.

 4              THE COURT:  I agree with that and I also think that

 5   it's important that the juror have an understanding that I

 6   am -- though I don't think I have to identify for all the

 7   jurors, I think I certainly can for 2 and 7 saying that we have

 8   received information that is that you have expressed some views

 9   in connection with the case.

10   ██████████████████    ████████████████████████████████

11   ████████████████  ████████████

12   ████████████████████  ███████████████████████████████████████

13   █████████████████

14       █████████████████  ███████████████████████

15       █████████████████  ██████████

16              THE COURT:  And so let's talk about this for a minute,

17   because maybe you think I shouldn't do this.

18        I was going to say to No. 2 and to No. 7 -- I was going to

19   say generically to the group:  We've received information

20   there's been some discussion of the evidence and there also may

21   have been some inquiry on the Internet or some, you know,

22   telephone or whatever it is, access to information that's

23   extraneous, not been presented, but it does involve the issues

24   that are being litigated -- it involves the attorneys and

25   the -- the attorneys and the evidence; have you engaged in
```

1    that?  Are you aware of that?  I mean, have you engaged in it

2    and are you aware of any other jurors having done that.  So I

3    certainly will do that.

4        As to 2 and 7 I thought I should be more specific and say,

5    you know, we have received information.  And maybe that's not a

6    good idea maybe because that gives away --

7            MR. MORVILLO:  Well, Your Honor --

8            THE COURT:  It may very well give it away.

9        What do you want me to do, Mr. Morvillo?

10           MR. MORVILLO:  So our concern is that, first of all,

11   Juror No. 7 has invited his wife to come watch the proceedings,

12   so it's clear that they have had a discussion -- he has had a

13   discussion with someone.

14           THE COURT:  Yes, I understand that.

15           MR. MORVILLO:  And so I think we should inquire as to

16   what discussions he's had, first of all.

17       Second of all, both of them have expressed a view that a

18   plea deal should be struck here and that these witness -- the

19   defendants are guilty, and █████████████████████████

20   ███████████████████

21       And so I think inquiry around their -- not just their

22   ability to remain fair and impartial but the fact that they

23   have expressed a view or whether they have expressed such a

24   view is important.

25           THE COURT:  Well, so you think I should -- I should

```
 1   disclose to those jurors that I have information that they have

 2   expressed a view?

 3           MR. REEVES:  I have a suggestion, Your Honor.  I --

 4   perhaps thinking like a prosecutor --

 5           THE COURT:  Sorry?

 6           MR. REEVES:  I have a suggestion, perhaps thinking

 7   like a prosecutor, I would begin with the open question with

 8   No. 2 and No. 7.

 9           MR. LINCENBERG:  Agree.

10           MR. REEVES:  And if it does not disclose information

11   ██████████████████████████████████the Court should

12   definitely inquire further and sort of have the latitude to

13   press for detail.

14           THE COURT:  Okay?

15           MR. HEBERLIG:  Yeah.  Agreed.

16           THE COURT:  Everybody is in agreement with that

17   approach?

18           MR. LINCENBERG:  Yes.

19           MR. HEBERLIG:  Yes.

20           MR. MORVILLO:  We are.

21           THE COURT:  Okay.

22           MR. HEBERLIG:  What do you plan to tell them right now

23   when they come out?  I assume you're going to send them back

24   and bring them out one at a time but --

25           THE COURT:  I'm going to tell them the general inquiry
```

1  and then I'm going to tell them the process that we're going to

2  use is each juror will come out, I need to inquire into it.

3      I think I'd also point out that the defendants will not be

4  present during the inquiry so they don't think something weird

5  has happened.

6          MR. HEBERLIG:  My concern about that is if you do that

7  and then send them back in the jury room --

8          THE COURT:  I'm not going to send them back.

9          MR. HEBERLIG:  Oh.  I thought we were going to do it

10  in here.

11          THE COURT:  Well, I mean I'm going to say it generally

12  here to all of them.

13          MR. HEBERLIG:  Okay.

14          THE COURT:  Don't you think?  I mean, we will also, so

15  it's not a mystery -- I don't bring them all out?  I bring them

16  one at a time?

17  ██████████████    ██████████████████████████████

18  ██████████████    ████████████████████████████

19  ████████████████████████████████████████████

20  ██████████████████████████████

21  ██████████████    ██████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████

25          MR. HEBERLIG:  I think that's better.

```
 1              THE COURT:  I'll bring them in one at a time.

 2              MR. HEBERLIG:  I think that's better.

 3              THE COURT:  Okay.  I'm bringing out No. 1.

 4              MR. LINCENBERG:  I don't know if they leave their

 5    personal belongings.

 6              THE COURT:  I'm sorry?

 7              THE CLERK:  I'll bring it out.

 8              THE COURT:  You have to use the microphone.  I'm half

 9    deaf.

10              MR. LINCENBERG:  You'll bring it out?

11              THE CLERK:  Yes.

12              MR. LINCENBERG:  Okay.  Good.  We settled it with

13    Ms. Scott.

14              THE COURT:  Yeah.  It's whatever -- however Ms. Scott

15    wants this court to proceed, this Court will proceed according

16    to what Ms. Scott says.

17              MR. HEBERLIG:  We fully agree with that.

18              THE COURT:  Okay.  Let the record reflect --

19              MR. MORVILLO:  Your Honor, can we have 5 minutes?

20              THE COURT:  What?

21              MR. MORVILLO:  Can we have 5 minutes to confer?

22              THE COURT:  Yeah.  We're going to take 5 minutes.

23    Thank you.

24              MR. MORVILLO:  Thank you.  We won't keep you waiting.

25              THE COURT:  What?
```

```
 1            MR. MORVILLO:  We will not keep you waiting, Judge.
 2       (Recess taken at 1:26 p.m.)
 3       (Proceedings resumed at 1:33 p.m.)
 4            THE COURT:  All right.  Let the good times roll.
 5            MR. MORVILLO:  Your Honor, I noticed the witness
 6       standing out in the hall.
 7            THE COURT:  What witness is that?
 8            MR. MORVILLO:  Mr. Johnson is still out there.
 9            MR. REEVES:  We'll take care of it.
10            MR. ABRAHAMSON:  We've informed Mr. Johnson that he's
11       proceeding either --
12            MR. REEVES:  We've asked Mr. Johnson to go home.
13            THE COURT:  Pardon?
14            MR. REEVES:  We've asked the witness to go home.
15            THE COURT:  Go home where?
16            MR. REEVES:  Well, he lives in the Bay Area --
17            THE COURT:  Oh, yeah.
18            MR. REEVES:  -- and he's not going to testify today.
19            THE COURT:  Well, one thing is we don't have to come
20       up with an estimate of how long the case is going to last.
21       It's a good thing.  You always have to look for the silver
22       lining.
23            MR. LINCENBERG:  It seems so insignificant now.
24            THE COURT:  There's always some silver lining.
25       (Juror No. 1 enters courtroom.)
```

1    THE COURT:  Good afternoon, Ms. Pask.

2    JUROR NO. 1:  Good afternoon.

3    THE COURT:  Everyone may be seated.

4    As you will note, the counsels are present, the defendants

5    have been excused.

6    ███████████████████████████████████████████

7    ███████████████████████████████████████████████

8    ███████████████████████████████████████████████

9    █████████████████

10   ██████████████████████████████████████

11   ███████████████████████████████████████████████

12   ███████████████████████████████████

13   ██████████████  ████████

14   ███████████  █████████████████████████████

15   ████████████████████████████████████████████

16   ██████████████  ████████

17   ███████████  ██████████████████████████

18   ██████████████████████████████████████████████

19   ████

20   JUROR NO. 1:  Yes.  Just now as we were walking down

21   the hallway, Juror No. 7 and No. 2, it's Fred and Claire, Fred

22   said, "Oh, that's it, they settled.  Three years, this much

23   money.  I mean, they're just -- it's down the hallway just now

24   as we were walking through, and it just got me shaking, you

25   know, because, I mean, they said it in front of more people so

1    maybe more people were hearing just then but it was as we were

2    just walking down the hallway just now, so --

3            **THE COURT:**  Okay.  Thank you very much.  I understand

4    that.

5        So I have some general questions to ask you.  I -- okay.

6    First ███████████████████████████████████████████

7    ███████████████████████████████-- have you, yourself,

8    expressed any views as to the guilt or innocence of the

9    defendant?

10           **JUROR NO. 1:**  I have not.

11           **THE COURT:**  Have you done any research on the Internet

12   using your telephone or any computers with respect to this

13   case?

14           **JUROR NO. 1:**  Not at all whatsoever.

15           **THE COURT:**  Okay.  I want to determine whether or not

16   you can continue with this process in a fair way.  And I'm not

17   suggesting you haven't been fair, but now, in light of these

18   events, are you -- can you promise the Court that you will be

19   able to render a fair verdict in this case?

20           **JUROR NO. 1:**  Yes, I do.

21           **THE COURT:**  And did you -- can you promise the Court

22   that if subsequent evidence or the law or the views of your

23   fellow jurors convince you that whatever thoughts you may have

24   as to the guilt or innocence of the defendant, you can change

25   those views if, in fact, you hear evidence, the law or the

1  views of your fellow jurors that convince you, you should do

2  so?  Are you able to do that?

3       **JUROR NO. 1:**  Of the law and evidence, yes.

4  Absolutely.

5       **THE COURT:**  Yeah.

6    Can you promise not to discuss this case and any aspect of

7  this case with anyone until the case is submitted to you for

8  jury deliberations?

9       **JUROR NO. 1:**  As I have been doing, I will continue,

10  yes.

11       **THE COURT:**  And I assume you can promise the case that

12  you will not do any -- promise the Court that you will not do

13  any research or communicate with anybody, directly or

14  indirectly, about this case; is that correct?

15       **JUROR NO. 1:**  Correct.

16       **THE COURT:**  Okay.  Can I see counsel at sidebar?

17      (The following proceedings were heard at the sidebar:)

18  ███████████  ████████████████

19  ███████████████  ███████████████████

20  █████████████████████████████████████

21  ██████████████████████████████████████████

22  ██████████

23  ████████████  ███████████████████████████████

24  ███████████████████

25  ████████████  ██████████████████████

**SIDEBAR**

SEALED PROCEEDINGS



20    (Sidebar concluded.)

21         THE COURT: I just want to make sure, maybe it's

22    obvious, but you're aware that all the other jurors are going

23    to be asked the same questions that you're being asked.  In

24    other words you're out here now, you're juror No. 1, but we're

25    going to go through 15 people.

1         **THE WITNESS:**  Yeah, I do understand.

2         **THE COURT:**  Okay.  So you're not singled out.

3     Second question.  You obviously have some views as to

4  Jurors No. 2 and 7.  If they remain on the jury and along with

5  your other people, will you be able to -- what is it? -- I mean

6  sort of treat them equally with the other jurors in terms of

7  whatever their views are, that is, not hold it against them

8  that they have already expressed some views.

9         **JUROR NO. 1:**  Yeah.

10        **THE COURT:**  That's the question.

11        **JUROR NO. 1:**  I'm totally fine with them.  We're

12  cordial and I talk with them a lot, you know, when it's regular

13  subjects, not -- you know, I try to change the subject actually

14  for the most part.

15        **THE COURT:**  You do?

16        **JUROR NO. 1:**  But it wasn't working.

17        **THE COURT:**  Seems what you do is just simply follow

18  the Court's instructions.

19        **JUROR NO. 1:**  Yeah.

20        **THE COURT:**  Okay.  Are you aware of any other jurors,

21  in addition to 2 and 7, who have engaged in any form of this

22  type of conduct, that is, either expressed views, done

23  research; are there any others?

24        **JUROR NO. 1:**  Not -- not that I'm really aware of,

25  just they're directly always in the hallway with me and they're

**SEALED PROCEEDINGS**

1    very, you know, boisterous about the whole situation and --

2         **THE COURT:** Uh-huh.

3         **JUROR NO. 1:** I mean, I know Claire -- like she talks

4    a lot with others, but I don't know if she's expressing I

5    believe at that moment, so --

6         **THE COURT:** Okay.

7         **JUROR NO. 1:** Yeah.

8         **THE COURT:** And is there -- let's see.  The incident

9    that you saw this afternoon where they -- where Juror No. 7

10   said I feel they've settled or words to that effect.  Who else

11   heard that, to your knowledge?

12       Where did it take place?

13        **JUROR NO. 1:** It was right in the hallway as we were

14   walking through, so it would have been Nestor.  Nestor, No. 6

15   would have heard; Liam and No. 3, he would have heard.

16   ████████████████████████████████████

17   ██████████████████████████████████████

18   ██████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21       ████████████   ██████

22       ██████████████   ████████████████

23        **THE COURT:** Okay.  Finally -- well, I think it's

24   finally.  Finally, I would ask you not to discuss this whole

25   incident with your fellow jurors going forward.  Okay?

1     **JUROR NO. 1:**  For sure, yeah.

2         **THE COURT:**  Okay.  We're just going to deal with it as

3    the incident and not invite comment or set it up for a

4    discussion next week or whenever, okay?

5         **JUROR NO. 1:**  I understand.

6         **THE COURT:**  Okay.  So thank you very much.  You're

7    going to go out that way --

8         **JUROR NO. 1:**  Okay.

9         **THE COURT:**  -- so you don't have to deal with anybody

10   in there and we'll bring in Juror No. 2.

11        **JUROR NO. 1:**  Okay.  Thank you.

12        **THE COURT:**  And I'll see you Monday.

13       (Juror No. 1 exits courtroom.)

14        **JUROR NO. 1:**  Okay.  Lincenberg.

15        **THE COURT:**  Mr. Lincenberg?

16        **MR. LINCENBERG:**  For the record, I think Nestor is

17   Juror No. 8.

18        **THE COURT:**  Pardon?

19        **MR. LINCENBERG:**  She mentioned Nestor as Juror No. 6.

20   For the record, I think Nestor is Juror No. 8.

21        **THE COURT:**  Okay.  Thank you.

22       (Juror No. 2 enters courtroom.)

23        **THE COURT:**  Hi.  Please be seated and -- may I have

24   your name, please.

25        **JUROR NO. 2:**  Claire Deem.

1      **THE COURT:**  You have to hold the microphone.

2      **JUROR NO. 2:**  Claire Deem.

3      **THE COURT:**  Right.  Good afternoon.  We are going --

4  and I'll explain why in a minute, but we are going to question

5  each juror individually about some information that we have

6  received.

7      We have received information that that there has been some

8  discussion about this case in which some individuals have

9  expressed some opinion on the merits of this case, the outcome

10 of the case or some of the evidence in the case.  Are you aware

11 of that?

12     **JUROR NO. 2:**  No, I'm not.

13     **THE COURT:**  Okay.  We've also received information

14 that there has been some research into this case or an inquiry

15 into this case about the case or about any persons connected

16 with this case, including counsel or individuals who are not

17 present but who have been mentioned in the evidence in this

18 case.

19     Are you aware of any research or inquiry?

20     **JUROR NO. 2:**  No, I'm not.  I mean, I have taken home,

21 in my head, words.

22     **THE COURT:**  You have to speak in the microphone.

23     **JUROR NO. 2:**  Oh.  I've heard words and acronyms that

24 I've actually -- I've gone home and looked up, but that's all

25 I've done.

```
 1              THE COURT:  Okay.  But in terms of any individuals?

 2              JUROR NO. 2:  No.

 3              THE COURT:  Okay.  And that would include the

 4    attorneys?

 5              JUROR NO. 2:  Correct.

 6              THE COURT:  I see.  Okay.  I'd like to see counsel at

 7    sidebar for a moment and you can just --

 8          (The following proceedings were heard at the sidebar:)

 9              THE COURT:  I guess somebody is not telling the truth.

10              MR. HEBERLIG:  I think we've come to that conclusion.

11              THE COURT:  Yeah.  They say judges are very good at

12    figuring out who's telling the truth.  They're the worst.  I

13    want you to just know that.

14              ███████████████████   ████████████████████████████

15    ████████████████████████████████████████████████████████

16    ██████████████████

17              THE COURT:  Okay.  What do you want me to do?

18              MR. LINCENBERG:  Well, first --

19              THE COURT:  I mean, I can confront her with it and I

20    think that, in fairness, I should --

21              MR. HEBERLIG:  Yes.

22              THE COURT:  -- to her and to --

23              MR. LINCENBERG:  I think also even with regard to what

24    she's looking up at home.

25              MR. HEBERLIG:  The IFRS?
```

```
 1            THE COURT:  Well, we'll argue -- slow down.  We'll get
 2    to the significance of anything she says.
 3            MR. LINCENBERG:  I'm just saying to flesh it out, what
 4    she's looking up.
 5            THE COURT:  Oh, good idea.
 6            MR. HEBERLIG:  She acknowledged that she's looking
 7    things up.
 8            THE COURT:  Yeah, yeah.
 9
10
11
12            THE COURT:  Okay.  All right.  Okay.  I think I know
13    that.
14            MR. REEVES:  I agree that the Court should press into
15    this.  I think in fairness to her she said -- the question was
16    about the evidence or the merits, so, yeah, let's confront her
17    with the other questions about this.
18            THE COURT:  All right.
19        (Sidebar concluded.)
20            THE COURT:  Okay.  Ms. Deem, thank you.
21        I should tell you that we have received some information
22    that actually you have expressed some opinions in connection
23    with this case and that you have used your phone to access the
24    Internet in connection with some of the individuals who are
25    connected with this.  So let me just start one at a time.
```

1          **JUROR NO. 2:**  Okay.

2          **THE COURT:**  Let me go to the first point.

3          **JUROR NO. 2:**  Okay.

4          **THE COURT:**  And let me remind you, this is a serious

5     inquiry --

6          **JUROR NO. 2:**  Oh, no, I understand.

7          **THE COURT:**  -- and has far ranging implications, so I

8     do need to make sure that my question is clear to you --

9          **JUROR NO. 2:**  Okay.

10         **THE COURT:**  -- so that you understand it.

11     So if you don't understand or there's some ambiguity,

12     please just tell me -- okay? -- and I'll rephrase the question

13     or try to resolve the ambiguity.

14     But, again, our information is that you have expressed a

15     view as to this case, some of the individuals involved in this

16     case or the outcome or potential outcomes of this case and you

17     have expressed it in connection with conversations that you've

18     had with another juror.

19     Now, given that, is that -- is that information that we

20     have accurate or inaccurate?

21         **JUROR NO. 2:**  You know, I think it's -- I have never

22     intentionally or that I can remember actually said that I

23     thought the case was going to end up A or B.

24         **THE COURT:**  Pardon me?

25         **JUROR NO. 2:**  I have never expressed that I thought

 1   the outcome was going to be this or that.

 2       I have never looked up anybody in this room on my phone

 3   ever.  Like I said, all I've done is like I -- I looked up what

 4   GAAP meant.  I looked up what GAAP meant and I went home and I

 5   looked up what IFRS meant.

 6       We all talk.  None of us talk about the case.  We don't.

 7   We don't say, "Oh, I think this is going to happen or that's

 8   going to happen."

 9           THE COURT:  Well, have you expressed a view that you

10   believe the defendant to be guilty?

11           JUROR NO. 2:  No.  I've never said that.  I have never

12   said that.  We haven't heard -- we haven't finished hearing all

13   the witnesses.  We haven't even gotten to the defense

14   witnesses.

15           THE COURT:  You said that you have used -- you have

16   looked up acronyms or certain information.  Could you tell us

17   what you have looked up?

18           JUROR NO. 2:  I looked up GAAP.

19           THE COURT:  GAAP.

20           JUROR NO. 2:  I looked up IFRS.  I think I looked up

21   some terms like what does consolidation mean.  I mean, that may

22   be because I don't understand.  This is not my area of

23   expertise whatsoever.  So I just want -- you know, I look in

24   very broad terms what is the language.  I have to learn a new

25   large.  But I -- I -- I -- I have not expressed an opinion

 1    about the end of the case.

 2            THE COURT:  Have you looked up the -- any -- have you

 3    looked up to determine what's on the Internet or what's on --

 4    what's the -- what the -- what information there may be

 5    publicly available about any of the -- any of the attorneys who

 6    are trying this case?

 7            JUROR NO. 2:  No, I have not.

 8            THE COURT:  Have you looked up anything on the

 9    Internet concerning any of the other individuals who are named

10    in this case?  A number of individuals have been named in this

11    case, in particular Sushovan Hussain.  Do you have any

12    information on the subject -- on Mr. Hussain?

13            JUROR NO. 2:  No, I have not.  I mean, I took the jury

14    instructions --

15            THE COURT:  Pardon me?

16            JUROR NO. 2:  I took your instructions very seriously.

17            THE COURT:  Okay.  Okay.

18        I'd like to see counsel at sidebar.

19        (The following proceedings were heard at the sidebar:)

20            THE COURT:  Any other questions?

21            MR. LINCENBERG:  Yes.  We think that you should ask if

22    Fred, No. 7 --

23            MR. HEBERLIG:  Has expressed views.

24            MR. LINCENBERG:  -- has expressed views and had

25    conversations with her.

SIDEBAR

1      **THE COURT:**  Yes, I'll do that.  I don't want to keep

2   running back -- so then she'll say whatever she says and I'll

3   try to flesh out the answer.

4      And I apologize for the inartful way I'm asking questions,

5   especially since I'm so critical of you people.  It really

6   takes nerve on my part while I can't -- sitting up there can't

7   even formulate a question.

8      **MR. REEVES:**  You can lead, Your Honor.  Go ahead.

9      **THE COURT:**  Pardon?

10     **MR. REEVES:**  You can lead.  Go ahead.

11     **MR. MORVILLO:**  There will be no objection.

12     **THE COURT:**  That's what I'm trying not to do, trying

13  not to do.  That's the problem.  Prosecutors never learn how to

14  ask a leading --

15     Anyway, and then I'm going to give her a general

16  admonishment like can you promise, can you promise, can you

17  promise, these things that I asked her without -- without any

18  indication of whether she's going to be excused or not.

19     **MR. HEBERLIG:**  I think that should include you're not

20  permitted to look up things that you don't understand.

21     **THE COURT:**  Okay.

22     **MR. HEBERLIG:**  And you've already disregarded my

23  instructions.

24     **LAW CLERK:**  Yeah.

25     **MR. LEACH:**  Judge, one follow-up on that.  I'd just

1  ask beyond the acronyms did she learn anything from the Google

2  search beyond IFRS, beyond --

3       My request, Your Honor, is she said she looked up IFRS and

4  GAAP.  My question is, did she learn anything of substance from

5  that inquiry.

6       THE COURT:  Okay.

7  ████████████████████     ████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  █████████████████████████████████████████████████████

10  ████████████████████     ██████████████████

11  ████████████████████     ███████████████████████████

12  ███████████████████████

13  ████████████████████     ██████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ██████████

17       THE COURT:  Let's see if I can remember all of those.

18       MR. MORVILLO:  I can give you the transcript.

19  (Sidebar concluded.)

20       THE COURT:  Okay.  Thank you.  You advised us that you

21  did look up certain terms on the Internet and our question is

22  or my question is:  You looked up GAAP and you looked up the

23  other accounting.  Did you learn anything from your inquiry?

24       JUROR NO. 2:  Well --

25       THE COURT:  Speak in the microphone.

1    **JUROR NO. 2:** -- I learned what the letters stand for.

2    **THE COURT:** Pardon? You learned what they stood for?

3    **JUROR NO. 2:** The letters.

4    **THE COURT:** Anything further than that?

5    **JUROR NO. 2:** Well, I already surmised that it was

6    accounting principles --

7    **THE COURT:** Right.

8    **JUROR NO. 2:** -- that could be followed, but that

9    was --

10    **THE COURT:** Have you learned from the Internet or

11    otherwise anything else about this case or about any of the

12    individuals who are involved in this case?

13    **JUROR NO. 2:** No, I haven't.

14    **THE COURT:** Okay. Now, have you -- I want to find out

15    whether you are aware of any other discussions by other jurors

16    about this case. Are you aware of any other juror who, in your

17    presence, has expressed a view on this case, a view as to the

18    witnesses, a view as to the outcome?

19    **JUROR NO. 2:** No. We all have this habit of zipping

20    our mouth shut.

21    **THE COURT:** Of what?

22    **JUROR NO. 2:** We have this -- it's kind of like, you

23    know, we became a little society. The whole jury has become a

24    society. We know we're not supposed to speak, so we've all

25    kind of -- we don't speak -- you know, we might -- we may have

```
 1  facial expressions, but it never goes beyond that.
 2          THE COURT:  So you've not heard any other juror
 3  express any other view about or any view about the evidence or
 4  about the outcome of the case?
 5          JUROR NO. 2:  No.  No.
 6          THE COURT:  In particular, do you know Juror No. 7,
 7  Frederick Lawson?  Do you know who Juror No. 7 is?
 8          JUROR NO. 2:  What's the name of the person?
 9          THE COURT:  Fred --
10          JUROR NO. 2:  Oh, Fred.
11          THE COURT:  -- Lawson.  Fred.
12          JUROR NO. 2:  Yes, sure, sure, sure.
13          THE COURT:  Okay.  Have you ever had him express any
14  view as to the outcome of the case or anything in relation to
15  the case?
16          JUROR NO. 2:  No.  I mean, I have not, I really
17  haven't.
18      All we kind of do is we go (demonstrating.)  You know,
19  because we get all this information, we sit here for six hours
20  a day listening to everyone.  I'm -- personally I'm quite
21  interested.  I don't know who else is interested, but it's a
22  little overwhelming.
23          THE COURT:  Have you expressed any view as to the
24  reaction of any of the individuals who are in the courtroom to
25  the evidence, in particular the Defendant Dr. Lynch, have you
```

1  expressed any view as to his reaction to the evidence?

2          **JUROR NO. 2:**  I don't really under -- could you say

3  your question?  I'm sorry.

4          **THE COURT:**  Sure.  You sat here, as you well point

5  out, for hours, and you're -- one of the things jurors do is

6  that they look at the parties --

7          **JUROR NO. 2:**  Correct.

8          **THE COURT:**  -- and try to gauge when they hear the

9  evidence is this having any reaction on the -- on the

10  defendant.  That's a very normal thing to do.  It may not be

11  evidence, but it's a normal thing to do.

12      And I assume every juror has seen the defendants because

13  they're here every day and they're facing the jury --

14          **JUROR NO. 2:**  Sure, sure.

15          **THE COURT:**  -- as the evidence comes in.

16      Have you expressed any reaction, any view as to

17  Dr. Lynch's reaction to any of the testimony?

18          **JUROR NO. 2:**  Are you talking verbally?

19          **THE COURT:**  Yes.  Have you expressed any view?

20          **JUROR NO. 2:**  No.

21          **THE COURT:**  Okay.  Have you expressed any view as to

22  whether a particular witness acted a particular way in

23  connection with the testimony?

24          **JUROR NO. 2:**  What do you mean "acted"?  I don't know

25  what you -- sorry.

```
 1              THE COURT:  Well, have you commented at all to anybody
 2   in the -- in the jury on your jury as to your view as to that
 3   individual's testimony or reaction to the testimony or reaction
 4   to the questions or reaction to the attorney who is questioning
 5   that witness?  Have you expressed any view?
 6              JUROR NO. 2:  No.  I mean, we've really been pretty
 7   good.  I was wondering who -- who's -- can I find who said
 8   this?
 9              THE COURT:  Pardon?
10              JUROR NO. 2:  Who said this?
11              THE COURT:  No.  Okay.  Let me just say a couple of
12   things.
13              JUROR NO. 2:  Sure, sure, sure.
14              THE COURT:  But your answer is no to my question?
15              JUROR NO. 2:  I have not heard anyone express
16   verbally.  I look at people's faces, I read people.  It's just,
17   you know, I'm a human being.  There has been no verbal exchange
18   that I have heard, and I have not given --
19              THE COURT:  And you have not participated in that and
20   you've not heard of one?  You have not heard anybody else
21   express a view as to either a witness or the defendant or the
22   lawyers; is that correct?
23              JUROR NO. 2:  That is correct.
24              THE COURT:  Okay.
25          Now, I'm asking each juror the same questions
```

```
 1   essentially --
 2              JUROR NO. 2:  Sure.
 3              THE COURT:  -- but I need to -- and I'm saying the
 4   same thing to each juror individually.  Let me start at the
 5   beginning.
 6        First of all, I -- when I say that no juror should do any
 7   investigation in the case, as I've said at the outset of the
 8   case, no juror should do any investigation, that's a serious
 9   instruction and I will advise you that looking up things,
10   whether they be GAAP or innocuous things or anything that is
11   somehow related to the case is actually not permitted.  That's
12   number one.
13        So do I have your assurance, if you remain on the jury,
14   that will you not conduct any research of any kind about
15   anybody connected with the case, any lawyer connected with the
16   case, any witness connected with the case and anybody who has
17   been named in the evidence of this case, you will not do any
18   research about them in any respect?
19              JUROR NO. 2:  Yeah.  I will not and I apologize for
20   looking up -- I'm just trying to learn the language, but I
21   apologize.  I'll just ask more questions.  I'll raise my hand
22   and ask more questions --
23              THE COURT:  Okay.
24              JUROR NO. 2:  -- if I'm allowed to stay.
25              THE COURT:  Okay.
```

1          Now, you may have, as any individual may have, a view of

2     the evidence at this point, and that's not unusual.  People

3     have views as the evidence comes in.  The question is whether

4     they will be willing to change their views if evidence, the

5     law, or the views of their fellow jurors persuade them that

6     their view should be changed.  And my question to you is do you

7     promise to do so?

8               **JUROR NO. 2:**  Yes.

9               **THE COURT:**  Okay.  And do you promise not to discuss

10    any aspect of this case until jury deliberations?

11              **JUROR NO. 2:**  Yes.  And I will even force myself to

12    keep my expressions.

13              **THE COURT:**  Okay.

14              **JUROR NO. 2:**  I mean, I hear you.  I really do hear

15    you and I feel badly for looking up -- trying to learn the

16    language.  I do feel -- I'm sorry.  I apologize for that.

17              **THE COURT:**  Okay.  I'd like to see counsel at sidebar

18    again.

19         (The following proceedings were heard at the sidebar:)

20              **THE COURT:**  Any other questions?

21         **MR. REEVES:**  I have one suggestion, Your Honor.

22         **THE COURT:**  Yes.

23         **MR. REEVES:**  I think it's within the realm of

24    possibilities that she's thinking about when the jurors are all

25    together not expressing views and it might be helpful just to

1  make certain that your questions extend to when they're lining

2  up and in the hallway and outside of the courtroom.

3        THE COURT:  Okay.  I think that's fair.  I think

4  that's helpful.

5  ███████████████  ███████████████████████

6  ████████████████████████████████████████████

7  █████████████████████████████████████████

8  █████████████████████████████████████████████

9  ████████████████████████████████████████

10 ████████████████████████████████████████████

11 ██████████

12        THE COURT:  Okay.  I think that's fair.

13        MR. HEBERLIG:  No objection.

14        MR. LINCENBERG:  Do you want to borrow mine?

15        THE COURT:  I have a spare.

16        MR. LINCENBERG:  Okay.  It's page 5.

17        THE COURT:  Okay.

18     (Sidebar concluded.)

19        THE COURT:  Just a few more questions.

20     First, I appreciate the fact that you inquired as to who

21 provided the Court with this information, but I must tell you

22 it's going to remain anonymous, as I think it should be.

23        JUROR NO. 2:  That's fine.

24        THE COURT:  And I'm also going to instruct you not to

25 discuss these proceedings with any of your fellow jurors at all

SEALED PROCEEDINGS

1  until the case has finally been concluded and you've been

2  excused from jury duty.  Okay?

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  ███████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ██████████████████████████████████████

13    ███████████████████████████████

14      ████████████  ███████████

15          THE COURT:  Okay.

16      Okay.  One thing I wanted to make sure is that you

17 understood that my questions involved not only just what was

18 said in the jury room but any time you are gathering for the

19 jury room, any time you were in the hall, any time you were in

20 the cafeteria, any time you were in the elevator, any time that

21 you were within earshot of any other jurors.  You understood

22 that?  So it's a broader question.  It's not just limited to

23 what was said in that room.

24          JUROR NO. 2:  I don't believe I ever expressed that

25 verbally out loud.

1    **THE COURT:**  Okay.  But as to your answer to all of my

2    questions as to things that you said that you did not express,

3    you understand that the -- that I'm asking whether you

4    expressed it at any time in any group or to any one person

5    anywhere.  You understand that?  It's broader than just what

6    happened in the jury room.

7    **JUROR NO. 2:**  No, I understand.

8    **THE COURT:**  And is your answer the same?

9    **JUROR NO. 2:**  Yes.  It means all the time anywhere.

10    **THE COURT:**  All right.  So again, thank you very much

11    for participating in this.  We're going to ask each juror the

12    same questions I'm asking you basically, but it's not anything

13    that I want discussed --

14    **JUROR NO. 2:**  I understand.

15    **THE COURT:**  -- as the trial goes forward.

16    **JUROR NO. 2:**  I understand.

17    **THE COURT:**  Okay.  And you are excused again until

18    Monday and we will start the process at 9:15.

19    Thank you.

20    **JUROR NO. 2:**  Thank you.  Can I go out this door?

21    **THE COURT:**  Yeah, right.

22    (Juror No. 2 exits courtroom..)

23    **THE COURT:**  This is Mr. Tyler.

24    (Discussion held off the record.)

25    (Juror 3 enters courtroom.)

**SEALED PROCEEDINGS**

 1          **THE COURT:**  Good afternoon, Mr. Tyler.

 2          **JUROR NO. 3:**  Good afternoon.

 3          **THE COURT:**  We're asking each juror the same or we're

 4   inquiring into each juror.  And let me start out with this:

 5   Have you heard anyone of your fellow jurors express any views

 6   of any kind with respect to this case?

 7          **JUROR NO. 3:**  No, I have not.

 8          **THE COURT:**  Okay.  Have you, yourself, expressed any

 9   views in connection with this case?

10          **JUROR NO. 3:**  None to my belief.

11          **THE COURT:**  Have you done any research with respect to

12   this case?

13          **JUROR NO. 3:**  Nope.

14          **THE COURT:**  Have you seen any of your fellow jurors do

15   any research with respect to this case?

16          **JUROR NO. 3:**  No.

17          **THE COURT:**  Is there anything that you think that we

18   should know as to the conduct of the jury, how they are

19   conducting themselves when they are not presently in court that

20   is of significance -- that may be of significance to the

21   parties?

22          **JUROR NO. 3:**  None that I believe so.

23          **THE COURT:**  Okay.  Now, as to you individually, do you

24   believe that you can give a fair trial in this case?

25          **JUROR NO. 3:**  Yes.

 1          THE COURT:  And do you understand in particular -- the

 2   case has been very long so far --

 3          JUROR NO. 3:  Uh-huh.

 4          THE COURT:  -- and you've heard the Government's

 5   evidence.  You've heard cross-examination, of course, but the

 6   defense has not had the opportunity yet to present its case --

 7          JUROR NO. 3:  Right.

 8          THE COURT:  -- and its perspective, its evidence that

 9   it wants you to consider in connection with evaluating the

10   entire case.  That's number one.

11       Number two, you have not heard the law in this case.

12          JUROR NO. 3:  Correct.

13          THE COURT:  And you -- while I talked a little bit

14   about the presumption of innocence, burden of proof, you

15   haven't -- you know, I intend at the conclusion of the case to

16   really explain why these principles are so important and why

17   they must be considered by you in evaluating the evidence.

18       Do you understand that?

19          JUROR NO. 3:  Yes.

20          THE COURT:  And do you also understand you haven't

21   heard the views of your fellow jurors after the case has

22   deliberated -- in deliberations and it's only once all of that

23   has been done that you can express a view as to the guilt or

24   innocence of the defendant.  Do you understand that?

25          JUROR NO. 3:  Yes.

 1            **THE COURT:**  And are you willing to do that?

 2            **JUROR NO. 3:**  Yes, I am.

 3            **THE COURT:**  Okay.  And my instructions about not doing

 4    any research, not forming and expressing any opinion, keeping

 5    an open mind until the conclusion of the case, do you believe

 6    that you can follow those principles?

 7            **JUROR NO. 3:**  Yes, I do.

 8            **THE COURT:**  Okay.

 9        When you are excused, you'll be excused for the day, it's

10    important, I'm telling all the jurors, not to mention -- even

11    though this is a somewhat unusual event, I don't want it to be

12    discussed in the jury room or you with any of your fellow

13    jurors or anybody else for that matter.  Is that all right?

14            **JUROR NO. 3:**  Yeah.

15            **THE COURT:**  Okay.  Can I see the parties at sidebar?

16        (The following proceedings were heard at the sidebar:)

17            **THE COURT:**  Anything else?

18            **MR. MORVILLO:**  That's it.

19            **THE COURT:**  Anything else?

20            **MR. LINCENBERG:**  No, Your Honor.

21            **MR. REEVES:**  That's fine.

22            **THE COURT:**  Okay.  Thank you.

23        (Sidebar concluded.)

24            **THE COURT:**  Mr. Tyler, it's 82 degrees outside, have a

25    nice day, I'll see you on Monday.

1      **JUROR NO. 3:**  Sounds good.  Thank you very much.

2      **THE COURT:**  Thank you very much.

3      (Juror 3 exits courtroom.)

4      (Juror No. 4 enters courtroom.)

5      **THE COURT:**  Good afternoon, Ms. Finkelstein.

6      **JUROR NO. 4:**  Good afternoon.

7      **THE COURT:**  We are inquiring into each juror as they

8   sit here and my questions to you are the following:  Have you

9   heard -- the Court has received information there's been some

10  discussion among some of the jurors about the evidence, about

11  the outcome of the case, possibly about research during the

12  course of the proceedings.  We've received that information and

13  that is why we're making an inquiry of each juror.

14      So I need to know -- and obviously you can see the

15  defendants aren't present but the lawyers are.  I need to know

16  whether you have any information as to whether any of those

17  things occurred, that is, did you see or hear any jurors

18  discussing any aspect of the case, witnesses, attorneys,

19  individuals who have -- whose names have been mentioned in the

20  case but are not present either by way of witnesses or

21  otherwise, have you heard anything about that in the course of

22  your jury service?

23      **JUROR NO. 4:**  I have not heard anything personally,

24  but███████████████████████asked me because we sit in

25  different jury rooms I guess you would call them, she asked me

 1 | if any of the people in the room where I sit have discussed the
 2 | case.
 3 | **THE COURT:**  Okay.
 4 | **JUROR NO. 4:**  And I said no, we haven't, so -- because
 5 | she told me that she was feeling uncomfortable that people in
 6 | her room have been openly discussing.  She didn't name any
 7 | names to me who were talking about what or -- what was said or
 8 | anything like that, but she told me that there have been people
 9 | discussing the case.
10 | **THE COURT:**  And did she disclose to you at all as to
11 | what was being discussed?
12 | **JUROR NO. 4:**  No.
13 | Well, she did say that someone said that her -- no.  Wait
14 | a minute.  She said that someone said that, you know, such and
15 | such is guilty or, you know, and then they said that they're --
16 | oh, I can't wait for my wife to come to the court to sit in the
17 | audience, but she didn't name who said that.
18 | **THE COURT:**  And did -- when she said that somebody
19 | said that somebody is guilty, did she identify who the -- who
20 | is guilty?  Did she say:  This person said X is guilty or --
21 | **JUROR NO. 4:**  No.
22 | **THE COURT:**  -- identify them?
23 | **JUROR NO. 4:**  She said the words "someone" or I guess
24 | she said "such and such."  Those were the words that she used.
25 | **THE COURT:**  Okay.  Now, I need to know about your

 1  state of mind.

 2       First of all, being told that, does that affect your

 3  ability to use your own judgment as to the guilt or innocence

 4  of the defendant?

 5            **JUROR NO. 4:**  No, I don't believe so.

 6        **THE COURT:**  Okay.  And are you willing and are you

 7  able to keep an open mind as to whether the Government has

 8  proven its case against any defendant until the conclusion of

 9  the case?

10            **JUROR NO. 4:**  Yes, I do believe so.

11        **THE COURT:**  And do you understand that you've only

12  heard the Government's case and not even the conclusion of the

13  Government's case, you've heard that we're nearing the

14  conclusion but you've heard Government witnesses, you've heard

15  cross-examination, but you have not heard the rest of the

16  Government's case, you have not heard the defense case, you

17  haven't heard what the law is, and you haven't heard what your

18  fellow jurors think about the case in deliberations and it's

19  only until all of that is done that you should form an opinion

20  as to the guilt or innocence of the defendant.

21       Do you understand that?

22            **JUROR NO. 4:**  I do understand.

23        **THE COURT:**  And are you able to follow that?

24            **JUROR NO. 4:**  Yes.

25        **THE COURT:**  And are you able to promise us that you

SIDEBAR

```
 1   will not do any research and not -- of any kind and that you

 2   will not discuss this case with any of your fellow jurors or

 3   anybody else?

 4           JUROR NO. 4:  Yes.

 5           THE COURT:  Okay.  Can I see the parties at sidebar?

 6       (The following proceedings were heard at the sidebar:)

 7           THE COURT:  Anything else?

 8           MR. MORVILLO:  I have two follow-ups, Your Honor.

 9           THE COURT:  Yeah.

10           MR. MORVILLO:  One, when did the conversation with

11   ███████████happen.

12           THE COURT:  Okay.

13           MR. MORVILLO:  And second, I wasn't aware that they

14   were split between rooms.

15           THE COURT:  Oh, well, let me explain that.  It's not

16   a -- it's not a mystery.  Because there's so many of them, we

17   don't want to jam them, for health reasons and other, into one

18   small jury room.  So the other room is -- I think it's Judge

19   Chhabria's?  No.

20           LAW CLERK:  Judge Seeborg's.

21           THE COURT:  Judge Seeborg's jury room.  It's on the

22   same floor, it's just further on down and it's simply any jury

23   room, but they're not privy to anything else.  They simply walk

24   further on down the line and they can spread out so it's --

25           MR. MORVILLO:  I'm just wondering who was in which
```

 1  room or is it --

 2          **MR. HEBERLIG:**  It might be helpful.

 3          **MR. MORVILLO:**  Are they assigned to a room?

 4          **THE COURT:**  No.  It's all -- it's all --

 5          **LAW CLERK:**  It seems like mostly they're the same ones

 6  every time.

 7          **MR. LINCENBERG:**  Because it sounds like we're getting

 8  some conversation may be taking place more in one room than the

 9  other.

10          **THE COURT:**  Well, it doesn't seem -- maybe it is

11  taking -- I don't think it -- I mean, according to her, they're

12  not discussing it in her jury room.

13          **MR. LINCENBERG:**  Right.

14          **THE COURT:**  I can ask her who's in her jury room.

15          **MR. MORVILLO:**  Yeah.  That's the question.

16          **THE COURT:**  Yeah.  Okay.  All right.

17      (Sidebar concluded.)

18          **THE COURT:**  As I understand it, there are two jury

19  rooms that are available to the jurors.  Do they all go to the

20  same one all the time, is that --

21          **JUROR NO. 4:**  Sorry, come again?

22          **THE COURT:**  Do they go to the same -- do -- a juror,

23  does that juror go to the same jury room each time or do they

24  mix it up or what?

25          **JUROR NO. 4:**  No.  From the very beginning it feels

SEALED PROCEEDINGS

1  like people have chosen their spots and are sticking to their

2  spots.

3         THE COURT:  Okay.  And which one are you in, if I may

4  inquire.

5         JUROR NO. 4:  I am in this one, the closest one.

6         THE COURT:  Okay.  You're in the one the closest?

7         JUROR NO. 4:  Yeah.

8         THE COURT:  And in that room -- as I understand it, in

9  that room there is no discussion?

10        JUROR NO. 4:  No.

11        THE COURT:  Can you tell me who else is in that room

12 from your memories?

13        JUROR NO. 4:  It is --

14        THE COURT:  And if you remember first names.  You

15 don't have to remember numbers or if you remember their names

16 or their -- anything.

17        JUROR NO. 4:  Okay.  So there is -- I'm so bad with

18 names even though we've been together for a long time.

19        THE COURT:  Yeah.

20        JUROR NO. 4:  But, I mean, I can --

21        THE COURT:  Well, can you point out --

22        JUROR NO. 4:  Yeah.

23        THE COURT:  -- the jury --

24        JUROR NO. 4:  Where we're -- where the people, where

25 they're sitting.

```
 1              THE COURT:  I'm sorry.  You're No. 4?

 2              JUROR NO. 4:  I am.

 3                   (Discussion held off the record.)

 4              THE COURT:  Oh, we know which were --

 5              THE CLERK:  Yeah.

 6              THE COURT:  Okay.  Does this sound right:  Juror

 7   No. 4, which is you.

 8              JUROR NO. 4:  Yes.

 9              THE COURT:  The person next to you, Katherine

10   Schwartz.

11              JUROR NO. 4:  Yes.

12              THE COURT:  And the person next to her, Nicola --

13   Nicola -- maybe that's a man.

14              JUROR NO. 4:  Yeah.  Nicky.  Yeah.

15              THE COURT:  Nicky.

16              JUROR NO. 4:  Yeah.

17              THE COURT:  Okay.  Then Laura, who's Juror No. 10?

18              JUROR NO. 4:  Yes.

19              THE COURT:  Jaimila, Jaimila Cruz, Juror No. 11, is

20   that --

21              JUROR NO. 4:  I don't --

22              THE COURT:  Not sure?

23              JUROR NO. 4:  I don't recognize her name.

24              THE COURT:  Jack Ricci, Ricci?

25              JUROR NO. 4:  Yes.
```

```
 1          THE CLERK:  Right next to Jaimila Cruz.

 2          JUROR NO. 4:  Oh, yes, yes, yes, yeah.

 3          THE COURT:  Okay.

 4          JUROR NO. 4:  I do recognize her.

 5          THE COURT:  And Michael Bogdanov?

 6          JUROR NO. 4:  Yes.

 7          THE COURT:  And Julian Wey?

 8          JUROR NO. 4:  Yes.

 9          THE COURT:  She's the alternate --

10          JUROR NO. 4:  Yes, yes.

11          THE COURT:  -- last alternate.

12          JUROR NO. 4:  All of -- yeah.

13          THE COURT:  And they're all in your room?

14          JUROR NO. 4:  Yes.

15          THE COURT:  Okay.  Now, you recounted a conversation

16  that had you with ████████.

17          JUROR NO. 4:  Yes.

18          THE COURT:  Do you recall when that conversation took

19  place?

20          JUROR NO. 4:  That took place yesterday.  Oh, wait a

21  minute.  It might -- no.  I think it was the day before

22  yesterday --

23          THE COURT:  Okay.

24          JUROR NO. 4:  -- evening when we were all finished for

25  the day.  So she asked me that and then she said, well, I --
```

1  she was very clear that she was very uncomfortable with this

2  situation and she said I think I'm going to -- in that case I

3  think I'm definitely going to talk to Ms. Scott about this, so

4  she said that she was going to do that the next morning.

5       THE COURT:  Okay.  Thank you.  You've been very

6  helpful.

7       JUROR NO. 4:  Good.

8       THE COURT:  I don't know whether I've cautioned you

9  about not discussing any of this that happened until you're

10  finally discharged after all the jury deliberations.  In other

11  words, I don't want any discussion in the jury room or outside

12  the jury room as to what has taken place.

13       JUROR NO. 4:  Yeah.

14       THE COURT:  Okay?

15       JUROR NO. 4:  Yes.

16       THE COURT:  Great.  Thank you.  Have a nice day.

17       JUROR NO. 4:  Thank you.

18       THE COURT:  It's beautiful out there.

19       JUROR NO. 4:  It is.

20       THE COURT:  Have a nice weekend.  Do you live in San

21  Francisco.

22       JUROR NO. 4:  No.  In Emeryville.

23       THE COURT:  Oh, it's nice in Emeryville.

24       JUROR NO. 4:  It is.

25       THE COURT:  Okay.  Bye-bye.

1          (Juror No. 4 excused.)

2          **THE COURT:**  We could write a novel about the whole

3   picture.  Give you the whole picture.

4          (Juror No. 5 enters courtroom.)

5          **THE COURT:**  Great.  Ms. Schwartz, thank you so much

6   for -- well, of course for serving and also for being here this

7   afternoon.  Let me take some of the mystery out of this.

8          **JUROR NO. 5:**  Sure.

9          **THE COURT:**  We received information that there has

10  been a discussion among several jurors as to matters involving

11  the case, either as to the guilt or innocence of the defendant,

12  certain witnesses or perhaps other information dealing with

13  this case that -- we've also received information that there

14  has been some research into either the parties, the lawyers,

15  the -- any of the issues relating to the case, we received

16  that.  So my overall question is are you aware of any of such

17  activities?

18          **JUROR NO. 5:**  I'm not aware of any activity like that.

19          **THE COURT:**  Pardon me?

20          **JUROR NO. 5:**  I'm not aware of any activity like that.

21          **THE COURT:**  Okay.  Are you aware of anything that you

22  would consider improper, that is, outside of the Court's

23  instructions not to form or express any opinion, keep an open

24  mind, do not discuss the case, allow anyone to discuss it with

25  you?  Are you aware of any -- any activities that are contrary

SEALED PROCEEDINGS

1   to that instruction?

2       **JUROR NO. 5:**  No, I'm not aware of anything under that

3   umbrella.

4       **THE COURT:**  Okay.  Is there anything that you know

5   about the conduct of the case by the jurors that you feel the

6   parties should know in order to proceed in a fair way?

7       **JUROR NO. 5:**  No.  I don't think -- I mean, we haven't

8   had -- I haven't had any conversation about the nature of the

9   case or anybody involved, and I haven't overheard anything

10  really.  I think any time if we're -- we don't really discuss

11  anything remotely related to the case, but even if we do

12  it's -- you know, we might be talking about someone's suit that

13  we like or, you know, like glasses or something.  We're not

14  talking about the nature of the case itself.

15      **THE COURT:**  Okay.  Do you understand that the case

16  is -- it's not completed yet --

17      **JUROR NO. 5:**  Right.

18      **THE COURT:**  -- the Government has not completed its

19  presentation and the defense has not presented any evidence

20  that they think is appropriate for the Court to -- for jurors

21  to consider.  You have not heard the law and, most importantly,

22  the law is actually of significance, that is, it's significant

23  that -- what the elements of the offense are.  It's significant

24  what the burden -- who has the burden of proof.  It's -- the

25  presumption of innocence is significant in your -- in your

1  deliberations and you understand I haven't instructed you on

2  any of those things, though I've alluded to some of them, but

3  it will be the instructions of the Court, so you haven't heard

4  what the law is.  You also haven't heard the views of your

5  fellow jurors.  Now, given all of that, are you able to promise

6  that you will reserve your judgment in this case until all

7  those things have been accomplished?

8          JUROR NO. 5:  Yes.  Yes.

9          THE COURT:  Okay.  And you understand that this

10  process is a little unusual in the middle of a trial, but I

11  don't want you or -- to discuss it with any of your fellow

12  jurors until after you've been discharged from jury duty, all

13  right?

14          JUROR NO. 5:  Absolutely.

15          THE COURT:  Okay.  Anything further?  I don't think

16  so.  All right.  Have a nice day.  See you on Monday.

17          JUROR NO. 5:  See you Monday.

18      (Juror No. 5 excused.)

19          THE COURT:  Yes.

20      (Juror No. 6 enters courtroom.)

21          THE COURT:  Ms. Low [sic], thank you very much.

22          JUROR NO. 6:  It's like being in front of the

23  headmaster.

24          THE COURT:  Sorry?

25          JUROR NO. 6:  It's like being in front of the

1  headmaster.

2          THE COURT:  Well, that's a charitable view of the

3  Court.

4      The reason we're doing this, and it will become apparent

5  to you in a moment is that the Court has received some

6  information that some jurors have expressed views concerning

7  the evidence in the case, concerning the guilt or innocence of

8  a defendant, concerning the manner in which the case is being

9  tried as well as -- as well as the -- oh, did I -- I'm sorry.

10  I called you -- did I not refer to you by your proper name?

11          JUROR NO. 6:  I don't know.  I wasn't paying

12  attention.  Sorry.

13          THE COURT:  Wait.  Where am I?

14          THE CLERK:  No. 6.  That's a new list.

15          THE COURT:  Ah.  It's Ms. Slavin.

16          JUROR NO. 6:  Yes.

17          THE COURT:  I apologize.  I referred to you as another

18  name, but that --

19      Well, now I've forgot completely where I was in this train

20  of thought, so let me go back a bit and ask you whether you've

21  heard any comment by anyone in connection with this case, by

22  any of your fellow jurors?

23          JUROR NO. 6:  No.  We just talk about kind of people's

24  socks and who's wearing what color glasses on the day, but no.

25  Nobody's talked to me about who's guilty, who's not guilty.

1    Yeah.

2        THE COURT:  And has anybody -- have you heard anybody,

3    even if they haven't talked to you but you may have overheard

4    somebody express some view as to this case, the merits of the

5    case, the outcome of the case?  Have you heard anything?

6        JUROR NO. 6:  No.

7        THE COURT:  And have you -- have you, yourself, done

8    any research, that is, is have you gone on your phone or gone

9    on a computer or looked into anything about this case?

10       JUROR NO. 6:  No.  I can't wait to, but no, I have

11   not.

12       THE COURT:  Okay.  And have you observed anyone doing

13   any research into this case?

14       JUROR NO. 6:  No, I have not.  I mean, obviously I

15   don't look at what people are doing on their own phones and

16   computers next to me, but no, I have not.

17       THE COURT:  Okay.  You understand that we are at a

18   stage of the proceeding where the Government has present a

19   substantial portion the case, but they have not finished their

20   presentation, so you have not yet heard from some Government

21   witnesses.  You haven't heard from -- what the defense feels

22   appropriate for you to consider in connection with your

23   decision.  You haven't heard what the law is.  In particular, I

24   haven't explained to you the elements of the offense, I haven't

25   explained to you how things are proven or not proven.  I

1    haven't discussed with you in detail the burden of proof or the

2    presumption of innocence.  All of that I will do so at the

3    conclusion of the case once all the evidence is in, but I

4    haven't given it to you yet, nor have you had an opportunity to

5    discuss the views of your fellow jurors in deliberations as to

6    what they think about the case.

7         When all of that is done, that's the time that you have to

8    make up your mind, your own mind about the case.  Are you

9    willing to do so, keep an open mind until then?

10            **JUROR NO. 6:**  Yes.

11            **THE COURT:**  And will you promise to follow all the

12   Court's instructions in that regard?

13            **JUROR NO. 6:**  Yes.

14            **THE COURT:**  Okay.  Anything else?

15        Oh, I don't want you -- maybe I said it already, but I'm

16   going to say it again.  Please do not discuss this proceeding

17   with any of your fellow jurors.

18        When the case is over and you are discharged, you'll be

19   able to talk to anybody who will listen about any aspect of the

20   case but not now.  Do you understand that?

21            **JUROR NO. 6:**  Yes.

22            **THE COURT:**  And that includes your fellow jurors.  Do

23   you understand that?

24            **JUROR NO. 6:**  Yes.

25            **THE COURT:**  Okay.  Anything further?  No.  Thank you.

SEALED PROCEEDINGS

```
 1   Have a very nice day.  See you on Monday 9:15.
 2              JUROR NO. 6:  Thank you.
 3         (Juror No. 6 excused.)
 4              THE COURT:  The next one may be a bit lengthier.
 5                   (Discussion held off the record.)
 6              THE COURT:  So the only thing that's somewhat unique
 7   about the next person is he's obviously discussed it with his
 8   wife.
 9              MR. MORVILLO:  Yes, clearly, if she was coming today.
10              THE COURT:  Yeah.
11         (Juror No. 7 enters courtroom).
12              THE CLERK:  Have a seat in the very first chair.
13         JUROR NO. 7:  Thank you.
14         THE COURT:  Okay.  Mr. Lawson.
15         JUROR NO. 7:  Yes, sir.
16         THE COURT:  You're resuming your regular seat.
17         JUROR NO. 7:  I'm comfortable here.  Thank you.
18         THE COURT:  Thank you very much.
19      We are inquiring of each juror in the order in which they
20   are seated a series of questions based upon information that we
21   received.
22      We have received information that there has been a
23   discussion among some of the jurors as to certain aspects of
24   the case; for example, whether a defendant is guilty,
25   whether -- how witnesses have reacted to questions of fellow --
```

 1  of attorneys that have posed these questions and we've also

 2  received information that some jurors have engaged in research,

 3  that is to say, they have gone on the Internet and made

 4  inquiries as to certain aspects of the case or the people

 5  involved in the case.

 6       So my question to you is are you aware of any of those

 7  activities?

 8            **JUROR NO. 7:**  No.

 9       **THE COURT:**  Okay.  Now, in -- specifically -- let me

10  be specific -- it was reported to the Court that actually you

11  have engaged in some of those activities, that you have

12  expressed a view as to the outcome of the case, that in -- is

13  that correct or not correct?

14            **JUROR NO. 7:**  That's not correct.

15       **THE COURT:**  Okay.  It's also been said -- it has not

16  been said that you've done any research in connection with the

17  case but it has been suggested that you have actually engaged

18  in a conversation or conversations with another juror about

19  what has occurred in connection with the case or about the

20  progress of the case or about some aspect of the case, that you

21  engaged in a conversation with another juror; is that correct?

22            **JUROR NO. 7:**  Can you give me a specific, Judge?

23       **THE COURT:**  Well, I think the question really is,

24  based upon your recollection.  In other words, do you recall

25  actually having any conversation with any fellow juror about

 1  aspect of this case?

 2      **JUROR NO. 7:**  We try to avoid speaking with each other

 3  as best we can.

 4      **THE COURT:**  Okay.  But notwithstanding of course that

 5  you want to avoid it, my question is, has it actually occurred?

 6      **JUROR NO. 7:**  Other than walking out of here --

 7      **THE COURT:**  Yeah.

 8      **JUROR NO. 7:**  -- and being able to say -- it's hard

 9  because you're walking down the hall, you walk into the jury

10  room, you have the opportunity to go ahead and kind of relax

11  and sit there for a moment and kind -- and I've heard jurors

12  say that was -- that was a rough session.  That was

13  interesting.

14      **THE COURT:**  Okay.  Have you, yourself, expressed any

15  views as to what has occurred in the courtroom?

16      **JUROR NO. 7:**  Over the course of the last eight weeks

17  I am sure I have said something to the effect of "that was

18  interesting."

19      **THE COURT:**  All right.  Have you engaged in any

20  conversation as to whether this -- the outcome of the case,

21  that is, it should be or maybe it has been settled or it should

22  be settled or a defendant or someone should enter -- a

23  defendant should enter a plea, have you had any of those

24  statements?

25      **JUROR NO. 7:**  When we get delayed going into the

 1    courtroom sometimes and we are out in the hallway --

 2            **THE COURT:**  Yeah.

 3            **JUROR NO. 7:**  -- and we will say things, you know,

 4    we'll say things, "I wonder what's going on in there."

 5            **THE COURT:**  Yes.  Will you say anything of the type

 6    that I've indicated?

 7            **JUROR NO. 7:**  Yes.

 8            **THE COURT:**  You will?

 9            **JUROR NO. 7:**  Yes, I have.

10            **THE COURT:**  And what is your recollection as to what

11    you've said?

12            **JUROR NO. 7:**  I have said, "Maybe they're settling."

13            **THE COURT:**  Okay.  And by that you mean -- what do you

14    mean by settling?  What is your understanding of settling?

15            **JUROR NO. 7:**  That they've made an agreement between

16    the two parties that they're going to go ahead and settle the

17    case out of -- out of court, I guess.

18        We're -- we're -- we, as you know, are doing the best we

19    can to work our way through this.  It's a challenge, I can tell

20    you that much, but we are doing the best we can to go ahead and

21    fairly do our jobs as best we can.  We are --

22            **THE COURT:**  I appreciate that, but I need to be a bit

23    more specific.  When you talk about settling, what's your

24    understanding of settling?  Does it involve -- for example,

25    would it involve a guilty plea?  Is that what you mean?

1      **JUROR NO. 7:**  It could.

2          **THE COURT:**  Okay.  And have you expressed a view that

3      a defendant either should plead guilty or perhaps is pleading

4      guilty?

5          **JUROR NO. 7:**  I have not done that.

6          **THE COURT:**  Okay.  And in particular, have you had any

7      conversations with Juror No. 2?  That's Claire.  You know Juror

8      No. 2?

9          **JUROR NO. 7:**  Yes, I do.

10         **THE COURT:**  Have you had any conversations with her in

11     which she has expressed any view as to the evidence in this

12     case or any aspect of this case?

13         **JUROR NO. 7:**  Claire generally goes like this if she

14     feels like she's going to say something.

15         **THE COURT:**  Okay.  You're indicating zipping her lip

16     but has she said anything before she zipped her lip?

17         **JUROR NO. 7:**  Nothing that influenced me in any way

18     where I felt like she was saying something inappropriate.

19         **THE COURT:**  Okay.  But has she said anything about the

20     case?

21         **JUROR NO. 7:**  I think we've all said something about

22     the case, Your Honor.

23         **THE COURT:**  Okay.  So your answer is -- you think the

24     answer is yes as to her and you're saying you have as well?

25         **JUROR NO. 7:**  Yes.

 1          **THE COURT:**  Okay.  Is there anybody else of which you

 2    are aware who has -- who has said something about the case that

 3    you would think falls in that category of discussing some

 4    aspect of the case?  Anybody else that you can identify?

 5          **JUROR NO. 7:**  I don't think we've had any discussions

 6    about the case.  In fact, we are working very hard to avoid

 7    discussing the case.

 8          It is a challenge to go ahead and be here as long as we

 9    have to come from the -- come from our area in the back, come

10    in here, be paraded back and forth.  It is definitely a

11    challenge, as human beings, not to, you know, naturally want to

12    say something.

13          It is like watching a football game and not being able to

14    say a word about it until the final -- the final whistle.  You

15    get to watch each play and you get to go ahead and just keep it

16    all inside of you because we're a society of usually commenting

17    on things immediately, instantly wanting to discuss it.  So

18    you're asking, you know, people to do a job that is extremely

19    difficult to do and we appreciate everything you're doing and

20    we understand that this is difficult and we have -- we

21    understand very clearly that we have two people who are looking

22    for us to treat them fairly and we are taking that very

23    seriously.  As human beings coming back and forth here day in

24    and day out, going from there to here and having to sit with

25    people, it is just absolutely difficult not to feel something

1    and not to say:  That was -- that was difficult, that was a

2    longer session, that was tough.  And that's what we're doing.

3        And I think that any human beings that you get in there,

4    you're going to have a similar type of situation when you ask

5    people to do this for this length of time.

6        But I can tell you, we are -- we are focused on trying not

7    to discuss the case, of trying to leave our emotions behind and

8    we are looking at this from a perspective of we understand the

9    responsibility.

10       I tell you, I'm very surprised at how much people have

11   focused in on trying to do this the right way.  And I

12   understand.  I respect and understand what everyone is trying

13   to do in here and we're all trying to come to a fair and just

14   decision.

15           THE COURT:  Okay.  Thank you.

16       Can I see the parties at sidebar?

17       (The following proceedings were heard at the sidebar:)

18           THE COURT:  Well, I don't suppose I'll say anything

19   more to him because it seems to me that it's -- first of all,

20   I'll do whatever you want to do, but it seems to me he ought to

21   be excused.

22           MR. HEBERLIG:  100 percent.

23           MR. LINCENBERG:  Yeah.

24           THE COURT:  I don't even think it's a close question,

25   yeah.  We can have a discussion about No. 2, we can have a

 1   discussion about it, but, I mean, I think that here he says one

 2   thing and then he -- so it's not even an issue of fact, okay?

 3          MR. HEBERLIG:  We agree too.

 4          THE COURT:  I mean I don't -- listen, I've got three

 5   alternates, so it can be perfectly -- it could be the view of

 6   the parties -- it could be the view of the parties that

 7   notwithstanding his views, his conduct and so forth, they want

 8   to continue with it.  That could be a legitimate view of the

 9   parties.

10       So I'm not about to take it on myself to get annoyed with

11   him and just say you're out of here because that's not my job,

12   it's not my case.  It's the defendant and the Government,

13   that's their case, I got that, so I'll -- I can admonish him

14   for another couple minutes and then send him on his way and we

15   can discuss it.  I could ask him further questions but I don't

16   understand why that would be productive.

17          MR. LINCENBERG:  I just -- I would ask --

18          THE COURT:  Yes.

19          MR. LINCENBERG:  -- I don't think he's being fully

20   forthcoming --

21          THE COURT:  No, I don't either.

22          MR. LINCENBERG:  -- about his discussions with Juror

23   No. 2.

24          THE COURT:  No, I don't either.

25          MR. LINCENBERG:  And I would put to him, you know, did

```
 1   you say something like a plea deal, five years and other

 2   comments.

 3           THE COURT:  Oh, okay.

 4           MR. LINCENBERG:  And the Steve Truitt.

 5           THE COURT:  All right.  Okay.

 6           MR. HEBERLIG:  And it sounds like he's aware of other

 7   people who have been -- his, you know --

 8           THE COURT:  Well, I think that was from him -- I think

 9   my sense of what he was saying is everybody comes out here and

10   says oh it's exhausting or it's interesting or it's not.

11           MR. HEBERLIG:  I think it's -- I'm sorry.

12           THE COURT:  No, go ahead.

13           MR. HEBERLIG:  It just might be worth a question:

14   You've expressed some human nature that everyone needs to --

15   are there other people who have made comments.

16           THE COURT:  Well, I think the answer -- I think the

17   question really is, has anybody else -- have any of the

18   comments that you've heard expressed a view about the merits of

19   the case --

20           MR. HEBERLIG:  Yeah.

21           THE COURT:  -- or about the lawyers --

22           MR. HEBERLIG:  Yeah.

23           MR. LINCENBERG:  And I think --

24           THE COURT:  -- or the outcome.

25           MR. LINCENBERG:  -- with regard to Juror No. 2,
```

1   Claire, who it's attributing that she's making comments about,

2   ██████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████

4   and I would put to him --

5           THE COURT:  Okay.

6           MR. LINCENBERG:  -- we've heard that you said that you

7   think there should be a, you know, five-year plea deal.  I

8   think you should put that to him.

9           MR. MORVILLO:  I'm interested in the fact that he

10  invited his wife to come watch.

11          THE COURT:  Oh, I forgot to ask that.

12          MR. MORVILLO:  We're wondering if you discussed that.

13          THE COURT:  Okay.

14          MR. MORVILLO:  And were there other jurors that were

15  aware that he had been discussing with his wife and that she's

16  coming.

17      (Reporter seeks clarification.)

18          THE COURT:  Two quick points.

19          MR. MORVILLO:  I'm sorry.  Just for the record whether

20  this juror discussed the fact that his wife is coming to watch

21  with other jurors and what jurors he would have discussed that

22  with.

23          THE COURT:  Okay.

24          MR. REEVES:  Two quick points here.  I have no

25  problem, the Government has no problem with the inquiries and

```
 1   the questions, but I would ask the Court to complete the record
 2   of all the jurors before we make any judgments about --
 3           THE COURT:  Yeah, that's fine.
 4           MR. HEBERLIG:  That's fine with us.
 5           THE COURT:  I will definitely do that --
 6           MR. HEBERLIG:  That's fine.
 7           THE COURT:  -- because I think in fairness to
 8   everybody you don't want to -- he'll come back and we'll hear
 9   the end of this -- I want to then go on the record for that how
10   do we proceed and whether we make a decision tonight, whether
11   we make a decision tomorrow, we should definitely make a
12   decision if there is going to be a decision one way or the
13   other before Monday.
14           MR. HEBERLIG:  Yeah.
15           THE COURT:  I mean, that's all.
16           MR. HEBERLIG:  Thank you, Your Honor.
17       (Sidebar concluded.)
18           THE COURT:  A few more questions if I might.
19       Have you discussed this case or any aspect of this case
20   with any member of your family?
21           JUROR NO. 7:  Other than my wife asking me when she
22   thinks it's going to be done, no.
23           THE COURT:  Okay.  Well, I -- have you discussed this
24   with your wife?
25           JUROR NO. 7:  As I said, Judge, other than -- my
```

 1  wife --

 2          **THE COURT:**  And when I say "discuss," let me be --

 3          **JUROR NO. 7:**  Yeah, little clearer.

 4          **THE COURT:**  -- specific.  I don't mean that you've

 5  discussed with your wife:  Well, today I'm going to court or I

 6  think the case is going to last three weeks or two weeks or one

 7  week.  I mean -- my question is have you discussed with her any

 8  aspect of the evidence in this case or any aspect as to the

 9  outcome or any aspect as to the lawyers in connection with this

10  case?

11          **JUROR NO. 7:**  I guess I have to say yes because for me

12  to say no precludes, you know, saying what kind of day you had

13  when you get home.  I will say, you know, it was a longer day,

14  it was a rougher day today.  It was a bit -- you know, or there

15  was a lot of excitement today, but not specifically anything

16  having to do with testimony or witnesses; more just it's a long

17  day, it was a long day today.  It was a long day today.

18          **THE COURT:**  Okay.  Well, did you ever make the remark

19  in connection with the testimony of Mr. Truitt, Steve Truitt --

20  do you know who I'm referring to?

21          **JUROR NO. 7:**  I do.

22          **THE COURT:**  Did you ever make the remark to the effect

23  that you concluded that Steve Truitt's testimony was that these

24  defendants are guilty; he's guilty, Mr. Truitt, and these

25  defendants are guilty?  Did you ever make that remark?

SEALED PROCEEDINGS

1    **JUROR NO. 7:** No.



22    **THE COURT:** Okay.  All right.  Well, I don't think

23    there's anything further.  Is there anything further?  Am I

24    missing something?

25    **MR. REEVES:** No, Your Honor.

1          **MR. LINCENBERG:**  I think -- I think the Court had

2    commented on one other area.

3          **THE COURT:**  I'm trying to remember what that area is,

4    Mr. Lincenberg.

5          Oh, wait.  Here.  I have -- I have the eyes and ears.

6          Oh, yes.

7          Did you --

8          Yes.  Thank you.  And my court -- my law clerk reminded me

9    of the subject.

10          Did you ever express an opinion or a view that a defendant

11    was receiving or should receive or might receive a prison term

12    of five years or some number of years?  Did you ever express

13    that view?

14          **JUROR NO. 7:**  I think what you might be speaking about

15    is as, again, as we wait outside and we sometimes get delayed

16    coming back in here and --

17          **THE COURT:**  Yeah.

18          **JUROR NO. 7:**  Obviously, you folks are going through

19    whatever you go through and for us, we've been here eight and a

20    half weeks and nothing would make us happier than if the two

21    sides could come to an agreement where whatever -- whatever

22    compromise that you come with, that would make us all very

23    happy.  I can't lie to you.  That would make us all very happy.

24          **THE COURT:**  Yeah.  So my question is a bit different.

25    My question is did you ever express your view or speculation

```
 1  that a party was contemplating or should contemplate a specific
 2  term of years like 5 years or 25 years or 10 years or some
 3  number?  Did you ever express that view?
 4          JUROR NO. 7:  Yeah.  We just -- I would say like
 5  maybe -- maybe if they're going to come to a -- you know, an
 6  agreement, maybe X amount of time here, X amount here, dollar
 7  amount here.  Maybe that's something they were coming up with.
 8          THE COURT:  Okay.
 9          JUROR NO. 7:  If that's talking about the case, then
10  that's talking about the case.  We're just -- we're just
11  standing out in the hallway waiting to come back in to do our
12  job.
13          THE COURT:  Okay.
14          MR. LINCENBERG:  Your Honor, I just think we should
15  ask --
16          THE COURT:  Yes.  Go ahead Mr. Lincenberg.
17          MR. LINCENBERG:  -- who did you express that to?
18          THE COURT:  Who did you express that view to, any
19  particular person?
20          JUROR NO. 7:  That would be the -- probably the three
21  jurors closest to me standing in the hallway out there.
22          THE COURT:  And who would that be?
23          JUROR NO. 3:  That would be Claire, Kristine, Nestor
24  would be the three that would be standing around me.
25          THE COURT:  Okay.
```

1    **JUROR NO. 7:**  Because we're like what -- you know,

2    we're asking the question:  Why are we not starting at 1:15.

3    Why is it 1:20, why is it 1:25, you know?  Hey, maybe -- maybe

4    this thing is going to come to a conclusion.  I'm sure that --

5    **THE COURT:**  I guaranteed you at some point it will.

6    Anyway I understand that.  I think that answers the

7    question.  A couple of things.  Number one is I hope you

8    understand that you've only heard a portion of the case.  The

9    Government hasn't concluded with its evidence.  The defense may

10   present evidence that you should consider in viewing the

11   Government's case and you haven't heard what the law is, which

12   is important to hear the law because it deals with burden of

13   proof, presumption of innocence and it deals with the elements

14   of the offense.  Nor have you heard the views of your fellow

15   jurors.  So you have to keep an open mind and you have to keep

16   a willingness to change whatever view you have presently,

17   because everybody's got a view, to change that view in light of

18   anything that you subsequently learned.  So can you do that?

19   **JUROR NO. 7:**  I can.

20   **THE COURT:**  Okay.  And the other thing is, I don't

21   think you should discuss -- I'm directing you not to discuss

22   these proceedings with any of your fellow jurors.  I'm

23   directing you all to follow that direction --

24   **JUROR NO. 7:**  I understand that direction.

25   **THE COURT:**  -- and to follow the Court's instructions,

SEALED PROCEEDINGS

1   okay?

2           **JUROR NO. 7:**  Yes, sir.

3           **THE COURT:**  Great.  Thank you very much and I'll see

4   you on Monday.

5           **JUROR NO. 7:**  Thank you very much.

6           **THE COURT:**  I think you go out the side, Mr. Lawson.

7   That door is locked.

8           **JUROR NO. 7:**  Okay.

9           **THE COURT:**  Thank you.

10      (Juror No. 7 excused.)

11      (Juror No. 8 enters courtroom.)

12          **THE COURT:**  Sit there.  Oh, you sit wherever you want

13  to sit.  That's fine.  That's your regular seat, right?

14          **JUROR NO. 8:**  I can sit wherever I want?

15          **THE COURT:**  That's your regular seat, right?

16          **JUROR NO. 8:**  That's where I always sit, yeah.

17          **THE COURT:**  With the cushions.

18          **JUROR NO. 8:**  Oh, yeah.  Love that.  Yeah.

19          **THE COURT:**  That's great.  Yeah.

20      Well, aren't you in the mail, sir, are you a carrier?

21          **JUROR NO. 8:**  Oh, yeah.

22          **THE COURT:**  Yeah, well, then you have to be treated --

23  you have to be treated well.

24          **JUROR NO. 8:**  That's right, yeah.

25          **THE COURT:**  Exactly.  Well, thank you very much.

1    **JUROR NO. 8:**  Okay.

2    **THE COURT:**  We are inquiring into each juror.  As you

3    can see we're just going down the line and we have this series

4    of questions to ask, but I'll tell what you has prompted it.

5    **JUROR NO. 8:**  Okay.

6    **THE COURT:**  What has prompted it is that we have

7    received information -- the Court has received information that

8    some of the jurors have expressed views about this case and the

9    views relate to the guilt or innocence of a defendant, relate

10    to the evidence that's been presented, witnesses who have

11    testified, lawyers who have asked questions of the witnesses,

12    that some jurors have expressed some views about that.

13    **JUROR NO. 8:**  Okay.

14    **THE COURT:**  And I have a second question but let me

15    ask the first one first.

16    **JUROR NO. 8:**  Yeah.

17    **THE COURT:**  Okay.  Are you aware of any discussion by

18    any juror and not just you.  I'm not just asking whether you've

19    done it.

20    **JUROR NO. 8:**  Okay.

21    **THE COURT:**  I'm asking are you aware of anybody doing

22    that.

23    **JUROR NO. 8:**  You're talking about amongst us, right?

24    **THE COURT:**  Yes.

25    **JUROR NO. 8:**  Okay.  To be honest, I'm the first one

1    to bolt --

2            THE COURT:  Yes, it's important to be honest.

3            JUROR NO. 8:  Okay.  I'm the first to bolt out of

4    here, so I don't hear anything and then if I come here, I'm the

5    earliest because I don't want to be late, so from what I know,

6    zilch, nothing.

7            THE COURT:  Okay.  You haven't heard anybody express

8    any views?

9            JUROR NO. 8:  None with a capital N.  None.

10            THE COURT:  Okay.  Now, let me ask a different

11    question.

12       We have received information that some jurors have done

13    some investigation on the Internet, that is, use their

14    telephone --

15            JUROR NO. 8:  No, not that I've heard of.

16            THE COURT:  -- to access -- well, I'm not asking about

17    you.  I'm asking whether --

18            JUROR NO. 8:  Not me.  Not that I know of, of

19    everybody.

20            THE COURT:  You're not aware of anybody doing that?

21            JUROR NO. 8:  None.  None.

22            THE COURT:  Okay.  Now, let me get a little bit more

23    specific.

24            JUROR NO. 8:  Uh-huh.

25            THE COURT:  Because we have some information that one

1  of the jurors, Mr. Lawson, has actually expressed -- the person

2  who sits next to you --

3         **JUROR NO. 8:**  Next to me.

4         **THE COURT:**  -- has actually expressed some views in

5  connection with this case and these views were expressed when

6  he was in line or just about to get in line to come in to the

7  court.

8      And it was also said that you were near him because you --

9         **JUROR NO. 8:**  I could definitely answer that.

10        **THE COURT:**  -- line up with him.  Pardon me?

11        **JUROR NO. 8:**  I could definitely answer that.

12        **THE COURT:**  Go ahead.

13        **JUROR NO. 8:**  There's no views at all.  The

14  conversation you see us, it's about where we live.

15        **THE COURT:**  Is about what?

16        **JUROR NO. 8:**  Where we live at, you know, where we're

17  coming from --

18        **THE COURT:**  Oh.

19        **JUROR NO. 8:**  -- from here, from -- you know, where we

20  live at, Daly City, San Francisco.  That's a common -- that's a

21  common conversation.  Nothing to do with this.

22        **THE COURT:**  So you have not heard him express any view

23  about the case --

24        **JUROR NO. 8:**  None.

25        **THE COURT:**  -- is that right?

```
 1              JUROR NO. 8:  None.

 2         THE COURT:  Okay.  And also --

 3              JUROR NO. 8:  He sits near me.

 4         THE COURT:  -- another person that's near you, though

 5    she perhaps -- yeah, she would be near you because she's Juror

 6    No. 2 is Claire --

 7              JUROR NO. 8:  The one raise her hands every time?

 8         THE COURT:  Yes.  Yeah.

 9              JUROR NO. 8:  Yeah.

10         THE COURT:  Okay.  Have you heard her express any

11    views?

12              JUROR NO. 8:  No, no, no.

13         THE COURT:  Okay.

14              JUROR NO. 8:  Our conversation is where are you coming

15    from, how long you walk, how long you drive.

16         THE COURT:  Okay.

17              JUROR NO. 8:  How much -- they ask me how much I pay

18    for my Uber ride every morning.

19         THE COURT:  How much do you pay for your Uber ride

20    every morning?

21              JUROR NO. 8:  22, 30 bucks.

22         THE COURT:  Do you get reimbursed for that?

23              JUROR NO. 8:  I get a check.

24         THE COURT:  I think you do get reimbursed for that.

25              JUROR NO. 8:  Yeah.
```

**SEALED PROCEEDINGS**

1          **THE COURT:**  Okay.

2          **JUROR NO. 8:**  Yeah.

3          **THE COURT:**  All right.  Well --

4          **JUROR NO. 8:**  So that's our conversation.

5          **THE COURT:**  Okay.

6          **JUROR NO. 8:**  Yeah.

7          **THE COURT:**  All right.  That's a perfectly decent

8   conversation.

9          **JUROR NO. 8:**  Outside of this box nothing is going on,

10  to be honest.

11         **THE COURT:**  Okay.  Now, do you understand another

12  thing --

13         **JUROR NO. 8:**  From my perspective, all right?

14         **THE COURT:**  Well, I'm asking -- I'm asking you two

15  questions.

16         **JUROR NO. 8:**  I don't know about this side because my

17  neck is wrecked, so I don't even look.

18         **THE COURT:**  Okay.

19         **JUROR NO. 8:**  So if I go on the elevator and nod -- I

20  seen those people, nod, that's it.

21         **THE COURT:**  No conversation on the elevators?

22         **JUROR NO. 8:**  Not that I know of.

23         **THE COURT:**  Okay.  Well, they're -- these are very

24  well behaved.

25         **JUROR NO. 8:**  So if you got --

 1             THE COURT:  They're frightened to death of me.

 2             JUROR NO. 8:  If you got -- ask them.  For me,

 3    nothing.

 4             THE COURT:  Okay.

 5             JUROR NO. 8:  I'm totally blank.  Shut down.

 6             THE COURT:  Great.

 7         So let me say a couple of things.

 8             JUROR NO. 8:  So if you guys want to ask me, ask me.

 9             THE COURT:  Perfect, Mr. Nestor.

10             JURY NO. 8:  Yeah.

11             THE COURT:  But I need to tell you something.

12             JUROR NO. 8:  Yeah.

13             THE COURT:  You've only heard a portion of the case.

14    You've heard a lot, you've heard a lot but the Government

15    hasn't finished and then the defense gets to put on evidence

16    that they think you ought to consider in evaluating all the

17    evidence, then I tell you what the law is like I'm going to

18    instruct you on the presumption of innocence, I'm going to

19    discuss with you the burden of proof, who has to prove the

20    case.  I'm going to tell you about the elements of the offense,

21    what each element is and how it has to be proven beyond a

22    reasonable doubt.  I'm going to give you all those

23    instructions.

24             JUROR NO. 8:  Yeah.

25             THE COURT:  When that's done, you are going to go back

1  into your jury room and you're going to talk to your fellow

2  jurors and you're going to see what their views are and then --

3  and you're expressing your own view.

4      **JUROR NO. 8:**  Okay.

5      **THE COURT:**  And at that time you can arrive at a

6  decision but until that occurs, you have to keep an open mind.

7      Can you do that?

8      **JUROR NO. 8:**  Absolutely.  You know, for me, there's

9  no decision.  I don't have my turn yet.  That's -- I've got to

10 let you guys finish then I have my time.  You got your time, I

11 got my time.

12     **THE COURT:**  Yeah.

13     **JUROR NO. 8:**  So that's it.

14     **THE COURT:**  Unfortunately, it's all my time.

15     Okay.  Is there anything you want to ask?

16     **JUROR NO. 8:**  These parties got their own time, right?

17     **THE COURT:**  Anything else?  Nothing?

18     **JUROR NO. 8:**  Then just spit it out if you want to --

19     **THE COURT:**  Okay.  Great.  Mr. Nestor have a -- I mean

20 Nestor -- Mr. Dejuan.

21     **JUROR NO. 8:**  So am I coming back Monday or what?

22     **THE COURT:**  Is it Dejuan?  Dejuan.

23     **JUROR NO. 8:**  I just want to know if I'm coming back

24 Monday.

25     **THE COURT:**  Wait.  We have another thing to tell you.

SEALED PROCEEDINGS

```
 1            JUROR NO. 8:  Yeah.

 2            THE COURT:  It's important that you not discuss any of

 3    this what happened here --

 4            JUROR NO. 8:  None.

 5            THE COURT:  -- with any of your jurors, okay?

 6            JUROR NO. 8:  I don't want to talk over you but it's

 7    none, none of that.

 8            THE COURT:  Okay.  Thank you.  Have a nice weekend

 9    Mr. Dejuan.

10            JUROR NO. 8:  All right.  So I'm coming back Monday?

11            THE COURT:  Monday, yeah.  Please come back on Monday.

12            JUROR NO. 8:  I'll have to talk to my boss.

13            THE COURT:  We're a little shorthanded here.

14        (Juror No. 8 exits courtroom.)

15        (Discussion held off the record.)

16        (Juror No. 9 enters courtroom.)

17            THE COURT:  Okay.  Come on, Mr. Macnaughton.

18        Good afternoon, Mr. Macnaughton.

19            JUROR NO. 9:  Hello.

20            THE COURT:  Hello.

21        The reason we're going through this process one juror or

22    another is we've received information that some jurors have

23    discussed this case, have discussed the outcome of the case,

24    have discussed some of the evidence of the case, have discussed

25    the lawyers in the case, the manner in which the case is --
```

 1  witnesses have testified and expressed some opinions on this

 2  case.

 3      In addition, we have received information that some of the

 4  jurors have conducted a Internet search, that is, they've gone

 5  on their telephone and asked about various people who are

 6  involved in this case one way or the other.

 7      My question to you is are you aware of either of those

 8  things happening?

 9          **JUROR NO. 9:**  No, I am not.

10      **THE COURT:**  Okay.  And have you heard anyone, any of

11  your fellow jurors, express any view as to the outcome of this

12  case or anything about this case?

13          **JUROR NO. 9:**  I have not.

14      **THE COURT:**  Okay.  And I take it you have not; is that

15  correct?

16          **JUROR NO. 9:**  No, I have not.

17      **THE COURT:**  Okay.  I want to just cover the -- I want

18  you to be sure that you understand my question isn't just

19  limited to what may have been said in a jury room.  It can

20  occur in the hallway, it can occur while jurors are waiting to

21  come in, it can occur anywhere in the building or outside the

22  building where jurors run into each other, see each other like

23  an elevator or a lobby or anything.

24      Is your answer the same, you haven't heard anything?

25          **JUROR NO. 9:**  Yeah.  Same answer.

1    **THE COURT:**  Okay.  You understand -- I think you

2    probably do -- that the case -- while you've heard a tremendous

3    amount of testimony in the case, the Government hasn't

4    concluded, hasn't finished with their testimony, so we'll hear

5    more of their testimony.

6        The defense has not had the opportunity of presenting any

7    evidence that it thinks you ought to consider.  You haven't

8    heard what the law is, like the presumption of innocence, the

9    burden of proof, the elements of the offense.  I haven't had

10   that opportunity to discuss that with you and you haven't heard

11   the views of your fellow jurors.  So all of that will take

12   place before you are permitted under the law to render a

13   decision.  Do you understand that?  Can you keep an open mind

14   until then?

15       **JUROR NO. 9:**  Yes, I can.

16       **THE COURT:**  Is there anything that you feel that the

17   parties should know about the conduct of the jury that may be

18   of some importance to them in conducting this trial?

19       **JUROR NO. 9:**  No.  I can't think of anything.

20       **THE COURT:**  Okay.  And do -- I'm going to instruct you

21   not to discuss what happened out here until after you've been

22   finally discharged.  Is that agreeable with you?

23       **JUROR NO. 9:**  Yes.

24       **THE COURT:**  And is it agreeable that you will follow

25   all the Court's instructions with respect to not going on the

 1  Internet, not forming or expressing any opinion?  Is that

 2  clear?

 3          **JUROR NO. 9:**  Very clear.

 4          **THE COURT:**  Sounds as clear.

 5      Anything that I need to inquire into?

 6          **MR. REEVES:**  No, Your Honor.  Thank you.

 7          **THE COURT:**  Thank you very much.  Appreciate it.

 8      Okay.  Let's -- my courtroom deputy would like to take a

 9  break.  Let's take a break.

10      (Juror No. 9 exits court room.)

11          **MR. LINCENBERG:**  Ten minutes?

12          **THE COURT:**  Court reporter, court reporter.

13      (Recess taken at 3:13 p.m.)

14      (Proceedings resumed at 3:32 p.m.)

15          **THE COURT:**  Let the record reflect the courtroom is

16  sealed and the defendants have been excused.  Attorneys are

17  here.

18      (Juror No. 10 enters courtroom.)

19          **THE COURT:**  Good afternoon.  Is it Ms. Masgula,

20  Masgula?

21          **JUROR NO. 10:**  Yeah.  That's correct.  Masgula.

22          **THE COURT:**  Yeah.  Sorry.  I'm mispronouncing your

23  name.

24          **JUROR NO. 10:**  Everybody does it.

25          **THE COURT:**  As you can tell, we are inquiring into

 1   each juror as to what their knowledge is as to the jury conduct

 2   up until the present time.  And what has triggered this is that

 3   the Court has received information that one or more jurors has

 4   expressed views about the outcome of the case, about the manner

 5   in which the case has been conducted, about the attorneys,

 6   about some of the proceedings that have occurred in this court

 7   and has expressed these views during recesses or other

 8   encounters with other jurors.

 9        That's one aspect.

10        The second aspect is we received information that one or

11   more of the jurors has conducted a form of legal -- pardon

12   me -- a form of Internet research, that is, has used telephone

13   to look up some aspect of either the case or the people

14   connected with the case or any individuals involved in the case

15   and has -- and has been observed doing that.

16        So my question to you is are you aware of any of that

17   happening?

18        **JUROR NO. 10:**  No.  I will say sometimes we talk about

19   the fashion of the lawyers.

20        **THE COURT:**  We've -- that's good, yeah.  And no doubt

21   it's noteworthy, but other than the fashion of the lawyers or

22   the parties or the witnesses, has anything else been discussed,

23   to your knowledge?

24        **JUROR NO. 10:**  No, not to my knowledge.

25        **THE COURT:**  And that means you haven't -- obviously

1  you haven't done it yourself; is that correct?

2          **JUROR NO. 10:**  No.

3          **THE COURT:**  And you haven't heard anybody do it?

4          **JUROR NO. 10:**  No.

5          **THE COURT:**  And you haven't heard anybody say to

6  anybody else that that person or a person is doing it; is that

7  correct?

8          **JUROR NO. 10:**  That's correct.

9          **THE COURT:**  Okay.  So I do want to emphasize a couple

10  things, if I might.

11      First of all, while the case has been extremely lengthy

12  and you've heard a lot of testimony in this case, the

13  Government hasn't concluded.  They have some additional

14  testimony that they want to present for your consideration.

15      The defense has not had the opportunity yet of bringing

16  any -- any information that they think is appropriate for you

17  to consider.

18      You haven't heard what the law is.  I haven't described

19  the elements of the offense.  I haven't really described the

20  presumption of innocence, the burden of proof, any of those

21  factors that have to be considered by you in arriving at a

22  verdict.

23      And finally, you haven't really discussed the views of

24  your fellow jurors to see whether or not there's agreement with

25  your views or maybe you should change your views and here are

1  the reasons why.

2      So that is why we wait until the end of the case to give a

3  verdict.  And my question is, do you feel you can do that?

4          **JUROR NO. 10:**  Yes.  I will --

5          **THE COURT:**  Go ahead.

6          **JUROR NO. 10:**  I don't know how much longer this trial

7  is going to go on for --

8          **THE COURT:**  Yeah.

9          **JUROR NO. 10:**  June 14th I do have a trip planned.  I

10  thought that, you know, a couple weeks of buffer would be good,

11  but I'm not sure like what the --

12         **THE COURT:**  Okay.

13         **JUROR NO. 10:**  -- ETA is.

14         **THE COURT:**  May I inquire a little bit about the trip?

15  What sort of trip?  Where is it?  What's it --

16         **JUROR NO. 10:**  Yeah.  It's a domestic trip.  I'm

17  meeting a friend and we're going on a parks trip through South

18  Dakota.

19         **THE COURT:**  The Badlands?

20         **JUROR NO. 10:**  Yeah, yeah.

21         **THE COURT:**  The Badlands are fantastic.

22         **JUROR NO. 10:**  That's what I heard.

23         **THE COURT:**  Actually, the first time I saw the

24  Badlands I thought it was the Grand Canyon.  I'll give you some

25  sense of my abysmal geography, but --

```
 1        Well, and I can't -- I'm not going to promise a particular
 2   date at this point.  It depends on any number of things.  But
 3   the parties, I will tell you, have been moving as quickly as
 4   possible through a massive amount of information and I've not
 5   seen them delay in anything that they've done and they are --
 6   so but don't blame them.  Blame me --
 7             JUROR NO. 10:  Oh, yeah.
 8             THE COURT:  -- or blame somebody, but don't blame them
 9   for -- for it taking so long.  It's a lengthy presentation.
10        Okay.  The -- again, can I get your assurance that you
11   will keep an open minded until the case is finally submitted to
12   you for decision?
13             JUROR NO. 10:  Yeah, of course.
14             THE COURT:  And that you'll follow all the Court's
15   instructions, not do any research, not form or express any
16   opinion?
17             JUROR NO. 10:  Yes.
18             THE COURT:  Okay.  Also, this process -- this
19   procedure here is a little unusual, but I'm instructing each
20   juror not to discuss this with their fellow jurors.  When the
21   case is all over, you'll be free to talk about anything you
22   want to talk about, but until then we want you not to have a
23   discussion about any of this.
24             JUROR NO. 10:  Sure.
25             THE COURT:  Okay.  Anything further?
```

```
 1        Thank you very much for coming.  Appreciate it.
 2            JUROR NO. 10:  Yeah.
 3            THE COURT:  Have a nice weekend.
 4        (Juror No. 10 exits courtroom.)
 5        (Juror No. 11 enters courtroom.)
 6            THE COURT:  And you are Ms. Cruz; is that right?
 7            JUROR NO. 11:  Yes.
 8            THE COURT:  And thank you very much.
 9        As you can tell, we're questioning each juror.  And the
10    reason is that the Court has received information that one or
11    more of the jurors has discussed some aspects of the case,
12    formed an opinion as to the guilt or innocence of the
13    defendant -- a defendant -- has commented on the manner in
14    which the case is being presented, has commented on the
15    attorneys, has commented on the evidence, has commented on
16    certain things that have occurred that -- about the case, and
17    that's one aspect.
18        The second thing is that we've received information that
19    one or more jurors has done some research, that is, gone on the
20    Internet, looked up some individuals that may have some
21    relationship to the case, either counsel or parties or anything
22    to do with the case.
23        And my question to you is are you aware of either of those
24    things occurring?
25            JUROR NO. 11:  No.
```

1        **THE COURT:**  Okay.  And have you heard -- I assume by

2   your answer you haven't done any of that; is that correct?

3        **JUROR NO. 11:**  Correct.

4        **THE COURT:**  And have you heard anybody doing that?

5        **JUROR NO. 11:**  No.

6        **THE COURT:**  And have you heard any reports that

7   somebody did that?

8        **JUROR NO. 11:**  No.

9        **THE COURT:**  Okay.  You understand that the case, while

10  it's gone on a long time, there's been a lot of evidence has

11  been presented -- testimony has been presented -- the

12  Government hasn't concluded their testimony, their evidence.

13  Defense has an opportunity to present anything that they feel

14  would be useful in making your determination.  You haven't

15  heard what the law is.  I haven't instructed you on the

16  elements of the offense, presumption of innocence, the burden

17  of proof or any of the principles that are involved here and

18  you haven't had an opportunity to discuss the views of your

19  fellow jurors, okay?

20        That all happens at the conclusion or as the case

21  proceeds.  And my question to you is can you keep an open mind

22  on -- on the issue of guilt or innocence until we reach that

23  final stage?

24        **JUROR NO. 11:**  Yes.

25        **THE COURT:**  Okay.  And also, I want you to understand

1  that this inquiry that we are making now is something not to be

2  discussed with your fellow jurors.  It just is a -- it's a --

3  it's irrelevant to the case in a sense and it shouldn't be

4  discussed by you or any of your fellow jurors but that at the

5  conclusion of the case, when it's all over and you've been

6  discharged, you'll be free to discuss any aspect of the case.

7  You have your First Amendment rights, so I'm not forever

8  foreclosing you from discussing this, it's just now is not the

9  time.  While you are sitting as a juror is not the time to have

10  that discussion.  Do you understand that?

11          JUROR NO. 11:  I do.

12          THE COURT:  Okay.  Anything else?

13          MR. REEVES:  No.

14          THE COURT:  Thank you so much.  Have a nice weekend.

15      (Juror No. 11 exits courtroom.)

16      (Juror No. 12 enters courtroom).

17          THE CLERK:  Take a seat in the first chair.

18          THE COURT:  Good afternoon, Mr. Ricci; is that right?

19          JUROR NO. 12:  That's right.  Yeah.

20          THE COURT:  Ricci, is that how you pronounce it?

21          JUROR NO. 12:  You did it, yeah.

22          THE COURT:  As I'm sure you can tell, we are inquiring

23  of all the jurors into a particular subject.  The subject is

24  that the Court has received information that one or more jurors

25  has expressed views about the case, that is, the outcome of the

1   case, the guilt or innocence of a defendant, the manner in

2   which the case is being conducted, the attorneys involved in

3   the case, some of the witnesses' responses.  There's been a

4   discussion among or with at least one or more of these jurors,

5   okay?  That's one aspect.

6       The second aspect is that it's been reported that a juror

7   has done some research into the case, gone on the telephone and

8   inquired into something about the lawyers or something about --

9   some nature -- some aspect of the case.

10      My question to you is are you aware of either of these

11  things occurring?

12          JUROR NO. 12:  I am not aware of any of that, no.

13          THE COURT:  And I take it from your answer you have

14  not engaged in either of those practices?

15          JUROR NO. 12:  I have not engaged in that, no.

16          THE COURT:  And as far as you know, have you heard or

17  seen anyone engage in those practices?

18          JUROR NO. 12:  I have not seen that from any of the

19  other jurors, no, that I've interacted with.

20          THE COURT:  And have you heard from any juror that

21  that's occurred?

22          JUROR NO. 12:  I have not heard that, no.

23          THE COURT:  Okay.  Now, you understand the case is in

24  its -- we're arriving towards a conclusion but the Government

25  has not completed its presentation of the evidence, the defense

**SEALED PROCEEDINGS**

1  has not had the opportunity of presenting evidence that they

2  want you to consider and nor have I given the instructions as

3  to what the law is, the burden of proof, presumption of

4  innocence, elements of the offense, all of which are extremely

5  important in arriving at a verdict.

6      And finally, you haven't had an opportunity to discuss the

7  views of your fellow jurors in arriving at your verdict.  All

8  that will occur.  And my question to you is, can you keep an

9  open mind until that occurs?

10      **JUROR NO. 12:**  Absolutely, yeah.

11      **THE COURT:**  And can you follow all the instructions of

12  the Court?

13      **JUROR NO. 12:**  Absolutely.

14      **THE COURT:**  And one instruction is that you are not to

15  discuss this process, this procedure, with anyone until after

16  you've been discharged.  Is that all right?

17      **JUROR NO. 12:**  Definitely can, yep.

18      **THE COURT:**  Any questions?

19      **MR. REEVES:**  No, Your Honor.

20      **THE COURT:**  Thank you very much.  Have a nice weekend.

21      **JUROR NO. 12:**  Thank you.

22      (Juror 12 exits courtroom.)

23      **MR. LINCENBERG:**  Ms. Scott --

24  I just --

25      **THE COURT:**  Go ahead.

```
 1          MR. LINCENBERG:  -- want to remind the Court the next

 2   juror was in that breakout separate lunchroom.

 3          THE COURT:  Pardon?

 4          MR. LINCENBERG:  The next juror, Alternate No. 1 --

 5          THE COURT:  Yeah.

 6          MR. LINCENBERG:  -- if perhaps the Court could inquire

 7   a little further with her because she was in that breakout

 8   room.

 9          THE COURT:  Oh, she's in that breakout?

10          THE CLERK:  Yes.

11          THE COURT:  Okay.  Great.  Thank you for the reminder.

12   And I think I'll be very specific.  I'll say --

13          MR. MORVILLO:  We agree.

14          THE COURT:  Yeah, okay.  No reason not to.

15          MR. LINCENBERG:  Yeah.

16          THE COURT:  Thank you.

17      (Juror 13 enters courtroom.)

18          THE CLERK:  Have a seat in that first seat.

19          JUROR NO. 13:  Hello.

20          THE COURT:  Good afternoon.

21          JUROR NO. 13:  Good afternoon.

22          THE COURT:  As you can tell we're going through the

23   entire jury panel asking questions of you this afternoon, which

24   is a little -- asking questions of all of you.

25          JUROR NO. 13:  Okay.
```

1          THE COURT:  So you're not being singled out --

2          JUROR NO. 13:  Okay.

3          THE COURT:  -- you're one of, as it turns out, 15

4     people who we're inquiring into.

5          Let me tell you what the subject matter is.

6          The Court received information that one or more -- and

7     I'll identify it a little bit later for you -- jurors have

8     expressed an opinion as to some issues in this case,

9     particularly -- but I'm not limiting it to it -- the guilt or

10    innocence of a defendant, the way witnesses have testified, the

11    conduct of counsel in inquiring into or presenting the evidence

12    and some aspect of the case they have expressed a view, even in

13    terms of how the case should be resolved; should it settle,

14    should it -- whatever, but it's in connection with this case.

15         A second --

16         JUROR NO. 13:  I'm sorry, what was the first thing you

17    mentioned?

18         THE COURT:  Well, the first thing is that they've

19    expressed a view about the manner in which -- some aspect of

20    the case --

21         JUROR NO. 13:  Uh-huh.

22         THE COURT:  -- such as the guilt or innocence of a

23    particular defendant they expressed a view, expressed a view as

24    to how the case ought to be resolved; example, it should settle

25    or a defendant should receive some -- a particular kind of

 1    treatment or punishment, that witnesses have reacted a

 2    particular way to a particular type of question.  They've

 3    commented on the evidence essentially.

 4         That's one aspect of it.

 5         The second aspect is that a juror or more, one or more,

 6    has done research, that is, has gone on a telephone and looked

 7    up on the Internet -- because I guess that's where you'd find

 8    things -- something about a lawyer that is involved in the case

 9    or an individual who's been named in the case and has received

10    information obviously on the Internet as to that individual.

11         My question to you is are you aware of either of those

12    things happening?  And by "aware" let me just explain.  I mean

13    either that you've seen it or heard about it either one way or

14    the other?

15         **JUROR NO. 13:**  I am not aware of anyone looking up on

16    the Internet; I have not heard about that.  I have heard the

17    jurors talking about the case in terms of the different

18    attorneys' manners and different witnesses responding.

19         **THE COURT:**  Okay.  Anything else that comes to mind?

20         **JUROR NO. 13:**  Certainly, not anything about the way

21    the case should be settled or decided on.

22         **THE COURT:**  Okay.  Let me talk about what you've heard

23    and what you remember what you heard.

24         First of all, can you be a little bit more explicit if you

25    have a memory of what you heard a juror say?

1    And I have to ask you -- and I know it makes you somewhat

2    uncomfortable, but I have to ask you who said what?  In other

3    words, it's important that we identify a particular juror.  If

4    you -- if you have a recollection that Juror No. X said this or

5    Juror No Y said that, it's important we know.

6    And I'm sure you can appreciate why it's important, but

7    you don't have to feel uncomfortable.  I will tell you that

8    whatever information you give to us will remain confidential.

9    The lawyers will know about it, but it wouldn't be shown to the

10   press, it won't be disclosed to your fellow jurors, you see.

11   You'll be -- you'll be -- you'll be treated in a

12   confidential manner, ultimate -- and this record we're making

13   now is sealed.  The press has no access to it, the public has

14   no access to it and it will be -- it will be sealed by myself

15   and any court that looks at it will look at it with the

16   understanding that it's not to be disclosed publicly.

17   You understand that?

18        **JUROR NO. 13:**  I appreciate that.

19        **THE COURT:**  So I really don't want you to sit there

20   and think, you know, if I say something, you know, five years

21   from now or a year from now or something, somebody will --

22   there will be some kind of unfortunate consequence to it.  Do

23   you understand what I'm saying?

24   And I also want to tell you while this is unusual, it's

25   happened before.  It's not unheard of.  And the only thing

```
1   that's sort of un -- is that it never really makes it into the

2   press or never -- you know, it never comes back to haunt the

3   juror who has said anything.  Okay.

4           JUROR NO. 13:  I understand.  Thank you.
```



1 ████████████████████████████████████████

2 ████████████████████████████████████

3 ███████████████████████████████

4     ████████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████

7 █████████████████

8           **THE COURT:**  Okay.  I just want to emphasize the fact

9 that I know you're an alternate, but it's entirely possible

10 you'll be sitting on the jury and participating in the case as

11 any other juror, but that is a decision that will be made at

12 some point, but your status then would change and does that

13 give you any concern?

14           **JUROR NO. 13:**  In what way?

15           **THE COURT:**  Well, I mean, if you join the jury as a

16 members of the jury, does that -- does that -- is that a

17 problem?

18           **JUROR NO. 13:**  I don't believe so, no, it should not

19 be.

20           **THE COURT:**  No?  Okay.  I wouldn't assume it would be,

21 but sometimes people think oh, I'm an alternate so I don't have

22 to decide anything but it turns out that alternates sometimes

23 become regular members of the jury, they do have to decide

24 something and you want to make sure that just because they

25 change their status doesn't present a particular issue.

```
 1            JUROR NO. 13:  I understand.  Thank you.
 2            THE COURT:  Yeah.  Okay.  Finally, I want you to
 3   understand, and I think it may be obvious, you've heard a lot
 4   of testimony so far.  The Government hasn't finished its case.
 5   It has some additional testimony for your consideration.  Then
 6   once they rest, the defense is entitled to present anything
 7   that they feel would be useful to your consideration and then I
 8   instruct you on the law and tell you the elements of the
 9   offense, what has to be proven.  I discuss presumption of
10   innocence, I discuss burden of proof.  All of these are
11   important factors for you to consider in arriving at your
12   decision plus the additional factor of listening to what your
13   fellow jurors say during deliberations and form an opinion.
14   Can you keep an open mind until then?
15            JUROR NO. 13:  Absolutely.
16            THE COURT:  Okay.  And my instruction to you would be
17   not -- two things.  Number one, not to discuss what happened
18   this afternoon in these proceedings with any other juror when
19   they -- or anybody else.  When the case is ultimately decided
20   and you're discharged, you can discuss it with anybody but not
21   until then.
22       And the other is to make sure that you follow all of the
23   Court's instructions.  Are you able to do so?
24            JUROR NO. 13:  Yes.
25            THE COURT:  Okay.  Have a nice day.
```

SEALED PROCEEDINGS

1          **JUROR NO. 13:**  Thank you.

2          **THE COURT:**  See you on Monday.

3     (Juror No. 13 exits courtroom.)

4     (Juror No. 14 enters courtroom).

5          **THE COURT:**  Mr. Bogdanov.

6          **JUROR NO. 14:**  Close enough.

7          **THE COURT:**  Well, not close enough.  How do you

8     pronounce it?

9          **JUROR NO. 14:**  Bogdanov.

10          **THE COURT:**  We'll go with that.  Good afternoon.

11          **JUROR NO. 14:**  Good afternoon.

12          **THE COURT:**  The reason every juror is being questioned

13     is because the Court has received information that one or more

14     jurors has expressed views about some of the evidence or the

15     outcome or something to do with people who are involved in this

16     case.  That's one thing.

17          The second thing is that the Court has also received

18     information that one or more jurors is doing an investigation,

19     that is, going on the Internet and looking up individuals or

20     terms or something to do with this case.  Are you aware of

21     either of these things happening?

22          **JUROR NO. 14:**  I am not aware, no.

23          **THE COURT:**  Okay.  And I assume that you haven't done

24     either of those things?

25          **JUROR NO. 14:**  No.

1     THE COURT:  And when I say "aware," so it's a little

2  bit broader, have you heard anybody discuss any of these

3  things?

4     JUROR NO. 14:  I have not heard anybody discussing

5  researching things online, looking up terms, anything of the

6  sort.  I have not heard anybody discussing what they thought of

7  witnesses.

8     We've occasionally had smalltalk about how some of the

9  cross-examinations are -- like some of the lawyers' approaches

10  to asking questions and that's really it.

11     We haven't offered any opinions on particular witnesses

12  and their views or what they testified to.

13     THE COURT:  Okay.  And these discussions where you --

14  where the subject matter is the approach of --

15     JUROR NO. 14:  It's mainly --

16     THE COURT:  Could you elaborate --

17     JUROR NO. 14:  Yeah.

18     THE COURT:  -- a bit on that?

19     JUROR NO. 14:  Yeah.  I wasn't particularly clear.

20  It's mainly, you know, we'll come back in --

21     THE COURT:  Sorry?

22     JUROR NO. 14:  It's mainly we'll come back into the

23  room and be like, oh, that witness was snappy or something like

24  that, just comments of that nature, nothing any further than

25  that.

1    **THE COURT:**  So has there been any substantive

2  conversation --

3    **JUROR NO. 14:**  No.

4    **THE COURT:**  -- on this witness proved this or this

5  witness couldn't answer that question or this witness went on

6  and discussed things that were discussed or something like

7  that?

8    **JUROR NO. 14:**  No, nothing of that nature, no.

9    **THE COURT:**  Okay.  All right.  You're an alternate --

10    **JUROR NO. 14:**  Yes.

11    **THE COURT:**  -- but you may become a members of the

12  jury and my question is does that give you any concern?

13    **JUROR NO. 14:**  No.

14    **THE COURT:**  All right.  And I would instruct you

15  that --

16    Oh.  Did I give the talk about reserving judgment?  Have I

17  said that already to this --

18    **MR. HEBERLIG:**  No.

19    **THE COURT:**  I'm getting a little déjà vu or the

20  reverse of déjà vu.  Never vu -- jamais vu.

21    Oh, the question is -- oh.  My point is that you've heard

22  some of the evidence, you've heard a lot of evidence, but the

23  Government hasn't could be concluded its case, they have some

24  additional evidence.

25    The defense has not had the opportunity yet to present

```
 1   anything they think you ought to consider, and you haven't
 2   heard what the law is.  You haven't heard about -- I mean, I
 3   know you know some of the law anyway, but you haven't -- you
 4   haven't heard about the presumption of innocence, what is
 5   really meant by it, burden of proof, what is really meant by
 6   it, elements of the offense.  All of that will guide your
 7   deliberations.  And you haven't heard the views of your fellow
 8   jurors, so as to all of that, you have to reserve judgment
 9   until it's all been accomplished.  Are you able to do that?
10           JUROR NO. 14:  Absolutely.
11           THE COURT:  Okay.  And this conversation that we're
12   having, I want it to remain confidential.  At the end of the
13   case when you're discharged you can talk to anybody about it,
14   but at the present time I don't want it discussed in the jury
15   room or anywhere else.
16           JUROR NO. 14:  Understood.
17           THE COURT:  Okay.  Anything further?
18           MR. LINCENBERG:  No, Your Honor.
19           MR. REEVES:  No, Your Honor.
20           THE COURT:  Thank you.  Have a nice evening.
21           JUROR NO. 14:  Thank you.
22       (Juror No. 14 exits courtroom.)
23       (Juror No. 15 enters courtroom.)
24           THE COURT:  Ms. Wey.
25           JUROR NO. 15:  Hello.
```

1          **THE COURT:**  So you finally get to sit in a real chair

2    there.  Congratulations.

3          **JUROR NO. 15:**  Yeah.

4          **THE COURT:**  Don't have to sit there in the corner.

5          **JUROR NO. 15:**  Yes.

6          **THE COURT:**  As I think you must be gathering, we've

7    gone through the entire jury panel essentially asking the same

8    questions that I want to ask you and what has prompted it is

9    that the Court has received information that one or more jurors

10   has expressed some views as to the merits of the case, the

11   outcome of the case, the guilt or innocence of the defendant as

12   well as commented on the attorneys, about witnesses, different

13   aspects of the case as the case has proceeded and perhaps has

14   speculated as to various things that should be done or have

15   been done or may be occurring as we speak.

16         In addition, the Court has received information that one

17   or more of the jurors has conducted an inquiry, done research

18   on the Internet and has looked into the identity of or certain

19   terms that were used as well as various lawyers who have

20   participated in it and perhaps others as well.

21         Are you aware of either of those things happening?

22         **JUROR NO. 15:**  For the latter, the researching the

23   case, no, I'm not aware of that.

24         In terms of like discussion of lawyers and witnesses and

25   stuff, I guess I can say like sometimes.

SEALED PROCEEDINGS

1      **THE COURT:**  Pardon me?

2      **JUROR NO. 15:**  For discussion --

3      **THE COURT:**  Yes, lawyers, witnesses, so forth.

4      **JUROR NO. 15:**  Yeah.  It's like hopefully minor

5  comments like what people are wearing, but that's pretty much

6  all that I'm aware of.

7      **THE COURT:**  Okay.  Are you aware of any discussion

8  about the merits of the case, you know, like this witness is

9  credible, this witness is not credible, this witness is -- in

10  responding to examination has done X, Y or Z or somebody's

11  gotten annoyed with this witness or the lawyer has gotten

12  annoyed with a witness or the judge has gotten annoyed with a

13  witness or something like that?  Have you heard any of that?

14      **JUROR NO. 15:**  I guess sometimes there are comments on

15  like maybe certain facial expressions that we see during

16  testimony, but I think that's it.

17      **THE COURT:**  Have you expressed any views, you know,

18  about any of these things?

19      **JUROR NO. 15:**  I think one time I said that a witness

20  maybe was kind of entertaining, but that was it.

21      **THE COURT:**  A witness being entertaining?

22      **JUROR NO. 15:**  Yeah, like interesting to listen to.

23      **THE COURT:**  Okay.  Anything other than that do you

24  think?

25      **JUROR NO. 15:**  In terms of the other things that you

1    mentioned --

2              THE COURT:  Yes.

3              JUROR NO. 15:  -- I don't think so.

4              THE COURT:  Okay.  Which jury room were you assembling

5    in basically?

6              JUROR NO. 15:  The one right next door.

7              THE COURT:  The one next door.

8        Have you heard anybody during the time that you're in

9    recess and sitting in that jury room one time or another, have

10   you heard anybody in that room express any views?

11             JUROR NO. 15:  I think they're generally pretty

12   similar to what I mentioned previously.

13       I think hopefully everybody, at least from my perspective,

14   takes care to not comment on anything substantial, so at least

15   like my perception is, from our view, they're like trivial

16   comments.

17             THE COURT:  Okay.

18             JUROR NO. 15:  Yeah.

19             THE COURT:  But when you say "trivial comments," I

20   want to make sure that I understand what you mean and what I

21   mean.

22       Sometimes comments are just thrown out that may seem to be

23   trivial like "Oh, that witness is -- can't believe a word she

24   says, can't believe a word he says" or "he's obviously hiding

25   something," just sort of a throw-away line --

1    **JUROR NO. 15:** Nothing --

2    **THE COURT:** -- have you heard any of that?

3    **JUROR NO. 15:** Nothing like what you just said.

4    **THE COURT:** Okay. All right. Any further questions?

5    **MR. REEVES:** Just the open mind question, Your Honor.

6    **THE COURT:** Yeah. Well, the case, as I'm sure you're

7    well aware, the Government hasn't concluded at this point; they

8    have some additional testimony for your consideration.

9        The defense is then given the opportunity to present

10   whatever evidence they think is for your consideration that

11   they want you to consider and you've not heard the instructions

12   of the Court and I'm going to discuss the law, the elements of

13   the offense, I'm going to discuss the burden of proof, I'm

14   going to discuss the presumption of innocence, I'm going to

15   give you all the law in this area that you're going to need to

16   have in order to render a decision.

17       And finally, you haven't heard about -- you haven't heard

18   the views of your fellow jurors, which are important, and

19   that's part of the deliberative process.

20       So my question is, can you keep an open mind until all of

21   that occurs before you render a decision in this case?

22       **JUROR NO. 15:** Yes.

23       **THE COURT:** Okay. And also you understand that our

24   comments here, this proceeding here, should remain

25   confidential. I don't want you discussing it with any of the

```
 1  other jurors or having them discuss it with you.  Is that all
 2  right?
 3              JUROR NO. 15:  Yes, that's clear.
 4          THE COURT:  Okay.  So have a nice day and we'll see
 5  you on Monday.
 6      (Juror 15 exits courtroom.)
 7          THE COURT:  Okay.  So do we have some tentative
 8  thoughts?  And I don't think you should make any election until
 9  after you have discussed it with your clients.
10          MR. MORVILLO:  Your Honor, I'm just wondering now that
11  we have finished with the voir dire --
12          THE COURT:  I'm sorry?
13          MR. MORVILLO:  Now that we're finished with the
14  voir dire whether we should bring our clients back for any
15  further --
16          THE COURT:  Oh, they're here?
17          MR. MORVILLO:  Yes, they're here.
18          THE COURT:  Oh, absolutely.
19          MR. MORVILLO:  Okay.
20          THE COURT:  I was about to say we're not going to make
21  any decision until you've had an opportunity to discuss with
22  your clients.
23          MR. MORVILLO:  And we'd like that opportunity as
24  well --
25          THE COURT:  Oh, you will be.
```

1        **MR. MORVILLO:**  -- but I think if they could be present

2   for any colloquy that occurs now.

3        **THE COURT:**  Yes.  Please bring them in.

4        **MR. MORVILLO:**  Okay.

5        **THE COURT:**  I'm tired of my role as the grand

6   inquisitor.

7        (Defendants enter courtroom:)

8        **THE COURT:**  Okay.  Let the record reflect that both

9   defendants have returned to the court.

10   So any tentative views or more?

11        **MR. HEBERLIG:**  Yes.  2 and 7 should go and we would

12   move for them to be stricken for cause.  They both -- well, 2

13   lied to the Court; 7 -- if the Court could fine him, I would

14   encourage the Court to do so.  He's wasted -- nearly disrupted

15   this trial in a way that, you know, would be a complete

16   disaster but I find his attitude almost contemptuous and they

17   both need to go.

18   But I don't think -- the remaining jurors, they seemed

19   earnest.  Their views seemed sincerely held and, you know, we

20   don't have other motions for cause right now.

21        **THE COURT:**  All right.  Mr. Lincenberg?

22        **MR. LINCENBERG:**  Those are my views as well, Your

23   Honor.

24        **THE COURT:**  Okay.  Government?

25        **MR. REEVES:**  We'd like an opportunity to reflect on

 1   this over the weekend before taking any firm position and we

 2   encourage the Court not to take any action today.  That would

 3   be -- if you're not inclined to do that, I'm happy to begin to

 4   respond and offer more thoughts, Your Honor.

 5          THE COURT:  No, no.  I mean, I'm happy to give you

 6   time.  I mean, I -- time for a variety of reasons, not the

 7   least of which is by excusing two jurors -- and I'm not

 8   commenting on whether they should be excused or not until I

 9   hear from the Government, but by -- by excusing two jurors, we

10   then come within one of a mistrial.  And as I've indicated,

11   both on or off the record but I want to put it on the record,

12   it would be my intention to try the case again beginning in

13   September.  So that's the Court's present view, though I will

14   emphasize I haven't heard any argument on that and obviously I

15   would, but at least my state of mind here is that I would -- if

16   we had a mistrial, that's -- that's what I would do.  So -- so

17   it becomes a much more realistic possibility when you have just

18   one juror at -- between it and -- I guess two, to be technical.

19          MR. HEBERLIG:  Two.

20          THE COURT:  Two.  But, you know, one juror there is --

21   there's no room for error or for a vacancy, so I guess I have a

22   couple things to say.  Number one, the obvious, which is, you

23   should give a very, very serious thought to what witnesses

24   you're going to call because the number of witnesses you call

25   will dictate the length of the trial.  That's number one.

1          Number two, it is not my intention to cut off examination.

2    I don't think I've cut off examinations yet.  I may have

3    commented on examinations but I don't think I've cut them off

4    and I'm not going to cut them off because I think the defense

5    is correct that I don't want to box them in to not presenting

6    their case.

7          On the other hand, of course I observe, as we all have, is

8    that a lot of the defense case has come in by way of the

9    cross-examination of a witness.  So it may be that there are

10   new things there or there may be things that you want to

11   emphasize.  I can appreciate it, but it's not without risk and

12   it may look to a party that it's unfair that the defense bears

13   the risk while the prosecution doesn't.  It happens the

14   prosecution goes first and that's so the length of the trial

15   does bring about this possibility.

16         Now I would also say this is not an issue that could have

17   been corrected at the outset.  That is to say I couldn't have

18   impanel eight alternates.  The law provides I can only do up to

19   six and so -- and I did up to six.  So I'm saying I couldn't

20   have -- you know, very lengthy trial why didn't we go for 12

21   alternates?  You can't under the federal system.  That's my

22   view of it.  You're limited to six so we did the six and

23   obviously every excuse stands on its own and was done at a

24   particular time.

25         Nevertheless, I've got before me the realists.  You're all

1    realists.  And the realistic thing is that this case could very

2    well end up in a mistrial.

3        Now, arguably, it could end up in a mistrial on Monday

4    just as well as it could end up in a mistrial two weeks from

5    Monday, but two weeks from Monday increases the likelihood of

6    something going wrong, especially, though I don't think we're

7    going to have another problem like this and I think -- I think

8    the jurors' conduct essentially is under control or will be

9    once I admonish them and whatever I do.

10       I think that I'm much more concerned about what I call

11   unintended or unexpected situations:  A juror gets sick, family

12   member gets sick, a juror gets into an accident, something

13   happens, and they almost always happen.  I mean, totally

14   unpredictable, but the length of time, the odds are -- the odds

15   increase that something will happen.

16       But what I've said here is not news to you.  I don't think

17   I've said anything that you haven't thought of yourself, but I

18   think it's all right for me to urge you to figure out how

19   best -- how best to do it and that's -- that's within your --

20           **MR. REEVES:**  Your Honor, could I -- could I please

21   make a brief record?

22           **THE COURT:**  You may.

23       Now, after having said all that, let me just say a couple

24   more things and then I'll let you say whatever you want to for

25   the record.

 1         It would be my intention, and I'll tell you why, if two --

 2    if one or two of the jurors are going to be excused, it's my

 3    intention to bring them back on Monday in any event because I

 4    need to instruct them not to say anything.  I need to discharge

 5    them.  I need to give them, and I will, a reason for their

 6    discharge.  I need to confiscate their notebooks and not allow

 7    them to have their notebooks and I need to instruct them, in

 8    particular, not to discuss the case until Ms. Scott calls them

 9    and advises them that the case has been determined,

10    adjudicated.

11         My concern is the press.  I'm not concerned about lawyers

12    and I'm not concerned about your investigator, I'm not

13    concerned about any of that.  You've been nothing but ethical.

14    But I am concerned that the press -- there's a heightened

15    interest from the press in this case, obviously, they've

16    covered it every day.  They see two jurors or one juror missing

17    and, believe me, they'll speculate if it --

18         And, you know, I certainly think it's ill-advised for

19    anybody in this room to have a discussion with the press on the

20    reasons, but I'm not forbidding you because -- I'm not

21    putting -- there's no gag order here.  There's no gag order.

22    You're free to say what you want, but it's really -- I think it

23    would be enormously counterproductive for the goals that you

24    have, which is for the defense and the Government to make sure

25    that the trial is fair.

1      So I -- I am concerned that *Law 360* or *The Financial Times*

2  or somebody will start to inquire.  And the first place they'll

3  go or the second place -- the first place will be you, all of

4  you, and the second place will probably be the jurors

5  themselves because they'll have figured out who these people

6  are and they'll approach them.

7      So I need to have a discussion with these jurors.  Whether

8  it will have any impact on them, I don't know.

9      The last thing I think I'm interested in is a remedy.

10  Remedies are great.  They're not great in this case because the

11  victims in this case are all of you, so -- and there's no way I

12  can address that.

13      So that's what I propose to do so you have some sense of

14  how I would handle it.

15      Now anything anybody wants to say?

16      Mr. Reeves, you may go ahead.

17      **MR. REEVES:**  Yes, please.  Thank you, Your Honor.

18  First, as I understand it, this is a sealed proceeding and it

19  would be inappropriate on that basis to discuss this publicly

20  what has happened with that jury voir dire that has happened

21  today.

22      **THE COURT:**  Yes.

23      **MR. REEVES:**  Okay.  Good.

24      Second, for the record, I do not think that there is a

25  basis for any mistrial on this record.

1          **THE COURT:** There's not been a motion for a mistrial.

2          **MR. REEVES:** Okay. I'm just --

3          **MR. HEBERLIG:** No.

4          **MR. REEVES:** -- I want to offer that early; I hope not

5     often.

6          Third, I disagree with counsel that Juror No. 7 lied to

7     this Court. I think there is a far more nuanced and

8     appropriate interpretation of the record. I'd like to review

9     it carefully and I just want to say that for the record.

10         And most importantly, I think the Court is exactly right

11    in scoping out the end of the trial and ensuring that we don't

12    run out of jurors for some future event a week, two weeks from

13    now. And to that end I would encourage some thought by the

14    Court and counsel about not excusing any jurors on Monday,

15    letting them continue to serve through the duration of the

16    trial, perhaps revisiting their ability to be fair and

17    impartial at the conclusion of the evidence.

18         I will say parenthetically I saw Judge Gilliam handle a

19    similar kind of problem last summer using that technique with

20    that juror situation quite effectively, and I think it is one

21    way to protect against the worst possible outcome is that we

22    have another problem, a future problem, and then really do not

23    have sufficient jurors to complete the case. So on that basis

24    I would encourage just thoughtfulness about that as a

25    possibility.

SEALED PROCEEDINGS

1  ████████████████  ███████████████████████

2  ██████████████████████████████████████████████

3  ██████████████████████████████████████████████

4  ██████████████████████████████████████████████

5  ████████████████████████████

6      These two people seem cancerous on the jury.  They're

7  talking all the time about this case and they both expressed

8  views of guilt of the defendants.  I don't think this is a

9  close call and we shouldn't keep on two bad jurors just because

10  of a risk.

11      I mean, the Court, if it ultimately came down to it, could

12  order a jury of 11 to --

13          THE COURT:  No, I can't.

14          MR. HEBERLIG:  I believe you can.

15          THE COURT:  No, I can't, only once the case has been

16  submitted.

17          MR. HEBERLIG:  Once the case has been --

18          THE COURT:  Yeah.

19          MR. HEBERLIG:  Okay.  Once the case has been

20  submitted --

21          THE COURT:  I've been there, done that.

22          MR. HEBERLIG:  All right.  But in terms of length of

23  trial, I mean, you could envision a scenario where the case has

24  been submitted and then one of these trips or something comes

25  up.

1           **THE COURT:**  That can happen.  That can happen.

2           **MR. LINCENBERG:**  And I would just add --

3           **THE COURT:**  Go ahead, Mr. Lincenberg.

4           **MR. LINCENBERG:**  I think the decision whether there is

5   cause to remove these jurors should not be influenced by the

6   concern that, all right, well then we're down to one alternate.

7   I don't think --

8           I understand the Court doesn't want a mistrial; I don't

9   think the parties want it.  But the notion of keeping jurors on

10  who should not be on simply because of the length; and second,

11  with regard to the length and the encouraging us with

12  witnesses, the Court has just -- you know, the Court gave the

13  prosecution another week and they're now putting on an expert

14  who, from looking at his slides, is really just going to be

15  there to be a conviction witness and usurp the function of the

16  jury and start looking at citations to evidence and the like

17  and we're going to be sitting here a week from now and they're

18  not going to be done with their case and there's going to be

19  one week for the defense case now.

20          **THE COURT:**  Let me -- let me give you a couple of

21  thoughts.

22          Number one, I think it would be error if -- for me to

23  await a decision on these two people or one of them until the

24  case is submitted.  And I think that for the following reason:

25  If -- one of several things can happen.  Number one is they

1  can -- I'll give the positive spin.  They're excused just

2  before deliberations and it turns out they haven't said

3  anything to anybody, so they've had no impact post-inquiry and

4  that's -- in that case that would be -- that would be -- that

5  would be fine.  I mean, I don't see that that would create a

6  particular problem.

7        That's one scenario.

8        Scenario number two, which is that they're excused but

9  they have said something to somebody else or they'd said

10  something to each other that then comes out in post --

11  post-trial proceedings.  And in that case the Court has really

12  poisoned the verdict by allowing them to stay.

13        Point number three is that they participate in the

14  deliberations because we don't have enough jurors otherwise.

15  It's not a decision that the defendants can say was freely and

16  voluntarily entered into.

17        That is to say, I guess they can argue for a mistrial at

18  the point when it's about to go to the jury.  And I haven't

19  really worked through all of the scenarios, but it doesn't seem

20  to me to be -- first of all, it seems dishonest for the Court

21  to do.  I mean, I can't put it any other way.  They either

22  should stay or they should go, if I can make that decision.

23  And if I can make that decision today, I make it today.

24        I don't make it whether we -- they should go but we may

25  need them.  That's -- that's expediency over a defendant's

1    rights.  I mean, it's a clear error.  The defendants don't even

2    have to say anything.  It's just clear error.

3         Now I think what Judge Gilliam did and what I did in *Chow*,

4    I did wait in *Chow*, but that's because I didn't find that there

5    was a violation of the juror's oath.  I don't know about Judge

6    Gilliam or not.  In this case I find a clear violation of both

7    of their oaths and they admitted it.  One juror said that she

8    did go on the Internet and look things up.  It's a clear

9    violation of my order.

10        Second juror said they did discuss witnesses and I forget

11   what they discussed.  Oh, outcomes or so forth.  Whatever he

12   said, he said.  It was a clear violation of his oath.

13        The fact that, well, it's a long trial and these are just

14   casual remarks and so forth, whether -- in any event it's not a

15   justification for violating your oath and it's not -- it's not

16   an, oh, I didn't really violate my oath because it's a long

17   trial.  That's not it.

18        So my view is, though I haven't heard from the Government,

19   my view is I would excuse both of them because I think you -- I

20   think you actually do put, quote, a poisoned pill into any

21   verdict.  And why?  Why?  Anybody want to try this -- first of

22   all, it wouldn't be the Government's error, it would be my

23   error.  So jeopardy wouldn't attach, do you see, in that

24   respect.  So there we are, two years down the line and having

25   to try this case again.  It's unfair to everybody.  It's unfair

**SEALED PROCEEDINGS**

 1   to the defendants.  It's unfair to the witnesses.  It's

 2   unfair -- is it unfair to a judge?  No.  I get it.  No.  It's

 3   not fair to me.  I took this job, it's fine.

 4        But it's unfair.  It's basically unfair.  So no one wants

 5   that.  That's a very bad result.

 6        So after having said all that, I don't really -- I mean, I

 7   guess what I'm going to say to you, Mr. Reeves, is if you -- if

 8   you feel that -- if you're going to object to -- so I'm not

 9   going to -- I'm not going to say to them you lied or I'm not

10   going to say anything other than -- I think I should give them

11   some what I call sufficient or adequate but not full

12   explanation of why they're being discharged, and I think that

13   that's, like, good enough for Government work.  I don't think I

14   have to do much more than that because I think the unintended

15   consequences -- who knows how mad they'll be?  Who knows what

16   they can do?  They can do a lot of damage.  They can do an

17   enormous amount of damage.  So why take that chance?  They've

18   done enough damage, in my view.

19        **MR. MORVILLO:**  Agreed.

20        **THE COURT:**  And I don't want to see any more damage.

21   I want to try to control it.  That's my job and so I've got to

22   be careful of that.  And so I don't even know why we ought to

23   take a risk.

24        Yes, we are taking a risk there will be a mistrial down

25   the road based upon the number of jurors.  But the one thing

---

 1  we're not taking a risk on is that there will be a mistrial

 2  because of jury misconduct and erroneous rulings by the Court.

 3  I'm eliminating that.

 4       And believe me, that's like something I can do something

 5  about and the other thing is, I can't do anything about it, so

 6  it just seems to be a professional way of looking at it.

 7       So I'll tell you what because I'm not going to drag

 8  everybody back here on -- tomorrow.  First of all, I have a

 9  full calendar and secondly, I'll be riding my bicycle so I

10  don't want to have to come in too early, so if you have a

11  different view, please communicate it to Ms. Scott tomorrow and

12  communicate it to the -- to the lawyers as well if you have a

13  different view.  Otherwise, I'm going to -- I'm going to excuse

14  Juror No. 2 and No. 7 as indicated.

15       **MR. REEVES:**  Well, Your Honor, I think the Court

16  appropriately, naturally, has brought us to this point, so I

17  would like to engage briefly on some of the points you've --

18  the Court has just made.

19       I accept the Court's reason for the appropriate dismissal

20  of Juror No. 2 for cause because of the violation that she

21  acknowledged with regard to doing searches on the Internet for

22  relevant terms during the trial like GAAP and IFRS, and that

23  seems like an appropriate basis for the challenge for that

24  juror, and we would not object to her discharge on that basis.

25       The record for Juror No. 7, respectfully, is more

SEALED PROCEEDINGS

 1  complicated.  If you -- and that's why I think looking at

 2  the -- at the transcript is going to be quite important.

 3  The -- first of all, the juror acknowledged that he discussed

 4  his service with his wife and invited her to come to the trial.

 5  I am not certain he's prohibited from doing that.

 6          **THE COURT:**  No, I'm not finding that to be a violation

 7  and they're not citing that either.

 8          **MR. REEVES:**  Okay.  But counsel at one point had

 9  emphasized that.  I want to parse this with as much care as I

10  can.

11          The second thing is, the Court specifically asked if there

12  had been discussions that -- about guilt and Juror No. 7 said

13  no but then he did go on to elaborate that he commented on

14  counsel's performance, yes, and he emphasized repeatedly about

15  the roughness of sessions.  And, again, I'm -- it's unclear to

16  me that comments about the performance of lawyers during the

17  jury -- during the trial is the same thing as the discussion

18  about, you know, the outcome of the case, so I -- and I just

19  want to be careful.

20          And I think most importantly, probably the source of

21  greatest concern for everyone was a discussion about, you know,

22  a five-year outcome, for example.  But the juror in the record

23  was quite specific that this was why are they taking so long?

24  Maybe they have settled the case, maybe they'll resolve it for

25  five years and go on.

 1          And again, it's that future looking not a discussion about

 2     the evidence, not a specific outcome.  Is that nuanced?  Yes.

 3     Do I want any error here?  No.  Absolutely not.  I'm just -- I

 4     want the juror to be heard about the care he, I think, tried to

 5     offer in answering the questions.  And all I would ask is that

 6     there be a clear record for any ruling by the Court with regard

 7     to Juror No. 7 as to why he is being discharged.

 8          **MR. HEBERLIG:**  May I respond briefly?

 9          **THE COURT:**  Well, one reason he'd be discharged is

10     that his testimony is at odds with someone who --  ███████

11     There's no question his testimony is at odds.

12          **MR. HEBERLIG:**  No question.

13          **THE COURT:**  So one could say, well, it's one person's

14     word against another person's word, that doesn't prove

15     anything, but there are some indicia of why  ████████ is to

16     be believed and why Juror No. 7.  I would certainly make

17     findings that I didn't find his -- Juror No. 7, I didn't find

18     him to be credible as he -- as he told his story.

19          There were enormous gaps.  And then when I confronted him

20     in the beginning, first he said no, and he said that rather

21     quickly and then when I said, well -- I was more specific in

22     confronting him with the actual statements, there was an

23     enormously long pause where you could almost see the wheels

24     churning as to should I tell the truth or should I cover up.

25     That's the way I looked at it.

JENNIFER COULTHARD, CSR, RMR, CRR          (530)537-9312
OFFICIAL UNITED STATES DISTRICT COURT STENOGRAPHER

```
1        Now, I'm no expert in this, but to the extent I must make

2   findings of credibility, I found him to be not credible.  So

3   yeah, I'll have a record here, but I want the record to be

4   complete as to my views.  My view is he wasn't credibility.  My

5   view is that he lied.

6   ████████████████████████████████████████

7   █████████████████████████████████████████

8   ██████████████████████████████████████████

9   █████████████████████████████████████████

10  ███████████████████████████████████████████

11  ████████████████████████████████

12  ██████████████████████████████████████

13  █████████████████████████████████████████

14  ██████████████████████████████████████████

15  █████████████████████████████████████████

16  ███████████████████████████
```

        **MR. REEVES:**  Thank you for that record, Your Honor.

        **THE COURT:**  I think that's enough, to tell you the

truth.

        **MR. HEBERLIG:**  Nothing further from us.  We agree.

        **THE COURT:**  So if you object, you object.  I mean, I

need to have a position, you see; not from you.  I need to have

a position from the Government.  I think what -- that's up to

you.  You can have a position one way or the other.

                (Discussion held off the record.)

SEALED PROCEEDINGS

1          **MR. REEVES:**  Your Honor, based on the Court's record,

2    there is no objection.

3          **THE COURT:**  Okay.  So I will -- everybody's coming in

4    on Monday.  I will call those jurors in first and just simply

5    say what I expect to say, what I've already told you I'm going

6    to say, and then we'll move on, okay?

7          **MR. HEBERLIG:**  Yes.

8          **THE COURT:**  Any other issues?

9          **MR. HEBERLIG:**  No, Your Honor.

10          **THE COURT:**  No other issues?

11        Then we'll continue with -- God, I even forget who it was,

12    Mr. --

13          **THE CLERK:**  Mr. Johnson.

14          **THE COURT:**  -- Johnson.

15          **MR. ABRAHAMSON:**  Your Honor, just briefly, we hadn't

16    anticipated Monday for Mr. Johnson.  We just learned that he

17    has a funeral to attend in Burlingame at 11:00 on Monday

18    morning.

19          **THE COURT:**  Okay.  Then put somebody else.

20          **MR. ABRAHAMSON:**  Okay.

21          **MR. HEBERLIG:**  Who will that someone else be?

22          **MR. REEVES:**  Andy Gersh will be the next witness.

23          **THE COURT:**  Okay.

24          **MR. HEBERLIG:**  Yeah, I don't think it needs to be

25    resolved right now and, frankly, I'd recommend we --

1          THE COURT:  Pardon me?

2          MR. HEBERLIG:  I don't think it needs to be resolved

3   right now and I frankly would recommend we not, given the hour,

4   but there are some issues with the Government's expert.  There

5   are a couple of unresolved issues and we just got it sort of

6   the very wee hours.

7          THE COURT:  Do I have -- do I have briefs on the

8   subject?

9          MR. HEBERLIG:  We'd like to respond to what the

10  Government filed last night --

11         THE COURT:  Yes.

12         MR. HEBERLIG:  -- and we'll do that promptly, so --

13  but since he's not going to be Monday morning, I think we

14  can --

15         THE COURT:  Yeah.

16         MR. HEBERLIG:  -- and the Court can rule on Monday.

17         THE COURT:  Right.  Yeah.

18         MR. LINCENBERG:  And we plan to file a brief brief, an

19  objection to certain portions of Agent is it Heubsch?

20         MR. REEVES:  Heubsch.

21         MR. LINCENBERG:  Heubsch, Heubsch's testimony.  We'll

22  file it over the weekend.

23         THE COURT:  All right.  A brief brief like short

24  shorts.  Got it.

25         MR. REEVES:  Is that all?

**SEALED PROCEEDINGS**

```
 1        THE COURT:  Okay.  Well, I didn't think we'd spend --
 2   so you see I told you it would only take 15 minutes.
 3        MR. MORVILLO:  Two minutes per juror.
 4        MR. LINCENBERG:  You know, I got to say we
 5   appreciate --
 6        THE COURT:  So I now -- I now fall right within every
 7   other lawyer in this case making totally erroneous predictions
 8   on time.
 9        MR. LINCENBERG:  But we appreciate the thoroughness of
10   the inquiry.  We thought it was important.
11        THE COURT:  Well, listen, I mean, you know, however
12   one comes from it, I mean, I think my colleagues would have
13   done the same thing.  It's -- and, you know, these things are
14   very disturbing, it's outside the process, it should not occur.
15   I feel very bad when it occurs because, you know, maybe judges
16   live in some idealized -- which I'm certain they do -- the way
17   things ought to operate but this is -- this is unfortunate and
18   I thank you, once again.  The lawyers were very helpful and
19   everybody did it in a way that I think could move it forward,
20   could move it forward.  It wasn't -- you know, it didn't --
21   there weren't a lot of -- I mean, off the top of our head
22   responses.  Anyway thank you.  I'll see you on Monday.
23        MR. MORVILLO:  Thank you.  Have a nice weekend.
24        MR. REEVES:  Thank you, Your Honor.
25        (Adjourned at 4:41 p.m.)
```

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4              I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7

8

9    _____            <u>May 10, 2024</u>
     JENNIFER L. COULTHARD, RMR, CRR              DATE
10   Official Court Reporter
     CA CSR#14457
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**JENNIFER COULTHARD, CSR, RMR, CRR            (530)537-9312**
**OFFICIAL UNITED STATES DISTRICT COURT STENOGRAPHER**